1  MICHAEL F. HERTZ
   Acting Assistant Attorney General, Civil Division
2  DOUGLAS N. LETTER
   Terrorism Litigation Counsel
3  JOSEPH H. HUNT
   Director, Federal Programs Branch
4  VINCENT M. GARVEY
   Deputy Branch Director
5  ANTHONY J. COPPOLINO
   Special Litigation Counsel
6  PAUL G. FREEBORNE
   MARC KRICKBAUM
7  Trial Attorneys
   U.S. Department of Justice
8  Civil Division, Federal Programs Branch
   20 Massachusetts Avenue, NW, Rm. 6102
9  Washington, D.C. 20001
   Phone: (202) 514-4782
10 Fax: (202) 616-8460

11 *Attorneys for the Government Defendants*
   *Sued in their Official Capacity*

12

13 **UNITED STATES DISTRICT COURT**

14 **NORTHERN DISTRICT OF CALIFORNIA**

15 **SAN FRANCISCO DIVISION**

16 _____    Case No. C:08-cv-4373-VRW
                                  )
17 CAROLYN JEWEL, TASH HEPTING,    )  **GOVERNMENT DEFENDANTS'**
   GREGORY HICKS, ERIK KNUTZEN, and )  **NOTICE OF MOTION AND MOTION**
18 JOICE WALTON,                   )  **TO DISMISS AND FOR SUMMARY**
                                  )  **JUDGMENT**
19         *Plaintiffs,*           )
                                  )  Date:        June 25, 2009
20     v.                         )  Time:        2:30 p.m.
                                  )  Courtroom:   6, 17th Floor
21 NATIONAL SECURITY AGENCY ("NSA"); )
   KEITH B. ALEXANDER, Director of the NSA;)  Chief Judge Vaughn R. Walker
22 UNITED STATES OF AMERICA;       )
   BARACK OBAMA, President of the United )
23 States; UNITED STATES DEPARTMENT OF )
   JUSTICE; ERIC HOLDER, Attorney General )
24 of the United States; DENNIS C. BLAIR, )
   Director of National Intelligence.    )
25                                 )
                                  )
26         *Government Defendants* )
           *Sued in Their Official Capacity.* )
   _____ )

27

28 **Government Defendants' Notice of Motion to Dismiss and For Summary Judgment and Memorandum**
   ***Jewel et al. v. National Security Agency et al.*, Case No. 08-cv-4373-VRW**

PLEASE TAKE NOTICE that, on June 25, 2009 at 2:30 p.m., before Chief Judge Vaughn R. Walker, the Government Defendants sued in their official capacity in this action will move to dismiss certain claims in the Complaint against them pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and for summary judgment as to any remaining claims pursuant to Rule 56. The grounds for this motion are that the Court lacks subject matter jurisdiction with respect to plaintiffs' statutory claims against the United States because Congress has not waived sovereign immunity, and summary judgment for the Government on all of plaintiffs' remaining claims against all parties (including any claims not dismissed for lack of jurisdiction) is required because information necessary to litigate plaintiffs' claims is properly subject to and excluded from use in this case by the state secrets privilege and related statutory privileges. The grounds for this motion are set forth further in the accompanying (i) Memorandum of Points and Authorities in Support of the Government Defendants' Motion to Dismiss and for Summary Judgment; (ii) Public Declaration of Admiral Dennis C. Blair, Director of National Intelligence (hereafter "Public DNI Decl."); (iii) Public Declaration of Deborah A. Bonanni, Chief of Staff, National Security Agency (hereafter "Public NSA Decl."). Additional grounds for these motions are also set forth in the (iv) Classified State Secrets Privilege Declaration of Dennis C. Blair, Director of National Intelligence; (v) Classified Declaration of Deborah A. Bonanni, Chief of Staff, National Security Agency; and (vi) Supplemental Classified Memorandum of Points and Authorities in Support of the Government Defendants' Motion to Dismiss and for Summary Judgment. These classified materials have been lodged with court security officers and are available upon request solely for the Court's *in camera*, *ex parte* review.

April 3, 2009                                  Respectfully Submitted,

                                               MICHAEL F. HERTZ
                                               Acting Assistant Attorney General

                                               DOUGLAS N. LETTER
                                               Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

VINCENT M. GARVEY
Deputy Branch Director

 s/ Anthony J. Coppolino
ANTHONY J. COPPOLINO
Special Litigation Counsel

 s/ Paul G. Freeborne
PAUL G. FREEBORNE

 s/ Marc Krickbaum
MARC KRICKBAUM
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782
Fax: (202) 616-8460
Email: tony.coppolino@usdoj.gov

*Attorneys for the Government Defendants
Sued in Their Official Capacity*

1  MICHAEL F. HERTZ
   Acting Assistant Attorney General, Civil Division
2  DOUGLAS N. LETTER
   Terrorism Litigation Counsel
3  JOSEPH H. HUNT
   Director, Federal Programs Branch
4  VINCENT M. GARVEY
   Deputy Branch Director
5  ANTHONY J. COPPOLINO
   Special Litigation Counsel
6  PAUL G. FREEBORNE
   MARC KRICKBAUM
7  Trial Attorneys
   U.S. Department of Justice
8  Civil Division, Federal Programs Branch
   20 Massachusetts Avenue, NW, Rm. 6102
9  Washington, D.C. 20001
   Phone: (202) 514-4782
10 Fax: (202) 616-8460

11 *Attorneys for the Government Defendants*
   *Sued in their Official Capacity*

12

**UNITED STATES DISTRICT COURT**

13

**NORTHERN DISTRICT OF CALIFORNIA**

14

**SAN FRANCISCO DIVISION**

15

16 ————————————————————   Case No. C:08-cv-4373-VRW
                                                )
17 CAROLYN JEWEL, TASH HEPTING,              )   **GOVERNMENT DEFENDANTS'**
   GREGORY HICKS, ERIK KNUTZEN, and          )   **MEMORANDUM IN SUPPORT OF**
18 JOICE WALTON,                             )   **MOTION TO DISMISS AND FOR**
                                                )   **SUMMARY JUDGMENT**
                *Plaintiffs*                   )
19                                              )   Date:        June 25, 2009
20     v.                                       )   Time:        2:30 p.m.
                                                )   Courtroom:   6, 17th Floor
21 NATIONAL SECURITY AGENCY ("NSA");         )
   KEITH B. ALEXANDER, Director of the NSA;   )   Chief Judge Vaughn R. Walker
22 UNITED STATES OF AMERICA;                  )
   BARACK OBAMA, President of the United      )
23 States; UNITED STATES DEPARTMENT OF       )
   JUSTICE; ERIC HOLDER, Attorney General     )
24 of the United States; DENNIS C. BLAIR,     )
   Director of National Intelligence.        )
25                                              )
                *Government Defendants*         )
26           *Sued in Their Official Capacity*  )
   ————————————————————

27

PAGE

INTRODUCTION ................................................................. 1

ARGUMENT ..................................................................... 2

I.  CONGRESS HAS NOT WAIVED SOVEREIGN IMMUNITY FOR
    PLAINTIFFS' STATUTORY CLAIMS. ........................................ 2

    A.  Congress Has Not Waived Sovereign Immunity as to Plaintiffs'
        Claims for Damages. ............................................... 3

        1.  Congress Has Expressly Preserved Sovereign Immunity
            For Plaintiffs' Wiretap Act and ECPA Claims. .................. 3

        2.  Congress Has Not Waived Sovereign Immunity in
            FISA Section 1810. ............................................ 7

    B.  Congress Has Not Waived Sovereign Immunity for the Equitable
        Relief Plaintiffs Seek under FISA, the Wiretap Act, and ECPA. ....... 8

        1.  APA Section 702 Does Not Waive Sovereign
            Immunity Where Other Statutes Explicitly or
            Implicitly Bar Relief Against the United States. ............... 9

        2.  *Larson* Fails to Provide an Independent Basis for Equitable
            Relief. ...................................................... 10

II. INFORMATION SUBJECT TO THE STATE SECRETS PRIVILEGE
    AND RELATED STATUTORY PRIVILEGES IS NECESSARY TO
    LITIGATE THIS CASE AND MUST BE EXCLUDED FROM
    FURTHER PROCEEDINGS. ................................................ 12

    A.  The State Secrets Privilege Bars Use of Privileged Information In
        Litigation. ....................................................... 12

    B.  The United States Has Properly Asserted the State Secrets and
        Related Statutory Privileges in this Case. .......................... 14

III. WHERE STATE SECRETS ARE NEEDED TO LITIGATE PLAINTIFFS'
     CLAIMS, THE CASE CANNOT PROCEED. .................................... 16

    A.  Standing Cannot be Established or Refuted Without the Disclosure
        of State Secrets and Harm to National Security. ..................... 18

    B.  The Disclosure of Privileged Information Would Also be Required
        to Adjudicate Plaintiffs' Claims on the Merits. ..................... 21

V.  LITIGATION OF THE PLAINTIFFS' CLAIMS CANNOT PROCEED
    UNDER FISA. .......................................................... 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CASES**                                                                                    **PAGE(S)**

*Alaska v. Babbitt*, 75 F.3d 449 (9th Cir. 1996) (*Babbitt II*) . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11

*Alaska v. Babbitt*, 38 F.3d 1068 (9th Cir. 1994) (*Babbitt I*) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Al-Haramain Islamic Found., Inc. v. Bush*, 564 F. Supp. 2d 1109 (N.D. Cal. 2008) . . . . 7, 13, 24

*Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190 (9th Cir. 2007) . . . . . . . . . . passim

*American Civil Liberties Union v. NSA*, 493 F.3d 644 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . 19

*Aminoil U.S.A., Inc. v. Cal. State Water Ctrl. Bd.*, 674 F.2d 1227 (9th Cir. 1982) . . . . . . . . . 11

*Block v. North Dakota*, 461 U.S. 273 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11

*Cent. Bank of Denver v. First Interstate Bank*, 511 U.S. 164 (1994) . . . . . . . . . . . . . . . . . . . 7

*Cent. Res. Life of North America Ins. Co. v. Struve*, 852 F.2d 1158 (9th Cir. 1988) . . . . . . . 11

*Children's Hosp. Health Ctr. v. Belshe*, 188 F.3d 1090 (9th Cir. 1999) . . . . . . . . . . . . . . 4, 6, 11

*CIA v. Sims,* 471 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 23

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

*Dep't of Army v. Fed. Labor Relations Auth.*, 56 F.3d 273 (D.C. Cir. 1995) . . . . . . . . . . . . . . 6

*Dugan v. Rank*, 372 U.S. 609 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Duncan v. Walker*, 533 U.S. 167 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*Ellsberg v. Mitchell*, 709 F.2d 51 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 18, 19

*El-Masri v. United States*, 479 F.3d 296 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*F.D.I.C. v. Meyer*, 510 U.S. 471 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Freeman v. DirecTV*, 457 F.3d 1001 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hepting v. AT&T*, 493 F. Supp. 2d 974 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . passim

*Halkin v. Helms*, 690 F.2d 977 (D.C. Cir. 1982) (*Halkin II*) . . . . . . . . . . . . . . . . . . 12, 13, 19

*Halkin v. Helms*, 598 F.2d 1 (D.C. Cir. 1978) (*Halkin I*) . . . . . . . . . . . . . . . . . . . . . . 13, 18

*Hawaii v. Gordon*, 373 U.S. 57 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Holloway v. United States*, 526 U.S. 1 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hughes v. United States*, 953 F.2d 531 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Jones v. United States*, 527 U.S. 373 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Lane v. Pena*, 518 U.S. 187 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 8

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949) . . . . . . . . . . . 3, 8, 10, 11

*Lewis v. Casey*, 518 U.S. 343 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Multi Denominational Ministry of Cannabis v. Gonzales*,
474 F. Supp. 2d 1133 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*New Jersey v. T.L.O.*, 469 U.S. 325 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395 (D.C. Cir. 1984) . . . . . . . . . . . . 14

*North Side Lumber Co. v. Block*, 753 F.2d 1482 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . 10

*O'Connor v. Ortega*, 480 U.S. 709 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Palomar Pomerado Health Sys. v. Belshe*, 180 F.3d 1104 (9th Cir. 1999) . . . . . . . . . . . . . . . 11

*People for the American Way Found v. NSA ("PFAW")*,
462 F. Supp. 2d 21 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

*Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984) . . . . . . . . . . . . . . . . . 10, 11

*Prescott v. United States*, 973 F.2d 696 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Rakus v. Illinois*, 439 U.S. 128 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Sigman v. United States*, 217 F.3d 785 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

*Smith v. Maryland*, 442 U.S. 735 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Tenet v. Doe*, 544 U.S. 1 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Terkel v. AT&T Corp.*, F. Supp. 2d 899 (N.D. Ill. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Territory of Guam v. HHS*, 997 F.2d 1290 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Totten v. United States*, 92 U.S. 105 (1875) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 23

*Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Tuscon Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641 (9th Cir. 1998) . . . . . . . . . . . . 10

*United States v. Barr*, 25 F. Case 30 (C.C. D. Va. 1807) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Government Defendants' Notice of Motion to Dismiss and For Summary Judgment and Memorandum**
*Jewel et al. v. National Security Agency et al.*, Case No. 08-cv-4373-VRW                                    -iv-

*United States v. Forrester*, 512 F.3d 500 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Menashe*, 348 U.S. 528 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Marchetti*, 466 F.2d 1309 (4th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Morton*, 467 U.S. 822 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Nordic Village, Inc.*, 503 U.S. 30 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

*United States v. Reynolds,* 345 U.S. 1 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14, 17

*Vermont Agency of Nat. Res. v. United States*, 529 U.S. 765 (2000) . . . . . . . . . . . . . . . . . . . . 8

*Warth v. Selden*, 422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Wilner v. National Security Agency*, 2008 WL 2567765 (S.D. N.Y. 2008) . . . . . . . . . . . 16, 19

*Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544 (2d Cir. 1991) . . . . . . . . . . . . . . . . . 17

**CONSTITUTIONAL PROVISIONS**

U.S. CONST. amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 22

U.S. CONST. amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 20, 22, 23

**STATUTES**

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 9, 10

18 U.S.C. § 2511 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 22

18 U.S.C. § 2520 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

18 U.S.C. § 2702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 2703 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 22

18 U.S.C. § 2707 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

18 U.S.C. § 2711 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

18 U.S.C. § 2712 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

50 U.S.C. § 1801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

50 U.S.C. § 1806 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 19, 25

50 U.S.C. § 1809 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 10, 21, 22

50 U.S.C. § 1810 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 8, 10, 20

Section 223 of the Patriot Act of 2001, Pub. L. No. 107-56, 115 Stat. 272 . . . . . . . . . . 4, 5, 6, 7

## LEGISLATIVE MATERIALS

*Administration's Draft Anti-Terrorism Act of 2001: Hearing Before the H. Comm. on the Judiciary*, 107th Cong. 17 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

H.R. Rep. No. 109-174(I), at 496 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

H.R. Rep. No. 107-236(I), at 42 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

H.R. Rep. No. 95-1283, at 66 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

H.R. Rep. No. 94-1656, at 13 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CRS Summary, H.R. 3162 (Oct. 24, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## INTRODUCTION

Plaintiffs in this action allege that the Government, through the National Security Agency ("NSA"), is undertaking an "illegal and unconstitutional dragnet communications surveillance in concert with major telecommunications companies," and that NSA has indiscriminately intercepted the content of communications, as well as the communications records, of millions of ordinary Americans. *See* Complaint ¶ 1, 7; *see also id.* ¶¶ 9-11; 73-75; 82-97.

This is not the first instance in which these allegations have been before this Court. The plaintiffs in this case (it appears with one exception) are the same plaintiffs who filed the *Hepting* action against AT&T raising identical allegations. *See Hepting v. AT&T*, 493 F. Supp. 2d 974 (N.D. Cal. 2006). Plaintiffs now bring a seventeen-count complaint against the United States and Government officials in their official capacity, claiming that the alleged actions violate the First and Fourth Amendments of the United States Constitution, and the separation of powers doctrine, as well as various statutory provisions—Section 109 of the Foreign Intelligence Surveillance Act of 1978 ("FISA"), 50 U.S.C. § 1809; the Wiretap Act, as amended by the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1)(a), (1)(c), (1)(d) and (3)(a); and the Stored Communications Act ("SCA"), 18 U.S.C. § 2703(a), (b), and (c).[1]

As a threshold matter, the Court should dismiss plaintiffs' statutory claims against the Government Defendants in their official capacity for lack of subject matter jurisdiction because Congress has not waived sovereign immunity. This leaves plaintiffs with, at most, constitutional claims for declaratory and injunctive relief against the United States. These claims cannot proceed as well—indeed, none of plaintiffs' claims could proceed against any defendant—because, at every stage, litigation plaintiffs' claims would require or risk the

---

[1] A summary of plaintiffs' claims is attached as Exhibit 1. Plaintiffs also sue NSA Director Alexander and several former officials in their personal capacity, *see* Compl. ¶¶ 26, 29-31, 33-37 and Counts I-VIII; X-XI; XIII-XIV; XVI-XVII. This motion is brought solely by the Government Defendants sued in their official capacity. However, as set forth herein, the Government's proper invocation of the state secrets and applicable statutory privileges also excludes information relevant to addressing the personal capacity claims and requires summary judgment and dismissal of all personal capacity claims as well.

disclosure of information that is properly subject to the state secrets privilege and related statutory privileges.

This lawsuit squarely puts at issue whether, or to what extent, the Government utilized certain intelligence sources and methods after the 9/11 attacks. As in *Hepting*, the Director of National Intelligence ("DNI") has once again demonstrated that the disclosure of the information implicated by this case, which concerns how the United States seeks to detect and prevent terrorist attacks, would cause exceptionally grave harm to national security. *See* Public and Classified *In Camera*, *Ex Parte* Declarations of Dennis C. Blair, Director of National Intelligence. The information subject to the DNI's privilege assertion should therefore be excluded from this case. In addition, because disclosure of the privileged information would be required or at risk in further proceedings, the Court should grant summary judgment for the United States on all of plaintiffs' claims and dismiss this case against all defendants.

While the dismissal of private claims is a significant step, long-standing authority holds that "the greater public good" is the protection of the national security interests of the United States. *Kasza v. Browner*, 133 F.3d 1159, 1167 (9th Cir. 1998) (quoting *Bareford v. Gen. Dynamics Corp.*, 973 F.2d 1138, 1144 (5th Cir. 1992)).

## ARGUMENT

## I. CONGRESS HAS NOT WAIVED SOVEREIGN IMMUNITY FOR PLAINTIFFS' STATUTORY CLAIMS.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (quoting *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994)). Plaintiffs bear the burden of establishing such a waiver, *see Prescott v. United States*, 973 F.2d 696, 701 (9th Cir. 1992), which must be explicitly and unequivocally expressed in statutory text. *See Lane v. Pena*, 518 U.S. 187, 192 (1996); *Sigman v. United States*, 217 F.3d 785, 792 (9th Cir. 2000). This Court should "strictly construe[]" any purported waiver "in favor of the sovereign," *Blue Fox*, 525 U.S. at 261, and a statute does not waive sovereign immunity if it will bear any "plausible" alternative interpretation. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-37 (1992).

As set forth below, in the Wiretap Act and ECPA, Congress expressly preserved sovereign immunity against claims for damages and equitable relief, permitting such claims against only a "person or entity, other than the United States." *See* 18 U.S.C. § 2520; 18 U.S.C. § 2707. Plaintiffs attempt to locate a waiver of sovereign immunity in other statutory provisions, primarily through a cause of action authorized by the Stored Communications Act, 18 U.S.C. § 2712, but this attempt fails. Section 2712 does not erase the express reservations of sovereign immunity noted above, because it applies solely to a narrow set of allegations not presented here: where the Government obtains information about a person through intelligence-gathering, and Government agents unlawfully disclose that information. Likewise, the Government preserves its position that Congress also has not waived sovereign immunity under in FISA to permit a damages claim against the United States. *See* 50 U.S.C. § 1810.

Plaintiffs' claims for equitable relief under Section 702 of the Administrative Procedure Act ("APA") and the Supreme Court's decision in *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949), fare no better. First, Section 702 does not provide an equitable remedy when another statute explicitly or implicitly forbids such relief. Second, plaintiffs cannot proceed without a waiver of sovereign immunity *Larson*, because Congress has explicitly forbidden equitable relief, and the relief plaintiffs seek would run against the United States.

**A.      Congress Has Not Waived Sovereign Immunity as to Plaintiffs' Claims for Damages**.

Plaintiffs seek damages against the United States under the Wiretap Act and ECPA, as well as FISA (Counts VI, IX, XII, and XV), but can establish no waiver of sovereign immunity for these claims.

**1.      Congress Has Expressly Preserved Sovereign Immunity For Plaintiffs' Wiretap Act and ECPA Claims.**

Congress has expressly barred suits against the United States for damages and equitable relief based on alleged violations of the Wiretap Act and ECPA, in both cases by permitting relief against only a "person or entity other than the United States." *See* 18 U.S.C. § 2520(a); 18 U.S.C. § 2707(a). Congress enacted these express reservations of sovereign immunity in Section

223 of the Patriot Act of 2001, Pub. L. No. 107-56, 115 Stat. 272. *See* § 223(a)(1), (b)(1) (inserting the words "other than the United States."). Plaintiffs' apparent theory—that another provision of Section 223 of the Patriot Act, codified in 18 U.S.C. § 2712, provides the requisite waiver of sovereign immunity for plaintiffs' Wiretap Act and ECPA claims, *see* Compl., Counts IX, XII, XV—is meritless. Such a theory depends on the assumption that Congress, in the same Act, expressly *reserved* sovereign immunity in Sections 2520(a) and 2707(a) for Wiretap Act and ECPA claims, and expressly *waived* sovereign immunity for those claims in Section 2712(a). Such a construction would use one provision of an Act to "emasculate . . . entire section[s]" elsewhere in the Act, *see United States v. Menashe*, 348 U.S. 528, 538-39 (1955), and thereby violate the "cardinal principle of statutory construction" that courts must "give effect, if possible, to every clause and word of a statute," rather than rendering any section "superfluous." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (collecting cases) (internal quotations omitted).

In fact, all of the provisions enacted in Section 223 of the Patriot Act can be read harmoniously. As noted, 18 U.S.C. § 2520(a) (Section 223(a)(1)) generally precludes suits against the United States for claims arising under the Wiretap Act, Chapter 119 of Title 18. Similarly, 18 U.S.C. § 2707(a) (Section 223(b)(1)) precludes suits against the United States for conduct that constitutes a "knowing or intentional" violation of ECPA, Chapter 121 of Title 18. Finally, 18 U.S.C. § 2712 (Section 223(c)(1)) creates a narrow exception to these provisions, waiving sovereign immunity for damages suits against the United States solely for certain "willful violation[s]" of the Wiretap Act, ECPA, and specific provisions of FISA—all of which concern willful disclosures of information by Government agents, not alleged or at issue here.

This construction of Section 223 is supported by reading "the statute as a whole, including its object and policy," not by reading any one provision in isolation.[2] *See Children's Hosp. Health Ctr. v. Belshe*, 188 F.3d 1090, 1096 (9th Cir. 1999); *see also Holloway v. United States*, 526 U.S. 1, 7 (1999); *United States v. Morton*, 467 U.S. 822, 828 (1984). Section 223 is entitled "Civil Liability For Certain Unauthorized Disclosures," and the text of the statute makes

---

[2] The text of Section 223 of the Patriot Act is attached as Exhibit 2.

clear that Congress intended its provisions, including the provision codified in 18 U.S.C. § 2712,

to afford relief only where Government agents make unauthorized disclosures of information

obtained through surveillance.

Accordingly, Section 223(a)(3) amended the Wiretap Act to state that "[a]ny willful

disclosure or use by an investigative or law enforcement officer or governmental entity of

information beyond the extent permitted by [the Wiretap Act] is a violation . . . of [the Act]."

*See* 18 U.S.C. § 2520(g). Similarly, Section 223(b)(3) amended ECPA to state that "[a]ny

willful disclosure of a 'record'. . . obtained by an investigative or law enforcement officer, or a

governmental entity, pursuant to 2703 of this title . . . that is not a disclosure made in proper

performance of the official functions of the officer or governmental entity making the disclosure,

is a violation of [ECPA]." *See* 18 U.S.C. § 2707(g). And Section 223(c)(1) added 18 U.S.C.

§ 2712, providing for money damages against the United States for a "willful violation" of FISA,

the Wiretap Act, and ECPA. The phrase "willful violation" in Section 223(c)(1) (18 U.S.C.

§ 2712) "gathers meaning" from the use of the term "willful" in its surrounding provisions. *See*

*Jones v. United States*, 527 U.S. 373, 389 (1999) (internal quotation omitted). In particular, a

"willful violation" in Section 223(c)(1) refers to the "willful disclosure" of intelligence

information by Government agents, as described by Section 223(a)(3) and (b)(3), and such

disclosures by the Government are the only actions that create liability against the United States.

Other provisions of Section 223 also address themselves to unauthorized disclosures by

Government agents. For example, Section 223(a)(2) and (b)(2) amended the Wiretap Act and

ECPA to provide for administrative discipline of Government agents who make such willful

disclosures. *See* 18 U.S.C. § 2520(f); 18 U.S.C. § 2707(d). Similarly, Section 223(c)(1)(a)

authorized suit against the United States for violations of specific sections of the FISA—sections

106(a), 305(a), and 405(a)—which also concern the use and disclosure by Federal officers of

information acquired from electronic surveillance, a physical search, or a pen register and trap

and trace device. *See* 18 U.S.C. § 2712(a) (authorizing suit for violations of 50 U.S.C.

§§ 1806(a), 1825(a), 1845(a)). Each of these provisions demonstrates that the "object and

policy" of Section 223 was to impose liability for unauthorized disclosures of intelligence information by Government agents. *See Belshe*, 188 F.3d at 1096.[3]

The legislative history of Section 223, though scarce, confirms that Section 2712(a) is intended to authorize suit against the United States solely for such alleged unauthorized disclosures by the Government. Section 223 was an amendment proposed by Representative Barney Frank during the consideration of the Patriot Act before the House Committee on the Judiciary. Citing the historical example of leaks by FBI Director J. Edgar Hoover against Dr. Martin Luther King, Jr., Mr. Frank explained that when law enforcement agents "inappropriate[ly] release . . . information garnered by surveillance," the victim of such leaks should have "the right to go into Federal court under the Federal Tort Claims Act before a federal judge and get damages from the Government." *Administration's Draft Anti-Terrorism Act of 2001: Hearing Before the H. Comm. on the Judiciary*, 107th Cong. 17 (2001), Exh. 3. The House Judiciary Committee approved the Frank amendment, recognizing that the Amendment "provide[d] for actions against the United States" "for unlawful disclosures obtained by [intelligence gathering]." H.R. REP. NO. 107-236(I), at 42 (2001), Exh. 4. Four years later, when Congress reauthorized 18 U.S.C. § 2712 and other provisions in the Patriot Act, it recognized that Section 2712 was limited to the "unauthorized disclosure of pen trap, wiretap, stored communications or FISA information." H.R. REP. NO. 109-174(I), at 496 (2005), Exh. 5.[4]

---

[3] This harmonious reading of all the provisions of Section 223 of the Patriot Act not only comports with proper statutory construction, *see Duncan*, 533 U.S. at 174; *Belshe*, 188 F.3d at 1096, but also with the Supreme Court's frequent admonition that courts should construe any purported waiver of sovereign immunity "strictly" and "in favor of the sovereign." *See Blue Fox*, 525 U.S. at 261; *Lane*, 518 U.S. at 192. Moreover, since there is a "plausible" interpretation of 18 U.S.C. § 2712 that does not waive sovereign immunity, the Court should adopt that interpretation. *See Nordic Village*, 503 U.S. at 33-37; *Dep't of Army v. Fed. Labor Relations Auth.*, 56 F.3d 273, 277 (D.C. Cir. 1995).

[4] A Congressional Research Service summary of the Patriot Act likewise explained that Section 223 "provide[s] for administrative discipline of Federal officers or employees who violate prohibitions against unauthorized disclosures of information gathered under this Act" and "[p]rovides for civil actions against the United States for damages by any person aggrieved by

Thus, both the text and legislative history of Section 223 of the Patriot Act make clear that a "willful violation" in 18 U.S.C. § 2712 means a willful, unauthorized disclosure of information by a Government agent. Plaintiffs do not allege any such disclosures, and thus the general reservations of sovereign immunity in 18 U.S.C. §§ 2520(a) and 2707(a) control plaintiffs' statutory claims for damages against the Government under Counts IX, XII, and XV.[5]

### 2. Congress Has Not Waived Sovereign Immunity in FISA Section 1810.

Plaintiffs' final claim for damages against the United States is under FISA, where plaintiffs assert that 50 U.S.C. § 1810 waives sovereign immunity (Count VI). Defendants recognizes that the Court found an "[i]mplicit" waiver of sovereign immunity under 50 U.S.C. § 1810 in *Al-Haramain Islamic Foundation, Inc. v. Bush*, 564 F. Supp. 2d 1109, 1124-25 (N.D. Cal. 2008). But the Government respectfully disagrees with the Court's conclusion and, for the record of this case, expressly reserve its position that Section 1810 contains no waiver of sovereign immunity to bring a damages claim against the United States.[6]

---

such violations." CRS Summary, H.R. 3162 (Oct. 24, 2001), Exhibit 6.

[5] Plaintiffs allege that the Government solicited, acquired, or received their communications from telecommunications carriers, not that Government agents disclosed intelligence information unlawfully (*See* Compl. ¶¶ 9-10, 13, 73-84, 90-97). Allegations that third parties made disclosures to the Government do not establish that the Government made unauthorized disclosures within the meaning of 18 U.S.C. § 2712. Moreover, nothing in any of the statutes upon which plaintiffs base their claims creates liability against the United States for allegedly aiding and abetting disclosures of third parties, and the Supreme Court has refused to impose such secondary civil liability absent any "congressional direction to do so." *Cent. Bank of Denver v. First Interstate Bank*, 511 U.S. 164, 183 (1994); *see also id.* at 177 ("If . . . Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text."). The Ninth Circuit has followed *Central Bank of Denver* by refusing to find a private cause of action under 18 U.S.C. § 2702 against those who allegedly aid and abet, or conspire with, electronic communication service providers in unlawfully disseminating the contents of electronic communications under ECPA. *Freeman v. DirecTV*, 457 F.3d 1001, 1004-09 (9th Cir. 2006).

[6] The Government briefed the sovereign immunity issue in the *Al-Haramain* action, *see* Memorandum of Points and Authorities in Support of Defendants' Second Motion to Dismiss or for Summary Judgment (Dkt. 17, Case No. 07-109-VRW) ("Defs. 2d MSJ Mem.") at 8-12; *see also* Defendants' Reply in Support of Defendants' Second Motion to Dismiss or for Summary Judgment (Dkt. 29, Case No. 07-109-VRW) ("Defs. 2d MSJ Reply") at 4-8.

Sovereign immunity cannot be waived implicitly; waivers of sovereign immunity must instead be explicit and unequivocal. *See Multi Denominational Ministry of Cannabis v. Gonzales*, 474 F. Supp. 2d 1133, 1140 (N.D. Cal. 2007) (Walker, C.J.); *see also Lane*, 518 U.S. at 192; *Sigman*, 217 F.3d at 792. Section 1810 creates a "cause of action against any person" who violates the provisions of 50 U.S.C. § 1809.[7] But Section 1810 does not mention suit against the United States, and the United States is not a "person" within the meaning of the statute. There is a "longstanding interpretive presumption that [the term] 'person' does not include the sovereign," *Vermont Agency of Nat. Res. v. United States*, 529 U.S. 765, 780 (2000) (collecting cases), and the presumption may be overcome "only upon some affirmative showing of statutory intent to the contrary." *Id*. FISA reveals no such intent. When Congress intends to waive the sovereign immunity of the United States, it knows how to do so expressly. *Cf. Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979); *Central Bank*, 511 U.S. at 176-77, 184. Notably, Congress expressly authorized actions for damages "against the United States" as to specific violations of FISA, *see* 18 U.S.C.§ 2712—but *not* as to alleged violations of Section 1810. Without such an express waiver, plaintiffs' FISA claim may not proceed.

**B.** **Congress Has Not Waived Sovereign Immunity for the Equitable Relief Plaintiffs Seek under FISA, the Wiretap Act, and ECPA.**

Plaintiffs' statutory claims for equitable relief (*see* Compl., Counts V, VII, X, XIII, XVI) fare no better. Again, plaintiffs' alleged bases for equitable relief for their Wiretap Act and ECPA claims are 18 U.S.C. § 2520, and 18 U.S.C. § 2707, which expressly reserve sovereign immunity by permitting claims only against a "person or entity, other than the United States." 18 U.S.C. §§ 2520(a), 2707(a). Plaintiffs base another claim for equitable relief on Section 1809, 50 U.S.C. § 1809, but nowhere in FISA has Congress waived sovereign immunity for equitable relief against the United States. And as discussed below, neither Section 702 of the APA nor the *Larson* doctrine supply the basis for such relief.

---

[7] FISA defines "person" to mean "any individual, including any officer or employee of the Federal Government, or any group, entity, association, corporation, or foreign power." 50 U.S.C. § 1801(m).

**1.  APA Section 702 Does Not Waive Sovereign Immunity Where Other Statutes Explicitly or Implicitly Bar Relief Against the United States.**

Section 702 of the APA provides a general waiver of sovereign immunity for suits seeking equitable relief against the United States based on "agency action," *see* 5 U.S.C. § 702, but Congress has also made clear that § 702 does not waive sovereign immunity "where some other statute controls." *Alaska v. Babbitt*, 38 F.3d 1068, 1072-73 (9th Cir. 1994) (*Babbitt I*). Section 702 emphasizes that "[n]othing herein . . . affects other limitations on judicial review [or] . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.* Because Congress has expressly forbidden relief for the plaintiff's Wiretap Act and ECPA claims (Counts VII, X, and XIII) by barring equitable relief against the United States in Sections 2520(a) and 2707(a) of Title 18, these specific and express reservations of sovereign immunity preclude jurisdiction under § 702 of the APA. *See Block v. North Dakota*, 461 U.S. 273, 284-86 & n.22 (1983) (holding there is no jurisdiction under § 702 when another statute expressly forbids relief by preserving sovereign immunity); *accord Alaska v. Babbitt*, 75 F.3d 449, 451-53 (9th Cir. 1996) (*Babbitt II*); *Hughes v. United States*, 953 F.2d 531, 537 (9th Cir. 1992).

In addition, the Supreme Court has held that "§ 702 provides no authority to grant relief when Congress has dealt in particularity with a claim and [has] intended a specified remedy to be the exclusive remedy." *Block*, 461 U.S. at 284-86 & n.22 (quoting H. REP. NO. 94-1656 at 13 (1976)) (rejecting claims under § 702 because the Quiet Title Act provided the "exclusive means" to challenge an action); *accord Babbitt II*, 75 F.3d at 452-53; *Babbitt I*, 38 F.3d at 1072-73. Congress has provided such an exclusive remedy for claims under the Wiretap Act and ECPA in 18 U.S.C. § 2712, which provides for damages only against the United States for certain willful disclosures by Government agents, and makes clear that "an action against the United States under this subsection shall be the exclusive remedy against the United States for any claims within the purview of this section." 18 U.S.C. § 2712(d). Plaintiffs cannot evade this exclusive damages remedy by seeking equitable relief under the APA, because "a precisely

drawn, detailed statute" such as Section 2712 "preempts more general remedies" under § 702. *See Block*, 461 U.S. at 285; *Babbitt II*, 75 F.3d at 453.

Similarly, plaintiffs' claim for equitable relief under Section 702 of the APA for an alleged violation of FISA (Compl., Count V) is also foreclosed. As outlined above, Congress limited recovery for violations of Section 1809 by permitting recovery only against a "person," and limiting such recovery to damages and fees. *See* 50 U.S.C. § 1810. Section 1810 thus forecloses equitable relief under § 702 of the APA for at least two reasons. First, by permitting relief only for damages, § 1810 "impliedly forbids declaratory and injunctive relief and precludes a § 702 waiver of sovereign immunity." *See Tuscon Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 646 (9th Cir. 1998) (holding the same for the Tucker Act) (internal quotation omitted); *accord North Side Lumber Co. v. Block*, 753 F.2d 1482, 1484-85 (9th Cir. 1985). Second, by choosing to permit recovery only against a person, Congress implicitly prohibited recovery against the United States. *See supra* Sec. I(A)(2).

Accordingly, the Court lacks subject matter jurisdiction to grant plaintiffs' claims for equitable relief under FISA, the Wiretap Act, and ECPA pursuant to Section 702 of the APA.[8]

## 2. *Larson* Fails to Provide an Independent Basis for Equitable Relief.

Plaintiffs' reliance on *Domestic and Foreign Commerce Corp. v. Larson* to support their statutory claims for equitable relief likewise fails. In *Larson*, the Supreme Court rejected the notion that no waiver of sovereign immunity was required for a suit against a Government official for acts he committed in his official capacities. 337 U.S. at 703. The Court went on to observe in dicta that there may be certain circumstances where, if an officer of the United States takes action that is unconstitutional or beyond his statutory authority, a suit against him for equitable relief is not a suit against the sovereign, and no waiver of sovereign immunity is necessary. *See Larson*, 337 U.S. at 689-90, 701-02. In the context of state sovereign immunity, the Supreme Court has described *Larson*'s *ultra vires* exception as "questionable," *Pennhurst*

---

[8] Plaintiffs also bring a freestanding APA claim that is not tied to another statute (Count XVI). This claim fails because § 702 of the APA "does not confer jurisdiction independent of some other specific statute." *Territory of Guam v. HHS*, 997 F.2d 1290, 1292 (9th Cir. 1993).

State School & Hosp. v. Halderman, 465 U.S. 89, 116 n.27 (1984), and has emphasized that any exception must be "very narrow" in order to preserve the principle of sovereign immunity. *See id.* at 114 n.25. The narrow exception does not apply here.

First, as with plaintiffs' APA claims, *Larson* "provides no authority to grant relief," because Congress has created an exclusive remedy in 18 U.S.C. § 2712, and that statute's "precisely drawn, detailed" provisions "preempt[] more general remedies" under *Larson*. *See Block*, 461 U.S. at 284-86 & n.22; *Babbitt II*, 75 F.3d at 451-53. Second, even if *Larson* provided an avenue for relief, plaintiffs cannot establish a *Larson* claim because "the effect of the relief sought" would run against the United States. *See Pennhurst*, 465 U.S. at 107 (emphasis omitted). Plaintiffs allege that the equitable relief they seek would halt widespread intelligence-gathering activity of the United States, and thus there is no question that plaintiffs seek relief that "would . . . restrain the Government from acting, or . . . compel it to act," or "interfere with the public administration." *Pennhurst*, 465 U.S. at 102 n.11 (quoting *Dugan*, 372 U.S. 609,620 (1963)); *see also Hawaii v. Gordon*, 373 U.S. 57, 58 (1963). The Ninth Circuit has repeatedly dismissed such *ultra vires* theories. *See Cent. Res. Life of North America Ins. Co. v. Struve*, 852 F.2d 1158, 1159-60, 1161 (9th Cir. 1988) (holding that "it cannot be seriously maintained" that a suit seeking an injunction ordering a state official to approve the marketing of insurance within the state was not against the sovereign); *Aminoil U.S.A., Inc. v. Cal. State Water Ctrl. Bd.*, 674 F.2d 1227, 1234 (9th Cir. 1982) (holding that a suit nominally against a federal official, which sought a determination that the official acted beyond the scope of his statutory authority was, in reality, a suit against the United States that would "preclude the [official] in his official capacity from enforcing the [law]."); *see also Palomar Pomerado Health Sys. v. Belshe*, 180 F.3d 1104, 1108 (9th Cir. 1999) (holding that where plaintiff sought an injunction that would restrain a state from reducing medical payment rates charged by plaintiff, relief would interfere with public administration and was thus barred absent waiver of sovereign immunity).

## II. INFORMATION SUBJECT TO THE STATE SECRETS PRIVILEGE AND RELATED STATUTORY PRIVILEGES IS NECESSARY TO LITIGATE THIS CASE AND MUST BE EXCLUDED FROM FURTHER PROCEEDINGS.

Apart from the jurisdictional defects of plaintiffs' statutory claims against the Government, all of plaintiffs' claims in this case would require or risk the disclosure of information properly protected by the DNI's assertion of the state secrets privilege. Plaintiffs' Complaint quite clearly seeks disclosure of whether or to what extent the Government may have utilized certain intelligence sources and methods after the 9/11 attacks in order to detect and prevent further attacks. It also seeks disclosure of whether any of the alleged activities (if they exist) are ongoing. As set forth below, the Director of National Intelligence (supported by the NSA) has properly asserted privilege to protect such information from disclosure in order to prevent exceptionally grave harm to national security.

### A. The State Secrets Privilege Bars Use of Privileged Information In Litigation.

"The state secrets privilege is a common law evidentiary privilege that permits the government to bar the disclosure of information if 'there is a reasonable danger' that disclosure will 'expose military matters which, in the interests of national security, should not be divulged.'" *Al-Haramain Islamic Found. v. Bush*, 507 F.3d 1190, 1196 (9th Cir. 2007) (quoting *United States v. Reynolds,* 345 U.S. 1, 10 (1953)). The ability of the executive to protect state secrets from disclosure in litigation has been recognized from the earliest days of the Republic. *See Totten v. United States*, 92 U.S. 105 (1875); *United States v. Barr*, 25 F. Case 30 (C.C.D. Va. 1807); *Reynolds*, 345 U.S. at 7-9; *Al-Haramain*, 507 F.3d at 1196-97; *Kasza*, 133 F.3d at 1165-66 (discussing cases); *see also Hepting*, 439 F. Supp. 2d at 98-981.[9] The privilege protects a broad range of information, including the "disclosure of intelligence-gathering methods or capabilities." *See Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983) (footnotes omitted); *accord Al-Haramain*, 507 F.3d 1202-03 (holding that state secrets privilege precludes disclosure

---

[9] The privilege has a firm foundation in the constitutional authority of the President under Article II to protect national security information. *See Dept. Of the Navy v. Egan*, 484 U.S. 518, 527 (1988); *United States v. Nixon*, 418 U.S. 683, 710-11 (1974) (recognizing the President's constitutional authority to protect national security information) (citing *Reynolds*); *see also El-Masri v. United States*, 479 F.3d 296, 304 (4th Cir. 2007).

of whether plaintiffs were subject to foreign intelligence surveillance);[10] *see also Halkin v. Helms*, 690 F.2d 977, 990 (D.C. Cir. 1982) (*Halkin II*) (holding that state secrets privilege protects intelligence source and methods involved in NSA surveillance). The privilege also protects information that on its face may appear innocuous, but in a larger context could reveal sensitive classified information. *Kasza*, 133 F.3d at 1166.

An assertion of the state secrets privilege "must be accorded the 'utmost deference' and the court's review of the claim of privilege is narrow." *Kasza*, 133 F.3d at 1166; *see also Al-Haramain*, 507 F.3d at 1203 ("[W]e acknowledge the need to defer to the Executive on matters of foreign policy and national security and surely cannot legitimately find ourselves second guessing the Executive in this arena"). Aside from ensuring that the privilege has been properly invoked as a procedural matter, the sole determination for the court is whether, "under the particular circumstances of the case, 'there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged.'" *Kasza*, 133 F.3d at 1166 (quoting *Reynolds,* 345 U.S. at 10). Moreover, the Ninth Circuit has made clear that the focal point of review is whether the Government has identified a reasonable danger to national security—not a court's own assessment as to whether information is a secret or its disclosure would cause harm. *See Al-Haramain*, 507 F.3d at 1203 ("[J]udicial intuition . . . is no substitute for documented risks and threats posed by the potential disclosure of national security information."); *see also CIA v. Sims,* 471 U.S. 159, 180 (1985) ("It is the responsibility of the [intelligence community], not that of the judiciary to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the . . . intelligence-gathering process."); *Halkin v. Helms*, 598 F.2d 1, 8-9 (D.C. Cir. 1978) (*Halkin I*) ("'[C]ourts, of course, are ill-equipped to become sufficiently steeped in

---

[10] The Government recognizes that the Ninth Circuit in *Al-Haramain* remanded for consideration of whether the state secrets privilege is preempted by the Foreign Intelligence Surveillance Act, *see Al-Haramain*, 507 F.3d at 1205-06, and that this Court has ruled that the privilege is preempted by the FISA, *see Al-Haramain*, 564 F. Supp. 2d at 1115-125. As set forth below, the Government expressly preserves its position that the FISA does not preempt the state secrets privilege or other statutory privileges.

foreign intelligence matters to serve effectively in the review of secrecy classifications in that area.'") (quoting *United States v. Marchetti*, 466 F.2d 1309, 1318 (4th Cir. 1972)). In addition, in assessing whether to uphold a claim of privilege, the court does not balance the respective needs of the parties for the information. Rather, "[o]nce the privilege is properly invoked and the court is satisfied that there is a reasonable danger that national security would be harmed by the disclosure of state secrets, the privilege is absolute" and cannot be overcome by even the most compelling need in the litigation. *Kasza*, 133 F.3d at 1166; *see also Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 399 (D.C. Cir. 1984); *Ellsberg*, 709 F.2d at 57.

## B. The United States Has Properly Asserted the State Secrets and Related Statutory Privileges in this Case.

The United States has properly asserted and supported the state secrets privilege in this case. First, as a procedural matter, "[t]here must be a formal claim of privilege, lodged by the head of the department that has control over the matter, after actual personal consideration by the officer." *Reynolds,* 345 U.S. at 7-8 (footnotes omitted). Here, the Director of National Intelligence, who is head of the United States Intelligence Community, *see* 50 U.S.C. § 403 (b)(1); *Al-Haramain*, 507 F.3d at 1202 n.6, has formally asserted the state secrets privilege after personal consideration of the matter. *See* Public and Classified *In Camera*, *Ex Parte* Declarations of Admiral Dennis C. Blair, Director of National Intelligence.[11] Second, the Government has amply demonstrated in these submissions that there is a reasonable danger that disclosure of the privileged information would cause exceptionally grave harm to national security.

Plaintiffs' allegations implicate several facts at the heart of the Government's privilege assertion. First, plaintiffs allege that they have been personally subject to alleged NSA intelligence activities. *See e.g.* Compl. ¶¶ 9, 10. But the DNI has explained that the disclosure of information concerning whether or not plaintiffs have been subject to alleged NSA intelligence activity would inherently reveal NSA intelligence sources and methods. Whether specific individuals were targets of alleged NSA activities would either reveal who is subject to

---

[11] The DNI's assertion of privilege is supported by the Public and Classified *In Camera*, *Ex Parte* Declarations of Deborah A. Bonanni, Chief of Staff, National Security Agency.

investigative interest—helping that person to evade surveillance—or who is not—thereby revealing the scope of intelligence activities as well as the existence of secure channels for communication.  *See* Public DNI Decl. ¶ 13; Public NSA Decl. ¶ 11-12.

Second, plaintiffs allege that they have been subject to a dragnet on the content of their communications, as well as the collection of their communication records, as part of an alleged presidentially-authorized program after the 9/11 attacks.  *See*, *e.g.*, Compl. ¶ 7.  But the facts necessary to litigate these allegations are also properly excluded by the DNI's privilege assertion. The DNI explains that, as the Government has previously indicated, the NSA's collection of the content[12] of communications under the now inoperative Terrorist Surveillance Program ("TSP") was directed at international communications in which a participant was reasonably believed to be associated with al Qaeda or an affiliated terrorist organization, and thus plaintiffs' allegation that the NSA has indiscriminately collected the content of millions of communications sent or received by people inside the United States after 9/11 under the TSP is false.  *See* Public DNI ¶ 15; *see also* Public NSA Decl. ¶ 14.  But attempting to demonstrate that the TSP was not the content dragnet plaintiffs allege, or that the NSA has not otherwise engaged in the alleged content dragnet, would require the disclosure of highly classified NSA intelligence sources and methods about the TSP and other NSA activities.  *See* Public DNI Decl. ¶ 15; *see also* Public NSA Decl. ¶¶ 15-16.  The DNI has also explained that confirmation or denial of whether the NSA has collected communication records would cause exceptional harm to national security by disclosing whether or not NSA utilizes certain intelligence sources and methods and thereby revealing the capability and operations or lack thereof for foreign adversaries to exploit.  *See* Public DNI Decl. ¶ 16; *see also* Public NSA Decl. ¶ 15.  Indeed, this Court has previously barred discovery into allegations concerning communications records, *see Hepting*, 439 F. Supp. 2d at 997, and the harms outlined by the DNI warrant no alteration of the Court's conclusion.[13]  Indeed, the Court in

---

[12] The term "content" is used herein and by the DNI to refer to the substance, meaning or purport of a communication, as defined in 18 U.S.C. § 2510(8).  *See* Public DNI Decl. ¶ 14 n.1.

[13] While the Court in *Hepting* did not conclude that the state secrets privilege bars disclosure of whether or not such a program exists or whether AT&T was involved, *see Hepting*,

*Terkel v. AT&T Corp.*, 441 F. Supp. 2d 899, 917 (N.D. Ill. 2006), addressing an identical allegation, *upheld* the Government's state secrets privilege assertion to preclude disclosure of whether the Government was obtaining large quantities of communications records in order to protect against the disclosure of information that would allow adversaries to gain valuable insight into the Government's intelligence activities.

Finally, all of plaintiffs' claims require the disclosure of whether or not AT&T assisted the Government in alleged intelligence activities, and the DNI again has demonstrated that disclosure of whether the NSA has an intelligence relationship with a particular private company would also cause exceptional harm to national security—among other reasons by revealing to foreign adversaries which channels of communication may or may not be secure. *See* Public DNI Decl. ¶ 17; Public NSA Decl. ¶ 16. Again, in *Terkel*, the court upheld the Government's privilege assertion over whether AT&T in particular has disclosed communications records to the Government. *See* 441 F. Supp. 2d at 917.

In sum, the DNI's privilege assertion is amply supported and clearly demonstrates there is a reasonable danger that disclosure of the privileged information would harm national security.[14]

---

439 F. Supp. 2d at 977, the Government's privilege assertion demonstrates that plaintiffs' communications records allegation concerns information that should be excluded from the litigation, and claims based on this allegation should be dismissed.

[14] Both the DNI and the NSA have asserted statutory privileges to protect the information at issue, underscoring that the protection of the privileged information is not only supported by the judgment of the Executive, but also pursuant to authority delegated by Congress. First, Section 6 of the National Security Agency Act of 1959, Pub. L. No. 86-36, § 6, 73 Stat. 63, 64, codified at 50 U.S.C. § 402 note, forecloses "disclosure of the organization or any function of the National Security Agency, of any information with respect to the activities thereof. . . ." Second, Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 10-458, 118 Stat. 3638 (Dec. 17, 2004), codified at 50 U.S.C. § 403-1(i)(1), requires the Director of National Intelligence to protect intelligence sources and methods from unauthorized disclosure. The information subject to these statutory privileges is co-extensive with the assertion of the state secrets privilege by the DNI. *See* Public DNI Decl. ¶ 10; Public NSA Decl. ¶ 10. Notably, in *People for the American Way Found v. NSA* ("*PFAW*"), 462 F. Supp. 2d 21 (D.D.C. 2006), the court applied Section 6 of the National Security Act to bar disclosure under FOIA of information related to the operation of the Terrorist Surveillance Program, including whether the plaintiffs in that case had been subject to TSP surveillance, and recognized as well that this information would be protected by the DNI's statutory privilege. *See*

### III. WHERE STATE SECRETS ARE NEEDED TO LITIGATE PLAINTIFFS' CLAIMS, THE CASE CANNOT PROCEED.

Once the Court has upheld a claim of the state secrets privilege, the evidence and information identified in the privilege assertion is "completely removed from the case," *Kasza,* 133 F.3d at 1166, and the Court must undertake a separate inquiry to determine the consequences of this exclusion on further proceedings. First, if the plaintiffs cannot establish their standing as a factual matter without the excluded state secrets, then the privilege assertion (unless preempted) would require dismissal. *See Al-Haramain*, 507 F.3d at 1204-05. Similarly, if the plaintiffs cannot make out a *prima facie* case in support of their claims absent the excluded state secrets, the court should enter summary judgment for the United States because the evidence needed to adjudicate the merits is unavailable. *See Kasza*, 133 F.3d at 1176 (affirming entry of summary judgment for the United States on state secrets privilege grounds). Likewise, if the privilege "'deprives the *defendant* of information that would otherwise give the defendant a valid defense to the claim, then the court may [also] grant summary judgment to the defendant.'" *Kasza*, 133 F.3d at 1166 (quoting *Bareford*, 973 F.2d at 1141) (emphasis in original); *accord Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544, 547 (2d Cir. 1991).

In addition, courts have also considered the related question of whether the "very subject matter" of the case warrants dismissal as a threshold matter. *See Al-Haramain*, 507 F.3d at 1197-1201; *see also Kasza*, 133 F.3d at 1166 (citing *Reynolds,* 345 U.S. at 11 n.26). The Ninth Circuit has recognized that "a bright line does not always separate the subject matter of the lawsuit from the information necessary to establish a prima facie case," and that "in some cases there may be no dividing line." *Al-Haramain*, 507 F.3d at 1201.[15] The court also observed that in some cases

---

*id*. at 29, 31 & n.8. Likewise, in *Wilner v. National Security Agency*, No. 07 Civ. 3883, 2008 WL 2567765, at **4-5, (S.D. N.Y. June 25, 2008) (appeal pending), the court applied Section 6 to bar disclosure of whether the plaintiffs had been subject to TSP surveillance.

[15] *See, e.g., Kasza*, 133 F.3d at 1170 (finding that the very subject matter of the case is a state secrets because "[n]ot only does the state secrets privilege bar [plaintiff] from establishing her *prima facie* case on any of her eleven claims, but any further proceedings in this matter would jeopardize national security").

"the suit itself may not be barred because of its subject matter and yet, ultimately, the state secrets privilege may nonetheless preclude the case from proceeding to the merits." *Id.*[16] Here, plaintiffs do not challenge the publicly acknowledged Terrorist Surveillance Program, but allege that other "dragnet" activities were authorized after 9/11 and are ongoing, including the alleged collection of communication records. Dismissal of these allegation would thus be appropriate on the ground that its very subject matter would inherently risk or require the disclosure of state secrets. But, to be clear, the Government does not seek dismissal merely on this basis, but seeks summary judgment, as permitted by *Kasza*, on the ground that the Government's privilege assertions exclude the very information necessary for plaintiffs to establish their standing or a prima facie case, as well as information relevant to the defense of both the Government and personal capacity defendants.

### A. Standing Cannot be Established or Refuted Without the Disclosure of State Secrets and Harm to National Security.

The fundamental, threshold issue of plaintiffs' standing cannot be adjudicated without state secrets. Plaintiffs, of course, bear the burden of establishing standing and must, at an "irreducible constitutional minimum," demonstrate (1) an injury-in-fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). In meeting that burden, plaintiffs must demonstrate an actual or imminent—not speculative or hypothetical—injury that is particularized as to them; they cannot rely on alleged injuries to unnamed members of a purported class. *See, e.g.*, *Warth v. Selden*, 422 U.S. 490, 502 (1975); *see also Ellsberg*, 709 F.2d at 65. Moreover, to obtain prospective relief, plaintiffs must show that they are currently subject to an alleged activity or otherwise "immediately in danger of sustaining some direct injury" as the result of the challenged conduct. *City of Los Angeles v. Lyons*, 461

---

[16] *Al-Haramain* itself was such a case. The Ninth Circuit held that the "very subject matter of the case" was not a state secret based on several public disclosures by the Government as to the existence of the Terrorist Surveillance Program. *See* 507 F.3d at 1197-1200. But the court nonetheless held that the case would have to be dismissed on the ground that the state secrets privilege precluded plaintiffs from establishing their standing (unless the FISA preempted that privilege). *See id.* at 1205.

U.S. 95, 102 (1983).  Plaintiffs cannot rest on general allegations in their Complaint, but must be able to set forth specific facts that establish their standing to obtain the relief sought.  *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (quoting *Lujan*, 504 U.S. at 561).

Here, the DNI has properly asserted privilege over facts essential for plaintiffs to establish their standing, or for the Government to respond to their allegations of injury,[17] and courts have consistently recognized the dismissal is necessary in these circumstances.  In *Al-Haramain*, the Ninth Circuit upheld the Government's assertion of the state secrets privilege (unless otherwise preempted by FISA) and found that it foreclosed plaintiffs there from establishing their standing as a factual matter.  *See* 507 F.3d at 1205.[18]  Likewise, in *Terkel*, *supra*, the court dismissed the very claim at issue here—whether AT&T had disclosed communication records to the Government—because the state secrets privilege foreclosed plaintiffs from establishing their standing.  *See* 441 F. Supp. 2d at 919-20.  The Sixth Circuit has also rejected standing based on a "well founded belief"—as opposed to actual evidence— that communications were being intercepted under the TSP.  *See American Civil Liberties Union v. NSA*, 493 F.3d 644, 656, (6th Cir. 2007) (Batchelder, J.) (where states secrets privilege prevents discovery of evidence of standing, allegations of harm held to be speculative and insufficient); *see also id*. at 692 (Gibbons, J. concurring) (dismissal required where state secrets privilege prevents plaintiffs from establishing whether they were subject to TSP or government from presenting evidence to refute that allegation).[19]

---

[17]  The Government and personal capacity defendants likewise would not be able to present any evidence in an attempt to disprove plaintiffs' standing without information covered by the state secrets privilege assertion (*e.g.*, whether or not a particular person's communications were intercepted).  *See Halkin I*, 598 F.2d at 11 (rejecting contention that acquisition of plaintiff's communication may be presumed from certain facts because "such a presumption would be unfair to the individual defendants who would have no way to rebut it").

[18]  Again, the Government preserves its position that FISA Section 1806(f) does not preempt the state secrets privilege or authorize a court to invoke its procedures in order to adjudicate whether or not a party has in fact been subject to surveillance and has standing.

[19]  A similar state secrets assertion was upheld in *Halkin II*.  *See* 690 F.2d at 998 (holding that plaintiffs' inability to adduce proof of actual acquisition of their communications rendered them incapable of making the showing necessary to establish their standing to seek relief); *see*

The Government's privilege assertion also precludes plaintiffs from establishing standing as to any statutory claim that may survive the Government's motion to dismiss. For each cause of action, plaintiffs must establish, as a threshold matter, that they have been "aggrieved"—that is, subject to the alleged action being challenged.[20] Because plaintiffs cannot adduce proof that the content of their communications has been collected by the Government, or that their communications records likewise have been obtained by the Government, the most basic element of every claim—their standing as "aggrieved persons"—cannot be established.

It bears emphasis that plaintiffs' allegation of a "dragnet" of surveillance by the NSA—the alleged interception of communication content and records of millions of domestic and international communications made by ordinary Americans, *see, e.g.* Compl. ¶ 7—does not establish their standing. Even if that allegation were sufficient to avoid dismissal on the pleadings, plaintiffs would be required to demonstrate that they personally have been subject to the alleged communications dragnet, and the information relevant to doing so is properly protected by the state secrets privilege. Plaintiffs cannot establish the existence of an alleged *content* dragnet (previously denied by the Government, *see Hepting*, 439 F. Supp. 2d at 996), or its application to them personally without the disclosure of NSA intelligence sources and

---

*also Ellsberg*, 709 F.2d at 51 (holding that dismissal was warranted where a plaintiff could not, absent recourse to state secrets, establish that he was actually subject to surveillance). *See also PFAW,* 462 F. Supp. 2d at 28-32; *Wilner*, 2008 WL 2567765, at **4-8 (barring disclosure under FOIA of whether plaintiffs had been subject to surveillance under the TSP).

[20] With respect to plaintiffs' claim for damages under FISA Section 1810, the term "aggrieved person" is "coextensive [with], but no broader than, those persons who have standing to raise claims under the Fourth Amendment with respect to electronic surveillance," H.R. REP. NO. 95-1283, at 66 (1978); *see also Rakus v. Illinois*, 439 U.S. 128, 132 n.2 (1978) (a party raising a Fourth Amendment claim "must allege such a personal stake or interest in the outcome of the controversy as to assure the concrete adverseness which Art. III requires."). Similarly, under the Wiretap Act, 18 U.S.C. § 2510, civil actions may be brought only by a "person whose . . . communication is intercepted, disclosed, or intentionally used." 18 U.S.C. § 2520(a). The Stored Communication Act likewise limits it civil remedies to "person[s] aggrieved" under the statute, *id*. § 2707(a); *see id.* 2711(1) (adopting § 2510(11) definition of "aggrieved person" as one "who was a party to any intercepted . . . communication" or "a person against whom the interception was directed"). Each of these provision reflects the fundamental point that only persons who can establish factually that their own rights were injured by the actual interception or disclosure of their own communications (or records) have Article III standing to proceed.

methods. Similarly, plaintiffs cannot establish standing based on allegations that *records* concerning their communications were collected as part of (or apart from) the alleged communications dragnet. As this Court noted in *Hepting*, "the government has neither confirmed nor denied whether it monitors communication records and has never publicly disclosed whether [such a program] actually exists," *see* 493 F. Supp. 2d at 997, and the Court further recognized, in barring discovery on this claim in *Hepting*, that:

> Revealing that a communication records program exists might encourage that terrorist to switch to less efficient but less detectable forms of communication. And revealing that such a program does not exist might encourage a terrorist to use AT&T services when he would have done so otherwise.

*Id.*; *accord*, *Terkel*, 441 F. Supp. 2d at 917. The Government's privilege assertion as to this allegation again demonstrates the exceptional harm to national security that would result from any further proceedings on this allegation. For this reason, plaintiffs cannot sustain their burden of showing that such a program exists, much less satisfy their burden of establishing standing by showing that *their* communication records were collected under such an alleged program.

**B.      The Disclosure of Privileged Information Would Also be Required to Adjudicate Plaintiffs' Claims on the Merits.**

Beyond the fact that plaintiffs cannot obtain evidence to establish standing, still more state secrets would be required to litigate each of plaintiffs' claims on the merits. For example, plaintiffs' "content" surveillance claims would require proof not only of an alleged interception of their communications, but that any such interception met the highly specific definition of "electronic surveillance" under the FISA, which includes *inter alia*, interception of a communication on a wire inside the United States. *See* 50 U.S.C. § 1809; 1801(f). This would require disclosure of specific facts concerning where and how any communications were intercepted—information that would reveal precise intelligence sources and methods under which content may be captured by the Government (if at all). Another element of plaintiffs' FISA claim would require proof that the Government intentionally disclosed or used information obtained under color of law by electronic surveillance, knowing or having reason to know the information was obtained through unauthorized electronic surveillance. *See* 50 U.S.C. § 1809. Thus,

assuming the content of their communications had been intercepted at all, plaintiffs still would have to show an intentional disclosure or use of that information to support this aspect of their FISA claim—information that, again, would either reveal the existence of foreign intelligence interest in plaintiffs or their communicants or, conversely, the lack thereof—in either case revealing the scope of NSA intelligence activities.[21]

Similarly, for their ECPA claims, plaintiffs would have to show that the Government required an electronic communication service provider to disclose the content of plaintiffs' communications in electronic storage, and whether or not such a disclosure occurred pursuant to a court order or statutory authority.  *See* 18 U.S.C. § 2703(a), (b).  With respect to plaintiffs' ECPA claim concerning the alleged collection of communication records, *see* 18 U.S.C. § 2703(c), not only must there be official confirmation or denial of the existence of the alleged activity but, if that activity were confirmed, plaintiffs must adduce proof concerning the scope and operation of any such program, including, for example, whether it actually encompassed plaintiffs' records, when and how it may have done so, whether any such records were put to any use and in what manner, and again whether any such action was authorized by court order or statute.  In any event, litigation of plaintiffs' ECPA claims would require or risk disclosure of intelligence sources and methods as to whether or not, or when and how, the content of plaintiffs' wire or electronic communications, or records of their communications, were obtained by the Government.

Plaintiffs' related Fourth and First Amendment claims both put at issue not only whether plaintiffs' individual communications (content or records) were collected, but whether there existed a reasonable basis for the particular search or seizure, whether exigent circumstances

---

[21] Likewise, plaintiffs' Wiretap Act claims would require proof that one of plaintiffs' wire or electronic communications, as defined in the Act (*see* 18 U.S.C. § 2510 (1), (12)), had been intercepted—information that would reveal particular intelligence methods were or were not used to target plaintiffs' communications.  If such an interception had occurred, plaintiffs must then show that the content of their communications, defined to mean the "substance, meaning or purport" of the communication (*see* 18 U.S.C. § 2510(8)), was knowingly disclosed and used in violation of the Act.  *See* 18 U.S.C. § 2511(1)(c) and (d).

warranted any action at issue, and what specific information was actually obtained, viewed, used, or disclosed by the Government. Fourth Amendment claims require fact-specific determinations, including whether a search was undertaken, under what authority, whether it violated an expectation of privacy, and why the Government may have acted. *See, e.g.*, *O'Connor v. Ortega*, 480 U.S. 709, 718 (1987) ("'what is reasonable depends on the context within with a search takes place'") (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 334-35 (1985)). And if the Government obtained only non-content informational records, there may be no Fourth Amendment issue at all.[22]

In addition, as to all of the foregoing claims, the plaintiffs again would have to obtain confirmation or denial as to whether AT&T participated in the alleged activity, as well as where, how, and to what extent, to determine if any such participation involved plaintiffs' communications. The DNI has set forth a more than reasonable basis to conclude that harm to national security would result from the disclosure of whether the NSA has worked with any telecommunications carrier in conjunction with the alleged activities. Indeed, this Court previously has observed that it is not in a position to second-guess the DNI's judgment regarding a terrorist's risk preferences for picking a communications carrier—a judgment that might depend on an array of facts not before the Court. *Hepting,* 439 F. Supp. 2d at 990, 997.

Plaintiffs' allegations with respect to AT&T are also foreclosed by the *Totten/Tenet* doctrine, in which the Supreme Court has made clear that litigation that would risk the disclosure of an alleged espionage relationship is barred per se.

> The possibility that a suit may proceed and an espionage relationship may be revealed, if the state secrets privilege is not found to apply, is unacceptable: "Even a small chance that some court will order disclosure of a source's identity could well impair intelligence gathering and cause sources to 'close up like a clam.'"

---

[22] *See Smith v. Maryland*, 442 U.S. 735, 742-46 (1979) (holding that individuals have no legitimate expectation of privacy in the numbers they dial on the telephone and pen register search of such information does not constitute a search for Fourth Amendment purposes); *United States v. Forrester*, 512 F.3d 500,10 (9th Cir. 2007) ("[E]-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information." ).

*See Tenet v. Doe*, 544 U.S. 1, 11 (2005) (quoting *CIA v. Sims*, 471 U.S. at 175). Plaintiffs' allegations with respect to AT&T must be dismissed for this independent reason as well.[23]

Finally, adjudication of the merits would require disclosure of whether any of the alleged activities (if they exist) are ongoing, or occurred only during certain periods, or were authorized at some point by statute or court order. Disclosure of such information would be relevant not only to the question whether any prospective relief is appropriate, but also whether plaintiffs may seek damages for any past alleged violation.[24] In either case, such disclosures again would reveal a range of facts concerning whether, when, how, why, and under what authority the NSA may have utilized certain intelligence sources and methods—information that is subject to the Government's privilege assertion and cannot be disclosed without risking exceptionally grave harm to national security.

## IV.    LITIGATION OF PLAINTIFFS' CLAIMS CANNOT PROCEED UNDER FISA.

Finally, as noted above, the Government reserves its position that the FISA does not preempt the state secrets privilege. We recognize the Court has addressed this issue in the *Al-Haramain* action and is unlikely to change its view. Thus, the Government will not brief the

---

[23] In enacting the FISA Act Amendments Act of 2008, the Senate Select Committee on Intelligence ("SSCI") found that the "details of the President's program are highly classified" and that, as with other intelligence matters, the identities of persons or entities who provide assistance to the U.S. Government are protected as vital sources and methods of intelligence." *See* S. Rep. 110-209 at 9 (Dkt. 469-2). Notably, the SSCI expressly stated that "[i]t would be inappropriate to disclose the names of the electronic communication service providers from which assistance was sought, the activities in which the Government was engaged or in which providers assisted, or the details regarding any such assistance," because "identities of persons or entities who provide assistance to the intelligence community are properly protected as sources and methods of intelligence." *Id.*

[24] For example, plaintiffs' "separation of powers" claim seeks only prospective equitable relief as to ongoing activities allegedly authorized by the President pursuant to his Article II powers. *See* Compl., Count XVII. But the sole basis for this allegation remains media reports concerning activities allegedly authorized in 2001, and the Government's acknowledgment of the Terrorist Surveillance Program in 2005. The TSP ended in 2007, and plaintiffs' allegations as to any ongoing "dragnet" authorized by the President is sheer speculation that could not be addressed in further litigation without the disclosure of classified intelligence sources and methods.

matter again at length but incorporates by reference its prior detailed discussion of the issue.[25]  In sum, we simply reiterate our position that the state secrets privilege, which is rooted in the constitutional authority of the President as well as the common law, cannot be preempted absent an unmistakably clear directive by Congress that it intended to do so.  Nothing in the text or legislative history of the FISA says anything about preempting the state secrets privilege—let alone reflects a clear and unambiguous intention to do so.  In particular, Section 1806(f) of FISA only applies where the Government has acknowledged surveillance and seeks to use surveillance evidence in a court proceeding.  *See* 18 U.S.C. § 1806 ("Use of Information").  Most importantly, that provision cannot be read (and has never been applied) to compel the Government to disclose (or risk the disclosure of) information concerning intelligence sources and methods that the Government chooses to protect.

## CONCLUSION

For the foregoing reasons, the Court should dismiss plaintiffs' statutory claims for lack of jurisdiction, uphold the Government's privilege assertions, enter summary judgment for the Government Defendants, and dismiss the case as to all defendants and all claims.

April 3, 2009                               Respectfully Submitted,

                                            MICHAEL F. HERTZ
                                            Acting Assistant Attorney General

                                            DOUGLAS N. LETTER
                                            Terrorism Litigation Counsel

                                            JOSEPH H. HUNT
                                            Director, Federal Programs Branch

                                            VINCENT M. GARVEY
                                            Deputy Branch Director


                                             *s/ Anthony J. Coppolino*
                                            ANTHONY J. COPPOLINO
                                            Special Litigation Counsel

---

[25]  The Section 1806(f) issue was addressed at length by the Government in the *Al-Haramain* action.  *See* Defs. 2d MSJ at 12-24 (Dkt. 17, 07-109-VRW); and Defs. 2d MSJ Reply at 8-24 (Dkt. 29 in  07-109-VRW).

*s/ Paul G. Freeborne*
PAUL G. FREEBORNE

*s/ Marc Krickbaum*
MARC KRICKBAUM

Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782
Fax: (202) 616-8460
Email: tony.coppolino@usdoj.gov

*Attorneys for the Government Defendants
Sued in their Official Capacity*