1  MICHAEL F. HERTZ
   Acting Assistant Attorney General, Civil Division
2  DOUGLAS N. LETTER
   Terrorism Litigation Counsel
3  JOSEPH H. HUNT
   Director, Federal Programs Branch
4  VINCENT M. GARVEY
   Deputy Branch Director
5  ANTHONY J. COPPOLINO
   Special Litigation Counsel
6  MARCIA BERMAN
   PAUL G. FREEBORNE
7  Trial Attorneys
   U.S. Department of Justice
8  Civil Division, Federal Programs Branch
   20 Massachusetts Avenue, NW, Rm. 6102
9  Washington, D.C. 20001
   Phone: (202) 514-4782
10 Fax: (202) 616-8460

11 *Attorneys for the Government Defendants*
   *Sued in their Official Capacity*

12

# UNITED STATES DISTRICT COURT

13

# NORTHERN DISTRICT OF CALIFORNIA

14

## SAN FRANCISCO DIVISION

15

16 _____    Case No. C:08-cv-4373-VRW
                                  )
17 CAROLYN JEWEL, TASH HEPTING,   )   **GOVERNMENT DEFENDANTS'**
   GREGORY HICKS, ERIK KNUTZEN, and )   **REPLY IN SUPPORT OF MOTION**
18 JOICE WALTON,                  )   **TO DISMISS AND FOR SUMMARY**
                                  )   **JUDGMENT**
19           *Plaintiffs,*         )
                                  )   Date:        July 15, 2009
20       v.                       )   Time:        10:30 a.m.
                                  )   Courtroom:   6, 17th Floor
21 NATIONAL SECURITY AGENCY ("NSA"); )
   KEITH B. ALEXANDER, Director of the NSA;)   Chief Judge Vaughn R. Walker
22 UNITED STATES OF AMERICA;      )
   BARACK OBAMA, President of the United )
23 States; UNITED STATES DEPARTMENT OF )
   JUSTICE; ERIC HOLDER, Attorney General )
24 of the United States; DENNIS C. BLAIR, )
   Director of National Intelligence.  )
25                                 )
            *Government Defendants*  )
26     *Sued in Their Official Capacity.* )
   _____    )

27

28 **Government Defendants' Reply in Support of Motion to Dismiss and For Summary Judgment**
   ***Jewel et al. v. National Security Agency et al.*, Case No. 08-cv-4373-VRW**

1

## TABLE OF CONTENTS

2  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4  I.  SOVEREIGN IMMUNITY HAS NOT BEEN UNAMBIGUOUSLY WAIVED
       AS TO PLAINTIFFS' STATUTORY CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5
6       A.  Section 223 of the Patriot Act Waives Sovereign Immunity Only
            for Unauthorized Disclosures by the Government  . . . . . . . . . . . . . . . . . . . . . . 2

7       B.  Section 1810 of the FISA Does Not Waive Sovereign Immunity
            for a Damages Claim Against the United States . . . . . . . . . . . . . . . . . . . . . . . 5
8
9       C.  Section 702 of the APA Does Not Provide a Waiver of Sovereign
            Immunity for Plaintiffs' Statutory Claims for Equitable Relief  . . . . . . . . . . . . 7

10      D.  The *Larson* Doctrine Does Not Provide a Waiver of Sovereign
            Immunity for Plaintiffs' Statutory Claims for Equitable Relief  . . . . . . . . . . . . 8
11
12  II.  PLAINTIFFS' OBJECTIONS TO THE GOVERNMENT'S STATE
        SECRETS PRIVILEGE ASSERTION LACK MERIT  . . . . . . . . . . . . . . . . . . . . . . . . 8

13      A.  The FISA Does Not Preempt the State Secrets Privilege  . . . . . . . . . . . . . . . . . 8

14      B.  The Court Should Not Proceed Under the *Jeppesen* Decision  . . . . . . . . . . . . 10

15  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**CASES**

*ACLU v. Dept. of Defense*,
543 F.3d 59 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Alaska v. Babbitt*,
75 F.3d 449 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Al-Haramain v. Bush*,
564 F. Supp. 2d 1109 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 9

*Al-Haramain v. Bush*,
507 F.3d 1190 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Almendarez-Torres v. United States*,
523 U.S. 224 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Asmar v. U.S. Dept. of Treasury, I.R.S.*,
680 F. Supp. 248 (E.D. Mich. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Beecham v. United States*,
511 U.S. 368 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Block v. North Dakota*,
461 U.S. 273 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Central Reserve Life of North Am. Ins. Co. v. Struve*,
852 F.2d 1158 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Children's Hosp. Health Ctr. v. Belshe*,
188 F.3d 1090 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Dep't. of the Army v. Blue Fox, Inc.*,
525 U.S. 255 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Doe v. Glanzer*,
232 F.3d 1258 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Dugan v. Rank*,
372 U.S. 609 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*El-Masri v. United States*,
479 F.3d 296 (4th Cir. 2007), *cert. denied*, 128 S. Ct. 373 (2007) . . . . . . . . . . . . . . . . . . . . 14

*Farnsworth Cannon, Inc. v. Grimes*,
635 F.2d 268 (4th Cir.1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Geyen v. Marsh*,
775 F.2d 1303 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Gutierrez v. Ada*,
528 U.S. 250 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hepting v. AT&T Corp.*,
439 F. Supp. 2d 934 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14, 15

*Holloway v. United States*,
526 U.S. 1 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hughes v. United States*,
953 F.2d 531 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kasza v. Browner*,
133 F.3d 1159 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Lane v. Pena*,
518 U.S. 187 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Larson v. Domestic & Foreign Commerce Corp.*,
337 U.S. 682 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Massachusetts v. Morash*,
490 U.S. 107 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Mohamed v. Jeppesen Dataplan, Inc.*,
563 F.3d 922 (9th Cir. April 28, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 11, 12

*National Acceptance Co. of America v. Bathalter*,
705 F.2d 924 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*North River Ins. Co. v. Stefanou*,
831 F.2d 484 (4th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Organizacion JD LTDA v. United States Dep't. of Justice*,
18 F.3d 91 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Organizacion JD LTDA v. United States Dep't. of Justice*,
124 F.3d 354 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Palomar Pomerado Health Sys. v. Belshe*,
180 F.3d 1104 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Robinson v. Shell Oil*,
519 U.S. 337 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Sigman v. United States*,
217 F.3d 785 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Small v. United States*,
544 U.S. 385 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Smith v. SEC*,
129 F.3d 356 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

*Sterling v. Tenet*,
416 F.3d 338 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Terkel v. AT&T Corp.*,
    441 F. Supp. 2d 899 (N.D. Ill. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Totten v. United States*,
    92 U.S. 105 (1875) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Tuscon Airport Auth. v. Gen. Dynamics Corp.*,
    136 F.3d 641 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Twardowski v. Am. Airlines*,
    535 F.3d 952 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Milkiewicz*,
    470 F.3d 390 (1st Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*,
    508 U.S. 439 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*United States v. Nordic Village*,
    530 U.S. 30 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Reynolds*,
    345 U.S.1 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*,
    281 F.3d 929 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*U.S. West Comm., Inc. v. Hamilton*,
    224 F.3d 1049 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Vermont Agency of Nat. Res. v. United States*,
    529 U.S. 765 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Weinberger v. Catholic Action of Hawaii/Peace Education Project*,
    454 U.S. 139 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## STATUTES

Section 223 of the Patriot Act of 2001, Pub. L. No. 107-56, 115 Stat. 272 . . . . . . . . . . . passim

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5 U.S.C. § 706(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. § 2517 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 2520 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 2520(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

18 U.S.C. § 2520(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 2707 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 2707(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

18 U.S.C. § 2707(g)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 2712(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

50 U.S.C. § 1801(m)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

50 U.S.C. § 1806(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

50 U.S.C. § 1806(f)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

50 U.S.C. § 1809  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

50 U.S.C. § 1810  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

50 U.S.C. §1825(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

50 U.S.C. § 1845(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

50 U.S.C. § 1885a  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**RULES**

Fed. R. Civ. P. 8(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Civ. P. 56(f)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Evid. 1006  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**LEGISLATIVE MATERIALS**

H.R. Conf. Rep. 95-1720 (1978)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

H.R. Rep. No. 94-1656 (1976)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

S. Rep. 110-209 (2007)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Plaintiffs allege that the National Security Agency ("NSA"), with the assistance of AT&T, has engaged in warrantless "dragnet" surveillance activities after the 9/11 attacks, allegedly including the interception of plaintiffs' domestic and international telephone and Internet communications and the collection of their communication records.  In response, the Director of National Intelligence ("DNI") has asserted the state secrets privilege to protect intelligence sources and methods implicated by these allegations, and the protection of this information necessarily forecloses further litigation.  We emphasize that the Government's position is based upon the most careful and deliberative consideration, at the highest levels, of all possible alternatives to relying upon the state secrets privilege.  As the recently President made clear, while the state secrets privilege is necessary to protect national security, the United States will not invoke the privilege to prevent disclosure of "the violation of a law or embarrassment to the government."[1]  We have set forth for the Court's *in camera*, *ex parte* review the privileged information at issue and reasons why its disclosure would cause exceptional harm to national security and, thus, why this case cannot proceed.

Plaintiffs make little effort to contest the substance of the DNI's privilege assertion, but contend first that it has been preempted by Section 1806(f) of the FISA, 50 U.S.C. § 1806(f).  The Government continues to reserve its position that the FISA does not preempt the DNI's privilege assertion, and we oppose proceedings under Section 1806(f), which would risk disclosure of the privileged information at stake.  In particular, the Government does not consent to access by plaintiffs' counsel access to classified information in order to litigate this case.

Plaintiffs also contend that the Government's privilege assertion should be deferred to the discovery phase of this case pursuant to the Ninth Circuit's recent panel decision in *Mohamed v. Jeppesen Dataplan, Inc.*, 563 F.3d 922 (9th Cir. April 28, 2009).  But as set forth below, appellate proceedings are ongoing in that case, and other circuit precedent continues to support

---

[1] *See* "www.whitehouse.gov/the_press_office/Remarks-by-the-President-On-National-Security-5-21-09".

**Government Defendants' Reply in Support of Motion to Dismiss and For Summary Judgment**
*Jewel et al. v. National Security Agency et al.*, Case No. 08-cv-4373-VRW

dismissal of plaintiffs' claims.

Finally, because dismissal pursuant to the state secrets privilege is a significant step, the Court should consider first whether any claims can be disposed of on other grounds, and we submit there is no jurisdiction to proceed on plaintiffs' statutory claims against the Government.

## ARGUMENT

## I.   SOVEREIGN IMMUNITY HAS NOT BEEN UNAMBIGUOUSLY WAIVED AS TO PLAINTIFFS' STATUTORY CLAIMS.

Plaintiffs concede that, before a court can exercise jurisdiction over a claim against the United States, Congress must "unequivocally" waive sovereign immunity.  *See* Pls. Opp. (Dkt. 29) at 7.  *See also Lane v. Pena*, 518 U.S. 187, 192 (1996); *Sigman v. United States*, 217 F.3d 785, 792 (9th Cir. 2000).  Ambiguous statutory language is not sufficient to waive sovereign immunity, nor is the existence of even a "plausible" interpretation that the statute might subject the United States to suit.  *United States v. Nordic Village*, 530 U.S. 30, 34-37 (1992).  In addition, all potential waivers must be interpreted narrowly and in favor of the United States. *See Dep't of the Army v. Blue Fox, Inc*., 525 U.S. 255, 261 (1999).  Plaintiffs' various arguments that sovereign immunity has been waived as to their statutory claims falter on these grounds.

### A.   Section 223 of the Patriot Act Waives Sovereign Immunity Only for Unauthorized Disclosures by the Government.

Plaintiffs' contention that Congress has waived sovereign immunity for their claims against the Government under the Wiretap Act and Electronic Communications Privacy Act ("ECPA") is based on 18 U.S.C. § 2712(a), which authorizes a claim for damages against the United States by "[a]ny person who is aggrieved by any willful violation" of chapters 119 of Title 18 (Wiretap Act), chapter 121 of Title 18 (ECPA).  *See* Pls. Opp. (Dkt. 29) at 6-9.  As discussed at length in our opening brief, *see* Govt. Defs. Mem. (Dkt. 18) at 12-17, an examination of the entire statutory provision at issue—Section 223 of the Patriot Act of 2001 (Pub. L. No. 107-56, 115 Stat. 272)—demonstrates that Congress intended a narrow waiver of sovereign immunity and, at the least, has not unambiguously created a broader waiver as plaintiffs' contend.

The Supreme Court has "over and over stressed that '[i]n expounding a statute, [a court] must not be guided by a single sentence or member of a sentence, but [must] look to the provisions of the whole law, and to its object and policy.'" *United States Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (citations omitted). "Statutory construction 'is a holistic endeavor'" that, "at a minimum, must account for" a statute's full text, structure, subject matter, and purpose. *Id.* (citation omitted). Thus, "to determine the plain meaning of a statutory provision," a court must "examine not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy." *Children's Hosp. Health Ctr. v. Belshe*, 188 F.3d 1090, 1096 (9th Cir. 1999).[2]  Indeed, numerous cases have concluded that a statute's context, purpose, and legislative history are a more reliable guide than a word or phrase in isolation—including the word "any" on which plaintiffs rest their argument. *See Small v. United States*, 544 U.S. 385, 388 (2005) ("The word 'any' considered alone cannot answer th[e] question" of how narrowly or broadly to interpret a statute.").[3]

An examination of the full text, statutory purpose, and legislative history of Section 223 reveals that Congress intended to create liability against the United States only in limited circumstances, namely for unauthorized disclosures by Government officials.  The very title of Section 223 is "Civil Liability for Certain Unauthorized Disclosures."  *See* Exh. 2 to Govt.

---

[2] *See also Holloway v. United States*, 526 U.S. 1, 7 (1999); *Robinson v. Shell Oil*, 519 U.S. 337, 341 (1997) (plain meaning of statutory language is determined by reference to the language itself, specific context in which it is used, and broader context of statute as a whole.).

[3] Relying on statutory context, purpose, and legislative history, the Court in *Small* held that the phrase "any person who has been convicted in any court" does not include convictions in a foreign court.  *See* 544 U.S. at 388; *see also Gutierrez v. Ada*, 528 U.S. 250, 254-57 (2000) (phrase "a majority of votes cast in any election" refers only to votes cast for Governor and Lieutenant Governor based on surrounding statutory provisions); *Beecham v. United States*, 511 U.S. 368, 372 (1994) ("any conviction . . ." referred only to certain convictions because statute must be interpreted in context not based on "plain, unlimited language" of an isolated phrase); *Massachusetts v. Morash*, 490 U.S. 107 (1989) ("any plan" in an ERISA provision interpreted narrowly to refer to only certain types of benefit plan based on the statutory purpose reflected in the legislative history and surrounding provisions); *ACLU v. Dept. of Defense*, 543 F.3d 59, 69 (2d Cir. 2008) ("expansive interpretation" of the word "any" "must never be the result of a wooden, uncritical capitulation to the word itself," but is appropriate only "where the surrounding statutory language and other relevant legislative context support it.").

Motion (Dkt. 18-2) at 8.  *See Nat'l Bank of Oregon*, 508 U.S. at 455, 457 (1993) (seeking

guidance from "the provisions of the whole law," including its title); *see also Almendarez-Torres*

*v. United States*, 523 U.S. 224, 234 (1998) (same).  The first subsection—Section 223(a)—

amends Section 2520 of the Wiretap Act by excluding the United States from a pre-existing

cause of action under that statute and adding a new subsection that establishes an "Improper

Disclosure Violation," which provides that "Any willful disclosure or use by an investigative or

law enforcement officer or governmental entity of information beyond the extent permitted by

[18 U.S.C. § 2517] is a violation of this chapter . . . ." *see* 18 U.S.C. § 2520(a), (g); *see also* Dkt.

18-2 at 8.  The next subsection of this provision—Section 223(b)—inserts identical amendments

into Section 2707, *see* 18 U.S.C. § 2707(a),(g); *see also* Dkt. 18-2 at 8.  The third subsection of

Section 223—subsection (c)(1)—authorizes a cause of action codified at 18 U.S.C. § 2712(a)—

for "any willful violation" of chapters 119 or 121 (Wiretap Act and ECPA) as well as three

specific sections of the FISA that concern use and disclosure by Federal officers of information

acquired from electronic surveillance, physical searches, or by pen register/trap and trace device.

*See* 18 U.S.C. § 2712(a); 50 U.S.C. §§ 1806(a), 1825(a), 1845(a).

Read as a whole—the insertion of the "willful" disclosure violations and a cause of

action linked to similar existing claims under the FISA—indicate that the "object and policy" of

Section 223 is to impose liability for unauthorized disclosures of intelligence information by

Government agents.  *See Belshe*, 188 F.3d at 1096; *see also U.S. West Comm., Inc. v. Hamilton*,

224 F.3d 1049, 1053 (9th Cir. 2000) (where statutory provisions are enacted "at the same time

and form part of the same Act, the duty to harmonize them is particularly acute.").[4]  Viewed in

---

[4] Plaintiffs contend that, by excluding the United States from existing causes of action
under Sections 2520(a) and 2707(a), Congress could only have intended that its new cause of
action in Section 2712(a) was meant to cover *all* claims under the Wiretap Act and ECPA.  *See*
Pls. Opp. (Dkt. 29) at 8.  That does not necessarily follow.  Prior to enactment of Section 223,
courts had ruled differently on whether the United States was amenable to suit under Sections
2520 and 2707.  *See Asmar v. U.S. Dept. of Treasury, I.R.S.*, 680 F. Supp. 248 (E.D. Mich. 1987)
(rejecting contention that "entity" in Section 2520 waived sovereign immunity of United States);
*Organizacion JD LTDA v. Dep't. of Justice*, 18 F.3d 91, 94-95 (2d Cir. 1994) (holding that
"person or entity" under 18 U.S.C.§ 2707(a) permitted claim against federal agency); *but see
Organizacion JD LTDA v. DOJ*, 124 F.3d 354 (2d Cir. 1997) (dismissing on other grounds); *see*

**Government Defendants' Reply in Support of Motion to Dismiss and For Summary Judgment**
*Jewel et al. v. National Security Agency et al.*, Case No. 08-cv-4373-VRW                              4

its full context and statutory purpose, Section 223 does not reflect an unambiguous waiver of sovereign immunity for all claims against the Government under the Wiretap Act and ECPA.

Legislative history supports the Government's reading of Section 223.  Section 223 originated as a proposal by Representative Frank to address circumstances when law enforcement agents "inappropriate[ly] release . . . information garnered by surveillance."  *See* Exh. 3 to Govt. Mot. (Dkt. 18-2) at 14; *see also* Exh. 4 (Dkt. 18-2) at 19 and Exh. 5 (Dkt. 18-2) at 23 (House Reports describing Frank Amendment).  During Senate consideration of the Patriot Act in October 2001, Senator Leahy indicated that Rep. Frank's amendment provides that where "the government monitors the conversations of a person under the electronic surveillance procedures of title 18 of FISA and that information is disclosed without proper authority, the aggrieved person may recover money damages from the Government."  *See* Exh. 6 to Govt. Motion (147 Cong. Rec. S10994 (daily ed. Oct. 25, 2001) (statement of Sen. Leahy) (submitted herewith).[5]  As outlined above, the law does not require the Court to disregard these indications of congressional intent as to the limited purpose of Section 223, particularly where waivers of sovereign immunity must be unambiguous.

**B.     Section 1810 of the FISA Does Not Waive Sovereign Immunity for a Damages Claim Against the United States**.

Plaintiffs also contend that FISA Section 110, 50 U.S.C. § 1810 ("Section 1810") waives sovereign immunity for their damages claim under this provision.  *See* Pls. Opp. (Dkt. 29) at 9-11 (relying on *Al-Haramain v. Bush*, 564 F. Supp. 2d 1109,1124-25 (N.D. Cal. 2008)).  We

---

*also Smith v. SEC*, 129 F.3d 356, 364 (6th Cir. 1997) (vacating decision that Section 2520 waived the sovereign immunity of the United States).  Section 223 may be read as resolving this difference while adding a separate cause of action under which the new "unauthorized disclosure" violation could be raised against the United States.

[5]  *See also* Exh. 6 to Govt. Motion (147 Cong. Rec. S11007 and S11057 (daily ed. Oct. 25, 2001) (section-by-section" descriptions of Patriot Act describing Section 223 as creating unauthorized disclosure provision) (submitted herewith).  The DOJ Manual cited by plaintiffs, *see* Pls. Opp. (Dkt. 29) at 9, is not to the contrary, but describes the liability of individual "officers and employees of the United States who have engaged in willful violations" of ECPA and (in a paragraph omitted from plaintiffs' quotation) contrasts that with ECPA's "separate provisions for suits against the United States" under Section 2707 which excludes the United States from suit.  *See* Exh. 7 to Govt. Motion (submitted herewith).

recognize the Court so ruled in *Al-Haramain*, reserve our position to the contrary in this case,[6] and briefly reply to plaintiffs' key points. Plaintiffs concede that waivers of sovereign immunity must be "unequivocal," but then argue that such a waiver is "implicit" in Section 1810. *See* Pls. Opp. at 5. But, as Section 2712(a) itself demonstrates, where Congress intends to waive sovereign immunity, it does so expressly, and Congress omitted Section 1810 from provisions as to which damages may be sought against the Government. *See* 18 U.S.C. § 2712(a).

Plaintiffs nonetheless contend that Section 1810 authorizes claims against "persons," *see* 50 U.S.C. § 1810, that the FISA definition of "person" includes "entities," *see* 50 U.S.C. § 1801(m), which has been held to include local governments, and, thus, must also include the United States. *See* Pls. Opp. (Dkt. 29) at 9-11. This analysis is without merit. The presumption that the term "person" does not include the sovereign may be overcome "only upon some affirmative showing of statutory intent to the contrary. *See Vermont Agency of Nat. Res. v. United States*, 529 U.S. 765, 781 (2000). Plaintiffs' related contention that the phrase "any officer or employee of the Federal Government" within the FISA definition of "person" constitutes a waiver of sovereign immunity, *see* Pls. Opp. (Dkt. 29) at 10, is likewise wrong. Section 1810 merely permits individual capacity suits against federal officers and employees and, thus, establishes civil liability under Section 1810 linked to intentional misconduct by individual federal employees and officials under Section 1809, 50 U.S.C. § 1809.[7]

Finally, plaintiffs' contention that Congress must expressly *exclude* the United States from suit under Section 1810, as it did in Section 223 of the Patriot Act for actions under Sections 2520(a) and 2707(a) of Title 18, *see* Pls. Opp. (Dkt. 29) at 10-11, is also wrong. As outlined above, the rule is just the opposite, and the fact that Congress chose to clarify that Sections 2520(a) and 2707(a) exclude the United States from suit does not mean that an express exclusion is required by the law, or that the term "entity" in those sections was previously

---

[6] *See* Govt. Defs. Mem. (Dkt 18) at 17 n. 6 (incorporating prior briefs).

[7] *See* H.R. Conf. Rep. 95-1720 at 33-34, 1978 U.S.C.C.A.N. 4048, 4062-63 (Section 1810 means "civil liability of intelligence agents should coincide with the criminal liability.")

intended to include the United States.

### C. Section 702 of the APA Does Not Provide a Waiver of Sovereign Immunity for Plaintiffs' Statutory Claims for Equitable Relief.

Plaintiffs' contention that Section 702 of Administrative Procedure Act waives sovereign immunity with respect to their statutory claims for equitable relief is also without merit. Section 702 waives sovereign immunity except when another statute "that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. Plaintiffs first contend that because the Wiretap Act and ECPA do not "grant consent" to sue the United States, *see* 18 U.S.C. §§ 2520(a), 2707(a), equitable relief is available under the APA. That is wrong. Those provisions "expressly forbid" such relief against the Government, and the APA does not re-supply a waiver of sovereign immunity. Indeed, the Ninth Circuit has rejected such an argument. *See Hughes v. United States*, 953 F.2d 531, 537 (9th Cir. 1992).

Plaintiffs then contend that because Section 2712(d) authorizes a cause of action against the Government solely for damages, it does not "expressly forbid" equitable relief from the "purview" of that section. *See* Pl. Opp. at 13. That also is wrong. Whatever the reach of Section 2712(a) (which the parties dispute), "a precisely drawn, detailed statute" preempts the "more general remedies" of the APA, including its waiver of sovereign immunity. *See Block v. North Dakota*, 461 U.S. 273, 284-86 & n.22 (1983); *Alaska v. Babbitt*, 75 F.3d 449, 451-53 (9th Cir. 1996). And where a more specific statute prescribes particular remedies, it "impliedly" forbids other remedies not specified. *See* H.R. Rep. No. 94-1656, p. 13 (1976) ("a statute granting consent to suit . . . 'impliedly forbids' relief other than the remedy provided by the Act"). In short, Congress has determined what claims may and may not be brought against the United States under the Wiretap Act, ECPA, and FISA, and Section 702 of the APA does not override those provisions.[8]

---

[8] The rule that precisely drawn statutes preempt the APA is not limited to express bars on equitable relief, as plaintiffs contend (Pls. Opp. (Dkt. 29) at 18-19). *See Tuscon Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 646 (9th Cir. 1998) (specific damage remedy under the Tucker Act "impliedly forbid" equitable relief under Section 702 of the APA).

**Government Defendants' Reply in Support of Motion to Dismiss and For Summary Judgment**
*Jewel et al. v. National Security Agency et al.*, Case No. 08-cv-4373-VRW                    7

### D.   The *Larson* Doctrine Does Not Provide a Waiver of Sovereign Immunity for Plaintiffs' Statutory Claims for Equitable Relief.

Plaintiffs' related contention that their statutory claims for equitable relief do not require a waiver of sovereign immunity under the so-called *Larson* doctrine is also wrong.  *See* Pls. Opp. (Dkt. 29) at 11-16; *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949).  To the extent *Larson* has continued viability,[9] the "general rule" is that a suit is against the sovereign if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration," or if the effect of the judgment would be "to restrain the Government from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (citations omitted).[10]  Here, however, it cannot be seriously disputed that plaintiffs' *ultra vires* claims seeks to enjoin *current* government officials and alleged *current* government intelligence activities— that is, to "'restrain the Government from acting, or to compel it to act[.]'" *See Central Reserve Life of North Am. Ins. Co. v. Struve*, 852 F.2d 1158, 1161 (9th Cir. 1988).  As to such claims, an express waiver of sovereign immunity is required, and as explained above neither the statutory provisions under which plaintiffs sue nor the APA provides that waiver.

## II.   PLAINTIFFS' OBJECTIONS TO THE GOVERNMENT'S STATE SECRETS PRIVILEGE ASSERTION LACK MERIT.

### A.   The FISA Does Not Preempt the State Secrets Privilege.

Plaintiffs barely contest the merits of the Government's state secrets privilege assertion but, instead, argue first that the privilege is preempted by Section 1806(f) of the FISA.  *See* Pls. Opp. (Dkt. 29) at 19-23 (relying on *Al-Haramain*, 564 F. Supp. 2d at 1118-22).[11]  As we have in

---

[9] The "principle purpose" of 1976 amendments to the APA, which authorized courts to set aside agency actions "in excess of statutory jurisdiction, authority, or limitation, or short of statutory right," *see* 5 U.S.C. § 706(2)(C), "was to do away with the [*Larson* exception] and other fictions surrounding sovereign immunity." *Geyen v. Marsh*, 775 F.2d 1303, 1307 (5th Cir. 1985).

[10] *See Palomar Pomerado Health Sys. v. Belshe*, 180 F.3d 1104, 1108 (9th Cir. 1999) (relief sought nominally against officer is against the sovereign would operate against the latter).

[11] Again, we recognize the Court ruled accordingly in the *Al-Haramain* action and reserve our position for this case.  *See* Govt. Defs. Mem. (Dkt 18) at 34-35, n. 25.

*Al-Haramain*, however, the Government submits there is no safe or appropriate way forward under this "preemption" theory.  Proceedings under Section 1806(f) would either risk or require the disclosure of privileged information and, thus, should not occur prior to an opportunity for appellate review.

First, as in *Al-Haramain*, the Government objects to any disclosure of classified information to plaintiffs' counsel.  That dispute is being litigated in *Al-Haramain*, and the Court has presently opted not to proceed in that manner but, instead, directed plaintiffs to seek summary judgment based solely on public evidence (unless the Government responds on the merits with classified information).  *See* Dkt. 643 in M:06-cv-01791-VRW.  Even beyond that issue, litigation of the merits of plaintiffs' claims is not possible—in secret proceedings or using purportedly public evidence—without risking disclosure of the privileged information.  For example, whether plaintiffs even have standing is subject to the Government's privilege assertion, along with information concerning the existence or scope of alleged NSA activities that plaintiffs seek to challenge.  Any attempt to proceed in secret (even *ex parte*) would inherently risk or result in the disclosure of the privileged information.  The fact that the Court may or may not decide to exercise jurisdiction and reach the merits of any claim would tend to confirm or deny the existence of standing or particular alleged activities and thereby compromise the Government's privilege assertion.

Likewise, any attempt to adjudicate the merits of plaintiffs' claims based solely on purportedly public information—*i.e.*, without the actual privileged facts—would constitute an exercise of hypothetical jurisdiction.  Any decision by the Court would either necessarily have to rely on sheer speculation as to whether plaintiffs have been subject to alleged activities, or, in the process, would risk confirmation or denial of the actual facts concerning whether or not the NSA utilizes certain alleged intelligence sources and methods.  We respectfully submit that the Court should not again follow an approach where it attempts to determine, based on public information, whether certain facts may or may not be true—such as alleged assistance to the NSA by AT&T, which remains the very issue in this case.  *See Hepting v. AT&T Corp.*, 439 F.

Supp. 2d 934, 991-92 (N.D. Cal. 2006).  This is especially so where Congress enacted legislation to resolve claims against telecommunications carriers in part to protect against the disclosure of whether or not they assisted the NSA.  *See* 50 U.S.C. § 1885a; *see also* S. Rep. 110-209 (2007) (report of Senate Select Committee on Intelligence (Dkt. 469-2) at 9 ("It would be inappropriate to disclose the names of the electronic communication service providers from which assistance was sought, the activities in which the Government was engaged or in which providers assisted, or the details regarding any such assistance.").  "Judicial intuition" about whether information concerning alleged NSA surveillance activities may be disclosed "is no substitute for documented risks and threats posed by the potential disclosure of national security information." *Al-Haramain v. Bush*, 507 F.3d 1190, 1204 (9th Cir. 2007).  The scope of plaintiffs' allegations are even broader than those raised in *Al-Haramain* and put at issue whether and how the NSA, as a programmatic matter, utilizes its sources and methods to detect and prevent terrorist attacks.  Any attempt to litigate how the NSA may or may not operate in this area would risk the exceptional harms to national security identified by the DNI.  *See Sterling v. Tenet*, 416 F.3d 338, 344 (4th Cir. 2005) ("Courts are not required to play with fire and chance further disclosure— inadvertent, mistaken, or even intentional—that would defeat the very purpose for which the privilege exists.").  To avoid these concerns, the proper course would be to uphold the DNI's privilege assertion and not venture into procedural steps that will risk disclosure of the privileged information at issue.

**B.    The Court Should Not Proceed Under the *Jeppesen* Decision.**

Even if the Government's privilege assertion is not preempted, plaintiffs contend that it cannot be considered at this stage under the *Jeppesen* decision.  Pls. Opp. at 18-23.  We disagree.  The Court should await further developments on a pending petition for rehearing in *Jeppesen* before attempting to apply that decision,[12] and, as set forth below, should apply other binding

---

[12]  Both the Government and private defendant petitioned for rehearing *en banc* on June 12, 2009; the court subsequently ordered a response from plaintiff, which is due on July 6, 2009.  If called *en banc*, the three-judge panel opinion shall not be cited as precedent by or to this court or any district court of the Ninth Circuit, except to the extent adopted by the en banc court.  *See*

**Government Defendants' Reply in Support of Motion to Dismiss and For Summary Judgment**
*Jewel et al. v. National Security Agency et al.*, Case No. 08-cv-4373-VRW                    10

circuit precedent to consider and uphold the state secrets privilege assertion and preclude further proceedings.

*Jeppesen* involves claims against a private company alleged to have supported the CIA's operation of an alleged terrorist rendition program. *See* 563 F.3d at 997-99. The United States intervened at the outset of the action and moved to dismiss based on an assertion of the state secrets privilege by the CIA Director. *See id*. at 999. The district court upheld the privilege and dismissed the action. *See id*. at 1001-02. The Ninth Circuit panel in *Jeppesen* reversed, holding first that dismissal at the outset of a case is appropriate only where a suit is "predicated on the existence and content of a secret agreement between the plaintiff and the government." *See id*. at 1000, 1002-03 (discussing *Totten v. United States*, 92 U.S. 105 (1875)). The panel also held that an assertion of the state secrets privilege pursuant to *United States v. Reynolds*, 345 U.S.1 (1953), cannot "foreclos[e] litigation altogether at the outset," *see id*. at 1001-02, 1003-05, and may not be considered until there has been an actual request for discovery of specific evidence and could only be applied "on an item-by-item basis." *Id*. at 1003.

Until resolution of further proceedings in *Jeppesen*, the Court should continue to follow other binding circuit precedent that was not (and could not) be overturned by *Jeppesen*. Notably, in *Al-Haramain*, the Ninth Circuit upheld the Government's state secrets privilege assertion at the outset of litigation before consideration of any particular discovery requests. Indeed, the Court considered the privilege assertion despite concluding that the case did *not* fall into the narrow category of suits that cannot be litigated because their "very subject matter" is a state secret. *See* 507 F.3d at 1201-05. Rather, the Court held that the plaintiffs there could not establish standing without the disclosure of state secrets and that the action would have to be dismissed (unless FISA preempts the privilege). *See id*.

In this case, as in *Al-Haramain*, the Government's privilege assertion encompasses the threshold fact of whether the plaintiffs can establish their Article III standing by showing that they are "aggrieved persons" that have been subject to an alleged dragnet collection of the

---

Ninth Circuit General Order 5.5(d).

content of their communications or the alleged collection of their communication records.  *See* Govt. Defs. Mem. (Dkt. 18) at 18-21.  In addition, the Government's privilege assertion protects from disclosure facts concerning intelligence sources and methods that are central to plaintiffs establishing a *prima facie* case and to the Government's defense to plaintiffs' claims, including whether or not NSA utilizes alleged intelligence sources and methods, such as the collection of communication records or has received assistance from AT&T in such activities.  *See id.* at 21-24.  In *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998), the Ninth Circuit recognized that the Government "may use the state secrets privilege to withhold a broad range of information," and specifically rejected the argument that a privilege assertion generally describing "ten categories of information" was insufficient, reasoning that the Secretary could not "reasonably be expected personally to explain why each item of information arguably responsive to a discovery request affects the national interest."  *Id.* at 1169.[13]

Moreover, there is no other appropriate alternative for proceeding at this stage.  If the Government is required to answer the complaint, Rule 8 requires that it either admit or deny allegations or aver that it lacks sufficient knowledge or information to do so; otherwise, if a responsive pleading is required and an allegation not denied, it is deemed admitted.  *See* Fed. R. Civ. P. 8(b).  But compliance with the literal terms of Rule 8 is not possible, since the complaint puts squarely at issue the existence and scope of alleged NSA activities that are subject to the DNI's privilege assertion.[14]  Thus, any attempt to proceed under *Jeppesen* would necessarily require assertion of the state secrets privilege at the outset of the case (as has already occurred).[15]

---

[13]  *See also Weinberger v. Catholic Action of Hawaii/Peace Education Project*, 454 U.S. 139 (1981) (dismissal at outset appropriate where litigation would disclose secret information).

[14]  *See* Complaint ¶¶ 50-81 and 82-97 (alleging that NSA obtains plaintiffs' communications and records through AT&T facilities and databases); Public Declaration of Admiral Dennis C. Blair, Director of National Intelligence (Dkt. 18-3) ¶¶ 11, 13-17 (asserting state secrets privilege over identical information).

[15]  Courts have recognized that a privilege may be invoked to avoid the obligation to answer under Rule 8.  *See, e.g.*, *North River Ins. Co. v. Stefanou*, 831 F.2d 484, 486-487 (4th Cir. 1987) (privilege against self-incrimination); *National Acceptance Co. of America v. Bathalter*, 705 F.2d 924, 927 (7th Cir. 1983); *Doe v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000).

In addition, waiting for particular discovery requests to consider the Government's privilege assertion would be a pointless and risky exercise in a case that puts directly at issue the existence and scope of alleged intelligence activities.  There is nothing hypothetical about the role the privileged facts will play in this litigation, nor anything that should foreclose a determination now that the facts central to resolution of this case have been properly protected for national security reasons.  Moreover, there are no grounds under Fed. R. Civ. P. 56(f) to permit discovery in response to the Government's motion.  "A Rule 56(f) applicant is entitled to relief only if he or she shows, among other things, that the discovery would uncover specific facts which would preclude summary judgment."  *U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 939 (9th Cir. 2002) (citation omitted).  But plaintiffs fail to explain how the information they identify in their Rule 56(f) affidavit would "preclude summary judgment" by creating a genuine issue of material fact.

First, plaintiffs' Rule 56(f) affidavit relies largely on a so-called "Summary of Evidence" filed in MDL-1791 in cases concerning (now dismissed) claims against carrier defendants.  *See* Declaration of Cindy Cohn Pursuant to Fed. R. Civ. P. 56(f) (Dkt. 30) ¶¶ 3, 8-12.[16]  That 60 page document summarizes over 3,500 pages of media reports and public statements, along with four books, through which the Court must apparently wade to ascertain if a genuine issue of material fact would preclude summary judgment on the state secrets privilege.  Moreover, plaintiffs otherwise aver no more than that they seek discovery related to their allegations; they do not explain how that would foreclose summary judgment based on the state secrets privilege.  The Government's motion does not seek to prevail on the merits of plaintiffs' claims, but to foreclose the disclosure of information necessary to litigate those claims based on the DNI's judgment that such disclosure reasonably would harm national security.  The very purpose of the state secrets

---

[16]  This "summary" violates Fed. R. Evid. 1006, under which a summary may be admitted if the evidenced summarized is "otherwise admissible and remains subject to the usual objections under the rules of evidence." *United States v. Milkiewicz*, 470 F.3d 390, 396 (1st Cir. 2006) (quoting 31 Charles A. Wright & Victor J. Gold, *Federal Practice and Procedure* § 8043, at 521-22 (2000)).  Plaintiffs summarize primarily voluminous media reports and books plainly would inadmissible hearsay.  *See Twardowski v. Am. Airlines*, 535 F.3d 952, 961 (9th Cir. 2008).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

privilege is "to withhold sensitive information within the context of litigation" based upon the Government's showing that harm to national security would reasonably result. *See Kasza*, 133 F.3d at 1167-68. Yet plaintiffs' Rule 56(f) declaration demands discovery of the very facts at issue in the privilege assertion—discovery into alleged carrier assistance to the NSA in the alleged "interception and disclosure of the communications and communication records of the telecommunications companies' customers, including those of names plaintiffs." *See id.* ¶¶ 13-19. Plaintiffs also seek to inspect AT&T facilities alleged to be at issue in the alleged surveillance activities, and to depose telecommunication carrier executives about these allegations, *see id.* ¶¶ 14-18, as well as numerous current and former national security officials who had access to classified information about NSA activities.[17] The DNI's privilege assertion forecloses the very inquiries plaintiffs wish to undertake.

It is no answer for plaintiffs to claim that there is some information in the public domain about their allegations, or that some of the discovery they seek is purportedly "non-privileged." All of the discovery sought plainly is directed at proving alleged facts that are directly covered by the Government's privilege assertion. *See* Cohn Decl. (Dkt. 30) ¶¶ 11-12 (plaintiffs seek discovery from named and unnamed sources in the published reports regarding their personal knowledge of the published or *unpublished* information) (emphasis added).[18] This is precisely what the privilege assertion seeks to foreclose. As the Court noted in *Hepting*, "simply because . . . statements have been publicly made does not mean that the truth of those statements is a matter of public knowledge and that verification of the statement is harmless." 439 F. Supp. 2d at

[17] Plaintiffs also seek to depose, *inter alia*, the current Director of the NSA and the FBI, the former Vice President of the United States, three former Attorneys General and a former Deputy Attorney General, two former DNIs, a former CIA director, a former White House chief of staff, several other former DOJ officials, and a sitting federal judge. *See* Cohn Decl. ¶ 7.

[18] Plaintiffs' assertion that they should be permitted discovery into intelligence matters that may have been at issue in a March 2004 meeting in Attorney General Ashcroft's hospital room, *see* Cohn Decl. ¶ 10, is a notable example of the unsupported nature of their Rule 56(f) declaration. The Congressional testimony plaintiffs cite by then-Attorney General Gonzales does not indicate that classified information was revealed to uncleared persons, *see* Exh. 45 to Pls. Sum. Evid. at 01446, and, in any event, further inquiry into classified intelligence matters is foreclosed by the DNI's privilege assertion.

990; *see also El-Masri v. United States*, 479 F.3d 296, 311 (4th Cir. 2007), *cert. denied*, 128 S. Ct. 373 (2007) (dismissal still required where information in the public media does not include state secrets central to litigating the action). Yet if discovery is permitted on the theory that some information about the allegations is public or non-privileged, plaintiffs and their lawyers "would have every incentive to probe as close to the core secrets" as possible, and such probing "would inevitably be revealing." *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 281 n.7 (4th Cir.1980) (*en banc*). Far from justifying a continuance, plaintiffs' Rule 56(f) affidavit underscores why this case should be dismissed now, because it is clear that discovery inherently will risk disclosure of  information properly protected by the Director of National Intelligence.

Finally, in assessing whether the case can proceed, the Court should specifically consider the two distinct factual allegations at issue. The Government has explained that trying to disprove plaintiffs' erroneous allegations of a vast "dragnet" on communications content would necessarily risk or require the disclosure of what the NSA is and is not doing— *i.e.*, an inquiry into NSA intelligence sources and methods that the DNI has clearly demonstrated would harm national security. *See* Govt. Defs. Mem. (Dkt. 18) at 25. And with respect to whether or not the NSA is collecting non-content communication records, *see id*. at 25-26, the Court itself deferred discovery on this issue in *Hepting* based on concerns that such disclosures would harm national security, *see Hepting*, 493 F. Supp. 2d at 997; *see also Terkel v. AT&T Corp.*, 441 F. Supp. 2d 899, 917 (N.D. Ill. 2006) (upholding state secrets privilege regarding alleged communications records collection). There simply is no basis for the Court to alter its prior conclusion, because the DNI again has demonstrated that discovery into these allegations would cause exceptional harm to national security.

## CONCLUSION

For the foregoing reasons, and those set forth in our opening memorandum, the Court should grant the Government Defendants' motion to dismiss and for summary judgment.

June 26, 2009                                         Respectfully Submitted,

                                                     MICHAEL F. HERTZ
                                                     Acting Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

VINCENT M. GARVEY
Deputy Branch Director

 s/ Anthony J. Coppolino
ANTHONY J. COPPOLINO
Special Litigation Counsel

 s/ Marcia Berman
MARCIA BERMAN

 s/Paul G. Freeborne
PAUL G. FREEBORNE

Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782
Fax: (202) 616-8460

*Attorneys for the Government Defendants
Sued in their Official Capacity*

**Government Defendants' Reply in Support of Motion to Dismiss and For Summary Judgment**
*Jewel et al. v. National Security Agency et al.*, Case No. 08-cv-4373-VRW