1   MICHAEL F. HERTZ
    Deputy Assistant Attorney General
2   ANN M. RAVEL
    Deputy Assistant Attorney General
3   TIMOTHY P. GARREN
    Director
4   ANDREA W. MCCARTHY
    Senior Trial Counsel
5   JAMES R. WHITMAN (D.C. Bar No. 987694)
    Trial Attorney
6   United States Department of Justice
    Civil Division, Torts Branch
7   P.O. Box 7146, Ben Franklin Station
    Washington, DC  20044-7146
8   Tel:  (202) 616-4169
    Fax:  (202) 616-4314
9   james.whitman@usdoj.gov

10  *Attorneys for the Defendants Listed on the Signature Page*

11              **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
12                  **SAN FRANCISCO DIVISION**

13  _____ )
    CAROLYN JEWEL, et al.,            )      **No. 08-4373 VRW**
14                                    )
                Plaintiffs,           )      **INDIVIDUAL CAPACITY**
15                                    )      **DEFENDANTS' NOTICE OF MOTION**
    v.                                )      **AND MOTION FOR RELIEF FROM**
16                                    )      **THE COURT'S ORDERS OF APRIL 27,**
    NATIONAL SECURITY AGENCY, et al., )      **2009, AND MAY 8, 2009**
17                                    )
                Defendants.           )      Date:        September 17, 2009
18  _____ )      Time:        10:00 a.m.
                                             Courtroom:   6, 17th Floor

19          PLEASE TAKE NOTICE that, on September 17, 2009, at 10:00 a.m., before Chief Judge

20  Vaughn R. Walker, the Government defendants sued in their individual capacity in this action

21  (George W. Bush, Richard B. Cheney, David S. Addington, Keith B. Alexander, Michael V.

22  Hayden, John D. McConnell, John D. Negroponte, Michael B. Mukasey, Alberto R. Gonzales,

23  and John D. Ashcroft) will request that the Court relieve them of their obligation under the

24  Court's Orders of April 27, 2009, and May 8, 2009, to answer or otherwise respond to plaintiffs'

25  complaint by July 15, 2009, and that it continue to relieve them of that obligation until after there

26  is a final resolution of whether information subject to the state secrets and related statutory

27  privileges is necessary to litigate plaintiffs' claims.

28

*Jewel v. NSA*, No. 08-4373 VRW, Individual Capacity Defendants' Notice of Motion, Motion for Relief
from the Court's Orders of April 27, 2009, and May 8, 2009, and Memorandum In Support Thereof

1    The individual capacity defendants should not be required to answer or otherwise respond

2    to plaintiffs' complaint until the Court has resolved the United States' "Motion to Dismiss and

3    for Summary Judgment," which invokes the state secrets and related statutory privileges.  See

4    Doc # 18.  That is because, as explained in the accompanying memorandum of law, the privilege

5    assertions preclude these defendants from presenting information in support of a qualified

6    immunity defense by way of a prediscovery motion for summary judgment, as is their right.

7    Compelling them to answer or otherwise respond under these circumstances therefore would

8    deprive them of the intended benefits of the qualified immunity doctrine.

9

10   Respectfully submitted this 10th day of July, 2009,

11   MICHAEL F. HERTZ
     Deputy Assistant Attorney General, Civil Division
12
     ANN M. RAVEL
13   Deputy Assistant Attorney General, Civil Division

14   TIMOTHY P. GARREN
     Director, Torts Branch
15
     ANDREA W. MCCARTHY
16   Senior Trial Counsel, Torts Branch

17   /s/ James R. Whitman
     JAMES R. WHITMAN (D.C. Bar No. 987694)
18   Trial Attorney
     United States Department of Justice
19   Civil Division, Torts Branch

20   Attorneys for George W. Bush, Richard B. Cheney, David S. Addington, Keith B. Alexander,
     Michael V. Hayden, John D. McConnell, John D. Negroponte, Michael B. Mukasey, Alberto R.
21   Gonzales, and John D. Ashcroft, in their individual capacity

22

23

24

25

26

27

28

*Jewel v. NSA*, No. 08-4373 VRW, Individual Capacity Defendants' Notice of Motion, Motion for Relief
from the Court's Orders of April 27, 2009, and May 8, 2009, and Memorandum In Support Thereof          -2-

1  MICHAEL F. HERTZ
   Deputy Assistant Attorney General
2  ANN M. RAVEL
   Deputy Assistant Attorney General
3  TIMOTHY P. GARREN
   Director
4  ANDREA W. MCCARTHY
   Senior Trial Counsel
5  JAMES R. WHITMAN (D.C. Bar No. 987694)
   Trial Attorney
6  United States Department of Justice
   Civil Division, Torts Branch
7  P.O. Box 7146, Ben Franklin Station
   Washington, DC  20044-7146
8  Tel:  (202) 616-4169
   Fax:  (202) 616-4314
9  james.whitman@usdoj.gov

10  *Attorneys for the Defendants Listed on the Signature Page*

11              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
12                **SAN FRANCISCO DIVISION**

13  _____ )
                                      )   **No. 08-4373 VRW**
14  CAROLYN JEWEL, et al.,            )
                                      )
                                      )   **INDIVIDUAL CAPACITY**
             Plaintiffs,              )   **DEFENDANTS' MEMORANDUM IN**
15                                    )   **SUPPORT OF MOTION FOR RELIEF**
    v.                                )   **FROM THE COURT'S ORDERS OF**
16                                    )   **APRIL 27, 2009, AND MAY 8, 2009**
    NATIONAL SECURITY AGENCY, et al., )
17                                    )   Date:         September 17, 2009
             Defendants.             )    Time:         10:00 a.m.
18  _____ )    Courtroom:    6, 17th Floor

19

20

21

22

23

24

25

26

27

28

*Jewel v. NSA*, No. 08-4373 VRW, Individual Capacity Defendants' Notice of Motion, Motion for Relief
from the Court's Orders of April 27, 2009, and May 8, 2009, and Memorandum In Support Thereof

1

## INTRODUCTION

2      The individual capacity defendants respectfully submit this motion for relief from the

3  Court's Orders of April 27 and May 8, 2009.  Specifically, they ask to be relieved of their

4  obligation to answer or otherwise respond to plaintiffs' complaint by July 15, 2009, and they

5  renew their previous request that the Court continue to relieve them of that obligation until there

6  is a final resolution of whether information subject to the Government's state secrets and related

7  statutory privileges is necessary to litigate plaintiffs' claims.[1]

8

## BACKGROUND

9      The individual capacity defendants previously were required to answer or otherwise

10  respond by April 3, 2009.  See Doc # 17.  On that date the United States, along with the official

11  capacity and federal agency defendants, filed a motion to dismiss and for summary judgment in

12  which it invoked the state secrets and related statutory privileges.  See Doc # 18.  In doing so it

13  has argued that because the various privileges exclude information needed by plaintiffs to

14  establish standing and the prima facie elements of their causes of action and by all the defendants

15  to defend themselves, the case should be dismissed in its entirety, see id. at 12-24, including the

16  individual capacity claims, see id. at 18 & 19 n.17.

17      Also on April 3, 2009, the individual capacity defendants filed a motion requesting that

18  the time for them to answer or otherwise respond to the complaint be extended until the effect of

19  the privilege assertions on the litigation is determined.  See Doc # 22.  In an Order dated April

20  27, 2009, the Court denied that motion and directed these defendants to answer or otherwise

21  respond no later than June 25, 2009.  See Doc # 25.  By the Court's Order of May 8, 2009, that

22  date was extended to the present deadline of July 15, 2009, which is also when the United States'

23  motion is set to be heard.  See Doc # 27.

24      In light of this schedule, and absent relief from the Court's April 27 and May 8 Orders,

25  the individual capacity defendants would be forced to answer or otherwise respond to plaintiffs'

26  _____

27      [1] By filing this motion the individual capacity defendants do not waive, and expressly
reserve, all defenses available to them relating to all aspects of this action.

28

*Jewel v. NSA*, No. 08-4373 VRW, Individual Capacity Defendants' Notice of Motion, Motion for Relief
from the Court's Orders of April 27, 2009, and May 8, 2009, and Memorandum In Support Thereof

1   complaint before the United States' privilege assertions and dispositive motion are resolved.

2   Such relief is appropriate here for the reasons discussed below, especially since the Court stated

3   that its denial of the individual capacity defendants' administrative motion was "without

4   prejudice," indicating that it would consider the matter again.  Doc # 25.

5                                    **DISCUSSION**

6           Government officials sued in an individual capacity normally have an unquestionable

7   right to raise qualified immunity via a prediscovery motion for summary judgment.  In this case,

8   however, the United States has asserted the state secrets and related statutory privileges over

9   facts essential to the litigation.  Because the decision to invoke those privileges resides

10  exclusively with the United States and is one over which former or current federal office holders

11  have no power to control in their individual (as opposed to official) capacity, the individual

12  capacity defendants are foreclosed from using any of the privileged information to support what

13  may be an otherwise available, valid, and complete qualified immunity defense when initially

14  responding to plaintiffs' complaint.  As a result, ordering these defendants to answer or otherwise

15  respond under such circumstances, before the United States' privilege assertions and dispositive

16  motion have been finally resolved, would effectively deprive them of the intended benefits of the

17  qualified immunity doctrine by subjecting them to unnecessary and inappropriate pretrial

18  proceedings.  And that would be inherently prejudicial and contrary to the law.

19  **I.      QUALIFIED IMMUNITY IS AN ESSENTIAL PERSONAL DEFENSE THAT
        MAY BE RAISED IN A PREDISCOVERY SUMMARY JUDGMENT MOTION**

20          The doctrine of qualified immunity shields public officials who perform discretionary

21  governmental functions from civil liability so long as their conduct does not violate any "clearly

22  established statutory or constitutional rights of which a reasonable person would have known."

23  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The need for such immunity derives from the

24  fact that individual capacity suits "can entail substantial social costs, including the risk that fear

25  of personal monetary liability and harassing litigation will unduly inhibit officials in the

26  discharge of their duties."  Anderson v. Creighton, 483 U.S. 635, 638 (1987).  Just recently the

27

28

1   Supreme Court has explained that these "costs of diversion are only magnified" when the case,

2   like this one, is brought against high-level Government officials "who must be neither deterred

3   nor detracted from the vigorous performance of their duties" when "responding to . . . a national

4   and international security emergency unprecedented in the history of the American Republic[,

5   i.e., the terrorist attacks of September 11, 2001]." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953, 1954

6   (2009) (internal quotations and citation omitted).  Qualified immunity hedges such costs by

7   providing "ample room for mistaken judgments" and protecting all public officials except "the

8   plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335,

9   341, 343 (1986).

10       Given the foregoing concerns, qualified immunity is more than a defense to liability.  It is

11   also "an immunity from suit." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (internal

12   quotations and citation omitted).  "The basic thrust of the qualified-immunity doctrine is to free

13   officials from the concerns of litigation, including avoidance of disruptive discovery." Iqbal, 129

14   S. Ct. at 1953 (internal quotations and citation omitted); see Mitchell v. Forsyth, 472 U.S. 511,

15   526 (1985) (describing qualified immunity as "an entitlement not to stand trial or face the other

16   burdens of litigation"); Harlow, 457 U.S. at 806 (explaining that qualified immunity is meant "to

17   shield [officials] from undue interference with their duties and from potentially disabling threats

18   of liability").  In keeping with that purpose, the Supreme Court "repeatedly [has] stressed the

19   importance of resolving immunity questions at the earliest possible stage," Pearson, 129 S. Ct. at

20   815 (internal quotations and citation omitted), and emphasized that "discovery should not be

21   allowed" until it is determined that the plaintiff has properly stated a claim for the violation of a

22   clearly established right, Harlow, 457 U.S. at 818-19.  See Crawford-El v. Britton, 523 U.S. 574,

23   598 (1998); Anderson, 483 U.S. at 646 n.6.  These issues are so significant in fact that the denial

24   of qualified immunity and the rejection of arguments that are "inextricably intertwined with" the

25   defense, Iqbal, 129 S. Ct. at 1945-47 (internal quotations and citation omitted), at different

26   procedural stages of a case are subject to repeated interlocutory appeals.  See Mitchell, 472 U.S.

27   at 530; Behrens v. Pelletier, 516 U.S. 299, 307-11 (1996).

28

1      The importance of the right of a Government official sued in an individual capacity to

2  assert a qualified immunity defense—and its preeminence in an official's arsenal of tools when

3  responding to a complaint—thus cannot be overstated.  The same is true of a defendant's right to

4  advance that defense in the form of a prediscovery motion for summary judgment, as the law

5  allows and as both the Supreme Court and the Ninth Circuit have recognized.[2]

6  **II.    THE INDIVIDUAL CAPACITY DEFENDANTS CANNOT USE PRIVILEGED
         INFORMATION TO SUPPORT A QUALIFIED IMMUNITY DEFENSE**

7      In the current procedural posture of this case, the Government's state secrets and related

8  statutory privilege assertions preclude the individual capacity defendants from relying on any of

9  the privileged information to seek dismissal on qualified immunity grounds.[3]  Indeed, the United

10 States has stated clearly that its privilege assertions are meant to protect and exclude from the

11

12 _____

13      [2]  See Fed. R. Civ. P. 56(b) (permitting defendant to seek summary judgment "at any
   time"); Crawford-El, 523 U.S. at 597-98 (holding that "trial court must exercise its discretion in
14 a way that protects the substance of the qualified immunity defense," such as by insisting "that
   the plaintiff put forward specific, nonconclusory factual allegations . . . in order to survive a
15 prediscovery motion for dismissal or summary judgment") (internal quotations and citation
   omitted); Harlow, 457 U.S. at 818 (advising that qualified immunity often can be decided "on
16 summary judgment" while instructing that "discovery should not be allowed" until the "threshold
   immunity question is resolved"); Kluver v. Sheets, 27 Fed. Appx. 873, 875 (9th Cir. 2001)
17 (affirming grant of prediscovery summary judgment on qualified immunity grounds); accord
   Elliott v. Thomas, 937 F.2d 338, 345-46 (7th Cir. 1991) (reversing denial of qualified immunity
18 because plaintiff did not supply the "minimum quantum of proof required to defeat" prediscovery
   motion for summary judgment); Lewis v. City of Ft. Collins, 903 F.2d 752, 759-60 (10th Cir.
19 1990) (reversing denial of qualified immunity raised in prediscovery summary judgment motion).

20      [3]  To be clear, the above representation about the potential availability of a qualified
   immunity defense in this case is not intended to, and should not, be read as either confirming or
21 denying plaintiffs' allegations.  See Doc # 18 at 15; Hepting v. AT&T, 439 F. Supp. 2d 974, 997
   (N.D. Cal. 2006).  Evidence establishing qualified immunity can come in many forms:  the
22 alleged activities did not occur at all; a particular plaintiff was not subjected to the alleged
   conduct; the particular defendants were not involved in the alleged activities in general; the
23 particular defendants were not involved in subjecting a particular plaintiff to the alleged conduct;
   the alleged activities are lawful in general; the alleged activities are lawful as applied to a
24 particular plaintiff; or countless other variations.  Cf. El-Masri v. United States, 479 F.3d 296,
   309 (4th Cir. 2007).  This is not to "suggest that any of these hypothetical defenses represents the
25 true state of affairs in this matter," id. at 310, but merely to illustrate that having a qualified
   immunity defense can encompass a host of particular types of qualified immunity defenses.

26

27

28

1  litigation "the very information necessary for plaintiffs to establish their standing or a prima facie

2  case, as well as information relevant to the defense of both the Government <u>and personal capacity</u>

3  <u>defendants</u>." Doc # 18 at 18 (emphasis added); <u>see also id.</u> at 19 n.17.

4        At the same time, the individual capacity defendants have no control over whether or to

5  what extent the state secrets privilege is invoked.  The Supreme Court has unequivocally held

6  that the privilege "belongs to the Government and must be asserted by it; it can neither be

7  claimed nor waived by a private party." <u>United States v. Reynolds</u>, 345 U.S. 1, 7 (1953).[4]  The

8  latter category necessarily includes Government officials (current or former) when sued in an

9  individual capacity.[5]  Plaintiffs themselves have said in this very case that "the state secrets

10  privilege is not [the individual defendants'] to assert." Doc # 23 at 4.  This means the individual

11  capacity defendants are unable to respond effectively until there is a final resolution of the

12  privilege issues; their ability to present information in support of a personal defense, and thereby

13  fully defend themselves, is subordinated to the United States' independent decision to invoke the

14  various privileges.  That decision is based entirely on the United States' assessment of the need

15  to protect certain information, not the need of a private party (even a Government official sued in

16  an individual capacity) to defend himself.  <u>See Reynolds</u>, 345 U.S. at 10 (explaining that

17  assertion of state secrets privilege requires Government to establish a "reasonable danger that

18  compulsion of the evidence" would harm national security); <u>Al-Haramain Islamic Found. v.</u>

19  <u>Bush</u>, 507 F.3d 1190, 1196 (9th Cir. 2007) (same); <u>cf. El-Masri</u>, 479 F.3d at 306 (stating that

20  once "information has been determined to be privileged under the state secrets doctrine," it is

21

22      [4]  <u>See In re Nat'l Sec. Agency Telecomms. Records Litig.</u>, 564 F. Supp. 2d 1109, 1118

23  (N.D. Cal. 2008); <u>accord In re Sealed Case</u>, 494 F.3d 139, 150 (D.C. Cir. 2007) (noting that
    Executive Branch "controls . . . the power to invoke the state secrets privilege"); <u>id.</u> at 144

24  (holding that privilege "may be invoked <u>by the United States</u> in a <u>Bivens</u> action") (emphasis
    added); <u>El-Masri</u>, 479 F.3d at 304; <u>In re United States</u>, 872 F.2d 472, 475 (D.C. Cir. 1989).

25

26      [5]  With respect to defendant Alexander, who is the current Director of the National
    Security Agency and the only individual capacity defendant still in office, it is precisely because

27  he has been sued in his individual capacity that he "recused himself from the decision of whether
    to assert the statutory privilege in his official capacity." Doc # 18-4 ¶ 2.

28

1  removed from the proceedings entirely and "no attempt is made to balance the need for secrecy

2  of the privileged information against a party's need for the information's disclosure").

3  　　　Although the individual capacity defendants thus have no influence over the decision to

4  invoke the various privileges in this case, the final resolution of the privilege assertions will

5  directly affect them.  Numerous courts, including the Ninth Circuit, have held that a case must be

6  dismissed if information subject to a state secrets privilege is necessary to a valid defense.  See

7  Mohamed v. Jeppesen Dataplan, Inc., 563 F.3d 992, 1001, 1006 & n.6 (9th Cir. 2009).[6]  A

8  practical application of this rule is succinctly summarized by the court of appeals in El-Masri (and

9  alluded to above, see supra note 3), where the plaintiff sued a former CIA Director in his

10  individual capacity over an alleged "extraordinary rendition" program:

11  　　　　　The main avenues of defense available in this matter are to show that El-Masri
　　　　　was not subject to the treatment that he alleges; that, if he was subject to such
12  　　　　　treatment, the defendants were not involved in it; or that, if they were involved,
　　　　　the nature of their involvement does not give rise to liability.  Any of those three
13  　　　　　showings would require disclosure of information regarding the means and
　　　　　methods by which the CIA gathers intelligence.
14
15  El-Masri, 479 F.3d at 309.  These premises are equally valid here, as is the conclusion they lead

16  to:  the case should be dismissed because "virtually any conceivable response to [the plaintiffs']

17  allegations would disclose privileged information."  Id. at 310.  At this point, however, when the

18  Court has yet to rule on the privilege assertions, only the United States may—and in fact

19  does—seek dismissal on that basis, including dismissal of the individual capacity claims.[7]  This

20
21  　　　[6]  See also Kasza v. Browner, 133 F.3d 1159, 1166 (9th Cir. 1998); accord In re Sealed
Case, 494 F.3d at 149; El-Masri, 479 F.3d at 309-10; Tenenbaum v. Simonini, 372 F.3d 776, 777
22  (6th Cir. 2004); Zuckerbraun v. Gen. Dynamics Corp., 935 F.2d 544, 547 (2d Cir. 1991); In re
United States, 872 F.2d at 476; Molerio v. FBI, 749 F.2d 815, 825 (D.C. Cir. 1984).

23
24  　　　[7]  See Doc # 18 at 18 & 19 n.17; In re Sealed Case, 494 F.3d at 141-42, 154 (affirming
dismissal of one of two Bivens defendants in case where Government intervened to assert state
25  secrets privilege and filed motion to dismiss on behalf of both defendants; noting that on remand
the United States would have opportunity "to establish that privileged evidence demonstrates a
26  valid defense for [the other Bivens defendant]"); El-Masri, 479 F.3d at 309-10 (affirming
dismissal of Bivens claims in case where Government intervened to assert state secrets privilege
27  and moved to dismiss entire action; finding that individual "defendants could not properly defend
themselves without using privileged evidence"); Black v. United States, 900 F. Supp. 1129,

28

1   is once again because it is not for the individual capacity defendants to assert or waive the state

2   secrets privilege, no matter how much it affects their personal interests.

3        Under these circumstances, ordering the individual capacity defendants to answer or

4   otherwise respond while the state secrets issue remains pending and where the protected

5   information could support a valid qualified immunity defense to all of the causes of action

6   against them cannot be squared with the purpose of the privilege.  As described by the Ninth

7   Circuit, the state secrets doctrine "ensures protection of state secrets by requiring dismissal where

8   defendants would otherwise have strong incentive to improperly disclose state secrets known to

9   them during trial." Jeppesen, 563 F.3d at 1006 n.6.  Plaintiffs here claim that the former

10  President, Vice President, chief of staff to the Vice President, Directors of National Intelligence

11  and the National Security Agency, and Attorneys General all were personally involved in the

12  creation, development, implementation, supervision, and authorization of the alleged surveillance

13  program.  See Compl. ¶¶ 26-37.  There can be no doubt that in their current and former official

14  positions these individuals are and were routinely trusted with the most sensitive national

15  security secrets maintained by our nation and that they remain legally obligated to safeguard

16  those secrets from unauthorized disclosure after leaving office.

17       All of this places the individual capacity defendants in an extremely prejudicial dilemma.

18  With no control over information relevant to a valid defense, they are left with several equally

19  unpalatable options.  At their own financial and personal peril, they would have to risk the

20  unauthorized disclosure of state secrets and all of the attendant legal consequences of doing so

21  (including possible criminal prosecution) in order to fully defend themselves, submit a materially

22  deficient (if not misleading) answer without reliance on the privileged information that they are

23  bound to protect, or forego their right to present a dispositive qualified immunity defense.

24  Forcing a choice between these alternatives is also unnecessary at this stage, where the key

25  threshold issues raised by the United States' privilege assertions and dispositive motion have not

26

27  1136-37 (D. Minn. 1994) (dismissing Bivens claim based on United States' assertion of state
    secrets privilege "as a non-party"), aff'd, 62 F.3d 1115 (8th Cir. 1995).

28

1  been resolved. Because the case may be dismissed in its entirety for the reasons set out in that

2  motion, the individual capacity defendants should not be put in the position of trying to answer or

3  otherwise respond to plaintiffs' allegations in the meantime.[8]

4         Compounding these inequities is plaintiffs' request (made after the Court's Orders of

5  April 27 and May 8, in their opposition to the United States' motion) to conduct full-blown and

6  far-ranging discovery into the alleged surveillance activities, including taking the depositions of

7  all the individual capacity defendants (except President Bush) and several other current and

8  former Government officials. See Doc # 29 at 23 n.11; Doc # 30 ¶ 7. It is well-established that

9  an order allowing discovery "designed to flesh out the merits of a plaintiff's claim before []

10 ruling on the immunity defense" is tantamount to a denial of that defense, as its very purpose is

11 to spare an official from disruptive discovery, and, like a decision denying immunity itself, is

12 immediately appealable as a matter of right. Lion Boulos v. Wilson, 834 F.2d 504, 507 (5th Cir.

13 1987); see Iqbal, 129 S. Ct. at 1953 (holding that the "rejection of the careful-case-management

14 approach," which would permit insufficiently pled cases to proceed into even limited and tightly

15 controlled discovery, "is especially important in suits where Government-official defendants are

16 entitled to assert the defense of qualified immunity"); Siegert v. Gilley, 500 U.S. 226, 229-35

17 (1991) (finding, on interlocutory appeal, that district court erred by declining to rule on qualified

18 immunity defense and then permitting limited discovery, including depositions of the parties).[9]

19 _____

20    [8] Organizing the proceedings in this manner is consistent with, if not mandated by, the
    sequence that the Ninth Circuit follows in cases involving the state secrets privilege. Until the
21  Court decides if the formal requirements of the privilege are met, reviews the assertion of the
    privilege, determines whether the privileged information should be excluded, and then assesses
22  the impact of that exclusion on the rest of the litigation, the individual capacity defendants have
    no way of knowing whether and to what extent the privilege will affect their ability to assert an
23  otherwise available and valid qualified immunity defense. See Al-Haramain, 507 F.3d at 1202-
    04; Kasza, 133 F.3d at 1166-67.
24

25    [9] Accord Liberty Mut. Ins. Co. v. Louisiana Dep't of Ins., 62 F.3d 115, 117 (5th Cir.
    1995) (holding that "discovery order became appealable when it implicitly denied the
26  [defendants'] claim to qualified immunity," as "district court permitted limited discovery . . .
    before deciding the qualified immunity issue"); Lewis, 903 F.2d at 754 (holding that "until the
27  threshold immunity question is determined, discovery shall be limited to resolving that issue

28

*Jewel v. NSA*, No. 08-4373 VRW, Individual Capacity Defendants' Notice of Motion, Motion for Relief
from the Court's Orders of April 27, 2009, and May 8, 2009, and Memorandum In Support Thereof        -8-

1   To this it is no answer to say that, except for the individual capacity defendants' depositions,

2   plaintiffs may pursue the rest of their requested discovery from the other defendants.  That is

3   because the individual capacity defendants and their counsel would need "to participate in the

4   process to ensure the case does not develop in a misleading or slanted way that causes prejudice

5   to their position."  Iqbal, 129 S. Ct. at 1953.  So even if they personally were not subjected to any

6   discovery orders, "they would not be free from the burdens of discovery."  Id.

7          The most common, if not exclusive, context in which the foregoing principles come into

8   play is when a qualified immunity defense actually has been raised through a dispositive motion

9   and remains pending.  Yet these principles apply with still greater force in the unique setting of

10  this case, where a valid qualified immunity defense may exist but cannot even be raised due to an

11  assertion of the state secrets privilege.  Allowing any of plaintiffs' requested discovery to go

12  forward while the individual capacity defendants are blocked from presenting information in

13  support of a qualified immunity defense therefore would amount to a de facto denial of qualified

14  immunity, be contrary to relevant and binding precedent, and be immediately appealable.

15         To summarize, whether the litigation may proceed as to the individual capacity

16  defendants can and should be decided in the first instance based solely on the merits of the

17  United States' motion.  Because these defendants, in their individual capacity, are powerless to

18  control or change the decision to invoke the state secrets or related statutory privileges and are

19  unable to use any of the privileged information to defend themselves, requiring them to answer or

20  otherwise respond while the privilege assertions await a final determination effectively deprives

21  them of the intended benefits of qualified immunity, such as avoiding the burdens of litigation.

22  If the privileges are sustained by the courts, that will terminate this case in its entirety; if on the

23  other hand the Government's current or future assertions of privilege over any state secrets that

24  may be necessary to present a valid defense are ultimately rejected after all appeals have been

25

26  _____

27  alone" and that discovery orders not so limited are immediately appealable) (citing Maxey v.
    Fulton, 890 F.2d 279, 282-83 (10th Cir. 1989), and Harlow, 457 U.S. at 818).

28

*Jewel v. NSA*, No. 08-4373 VRW, Individual Capacity Defendants' Notice of Motion, Motion for Relief
from the Court's Orders of April 27, 2009, and May 8, 2009, and Memorandum In Support Thereof          -9-

1   exhausted and such information is no longer protected by the Government, then the individual

2   capacity defendants would expect to seek dismissal on qualified immunity grounds.

3                                    **CONCLUSION**

4          For all of the reasons stated above, the individual capacity defendants respectfully request

5   relief from the Court's Orders of April 27, 2009, and May 8, 2009.  They specifically ask to be

6   relieved of their obligation to answer or otherwise respond to plaintiffs' complaint by July 15,

7   2009, and that they continue to be relieved of that obligation until there is a final resolution of the

8   issues raised in the United States' motion to dismiss and for summary judgment.

9

10  Respectfully submitted this 10th day of July, 2009,

11  MICHAEL F. HERTZ
    Deputy Assistant Attorney General, Civil Division
12
    ANN M. RAVEL
13  Deputy Assistant Attorney General, Civil Division

14  TIMOTHY P. GARREN
    Director, Torts Branch
15
    ANDREA W. MCCARTHY
16  Senior Trial Counsel, Torts Branch

17  /s/ James R. Whitman
    JAMES R. WHITMAN (D.C. Bar No. 987694)
18  Trial Attorney
    United States Department of Justice
19  Civil Division, Torts Branch

20  Attorneys for George W. Bush, Richard B. Cheney, David S. Addington, Keith B. Alexander,
    Michael V. Hayden, John D. McConnell, John D. Negroponte, Michael B. Mukasey, Alberto R.
21  Gonzales, and John D. Ashcroft, in their individual capacity

22

23

24

25

26

27

28