# Exhibit B

The Clerk announced the following pairs:

On this vote:

Mr. Waggonner for, with Mr. Richmond against.
Mr. Teague for, with Mr. Zeferetti against.
Mr. Kasten for, with Mr. Dent against.
Mr. Symms for, with Mr. Drinan against.
Mr. Hagedorn for, with Mr. Hawkins against.
Mr. Guyer for, with Mr. Fary against.
Mr. Kemp for, with Mr. Rangel against.
Mr. Rhodes for, with Mrs. Burke of California against.
Mr. Badham for, with Mr. Mikva against.
Mr. Hansen for, with Mr. Moakley against.
Mr. Abdnor for, with Mr. Yatron against.

Until further notice:

Mr. Bellenson with Mr. Armstrong.
Mr. Brooks with Mr. Burke of Florida.
Mr. Huckaby with Mr. Caputo.
Mr. Sisk with Mrs. Pettis.
Mr. Shipley with Mr. Frey.
Mr. Rooney with Mr. Del Clawson.
Mr. Rodino with Mr. Pressler.
Miss Jordan with Mr. Johnson of Colorado.
Mr. Krueger with Mr. Thone.
Mr. Whitten with Mr. Young of Alaska.
Mr. Ammerman with Mr. Cochran of Mississippi.
Mr. Byron with Mr. Luken.
Mr. Duncan of Oregon with Mr. Wiggins.
Mr. Foley with Mr. Crane.
Mr. Fraser with Mr. Marlenee.
Mr. Gibbons with Mr. Quie.
Mr. Tsongas with Mr. Thornton.
Mr. Lehman with Mr. Quillen.
Mr. Fuqua with Mr. Miller of California.

So the motion to recommit was rejected.

The result of the vote was announced as above recorded.

The SPEAKER pro tempore. The question is on the passage of the bill.

The question was taken; and the Speaker pro tempore announced that the ayes appeared to have it.

Mr. BAUMAN. Mr. Speaker, on that I demand the yeas and nays.

The yeas and nays were ordered.

The vote was taken by electronic device, and there were—yeas 246, nays 128, not voting 58, as follows:

[Roll No. 737]

YEAS—246

Addabbo
Akaka
Alexander
Ambro
Anderson, Calif.
Anderson, Ill.
Annunzio
Applegate
Ashley
Aspin
AuCoin
Baldus
Barnard
Baucus
Beard, R.I.
Bedell
Benjamin
Biaggi
Bingham
Blanchard
Blouin
Boggs
Boland
Bolling
Bonior
Bonker
Brademas
Brinkley
Brooks
Broomfield
Brown, Calif.
Burke, Mass.
Burlison, Mo.
Burton, John
Burton, Phillip
Carney
Carr
Cavanaugh
Chisholm
Clay
Cleveland
Cohen
Collins, Ill.
Conte
Conyers
Corman
Cornell
Cornwell
Cotter
D'Amours
Danielson
de la Garza
Delaney
Dellums
Derrick
Derwinski
Dicks
Diggs
Dingell
Dodd
Downey
Early
Eckhardt
Edgar
Edwards, Calif.
Eilberg
Evans, Colo.
Evans, Ga.
Evans, Ind.
Fascell
Fenwick
Findley
Fisher
Fithian
Flood
Florio
Foley
Ford, Mich.
Ford, Tenn.
Fowler
Gammage
Garcia
Gaydos
Gephardt
Giaimo
Gilman
Ginn
Glickman
Gore
Green
Gudger
Hall
Hamilton
Hanley
Hannaford
Harkin
Harrington
Harris
Heckler
Hefner
Heftel
Holland
Hollenbeck
Horton
Howard
Hubbard
Hughes
Ireland
Jacobs
Jeffords
Jenkins
Johnson, Calif.
Jones, N.C.
Jones, Okla.
Jones, Tenn.
Kastenmeier
Kazen
Keys
Kildee
Kostmayer
Krebs
LaFalce
Leach
Lederer
Le Fante
Leggett
Levitas
Lloyd, Calif.
Long, La.
Long, Md.
Luken
Lundine
McCloskey
McDade
McFall
McHugh
McKay
McKinney
Madigan
Maguire
Mahon
Mann
Markey
Marks
Marlenee
Mathis
Mattox
Mazzoli
Meeds
Metcalfe
Meyner
Mikulski
Mineta
Minish
Mitchell, Md.
Moakley
Moffett
Montgomery
Moorhead, Pa.
Mottl
Murphy, Ill.
Murphy, N.Y.
Murphy, Pa.
Murtha
Myers, Michael
Natcher
Neal
Nix
Nolan
Nowak
Oberstar
Obey
Ottinger
Panetta
Patten
Patterson
Pattison
Pease
Pepper
Perkins
Pickle
Pike
Preyer
Price
Pritchard
Pursell
Quayle
Railsback
Reuss
Rinaldo
Risenhoover
Roberts
Roe
Rogers
Roncalio
Rose
Rosenthal
Rostenkowski
Roybal
Russo
Ryan
Santini
Sarasin
Sawyer
Scheuer
Schroeder
Seiberling
Sharp
Simon
Skelton
Smith, Iowa
Solarz
Spellman
St Germain
Staggers
Stanton
Stark
Steed
Steers
Stokes
Studds
Thompson
Traxler
Tucker
Udall
Ullman
Van Deerlin
Vanik
Vento
Volkmer
Walgren
Waxman
Weaver
Weiss
Whalen
White
Whitten
Wilson, Tex.
Wirth
Wolff
Wright
Wydler
Yates
Young, Mo.
Zablocki

NAYS—128

Andrews, N.C.
Andrews, N. Dak.
Archer
Ashbrook
Bafalis
Bauman
Beard, Tenn.
Bennett
Bevill
Bowen
Breaux
Brodhead
Brown, Mich.
Brown, Ohio
Broyhill
Buchanan
Burgener
Burleson, Tex.
Butler
Carter
Cederberg
Chappell
Clausen, Don H.
Coleman
Collins, Tex.
Conable
Corcoran
Coughlin
Cunningham
Daniel, Dan
Daniel, R. W.
Davis
Devine
Dickinson
Dornan
Duncan, Tenn.
Edwards, Ala.
Edwards, Okla.
Emery
English
Erlenborn
Ertel
Evans, Del.
Fish
Flippo
Flowers
Flynt
Forsythe
Fountain
Frenzel
Goldwater
Gonzalez
Goodling
Gradison
Grassley
Hammerschmidt
Harsha
Hightower
Hillis
Holt
Holtzman
Hyde
Ichord
Jenrette
Kelly
Kindness
Lagomarsino
Latta
Lent
Livingston
Lloyd, Tenn.
Lott
Lujan
McClory
McCormack
McDonald
McEwen
Marriott
Martin
Michel
Miller, Ohio
Mitchell, N.Y.
Mollohan
Moore
Moorhead, Calif.
Myers, Gary
Myers, John
Nedzi
Nichols
O'Brien
Oakar
Poage
Regula
Robinson
Rousselot
Rudd
Runnels
Ruppe
Satterfield
Schulze
Sebelius
Shuster
Sikes
Skubitz
Slack
Smith, Nebr.
Snyder
Spence
Stangeland
Steiger
Stockman
Stratton
Stump
Taylor
Treen
Trible
Vander Jagt
Walker
Walsh
Wampler
Watkins
Whitehurst
Whitley
Wilson, Bob
Wilson, C. H.
Winn
Wylie
Young, Fla.

NOT VOTING—58

Abdnor
Ammerman
Armstrong
Badham
Bellenson
Breckinridge
Burke, Calif.
Burke, Fla.
Byron
Caputo
Clawson, Del
Cochran
Crane
Dent
Drinan
Duncan, Oreg.
Fary
Fraser
Frey
Fuqua
Gibbons
Guyer
Hagedorn
Hansen
Hawkins
Huckaby
Johnson, Colo.
Jordan
Kasten
Kemp
Krueger
Lehman
Mikva
Milford
Miller, Calif.
Moss
Pettis
Pressler
Quie
Quillen
Rangel
Rhodes
Richmond
Rodino
Rooney
Shipley
Sisk
Symms
Teague
Thone
Thornton
Tsongas
Waggonner
Wiggins
Yatron
Young, Alaska
Young, Tex.
Zeferetti

The Clerk announced the following pairs:

On this vote:

Mr. Richmond for, with Mr. Drinan against.
Mr. Zeferetti for, with Mr. Kasten against.
Mr. Fary for, with Mr. Symms against.
Mr. Rooney for, with Mr. Abdnor against.
Mr. Fuqua for, with Mr. Hansen against.
Mrs. Burke of California for, with Mr. Hagedorn against.
Mr. Rangel for, with Mr. Rhodes against.
Mr. Mikva for, with Mr. Del Clawson against.
Mr. Yatron for, with Mr. Crane against.
Mr. Rodino for, with Mr. Kemp against.
Mr. Dent for, with Mr. Guyer against.
Mr. Hawkins for, with Mr. Teague against.
Mr. Miller of California for, with Mr. Waggonner against.
Mr. Lehman for, with Mr. Wiggins against.
Mr. Shipley for, with Mr. Badham against.

Until further notice:

Mr. Ammerman with Mr. Armstrong.
Mr. Bellenson with Mrs. Pettis.
Mr. Gibbons with Mr. Pressler.
Mr. Sisk with Mr. Thone.
Mr. Tsongas with Mr. Burke of Florida.
Mr. Krueger with Mr. Frey.
Miss Jordan with Mr. Quie.
Mr. Huckaby with Mr. Quillen.
Mr. Breckinridge with Mr. Caputo.
Mr. Byron with Mr. Duncan of Oregon.
Mr. Milford with Mr. Thornton.
Mr. Moss with Mr. Young of Alaska.

Mr. BROWN of Michigan changed his vote from "yea" to "nay."

So the bill was passed.

The result of the vote was announced as above recorded.

The title was amended so as to read: "A bill to authorize electronic surveillance to obtain foreign intelligence information.".

A motion to reconsider was laid on the table.

The SPEAKER pro tempore (Mr. FOLEY). Pursuant to the provisions of House Resolution 1266, the Committee on the Judiciary is discharged from the further consideration of the Senate bill (S. 1566) to amend title 18, United States Code, to authorize applications for a court order approving the use of electronic surveillance to obtain foreign intelligence information.

The Clerk read the title of the Senate bill.

MOTION OFFERED BY MR. BOLAND

Mr. BOLAND. Mr. Speaker, I offer a motion.

The Clerk read as follows:

Mr. BOLAND moves to strike out all after the enacting clause of the Senate bill S. 1566 and to insert in lieu thereof the provisions of H.R. 7308, as passed by the House, as follows:

That this Act may be cited as the "Foreign Intelligence Surveillance Act of 1978".

TABLE OF CONTENTS

TITLE I—ELECTRONIC SURVEILLANCE WITHIN THE UNITED STATES FOR FOREIGN INTELLIGENCE PURPOSES

Sec. 101. Definitions.
Sec. 102. Authorization for electronic surveillance for foreign intelligence purposes.
Sec. 103. Special courts.
Sec. 104. Application for an order.
Sec. 105. Issuance of an order.
Sec. 106. Use of information.
Sec. 107. Report of electronic surveillance.
Sec. 108. Congressional oversight.
Sec. 109. Penalties.
Sec. 110. Civil liability.

TITLE II—CONFORMING AMENDMENTS

Sec. 201. Amendments to chapter 119 of title 18, United States Code.

TITLE III—EFFECTIVE DATE

Sec. 301. Effective date.

TITLE I—ELECTRONIC SURVEILLANCE WITHIN THE UNITED STATES FOR FOREIGN INTELLIGENCE PURPOSES

DEFINITIONS

SEC. 101. As used in this title:
(a) "Foreign power" means—
(1) a foreign government or any component thereof, whether or not recognized by the United States;
(2) a faction of a foreign nation or nations, not substantially composed by United States persons;
(3) an entity that is openly acknowledged by a foreign government or governments to be directed and controlled by such foreign government or governments;
(4) a group engaged in international terrorism or activities in preparation therefor;
(5) a foreign-based organization, not substantially composed of United States persons; or
(6) an entity that is directed and controlled by a foreign government or governments.
(b) "Agent of a foreign power" means—
(1) any person other than a United States person, who—
(A) acts in the United States as an officer, member, or employee of a foreign power; or
(B) acts for or on behalf of a foreign power which engages in clandestine intelligence activities in the United States contrary to the interests of the United States, when the circumstances of such person's presence in the United States indicate that such person may engage in such activities in the United States, or when such person knowingly aids or abets any person in the conduct of such activities or knowingly conspires with any person to engage in such activities; or
(2) any person who—
(A) knowingly engages in clandestine intelligence gathering activities for or on behalf of a foreign power, which activities involve or may involve a violation of the criminal statutes of the United States;
(B) pursuant to the direction of an intelligence service or network of a foreign power, knowingly engages in any other clandestine intelligence activities for or on behalf of such foreign power, which activities involve or are about to involve a violation of the criminal statutes of the United States;
(C) knowingly engages in sabotage or international terrorism, or activities that are in preparation therefor, for or on behalf of a foreign power; or
(D) knowingly aids or abets any person in the conduct of activities described in subparagraph (A), (B), or (C) or knowingly conspires with any person to engage in activities described in subparagraph (A), (B), or (C).

(c) "International terrorism" means activities that—
(1) involve violent acts or acts dangerous to human life or property that are or may be a violation of the criminal laws of the United States or of any State, or that might involve a criminal violation if committed within the jurisdiction of the United States or any State;
(2) appear to be intended—
(A) to intimidate or coerce a civilian population;
(B) to influence the policy of a government by intimidation or coercion; or
(C) to affect the conduct of a government by assassination or kidnapping; and
(3) occur totally outside the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to coerce or intimidate, or the locale in which their perpetrators operate or seek asylum.
(d) "Sabotage" means activities that involve or may involve a violation of chapter 105 of title 18, United States Code, or that might involve such a violation if committed against the United States.
(e) "Foreign intelligence information" means—
(1) information that relates to and, if concerning a United States person, is necessary to the ability of the United States to protect against—
(A) actual or potential attack or other grave hostile acts of a foreign power or an agent of a foreign power;
(B) sabotage or international terrorism by a foreign power or an agent of a foreign power; or
(C) clandestine intelligence activities by an intelligence service or network of a foreign power or by an agent of a foreign power; or (2) information with respect to a foreign power or foreign territory that relates to and, if concerning a United States person, is necessary to—
(A) the national defense or the security of the United States; or
(B) the conduct of the foreign affairs of the United States.
(f) "Electronic surveillance" means—
(1) the acquisition by an electronic, mechanical, or other surveillance device of the contents of any wire or radio communication sent by or intended to be received by a particular, known United States person who is in the United States, if the contents are acquired by intentionally targeting that United States person, under circumstances in which a person has a reasonable expectation of privacy and a warrant would be required for law enforcement purposes;
(2) the acquisition by an electronic, mechanical, or other surveillance device of the contents of any wire communication to or from a person in the United States, without the consent of any party thereto, if such acquisition occurs in the United States;
(3) the intentional acquisition by an electronic, mechanical, or other surveillance device of the contents of any radio communication, under circumstances in which a person has a reasonable expectation of privacy and a warrant would be required for law enforcement purposes, and if both the sender and all intended recipients are located within the United States; or
(4) the installation or use of an electronic, mechanical, or other surveillance device in the United States for monitoring to acquire information, other than from a wire or radio communication, under circumstances in which a person has a reasonable expectation of privacy and a warrant would be required for law enforcement purposes.
(g) "Attorney General" means the Attorney General of the United States (or Acting Attorney General) or the Deputy Attorney General.

(h) "Minimization procedures", with respect to electronic surveillance, means—
(1) specific procedures, which shall be adopted by the Attorney General, that are reasonably designed in light of the purpose and technique of the particular surveillance, to minimize the acquisition, retention, and dissemination of nonpublicly available information concerning unconsenting United States persons consistent with the need of the United States to obtain, produce, and disseminate foreign intelligence information;
(2) procedures that require that nonpublicly available information, which is not foreign intelligence information, as defined in subsection (e)(1), shall not be disseminated in a manner that identifies any individual United States person, without such person's consent, unless such person's identity is necessary to understand foreign intelligence information or assess its importance;
(3) notwithstanding paragraphs (1) and (2), procedures that allow for the retention and dissemination of information that is evidence of a crime which has been, is being, or is about to be committed and that is to be retained or disseminated for the purpose of preventing the crime or enforcing the criminal law; and
(4) notwithstanding paragraphs (1), (2), and (3), with respect to any electronic surveillance approved pursuant to section 102 (a), procedures that require that no contents of any communication to which a United States person is a party shall be disclosed, disseminated, or used for any purpose or retained for longer than twenty-four hours unless a court order under section 105 is obtained or unless the Attorney General determines that the information may indicate a threat of death or serious bodily harm to any person.

(i) "United States person" means a citizen of the United States, an alien lawfully admitted for permanent residence (as defined in section 101(a)(20) of the Immigration and Nationality Act), an unincorporated association a substantial number of members of which are citizens of the United States or aliens lawfully admitted for permanent residence, or a corporation which is incorporated in the United States, but does not include a corporation or an association which is a foreign power, as defined in subsection (a) (1), (2), or (3).
(j) "United States", when used in a geographic sense, means all areas under the territorial sovereignty of the United States and the Trust Territory of the Pacific Islands.
(k) "Aggrieved person" means a person who is the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance.
(l) "Wire communication" means any communication while it is being carried by a wire, cable, or other like connection furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of interstate or foreign communications.
(m) "Person" means any individual, including any officer or employee of the Federal Government, or any group, entity, association, corporation, or foreign power.
(n) "Contents", when used with respect to a communication, includes any information concerning the identity of the parties to such communication or the existence, substance, purport, or meaning of that communication.
(o) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Trust Territory of the Pacific Islands, and any territory or possession of the United States.

AUTHORIZATION FOR ELECTRONIC SURVEILLANCE FOR FOREIGN INTELLIGENCE PURPOSES

SEC. 102. (a)(1) Notwithstanding any other law, the President, through the At-

torney General, may authorize electronic surveillance without a court order under this title to acquire foreign intelligence information for periods of up to one year if the Attorney General certifies in writing under oath that—

(A) the electronic surveillance is solely directed at—

(i) communications exclusively between or among foreign powers, as defined in section 101(a) (1), (2), or (3); or

(ii) the acquisition of technical intelligence from property or premises under the open and exclusive control of a foreign power, as defined in section 101(a) (1), (2), or (3); and

(B) the proposed minimization procedures with respect to such surveillance meet the definition of minimization procedures under section 101(h); and

if the Attorney General shall report such minimization procedures and any changes thereto to the House Permanent Select Committee on Intelligence and the Senate Select Committee on Intelligence at least thirty days prior to their effective date, unless the Attorney General determines immediate action is required and notifies the committees immediately of such minimization procedures and the reason for their becoming effective immediately.

(2) An electronic surveillance authorized by this subsection may be conducted only in accordance with the Attorney General's certification and the minimization procedures adopted by him.

(3) With respect to electronic surveillance authorized by this subsection, the Attorney General may direct a specified communication common carrier to—

(A) furnish all information, facilities, or technical assistance necessary to accomplish the electronic surveillance in such a manner as will protect its secrecy and produce a minimum of interference with the services that such carrier is providing its customers; and

(B) maintain under security procedures approved by the Attorney General and the Director of Central Intelligence any records concerning the surveillance or the aid furnished which such carrier wishes to retain. The Government shall compensate, at the prevailing rate, such carrier for furnishing such aid.

(b) Applications for a court order under this title are authorized if the President has, by written authorization, empowered the Attorney General to approve applications to a United States district court having jurisdiction under section 103, and a judge to whom an application is made may, notwithstanding any other law, grant an order, in conformity with section 105, approving electronic surveillance of a foreign power or an agent of a foreign power for the purpose of obtaining foreign intelligence information, except that the court shall not have jurisdiction to grant any order approving electronic surveillance directed solely as described in paragraph (1)(A) of subsection (a) unless such surveillance may involve the acquisition of communications of any United States person.

JURISDICTION

SEC. 103. (a) The United States district courts shall have jurisdiction to receive applications for court orders under this title and to issue orders under section 105 of this title.

(b) Proceedings under this title shall be conducted as expeditiously as possible. If any application to the United States district court is denied, the court shall record the reasons for that denial, and the reasons for that denial shall, upon the motion of the party to whom the application was denied, be transmitted under seal to the United States court of appeals.

APPLICATION FOR AN ORDER

SEC. 104. (a) Each application for an order approving electronic surveillance under this title shall be made by a Federal officer in writing upon oath or affirmation to a judge having jurisdiction under section 103. Each application shall require the approval of the Attorney General based upon his finding that it satisfies the criteria and requirements of such application as set forth in this title. It shall include—

(1) the identity of the Federal officer making the application;

(2) the authority conferred on the Attorney General by the President of the United States and the approval of the Attorney General to make the application;

(3) the identity, if known or a description of the target of the electronic surveillance;

(4) a statement of the facts and circumstances relied upon by the applicant to justify his belief that—

(A) the target of the electronic surveillance is a foreign power or an agent of a foreign power; and

(B) each of the facilities or places at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power;

(5) a statement of the proposed minimization procedures;

(6) a detailed description of the nature of the information sought and the type of communications or activities to be subjected to the surveillance;

(7) a certification or certifications by the Assistant to the President for National Security Affairs and an executive branch official or officials designated by the President from among those executive officers employed in the area of national security or defense and appointed by the President with the advice and consent of the Senate—

(A) that the certifying official deems the information sought to be foreign intelligence information;

(B) that the purpose of the surveillance is to obtain foreign intelligence information;

(C) that such information cannot reasonably be obtained by normal investigative techniques;

(D) that designates the type of foreign intelligence information being sought according to the categories described in section 101(e); and

(E) including a statement of the basis for the certification that—

(i) the information sought is the type of foreign intelligence information designated; and

(ii) such information cannot reasonably be obtained by normal investigative techniques;

(8) a statement of the means by which the surveillance will be effected;

(9) a statement of the facts concerning all previous applications that have been made to any judge under this title involving any of the persons, facilities, or places specified in the application, and the action taken on each previous application;

(10) a statement of the period of time for which the electronic surveillance is required to be maintained; and if the nature of the intelligence gathering is such that the approval of the use of electronic surveillance under this title should not automatically terminate when the described type of information has first been obtained, a description of facts supporting the belief that additional information of the same type will be obtained thereafter; and

(11) whenever more than one electronic, mechanical or other surveillance device is to be used with respect to a particular proposed electronic surveillance, the coverage of the devices involved and what minimization procedures apply to information acquired by each device.

(b) Whenever the target of the electronic surveillance is a foreign power, as defined in section 101(a) (1), (2), or (3), and each of the facilities or places at which the surveillance is directed is owned, leased, or exclusively used by that foreign power, the application need not contain the information required by paragraphs (6), (7)(E), (8), and (11) of subsection (a) but shall contain such information about the surveillance techniques and communications or other information concerning United States persons likely to be obtained as may be necessary to assess the proposed minimization procedures.

(c) The Attorney General may require any other affidavit or certification from any other officer in connection with the application.

(d) The judge may require the applicant to furnish such other information as may be necessary to make the determinations required by section 105.

ISSUANCE OF AN ORDER

SEC. 105. (a) Upon an application made pursuant to section 104, the judge shall enter an ex parte order as requested or as modified approving the electronic surveillance if he finds that—

(1) the President has authorized the Attorney General to approve applications for electronic surveillance for foreign intelligence information;

(2) the application has been made by a Federal officer and approved by the Attorney General;

(3) on the basis of the facts submitted by the applicant there is probable cause to believe that—

(A) the target of the electronic surveillance is a foreign power or an agent of a foreign power: *Provided*, That no United States person may be considered a foreign power or an agent of a foreign power solely upon the basis of activities protected by the first amendment to the Constitution of the United States; and

(B) each of the facilities or places at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power;

(4) the proposed minimization procedures meet the definition of minimization procedures under section 101(h); and

(5) the application which has been filed contains all statements and certifications required by section 104 and, if the target is a United States person, the certification or certifications are not clearly erroneous on the basis of the statement made under section 104(a)(7)(E) and any other information furnished under section 104(d).

(b) An order approving an electronic surveillance under this section shall—

(1) specify—

(A) the identity, if known, or a description of the target of the electronic surveillance;

(B) the nature and location of each of the facilities or places at which the electronic surveillance will be directed;

(C) the type of information sought to be acquired and the type of communications or activities to be subjected to the surveillance;

(D) the means by which the electronic surveillance will be effected;

(E) the period of time during which the electronic surveillance is approved; and

(F) whenever more than one electronic, mechanical, or other surveillance device is to be used under the order, the authorized coverage of the devices involved and what minimization procedures shall apply to information subject to acquisition by each device; and

(2) direct—

(A) that the minimization procedures be followed;

(B) that, upon the request of the applicant, a specified communication or other common carrier, landlord, custodian, or other specified person furnish the applicant forthwith any and all information, facilities, or technical assistance necessary to accomplish the electronic surveillance unobtrusively and in such manner as will protect its secrecy and produce a minimum of interference

with the services that such carrier, landlord, custodian, or other person is providing that target of electronic surveillance;

(C) that such carrier, landlord, custodian, or other person maintain under security procedures approved by the Attorney General and the Director of Central Intelligence any records concerning the surveillance or the aid furnished that such person wishes to retain; and

(D) that the applicant compensate, at the prevailing rate, such carrier, landlord, custodian, or other person for furnishing such aid.

(c) Whenever the target of the electronic surveillance is a foreign power, as defined in section 101(a) (1), (2), or (3), and each of the facilities or places at which the surveillance is directed is owned, leased, or exclusively used by that foreign power, the order need not contain the information required by subparagraphs (C), (D), and (F) of subsection (b)(1), but shall generally describe the information sought, the communications or activities to be subjected to the surveillance, and the type of electronic surveillance involved, including whether physical entry is required.

(d)(1) An order issued under this section may approve an electronic surveillance for the period necessary to achieve its purpose, or for ninety days, whichever is less, except that an order under this section shall approve an electronic surveillance targeted against a foreign power, as defined in section 101(a) (1), (2), or (3), for the period specified in the application or for one year, whichever is less.

(2) Extensions of an order issued under this title may be granted on the same basis as an original order upon an application for an extension and new findings made in the same manner as required for an original order, except that an extension of an order under this chapter for a surveillance targeted against a foreign power, as defined in section 101(a) (4), (5), or (6), may be for a period not to exceed one year if the judge finds probable cause to believe that no communication of any individual United States person will be acquired during the period.

(3) At the end of the period of time for which electronic surveillance is approved by an order or an extension, the judge may assess compliance with the minimization procedures by reviewing the circumstances under which information concerning United States persons was acquired, retained, or disseminated.

(e) Notwithstanding any other provision of this title, when the Attorney General reasonably determines that—

(1) an emergency situation exists with respect to the employment of electronic surveillance to obtain foreign intelligence information before an order authorizing such surveillance can with due diligence be obtained; and

(2) the factual basis for issuance of an order under this title to approve such surveillance exists;

he may authorize the emergency employment of electronic surveillance if a judge having jurisdiction under section 103 is informed by the Attorney General or his designee at the time of such authorization that the decision has been made to employ emergency electronic surveillance and if an application in accordance with this title is made to that judge as soon as practicable, but not more than twenty-four hours after the Attorney General authorizes such surveillance. If the Attorney General authorizes such emergency employment of electronic surveillance, he shall require that the minimization procedures required by this title for the issuance of a judicial order be followed. In the absence of a judicial order approving such electronic surveillance, the surveillance shall terminate when the information sought is obtained, when the application for the order is denied, or after the expiration of twenty-four hours from the time of authorization by the Attorney General, whichever is earliest. In the event that such application for approval is denied, or in any other case where the electronic surveillance is terminated and no order is issued approving the surveillance, no information obtained or evidence derived from such surveillance shall be received in evidence or otherwise disclosed in any trial, hearings, or other proceeding in or before any court, grand jury, department, office, agency, regulatory body, legislative committee, or other authority of the United States, a State, or political subdivision thereof, and no information concerning any United States person acquired from such surveillance shall subsequently be used or disclosed in any other manner by Federal officers or employees without the consent of such person, except with the approval of the Attorney General if the information may indicate a threat of death or serious bodily harm to any person. A denial of the application made under this subsection may be reviewed as provided in section 103.

(f) Notwithstanding any other provision of this title, officers, employees, or agents of the United States are authorized in the normal course of their official duties to conduct electronic surveillance not targeted against the communications of any particular person or persons, under procedures approved by the Attorney General, solely to—

(1) test the capability of electronic equipment, if—

(A) it is not reasonable to obtain the consent of the persons incidentally subjected to the surveillance;

(B) the test is limited in extent and duration to that necessary to determine the capability of the equipment; and

(C) the contents of any communication acquired are retained and used only for the purpose of determining the capability of the equipment, are disclosed only to test personnel, and are destroyed before or immediately upon completion of the test;

(2) determine the existence and capability of electronic surveillance equipment being used by persons not authorized to conduct electronic surveillance, if—

(A) it is not reasonable to obtain the consent of persons incidentally subjected to the surveillance;

(B) such electronic surveillance is limited in extent and duration to that necessary to determine the existence and capability of such equipment; and

(C) any information acquired by such surveillance is used only to enforce chapter 119 of title 18, United States Code, or section 605 of the Communications Act of 1934, or to protect information from unauthorized surveillance; or

(3) train intelligence personnel in the use of electronic surveillance equipment, if—

(A) it is not reasonable to—

(i) obtain the consent of the persons incidentally subjected to the surveillance;

(ii) train persons in the course of surveillances otherwise authorized by this title; or

(iii) train persons in the use of such equipment without engaging in electronic surveillance;

(B) such electronic surveillance is limited in extent and duration to that necessary to train the personnel in the use of the equipment; and

(C) no contents of any communication acquired are retained or disseminated for any purpose, but are destroyed as soon as reasonably possible.

(g) Certifications made by the Attorney General pursuant to section 102(a) and applications made and orders granted under this title shall be retained for a period of at least ten years from the date of the application and shall be stored at the direction of the Attorney General under security procedures approved by the Director of Central Intelligence.

USE OF INFORMATION

SEC. 106. (a) Information acquired from an electronic surveillance conducted pursuant to this title concerning any United States person may be used and disclosed by Federal officers and employees without the consent of the United States person only in accordance with the minimization procedures required by this title. No otherwise privileged communication obtained in accordance with, or in violation of, the provisions of this title shall lose its privileged character. No information acquired from an electronic surveillance pursuant to this title may be used or disclosed by Federal officers or employees except for lawful purposes.

(b) No information acquired pursuant to this title shall be disclosed for law enforcement purposes unless such disclosure is accompanied by a statement that such information, or any information derived therefrom, may only be used in a criminal proceeding with the advance authorization of the Attorney General.

(c) Whenever the Government intends to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, against an aggrieved person, any information obtained or derived from an electronic surveillance of that aggrieved person pursuant to the authority of this title, the Government shall, prior to the trial, hearing, or other proceeding or at a reasonable time prior to an effort to so disclose or so use that information or submit it in evidence, notify the aggrieved person and the court or other authority in which the information is to be disclosed or used that the Government intends to so disclose or so use such information.

(d) Whenever any State or political subdivision thereof intends to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of a State or a political subdivision thereof, against an aggrieved person any information obtained or derived from an electronic surveillance of that aggrieved person pursuant to the authority of this title, the State or political subdivision thereof shall notify the aggrieved person, the court or other authority in which the information is to be disclosed or used, and the Attorney General that the State or political subdivision thereof intends to so disclose or so use such information.

(e) Any person against whom evidence obtained or derived from an electronic surveillance to which he is an aggrieved person is to be, or has been, introduced or otherwise used or disclosed in any trial, hearing, or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the evidence obtained or derived from such electronic surveillance on the grounds that—

(1) the information was unlawfully acquired; or

(2) the surveillance was not made in conformity with an order of authorization or approval.

Such a motion shall be made before the trial, hearing, or other proceeding unless there was no opportunity to make such a motion or the person was not aware of the grounds of the motion.

(f) Whenever a court or other authority is notified pursuant to subsection (c) or (d), or whenever a motion is made pursuant to subsection (e) and the Government

concedes that information obtained or derived from an electronic surveillance pursuant to the authority of this title as to which the moving party is an aggrieved person is to be, or has been, introduced or otherwise used or disclosed in any trial, hearing, or other proceeding, the Government may make a motion before the court to determine the lawfulness of the electronic surveillance. Unless all the judges of the Special Court are so disqualified. The motion may not be heard by a judge who granted or denied an order or extension involving the surveillance at issue. Such motion shall stay any action in any court or authority to determine the lawfulness of the surveillance. In determining the lawfulness of the surveillance, the Court shall, notwithstanding any other law, if the Attorney General files an affidavit under oath with the court that disclosure would harm the national security of the United States or compromise foreign intelligence sources and methods, review in camera the application, order, and such other materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted. In making this determination, the court may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials if there is a reasonable question as to the legality of the surveillance and if disclosure would likely promote a more accurate determination of such legality, or if such disclosure would not harm the national security.

(g) Except as provided in subsection (f), whenever any motion or request is made pursuant to any statute or rule of the United States or any State before any court or other authority of the United States or any State to discover or obtain applications or orders or other materials relating to surveillance pursuant to the authority of this title or to discover, obtain, or suppress any information obtained from electronic surveillance pursuant to the authority of this title, and the court or other authority determines that the moving party is an aggrieved person, if the Attorney General files with the United States court of appeals an affidavit under oath that an adversary hearing would harm the national security or compromise foreign intelligence sources and methods and that no information obtained or derived from an electronic surveillance pursuant to the authority of this title has been or is about to be used by the Government in the case before the court or other authority, the Special Court of Appeals shall, notwithstanding any other law, stay the proceeding before the other court or authority and review in camera and ex parte the application, order, and such other materials as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted. In making this determination, the court of appeals shall disclose, under appropriate security procedures and protective orders, to the aggrieved person or his attorney portions of the application, order, or other materials relating to the surveillance only if necessary to afford due process to the aggrieved person.

(h) If the court pursuant to subsection (f) or the court of appeals pursuant to subsection (g) determines the surveillance was not lawfully authorized and conducted, it shall, in accordance with the requirements of the law, suppress the evidence which was unlawfully obtained or derived from electronic surveillance of the aggrieved person or otherwise grant the motion of the aggrieved person. If the court pursuant to subsection (f) or the court of appeals pursuant to subsection (g) determines the surveillance was lawfully authorized and conducted, it shall deny the motion of the aggrieved person except to the extent that due process requires discovery or disclosure.

(i) Orders granting or denying motions or requests under subsection (h), decisions under this section as to the lawfulness of electronic surveillance, and, absent a finding of unlawfulness, orders of the district court or court of appeals granting or denying disclosure of applications, orders, or other materials relating to a surveillance shall be final orders and binding upon all courts of the United States and the several States except the court of appeals and the Supreme Court.

(j) In circumstances involving the unintentional acquisition by an electronic, mechanical, or other surveillance device of the contents of any radio communication, under circumstances in which a person has a reasonable expectation of privacy and a warrant would be required for law enforcement purposes, and if both the sender and all intended recipients are located within the United States, such contents shall be destroyed upon recognition, unless the Attorney General determines that the contents may indicate a threat of death or serious bodily harm to any person.

(k) If an emergency employment of electronic surveillance is authorized under section 105(e) and a subsequent order approving the surveillance is not obtained, the judge shall cause to be served on any United States person named in the application and on such other United States persons subject to electronic surveillance as the judge may determine in his discretion it is in the interest of justice to serve, notice of—
(1) the fact of the application;
(2) the period of the surveillance; and
(3) the fact that during the period information was or was not obtained.

On an ex parte showing of good cause to the judge the serving of the notice required by this subsection may be postponed or suspended for a period not to exceed ninety days. Thereafter, on a further ex parte showing of good cause, the court shall forego ordering the serving of the notice required under this subsection.

REPORT OF ELECTRONIC SURVEILLANCE

SEC. 107. In April of each year, the Attorney General shall transmit to the Administrative Office of the United States Courts and to Congress a report setting forth with respect to the preceding calendar year—
(a) the total number of applications made for orders and extensions of orders approving electronic surveillance under this title; and
(b) the total number of such orders and extensions either granted, modified, or denied.

CONGRESSIONAL OVERSIGHT

SEC. 108. (a) On a semiannual basis the Attorney General shall fully inform the House Permanent Select Committee on Intelligence and the Senate Select Committee on Intelligence concerning all electronic surveillance under this title. Nothing in this title shall be deemed to limit the authority and responsibility of those committees to obtain such additional information as they may need to carry out their respective functions and duties.

(b) The Permanent Select Committee on Intelligence of the House of Representatives and the Select Committee on Intelligence of the Senate may periodically review the information provided under subsection (a). If either such committee determines that an electronic surveillance of a United States person under this title has produced no foreign intelligence information and that the disclosure of the fact of such surveillance to such United States person would not harm the national security, such committee shall inform such person of the fact of such surveillance and that no foreign intelligence information was derived from such surveillance.

PENALTIES

SEC. 109. (a) OFFENSE.—A person is guilty of an offense if he intentionally engaged in electronic surveillance under color of law except as authorized by statute.
(b) DEFENSE.—It is a defense to a prosecution under subsection (a) that the defendant was a law enforcement or investigative officer engaged in the course of his official duties and the electronic surveillance was authorized by and conducted pursuant to a seach warrant or court order of a court of competent jurisdiction.
(c) PENALTY.—An offense described in this section is punishable by a fine of not more than $10,000 or imprisonment for not more than five years, or both.
(d) JURISDICTION.—There is Federal jurisdiction over an offense under this section if the person committing the offense was an officer or employee of the United States at the time the offense was committed.

CIVIL LIABILITY

SEC. 110. CIVIL ACTION.—An aggrieved person, other than a foreign power or an agent of a foreign power, as defined in section 101 (a) or (b)(1)(A), respectively, who has been subjected to an electronic surveillance or whose communication has been disseminated or used in violation of section 109 shall have a cause of action against any person who committed such violation and shall be entitled to recover—
(a) actual damages, but not less than liquidated damages of $1,000 or $100 per day for each day of violation, whichever is greater;
(b) punitive damages; and
(c) reasonable attorney's fees and other investigation and litigation costs reasonably incurred.

AUTHORIZATION DURING TIME OF WAR

Notwithstanding any other law, the President, through the Attorney General, may authorize electronic surveillance without a court order under this title to acquire foreign intelligence information for periods up to one year during a period of war declared by the Congress.

TITLE II—CONFORMING AMENDMENTS

AMENDMENTS TO CHAPTER 119 OF TITLE 18, UNITED STATES CODE

SEC. 201. Chapter 119 of title 18, United States Code, is amended as follows:
(a) Section 2511(2)(a)(ii) is amended to read as follows:
"(ii) Notwithstanding any other law, communication common carriers, their officers, employees, and agents, landlords, custodians, or other persons, are authorized to provide information, facilities, or technical assistance to persons authorized by law to intercept wire or oral communications or to conduct electronic surveillance, as defined in section 101 of the Foreign Intelligence Surveillance Act of 1978, if the common carrier, its officers, employees, or agents, landlord, custodian, or other specified person, has been provided with—
"(A) a court order directing such assistance signed by the authorizing judge, or
"(B) a certification in writing by a person specified in section 2518(7) of this title or the Attorney General of the United States that no warrant or court order is required by law, that all statutory requirements have been met, and that the specified assistance is required,
setting forth the period of time during which the provision of the information, facilities, or technical assistance is authorized and specifying the information, facilities, or technical assistance required. No communication common carrier, officer, employee, or agent thereof, or landlord, custodian, or other specified person shall disclose the existence of any interception or surveillance or the device used to accomplish the interception or surveillance with respect to which the

person has been furnished an order or certification under this subparagraph, except as may otherwise be required by legal process and then only after prior notification to the Attorney General or to the principal prosecuting attorney of a State or any political subdivision of a State, as may be appropriate. No cause of action shall lie in any court against any communication common carrier, its officers, employees, or agents, landlord, custodian, or other specified person for providing information, facilities, or assistance in accordance with the terms of an order or certification under this subparagraph.".

(b) Section 2511(2) is amended by adding at the end thereof the following new provisions:

"(e) Notwithstanding any other provision of this title or section 605 or 606 of the Communications Act of 1934, it shall not be unlawful for an officer, employee, or agent of the United States in the normal course of his official duty to conduct electronic surveillance, as defined in section 101 of the Foreign Intelligence Surveillance Act of 1978, as authorized by that Act.

"(f) Nothing contained in this chapter, or section 605 of the Communications Act of 1934, shall be deemed to affect the acquisition by the United States Government of foreign intelligence information from international or foreign communications by a means other than electronic surveillance as defined in section 101 of the Foreign Intelligence Surveillance Act of 1978, and procedures in this chapter and the Foreign Intelligence Surveillance Act of 1978 shall be the exclusive statutory means by which electronic surveillance, as defined in section 101 of such Act, and the interception of domestic wire and oral communications may be conducted.".

(c) Section 2511(3) is repealed.
(d) Section 2518(1) is amended by inserting "under this chapter" after "communication".
(e) Section 2518(4) is amended by inserting "under this chapter" after both appearances of "wire or oral communication".
(f) Section 2518(9) is amended by striking out "intercepted" and inserting "intercepted pursuant to this chapter" after "communication".
(g) Section 2518(10) is amended by striking out "intercepted" and inserting "intercepted pursuant to this chapter" after the first appearance of "communication".
(h) Section 2519(3) is amended by inserting "pursuant to this chapter" after "wire or oral communications" and after "granted or denied".

TITLE III—EFFECTIVE DATE

EFFECTIVE DATE

SEC. 301. The provisions of this Act and the amendments made hereby shall become effective upon the date of enactment of this Act, except that any electronic surveillance approved by the Attorney General to gather foreign intelligence information shall not be deemed unlawful for failure to follow the procedures of this Act, if that surveillance is terminated or an order approving that surveillance is obtained under title I of this Act within ninety days following such date of enactment.

Amend the title so as to read: "An act to authorize electronic surveillance to obtain foreign intelligence information.".

The motion was agreed to.

The Senate bill was ordered to be read a third time, was read the third time, and passed.

The title was amended so as to read: "A bill to authorize electronic surveillance to obtain foreign intelligence information.".

A motion to reconsider was laid on the table.

A similar House bill (H.R. 7308) was laid on the table.

AUTHORIZING THE CLERK TO MAKE CORRECTIONS IN ENGROSSMENT OF H.R. 7308

Mr. BOLAND. Mr. Speaker, I ask unanimous consent that the Clerk may be authorized to make any necessary corrections in section numbers, cross references, and punctuation in the engrossment of the bill, H.R. 7308.

The SPEAKER pro tempore. Is there objection to the request of the gentleman from Massachusetts?

There was no objection.

APPOINTMENT OF CONFEREES ON H.R. 6536, DISTRICT OF COLUMBIA RETIREMENT REFORM ACT

Mr. DIGGS. Mr. Speaker, I ask unanimous consent to take from the Speaker's table the bill (H.R. 6536) to establish an actuarially sound basis for financing retirement benefits for policemen, firemen, teachers, and judges of the District of Columbia and to make certain changes in such benefits, with a Senate amendment thereto, disagree to the Senate amendment, and request a conference with the Senate thereon.

The SPEAKER pro tempore. Is there objection to the request of the gentleman from Michigan?

Mr. DERWINSKI. Mr. Speaker, reserving the right to object, may I ask the gentleman from Michigan if this procedure has been discussed with the ranking minority member of the committee.

Mr. DIGGS. If the gentleman will yield, it has, and I have the recommended conferees from the minority side.

Mr. DERWINSKI. Mr. Speaker, I withdraw my reservation of objection.

The SPEAKER pro tempore. Is there objection to the request of the gentleman from Michigan? The Chair hears none, and, without objection, appoints the following conferees: Messrs. DIGGS, DELLUMS, FAUNTROY, MAZZOLI, McKINNEY, and WHALEN.

There was no objection.

APPOINTMENT OF CONFEREES ON HOUSE CONCURRENT RESOLUTION 683, REVISING CONGRESSIONAL BUDGET FOR THE U.S. GOVERNMENT FOR FISCAL YEAR 1979

Mr. GIAIMO. Mr. Speaker, I ask unanimous consent to take from the Speaker's table the concurrent resolution (H. Con. Res. 683) revising the congressional budget for the U.S. Government for the fiscal year 1979, with a Senate amendment thereto, disagree to the Senate amendment, and request a conference with the Senate thereon.

The SPEAKER pro tempore. Is there objection to the request of the gentleman from Connecticut? The Chair hears none, and, without objection, appoints the following conferees: Messrs. GIAIMO, WRIGHT, LEGGETT, MITCHELL of Maryland, BURLESON of Texas, DERRICK, OBEY, SIMON, MINETA, LATTA, CONABLE, DUNCAN of Tennessee, and REGULA.

There was no objection.

REQUEST TO CONCUR IN SENATE AMENDMENTS TO H.R. 1337, AMENDING THE INTERNAL REVENUE CODE OF 1954 WITH RESPECT TO EXCISE TAX ON CERTAIN TRUCKS, BUSES, TRACTORS, ET CETERA

Mr. CORMAN. Mr. Speaker, I ask unanimous consent to take from the Speaker's table the bill (H.R. 1337) to amend the Internal Revenue Code of 1954 with respect to excise tax on certain trucks, buses, tractors, et cetera, with Senate amendments thereto, concur in the Senate amendment to the title of the bill, and concur in the Senate amendment to the text of the bill with amendments.

The Clerk read the title of the bill.

The Clerk read the Senate amendments, as follows:

Strike out all after the enacting clause and insert:

SECTION 1. EXCISE TAX ON CERTAIN TRUCKS, BUSES, TRACTORS, ETC.

(a) IN GENERAL.—Paragraph (1) of section 4216(b) of the Internal Revenue Code of 1954 (relating to constructive sale price) is amended by inserting after the second sentence thereof the following new sentence: "In the case of an article the sale of which is taxable under section 4061(a) and which is sold at retail, the computation under the first sentence of this paragraph shall be a percentage (not greater than 100 percent) of the actual selling price based on the highest price for which such articles are sold by manufacturers and producers in the ordinary course of trade (determined without regard to any individual manufacturer's or producer's cost)".

(b) CONFORMING AMENDMENT.—The second sentence of paragraph (1) of such section 4216(b) is amended by inserting "(other than an article the sale of which is taxable under section 4061(a))" after "sold at retail".

(c) EFFECTIVE DATE.—The amendments made by this section shall apply to articles sold by the manufacturer or producer on or after the first day of the first calendar quarter beginning 30 days or more after the date of enactment of this Act.

SEC. 2. HOME PRODUCTION OF BEER AND WINE.

(a) EXEMPTION FROM TAX ON WINE.—Section 5042(a)(2) of the Internal Revenue Code of 1954 (relating to production of wine for personal consumption) is amended to read as follows:

"(2) WINE FOR PERSONAL OR FAMILY USE.—Subject to regulations prescribed by the Secretary—

"(A) EXEMPTION.—Any adult may, without payment of tax, produce wine for personal or family use and not for sale.

"(B) LIMITATION.—The aggregate amount of wine exempt from tax under this paragraph with respect to any household shall not exceed—

"(i) 200 gallons per calendar year if there are 2 or more adults in such household, or

"(ii) 100 gallons per calendar year if there is only 1 adult in such household.

"(C) ADULTS.—For purposes of this paragraph, the term 'adult' means an individual who has attained 18 years of age, or the minimum age (if any) established by law applicable in the locality in which the household is situated at which wine may be sold to individuals, whichever is greater.

(b) EXEMPTION FROM TAX ON BEER.—

(1) IN GENERAL.—Section 5053 of such Code (relating to exemptions from excise tax on beer) is amended by redesignating subsection (e), as subsection (f), and by inserting after subsection (d) the following new section:

"(e) BEER FOR PERSONAL OR FAMILY USE.—