# Exhibit D

## LEGISLATIVE HISTORY
P.L. 95-511

question of how many "cutouts" are enough to exempt an American acting on behalf of or in conjunction with a Communist regime from lawful electronic surveillance? Most Americans would probably agree that in such cases it would be better to err on the side of caution and tell the intelligence agencies to survey anyone working with such regimes. The bill ought to reflect this.

Finally, the very complexity of the standards must be judged a drawback. Even if they provided the Nation sufficient protection in peacetime, they would surely be too cumbersome to do so in time of war. In time of war, then, a new bill would have to be hastily enacted to provide for emergency powers. But emergency legislation is generally bad legislation. While we have the time we ought to enact a bill workable in bad times as well as in good times.

MALCOLM WALLOP.

## HOUSE CONFERENCE REPORT NO. 95-1720

\* \* \* \* \* \* \* \* \*

[page 19]

### JOINT EXPLANATORY STATEMENT OF THE COMMITTEE OF CONFERENCE

The managers on the part of the House and the Senate at the conference on the disagreeing votes of the two Houses on the amendments of the House to the bill (S. 1566) to amend title 18, United States Code, to authorize applications for a court order approving the use of electronic surveillance to obtain foreign intelligence information, submit the explanation of the effect of the action agreed upon by the managers and recommended in the accompanying conference report.

The managers recommend that the Senate agree to the amendments of the House, with an amendment. That amendment will be referred to here as the "conference substitute." Except for certain clarifying, clerical, conforming, and other technical changes, there follows an issue by issue summary of the Senate bill, the House amendments, and the conference substitute.

#### TITLE

The Senate bill amended Title 18 (Crimes and Criminal Procedures) of the United States Code, to authorize applications for a court order approving the use of electronic surveillance to obtain foreign intelligence information.

The House amendments provided for an uncodified title, to authorize electronic surveillance to obtain foreign intelligence information.

The conference substitute adopts the House provision. The conferees agree that this change is not intended to affect in any way the jurisdiction of Congressional Committees with respect to electronic surveillance for foreign intelligence purposes. Rather, the purpose of the change is solely to allow the placement of Title I of the Foreign Intelligence Surveillance Act in that portion of the United States Code (Title 50) which most directly relates to its subject matter.

#### DEFINITION OF "FOREIGN POWER"

The Senate bill defined "foreign power", with respect to terrorist groups, to mean a foreign-based terrorist group.

## LEGISLATIVE HISTORY
P.L. 95-511
[page 31]

### NOTICE OF USE OF INFORMATION IN LEGAL PROCEEDINGS

The Senate bill provided for notification to the court when information derived from electronic surveillance is to be used in legal proceedings.

The House amendments contained a comparable provision and also a provision, not contained in the Senate bill, requiring notice to the aggrieved person. The House amendments also contained a separate section relating to use by State or local authorities requiring notice to the Attorney General.

The conference substitute adopts the House provisions. The conferees agree that notice should be given to the aggrieved person as soon as possible, so as to allow for the disposition of any motions concerning evidence derived from electronic surveillance. The conferees also agree that the Attorney General should at all times be able to assess whether and to what extent the use of information made available by the Government to a State or local authority will be used.

### SUPPRESSION MOTIONS

The Senate bill provided for motions to suppress the contents of any communication acquired by electronic surveillance, or evidence derived therefrom.

The House amendments provided for motions to suppress the evidence obtained or derived from electronic surveillance.

The conference substitute adopts the House provision. The conferees agree that the broader term "evidence" should be used because it includes both the contents of communications and other information obtained or derived from electronic surveillance.

### IN CAMERA PROCEDURE FOR DETERMINING LEGALITY

The Senate bill provided a single procedure for determining the legality of electronic surveillance in a subsequent in camera and ex parte proceeding, if the Government by affidavit asserts that disclosure or an adversary hearing would harm the national security of the United States. The Senate bill also provided that, in making this determination, the court should disclose to the aggrieved person materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance.

The House amendments provided two separate procedures for determining the legality of electronic surveillance, if the Attorney General files an affidavit under oath that disclosure would harm the national security of the United States or compromise foreign intelligence sources and methods. In criminal cases, there would be an in camera proceeding; and the court might disclose to the aggrieved person, under appropriate security procedures and protective orders, materials relating to the surveillance if there were a reasonable question as to the legality of the suveillance and if disclosure would likely promote a more accurate determination of such legality, or if disclosure would not harm the national security. In civil suits, there would be an in camera and ex parte proceeding before a court of appeals; and the court would disclose, under appropriate security procedures and protective orders, to the aggrieved person or his attorney materials relat-

FOREIGN INTELLIGENCE
P.L. 95–511
[page 32]

ing to the surveillance only if necessary to afford due process to the aggrieved person. The House amendments also provided that orders regarding legality or disclosure would be final and binding.

The conference substitute essentially adopts the Senate provisions, with technical changes and the following modifications. The in camera and ex parte proceeding is invoked if the Attorney General files an affidavit under oath. All orders regarding legality and disclosure shall be final and binding only where the rulings are against the Government.

The conference substitute adds the words "requiring review or" to the provision making orders final and binding. This change clarifies the intent of the House provision in conformity with section 102(a). The conferees intend that a determination by a district court that review of a certification by the Attorney General under section 102(a) is necessary to determine the legality of the surveillance shall be considered a final and binding order and thus appealable by the Government before the court reviews the certification. The court may order that the certification be unsealed for review if such review is necessary to determine the legality of the surveillance.

The conferees agree that an in camera and ex parte proceeding is appropriate for determining the lawfulness of electronic surveillance in both criminal and civil cases. The conferees also agree that the standard for disclosure in the Senate bill adequately protects the rights of the aggrieved person, and that the provision for security measures and protective orders ensures adequate protection of national security interests.

UNITENTIONAL RADIO ACQUISITION

The Senate bill prohibited any use of the contents of unintentionally acquired domestic radio communications, if there is a reasonable expectation of privacy and a warrant would be required for law enforcement purposes, except where the contents indicate a threat of death or serious bodily harm to any person.

The House amendments contained a comparable provision, with an exception if the contents may indicate a threat of death or serious bodily harm to any person.

The conference substitute adopts the Senate provision which omits the word "may." The conferees agree that an exception for any indication of such a threat is sufficient.

CONGRESSIONAL OVERSIGHT

The Senate bill and the House amendments both require the Attorney General, on a semiannual basis, to fully inform the intelligence committees of each House concerning all electronic surveillance under the act.

The Senate bill also stated that "nothing in this chapter shall be deemed to limit the authority and responsibility of the appropriate committees of each House of Congress to obtain such information as they may need to carry out their respective functions and duties."

The House amendments limited this reservation to the respective intelligence committees. The conference substitute adopts the Senate version.

Section 2528(b) of the Senate bill required the Senate Intelligence Committee to report annually to the Senate on the implementation of