MICHAEL F. HERTZ
Deputy Assistant Attorney General
ANN M. RAVEL
Deputy Assistant Attorney General
TIMOTHY P. GARREN
Director
ANDREA W. MCCARTHY
Senior Trial Counsel
JAMES R. WHITMAN (D.C. Bar No. 987694)
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
P.O. Box 7146, Ben Franklin Station
Washington, DC 20044-7146
Tel: (202) 616-4169
Fax: (202) 616-4314
james.whitman@usdoj.gov

*Attorneys for the Defendants Listed on the Signature Page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CAROLYN JEWEL, et al., Plaintiffs, v. NATIONAL SECURITY AGENCY, et al., Defendants. | **No. 08-4373 VRW** **INDIVIDUAL CAPACITY DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR RELIEF FROM THE COURT'S ORDERS OF APRIL 27, 2009, AND MAY 8, 2009** Date: September 17, 2009 Time: 10:00 a.m. Courtroom: 6, 17th Floor |



Dockets.Justia.com

**INTRODUCTION**

In their "Motion for Relief from the Court's Orders of April 27, 2009, and May 8, 2009" ("Motion") (Doc # 32), the individual capacity defendants demonstrated that it would be inherently and irreparably prejudicial to them if they were required to answer or otherwise respond to plaintiffs' complaint before there is a final resolution of whether information subject to the Government's state secrets and related statutory privileges is necessary to litigate this case. Because the United States' privilege assertion protects all information relevant to addressing plaintiffs' allegations and thereby precludes the individual defendants from using any of the protected information to support what may be an otherwise available and complete qualified immunity defense, those defendants cannot adequately defend themselves until the privilege issues are finally resolved. Ordering the individual defendants to respond at this point also would violate the purpose of qualified immunity, which is to ensure that public officials are not unnecessarily subjected to the burdens of litigation.

Plaintiffs' opposition to the individual capacity defendants' Motion largely avoids confronting these (and most other) arguments. It begins by applying the wrong standard of review which leads to the erroneous premise that the individual defendants must prove the United States is likely to succeed on its own motion to dismiss and for summary judgment. See Doc # 42 at 2-5. Plaintiffs then argue it would be inappropriate for the individual defendants to rely on privileged information in seeking prediscovery summary judgment because plaintiffs would not have "equal access" to that information. See id. at 6-7. But the fact that the individual defendants cannot rely on the privileged information is precisely why their Motion should be granted. Next, plaintiffs present a false choice by suggesting that the individual defendants must either file a motion to dismiss based solely on the pleadings or "concede that they have no such motion" (in which case plaintiffs would "not oppose" a stay pending the Court's decision on the United States' motion). See id. at 7-9. What plaintiffs fail to grasp is that the individual capacity defendants are presently foreclosed from using any of the privileged information to raise qualified immunity arguments in a threshold motion for summary judgment in combination with

and as an alternative to a motion to dismiss on qualified immunity grounds (and in these circumstances obviously cannot concede any defense). As explained below, it would be contrary to the purpose of qualified immunity and relevant precedent (which plaintiffs either ignore or mischaracterize) to force the individual defendants to assert their qualified immunity defense before the privilege issues have been decided. On the other hand, a stay of the individual capacity claims would not cause any hardship to plaintiffs because, as even they admit, the next step in this case requires resolution of those privilege issues.

**DISCUSSION**

As an initial matter, plaintiffs have inexplicably likened the individual defendants' request to be temporarily relieved of their obligation to answer or otherwise respond as a "request for a stay pending appeal." Id. at 2. From there they jump to insisting that the individual defendants must satisfy the "test for a preliminary injunction" to obtain their requested relief. See id. at 2-3. None of this frames the issue in a legally relevant way.

Most obviously there is no appeal pending in this case. The only thing pending is the United States' dispositive motion, which now has been fully briefed and argued. See Docs # 18, 36. This means the issue before the Court is not whether it should stay the individual capacity claims pending a non-existent appeal, but whether it should require the individual defendants to answer or otherwise respond to the claims against them before there is a final resolution of the United States' privilege assertion and other issues raised in its motion.

With that, plaintiffs' invocation of the standard for granting a stay pending appeal, as well as their transitive argument that the individual defendants need to meet the standard for obtaining a preliminary injunction—i.e., that they "must demonstrate that the Government has a likelihood of success on the merits of its motion to dismiss based on the state secrets privilege"—are wholly inapposite. See Doc # 42 at 2-3, 4-5. In no way have the individual defendants sought injunctive relief to which the preliminary injunction test might apply. To the contrary, the very point of their Motion is that, regardless of how the Court rules on the United States' motion, they cannot fully respond or defend themselves until there is a final resolution—one way or the other—of the

privilege issues. They even have pointed out that they would expect to seek dismissal and/or summary judgment on qualified immunity grounds if the privilege assertion was ultimately rejected (and all appeals had been exhausted and the information necessary to litigate the case was no longer protected by the Government). See Doc # 32 at 9-10. It is therefore the unresolved nature of the privilege assertion, not the likelihood of its success or failure on the merits, that justifies granting the individual defendants their requested relief.[1]

Plaintiffs get closer to an appropriate legal standard by citing Landis v. North American Co., 299 U.S. 248 (1936), and its progeny. See Doc # 42 at 3-4. That line of cases addresses the issue of when a court may stay an entire law suit pending the disposition of a separate proceeding in another forum. See Landis, 299 U.S. at 249; Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 863-64 (9th Cir. 1979). From this precedent it is well-established that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis, 299 U.S. at 254. Exercising that power requires a court to weigh a variety of considerations: "the balance of hardships between the parties," the "prospect of narrowing the factual and legal issues," and the length of the stay. Lockyer v. Mirant Corp., 398 F.3d 1098, 1112 (9th Cir. 2005); see Landis, 299 U.S. at 254-57. Assuming for the sake of argument that these same factors should be applied where, as here, one defendant seeks to stay the claims against it pending the resolution of claims against or issues raised by a co-defendant in the same case, they overwhelmingly tilt in favor of granting the individual capacity defendants' Motion.

---

[1] Plaintiffs' rehashed argument that the individual defendants' Motion is really one for reconsideration and must comply with Local Rule 7-9 is similarly off the mark. See Doc # 42 at 2. That Motion merely renews a prior request for relief that the Court originally denied "without prejudice." See Doc # 25 at 2. Plaintiffs have cited no authority, and the individual defendants are aware of none, that requires a party to file a motion for leave to seek reconsideration of a ruling that was denied without prejudice.

## I. THE INDIVIDUAL DEFENDANTS WOULD BE SEVERELY PREJUDICED IF REQUIRED TO ANSWER OR RESPOND AT THIS TIME

In their Motion the individual capacity defendants demonstrated that ordering them to respond to plaintiffs' complaint before a resolution of the United States' assertion of the state secrets and related statutory privileges would work a substantial hardship on them. To summarize: the individual defendants have an absolute right to raise a qualified immunity defense in a prediscovery motion for summary judgment when initially responding; they also have the right to a decision on that defense at the earliest possible stage of the litigation in order to give meaning to the "basic thrust of the qualified-immunity doctrine," which "is to free officials from the concerns of litigation," Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) (internal quotations and citation omitted); the Government's privilege assertion precludes them from using certain information to raise a qualified immunity defense in a threshold summary judgment motion; therefore, requiring the individual defendants to respond while the privilege issues remain unresolved would force them to forego an essential personal defense and deprive them of the intended benefits of that defense. See Doc # 32 at 2-8.

The crux of plaintiffs' opposition is to say in essence that for the individual capacity defendants it should be a motion to dismiss or nothing. See Doc # 42 at 5-9. That position defies logic and the law. Plaintiffs do not—because they cannot—dispute that a defendant is entitled to seek summary judgment "at any time." Fed. R. Civ. P. 56(b). They nevertheless seem to imply, without any supporting authority, that resolving a prediscovery summary judgment motion "in a qualified immunity context" is somehow improper because it would allow a defendant to "sandbag a plaintiff with new, untested evidence." Doc # 42 at 7. This is flatly incorrect, as the Supreme Court has instructed courts to decide qualified immunity on such threshold motions if at all possible. See Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987) (explaining that individual capacity claims against government officials should "be resolved prior to discovery and on summary judgment if possible") (emphasis added); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (same); Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (holding that

plaintiff must "put forward specific, nonconclusory factual allegations . . . in order to survive a prediscovery motion for dismissal or summary judgment" on qualified immunity grounds) (emphasis added) (internal quotations and citation omitted). Plaintiffs again have no answer to this binding precedent.[2]

Instead they contend it would be unfair for the individual defendants to seek summary judgment based on information protected by the state secrets and related statutory privileges because plaintiffs would "not have equal access" to it. Doc # 42 at 6. This argument not only rests on a false assumption, but it is yet another reason why it would be inappropriate to order the individual defendants to respond to plaintiffs' complaint before the privilege issues have been decided. It bears repeating that the state secrets and related statutory privileges are for the United States, and the United States alone, to claim, waive, and control. See Doc # 32 at 5-6. Because the individual capacity defendants are thus barred from using the privileged information as well, plaintiffs' concerns about having "equal access" to it are non-existent. Moreover, and by plaintiffs' own logic, the individual capacity defendants should not be required to answer or otherwise respond until there is a final resolution of the privilege assertion addressing whether all parties would have access to information that is subject to the assertion and necessary to litigate the case.[3]

---

[2] At most plaintiffs mischaracterize similar case law cited in the individual defendants' opening brief as involving "a motion to test the sufficiency of a plaintiff's alleged facts against the objective qualified immunity standard." Doc # 42 at 7 n.2. In doing so they omit that the defendant-officials in those cases tested the sufficiency of the allegations via a prediscovery summary judgment motion on qualified immunity grounds and that the court in each case held that summary judgment was appropriate on that basis. See Doc # 32 at 4 n.2 (citing Kluver v. Sheets, 27 Fed. Appx. 873, 875 (9th Cir. 2001); Elliott v. Thomas, 937 F.2d 338, 345-46 (7th Cir. 1991); and Lewis v. City of Ft. Collins, 903 F.2d 752, 759-60 (10th Cir. 1990)).

[3] Separately, and somewhat inconsistently, plaintiffs make the bald assertion that "the state secrets privilege has no bearing on [the] ability [of the individual capacity defendants] to raise qualified immunity as a threshold matter." Doc # 42 at 5. This appears to be linked to their argument that the individual defendants have "confuse[d] qualified immunity . . . with the myriad different ways that a government official might defeat a plaintiff's claim on the merits." Id. at 8 n.3. It is actually plaintiffs who have confused the qualified immunity analysis. Evidence establishing, for example, a defendant's lack of participation in the alleged activities, that a

All that said, the most serious flaw in plaintiffs' attempt to limit the individual defendants to only a motion to dismiss when initially responding to their complaint is that it contravenes the rationale behind qualified immunity. As noted in the individual capacity defendants' Motion, the Supreme Court repeatedly has described qualified immunity as an "entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). See Iqbal, 129 S. Ct. at 1953; Harlow, 457 U.S. at 806. It is for this reason the Court also insists that a motion raising a qualified immunity defense be decided "at the earliest possible stage." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (internal quotations and citation omitted).

As the individual defendants have shown throughout the briefing of their Motion, a government official may raise qualified immunity in a motion to dismiss or for summary judgment when initially responding to a complaint. But in this case the summary judgment option is off the table due to the Government's privilege assertion. Forcing the individual defendants to respond under these circumstances would deprive them of the intended benefits of qualified immunity in several ways.

First, ordering the individual defendants to respond at all potentially subjects them to unnecessary pretrial proceedings if the Court were to uphold the state secrets privilege assertion and grant the Government's dispositive motion. That is precisely the sort of litigation burden the doctrine of qualified immunity is meant to avoid. Second, requiring the individual defendants to respond to the complaint while the privilege assertion remains unresolved means they would have to do so without the use of information relevant to a qualified immunity defense in

---

plaintiff was not subjected to the alleged activities, or that the actual activities are not as alleged, see Doc # 32 at 4 n.3, go directly to the qualified immunity inquiry—i.e., whether the particular facts of a case give rise to a violation of "clearly established" law. See Anderson, 483 U.S. at 639-41; Mitchell, 472 U.S. at 527-28. And even if there were a genuine issue of fact regarding such matters, that does not make them any less relevant to a qualified immunity defense. Cf. Johnson v. Jones, 515 U.S. 304, 311-14 (1995). Again, the individual capacity defendants make no representation about the particular type(s) of qualified immunity argument(s) that the privileged information in this case may or may not support, see Doc # 32 at 4 n.3, but it is simply meritless to suggest that such information would have "no bearing" on them raising qualified immunity in a threshold motion for summary judgment.

whatever threshold motion they might file. This makes it impossible for them to not only fully defend themselves, but to obtain a prompt ruling on arguments that could result in their dismissal from the case. Third, and relatedly, litigating threshold qualified immunity defenses in the fashion implied by plaintiffs' opposition—e.g., filing a motion to dismiss followed later by a prediscovery motion for summary judgment—would even more clearly run afoul of qualified immunity principles, as the individual defendants then would have to endure duplicative (and still potentially unnecessary) pretrial proceedings.

Given the foregoing, it is hard to imagine how the individual defendants could make a stronger "case of hardship or inequity in being required to go forward." Landis, 299 U.S. at 255. Were they "required to go forward" before the privilege issues are resolved, they would be unable to raise at the outset what may be an otherwise available qualified immunity defense and would be deprived of the intended benefits of that defense, including the right to avoid the burdens of litigation to the maximum extent possible. In this sense plaintiffs have it exactly backwards when they note that "'being required to defend a suit . . . does not constitute a clear case of hardship or inequity within the meaning of Landis.'" Doc # 42 at 4 (quoting Dependable Highway Express, Inc. v. Navigators Ins. Co., 498 F.3d 1059, 1066 (9th Cir. 2007)) (internal quotations and citation omitted). It is not because the individual capacity defendants would have to defend themselves that they should be relieved of their obligation to answer or otherwise respond to plaintiffs' complaint, but because the Government's privilege assertion prevents them from fully defending themselves.[4]

---

[4] Adding to the individual defendants' potential prejudice is the discovery plaintiffs have requested in response to the United States' motion, which includes taking the depositions of nearly all the individual capacity defendants. See Doc # 29 at 23 n.11; Doc # 30 ¶ 7. As explained in the individual defendants' opening brief, the Court should not permit such discovery under the circumstances because doing so would result in a de facto denial of qualified immunity. See Doc # 32 at 8-9. By not responding to this discussion at all, plaintiffs have tacitly conceded the point.

## II. PLAINTIFFS HAVE FAILED TO SHOW THAT THEY WOULD BE HARMED IF THE INDIVIDUAL DEFENDANTS' MOTION WERE GRANTED

In contrast to the severe and indisputable inequity the individual capacity defendants have demonstrated, plaintiffs have failed completely to show that granting the individual defendants' Motion would "work damage" to them. Landis, 299 U.S. at 255. The most that they offer is a cursory and generalized complaint about "delay[ing] justice." Doc # 42 at 9. Their argument in this regard is inaccurate, misdirected, and self-defeating.

First, plaintiffs reference a related case they brought "three and a half years ago" against a telecommunications carrier. Id. at 1. Considering that they did not name the individual capacity defendants in that suit, they obviously cannot use their own failure to sue those defendants sooner as a reason for opposing a stay in this case.

Second, virtually all of plaintiffs' talk of delay is directed at, in their words, "the Government's strategy of raising and re-raising the same arguments based on the state secrets privilege and other governmental privileges." Id. That "delay" again cannot be attributed to the individual capacity defendants and it would be improper to use that as a basis for denying their Motion. To repeat, the individual defendants have no control over the United States' decision to assert the various privileges, see Doc # 32 at 5-6, and that decision affects their interests just as much as, if not more than, plaintiffs' interests.

Third, and relatedly, granting the individual defendants' Motion would not add any more "delay" to the proceedings than is already inherent in resolving the Government's privilege assertion. Plaintiffs effectively admit this when they propose that if the individual capacity defendants were to "concede" that "there is no dispositive motion they can make based solely on the pleadings," then plaintiffs would "not oppose a stay pending the outcome of the Government's motion to dismiss." Doc # 42 at 8-9. This recognizes that, whether or not the individual defendants were to file a motion to dismiss before a final resolution of the privilege issues, the parties still will have to wait until then for the case to move forward. And because plaintiffs are willing to agree to an arrangement that would do nothing to reduce the "delay" that

is the only kind of harm they claim would befall them if the individual defendants' Motion were granted, their argument in this regard rings hollow.[5]

Apart from their poorly developed claim of delay, plaintiffs do not offer a single reason why the individual defendants should be required to answer or respond while the United States' motion remains pending or explain how they would be harmed if the individual capacity claims were stayed. At best, plaintiffs seek only to extract a concession out of the individual capacity defendants regarding the legal sufficiency of their allegations. That is obviously not a valid consideration in balancing the "hardships between the parties," Lockyer, 398 F.3d at 1112, and is utterly inadequate when weighed against the very real and very serious prejudice that the individual defendants would suffer if "required to go forward," Landis, 299 U.S. at 255.

## III. RESOLVING THE GOVERNMENT'S PRIVILEGE ASSERTION IN THE FIRST INSTANCE WOULD SIGNIFICANTLY NARROW THE FACTUAL AND LEGAL ISSUES IN THIS CASE

The "prospect of narrowing the factual and legal issues," Lockyer, 398 F.3d at 1112, is another compelling justification for relieving the individual defendants of their obligation to answer or otherwise respond until there is a final resolution of the privilege issues. Plaintiffs do not address this factor at all in their opposition brief, and for good reason as it obviously weighs in the individual defendants' favor. If the privileges are sustained by the courts, then the entire case, including the individual capacity claims, should be dismissed. If, on the other hand, the Government's privilege assertion and motion were ultimately rejected, then it may be that plaintiffs' claims can be litigated at some point. Either way, resolving the United States' motion in the first instance would significantly narrow, and may eliminate altogether, the issues surrounding the individual capacity claims.

The wisdom of this approach is evidenced by the fact that every court confronting a similar situation, where the United States has asserted the state secrets privilege in a case alleging

---

[5] If anything, plaintiffs' proposed course would result in more delay, as it should be apparent that attempting to litigate a qualified immunity defense with unavailable information is not only impossible, but would waste the time needed to address and resolve the underlying privilege assertion.

individual capacity claims against federal officials, has addressed the privilege assertion as the first order of business (and in each instance dismissed the entire action, or at least part of it, on that basis). See Doc # 32 at 6 n.7 (citing In re Sealed Case, 494 F.3d 139 (D.C. Cir. 2007); El-Masri v. United States, 479 F.3d 296 (4th Cir. 2007); and Black v. United States, 900 F. Supp. 1129 (D. Minn. 1994), aff'd, 62 F.3d 1115 (8th Cir. 1995)). Plaintiffs tellingly do not mention, let alone discuss, any of this precedent. Nor do they cite a single case in which the court has required an individual capacity defendant to answer or respond before resolving an assertion of the state secrets privilege.[6] That is almost certainly because doing so would unnecessarily multiply the proceedings at the expense of a defendant's qualified immunity defense, conservation of the courts' and litigants' resources, and an orderly disposition of the case.

## IV. AN INDETERMINATE STAY OF THE INDIVIDUAL CAPACITY CLAIMS IS JUSTIFIED UNDER THE CIRCUMSTANCES OF THIS CASE

Throughout their response plaintiffs criticize the individual capacity defendants for seeking an "indefinite stay." Doc # 42 at 1, 9. But as noted above, plaintiffs themselves would consent to such an indefinite stay "pending the outcome of the Government's motion to dismiss" (as long as the individual defendants "concede that they have no dispositive motion they can bring based solely on the pleadings"). Id. at 7-9. They cannot have it both ways. Because plaintiffs have effectively endorsed a "stay" of the individual capacity claims that is, at least in terms of its indeterminate length, materially indistinguishable from the individual capacity defendants' requested relief, their objection to that relief on this basis is illusory.

[6] The most that plaintiffs can muster is to point out that the defendants in "Hepting v. AT&T and the MCI/Verizon cases" (which are related to the instant action) "filed motions seeking various forms of immunity simultaneous with the Government's motion to dismiss based on state secrets." Doc # 42 at 8. The critical difference, of course, is that the plaintiffs in those cases had not sued government officials in their individual capacity. In contrast, the parties in the only case related to this one that definitively includes an individual capacity claim entered into a stipulation that the individual capacity defendant in that case would not be required to answer or otherwise respond to the complaint until after there is a determination that the plaintiffs have standing to proceed despite the Government's assertion of the state secrets privilege. See Al-Haramain Islamic Found., Inc. v. Bush, No. 07-109 VRW (N.D. Cal.), Doc # 39.

Moreover, there is no categorical prohibition on indefinite stays. The rule instead is that if a "stay is especially long or its term is indefinite," then a "greater showing" is required to justify it. Yong v. INS, 208 F.3d 1116, 1119 (9th Cir. 2000). To the extent the Court views the individual defendants as requesting an indefinite stay of the claims against them pending a final resolution of the United States' privilege assertion, they submit that they have made an extraordinarily strong showing as to why such a stay is necessary in this case.

First and foremost, absent a stay the individual capacity defendants would be foreclosed from raising all of their available defenses when initially responding to plaintiffs' complaint. (Or, as explained in their opening brief, they would have to choose among other equally prejudicial options, such as risking the unauthorized disclosure of state secrets or submitting a factually and potentially legally deficient answer—another argument that plaintiffs leave unanswered. See Doc # 32 at 7-8). Second, ordering the individual defendants to respond at this point would deprive them of the intended benefits of qualified immunity by subjecting them to unnecessary pretrial proceedings, the importance of which cannot be overstated. See supra Section I; Doc # 32 at 2-4, 7-9. Third, deciding the Government's privilege assertion before having the individual defendants respond would plainly resolve the fundamental threshold question of whether the litigation of the individual capacity claims can proceed at all. See supra Section III. Against all of this, plaintiffs offer no legitimate basis upon which to find that they would be harmed or prejudiced in any way if the individual defendants' Motion were granted. See supra Section II. In short, there is every reason to grant the relief requested by the individual defendants, and no reason not to.

## CONCLUSION

For all of the foregoing reasons, the individual capacity defendants respectfully request that they be relieved of their obligation to answer or otherwise respond to plaintiffs' complaint until there is a final resolution of the issues raised in the United States' motion to dismiss and for summary judgment.

Respectfully submitted this 3rd day of September, 2009,

MICHAEL F. HERTZ
Deputy Assistant Attorney General, Civil Division

ANN M. RAVEL
Deputy Assistant Attorney General, Civil Division

TIMOTHY P. GARREN
Director, Torts Branch

ANDREA W. MCCARTHY
Senior Trial Counsel, Torts Branch

/s/ James R. Whitman
JAMES R. WHITMAN (D.C. Bar No. 987694)
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch

Attorneys for George W. Bush, Richard B. Cheney, David S. Addington, Keith B. Alexander, Michael V. Hayden, John D. McConnell, John D. Negroponte, Michael B. Mukasey, Alberto R. Gonzales, and John D. Ashcroft, in their individual capacity