MICHAEL F. HERTZ
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
VINCENT M. GARVEY
Deputy Branch Director
ANTHONY J. COPPOLINO
Special Litigation Counsel
MARCIA BERMAN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782
Fax: (202) 616-8460

*Attorneys for the Government Defendants
Sued in their Official Capacity*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CAROLYN JEWEL, TASH HEPTING, GREGORY HICKS, ERIK KNUTZEN, and JOICE WALTON, <br><br> *Plaintiffs*, <br><br> v. <br><br> NATIONAL SECURITY AGENCY ("NSA"); KEITH B. ALEXANDER, Director of the NSA; UNITED STATES OF AMERICA; BARACK OBAMA, President of the United States; UNITED STATES DEPARTMENT OF JUSTICE; ERIC HOLDER, Attorney General of the United States; DENNIS C. BLAIR, Director of National Intelligence. <br><br> *Government Defendants Sued in Their Official Capacity.* | Case No. C:08-cv-4373-VRW <br><br> **GOVERNMENT DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF (Dkt 38-1)** <br><br> Chief Judge Vaughn R. Walker |

**Government Defendants' Response to Plaintiffs' Supplemental Brief (Dkt 38-1)**
*Jewel et al. v. National Security Agency et al.*, **Case No. 08-cv-4373-VRW**

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.     SECTION 1806(f) DOES NOT CLEARLY APPLY TO INFORMATION RELATED TO ELECTRONIC SURVEILLANCE OUTSIDE OF THE FISA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    II.    SECTION 1806(f) DOES NOT CLEARLY APPLY TO THE ADJUDICATION OF CLAIMS THAT ARISE OUTSIDE OF THE FISA. . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# INTRODUCTION

The central issue in this case is whether plaintiffs' challenge to alleged surveillance activities undertaken following the 9/11 attacks can be adjudicated without the disclosure of sensitive intelligence sources and methods over which the Director of National Intelligence has asserted the state secrets and related statutory privileges. Relying on a prior ruling by the Court, plaintiffs contend that the DNI's state secrets privilege assertion must be disregarded, and that the case must proceed under procedures set forth in Section 106(f) of the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1806(f) (hereafter "Section 1806(f)"). *See In re NSA Telecomm. Records Litig., Al-Haramain Islamic Found. v. Bush*, 564 F. Supp. 2d 1109 (N.D. Cal. 2008); *see also* Pls. Opp to Defs. Mot. to Dismiss and for Summ. Judgment (Dkt. 29) at 23-29. As set forth below, that provision establishes procedures for judicial review in particular circumstances of materials related to electronic surveillance where the Attorney General attests that disclosure would harm national security. With leave of the Court (Dkt. 40), plaintiffs have filed a supplemental brief setting forth arguments that Section 1806(f) preempts the state secrets privilege to authorize motions seeking discovery of materials related to *any* alleged electronic surveillance, even if such surveillance was not authorized by the FISA, and permits adjudication of *any* claim challenging the lawfulness of such surveillance, including claims that are not based on alleged violations of the FISA itself. *See* Pls. Suppl. Mem. (Dkt. 38-1).

The Government's position remains that Section 1806(f) of the FISA does not preempt the state secrets privilege to any extent—even as to alleged violations of the FISA. Rather, as we have previously set forth, Section 1806(f) applies where the use of evidence derived from electronic surveillance acknowledged by the Government is at issue in judicial or other proceedings against an "aggrieved" person (someone who "is the target of" or "subject to" electronic surveillance). In that circumstance, Section 1806(f) establishes procedures to be invoked by the Attorney General in order to protect national security information in an adjudication of whether such evidence was lawfully obtained or should be suppressed. Plaintiffs' contention that the *scope* of FISA's purported preemption of the state secrets privilege

**Government Defendants' Response to Plaintiffs' Supplemental Brief (Dkt 38-1)**
*Jewel et al. v. National Security Agency et al.*, **Case No. 08-cv-4373-VRW**

extends beyond FISA-authorized surveillance thus proceeds from an erroneous foundation. Assuming, *arguendo*, Section 1806(f) preempts the state secrets privilege to any extent, plaintiffs offer only a scant basis on which to conclude that this provision extends to non-FISA surveillance and claims, and present no grounds for concluding that Section 1806(f) clearly and directly preempt the state secrets privilege for matters outside of FISA's purview.

## **ARGUMENT**

Before addressing plaintiffs' specific contentions, two overarching maxims applicable to the question at hand should be noted. First, plaintiffs disregard the applicable standard of review for resolving the question at hand, namely that "'[t]he common law . . . ought not to be deemed repealed, unless the language of a statute be clear and explicit for this purpose.'" *Norfolk Redevelopment & Housing Auth. v. Chesapeake & Potomac Tel. Co.*, 464 U.S. 30, 35 (1983); *see also United States v. Texas*, 507 U.S. 529, 534 (1993) ("[i]n order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law."); *Kasza v. Browner*, 133 F.3d at 1159, 1167 (9th Cir. 1998) (applying same standard to whether a statute preempts the state secrets privilege).[1] Thus, the question is not merely whether a particular construction of Section 1806(f) is possible, but whether the statute speaks clearly and directly to supplanting the state secrets privilege in the circumstances presented here—*i.e.*, where plaintiffs seek a determination as to whether alleged electronic surveillance has occurred and to adjudicate its lawfulness, including as to claims concerning alleged electronic surveillance arising outside of the FISA. While plaintiffs' reading of Section 1806(f) may be a conceivable one, the scope of Section 1806(f) is at best ambiguous and, thus, reflects no clear intent to preempt the state secrets as to non-FISA surveillance or claims.

---

[1] The Supreme Court has consistently applied the "evident purpose" and "direct statement" standards to decide if Congress has preempted federal common law. *See United States v. Texas*, 507 U.S. at 534; *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 236-37 (1985). Also, the mere fact that a statutory scheme is "comprehensive" does not resolve whether its particular provisions specifically preempt the common law. *See County of Oneida*, 470 U.S. at 236-37 ("As we stated in [*City of Milwaukee v. Illinois,* 451 U.S. 304, 315 (1981)] federal common law is used as a 'necessary expedient' when Congress has not 'spoken to a *particular* issue.'") (original emphasis).

**Government Defendants' Response to Plaintiffs' Supplemental Brief (Dkt 38-1)**
*Jewel et al. v. National Security Agency et al.*, **Case No. 08-cv-4373-VRW**                    2

Second, plaintiffs' analysis disregards "a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989) (citing *United States v. Morton*, 467 U.S. 822, 828 (1984)). This Court itself noted that "FISA does not preempt the state secrets privilege as to matters that are not within FISA's purview; for such matters, the lack of comprehensive federal legislation leaves an appropriate role for this judge-made federal common law privilege." *Al-Haramain*, 564 F. Supp. 2d at 1118; *see also id.* at 1124 (FISA would preempt the state secrets privilege "only in cases within the reach of its provisions."). Thus, the role that Section 1806(f) plays within the FISA is critical to understanding whether it may reach matters that "are not within FISA's purview."

## I. SECTION 1806(f) DOES NOT CLEARLY APPLY TO INFORMATION RELATED TO ELECTRONIC SURVEILLANCE OUTSIDE OF THE FISA.

Plaintiffs first contend that the plain text of Section 1806(f) authorizes discovery to obtain applications, orders, or other materials related to *any* electronic surveillance on the ground that the relevant clause of Section 1806(f) is not linked to whether such surveillance was "under" the FISA. *See* Dkt. 38-1 at 3-7. But this conclusion is not plainly evident from the statute.

To begin with an overview of the statutory provision itself, Section 1806(f), entitled "In camera and ex parte review by district court," resides within a broader section of the FISA that governs the "[u]se of information," *see* 50 U.S.C. § 1806, and which includes several subsections that relate to and establish requirements governing the use of information obtained from electronic surveillance against persons in judicial and other proceedings. *See id.* § 1806(a)-(e).[2]

---

[2] In brief, subsection (a) of Section 1806 requires that information acquired from electronic surveillance conducted "pursuant to this subchapter" (*i.e.* FISA provisions on electronic surveillance) may be used and disclosed only in accord with minimization procedures required by this subchapter; subsection (b) provides that information acquired "pursuant to this subchapter" may not be disclosed for law enforcement purposes unless accompanied by a statement that it may only be used in a criminal proceeding with the advance authorization of the Attorney General; subsection (c) requires notice by the United States if it intends to use information obtained or derived from an electronic surveillance of an aggrieved person "pursuant to the authority of this subchapter"; subsection (d) imposes a similar notice requirement on states and political subdivisions; and subsection (e) allows an "aggrieved" person against whom evidence obtained or derived from an electronic surveillance is used in a proceeding to move to

**Government Defendants' Response to Plaintiffs' Supplemental Brief (Dkt 38-1)**
*Jewel et al. v. National Security Agency et al.*, **Case No. 08-cv-4373-VRW**      3

Within this framework, Section 1806(f) establishes procedures that may be invoked in three general circumstances: (i) when notice of the use of evidence derived from electronic surveillance is provided pursuant to Sections 1806(c) and (d); (ii) when an "aggrieved person" that "is the target of" or "subject to" electronic surveillance (*see id.* §1801(k)) brings a motion to suppress pursuant to Section 1806(e); or

> (iii) whenever any motion or request is made by an aggrieved person pursuant to any other statute or rule of the United States or any State before any court or other authority of the United States or any State to discover or obtain applications or orders or other materials relating to electronic surveillance or to discover, obtain, or suppress evidence or information obtained or derived from electronic surveillance <u>under this chapter</u> . . . .

*See* 50 U.S.C. § 1806(f) (emphasis added).[3]  When Section 1806(f) is invoked by the Attorney General in these circumstances, through an affidavit indicating that disclosure of the information sought or an adversary hearing would harm the national security of the United States, the district court is required to review *in camera* and *ex parte* materials related to the surveillance as necessary to determine whether surveillance of the aggrieved person was lawful. *See id.*

The parties' dispute in this case centers on the third circumstance outlined above (hereafter referred to as the "motions clause").  Plaintiffs contend not only that this provision preempts the state secrets privilege generally, but that it specifically encompasses electronic surveillance that does not arise under the FISA and authorizes the use of Section 1806(f) procedures to adjudicate claims challenging alleged electronic surveillance that do not arise

---

suppress that evidence on the ground that the information was unlawfully obtained or the surveillance did not conform with an order of authorization.  *See* 50 U.S.C. § 1806(a)-(e).

[3] The words "this chapter" referred to in subsection (f) were originally "this Act"—meaning Pub. L. 95-511, Oct. 25, 1978, 92 Stat. 1783, known as the Foreign Intelligence Surveillance Act of 1978, which enacted this chapter (36) of the U.S. Code. *See* 50 U.S.C. § 1806(f) (historical and statutory notes).  The words "this subchapter" referred to in subsections (a) to (d), were originally "this title"—meaning Title I of Pub. L. 95-511.  When subsequent amendments added additional titles to the FISA (*see* Pub. L.103-359, Title VIII,  § 807(3), Oct. 14, 1994, 108 Stat. 3443), Title I of Pub. L. 95- 511 became "subchapter I" of chapter 36, and thus the word "title"—originally translated as "chapter"—was re-translated as "subchapter" to conform the text to the amendments enacted by Pub. L. 103-359.  *See id.*

**Government Defendants' Response to Plaintiffs' Supplemental Brief (Dkt 38-1)**
*Jewel et al. v. National Security Agency et al.*, **Case No. 08-cv-4373-VRW**                        4

under the FISA.[4]  But the scope of the motions clause is, at best, unclear and thus cannot be construed to preempt the state secrets privilege as to non-FISA surveillance and claims.

First, as plaintiffs acknowledge, it is only by inserting line breaks and numbering into the statutory language that plaintiffs can create two distinct "prongs" in the motion clause—of which only one is qualified by the phrase "under this chapter."  But of course there are no "Prongs [1] and [2]" in the motions clause.  The words "under this chapter" can be construed to limit the entire motions clause to surveillance authorized under the FISA—not merely the latter aspect of the clause (concerning the discovery of evidence or information obtained or derived from electronic surveillance).  This is not a circumstance where Congress included particular language in one section but omitted it from another, or where the Court is being asked to "read an absent word into the statute" as plaintiffs' contend.  *See* Dkt. 38-1 at 5-7.  The motions clause contains the words that appear to limit Section 1806(f) to FISA-authorized surveillance.  It is plaintiffs who have re-written the statute to make it appear that one aspect of Section 1806(f) is unmoored from FISA-authorized surveillance.

In addition, plaintiffs' so-called "Prong [1]" of the motions clause pertains to the discovery of "applications or orders or other materials" related to electronic surveillance.  This aspect of the clause—which plaintiffs assert preempts the state secrets privilege as to claims concerning non-FISA surveillance—appears to relate to the discovery of information described

---

[4] Again, we focus herein on plaintiffs' position as to the *scope* of the motions clause, and otherwise reserve our threshold position that Section 1806(f) does not preempt the state secrets privilege to any extent.  *See* Defs. 2d MSJ at 22-32 (Dkt. 17, 07-cv-109-VRW); and Defs. 2d MSJ Reply at 13-27 (Dkt. 29, 07-cv-109-VRW).  We note simply that Section 1806(f) was intended to address circumstances that arose in *Alderman v. United States*, 394 U.S. 165 (1969)—a case where the surveillance at issue had been acknowledged, *see id*. at 170 n.3, and where the "ultimate issue" was "whether the evidence against any petitioner" violated the Fourth Amendment, *see id*. at 181.  In this context, *Alderman* required the Government to disclose transcripts of unlawfully intercepted conversations so that an aggrieved party could determine if any evidence admitted against it was derived from that unlawful surveillance.  *See id*. at 182.  Through Section 1806(f), Congress established procedures that the Attorney General may invoke in similar circumstances involving the use of evidence derived from foreign intelligence surveillance under the FISA so that a determination could be made as to whether such surveillance was lawful or should be suppressed without disclosures that would harm national security.  *See* S. Rep. No. 95-701 at 64, 65, 1978 U.S.C.C.A.N. 4033, 4034.

**Government Defendants' Response to Plaintiffs' Supplemental Brief (Dkt 38-1)**
*Jewel et al. v. National Security Agency et al.*, **Case No. 08-cv-4373-VRW**                                5

in Section 1804 of the FISA. *See* 50 U.S.C. § 1804. Section 1804 pertains to "applications for an order approving electronic surveillance *under this subchapter . . .* ", *see id*. (emphasis added), and describes various categories of information and materials that must be included in such an application, including minimization procedures and certifications relating to the electronic surveillance to be approved. *See id*. Thus, the information discoverable under "Prong [1]" appears to concern the applications, orders, and materials described in Section 1804 which, in turn, is limited to electronic surveillance under the FISA. *See, e.g., Al-Kidd v. Gonzales*, 2008 WL 5123009 (D. Idaho Dec. 2008) (when examining FISA applications under Section 1806(f), the court "is directed to examine whether or not the FISA requirements for submission under § 1804 were met.").

A further indication that Section 1806(f) is limited to surveillance authorized by the FISA may be found in its interplay with subsections (c), (d), and (e). The "notice" requirements in subsections (c) and (d) apply to the use of evidence derived from electronic surveillance "pursuant to the authority of this subchapter." *See* 50 U.S.C. § 1806(c), (d). Motions to discover materials related to electronic surveillance under Section 1806(f) would naturally arise after such notice was provided, including in connection with any motion to suppress. *See id*. §1806(e). For this reason as well, the motions clause can reasonably be construed as limited to circumstances where the use of FISA-authorized electronic surveillance is at issue. There certainly is no clear indication anywhere in Section 1806(f) that a person may use those procedures to obtain a determination of *whether* they are "aggrieved "—the target of, or subject to, electronic surveillance—in the face of a state secrets privilege assertion. *See In re Sealed Case*, 310 F.3d 717, 741 (For. Intel. Surv. Rev. 2002) (FISA does not require notice to persons whose communications were intercepted unless the government intends to enter such communications into evidence).[5]

---

[5] Plaintiffs ascribe great meaning to the fact that other provisions of the FISA that establish procedures similar to Section 1806(f)—applicable to physical searches and pen register devices—include the words "authorized by this subchapter" twice in the same comparable sentence, *see* 50 U.S.C. §§ 1825(g) and 1845(f). *See* Dkt. 38-1 at 5-6. But the fact that the words "under this chapter" appear only once in the motions clause of Section 1806(f) is too

**Government Defendants' Response to Plaintiffs' Supplemental Brief (Dkt 38-1)**
*Jewel et al. v. National Security Agency et al.*, **Case No. 08-cv-4373-VRW**                                          6

Finally, plaintiffs' discussion of legislative history on the differences between the House and Senate versions of the legislation, *see* Dkt. 38-1 at 6, does not support their reading of the motions clause.[6] As we have previously explained, the House-passed FISA legislation contained two provisions that established special procedures to be invoked by the Attorney General for review of the legality of surveillance being used against a person, and those provisions were melded into a single provision (which became Section 1806(f)) of no pertinent difference. *See* Defs. 2d MSJ Reply (Dkt. 29, 07-cv-109-VRW) at 19-22. Indeed, the conference report to the 1978 FISA indicated that it was adopting the Senate version of what became Section 1806(f) with only "technical changes," *see* H.R. Conf. Rep. No. 95-1720, at 31-32, 1978 U.S.C.C.A.N. 4060-61, and does not indicate that the final provision was intended to apply more broadly than the House bill to authorize discovery not related to FISA surveillance or claims. This is especially so where the motions clause, as enacted, included the same kind of limitation reflected in the House provisions to surveillance authorized "in this chapter"–*i.e.*, under the FISA.

For the foregoing reasons, the motions clause of Section 1806(f) appears to be limited solely to electronic surveillance under the FISA and, in any event, does not clearly reflect an intent by Congress to preempt the state secrets privilege as to allegations concerning any other electronic surveillance. The statutory issue is at best unclear, and this cannot serve to preempt the privilege as to non-FISA surveillance.

## II. SECTION 1806(f) DOES NOT CLEARLY APPLY TO THE ADJUDICATION OF CLAIMS THAT ARISE OUTSIDE OF THE FISA.

Plaintiffs' related contention that Section 1806(f) procedures may be applied to litigate claims that do not raise alleged violations of the FISA itself is likewise unsupported. Plaintiffs again cite language in the motions clause indicating that Section 1806(f) applies "whenever any

---

tenuous a basis on which to conclude that it extends beyond FISA-authorized surveillance, let alone to find a clear and direct abrogation of the state secrets privilege in this circumstance.

[6] Indeed, the legislative history of Section 1806(f) firmly supports the Government's reading of that provision as limited to circumstances involving the use of acknowledged surveillance. *See* Defs. 2d MSJ (Dkt. 17, 07-cv-109-VRW) at 29-31; *see*, *e.g.* S. Rep. No. 95-701 at 62, 1978 U.S.C.C.A.N. 4031; *see also* Amicus Curiae Brief of Telecommunications Carrier Defendants (Dkt. 442 in M:06-cv-1791-VRW) at 7-20.

**Government Defendants' Response to Plaintiffs' Supplemental Brief (Dkt 38-1)**
*Jewel et al. v. National Security Agency et al.*, **Case No. 08-cv-4373-VRW**                                7

motion or request is made by an aggrieved person pursuant to *any* other statute or rule of the United States . . . ." *See* Dkt. 38-1 at 7. But this text indicates no more than that discovery motions governed by Section 1806(f) include those brought under any statute—not that any cause of action outside of the FISA can be litigated under Section 1806(f) procedures. The legislative history of Section 1806(f) addresses this issue, noting that the motions clause was written to "prevent the carefully drawn procedures in [Section 1806(f)] from being bypassed by the inventive litigant using a new statute, rule or judicial construction" to seek discovery of FISA surveillance information. *See* S. Rep. No. 95-701 at 63, 1978 U.S.C.C.A.N. 4032. Thus, the motions clause does not seek to expand the scope of Section 1806(f) to permit adjudication of claims arising outside of the FISA, but to ensure that Section 1806(f) would apply whenever discovery is sought under any authority to obtain information related to electronic surveillance evidence being used against a party.

Plaintiffs' specific contention that Section 1806(f) applies to claims arising under Title 18 also rests on a weak foundation. Plaintiffs first argue that 18 U.S.C. § 2712(b)(4) purports to apply Section 1806(f) to Title 18 claims. But plaintiffs fail to note that Section 2712(a) creates a cause of action for alleged violations of three provisions of the FISA itself (not at issue in this case). *See* 18 U.S.C. § 2712(a).[7] In this context, Section 2712(b)(4) refers to Section 1806(f) procedures (and to similar procedures in §§ 1825(g) and 1845(f)) located in the very same section of the FISA to which the cause of action relates. Thus, it is again unclear at best whether Section 1806(f) applies beyond the FISA claims specifically listed in Section 2712(b)(4). In addition, Section 2712(b)(4) states only that Section 1806(f) would apply to the materials "governed by" that section, *see* 18 U.S.C. § 2712(b)(4), which brings the matter back to the very question of *how* Section 1806(f) operates.

Plaintiffs' reliance on 18 U.S.C. § 2511(2)(f), which provides that FISA and the Wiretap Act set forth the "exclusive means" by which surveillance may be conducted, is also misplaced.

---

[7] These provisions establish requirements and prohibitions on the use and disclosure by Federal officers of information acquired from electronic surveillance, physical searches, or through a pen register and trap and trace device. *See* 50 U.S.C. §§ 1806(a), 1825(a), 1845(a)).

**Government Defendants' Response to Plaintiffs' Supplemental Brief (Dkt 38-1)**
*Jewel et al. v. National Security Agency et al.*, **Case No. 08-cv-4373-VRW** 8

"'All this section [§ 2511(2)(f)] means . . . is that [FISA] is intended to be exclusive in its domain and [the Wiretap Act] in its.'" *United States v. Koyomejian*, 970 F.2d 536, 541 (9th Cir. 1992 (en banc) (citation omitted). There is no basis on which to conclude from this provision that the FISA would apply to adjudicate any cause of action authorized by Title 18.[8]

Finally, the cases cited by plaintiffs do not support their contention that Section 1806(f) applies to non-FISA causes of action. *United States v. Johnson*, 952 F.2d 565, 571-73 (1st Cir. 1992), reflects a standard application of Section 1806(f) to determine a criminal defendants' claim that FISA surveillance being used against him had been obtained in violation of the FISA and the Constitution. This scenario falls precisely within Section 1806(f), and does not remotely indicate that Section 1806(f) would otherwise apply to adjudicate a separate cause of action challenging alleged electronic surveillance.

*Al-Kidd v. Gonzales*, 2008 WL 5123009 (D. Idaho Dec. 4, 2008), involved another straightforward application of Section 1806(f) to obtain discovery of materials related to surveillance authorized under the FISA and to determine the lawfulness of that surveillance. *See id.* at **3-6. The parties in *Al-Kidd* did not dispute that Section 1806(f)'s procedures applied to the discovery request, or that Mr. Al-Kidd was an "aggrieved person" under the FISA. *See id.* at *5. In fact, the Government triggered Section 1806(f) procedures by filing the requisite affidavit. Thus, unlike in this case, *Al-Kidd* did not involve an attempt to use Section 1806(f) to determine *whether* surveillance had occurred and *whether* the plaintiff was aggrieved, nor to obtain discovery of information related to alleged non-FISA electronic surveillance. And, notably, in addition to applying Section 1806(f), the court in *Al-Kidd* reviewed and upheld the Government's simultaneous state secrets privilege assertion over the same materials and specifically declined to apply this Court's ruling on FISA preemption in the *Al-Haramain* action.

---

[8] The Wiretap Act contains its own provisions that, like Section 1806(f), require notice of surveillance, *see id.* § 2518(8)(d), (9), and for judicial review of motions by an aggrieved person to suppress evidence derived from a communication was unlawfully intercepted, *see id.* § 2518(10)(a). The Wiretap Act also provides that its remedies and sanctions "with respect to the interception of electronic communications are the only judicial remedies and sanctions for non-constitutional violations of this chapter involving such communications." *Id.* § 2518(10)(c). These provisions are a further indication that FISA procedures would not apply within Title 18.

**Government Defendants' Response to Plaintiffs' Supplemental Brief (Dkt 38-1)**
*Jewel et al. v. National Security Agency et al.*, **Case No. 08-cv-4373-VRW**                9

*See id*. at \*\*6-7.[9]

Lastly, and again contrary to plaintiffs' assertion, the court in *Mayfield v. Gonzales*, 2005 WL 1801679, at * 17 (D. Or. July 28, 2005), did not "us[e] section 1806(f) to review constitutional claims for injunctive relief." *See* Dkt. 38-1 at 7.  Rather, the court merely held that "before plaintiffs can adequately fashion their claim for injunctive and declaratory relief . . ., they first need to determine the extent to which data and information [collected pursuant to FISA] have been retained by the federal government, and the extent to which [such] data and information have been disseminated throughout the federal government." *Id.* at * 18.  The court noted that plaintiffs were entitled to conduct normal discovery on these issues. *Id.*  The court did not hold a Section 1806(f) proceeding or use Section 1806(f)'s review procedures in any way. The Government had also advised Mayfield that he had been subject to searches pursuant to FISA, thus it was clear that Mayfield was an aggrieved person, unlike plaintiffs here.  *Id.* at * 17.

## CONCLUSION

In sum, while, in the Government's view, Section 1806(f) does not preempt the state secrets privilege to any extent, it certainly does not clearly and directly preempt the privilege to permit use of its procedures to adjudicate claims that are not within the purview of the FISA.

September 4, 2009                                      Respectfully Submitted,

MICHAEL F. HERTZ
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

VINCENT M. GARVEY
Deputy Branch Director

---

[9] This is consistent with legislative history indicating that where the need to determine legality of surveillance arises "incident to discovery in a civil trial," the court should grant the discovery motion only in accordance with the requirements of law" which would include law "respecting civil discovery." *See* H.R. Rep. No. 95-1283, at 90-94.  Thus, even as Section 1806(f) operates, any disclosure of information under that provision would continue to be governed by evidentiary privileges in discovery.

**Government Defendants' Response to Plaintiffs' Supplemental Brief (Dkt 38-1)**
*Jewel et al. v. National Security Agency et al.*, **Case No. 08-cv-4373-VRW**                    10

| | |
|---|---|
| 1 |    *s/ Anthony J. Coppolino*<br>ANTHONY J. COPPOLINO<br>Special Litigation Counsel |
| 2 | |
| 3 |    *s/ Marcia Berman*<br>MARCIA BERMAN<br>Trial Attorney |
| 4 | |
| 5 | U.S. Department of Justice<br>Civil Division, Federal Programs Branch<br>20 Massachusetts Avenue, NW, Rm. 6102<br>Washington, D.C. 20001<br>Phone: (202) 514-4782<br>Fax: (202) 616-8460 |

*Attorneys for the Government Defendants Sued in their Official Capacity*

**Government Defendants' Response to Plaintiffs' Supplemental Brief (Dkt 38-1)**
*Jewel et al. v. National Security Agency et al.*, **Case No. 08-cv-4373-VRW**