**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CAROLYN JEWEL; TASH HEPTING;
GREGORY HICKS; ERIK KNUTZEN;
JOICE WALTON, on behalf of
themselves and all others similarly
situated,
               *Plaintiffs-Appellants,*

               v.

NATIONAL SECURITY AGENCY; KEITH
B. ALEXANDER, Director, in his
official and personal capacities;
MICHAEL V. HAYDEN, in his
personal capacity; UNITED
STATES OF AMERICA; GEORGE W.
BUSH, President of the United
States, in his official and personal
capacities; RICHARD B. CHENEY, in
his personal capacity; DAVID S.
ADDINGTON, in his personal
capacity; DEPARTMENT OF JUSTICE;
ALBERTO R. GONZALES, in his
personal capacity; JOHN D.
ASHCROFT, in his personal
capacity; JOHN M. MCCONNELL,
Director of National Intelligence,
in his official and personal
capacities; JOHN D. NEGROPONTE in
his personal capacity; MICHAEL B.
MUKASEY, Attorney General;
BARACK HUSSEIN OBAMA;

| | |
|---|---|
| ERIC H. HOLDER JR., Attorney General; DENNIS C. BLAIR, *Defendants-Appellees,* | No. 10-15616 D.C. Nos. 3:08-cv-04373-VRW M:06-cv-01791-VRW |
| VIRGINIA SHUBERT; NOHA ARAFA; SARAH DRANOFF; HILARY BOTEIN, individually and on behalf of all others similarly situated, *Plaintiffs-Appellants,* v. GEORGE W. BUSH; MICHAEL V. HAYDEN; KEITH B. ALEXANDER; ALBERTO R. GONZALES; JOHN ASHCROFT; UNITED STATES OF AMERICA, *Defendants-Appellees.* | No. 10-15638 D.C. Nos. 3:07-cv-00693-VRW M:06-cv-01791-VRW OPINION |

Appeal from the United States District Court
for the Northern District of California
Vaughn R. Walker, District Judge, Presiding

Argued and Submitted
August 31, 2011—Seattle, Washington

Filed December 29, 2011

Before: Harry Pregerson, Michael Daly Hawkins, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge McKeown

## COUNSEL

Cindy Cohn, Lee Tien, Kurt Opsahl, Kevin S. Bankston, James S. Tyre, ELECTRONIC FRONTIER FOUNDATION,

San Francisco, California, for the plaintiff-appellant; Rachael E. Meny, Paula L. Blizzard, Michael S. Kwun, Audrey Walton-Hadlock, KEKER & VAN NEST LLP, for the plaintiff-appellant [ 10-15616 ].

Matthew D. Brinckerhoff, Ilann Margalit Maazel, Adam R. Pulver, EMERY CELLI BRINCKERHOFF & ABADY LLP, New York, New York, for the plaintiff-appellant. [ 10-15638 ].

H. Thomas Byron, III, DOJ – U.S. Department of Justice, Washington, District of Columbia, for the defendant-appellee. [ 10-15616 and 10-15638 ].

## OPINION

McKEOWN, Circuit Judge:

This case is one of many arising from claims that the federal government, with the assistance of major telecommunications companies, engaged in widespread warrantless eavesdropping in the United States following the September 11, 2001, attacks. At issue in this appeal is whether Carolyn Jewel and other residential telephone customers (collectively "Jewel") have standing to bring their statutory and constitutional claims against the government for what they describe as a communications dragnet of ordinary American citizens.

In light of detailed allegations and claims of harm linking Jewel to the intercepted telephone, internet and electronic communications, we conclude that Jewel's claims are not abstract, generalized grievances and instead meet the constitutional standing requirement of concrete injury. Nor do prudential considerations bar this action. Although there has been considerable debate and legislative activity surrounding the surveillance program, the claims do not raise a political ques-

tion nor are they inappropriate for judicial resolution. Finally, we do not impose, as suggested by the government, a heightened standing requirement simply because the case involves government officials in the national security context. We reverse the district court's dismissal on standing grounds and remand for further proceedings. We leave for the district court to consider in the first instance the government's alternative argument that Jewel's claims are foreclosed by the state secrets privilege.

## BACKGROUND

### I. COMPLAINT

Jewel filed this putative class action "on behalf of [herself] and a class of similarly situated persons": "ordinary Americans who are current or former subscribers to AT&T's telephone and/or Internet services." At this stage, our inquiry focuses on Jewel and the allegations as they pertain to her. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011). Jewel sued federal government agencies and government officers in their official and personal capacities. She did not name any telecommunications companies as defendants.[1] Jewel alleged that the "[c]ommunications of Plaintiffs and class members have been and continue to be illegally acquired by Defendants using surveillance devices attached to AT&T's network." She claimed that these actions violated the First and Fourth Amendments, the constitutional doctrine of separation of powers, *and a variety of statutes—the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. §§ 1801 et seq.*, the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510 *et seq.*, the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2710 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.* The complaint requested both equitable and monetary relief.

---

[1] A number of the other multidistrict litigation ("MDL") suits name one or more of the telecommunications companies as defendants. *See, e.g.*, *Hepting v. AT&T*, No. 09-16676 (9th Cir. Dec. 29, 2011).

According to the complaint, on October 4, 2001, President Bush and other government defendants issued a secret presidential order that authorized warrantless surveillance within the United States. Jewel asserted that she was specifically affected because AT&T, in collaboration with the National Security Agency ("NSA"), diverted all of her internet traffic into "SG3 Secure Rooms" in AT&T facilities across the country, including AT&T's Folsom Street facility in San Francisco, "and information of interest [was] transmitted from the equipment in the SG3 Secure Rooms to the NSA based on rules programmed by the NSA." Jewel's complaint focused on AT&T, its San Francisco facility, and the SG3 Secure Rooms.

Jewel further alleged that the governmental defendants operated a "dragnet collection" of communications records by "continuously solicit[ing] and obtain[ing] the disclosure of all information in AT&T's major databases of stored telephone and Internet records." These records "concern[ ] communications to which Plaintiffs and class members were a party." For example, Jewel claims that,

> [u]sing [a] shadow network of surveillance devices, Defendants have acquired and continue to acquire the content of a significant portion of phone calls, emails, instant messages, text messages, web communications and other communications, both international and domestic, of practically every American who uses the phone system or the Internet, including Plaintiffs and class members, in an unprecedented suspicionless general search through the nation's communications network.

The complaint goes on to allege that defendants were directly involved in the schemes, which were "directly performed, and/or aided, abetted, counseled, commanded, induced, or procured, by Defendants."

Case3:08-cv-04373-JSW Document475 Filed02/10/17 Page7 of 19
Case: 10-15616 12/29/2011 ID: 8017175 DktEntry: 67-1 Page: 7 of 19

JEWEL v. NATIONAL SECURITY AGENCY 21609

## II. THE DISTRICT COURT'S DECISION

The government defendants moved to dismiss and alternatively sought summary judgment as to all claims. They argued that the court lacked jurisdiction over Jewel's statutory claims because the government did not waive its sovereign immunity. The government sought summary judgment on the remaining claims "because information necessary to litigate plaintiffs' claims is properly subject to and excluded from use in the case by the state secrets privilege and related statutory privileges." Although not argued by the government or briefed by the parties, the district court granted the motion to dismiss because Jewel lacked standing to bring her claims.[2] The district court dismissed the claims with prejudice and without leave to amend.[3]

---

[2]The district court dismissed Jewel's action together with a similar action filed by Virginia Shubert. Shubert's action was consolidated with other wiretapping cases in August 2006 in the Northern District of California under the MDL provisions of 28 U.S.C. § 1407. Jewel's case was originally filed in the Northern District of California, but was not part of the MDL consolidation. The procedural histories of the Jewel and Shubert actions are not identical, but the district court considered the cases together for purposes of standing.

[3]The allegations in the Shubert complaint diverge significantly from those in the Jewel complaint, primarily because of their lack of specificity. These deficiencies might well have been ameliorated through an amended complaint. However, the district court sua sponte dismissed the complaint on standing grounds, without leave to amend. Although the district court properly considered standing of its own accord, this dismissal was problematic "because [plaintiffs] only learned that the district court would not allow them an opportunity to remedy any perceived defects in the complaint after . . . the district court summarily signed and entered [its order of dismissal]." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008). The district court erred in denying Shubert leave to amend. "Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

   The district court carefully reviewed the complicated procedural history, both of the MDL wiretapping cases generally and the motions at issue in this case specifically. The district court held that Jewel failed to make out prima facie allegations necessary to establish that she was an "aggrieved person" under the FISA. The court acknowledged that Jewel's complaint included specific allegations that the NSA used AT&T's Folsom Street facility, but found that "[the] complaint contains no other allegations specifically linking any of the plaintiffs to the alleged surveillance activities," and therefore held that Jewel lacked standing. We disagree.

## ANALYSIS

   The central issue on appeal is whether Jewel has standing to sue the government defendants, a question of law that we review de novo. *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002). "Because the district court sua sponte dismissed [the] complaint on its face," we "review . . . standing as if raised in a motion to dismiss. When reviewing motions to dismiss, [the court] must accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (internal quotation marks and citation omitted). General factual allegations of injury resulting from the defendant's conduct may suffice, as we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed.* ("*Nat'l Wildlife Fed.*"), 497 U.S. 871, 889 (1990). Because this appeal arises from dismissal under Federal Rule of Civil Procedure 12(b)(6), Jewel's allegations are accepted as true.[4]

---

[4]At the motion to dismiss stage, we do not consider the merits of Jewel's claims. For example, the district court's determination that Jewel was not an "Aggrieved Person" under the FISA or a qualified plaintiff under the other statutes is a merits determination, not a threshold standing question. Statutory "standing, unlike constitutional standing, is not jurisdictional." *Noel v. Hall*, 568 F.3d 743, 748 (9th Cir. 2009). The question

### I. PRINCIPLES OF STANDING

**[1]** Standing doctrine is well established: "Article III . . . gives the federal courts jurisdiction over only 'cases and controversies.'" *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990). The oft-cited *Lujan v. Defenders of Wildlife* ("*Lujan*") restates the three requirements that must be met for Article III standing: (1) an injury in fact that (2) is fairly traceable to the challenged conduct and (3) has some likelihood of redressability. 504 U.S. 555, 560-61 (1992). Here, the district court determined that this action was "in essence [a] citizen sui[t] seeking to employ judicial remedies to punish and bring to heel high-level government officials," and that "neither group of plaintiffs/purported class representatives has alleged an injury that is sufficiently particular to those plaintiffs or to a distinct group." The district court's decision was based entirely on the first prong of *Lujan*. Although that requirement is the focus of our analysis, our de novo review also considers the other two prongs.

**[2]** "[T]he standing question in [this] case is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). The answer here is yes.

---

whether a plaintiff states a claim for relief typically relates to the merits of a case, not to the dispute's justiciability, and conflation of the two concepts often causes confusion. *See Bond v. United States*, 131 S. Ct. 2355, 2362 (2011); *see also Steel Co. v. Citizens for Better Env't.*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case." (emphasis in original)).

## II. Jewel Has Constitutional Standing to Sue

### A. Jewel Alleged Concrete and Particularized Injury

To satisfy the "injury in fact" requirement, Jewel must assert a grievance that is both "concrete and particularized." *Lujan*, 504 U.S. at 560 (citations omitted). We consider each of these requirements in turn, and conclude that Jewel has satisfied them both.

**[3]** As to Jewel's statutory claims, the Supreme Court instructs that a concrete "injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Lujan*, 504 U.S. at 578 (internal quotation marks, citation, and alteration omitted). Jewel asserts claims under three surveillance statutes—the ECPA, FISA and SCA—and adds an umbrella claim under the APA.

**[4]** Both the ECPA and the FISA prohibit electronic interception of communications absent compliance with statutory procedures. The SCA likewise prohibits the government from obtaining certain communication records. Each statute explicitly creates a private right of action for claims of illegal surveillance. *See* 18 U.S.C. § 2520 (the ECPA provides a cause of action to "any person whose . . . communication is intercepted, disclosed, or intentionally used"); 50 U.S.C. § 1801(k) (the FISA provides that "[a]n aggrieved person . . . who has been subjected to an electronic surveillance or about whom information obtained by electronic surveillance of such person has been disclosed or used in violation of section 1809 of this title shall have a cause of action against any person who committed such violation"); 18 U.S.C. § 2707(a) (the SCA provides that "any provider of electronic communication service, subscriber, or other person aggrieved by any violation of this chapter" may maintain a civil action if the violation was done knowingly or intentionally).

**[5]** In a similar vein, with respect to her constitutional claim, Jewel alleges a concrete claim of invasion of a personal constitutional right—the First Amendment right of association and the Fourth Amendment right to be free from unreasonable searches and seizures. Just last term, the Supreme Court confirmed an individual's right to challenge the legality of Executive Branch conduct on separation-of-powers grounds, Jewel's third constitutional claim: "[I]ndividuals sustain discrete, justiciable injury from actions that transgress separation-of-powers limitations. Separation-of-powers principles are intended, in part, to protect each branch of government from incursion by the others. Yet the dynamic between and among the branches is not the only object of the Constitution's concern. The structural principles secured by the separation of powers protect the individual as well." *Bond*, 131 S. Ct. at 2365.

**[6]** Satisfied that Jewel sufficiently alleged concrete injury, we turn now to the more difficult question, whether the rights asserted are sufficiently particularized. The breadth of Jewel's allegations calls into question whether she has a particularized grievance or instead one that "is held in common by all members of the public," *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220 (1974), and thus necessarily an abstract interest shared by all citizens. The critical question is whether she "has alleged such a personal stake in the outcome of the controversy as to warrant . . . invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal quotation marks omitted).

**[7]** The Supreme Court observed in *Federal Election Commission v. Akins* that, "[w]hether styled as a constitutional or prudential limit on standing, the Court has sometimes determined that where large numbers of Americans suffer alike, the political process, rather than the judicial process, may provide the more appropriate remedy for a widely shared grievance." 524 U.S. 11, 23 (1998). But the fact that a harm is widely shared does not necessarily render it a generalized

grievance. In *Akins*, the Court gave context to the notion of a generalized grievance, explaining that petitioners lack standing "in cases where the harm at issue is not only widely shared, but is also of an abstract and indefinite nature—for example, harm to the 'common concern for obedience of law.' " 524 U.S. at 23 (quoting *L. Singer & Sons v. Union Pac. R.R. Co.*, 311 U.S. 295, 303 (1940)); *see also Lujan*, 504 U.S. at 573-74 ("We have consistently held that a plaintiff raising only a generally available grievance about government —claiming only harm to his and every citizen's interest in proper application of the Constitution and laws . . . does not state an Article III case or controversy."). The Court in *Akins* continued "[o]ften the fact that an interest is abstract and the fact that it is widely shared go hand in hand. But their association is not invariable, and where a harm is concrete, though widely shared, the Court has found 'injury in fact.'" 524 U.S. at 24. As examples of widely shared but concrete injuries the Court listed "a widespread mass tort" or "where large numbers of voters suffer interference with voting rights conferred by law." *Id.* Indeed, "it does not matter how many persons have been injured by the challenged action so long as 'the party bringing suit . . . show[s] that the action injures him in a concrete and personal way.' " *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (quoting *Lujan*, 504 U.S. at 581) (Kennedy, J., concurring in part and concurring in the judgment).

We recently considered the prerequisites for a "sufficiently concrete and specific injury" in *Newdow v. Lefevre*, an Establishment Clause challenge to the inscription "In God We Trust" on coins and currency. 598 F.3d 638 (9th Cir. 2010), *cert. denied* 131 S. Ct. 1612 (2011). We held that Newdow met the standing requirement. The fact that his "encounters with the motto are common to all Americans does not defeat his standing, because Newdow has alleged a concrete, particularized, and personal injury resulting from his frequent, unwelcome contact with the motto." *Id.* at 642. This case illustrates that even though the experience at the root of Newdow's complaint was shared by virtually every American, this

widespread impact was not dispositive of standing because his grievance was nonetheless concrete and particular.

**[8]** Following the rationale of *Akins* and *Newdow*, we conclude that Jewel alleged a sufficiently concrete and particularized injury. Jewel's allegations are highly specific and lay out concrete harms arising from the warrantless searches. Jewel described these actions as a "dragnet" and alleged that "[t]his network of Surveillance Configurations"—"the technical means used to receive the diverted communications"—"indiscriminately acquired domestic communications as well as international and foreign communications." Specifically, Jewel alleged that "[t]hrough this network of Surveillance Configurations and/or other means, Defendants have acquired and continue to acquire the contents of domestic and international wire and/or electronic communications sent and/or received by Plaintiffs and class members." In addition to capturing internet traffic, "Defendants and AT&T acquire all or most long-distance domestic and international phone calls to or from AT&T long distance customers, including both the content of those calls and dialing, routing, addressing and/or signaling information pertaining to those calls."

**[9]** The complaint also described in detail the particular electronic communications equipment used ("4ESS switch" and "WorldNet Internet Room") at the particular AT&T facility (Folsom Street, San Francisco) where Jewel's personal and private communications were allegedly intercepted in "a secret room known as the 'SG3 Secure Room.' " Accepting Jewel's allegations as true, she has pled more than the minimum "general factual allegations" required to survive dismissal. *Bernhardt*, 279 F.3d at 867. The court need "not pass upon abstract, intellectual problems, but [can] adjudicate concrete, living contests between adversaries." *Akins*, 524 U.S. at 20 (internal quotation marks and alteration omitted). *Akins* establishes that, where the injury is sufficiently concrete and specific, "that it is widely shared does not deprive Congress

of constitutional power to authorize its vindication in the federal courts." 524 U.S. at 25.

Significantly, Jewel alleged with particularity that *her* communications were part of the dragnet. The complaint focused on AT&T and was not a scattershot incorporation of all major telecommunications companies or a blanket policy challenge. Jewel's complaint also honed in on AT&T's Folsom Street facility, through which all of Jewel's communications allegedly passed and were captured.

Our decision is consistent with the approach in other circuits. The Second Circuit recently determined, after conducting a detailed analysis, that plaintiffs in a similar suit had standing to challenge provisions of the FISA. *Amnesty Int'l United States v. Clapper*, 638 F.3d 118, 122 (2d Cir. 2011). *Amnesty International* involved a facial challenge to § 702 of the FISA in which the plaintiffs' alleged injuries were "fear that the government will intercept their sensitive international communications" and the costs associated with efforts to avoid such anticipated injuries. *Id.* at 133. Jewel has much stronger allegations of concrete and particularized injury than did the plaintiffs in *Amnesty International*. Whereas they anticipated or projected future government conduct, Jewel's complaint alleges past incidents of *actual* government interception of her electronic communications, a claim we accept as true.[5]

---

[5]The government's position in *Amnesty International* appears to be in tension with its argument here. There, the government "argue[d] that the plaintiffs can obtain standing only by showing either that they have been monitored or that it is 'effectively certain' that they will be monitored." *Id.* at 135. Shifting its position, the government argues here that Jewel lacks standing even if her communications were in fact captured and monitored. The government does not deny Jewel's allegations but sidesteps the issue, asserting that "plaintiffs offer nothing other than bare speculation for their assertion that any surveillance is ongoing outside of [FISA Court] authorizations." That approach conflates the ultimate merits question—whether the surveillance exceeded statutory or constitutional authority—with the threshold standing determination.

[10] Jewel's case stands in contrast to two other cases, where our sister circuits held that plaintiffs lacked standing. In *United Presbyterian Church v. Reagan*, the D.C. Circuit confronted a "generalized challenge" to "the constitutionality of the entire national intelligence-gathering system," not the alleged actual impact of a specific program or protocol on the plaintiff. 738 F.2d 1375, 1381 (D.C. Cir. 1984) (internal quotation marks omitted). Jewel's complaint does not suffer from vague "chilling effect" allegations like those in *United Presbyterian* nor does it fall in the category of speculative harm. *Id.* at 1380. While specificity does not necessarily trump speculation, the detail and specificity here are sufficient to support a particularized claim.

Similarly distinguishable is the Sixth Circuit's denial of standing to challenge the entire NSA wiretapping program. *ACLU v. NSA*, 493 F.3d 644, 648 (6th Cir. 2007). Although the court reversed on standing grounds, it considered a fully-developed summary judgment record. Arguably that case is of "no relevance here," because our case "involve[s] not a *Rule 56* motion for summary judgment but a *Rule 12(b)* motion to dismiss on the pleadings." *Nat'l Wildlife Fed.*, 497 U.S. at 889. The ACLU plaintiffs—attorneys and other professionals whose communications with overseas individuals were allegedly impacted—were unable to "produce any evidence that any of their own communications have ever been intercepted." *ACLU*, 493 F.3d at 653. The court thus faulted them for "assert[ing] a mere belief" that the NSA eavesdropped on their communications without warrants. *Id.* This failure of proof doomed standing. Ultimately Jewel may face similar procedural, evidentiary and substantive barriers as the plaintiffs in *ACLU*, but, at this initial pleading stage, the allegations are deemed true and are presumed to "embrace the 'specific facts' needed to sustain the complaint." *Lujan*, 497 U.S. at 888; *see also Bennett v. Spear*, 520 U.S. 154, 168 (1997) (noting in its discussion of standing, "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss

we presume that general allegations embrace those specific facts that are necessary to support the claim.").

### B.  JEWEL'S ALLEGATIONS MEET THE SECOND AND THIRD PRONGS OF THE TEST FOR CONSTITUTIONAL STANDING

**[11]** The harms Jewel alleges are "fairly traceable to the challenged action" of the NSA. *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). It is no secret that in the weeks after the attacks of September 11, 2001, President Bush authorized the NSA to engage in warrantless wiretapping. The President admitted as much: "I authorized a terrorist surveillance program to detect and intercept al Qaeda communications involving someone here in the United States." President George W. Bush, Speech at the National Security Agency (Jan. 25, 2006) *available at* http://georgewbush-whitehouse.archives.gov/news/releases/2006/01/20060125-1.html. Thus, the harms Jewel alleges—invasion of privacy and violation of statutory protections—can be directly linked to this acknowledged surveillance program.

**[12]** Jewel easily meets the third prong of the standing requirement. There is no real question about redressability. Jewel seeks an injunction and damages, either of which is an available remedy should Jewel prevail on the merits.

### C.  JEWEL SATISFIES THE PRUDENTIAL REQUIREMENTS FOR STANDING

The heart of the district court's opinion and the core of the government's argument on appeal focuses on prudential standing concerns, namely the broad nature of the claims and the role of the courts in addressing intelligence and surveillance issues. It is true, according to the Court in *Akins*, that the concern about generalized grievances can be characterized as both a constitutional and prudential concern, as there is overlap in the analysis. 524 U.S. at 23. We are satisfied that

our analysis of this issue as a constitutional standing requirement applies with equal force in the prudential arena.

[13] After labeling Jewel's claim as an effort "to redress alleged malfeasance by the executive branch," the district court stated that "the political process, rather than the judicial process," may be the appropriate avenue. There is little doubt that Jewel challenges conduct that strikes at the heart of a major public controversy involving national security and surveillance. And we understand the government's concern that national security issues require sensitivity. That being said, although the claims arise from political conduct and in a context that has been highly politicized, they present straightforward claims of statutory and constitutional rights, not political questions. *See Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 (1986).

The district court's suggestion that Congress rather than the courts is the preferred forum ignores two important points: To begin, Congress already addressed the issue and spelled out a private right of action in the FISA, ECPA and SCA. And, in 2008, "[p]artially in response to the[ ] [wiretapping] suits, Congress held hearings and ultimately passed legislation that provided retroactive immunity to the companies . . . but expressly left intact potential claims against the government." *Hepting*, slip op. at 21573.

[14] Focusing on the federal statutory causes of action, the prudential analysis is simplified: "prudential standing is satisfied when the injury asserted by a plaintiff arguably falls within the zone of interests to be protected or regulated by the statute." *Akins*, 524 U.S. at 20 (internal citations, quotation marks and alterations omitted). In the surveillance statutes, by granting a judicial avenue of relief, Congress specifically envisioned plaintiffs challenging government surveillance under this statutory constellation. Jewel's statutory claims undoubtedly allege harms "within the zone of interests to be

21620	Jewel v. National Security Agency

protected or regulated by the statute[s]," alleviating any prudential standing concerns. *Id.*

**[15]** The district court effectively imposed a heightened standard for consideration of Jewel's constitutional claims. *See Jewel v. NSA*, 2010 U.S. Dist. LEXIS 5110 at *24-25. According to the district court, the reluctance to adjudicate constitutional questions is heightened "when, as here, the constitutional issues at stake in the litigation seek judicial involvement in the affairs of the executive branch and national security concerns appear to undergird the challenged actions." *Jewel v. NSA*, 2010 U.S. Dist. LEXIS 5110 at *25. The court went on to hold that "[i]n such cases, only plaintiffs with *strong* and *persuasive* claims to Article III standing may proceed." *Id.* (emphasis added). This determination was in error. The district court quoted *Schlesinger* for the proposition that "when a Court is asked to undertake constitutional adjudication, the most important and delicate of its responsibilities, the requirement of concrete injury further serves the function of insuring that such adjudication does not take place unnecessarily." 418 U.S. at 221. It bears emphasis that the Supreme Court offered that observation in rejecting "citizen standing," a significantly different scenario than here. *Id.* at 216-21. Plaintiffs in *Schlesinger,* who challenged congressional military reserve membership, claimed an interest in "compel[ling] the Executive Branch to act in conformity with the Incompatability Clause, an interest *shared by all citizens*."[6] *Id.* at 217 (emphasis added).

**[16]** In the sentence that follows the passage quoted by the district court, the Supreme Court explained that "concrete injury removes from the realm of speculation whether there is a real need to exercise power of judicial review in order to

---

[6]The Incompatability Clause provides that "[n]o Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States . . . ." U.S. Const. art. I, § 6, cl. 2.

protect the interests of the complaining party." 418 U.S. at 221. In short, *Schlesinger* does not stand for the proposition that there is a stronger, more "persuasive" standing for constitutional questions in national security cases. It represents, instead, an articulation of the basic requirement of concrete injury and the rule against generalized grievances. Article III imposes no heightened standing requirement for the often difficult cases that involve constitutional claims against the executive involving surveillance. *See Amnesty Int'l*, 638 F.3d at 149 ("We do not see any reason why the law of standing should be stricter or different in the surveillance context."). To be sure, prudential concerns may weigh against standing in certain cases affecting national security interests, but the national security context does not, in itself, erect a new or separate prudential bar to standing.

## Conclusion

We REVERSE the district court's dismissal of Jewel's complaint on the ground that she lacked standing. We REMAND with instructions to consider, among other claims and defenses, whether the government's assertion that the state secrets privilege bars this litigation. We REVERSE the district court's dismissal of Shubert's complaint with prejudice and without leave to amend and REMAND with instructions to grant Shubert leave to amend her complaint.