CINDY COHN (145997)
cindy@eff.org
LEE TIEN (148216)
KURT OPSAHL (191303)
JAMES S. TYRE (083117)
MARK RUMOLD (279060)
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA  94110
Telephone:  (415) 436-9333
Fax:  (415) 436-9993

RICHARD R. WIEBE (121156)
wiebe@pacbell.net
LAW OFFICE OF RICHARD R. WIEBE
One California Street, Suite 900
San Francisco, CA 94111
Telephone:  (415) 433-3200
Fax:  (415) 433-6382

RACHAEL E. MENY (178514)
rmeny@kvn.com
PAULA L. BLIZZARD (207920)
MICHAEL S. KWUN (198945)
AUDREY WALTON-HADLOCK (250574)
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, California  94111-1704
Telephone:  (415) 391-5400
Fax:  (415) 397-7188

THOMAS E. MOORE III (115107)
tmoore@moorelawteam.com
THE MOORE LAW GROUP
228 Hamilton Avenue, 3rd Floor
Palo Alto, CA 94301
Telephone:  (650) 798-5352
Fax:  (650) 798-5001

ARAM ANTARAMIAN (239070)
aram@eff.org
LAW OFFICE OF ARAM ANTARAMIAN
1714 Blake Street
Berkeley, CA 94703
Telephone:  (510) 289-1626

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

CAROLYN JEWEL, TASH HEPTING, GREGORY HICKS, ERIK KNUTZEN and JOICE WALTON, on behalf of themselves and all others similarly situated,

        Plaintiffs,

   v.

NATIONAL SECURITY AGENCY, *et al.*,

        Defendants.

CASE NO. 08-CV-4373-JSW

**DECLARATION OF MARK KLEIN WITH REDACTED EXHIBITS FILED IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**(ORIGINALLY FILED IN THE RELATED CASE OF HEPTING v. AT&T, NO. 06-CV-0676)**

Date:  November 2, 2012
Time:  9:00 a.m.
Courtroom 11, 19th Floor
The Honorable Jeffrey S. White

I, Richard R. Wiebe, do hereby declare:

1.      I am a member in good standing of the Bar of the State of California and the bar of this Court. I am counsel to plaintiffs in this action and plaintiffs in the related action of *Hepting, et al. v. AT&T Corp., et al.*, N.D. Cal. No. 06-CV-0672. I have personal knowledge of the facts set forth below, except as may be otherwise noted, and if called as a witness I could and would testify competently to them.

2.      Attached hereto is the Declaration of Mark Klein and accompanying redacted exhibits, originally filed in the related *Hepting* action. Although portions of the Klein Declaration and its exhibits originally were filed under seal (*Hepting* Dkt. #147; #231), the entire Klein Declaration was unsealed pursuant to stipulation and court order and filed in the public docket (*Hepting* Dkt. #358 & Ex. 1; #361). A redacted version of the exhibits to the Klein Declaration was also unsealed pursuant to stipulation and court order and filed in the public docket (*Hepting* Dkt. #358 & Ex. 2; #361).

3.      The Klein Declaration and redacted exhibits attached hereto are the same as those filed in the public docket in the *Hepting* action. The following portions of the Klein Exhibits remaining under seal by order of this Court in the *Hepting* action and are not included in the attached:

    a.      Exhibit A, pp. 2-3, 5-43.

    b.      Exhibit B, pp. 1-5, 7-19.

    c.      Exhibit C, pp. 2, 4-44, 47-58.

(*Hepting* Dkt. # 358 & Exs. 1, 2; #361).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at San Francisco, CA on June 29, 2012.

*s/ Richard R. Wiebe*

Richard R. Wiebe

1   ELECTRONIC FRONTIER FOUNDATION
    CINDY COHN (145997)
2   cindy@eff.org
    LEE TIEN (148216)
3   tien@eff.org
    KURT OPSAHL (191303)
4   kurt@eff.org
    KEVIN S. BANKSTON (217026)
5   bankston@eff.org
    CORYNNE MCSHERRY (221504)
6   corynne@eff.org
    JAMES S. TYRE (083117)
7   jstyre@eff.org
    454 Shotwell Street
8   San Francisco, CA  94110
    Telephone:  415/436-9333
9   415/436-9993 (fax)

10  TRABER & VOORHEES
    BERT VOORHEES (137623)
11  bv@tvlegal.com
    THERESA M. TRABER (116305)
12  tmt@tvlegal.com
    128 North Fair Oaks Avenue, Suite 204
13  Pasadena, CA  91103
    Telephone:  626/585-9611
14  626/ 577-7079 (fax)
    Attorneys for Plaintiffs

15
    [Additional counsel appear following the signature page.]
16

17              UNITED STATES DISTRICT COURT

18              NORTHERN DISTRICT OF CALIFORNIA

19

20  TASH HEPTING, GREGORY HICKS,        )   No. C-06-0672-VRW
    CAROLYN JEWEL and ERIK KNUTZEN on   )
21  Behalf of Themselves and All Others Similarly )  CLASS ACTION
    Situated,                           )
22                                      )   DECLARATION OF MARK KLEIN IN
                        Plaintiffs,     )   SUPPORT OF PLAINTIFFS' MOTION FOR
23                                      )   PRELIMINARY INJUNCTION
            vs.                         )
24                                      )   Date:    June 8, 2006
    AT&T CORP., AT&T INC. and DOES 1-20, )  Time:    2:00 p.m.
25  inclusive,                          )   Court:   Courtroom 6, 17th Floor
                                        )   Judge:   The Hon. Vaughn R. Walker,
26                      Defendants.     )            Chief United States District Judge
    _____ )

27

28          FILED UNDER SEAL PURSUANT TO CIVIL LOCAL RULE 79-S

DECLARATION OF MARK KLEIN
C-06-0672-VRW
                                                                    - 1 -

I, Mark Klein, declare under penalty of perjury that the following is true and correct:

1.      I am submitting this Declaration in support of Plaintiffs' Motion for a Preliminary Injunction.  I have personal knowledge of the facts stated herein, unless stated on information and belief, and if called upon to testify to those facts I could and would competently do so.

2.      For over 22 years I worked as a technician for AT&T Corporation ("AT&T"), first in New York and then in California.  I started working for AT&T in November 1981 as a Communications Technician.

3.      From January 1998 to October 2003, I worked as a Computer Network Associate III at an AT&T facility on Geary Street in San Francisco, CA.

4.      From October 2003 to May 2004 I worked as a Communications Technician at an AT&T facility at 611 Folsom St., San Francisco, CA (the "Folsom Street Facility").

5.      Previously, I worked as an AT&T Communications Technician from November 1981 to January 1998.  I was assigned to AT&T facilities in New York, New York (November 1981 to December 1990), White Plains, NY (December 1990 to March 1991), Pleasanton, CA (March 1991 to May 1993 and March 1994 to January 1998) and Point Reyes, CA (June 1993 to March 1994).

6.      I retired from AT&T in May 2004.

7.      AT&T Corp. (now a subsidiary of AT&T Inc.) maintains domestic telecommunications facilities over which millions of Americans' telephone and Internet communications pass every day.  These facilities allow for the transmission of interstate or foreign electronic voice and data communications by the aid of wire, fiber optic cable, or other like connection between the point of origin and the point of reception.

8.      Between 1998 and 2003 I worked in an AT&T office located on Geary Street in San Francisco as one of six Computer Network Associates in the office.  The site manager was a management-level technician with the title of Field Support Specialist (hereinafter referred to as FSS #1).  Two other FSS people (FSS #2 and FSS #3) also operated from this

1 office.

2     9.    During my service at the Geary Street facility, the office provided WorldNet

3 Internet service, international and domestic Voice Over IP (voice communications

4 transmitted over the Internet), and data transport service to the Asia/Pacific region.

5     10.    While I worked in the Geary Street facility in 2002, FSS #1 told me to expect a

6 visit from a National Security Agency ("NSA") agent. I and other technicians also received

7 an email from higher management advising us of the pending visit, and the email explicitly

8 mentioned the NSA. FSS #1 told me the NSA agent was to interview FSS #2 for a special

9 job. The NSA agent came and met with FSS #2. FSS #1 later confirmed to me that FSS #2

10 was working on the special job, and that it was at the Folsom Street Facility.

11     11.    In January 2003, I, along with others, toured the Folsom Street Facility. The

12 Folsom Street Facility consists of three floors of a building that was then operated by SBC

13 Communications, Inc. (now known as AT&T Inc.).

14     12.    While on the January 2003 tour, I saw a new room being built adjacent to the

15 4ESS switch room. The new room was near completion. I saw a workman apparently

16 working on the door lock for the room. I later learned that this new room being built was

17 referred to in AT&T documents as the "SG3 Secure Room" (hereinafter the "SG3 Secure

18 Room"). The SG3 Secure Room was room number 641A, and measures approximately 24

19 by 48 feet.

20     13.    The 4ESS switch room is a room that contains a 4ESS switch, a type of

21 electronic switching system that is used to direct long-distance telephone communications.

22 AT&T uses the 4ESS switch in this room to route the public's telephone calls that transit

23 through the Folsom Street Facility.

24     14.    FSS #2, the management-level technician whom the NSA cleared and

25 approved for the special job referenced above, was the person working to install equipment

26 in the SG3 Secure Room.

27     15.    In October 2003, the company transferred me to the AT&T Folsom Street

28 Facility to oversee the WorldNet Internet room, as a Communications Technician.

DECLARATION OF MARK KLEIN
C-06-0672-VRW
- 3 -

16.     In the Fall of 2003, FSS #1 told me that another NSA agent would again visit our office at Geary Street to talk to FSS #1 in order to get the latter's evaluation of FSS #3's suitability to perform the special job that FSS #2 had been doing.  The NSA agent did come and speak to FSS #1.  By January 2004, FSS #3 had taken over the special job as FSS #2 was forced to leave the company in a downsizing.

17.     The regular AT&T technician workforce was not allowed in the SG3 Secure Room.  To my knowledge, only employees cleared by the NSA were permitted to enter the SG3 Secure Room.  To gain entry to the SG3 Secure Room required both a physical key for the cylinder lock and a combination code number to be entered into an electronic keypad on the door.  To my knowledge, only FSS #2, and later FSS #3, had both the key and the combination code.  Regular technicians, including myself, had keys to every other door in the facility because we were often there working alone.  We were not given either a key or the combination code for the SG3 Secure Room.  On one occasion, when FSS #3 was retrieving a circuit card for me from the SG3 Secure Room, he invited me into the room with him for a couple of minutes while he retrieved the circuit card from a storage cabinet and showed me some poorly installed cable.

18.     The extremely limited access to the SG3 Secure Room was highlighted by one incident in 2003.  FSS #1 told me that the large industrial air conditioner in the SG3 Secure Room was leaking water through the floor and onto SBC's equipment downstairs, but FSS #2 was not immediately available to provide servicing, and the regular technicians had no access, so the semi-emergency continued for some days until FSS #2 arrived.

19.     AT&T provides dial-up and DSL Internet services to its customers through its WorldNet service.  The WorldNet Internet room included large routers, racks of modems for AT&T customers' WorldNet dial-in services, and other telecommunications equipment.  The equipment in the WorldNet Internet room was used to direct emails, web browsing requests and other electronic communications sent to or from the customers of AT&T's WorldNet Internet service.

20.     In the course of my employment, I was responsible for troubleshooting

DECLARATION OF MARK KLEIN
C-06-0672-VRW                                                                                                                  - 4 -

1  problems on the fiber optic circuits and installing new fiber optic circuits.

2       21.    The fiber optic cables used by AT&T typically consist of up to 96 optical

3  fibers, which are flexible thin glass fibers capable of transmitting communications through

4  light signals.

5       22.    Within the WorldNet Internet room, high speed fiber optic circuits connect to

6  routers for AT&T's WorldNet Internet service and are part of the AT&T WorldNet's

7  "Common Backbone" (CBB). The CBB comprises a number of major hub facilities, such as

8  the Folsom Street Facility, connected by a mesh of high-speed (OC3, OC12, OC48 and some

9  even higher speed) optical circuits.

10       23.    Unlike traditional copper wire circuits, which emit electromagnetic fields that

11  can be tapped into without disturbing the circuits, fiber optic circuits do not "leak" their light

12  signals. In order to monitor such communications, one has to physically cut into the fiber

13  and divert a portion of the light signal to access the information.

14       24.    A fiber optic circuit can be split using splitting equipment to divide the light

15  signal and to divert a portion of the signal into each of two fiber optic cables. While both

16  signals will have a reduced signal strength, after the split both signals still contain the same

17  information, effectively duplicating the communications that pass through the splitter.

18       25.    In the course of my employment, I reviewed two "Cut-In and Test Procedure"

19  documents dated January 13, 2003 and January 24, 2003, which instructed technicians on

20  how to connect the already in-service circuits to a "splitter cabinet," which diverted light

21  signals from the WorldNet Internet service's fiber optical circuits to the SG3 Secure Room.

22       26.    A true and correct copy of the "Cut-In and Test Procedure" documents are

23  attached hereto as Exhibits A and B. Exhibit A is the January 13, 2003 document, and

24  Exhibit B is the January 24, 2003 document.

25       27.    The light signals from the WorldNet Internet service's optical circuits were

26  split, with a portion of the light signal going through fiber optic cables into the SG3 Secure

27  Room. The AT&T location code of the "splitter cabinet" is 070177.04, which denotes the

28  7th floor, aisle 177 and bay 04.

DECLARATION OF MARK KLEIN
C-06-0672-VRW

- 5 -

1    28.    In the course of my employment, I reviewed a document entitled "Study Group

2    3, LGX/Splitter Wiring, San Francisco" dated December 10, 2002, authored by AT&T Labs'

3    consultant Mathew F. Casamassima.   A true and correct copy of this document is attached

4    hereto as Exhibit C.   This document described the connections from the SG3 Secure Room

5    on the 6th floor to the WorldNet Internet room on the 7th floor, and provided diagrams on

6    how the light signal was being split.

7    29.    The circuits that were listed in the "Cut-in and Test Procedure" document

8    dated January 24, 2003 are "Peering Links" that connect the WorldNet Internet network to

9    national and international Internet networks of non-AT&T telecommunications companies.

10    30.    The "Cut-In and Test Procedure" documents provided procedures to "cut-in"

11    AT&T's Peering Links to the splitter and hence to the SG3 Secure Room.

12    31.    Starting in February 2003, the "splitter cabinet" split (and diverted to the SG3

13    Secure Room) the light signals that contained the communications in transit to and from

14    AT&T's Peering Links with the following Internet networks and Internet exchange points:

15    ConXion, Verio, XO, Genuity, Qwest, PAIX, Allegiance, Abovenet, Global Crossing, C&W,

16    UUNET, Level 3, Sprint, Telia, PSINet, and MAE-West.

17    32.    MAE-West is an Internet nodal point and one of the largest "Internet exchange

18    points" in the United States.   PAIX, the Palo Alto Internet Exchange, is another significant

19    Internet exchange point.

20    33.    Internet exchange points are facilities at which large numbers of major Internet

21    service providers interconnect their equipment in order to facilitate the exchange of

22    communications among their respective networks.

23    34.    Through the "splitter cabinet," the content of all of the electronic voice and

24    data communications going across the Peering Links mentioned in paragraphs 29 to 31 was

25    transferred from the WorldNet Internet room's fiber optical circuits into the SG3 Secure

26    Room.

27    35.    The document "Study Group 3, LGX/Splitter Wiring, San Francisco" dated

28    December 10, 2002, listed the equipment installed in the SG3 Secure Room, including such

DECLARATION OF MARK KLEIN
C-06-0672-VRW                                                                              - 6 -

1   equipment as Sun servers and Juniper (M40e and M160) "backbone" routers. This list also

2   included a Narus STA 6400, which is a "Semantic Traffic Analyzer."

3       36.     In the course of my employment, I was required to connect new circuits to the

4   "splitter cabinet" and get them up and running. While working on a particularly difficult one

5   with another AT&T technician, I learned that other such "splitter cabinets" were being

6   installed in other cities, including Seattle, San Jose, Los Angeles and San Diego.

7

8       I declare under penalty of perjury under the laws of the United States that the

9   foregoing is true and correct.

10

11  DATED:  March 28, 2006

12

13                          _____

14                                  Mark Klein

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF MARK KLEIN
C-06-0672-VRW                                                        - 7 -

# EXHIBIT A

**PERSONAL INFORMATION REDACTED FROM THIS PAGE**



**Labs Connectivity & Net Services**

### *SIMS*
### *Splitter Cut-In and Test Procedure*

#### *Issue 2, 01/13/03*

*Author: Mathew F. Casamassima*

KLEIN A-1

Pages A-2 and A-3 redacted.

## PERSONAL INFORMATION REDACTED FROM THIS PAGE

### SIMS - Splitter Test and Cut-In Procedure
### Issue 2, 01/13/03
Mathew F. Casamassima,

## 1. *Procedure Overview*

A WMS Ticket will be issued by the AT&T Bridgeton Network Operation Center (NOC) to charge time for performing the work described in this procedure document. At some point prior to the splitter cut-in being performed your office will be contacted by the Bridgeton Network Operations Center (NOC) to confirm the WMS Ticket has been received. Bridgeton NOC personnel will again contact OSWF the night of the cut to begin coordination. The work described in the procedure will be supported, on-site, by an IP Field Support Specialist (FSS) from the Day Tech organization.

This procedure covers the steps required to insert optical splitters into select live Common Backbone (CBB) OC3, OC12 and OC48 optical circuits. The splitter insertion will be accomplished by removing existing optical cross-connects and installing new cross-connects all within the CBB LGX complex. The optical splitters will be contained in a standalone cabinet located in the proximity of the CBB LGX complex. The splitters will be pre-cabled by an EF&I vendor to the rear of a dedicated LGX bay (LLGX13) within the CBB LGX complex. A partial installation and test of cross-connects can be done prior to the actual splitter cut-in. This portion of the work can be done outside the CBB maintenance window. An IP FSS member of the Day Tech organization will contact OSWF to schedule the pre-cut portion of the work. Section 2 of this document will describe the pre-cut installation of cross-connects and the pre-cut testing of the new circuit path. The actual cut-in of the splitter will be done during the CBB maintenance window and will be closely coordinated with the Bridge NOC and will be supported, on-site, by an IP FSS member of the Day Tech organization. The actual splitter cut-in is described in Section 3 of this document.

The number of cross-connects required and the final path the circuit will take is dependant on the location of the affected LGX bays within the multiple line-ups of the CBB LGX complex. This procedure will describe all possible splitter cut-in circuit paths. The procedure will also describe the procedures for testing each possible circuit path.

### 1.1. How to Use this Procedure

This procedure document is quite long. It is not necessary to read this whole document to do the work. There are 4 possible LGX arrange that may encounter. By reading section 1.2 below, determine which LGX arrangement applies to the circuit you are working. Then, after reading the introductory paragraphs in Sections 2 and 3, go directly to the subsections within Sections 2 and 3 associated with the LGX arrangement you are dealing with.

### 1.2. LGX Definition and LGX-Arrangement:

*LGX Definition:* There are multiple LGX bays affected by this procedure. Within the CBB LGX complex LGX bays follow a specific naming convention (LLGX 1, LLGX2, LLGX3, LLGX4, ....). This naming convention is uniform across sites. Since this document is designed to cover all sites, this uniform naming convention will be used here. Site-specific engineering will use the LGX FIC code rather than the naming. Prior to the start of the work described here the local IP FSS will label the LGX bays with the naming as presented in this document. The following are generic definitions for the LGX bays affected by this procedure:

KLEIN A-4

Pages A-5 to A-43 redacted.

# EXHIBIT B

Pages B-1 to B-5 redacted.



Figure 5 - Arrangement 3 - Circuit Connectivity - Cut Night Measurements
Network Facing & Router Facing LGX in 1st Line-Up / Splitter Facing LGX in 2nd Line-Up
Overhead View of Bays (Applies to Circuits AGEC.671312, AGEC.622360, AGEC.622352, IVEC.517519, IVEC.578278, IVEC.502963, IVEC.547506, IVEC.509396, IVEC.597263, IVEC.502961, IVEC.502960 & IWEC.502947)

Note: (1) The number of CORE/Transmission LGXs in the circuit may vary from circuit to circuit. (2) This arrangement also applies to circuit AGEC.242541 except the Router facing LGX is LLGX 5.

KLEIN B-6

Pages B-7 to B-19 redacted.

| Priority | Peering Link | Ckt Type | ID | A/S Number | Circuit Comments | Router | Port | Circuit Engineering Change Order Issue Date | Circuit Engineering Change Complete Date (Requested) | Circuit Engineering Complete Date Actual | Splitter Pre-Test Date | Splitter Circuit Date In | Splitter Active Date | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Comain | OC-3 | AGEC-622352 | 4544 | | sflaat1ca | POS 1/0 | 1/21/2003 | 1/31/2003 | 1/22/2003 | 2/4/2003 | 2/6/2003 | | |
| 2 | Yaho | OC-12 | IVEC-517510 | 2914 | | sflaat1ca | POS 3/1 | 1/21/2003 | 1/31/2003 | 1/22/2003 | 2/4/2003 | 2/6/2003 | | |
| 3 | XO | OC-12 | IVEC-517717 | 2828 | | sflaat1ca | POS 3/2 | 1/22/2003 | 1/31/2003 | 1/22/2003 | 2/4/2003 | 2/6/2003 | | |
| 4 | Genuity | OC-12 | IVEC-502685 | | | sflaat1ca | POS 3/3 | 1/23/2003 | 1/31/2003 | 1/23/2003 | 2/4/2003 | 2/6/2003 | | |
| 5 | Qwest | OC-12 | IVEC-541608 | 209 | | sflaat1ca | POS 5/2 | 1/23/2003 | 1/31/2003 | 1/23/2003 | 2/4/2003 | 2/7/2003 | | |
| 6 | PAIX | OC-12 | nap | nap | | sflaat1ca | POS 8/0 | 1/23/2003 | 2/7/2003 | 1/23/2003 | 2/11/2003 | 2/13/2003 | | |
| 7 | Allegiance | OC-12 | IVEC-557285 | 2548 | | sflaat1ca | POS 8/1 | 1/23/2003 | 2/7/2003 | 2/7/2003 | 2/11/2003 | 2/13/2003 | | |
| 8 | Abovenet | OC-12 | IVEC-502561 | 6461 | | sflaat1ca | POS 8/2 | 1/23/2003 | 2/7/2003 | 1/24/2003 | 2/11/2003 | 2/13/2003 | | |
| 9 | Global Crossing | OC-12 | IVEC-536990 | 3549 | | sflaat1ca | POS 8/3 | 1/23/2003 | 2/7/2003 | 1/20/2003 | 2/11/2003 | 2/13/2003 | | |
| 10 | C&W | OC-48 | IVEC-502947 | 3561 | | sflaat1ca | POS 2/0 | 1/29/2003 | 2/14/2003 | 1/22/2003 | 2/18/2003 | 2/20/2003 | | |
| 11 | UUNET | OC-48 | IVEC-500433 | 701 | | sflaat1ca | POS 2/1 | 1/29/2003 | 2/14/2003 | 2/4/2003 | 2/18/2003 | 2/20/2003 | | |
| 12 | Level 3 | OC-48 | IWEC-502424 | 3356 | | sflaat1ca | POS 2/2 | 1/29/2003 | 2/14/2003 | 2/14/2003 | 2/18/2003 | 2/20/2003 | | |
| 13 | Sprint | OC-48 | IWEC-502428 | 1239 | | sflaat1ca | POS 3/0 | 1/29/2003 | 2/14/2003 | 2/14/2003 | 2/18/2003 | 2/20/2003 | | |
| 14 | Telia | OC-3 | AGEC-471212 | 1299 | | sflaat1ca | POS 1/0 | 2/21/2003 | | 2/21/2003 | 2/25/2003 | 2/27/2003 | | |
| 15 | PSINet | OC-3 | AGEC-622350 | 174 | | sflaat1ca | POS 0/1 | 2/21/2003 | | 2/21/2003 | 2/25/2003 | 2/27/2003 | | |
| 16 | Mae West | OC-3 | AGEC-243541 | nap | | sflaat1ca | POS 0/2 | 2/21/2003 | | 2/21/2003 | 2/26/2003 | 2/27/2003 | | |
| | | | | | | | POS 0/3 | | | | | | | |

KLEIN B-20

# EXHIBIT C

PERSONAL INFORMATION REDACTED FROM THIS PAGE



**Labs Connectivity & Net Services**

### *Study Group 3*
### *LGX/Splitter Wiring*
### *San Francisco*

*Issue 1, 12/10/02*

*Author: Mathew F. Casamassima*

KLEIN C-1

Page C-2 redacted.

## PERSONAL INFORMATION REDACTED FROM THIS PAGE

### *Study Group 3 LGX/Splitter Wiring, San Francisco*
### *Issue 1, 12/10/02*
Mathew F. Casamassima,

### Cabinet Naming:

| Equipment | Name |
|---|---|
| Splitter Cabinet | SPC |
| LGX Cabinet | LXC |
| Meta Data Cabinet | MDC |
| Network Management Cabinet | NMC |
| Data Filter Cabinet | DFC |
| Juniper M40E Router Cabinet | JC |
| Sun V880 Cabinet | S8C |
| Sun 3800 Cabinet | S3C |
| Sun Storedge Cabinet | SSC |
| ADC Chassis For LGX | 1xp |
| ADC Chassis For Splitter | spp |
| ADC Splitter Module | sp1 |
| ADC Bulkhead Module (LGX) | bk |
| Juniper M160 | jp |
| Juniper M40e | j4 |
| Narus STA 6400 | nr |
| Sun Fire V880/Narus Logic Server | s8 |
| Sun Fire 3800 | s3 |
| Sun StorEdge T3 | st |
| Sun StorEdge FC switch | sf |
| Cisco Catalyst 2924M-XL | cz |
| BayTech DS9 | b9 |
| BayTech RPC22 | bv |
| Brocade SilkWorm 2800 Switch | bz |
| Lucent LGX | LLGX |

AT&T Proprietary

KLEIN C-3

Pages C-4 to C-44
redacted.

**PERSONAL INFORMATION REDACTED FROM THIS PAGE**

### _Study Group 3 LGX/Splitter Wiring, San Francisco_
### _Issue 1, 12/10/02_
Mathew F. Casamassima,

#### 01lxp SG3 LGX Panel to Splitter Cabinet Connectivity

| 01lxp SG3 LGX Panel Port (In SG3 Room) | Splitter Cabinet Destination | SG3 LGX Designation Card Text | Splitter End Fiber Label Text |
|---|---|---|---|
| 1 | 01spp/Slot 3/port 14 | RR 070177.04 01spp/Slot 3/port 14 | FROM: 060903.01 01lxp/JK 1 TO: 01spp/Slot 3/port 14 |
| 2 | 01spp/Slot 3/port 13 | RR 070177.04 01spp/Slot 3/port 13 | FROM: 060903.01 01lxp/JK 2 TO: 01spp/Slot 3/port 13 |
| 3 | 01spp/Slot 3/port 16 | RR 070177.04 01spp/Slot 3/port 16 | FROM: 060903.01 01lxp/JK 3 TO: 01spp/Slot 3/port 16 |
| 4 | 01spp/Slot 3/port 15 | RR 070177.04 01spp/Slot 3/port 15 | FROM: 060903.01 01lxp/JK 4 TO: 01spp/Slot 3/port 15 |
| 5 | 01spp/Slot 3/port 18 | RR 070177.04 01spp/Slot 3/port 18 | FROM: 060903.01 01lxp/JK 5 TO: 01spp/Slot 3/port 18 |
| 6 | 01spp/Slot 3/port 17 | RR 070177.04 01spp/Slot 3/port 17 | FROM: 060903.01 01lxp/JK 6 TO: 01spp/Slot 3/port 17 |
| 7 | 01spp/Slot 4/port 20 | RR 070177.04 01spp/Slot 4/port 20 | FROM: 060903.01 01lxp/JK 7 TO: 01spp/Slot 3/port 20 |
| 8 | 01spp/Slot 4/port 19 | RR 070177.04 01spp/Slot 4/port 19 | FROM: 060903.01 01lxp/JK 8 TO: 01spp/Slot 3/port 19 |
| 9 | 01spp/Slot 4/port 22 | RR 070177.04 01spp/Slot 4/port 22 | FROM: 060903.01 01lxp/JK 9 TO: 01spp/Slot 3/port 22 |
| 10 | 01spp/Slot 4/port 21 | RR 0/0177.04 01spp/Slot 4/port 21 | FROM: 060903.01 01lxp/JK 10 TO: 01spp/Slot 3/port 21 |
| 11 | 01spp/Slot 4/port 24 | RR 070177.04 01spp/Slot 4/port 24 | FROM: 060903.01 01lxp/JK 11 TO: 01spp/Slot 3/port 24 |
| 12 | 01spp/Slot 4/port 23 | RR 070177.04 01spp/Slot 4/port 23 | FROM: 060903.01 01lxp/JK 12 TO: 01spp/Slot 3/port 23 |
| 13 | 01spp/Slot 5/port B2 | RR 070177.04 01spp/Slot 5/port B2 | FROM: 060903.01 01lxp/JK 13 TO:01spp/Slot 5/port B2 |
| 14 | 01spp/Slot 5/port A2 | RR 070177.04 01spp/Slot 5/port A2 | FROM: 060903.01 01lxp/JK 14 TO:01spp/Slot 5/port A2 |
| 15 | 01spp/Slot 6/port B2 | RR 070177.04 01spp/Slot 6/port B2 | FROM: 060903.01 01lxp/JK 15 TO:01spp/Slot 6/port B2 |
| 16 | 01spp/Slot 6/port A2 | RR 070177.04 01spp/Slot 6/port A2 | FROM: 060903.01 01lxp/JK 16 TO:01spp/Slot 6/port A2 |

AT&T Proprietary

KLEIN C-45

## PERSONAL INFORMATION REDACTED FROM THIS PAGE

*Study Group 3 LGX/Splitter Wiring, San Francisco*
*Issue 1, 12/10/02*
Mathew F. Casamassima,

# Splitter to SG3 LGX Connectivity

The Tables in this section give the
splitter to SG3 LGX connectivity
as shown with in the bounds of
this box.



AT&T Proprietary

KLEIN C-46

Pages C-47 to C-58 redacted.