STUART F. DELERY
Acting Assistant Attorney General
JOSEPH H. HUNT
Director, Federal Programs Branch
VINCENT M. GARVEY
Deputy Branch Director
ANTHONY J. COPPOLINO
Special Litigation Counsel
tony.coppolino@usdoj.gov
MARCIA BERMAN
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782
Fax: (202) 616-8460
*Attorneys for the Government Defendants*
*Sued in their Official Capacity*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CAROLYN JEWEL, *et al.*, | Case No. 3:08-cv-04373-JSW |
| Plaintiffs, | **GOVERNMENT DEFENDANTS'** |
| | **REPLY IN SUPPORT OF SECOND** |
| v. | **MOTION TO DISMISS AND** |
| | **FOR SUMMARY JUDGMENT** |
| NATIONAL SECURITY AGENCY, *et al.* | |
| Defendants. | Date:   December 14, 2012 |
| | Time:   9:00 a.m. |
| | Courtroom:  11 - 19th Floor |
| | Judge Jeffrey S. White |

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    FISA DOES NOT DISPLACE THE STATE SECRETS PRIVILEGE
      IN THIS CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Subsection 1806(f) Does Not Speak Directly to Displacing
            the Privilege Here . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    Legislative History Does Not Support Displacement of the
            Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.   THE STATE SECRETS PRIVILEGE REQUIRES DISMISSAL
      OF THIS CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.    This Case Cannot Proceed Based on Purportedly Non-Privileged
            Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 7

III.        CONGRESS HAS NOT WAIVED SOVEREIGN IMMUNITY FOR
            PLAINTIFFS' STATUTORY CLAIMS AGAINST THE GOVERNMENT
            DEFENDANTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*ACLU v. Barr*,
952 F.2d 457 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

*Al-Haramain Islamic Found. v. Obama*,
690 F.3d 1089 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3, 14

*Al-Haramain Islamic Foundation, Inc. v. Bush*,
507 F.3d 1190 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11, 12

*Clift v. United States*,
808 F. Supp. 101 (D. Conn. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Crater Corporation v. Lucent Technologies*,
255 F.3d 1361 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*DTM Research L.L.C. v. AT&T Corp.*,
245 F.3d 327 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*EEOC v. Peabody Western Coal Co.*,
610 F.3d 1070 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Ellsberg v. Mitchell*,
709 F.2d 51 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*El-Masri v. United States*,
479 F.3d 296 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Fitzgibbon v. CIA*,
911 F.2d 755 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Frost v. Perry*,
161 F.R.D. 434 (D. Nevada 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*Frost v. Perry*,
919 F. Supp. 1459 (D. Nevada 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7, 8

*General Dynamics Corp. v. United States*,
131 S. Ct. 1900 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

*Gutierrez v. Ada*,
528 U.S. 250 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*Halkin v. Helms*,
598 F.2d 1 (D.C. Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7, 10

*Hepting v. AT&T*,
439 F. Supp. 2d 974 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Hughes v. United States,*
953 F.2d 531 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Copley Press,*
518 F.3d 1022 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Sealed Case,*
310 F.3d 717 (For. Intel. Surv. Rev. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Sealed Case,*
494 F.3d 139 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Kasza v. Browner,*
133 F.3d 1159 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

*Miccosukee Tribe of Indians of Florida v. U.S. Army Corps of Engineers,*
619 F.3d 1289 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Miller v. Gammie,*
335 F.3d 889 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mohamed v. Jeppesen Dataplan, Inc.,*
614 F.3d 1070 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Monarch Assurance P.L.C. v. United States,*
244 F.3d 1356 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Oregon Natural Resources Council v. Thomas,*
92 F.3d 792 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Salisbury v. United States,*
690 F.2d 966 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Small v. United States,*
544 U.S. 385 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Sterling v. Tenet,*
416 F.3d 338 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Tenenbaum v. Simonini,*
372 F.3d 776 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Tenet v. Doe,*
544 U.S. 1 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Terkel v. AT&T Corp.,*
441 F. Supp. 2d 899 (N.D. Ill. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Totten v. United States,*
92 U.S. 105 (1875) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.,*
508 U.S. 439 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. El-Mezain,*
664 F.3d 467 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Hamide,*
914 F.2d 1147 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Novak,*
476 F.3d 1041 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Reynolds,*
345 U.S 1 (1953). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Zuckerbraun v. Gen. Dynamics Corp.,*
935 F.2d 544 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Statutes**

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

18 U.S.C. § 2707 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

18 U.S.C. § 2712 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

18 U.S.C. § 2520(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

50 U.S.C. § 401a(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

50 U.S.C. § 403(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

50 U.S.C. § 1806 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

50 U.S.C. § 1809 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14

50 U.S.C. § 1810 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

50 U.S.C. § 1825(a), (f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

50 U.S.C. § 1845(a), (f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Rules**

Fed. R. Civ. P. 56(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## __INTRODUCTION__

This lawsuit puts at issue alleged intelligence activities of the National Security Agency ("NSA") purportedly undertaken pursuant to presidential authorization since the terrorist attacks of September 11, 2001. Plaintiffs allege that the NSA engages in warrantless "dragnet" surveillance by collecting the content of millions of domestic communications, as well as communication transactional records.

For the past six years, the nation's most senior intelligence officials, in succeeding Administrations, have consistently advised this Court that litigation of plaintiffs' allegations would risk exceptional damage to national security, setting forth in detail the matters at issue. Renewed invocation of the state secrets privilege in this action by the Director of National Intelligence has undergone rigorous review within the Executive Branch under a process providing that privilege will only be asserted where necessary to protect against significant harm to national security. Contrary to plaintiffs' suggestion, in these circumstances dismissal would not constitute an abdication of judicial authority, but the exercise of judicial scrutiny of the privileged information at issue and the application of established law to protect compelling national security interests.

Plaintiffs' Opposition ("Opp.") to the Government's motion to dismiss and for summary judgment ("Gov. Br.") is built on a series of meritless propositions. First, plaintiffs wrongly assert that procedures set forth in subsection 1806(f) of the Foreign Intelligence Surveillance Act (FISA), 50 U.S.C. §1806(f), displace the privilege. Contrary to their argument, the procedures in that subsection apply only where electronic surveillance subject to the FISA is being used against someone already established as aggrieved. Second, plaintiffs argue, wholly in error, that Ninth Circuit precedent concerning the privilege has been effectively overruled by the Supreme Court and that, as a result, this Court may only consider a privilege assertion in response to specific discovery requests. Supreme Court and Ninth Circuit precedent are fully consistent and require dismissal of plaintiffs' claims. Finally, citing hearsay and speculation in media reports, plaintiffs wrongly contend that their case may proceed based on "non-privileged" evidence.

Plaintiffs' Opposition does not present a way forward, but a roadmap to why further proceedings would risk the disclosure of highly sensitive NSA sources and methods.

## ARGUMENT

## I. FISA DOES NOT DISPLACE THE STATE SECRETS PRIVILEGE IN THIS CASE.

From the outset of this litigation, plaintiffs have attempted to prevent application of the state secrets privilege to dismiss this case by arguing that the privilege has been displaced by § 1806(f) of the FISA, 50 U.S.C. § 1806(f). Neither the statutory text, nor judicial authority, nor legislative history supports plaintiffs' contention. *See* Gov. Br. (Dkt. 102) at 28-45.

### A. Subsection 1806(f) Does Not Speak Directly to Displacing the Privilege Here.

Plaintiffs concede that the standard for assessing their displacement theory is whether the statutory provision speaks directly to the particular common law at issue, Opp. at 8, but they misapprehend that standard. The issue is not whether § 1806(f) "speaks directly to the question of the admission of national security evidence." *Id.* The fact that § 1806(f) serves a similar purpose of protecting national security information in its realm does not mean it overrides application of the state secrets privilege in the circumstances presented here. The proper inquiry is whether the statute speaks directly to foreclosing an assertion of the privilege to protect against disclosure in litigation of whether alleged electronic surveillance has occurred. The Government does not contend that the statute must incant the words "state secrets privilege" or "proscribe" use of the privilege in order for displacement to be found, as plaintiffs contend. *Id.* at 10. But Congress' purpose to foreclose the Government from asserting privilege in the circumstances presented here must be evident from the terms of the statute.

Plaintiffs' contention that the "plain language" of § 1806(f) "applies to Plaintiffs' claims," Opp. at 2, is meritless. Plaintiffs' textual analysis (and that of Amici, People for the American Way, *see* Dkt. 118) rests on extracting one clause concerning discovery motions from one subsection of a statutory provision governing the use of evidence (*see* 50 U.S.C. § 1806). *See* Opp. at 3 (utilizing indents, line breaks, bracketed numbers and italics). The "rule against surplusage" cited by plaintiffs, *id.* at 5, does not mean that "every clause and word of a statute"

1   may be read out of context.  Viewed within its statutory framework, the "motion to discover

2   clause" in § 1806(f) reasonably applies to proceedings where evidence derived from FISA

3   electronic surveillance is being used against someone already established as aggrieved—not to

4   permit discovery into whether alleged surveillance has occurred.  Gov. Br. at 36-40.

5       Likewise, the phrase "notwithstanding any other law" in § 1806(f) does not speak directly to

6   supplanting the privilege.  Opp. at 4.  A "notwithstanding" clause works in tandem with the

7   substantive reach of the section it modifies.  It does not dispense with all other law, but signals

8   that the section overrides prior law that governs the same substantive matter.  *See United States*

9   *v. Novak*, 476 F.3d 1041, 1046-47 (9th Cir. 2007) (en banc) ("In examining statutes, we have not

10  . . . always accorded universal effect to the 'notwithstanding' language, standing alone.  Instead,

11  we have determined the reach of each such 'notwithstanding' clause by taking into account the

12  whole of the statutory context in which it appears.").[1]  Thus, the presence of this clause serves

13  only to focus on the question of whether § 1806(f) speaks directly to supplanting the privilege.[2]

14      Plaintiffs further contend that displacement of the privilege "makes sense given FISA's

15  statutory scheme as a whole."  Opp. at 4.  That is nowhere apparent.  Notably, plaintiffs do not

16  explain how § 1806(f) operates to limit the Executive Branch's ability to protect national

17  security information where the cause of action in the FISA for challenging alleged unlawful

18  electronic surveillance —50 U.S.C. §§ 1809, 1810—does not apply to the United States.[3]

19  Plaintiffs' reference to the interplay between § 1806(f) and other causes of action against the

20  United States authorized under 18 U.S.C. § 2712(a) is unavailing.  Opp. at 5.  Plaintiffs point to

---

22      [1] *See also Oregon Natural Resources Council v. Thomas*, 92 F.3d 792, 796 (9th Cir.

23  1996) ("We have repeatedly held that the phrase 'notwithstanding any other law' is not always
    construed literally."); *Miccosukee Tribe of Indians of Florida v. U.S. Army Corps of Engineers*,
    619 F.3d 1289, 1299 (11th Cir. 2010).

25      [2] The "notwithstanding" language in § 1806(f) was intended to prevent its procedures
    from being bypassed by an "inventive litigant" seeking to bring a motion for discovery under
26  some other rule or statutory provision.  *See* S. Rep. 95-701 at 63, 1978 U.S.C.C.A.N. 4032.

27      [3]  *See Al-Haramain Islamic Found. v. Obama*, 690 F.3d 1089, 1094-99 (9th Cir. 2012).

28  **Government Defendants' Reply in Support of Second Motion to Dismiss and For Summary Judgment**
    *Jewel et al. v. National Security Agency et al.*, Case No. 08-cv-4373-JSW          -3-

§ 2712(b)(4), which provides that, notwithstanding any other provision of law, the procedures set forth in FISA §§ 1806(f), 1825(f), and 1845(f) "shall be the exclusive means by which materials governed by those sections may be reviewed." 18 U.S.C. § 2712(b)(4).  Opp. at 5.  But subsection (b)(4) does not mention the Wiretap Act or SCA; rather, it links three FISA procedures for the review of materials to three corresponding FISA causes of action authorized by § 2712(a) (under 50 U.S.C. § 1806(a), 1825(a), 1845(a)).  Accordingly, this provision does not speak directly to whether

§ 1806(f) displaces the privilege to "adjudicate" non-FISA claims authorized by § 2712(a).[4]

### B.  Legislative History Does Not Support Displacement of the Privilege.

Plaintiffs discount legislative history that describes how § 1806(f) applies to the use of surveillance evidence against a person already acknowledged to be aggrieved, and to motions to discover whether evidence being used is tainted, and which also recognizes the Government's choice to protect intelligence sources and methods by foregoing use of surveillance evidence. Gov. Br. at 41.  Plaintiffs dismiss this history as "exemplary, not exclusive" and argue it pertains solely to the "use" aspects of the provision.  Opp.at 13.  But it is implausible that committee reports would discuss certain aspects of the provision at length, but disregard entirely a highly significant aspect of the legislation to foreclose other means for the Executive Branch to protect national security information.  The failure of the legislative history to do so weighs against finding that the provision operates in that manner.

Plaintiffs and Amici also seek to support their displacement theory by arguing that the final version § 1806(f) incorporated House-passed procedures that purportedly applied solely to

---

[4]  Plaintiffs and Amici spend little time discussing judicial authority because none supports their theory.  Plaintiffs dismiss persuasive contrary authority of the FISA Court of Review in *In re Sealed Case*, 310 F.3d 717 (For Intel. Surv. Rev. 2002).  *Cf. United States v. El-Mezain*, 664 F.3d 467, 569 (5th Cir. 2011) (referring to the *In re Sealed* case opinion as an "exhaustive analysis").  Plaintiffs also cite *ACLU v. Barr*, 952 F.2d 457 (D.C. Cir. 1991), for the proposition that § 1806(f) applies in civil litigation, Opp. at 6, where that court rejected the use of this provision to discover whether surveillance had occurred, and noted that a civil injunction action is not a motion to "discover or obtain" surveillance materials.  *See id*. at 468-69.

"civil" proceedings.  This theory is inaccurate and irrelevant.  The actual text of the House legislation did not distinguish between criminal and civil cases.[5]  And, in any event, the Government does not contend that § 1806(f) applies only in criminal settings—indeed, we cited an example of where § 1806(f) was applied to the use of surveillance evidence in a deportation proceeding.  *See United States v. Hamide*, 914 F.2d 1147 (9th Cir. 1990).  But the fact that §1806(f) may apply in civil litigation does not support plaintiffs' broad inference that it serves to displace the state secrets privilege because it also arises in civil proceedings.  Nothing in the House committee report suggests otherwise.[6]

Plaintiffs and Amici also ascribe great significance to the fact that the final version of § 1806(f) expanded the "motions to discover" clause in the Senate version (which authorized motions to "discover, obtain, or suppress evidence obtained or derived from electronic surveillance") to include language from the House provision that permitted motions "to discover or obtain applications or orders or other materials relating to electronic surveillance."  Opp. at 11-12.  But these few added words cannot be said to speak directly to displacing the Government's ability to assert a long-standing, well known privilege to protect national security information.  Indeed, the final conference report indicates that the Senate version was adopted

---

[5]  The text of the House legislation established separate procedures depending on whether the Government intended to use evidence against someone.  *See* H.R. 7308 § 106(f) and (g) as reprinted in H.R. Rep. No. 95-1283, Pt. 1, 95th Cong., 2d Sess., at 9-10 (submitted herewith).  The reason for the separate procedures was to grant more extensive review where the Government intended to use the evidence, but the House report does not distinguish these provisions based on civil or criminal proceedings.  *See* H.R. Rep. No. 95-1283, Pt. 1, at 91-94.

[6]  The House report also indicates that subsection (g) would have applied where the use of surveillance evidence was at issue.  *See* H.R. Rep. No. 95-1283 at 90-91 (indicating subsection (g) would apply to motions to "suppress" information, and that a court may order disclosure under this provision "to the person against whom the evidence is to be introduced.").  The House report also indicates that, where the need to determine legality of surveillance may arise "incident to discovery in a civil trial," the court should grant the discovery motion only in accordance with the requirements of law" which, the report says, would include law "respecting civil discovery."  *See id.* at 93 (citing FOIA and "other defenses against disclosure").  This suggests that the disclosure of information in civil proceedings would be governed by evidentiary privileges such as the state secrets privilege.

with only technical changes.  *See* 1978 U.S.C.C.A.N 4061.

There is, in short, no basis on which to find that the privilege is displaced here.  The Government has shown that proceeding under § 1806(f) would inherently risk disclosure of properly privileged information, *see* Gov. Br. at 45-47, and the Court should reject plaintiffs' invitation to do so.

## II.   THE STATE SECRETS PRIVILEGE REQUIRES DISMISSAL OF THIS CASE.

Plaintiffs also present a series of erroneous contentions that the state secrets privilege does not require dismissal at this stage.  To begin with, plaintiffs' reading of *General Dynamics Corp. v. United States*, 131 S. Ct. 1900 (2011), as *sub silentio* overruling decades of state secrets privilege jurisprudence in the circuit courts, is specious.  Opp. at 14-16.  *General Dynamics* was a government-contracting dispute arising out of a fixed-price contract awarded by the Navy to defense contractors to build the A-12 Avenger stealth aircraft.  Following cost overruns and delays, the Navy terminated the contract for default and sought the return of progress payments, and the contractors claimed as a defense that the Government failed to share its "superior knowledge" about stealth aircraft.  During the litigation, the Navy asserted the state secrets privilege to bar discovery into certain aspects of stealth technology.  The Supreme Court held that where liability depends on the validity of the superior knowledge defense, and where the state secrets privilege bars full litigation of that defense, the proper remedy was to leave the parties where they were before the lawsuit.  131 S. Ct. at 1907.  The Court based its holding on dismissals of cases involving government espionage contract disputes—*Totten v. United States*, 92 U.S. 105 (1875), and *Tenet v. Doe*, 544 U.S. 1 (2005)—and the unfairness of allowing the Government's claim to proceed but not the contractors' defense.  131 S. Ct. at 1906-07.

The holding in *General Dynamics* is limited to the consequences of the use of the state secrets privilege "only where it precludes a valid defense in Government-contracting disputes . . . ."  *Id.* at 1910.  The Court did not opine on the consequences of the privilege in non-contracting disputes, and certainly did not "ma[k]e clear" that those cases were "error."  Opp. at 15.  *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070 (9th Cir. 2010), and other Ninth

Circuit cases are fully consistent with *General Dynamics*' recognition of the need to bar litigation, rather than require or risk the disclosure of privileged information.[7]

### A.  This Case Cannot Proceed Based on Purportedly Non-Privileged Information.

Plaintiffs also assert that sufficient non-privileged information exists on which their claims may proceed to the discovery stage, citing an array of media reports, book excerpts and limited statements by Government officials.  *See* Pls. "Summary of Evidence" (SOE).[8]  But this proposition is entirely unfounded.  While "'whenever possible, sensitive information must be disentangled from nonsensitive information to allow for the release of the latter,'" *Jeppensen* 614 F.3d at 1082, such a course is not appropriate where "as a practical matter, secret and nonsecret information cannot be separated" and "evidence or areas of questioning which press so closely upon highly sensitive material . . . create a high risk of inadvertent or indirect disclosures.'" *Id*. This is just such a case.  Everything plaintiffs claim to be "non-privileged" *concerns* the subject areas of the privilege assertion—whether the NSA engaged in alleged activities that applied to the plaintiffs.  The speculation and hearsay plaintiffs cite is little more than allegations that would be subject to exacting adversarial proceedings in order to adduce actual proof as to what may be true, partly true, or entirely false.  And it is this very process that will inherently risk or require the disclosure of highly sensitive intelligence sources and methods.  *See Jeppesen*, 614 F.3d at 1088-89 (discussing plaintiffs' incentive to probe into state secrets).[9]

---

[7]   *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (district court cannot find circuit panel decision is implicitly overruled unless higher court decision undercuts its theory and reasoning in such a way that the cases are clearly irreconcilable).

[8]   *See* Government Defendants' Objections to Summary of Evidence and Judicial Notice.

[9]   The authority on which plaintiffs' rely (Opp. at 18) is inapposite.  In *Halkin v. Helms*, 598 F.2d 1 (D.C. Cir. 1978), plaintiffs were not granted discovery; indeed they objected where only three interrogatories written by the district court were allowed.  *Id*. at 5-7.  The D.C. Circuit ordered dismissal where the privilege foreclosed proof of standing despite extensive publicly available information about NSA activities.  *See* 598 F.2d at 11.  Likewise, in *Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998), the privilege was upheld after a single interrogatory was propounded, *see Frost v. Perry*, 161 F.R.D. 434 (D. Nevada 1995), and, before any further discovery, the district court denied motions to compel and dismissed the case.  *Frost v. Perry*,

Moreover, nothing in plaintiffs' non-privileged "evidence" undercuts the Government's privilege assertion and justifies further discovery proceedings. The large majority of plaintiffs' exhibits are media reports and book excerpts, often citing anonymous sources. Aside from being double hearsay, this material does not constitute disclosures by the Executive Branch and, thus, cannot serve to undercut the Government's ability to protect national security information.[10] None of the cited statements purportedly made by Executive Branch officials disclose classified activities or information subject to the Government's privilege assertion, but at most constitute limited public statements, typically in connection with oversight investigations. For example, plaintiffs cite at length a 2010 Inspector General Report on the President's Surveillance Program (also cited in the DNI's state secrets privilege assertion). *See* SOE at 2-4; 30, 32-38 & Pls. Exh. 33; Public DNI Decl. ¶ 24, n.2. But, notably, this report indicates that, other than the existence of the publicly acknowledged "Terrorist Surveillance Program," certain other intelligence activities authorized by the President in the same order after the 9/11 attacks remain highly classified. *See* Pls. Exh. 33 at 5-6, 30-31. Thus, information on which plaintiffs seeks to rely itself demonstrates that intelligence activities remain properly classified.

In addition, nothing in the plaintiffs' submission, including the Klein and Marcus

---

919 F. Supp. 1459 (D. Nevada 1996). In *Clift v. United States*, 808 F. Supp. 101 (D. Conn. 1991), the district court barred discovery on remand, rejected plaintiffs' prima face case based on limited public information, and dismissed the case based on the state secrets privilege. Other cases cited by plaintiffs are also inapposite. *See Crater Corporation v. Lucent Technologies*, 255 F.3d 1361 (Fed. Cir. 2001) and *DTM Research L.L.C. v. AT&T Corp.*, 245 F.3d 327 (4th Cir. 2001) (in suit between private parties, state secrets privilege was upheld, and particular claims at issue proceeded on matters not involving government actions or privileged information); *Monarch Assurance P.L.C. v. United States*, 244 F.3d 1356 (Fed. Cir. 2001) (discovery barred on issues of privilege and as to government witnesses).

[10] *See Terkel v. AT&T Corp.*, 441 F. Supp. 2d 899, 915 (N.D. Ill. 2006) (declining to rely on media reports concerning alleged NSA activities, noting that a "disclosure must be both official and public for the fact at issue to be considered a matter of public knowledge for FOIA purposes."); *Hepting v. AT&T*, 439 F. Supp. 2d 974, 990-91 (N.D. Cal. 2006) (declining to rely on media reports, noting that simply because statements have been publicly made "does not mean that the truth of those statements is a matter of public knowledge and that verification of the statement is harmless."). *See also Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990).

Declarations, establishes that plaintiffs have suffered a *personal* injury through the collection of their communications, but merely set forth speculation that certain communications transiting AT&T facilities were collected by the Government.   Likewise, nothing in plaintiffs' submission establishes that the NSA has collected the content of millions of domestic communications or communication records, including that of plaintiffs.   In particular, plaintiffs' assertion that statements by Executive Branch officials[11] or Members of Congress[12] purport to disclose the alleged records collection activity is simply wrong.   Also incorrect is the assertion that the Government has disclosed whether particular telecommunications carriers have assisted the NSA in any alleged activity.   For example, certain statements cited by plaintiffs were made in connection with urging Congress to *protect* that information through the enactment of the FISA Act Amendments of 2008, which barred a cause of action against specific telecommunication

---

[11] Plaintiffs cite several statements by former Executive branch officials out of context, in particular omitting stated reservations that seek to protect classified information.  For example, plaintiffs assert that then "Homeland Security Secretary Michael Chertoff confirmed that the government has employed 'data-mining,'" *see* SOE at 24, but the report cited actually states that Mr. Chertoff refused to discuss how a highly classified program works.  Pls. Ex. 69 at 1753. Likewise a statement by then-DNI McConnell that communications records provide a "process for how you would find something you might be looking for. . . [t]hink of it as a roadmap" does not disclose  classified activities.  *See* Pls. Ex. 98 at 3209.  Another statement by Mr. McConnell concerning the collection of information in a database likewise did not disclose classified activities.  *See* SOE at 16, Ex. 98 at 3198 and SOE at 14, Ex. 98 at 3220.  A statement by former Attorney General Gonzales that information is collected, retained and disseminated, concerned minimization procedures and disclosed no classified activity.  *See id*. citing Ex. 104 at 3722. Another statement of Mr. Gonzales cited by plaintiffs concerning alleged business records collection, *see* SOE at 21, Ex. 82 at 2745, omits the very first sentence in which Attorney General states that "[t]here has been no confirmation about any details relating to" a *USA Today* story concerning the alleged activity.

[12]  *See* Pls. Ex. 83 at 2749-50; Pls. Ex. 87 at 2800  (Senator Pat Roberts and Bill Frist clarify they are not commenting on classified program); Pls. Ex. 90 at 2843 (Rep. Jane Harman makes general reference to program concerning "*some* phone records" but declines to comment further on classified matters).  In any event, statements by Members of Congress cannot abrogate the Executive Branch's decision to protect national security information.  *Terkel*, 441 F. Supp. 2d at 914 (declining to find that congressional statements undermine the state secrets privilege); *see also Salisbury v. United States*, 690 F.2d 966, 971 (D.C. Cir. 1982) (discussions by Congress of NSA's methods generally "cannot be equated with disclosure by the agency itself of its methods of information gathering.").

---

providers brought by these plaintiffs in the *Hepting* action. *See* SOE at 25 and Pls. Ex. 28, 98 (discussing need to protect identities of private entities who assist the intelligence community).[13] Finally, plaintiffs do not establishes whether any alleged activity, if it existed, is ongoing.[14]

In short, plaintiffs' submission does not establish a prima facie case based on non-privileged information; they still must ascertain actual facts to establish their prima facie case and sustain their ultimate burden of proof. The declaration plaintiffs submit pursuant to Fed. R. Civ. P. 56(d) acknowledges as much by describing the discovery they would seek to prove their claims. This declaration is a roadmap as to why further proceedings would risk or require the disclosure of state secrets.[15] Indeed, the very goal of this discovery is to obtain "evidence regarding the nature and scope of the Government's surveillance program." Cohn Decl. ¶ 20.[16]

---

[13] Speculation by the district court about alleged carrier assistance in the *Hepting* case (Opp. at 26) and was superceded by Congressional action barring that litigation and foreclosing the disclosure of such information. *See* Gov. Br. at 23. *Hepting* serves as an example of how courts should not proceed when faced with a state secrets privilege assertion.

[14] For this proposition, plaintiffs cite statements concerning the transition of the Terrorist Surveillance Program—which they do not challenge— to FISA authority in January 2007, as well as media reports concerning the FISA Amendments of 2008—also not challenged here. *See* SOE at 42-43; *see also id.* at 40. The 2010 Inspector General report also indicates that certain classified activities authorized by the President after 9/11 in the same order have been transitioned to authority of the FISA, again not challenged here. *See* Pls. Ex. 33 at 30-31.

[15] This includes depositions of current and former intelligence officials; discovery from the named sources in the published reports in plaintiffs' summary of evidence regarding those sources' personal knowledge of published or unpublished information or their discussions with or knowledge of other sources of information; attempts to obtain discovery from unnamed sources, quoted in news reports; discovery of whether their telecommunications carriers facilitated the interception and disclosure of the communications and communications records of the plaintiffs, including depositions and onsite inspections of an AT&T's facility in San Francisco and other AT&T facilities. *See* Declaration of Cindy A. Cohn (Dkt. 114) ¶¶ 7-19.

[16] Plaintiffs acknowledge that classified information is at risk of disclosure in discovery by suggesting that they be granted security clearances. Cohn Decl. ¶ 5. But that course is also plainly contrary to the state secrets doctrine. *See Sterling v. Tenet*, 416 F.3d 338, 348 (4th Cir. 2005); *Ellsberg v. Mitchell*, 709 F.2d 51, 61 (D.C. Cir. 1983); *Halkin v. Helms*, 598 F.2d 1, 7 (D.C. Cir. 1978) (rejecting clearance of private counsel in state secrets privilege cases). While plaintiffs cite the *Al-Haramain* litigation as precedent for this option, *see* Cohn Decl. ¶ 5 & n.1, the Government declined to grant any access to classified information in that case, as it would

---

As the foregoing should indicate, all of the circumstances supporting dismissal under the state secrets doctrine apply.  This case may be dismissed on the ground that  its very subject matter constitutes a state secret, *Jeppesen*, 614 F.3d at 1077-79, because this lawsuit is about whether NSA engaged in certain classified activities and applied them to the plaintiffs' communications.  Similarly, dismissal is appropriate because properly privileged information concerning NSA operations is directly at risk of disclosure and cannot be extricated from purportedly non-privileged information.  *Id.* at 1087-89.  In addition, plaintiffs cannot establish their standing as a factual matter at the summary judgment stage without actually proving that the alleged NSA activities occurred with the assistance of particular telecommunications providers and that they were personally subject to them.  *See Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190, 1204-05 (9th Cir. 2007) (state secrets privilege forecloses proof of standing absent FISA displacement).  Likewise, as shown above, plaintiffs' assertion that they can establish a prima facie case without risking or requiring the disclosure of privileged information cannot be credited.  Lastly, any attempt to present a valid defense (including by the individual capacity defendants) would risk the disclosure of state secrets.  *Jeppesen*, 614 F.3d at 1083.

Plaintiffs' effort to foreclose dismissal on these grounds is meritless.  Contrary to their contention that the Government has not demonstrated why further proceedings would create an unjustifiable risk of disclosure, Opp. at 30, the Government has submitted detailed classified declarations that explain precisely the risks at stake.  Also contrary to plaintiffs' contention, the Government is not required to prove that defendants would prevail on their defense in order for the case to be dismissed.  Opp. at 28-29.[17]  Here, the risk of proceeding alone warrants dismissal,

---

here, and any order compelling such access would be subject to interlocutory appeal.  *See In re Copley Press*, 518 F.3d 1022 (9th Cir. 2008); 50 U.S.C. § 1806(h).

[17]  Plaintiffs cite a D.C. Circuit case for the proposition that the Court would have to decide that any privileged information proves a meritorious dispositive defense before a claim may be dismissed on the ground that privileged information was needed for a valid defense.  Opp. at 28-29 (citing *In re Sealed Case*, 494 F.3d 139, 151 (D.C. Cir. 2007)).  The Ninth Circuit has not adopted that analysis.  *See Jeppesen*, 614 F.3d at 1083 (citing *In re Sealed Case* only for

along with plaintiffs' inability to establish standing or prove their claims.

The Government has also explained, however, why valid defenses could not be presented without privileged information. For example, to demonstrate that plaintiffs' alleged content dragnet did not occur under the TSP or otherwise, NSA would have to show what it has or has not done. Gov. Br. at 22. Similarly, any defense against the claim that NSA has collected communication records from particular telecommunications carriers would require disclosure of whether or not this allegation is true and whether it applied to plaintiffs. *Id*. Also, assuming plaintiffs' standing could be established, addressing particular elements of each claim would risk or require the disclosure of whether and how sources and methods were utilized. *Id*. at 26-27. Lastly, any defense to plaintiffs' claims for prospective relief would have to address whether any challenged activity, if it occurred, is ongoing. *See id*. at 28. Thus, in cases where privileged information concerns the very existence of an alleged activity and plaintiffs' standing, any attempt to litigate the merits of defenses would inherently reveal state secrets.

The judgment of the Director of National Intelligence as to the harm to national security at stake in this case is entitled to the "utmost" deference by this Court. *Kasza,* 133F.3d at 1166 (quoting *United States v. Reynolds*, 345 U.S. 1, 10 (1953)).[18] While dismissal may be considered a harsh result, the "results are harsh in either direction," and the "state secrets doctrine finds the greater public good—and ultimately less harsh remedy" to be dismissal. *Kasza*, 133 F.3d at 1166-67.

---

the proposition that summary judgment may be granted for the defendant if the state secrets privilege deprives the defendant of information that would otherwise give it a valid defense); *Al-Haramain*, 507 F.3d at 1204 (citing *In re Sealed Case* only for the proposition that once the state secrets privilege is found to exist, it cannot be compromised by a showing of need on the part of the party seeking the information). No other circuit has adopted the approach described in *In re Sealed Case* concerning the "valid defense" ground for dismissal. *See In re Sealed Case*, 494 F.3d at 154, 156 (Brown, J., concurring and dissenting); *see also El-Masri v. United States*, 479 F.3d 296, 309-10 (4th Cir. 2007) (inability to *present* defense, not whether defense is dispositive, forecloses proceeding); *Tenenbaum v. Simonini*, 372 F.3d 776, 777 (6th Cir. 2004); *Zuckerbraun v. Gen. Dynamics Corp.*, 935 F.2d 544, 547 (2d Cir. 1991).

[18]   The DNI may assert privilege under *Reynolds* as the statutory head of the U.S. Intelligence Community, 50 U.S.C.§ 403(b)(1), which includes the NSA, *id*.§ 401a(4).

### III.     CONGRESS HAS NOT WAIVED SOVEREIGN IMMUNITY FOR PLAINTIFFS' STATUTORY CLAIMS AGAINST THE GOVERNMENT DEFENDANTS.

As set forth in our opening motion, the Court may narrow application of the state secrets privilege in this case by dismissing plaintiffs' statutory claims against the Government Defendants on sovereign immunity grounds.  Plaintiffs concede that, to succeed on their statutory damages claims, Congress must have expressly waived sovereign immunity for those claims in 18 U.S.C. § 2712.  However, that statute permits actions against the United States to recover money damages for the willful, unauthorized use and disclosure of information obtained from electronic surveillance, not its mere collection.  Plaintiffs do not dispute that their suit is limited to the latter, and so § 2712 does not waive sovereign immunity for it.  Gov. Br. at 5-9.

Plaintiffs argue that § 2712's use of the phrase "any willful violation" of the Wiretap Act or the Stored Communications Act precludes our argument that the waiver extends only to willful use or disclosure violations of those acts.  But the Supreme Court has "[o]ver and over . . . stressed that "[i]n expounding a statute, [a court] must not be guided by a single sentence or member of a sentence, but [must] look to the provisions of the whole law, and to its object and policy." *United States Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (internal quotations and citation omitted).  "Statutory construction 'is a holistic endeavor'" that, "at a minimum, must account for" a statute's full text, structure, subject matter, and purpose. *Id.* (citation omitted).  Indeed, numerous cases have construed the word "any"—on which plaintiffs rely here—more narrowly in light of a statute's context, purpose, and legislative history. *See, e.g., Small v. United States*, 544 U.S. 385, 388 (2005) (holding that statutory phrase "convicted in any court" does not include a conviction entered in a foreign court); *Gutierrez v. Ada*, 528 U.S. 250, 254-57 (2000) (phrase "a majority of votes cast in any election" refers only to votes cast for Governor and Lieutenant Governor based on surrounding statutory provisions). [19]

---

[19]  In response to our argument that an examination of the section of the Patriot Act in which § 2712 was enacted, § 223, shows that Congress intended to limit the waiver of sovereign immunity to willful use or disclosure violations, plaintiffs point to § 2712(b)(4).  As explained above, that provision, which was not enacted as part of § 223, provides that "the procedures set

Plaintiffs' response to § 223's legislative history is to claim, without any support, that the history shows that waiving sovereign immunity for disclosure claims was just *one* of Congress's purposes. Opp. at 33. Plaintiffs point to no legislative history showing a congressional purpose to waive immunity for collection claims, and the history instead shows that Congress was focused exclusively on preventing the use and disclosure of information obtained by electronic surveillance. Gov. Br. at 8-9. Similarly unavailing is plaintiffs' reliance on a DOJ manual. Opp. at 33 n.9. The portion they quote relates to liability of individual officers or employees of the United States under 18 U.S.C. § 2707, not to the United States's liability under § 2712.[20]

Plaintiffs cannot rely on § 702 of the Administrative Procedure Act or the *Larson* doctrine for a waiver of sovereign immunity for their statutory claims for equitable relief. Gov. Br. at 10-14. Section 702 waives sovereign immunity except when another statute limits judicial review, or when another statute "that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. Whatever the reach of § 2712 (which the parties dispute), it is a statute that grants consent to suit (its title is "Civil actions against the United States"), as plaintiffs admit. Opp. at 40.[21] And by authorizing monetary damages only, it impliedly forbids the equitable relief plaintiffs seek. *See* Gov. Br. at 11. Remarkably, plaintiffs rely in their opposition on § 2712(d), which provides that an action under § 2712 shall be the exclusive remedy against the United States for any claims "within the purview" of § 2712 – a provision

---

forth in sections 106(f), 305(g), or 405(f) of the Foreign Intelligence Surveillance Act . . . shall be the exclusive means by which materials governed by those sections may be reviewed." It does not "direct[]" that section 106(f) (codified at 50 U.S.C. § 1806(f)) be used "to determine the legality of the surveillance in the Wiretap Act and SCA," Opp. at 32; indeed, it says nothing at all about the Wiretap Act or the SCA, or about the application of these FISA sections to claims for violations of the Wiretap Act or the SCA.

[20] Plaintiffs' fail in their attempt to divorce § 2712 from the Ninth Circuit's statement in *Al-Haramain*, 690 F.3d at 1096-97 (9th Cir. 2012), that "[u]nder this scheme, Al–Haramain can bring a suit for damages against the United States for *use* of the collected information, but cannot bring suit against the government for collection of the information itself." The scheme to which the court referred was "[s]ection 1806(f), combined with 18 U.S.C. § 2712." *Id.*

[21] To the extent that § 2712 does not grant consent to suit for plaintiffs' FISA claim, brought under 50 U.S.C. § 1809, such claim fails on the merits under *Al-Haramain*. *See Al-Haramain*, 690 F.3d at 1094-99; Gov. Br. at 7 & n.5.

that comes close to expressly forbidding remedies not delineated in § 2712. Plaintiffs' argument that only damages claims, not equitable relief claims, are "within the purview" of § 2712, and thus § 2712 does not forbid equitable relief claims, is circular. Regarding 18 U.S.C. §§ 2520(a), 2707(a), even if those statutes are not grants of consent to suit, they are limitations on judicial review under the first exception under § 702. *See Hughes v. United States*, 953 F.2d 531, 537 (9th Cir. 1992).

Plaintiffs label as "nonsense" our argument that Congress intended § 702 to provide the waiver of sovereign immunity for equitable relief claims, subject to the limitations therein, instead of the complicated legal fictions that allowed suit, such as the *Larson* doctrine. Opp. at 36. But plaintiffs fail to respond to the clear legislative history on this point (*see* Gov. Br. at 12-13); ignore the Ninth Circuit's clear statement that, although it followed the *Larson ultra vires* legal fiction prior to the APA's enactment, federal courts have since looked to § 702 to serve the purposes of legal fictions in cases against federal officers, *see, e.g.*, *EEOC v. Peabody Western Coal Co.*, 610 F.3d 1070, 1085 (9th Cir. 2010); and ignore similar case law from other circuits. Gov. Br. at 13. And even if *Larson* were still viable, it would not apply here. *Id*. at 13-14.

## CONCLUSION

For the foregoing reasons, and those set forth in the Government's opening brief, this action should be dismissed as to all claims against all defendants.

October 19, 2012                Respectfully Submitted,

                                STUART F. DELERY
                                Acting Assistant Attorney General

                                JOSEPH H. HUNT
                                Director, Federal Programs Branch

                                VINCENT M. GARVEY
                                Deputy Branch Director

                                ____/s/ Anthony J. Coppolino____
                                ANTHONY J. COPPOLINO
                                Special Litigation Counsel
                                tony.coppolino@usdoj.gov

                                __/s/ Marcia Berman_____
                                MARCIA BERMAN
                                Senior Trial Counsel

U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-4782
Fax: (202) 616-8460

*Attorneys for the Official Capacity Government Defendants*