PAGES 1 – 112

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JEFFREY S. WHITE

CAROLYN JEWEL, ET AL.,            )
                                  )
          PLAINTIFFS,             )
                                  )
  VS.                             ) NO. C 08-4373 JSW
                                  )
NATIONAL SECURITY AGENCY, ET AL., )
                                  )  SAN FRANCISCO, CALIFORNIA
          DEFENDANTS.             )  FRIDAY
                                  )  DECEMBER 14, 2014
_____)

VIRGINIA SHUBERT, ET AL.,         )
                                  )
          PLAINTIFFS,             )
                                  )
  VS.                             )
                                  )
BARACK OBAMA, ET AL.,             )
                                  )
          DEFENDANTS.             )
_____)


**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**FOR JEWEL PLAINTIFFS**    LAW OFFICE OF RICHARD R. WIEBE
                            ONE CALIFORNIA STREET, SUITE 900
                            SAN FRANCISCO, CALIFORNIA  94111
                       **BY:  RICHARD R. WIEBE, ESQUIRE**

(FURTHER APPEARANCES ON FOLLOWING PAGE)



*REPORTED BY:  JOAN MARIE COLUMBINI, CSR 5435, RPR*
*              OFFICIAL COURT REPORTER, U.S. DISTRICT COURT*

**APPEARANCES (CONTINUED):**

FOR JEWEL PLAINTIFFS    ELECTRONIC FRONTIER FOUNDATION
                                454 SHOTWELL STREET
                                SAN FRANCISCO, CALIFORNIA  94110
                 BY:  **KURT B. OPSAHL, ESQUIRE**
                      **CINDY COHN, ESQUIRE**


                                THE MOORE LAW GROUP
                                228 HAMILTON AVENUE
                                THIRD FLOOR
                                PALO ALTO, CALIFORNIA  94301
                 BY:  **THOMAS E. MOORE, III, ESQUIRE**


FOR SHUBERT PLAINTIFFS   EMERY, CELLI, BRINCKERHOFF & ABADY
                                75 ROCKEFELLER PLAZA
                                NEW YORK, NEW YORK 10019
                 BY:  **ADAM R. PULVER, ESQUIRE**
                      **MATTHEW BRINCKERHOFF, ESQUIRE**


FOR DEFENDANTS          UNITED STATES DEPARTMENT OF JUSTICE
                                  CIVIL DIVISION
                                20 MASSACHUSETTS AVENUE NW
                                WASHINGTON, DC  20530
                 BY:  **ANTHONY J. COPPOLINO**
                          **SPECIAL LITIGATION COUNSEL**
                      **MARCIA BERMAN**
                        **SENIOR COUNSEL**

1                    PROCEEDINGS; FRIDAY, DECEMBER 14, 2012

2

3             THE CLERK:  CALLING CASE NO. C 07-693, VIRGINIA

4    SHUBERT, ET AL. VERSUS BARACK OBAMA, ET AL., AND CASE NO.

5    C 08-4373, CAROLYN JEWEL, ET AL. VERSUS NATIONAL SECURITY

6    AGENCY, ET AL.

7             COUNSEL, PLEASE STEP FORWARD TO THE PODIUMS AND STATE

8    YOUR APPEARANCES.

9             MR. WIEBE:  GOOD MORNING, YOUR HONOR.  RICHARD WIEBE

10   FOR THE JEWEL PLAINTIFFS.

11            THE COURT:  GOOD MORNING.

12            MR. COPPOLINO:  GOOD MORNING, YOUR HONOR.  I AM

13   ANTHONY COPPOLINO WITH THE DEPARTMENT OF JUSTICE, CIVIL

14   DIVISION.  I REPRESENT THE GOVERNMENT DEFENDANTS IN THIS CASE

15   WHO WERE SUED IN THEIR OFFICIAL CAPACITY.

16            THE COURT:  GOOD MORNING.

17            MS. BERMAN:  GOOD MORNING, YOUR HONOR.  MARCIA BERMAN

18   ALSO WITH THE DEPARTMENT OF JUSTICE FOR THE GOVERNMENT

19   DEFENDANTS.

20            THE COURT:  GOOD MORNING.

21            MR. BRINCKERHOFF:  GOOD MORNING, JUDGE, MATTHEW

22   BRINCKERHOFF ON BEHALF --

23            THE COURT:  PLEASE DON'T CALL ME JUDGE.  CALL ME YOUR

24   HONOR OR REFER TO ME AS THIS COURT.

25            MR. BRINCKERHOFF:  GOOD MORNING, YOUR HONOR.  MATTHEW

```
 1   BRINCKERHOFF ON BEHALF OF THE SHUBERT PLAINTIFFS.

 2              THE COURT:  GOOD MORNING.

 3         MR. MOORE:  GOOD MORNING, YOUR HONOR.  TOM MOORE

 4   APPEARING ON BEHALF OF THE PLAINTIFF JEWEL.

 5              THE COURT:  GOOD MORNING.

 6         MS. COHN:  GOOD MORNING, YOUR HONOR.  CINDY COHN

 7   APPEARING ON BEHALF OF THE JEWEL PLAINTIFFS.

 8              THE COURT:  GOOD MORNING.

 9         MR. OPSAHL:  GOOD MORNING, YOUR HONOR.  KURT OPSAHL

10   APPEARING ON BEHALF OF THE JEWEL PLAINTIFFS.

11              THE COURT:  GOOD MORNING.  ALL RIGHT.

12         SO, AS YOU TAKE YOUR SEATS, JUST A COUPLE OF -- I'D

13   LIKE TO GO OVER A COUPLE OF HOUSEKEEPING POINTS.

14         FIRST OF ALL, AS THE PARTIES KNOW, THE COURT IS VIDEO

15   RECORDING AND AUDIO RECORDING THESE PROCEEDINGS, ALL OF THE

16   PARTIES HAVING CONSENTED, AND THIS IS PURSUANT TO THE NATIONAL

17   PILOT PROJECT ON CAMERAS IN THE COURTROOM, AND THIS IS THE

18   FIRST PROCEEDING IN THIS COURT IN THE NORTHERN DISTRICT, TO

19   THIS COURT'S KNOWLEDGE, WHERE THIS PILOT PROJECT RECORDING

20   PROJECT HAS ACTUALLY OCCURRED.  BECAUSE OF THAT, I AM GOING TO

21   ASK COUNSEL WHEN THEY ARGUE TO SPEAK SLOWLY, BECAUSE WE ARE

22   VIDEOTAPING, AND YOU SHOULD ACT AS IF YOU ARE DICTATING TO THE

23   COURT REPORTER, AND I THINK WE'LL ALL GET ALONG BETTER.  AND I

24   WILL TRY TO MODERATE THE PACE OF MY SPEECH AS WELL.  SO PLEASE

25   BE AWARE OF THAT.
```

1          SECONDLY, BECAUSE ALL THE MICS THAT YOU SEE ARE LIVE

2    MICS, THEY WILL PICK UP -- THEY ARE PRETTY SENSITIVE, AND THEY

3    WILL PICK UP ANYTHING THAT IS SAID.  SO, NUMBER ONE, WHEN YOU

4    ARE ADDRESSING THE COURT, YOU SHOULD SPEAK INTO THE MICROPHONE.

5    YOU WILL BE ARGUING FROM THE LECTURN.  AND PLEASE BE AWARE THAT

6    ANY COMMENTS THAT YOU MAKE OR ANY SIDE CHATTER WILL BE PICKED

7    UP BY THE MICROPHONES AND WILL BE -- WILL CLUTTER THE

8    RECORDINGS.

9          SO I WOULD ASK COUNSEL, AND ESPECIALLY THOSE IN THE

10   GALLERY, THE SPECTATORS, PLEASE, TO AVOID SIDE CHATTER, AND

11   MAKE SURE YOUR PHONE IS TURNED OFF COMPLETELY SO WE DON'T HAVE

12   ANY DISRUPTION AND YOU WON'T HAVE YOUR PHONE FORFEITED, WHICH

13   WILL HAPPEN IF IT GOES OFF DURING THESE PROCEEDINGS.

14         AND I WANTED TO ALSO MAKE IT CLEAR THAT -- OR ADVISE

15   THE PARTIES THAT THE COURT HAS REVIEWED ALL OF THE BRIEFS THAT

16   HAVE BEEN FILED, THE AUTHORITIES, THE RECORD, THE ADDITIONAL

17   AUTHORITIES SUBMITTED AFTER THE COURT ISSUED ITS QUESTIONS,

18   AND, THEREFORE, YOU DON'T -- YOU SHOULD BE AWARE THAT I HAVE

19   DONE THAT.  I HAVE ALSO, I WANTED TO DISCLOSE TO THE PARTIES,

20   REVIEWED THE IN-CAMERA SUBMISSION BY THE GOVERNMENT, THE

21   MATERIAL THAT IS CLASSIFIED.  I REVIEWED ALL OF THOSE DOCUMENTS

22   AND IN THE APPROPRIATE SECURITY CONTEXT.

23         AND THE WAY -- FOR THOSE OF YOU WHO HAVEN'T ARGUED IN

24   THIS COURT OR APPEARED IN THIS COURT, THE WAY THIS COURT

25   CONDUCTS ITS HEARING IS THAT WE DON'T ALLOW PLENARY ARGUMENT

1    AND SIMPLE REPEATING OF WHAT'S IN YOUR PAPERS.

2          THE PURPOSE OF THESE QUESTIONS ARE NOT TRICK

3    QUESTIONS.  THEY ARE QUESTIONS THAT ARE POSED TO ENABLE THE

4    COURT TO MAKE A CORRECT AND JUST DECISION.  THEY ARE QUESTIONS

5    THAT AROSE WHEN THE COURT REVIEWED YOUR PAPERS.  SO THEY ARE

6    REAL QUESTIONS, AND THERE'S NO SUBTEXT OR IMPLIED TEXT.  AND,

7    IN FACT, THE COURT DID NOT ISSUE A TENTATIVE RULING IN THIS

8    MATTER BECAUSE THE COURT IS COMPLETELY OPEN AS TO WHAT IT MIGHT

9    DO AT THIS POINT.

10          SO, THE WAY WE -- THE WAY I CONDUCT THESE PROCEEDINGS

11   IS, IN THIS CONTEXT BECAUSE WE ARE RECORDING THE PROCEEDINGS

12   AND THE RECORDING WILL NOT SHOW THE QUESTIONS -- TYPICALLY, I

13   DO NOT READ THE QUESTIONS, BECAUSE THEY'RE FILED, E-FILED WITH

14   THE PARTIES IN ADVANCE OF THE HEARING.  IN THIS CASE, HOWEVER,

15   IN THESE PROCEEDINGS, I'M GOING TO READ THE QUESTIONS JUST SO

16   THAT THE RECORDING WILL CONTAIN THE QUESTIONS AND THE PREAMBLES

17   THAT ARE -- THE PARTIES ARE RESPONDING TO.

18          SO, TYPICALLY, IT'S PRETTY CLEAR THAT A QUESTION IS

19   ADDRESSED TO A PARTICULAR PARTY AND THE -- I WILL DESIGNATE

20   THAT PARTY, AND THEN I WILL GIVE THE ADDITIONAL -- THE OPPOSING

21   PARTIES -- THE PARTIES ON THE SAME SIDE AND THE OPPOSING

22   PARTIES AN OPPORTUNITY TO RESPOND AND REPLY -- IT'S AN

23   ITERATIVE PROCESS -- UNTIL THE COURT FEELS LIKE IT HAS

24   EXHAUSTED THE QUESTION, AND YOU DON'T NEED TO REPEAT AND SAY, I

25   REALLY MEANT THAT WHEN I SAID IT THE LAST TIME, BECAUSE I'M

1   OBVIOUSLY LISTENING.

2          THE OTHER THING THAT I WANT -- SINCE THERE ARE OTHER

3   PARTIES, THERE ARE MULTIPLE PARTIES, AT LEAST ON THE

4   PLAINTIFFS' SIDE, TO THE EXTENT, I WILL GIVE ANY PARTY AN

5   OPPORTUNITY TO RESPOND TO A QUESTION OR REPLY, AND THEN AT THE

6   END I HAVE SOME SPECIFIC QUESTIONS THAT ARE ADDRESSED TO THE

7   DISTINCTIONS BETWEEN THE TWO DIFFERENT CASES.  SO IT WILL BE

8   PRETTY OBVIOUS AS WE GO FORWARD, BUT, AGAIN, I JUST WANT YOU TO

9   ANSWER THE QUESTIONS.

10          AND, AT THE END, YOU'LL NOTE THE LAST QUESTION, WHICH

11   IS QUESTION 12, I ASKED IF THE PARTIES HAVE ANYTHING FURTHER

12   THEY WISH TO ADDRESS.  THAT IS NOT AN OPPORTUNITY TO CHANGE THE

13   PROCEDURE HERE, OR THE PROTOCOL, TO REOPEN, BUT IF THERE'S

14   SOMETHING THAT WAS IMPLIED BY THE QUESTIONS THAT YOU FEEL THE

15   NEED TO TALK ABOUT OR SOME MATTER THAT YOU FEEL NEEDS TO BE

16   SAID VERBALLY, THEN SAY IT.

17          BUT, KEEP IN MIND, KEEP IN MIND THAT THE COURT HAS

18   READ ALL OF YOUR AUTHORITIES, AND SO IT'S NOT AN OPPORTUNITY --

19   EXCEPT IF IT'S IN RESPONSE TO A QUESTION, YOU COULD SAY THE X,

20   Y, Z CASE THAT WE CITED ON PAGE 3 OR 4 OF OUR BRIEF, YOU KNOW,

21   ANSWERS YOUR QUESTION, AND THAT'S PERFECTLY OKAY.

22          SO, AGAIN, I ASK THE LAST QUESTION WITH TREPIDATION

23   AND ADVISABLY, ABOUT IS THERE ANYTHING MORE, BECAUSE I HAVE

24   WHAT I CALL THE VACUUM THEORY, WHICH IS NATURE HATES A VACUUM

25   AND SO DO LAWYERS, AND WHEN GIVEN AN OPPORTUNITY TO FILL THE

1    VACUUM, THEY WILL FILL IT.  SO THOSE RULES OF PHYSICS DON'T

2    APPLY IN THIS COURTROOM.

3         SO, WITHOUT FURTHER ADO, LET'S START WITH QUESTION

4    NUMBER ONE.  LET ME HAVE YOU COME TO THE LECTURN, BOTH SIDES,

5    WHO WILL BE ARGUING THAT QUESTION.  YEP.  I HAVE ABSOLUTELY NO

6    PROBLEM WITH COUNSEL SPLITTING UP THE ANSWERS OR HANDLING IT

7    ANY WAY YOU WANT.  IT'S NOT A JURY TRIAL.  I WILL READ THE

8    QUESTIONS THAT I PUBLISHED A COUPLE OF DAYS AGO, JUST SO THE

9    RECORD IS CLEAR, WHILE COUNSEL IS GETTING READY.

10        SO, QUESTION NUMBER ONE IS AS FOLLOWS:

11        IN *AL-HARAMAIN*, A-L H-A-R-A-M-A-I-N, *ISLAMIC*

12   *FOUNDATION, INC. VERSUS BUSH*, THE NINTH CIRCUIT SPECIFICALLY

13   REMANDED TO THE DISTRICT COURT TO, QUOTE, "TO CONSIDER WHETHER

14   FISA," F-I-S-A, "PREEMPTS THE STATE SECRETS PRIVILEGE AND FOR

15   ANY PROCEEDINGS COLLATERAL TO THAT DETERMINATION," UNQUOTE.

16   AND I CITED 507 F.3D. 1190 AT -- THE PIN CITE IS 1206, DECIDED

17   BY THE NINTH CIRCUIT IN 2007.  THE DISTRICT COURT IN *IN RE:*

18   *NATIONAL SECURITY ACTION TELECOMMUNICATIONS RECORD LITIGATION*

19   HELD THAT FISA DOES NOT PREEMPT THE STATE SECRETS PRIVILEGES,

20   564 F.SUPP.2D 1109, NORTHERN DISTRICT OF CALIFORNIA, 2008.  IN

21   *MOHAMED V. JEPPESEN DATA PLAN, INC.*, THE NINTH CIRCUIT

22   REFERENCING THE REMAND IN *AL-HARAMAIN* FOUND THAT, QUOTE,

23   "CONGRESS PRESUMABLY POSSESSES THE POWER TO RESTRICT

24   APPLICATION OF THE STATE SECRETS PRIVILEGE IN THE REFERRAL

25   PROCEEDING," UNQUOTE, CITING 614 F.3D. 1070, 1092, NOTE 15,

1    NINTH CIRCUIT 2012.

2         THE QUESTION 1(A), WHICH IS GOING TO BE INITIALLY

3    ADDRESSED TO THE DEFENDANTS IS AS FOLLOWS:

4         ON WHAT AUTHORITY DO THE DEFENDANTS ARGUE THE COURT

5    SHOULD REVERSE THE DECISION BY THIS DISTRICT COURT FINDING THAT

6    FISA PREEMPTS THE STATE SECRETS PRIVILEGE?

7         **MR. COPPOLINO:**  GOOD MORNING, YOUR HONOR.  I AM

8    ANTHONY COPPOLINO, CIVIL DIVISION OF THE JUSTICE DEPARTMENT.

9         **THE COURT:**  GOOD MORNING.

10        **MR. COPPOLINO:**  YOUR HONOR, IF I UNDERSTAND THE

11   QUESTION CORRECTLY, IF YOU ARE ASKING WHETHER OR NOT YOU ARE

12   BOUND BY THE PRIOR DECISION IN *AL-HARAMAIN*, THE SHORT ANSWER IS

13   NO, YOU ARE NOT, AND THE REASON FOR THAT IS -- THERE ARE A

14   COUPLE OF REASONS FOR THAT.  *AL-HARAMAIN* WAS PART OF MDL 1791,

15   WHICH IS STILL BEFORE THIS DISTRICT COURT.  IN MDL 1791, AS IN

16   ANY CASE, THE LAW OF THE CASE DOCTRINE MAY WELL APPLY TO A

17   PRIOR DECISION OF A DISTRICT COURT EVEN TO A SUCCESSOR JUDGE

18   HANDLING THAT MDL.  I WOULD NOTE, PARENTHETICALLY, THAT THE

19   *JEWEL*, I DON'T BELIEVE, IS TECHNICALLY A PART OF THE MDL.  IT'S

20   RELATED TO IT, BUT IT WOULD NOT BE TECHNICALLY WITHIN IT.  THE

21   *SHUBERT* CASE IS.  I THINK THE DOCTRINE APPLICABLE HERE WOULD BE

22   LAW OF THE CASE, IF ANY.

23        I THINK LAW OF THE CASE IS A DISCRETIONARY DOCTRINE,

24   ONE WHICH GIVES THE SUCCESSOR DISTRICT JUDGE THE DISCRETION TO

25   DECIDE WHETHER HE WANTS TO ADHERE TO A PRIOR RULING OF THE

1    COURT.  IT IS NOT THERE TO BIND YOU, BUT IT IS THERE TO GUIDE

2    YOUR DISCRETION.  THE STANDARDS IN THE CIRCUIT TYPICALLY ARE

3    WHETHER A COURT WOULD -- WHETHER A COURT WOULD FIND A PRIOR

4    DECISION TO BE CLEARLY ERRONEOUS OR WHETHER IT WOULD IMPOSE A

5    MANIFEST INJUSTICE.  OUR VIEW, OF COURSE, IS THAT IT IS BOTH

6    CLEARLY ERRONEOUS AND WOULD IMPOSE A MANIFEST INJUSTICE.

7            THE STANDARD IS SOMEWHAT MALLEABLE.  THIS ISSUE, BY

8    THE WAY, HAS NOT BEEN BRIEFED BECAUSE THE PARTIES DID NOT

9    ARGUE -- THE PLAINTIFFS DID NOT ARGUE THAT YOU WERE BOUND BY

10   THE *AL-HARAMAIN* DECISION.

11           SO I THINK THE SHORT ANSWER IS YOU CAN FOLLOW IT IF

12   YOU AGREE WITH IT.  WE WOULD, OF COURSE, URGE YOU NOT TO, BUT

13   YOU DO HAVE THE DISCRETION NOT TO DO SO.  I THINK THAT'S

14   ESSENTIALLY THE ANSWER TO PART A.

15           **THE COURT:**  LET'S MOVE TO PART B, BECAUSE I THINK IT

16   SEGUES -- AND I WILL GIVE PLAINTIFFS AN OPPORTUNITY TO RESPOND

17   ON BOTH.  THE QUESTION 1(B) IS:  DOES THE NINTH CIRCUIT'S

18   DECISION NOT TO REVIEW THE FINDING OF PREEMPTION HAVING ANY

19   PERSUASIVE AUTHORITY?  SEE *AL-HARAMAIN ISLAMIC FOUNDATION, INC.*

20   *V. OBAMA*, 690 F.3D. 1089, 1091 DECIDED BY THE NINTH CIRCUIT IN

21   2012.

22           **MR. COPPOLINO:**  I THINK NOT, YOUR HONOR.  I DON'T

23   THINK YOU CAN IMPLY -- CERTAINLY, I DON'T THINK YOU CAN IMPLY

24   THAT THE REASONING OF THE DISTRICT COURT IN *AL-HARAMAIN* WAS

25   ENDORSED SUB SILENTIO WHEN THE NINTH CIRCUIT HAS DECLINED TO

1    ADDRESS THE ISSUE.

2            I COULD ARGUE THAT IT MAY WELL BE PERSUASIVE

3    AUTHORITY AGAINST THE CONCEPT OF DISPLACEMENT IN THIS SENSE:

4    FIRST, IN A VERY SPECIFIC SENSE, THE NINTH CIRCUIT HELD IN THAT

5    DECISION THAT FISA SECTION 1810, 15 USC 1810, DOES NOT CREATE A

6    CAUSE OF ACTION AGAINST THE UNITED STATES FOR ALLEGED UNLAWFUL

7    SURVEILLANCE.  THAT WAS A SOVEREIGN IMMUNITY ISSUE.  THAT'S THE

8    ONLY CAUSE OF ACTION IN THE FISA STATUTORY CAUSE OF ACTION THAT

9    THE PLAINTIFFS HAVE RELIED UPON IN THE FISA.

10           NOW, THE PLAINTIFFS HAD ARGUED IN THIS CASE THAT FISA

11   SECTION 1810 WORKED IN TANDEM WITH SECTION 1806(F) OF THE FISA,

12   WHICH ARE THE PROCEDURES THAT THEY CONTEND DISPLACED THE STATES

13   SECRETS PRIVILEGE.

14           I WOULD ARGUE BY HOLDING THAT FISA 1810 DOES NOT

15   APPLY TO THE UNITED STATES, THE ARGUMENT THAT 1806(F) RESTRICTS

16   THE UNITED STATES IN CONNECTION WITH AN 1810 CLAIM HAS AT THE

17   VERY LEAST BEEN UNDERCUT, BECAUSE IT STANDS TO REASON THAT IF

18   THE CAUSE OF ACTION DOESN'T APPLY TO THE UNITED STATES, THE

19   PROCEDURES ALLEGED TO RESTRICT THE UNITED STATES IN DEFENDING

20   THAT CAUSE OF ACTION WOULD NOT APPLY AS WELL.

21           NOW, CANDIDLY, YOUR HONOR, I DON'T KNOW WHAT THE

22   NINTH CIRCUIT WAS THINKING ABOUT FISA PREEMPTION.  THEY SIMPLY

23   DID NOT SAY.  BUT I THINK RATHER THAN AN IMPLICIT ENDORSEMENT,

24   IT MAY WELL BE SIMPLY THAT THEY HAVE SIMPLY DISREGARDED THAT

25   ISSUE ENTIRELY.

1          THERE'S ALSO A LARGER POINT I WOULD LIKE TO AT LEAST

2     FLAG FOR THE COURT ABOUT THIS, AND WE CAN PERHAPS DISCUSS IT

3     LATER IF YOU HAVE QUESTIONS.

4          THAT IS THAT THERE IS A WHOLE HISTORY TO WHAT

5     OCCURRED IN *AL-HARAMAIN* AFTER JUDGE WALKER RULED THAT FISA

6     DISPLACED THE STATES SECRETS PRIVILEGE.  FROM THAT POINT, WHICH

7     I BELIEVE WAS AROUND JULY OF 2008, STARTING IN THE BEGINNING OF

8     2009, FOR A COUPLE OF YEARS THERE WERE EXTENSIVE AND

9     CONTENTIOUS PROCEDURES BACK AND FORTH BETWEEN THE PLAINTIFFS,

10    THE GOVERNMENT, AND THE COURT IN TRYING TO IMPLEMENT THAT

11    ORDER.  AND IT TURNED OUT TO BE UNWORKABLE.

12          AND, ULTIMATELY, ALL OF THE THINGS THAT OCCURRED FOR

13    THE NEXT YEAR AND A HALF AFTER JUDGE WALKER FOUND THAT FISA

14    DISPLACED THE PRIVILEGE LED TO NOWHERE, BECAUSE WE HAD ARGUED

15    THAT THE SECTION 1810 DIDN'T AUTHORIZE A CAUSE OF ACTION, AND

16    THE COURT APPEALS ULTIMATELY AGREED.

17          BUT THE PROCESS OF ATTEMPTING TO GO FORWARD UNDER

18    FISA 1806(F) PROVED UNWORKABLE AND THE *AL-HARAMAIN* CASE IS

19    ELABORATORY FOR THAT.

20          IF YOU ARE CONSIDERING FOLLOWING JUDGE WALKER'S

21    DECISION, I WOULD AT LEAST RESPECTFULLY REQUEST AN OPPORTUNITY

22    TO TRY TO TALK YOU OUT OF IT AND EXPLAIN TO YOU FURTHER THE

23    PROBLEMS WE HAD IN THAT CASE.

24          THANK YOU.

25          **THE COURT:**  ALL RIGHT.  LET ME HEAR FROM THE

1    PLAINTIFFS.  AS GOVERNMENT COUNSEL DID, WOULD YOU MIND EACH

2    TIME YOU SPEAK FOR A NEW QUESTION REIDENTIFY YOURSELVES SO THE

3    RECORD IS CLEAR WHO IS SPEAKING?

4          **MR. WIEBE:**  CERTAINLY, YOUR HONOR.  RICHARD WIEBE FOR

5    THE JEWEL PLAINTIFFS.

6          WITH RESPECT TO QUESTION 1(A), WE AGREE WITH JUDGE

7    WALKER'S RULING THAT FISA SECTION 1806(F) DOES DISPLACE THE

8    STATES SECRETS PRIVILEGE.  AND, AS WE'VE EXPLAINED IN OUR

9    PAPERS, WE THINK IT'S CLEAR FROM THE PLAIN LANGUAGE.  1806(F)

10   BEGINS WITH THOSE THREE "WHENEVER" CLAUSES.  THE GOVERNMENT'S

11   POSITION IS 1806(F) ONLY APPLIES WHEN THE GOVERNMENT IS USING

12   EVIDENCE AGAINST A PERSON.  WE DISAGREE WITH THAT.

13         THE FIRST OF THE THREE "WHENEVER" CLAUSES, THE FIRST

14   TWO OF THE THREE IN 1806(F), DO ADDRESS GOVERNMENT'S USE OF

15   EVIDENCE AGAINST SOMEONE.

16         THE THIRD CLAUSE -- DOES YOUR HONOR HAVE THAT BEFORE

17   HIM?

18         **THE COURT:**  YES.

19         **MR. WIEBE:**  WOULD IT BE HELPFUL -- I ALSO HAVE IT, IF

20   THAT WOULD BE HELPFUL.

21         **THE COURT:**  ALL RIGHT.  I HAVE IT.

22         **MR. WIEBE:**  SO WE HAVE -- AGAIN, THIS IS 50 USC

23   1806(F), AND IT'S A -- BEGINS WITH A VERY LONG SENTENCE.  THAT

24   SENTENCE BEGINS WITH THREE CLAUSES THAT BEGIN WITH THE WORD

25   "WHENEVER."

1          THE FIRST TWO REFERENCE SUBSECTIONS (C), (D) AND (E)

2     OF SECTION 1806(F), AND THOSE ARE SECTIONS THAT DEAL WITH THE

3     GOVERNMENT'S USE OF EVIDENCE AGAINST A PERSON, TYPICALLY A

4     CRIMINAL DEFENDANT.

5          BUT THEN WHEN YOU GET TO THE THIRD "WHENEVER" CLAUSE,

6     IT READS, QUOTE:

7               "WHENEVER ANY MOTION OR REQUEST IS

8          MADE BY AN AGGRIEVED PERSON PURSUANT TO ANY

9          OTHER STATUTE OR RULE OF THE UNITED STATES,"

10         THEN IT GOES ON TO TALK ABOUT STATE PROCEEDINGS AS

11    WELL.

12         AND THEN THAT'S THEN FOLLOWED BY TWO SUBCLAUSES, AND

13    THE FIRST SUBCLAUSE READS, QUOTE:

14              "TO DISCOVER OR OBTAIN APPLICATIONS

15         OR ORDERS OR OTHER MATERIALS RELATING TO

16         ELECTRONIC SURVEILLANCE."

17         THAT'S HAWAII WE'RE RELYING ON, AND THAT'S A VERY

18    BROAD PROVISION THAT ISN'T LIMITED TO SUPPRESSION MOTIONS OR

19    THE GOVERNMENT'S USE OF EVIDENCE.  IT SAYS:

20              "ANY MOTION OR REQUEST MADE TO

21         DISCOVER INFORMATION RELATING TO ELECTRONIC

22         SURVEILLANCE."

23         IT THEN GOES ON TO SAY THAT IF SUCH A MOTION IS MADE

24    UNDER ANY RULE OR STATUTE TO DISCOVER OTHER MATERIALS RELATING

25    TO ELECTRONIC SURVEILLANCE, THAT THEN THIS COURT IS TO --

1    NOTWITHSTANDING ANY OTHER LAW, IF THE ATTORNEY GENERAL ASSERTS

2    THAT DISCLOSURE OF THAT INFORMATION WOULD HARM NATIONAL

3    SECURITY, QUOTE:

4                    "...IS THEN TO REVIEW IN CAMERA AND

5              EX PARTE THE APPLICATION ORDER AND SUCH OTHER

6              MATERIALS RELATING TO THE SURVEILLANCE AS MAY

7              BE NECESSARY TO DETERMINE WHETHER THE

8              SURVEILLANCE TO THE AGGRIEVED PERSON WAS

9              LAWFULLY AUTHORIZED OR CONDUCTED."

10             SO THAT'S A VERY BROAD PROVISION.  IT IS NOT TIED AT

11   ALL TO SUPPRESSION MOTIONS OR ONLY TO THE GOVERNMENT'S USE.

12             THERE'S A PARALLEL TO THAT IN THE NEXT SUBSECTION OF

13   1806, AND THAT'S SUBSECTION (G) WHERE IT TALKS ABOUT WHAT THE

14   COURT THEN DOES AFTER IT'S GONE THROUGH THE 1806(F) PROCEDURE.

15   IT OFFERS TWO OPTIONS.  THE FIRST ONE IS SUPPRESS THE EVIDENCE.

16   QUOTE:

17                   "SUPPRESS THE EVIDENCE WHICH WAS

18             UNLAWFULLY OBTAINED OR DERIVED FROM

19             ELECTRONIC SURVEILLANCE."

20             OBVIOUSLY, THAT DOES PERTAIN TO SUPPRESSION MOTIONS,

21   BUT THEN IT ALSO GOES ON TO SAY:

22                   "...OR OTHERWISE GRANT THE MOTION

23             OF AGGRIEVED PERSON."

24             THAT REINFORCES WHAT 1806(F) SAYS IN SAYING THAT IT'S

25   A BROAD PROCEDURE THAT APPLIES TO ANY OTHER MOTION BROUGHT

1    UNDER ANY UNDER STATUTE OR RULE.

2              **THE COURT:**  BEFORE YOU GO ON --

3         **MR. WIEBE:**  YES.

4              **THE COURT:**  I DON'T KNOW THAT YOU'VE ANSWERED THE

5    QUESTION.  WHAT YOU'RE SAYING IS CERTAINLY HELPFUL, AND YOU'RE

6    BASICALLY ATTEMPTING TO SUPPORT WHAT JUDGE WALKER DID.  BUT

7    LET'S START WITH THE DISTRICT COURT, AND I ASKED THE DEFENDANTS

8    A QUESTION ABOUT WHETHER THE COURT SHOULD REVERSE THE DECISION

9    BY THE DISTRICT COURT.  "DISREGARD" MAY BE A BETTER WORD.

10   "FOLLOW" MAY BE A BETTER WORD, FIND PERSUASIVE.  BUT WHAT IS

11   THE LEGAL IMPACT OF JUDGE WALKER'S DECISION, AND TO WHAT EXTENT

12   IS IT BINDING OR PERSUASIVE ON THIS COURT?

13             I UNDERSTAND YOU'RE ARGUING PERSUASIVE IN THE SENSE

14   OF JUDGE WALKER GOT IT RIGHT, BUT AS A MATTER OF LAW -- AND

15   THAT'S WHY I ASKED DO THE DEFENDANTS HAVE ANY AUTHORITY -- WHAT

16   IS THE LEGAL IMPACT, FIRST, OF JUDGE WALKER'S DECISION, AND

17   THEN, OF COURSE, THE NINTH CIRCUIT NOT REVIEWING THE DISTRICT

18   COURT'S FINDING.

19             **MR. WIEBE:**  WE DO NOT BELIEVE THAT THIS COURT IS

20   ABSOLUTELY BOUND TO FOLLOW JUDGE WALKER' DECISION.  IT'S

21   CORRECT THAT THE *JEWEL* CASE IS NOT PART OF THE MDL CASE.  THE

22   *SHUBERT* CASE IS PART OF IT.  IN THAT SENSE, IT'S NOT BINDING

23   LAW OF THE CASE ON THIS COURT, BUT WE BELIEVE IT'S NOT ONLY

24   PERSUASIVE HERE.

25             BUT THERE'S ALSO -- IF I MAY, YOUR HONOR, THERE'S ONE

1    OTHER FACTOR HERE THAT WASN'T PRESENT IN THE *AL-HARAMAIN* CASE,

2    WHICH IS AN ADDITIONAL REASON FOR FOLLOWING IT.  MAY I ADDRESS

3    THAT?

4              **THE COURT:**  PLEASE.

5              **MR. WIEBE:**  YEAH.  THERE'S ANOTHER PROVISION AT ISSUE

6    HERE, AND THAT'S 18 USC SECTION 2712.  I DON'T KNOW IF YOUR

7    HONOR HAS THAT IN YOUR MATERIALS.  I HAVE A COPY IF YOU DON'T.

8              **THE COURT:**  I DO HAVE IT.

9              **MR. WIEBE:**  YES.

10             NOW, 2712 IS THE SOVEREIGN IMMUNITY WAIVER FOR OUR

11   DAMAGES CLAIMS UNDER THE WIRETAP ACT AND UNDER THE STORED

12   COMMUNICATIONS ACT.  IF -- YOUR HONOR, IF I CAN DIRECT YOUR

13   ATTENTION TO SUBSECTION (B)(4) OF SECTION 2712, WHAT (B)(4)

14   SAYS IS, QUOTE:

15                       "NOTWITHSTANDING ANY OTHER

16             PROVISION OF LAW, THE PROCEDURES SET FORTH IN

17             SECTION 18 " -- I'M SORRY -- "SECTION 106 F."

18             NOW, THAT'S SECTION 1806(F) OF FISA.  THEN I'LL SKIP

19   A BIT.

20                       "...SHALL BE THE EXCLUSIVE MEANS BY

21             WHICH MATERIALS GOVERNED BY THOSE SECTIONS

22             MAY BE REVIEWED."

23             NOW, IN *AL-HARAMAIN*, THERE WERE NO WIRE TAP ACT

24   CLAIMS, AND THERE WERE NO STORED COMMUNICATIONS ACT CLAIMS.  SO

25   2712(B)(4) DID NOT COME INTO PLAY.  IN OUR CASE, WE DO HAVE

1    THOSE CLAIMS, AND, CLEARLY, CONGRESS REMOVED ANY DOUBT AS TO

2    THE APPLICATION OF 1806(F) TO THOSE CLAIMS IN 2712(B)(4), WHICH

3    WAS ENACTED AFTER FISA AS PART OF THE PATRIOT ACT IN 2001.

4         SO, THIS IS AN ADDITIONAL REASON THAT WASN'T PRESENT

5    IN *AL-HARAMAIN* WHICH FURTHER SUPPORTS THE DECISION THAT AS TO

6    PLAINTIFFS' CLAIM IN THE JEWEL CASE FISA IS PREEMPTED.

7         I ALSO WANTED TO ADDRESS YOUR QUESTION -- YOUR

8    HONOR'S QUESTION IN 1(B), THAT IS GOING TO THE NINTH CIRCUIT,

9    WHAT'S THE EFFECT OF THAT?

10        WE DON'T THINK THAT THE NINTH CIRCUIT'S DECISION NOT

11   TO ADDRESS 1806 REALLY WEIGHS ONE WAY OR THE OTHER.  SOVEREIGN

12   IMMUNITY, WHICH IS THE GROUND THEY DID DECIDE THE CASE ON, IS A

13   JURISDICTIONAL ISSUE, SO IT MAKES SENSE THEY ADDRESSED THAT

14   FIRST, AND, HAVING ADDRESSED THAT, DID NOT PROCEED FURTHER.  SO

15   WE DON'T THINK IT REALLY WEIGHS ONE WAY OR THE OTHER.

16        **THE COURT:**  ALL RIGHT.  ANYTHING FURTHER ON THIS

17   POINT?

18        **MR. WIEBE:**  NOT ON THIS POINT.

19        **THE COURT:**  DID YOU HAVE ANYTHING?

20        **MR. BRINCKERHOFF:**  JUST ONE COMMENT, JUDGE.  YOUR

21   HONOR.

22        **THE COURT:**  CERTAINLY.

23        **MR. BRINCKERHOFF:**  MATTHEW BRINCKERHOFF AGAIN ON

24   BEHALF OF THE PLAINTIFFS IN *SHUBERT*.

25        I JUST WANT TO POINT OUT I DON'T THINK WE HAVE ANY

```
 1   QUARREL ON THIS POINT.  SHUBERT IS DISTINCT FROM JEWEL ON A
 2   POINT RELATED TO YOUR QUESTION, WHICH IS IT WAS TRANSFERRED AS
 3   PART OF THE MDL TO THIS COURT, AND, THEREFORE, THE LAW OF CASE
 4   DOCTRINE, I DO THINK, THIS AS THE GOVERNMENT HAS ACKNOWLEDGED
 5   DOES CLEARLY APPLY, TO ANY ANALYSIS OF DISPLACEMENT OF
 6   PREEMPTION UNDER FISA.
 7            AND I THINK GOVERNMENT CORRECTLY STATED THE STANDARD
 8   FOR LAW OF THE CASE, AND CERTAINLY, ALSO CORRECTLY, INDICATED
 9   THAT IT IS OBVIOUSLY NOT BINDING IN THE SENSE THAT ESTOPPEL OR
10   RES JUDICATA OR BINDING APPELLATE COURT DECISION WOULD BE, BUT
11   IT IS -- THE STANDARD REQUIRES YOU TO MAKE A FINDING IF YOU
12   WERE TO DISAGREE WITH JUDGE WALKER'S OPINION THAT IT WAS
13   CLEARLY ERRONEOUS OR CONSTITUTED A MANIFEST INJUSTICE.
14            **THE COURT:**  BECAUSE IT'S WHY?
15            **MR. BRINCKERHOFF:**  BECAUSE HIS RULING IS THE LAW OF
16   THE CASE AS APPLIES TO THE *SHUBERT* MATTER BECAUSE IT'S PART OF
17   THE MDL.
18            **THE COURT:**  ANYTHING YOU WANT TO SAY IN REPLY?
19            **MR. COPPOLINO:**  JUST A COUPLE OF POINTS, YOUR HONOR.
20   MY FRIEND, MR. WIEBE, ARGUED A BIT OF THE MERITS OF THE ISSUE,
21   AND I DON'T WANT TO VIOLATE YOUR ADMONITION NOT TO DO THAT.
22            **THE COURT:**  ESSENTIALLY, I ATTEMPTED IN THE WAY THE
23   QUESTIONS ARE WORDED TO COVER A LOT OF THE AREA, AND SOMETIMES
24   THEY WILL OVERLAP.  I'M TRYING TO KEEP THE DISCUSSION AS MUCH
25   AS POSSIBLE CONFINED TO THE QUESTIONS.
```

1          **MR. COPPOLINO:** LET ME JUST GIVE YOU A COUPLE OF

2     MINUTES ON SUMMARIZING IN RESPONSE TO HIS POINTS.

3          **THE COURT:** WHO IS THE "HIS" THERE?  THERE ARE TWO

4     HISES THERE.

5          **MR. COPPOLINO:** TO MR. WIEBE.

6          **THE COURT:** THANK YOU.  I JUST WANT TO KNOW WHICH

7     POINT YOU ARE REBUTTING.  THANK YOU.

8          **MR. COPPOLINO:** THIS ISSUE ABOUT FISA'S DISPLACEMENT

9     HAS BEEN BEFORE THIS COURT SINCE 2006.  WE BRIEFED IT AT

10    LENGTH.  I THINK PLAINTIFFS ARE WRONG, BUT, AS I MENTIONED

11    BEFORE, I THINK THERE ARE VERY SERIOUS DIFFICULTIES WITH GOING

12    DOWN THIS ROAD, BECAUSE IF WE DO, OUR VIEW IS, AND WE SAID IT

13    IN OUR PAPERS, IT WOULD INHERENTLY RISK THE DISCLOSURE OF THE

14    VERY INFORMATION WE ARE SEEKING TO PROTECT.

15          ONE IS THAT THE LAW REQUIRES THAT CONGRESS EXPRESS

16    ITS INTENT TO DISPLACE THE COMMON LAW CLEARLY AND SPEAK

17    DIRECTLY TO THE ISSUE.  THIS IS CLEAR SUPREME COURT PRECEDENT.

18    AND, IN THIS INSTANCE, YOUR HONOR, WE ARGUE THERE IS NOTHING IN

19    THE TEXT, NOTHING IN THE LEGISLATIVE HISTORY, NOTHING IN CASE

20    LAW; IN SHORT, NOTHING THAT SUPPORTS THE PLAINTIFF'S ARGUMENT.

21          MR. WIEBE'S ARGUMENT TAKES THIS STATUTE -- ONE

22    SUBSECTION OF A STATUTORY PROVISION WITH SEVEN OR EIGHT

23    PROVISIONS, AND HE POINTS YOU TO 13 WORDS IN THE MIDDLE OF A

24    SUBSECTION OF A SIX-SECTION -- OF A SIX-SUBSECTION STATUTE --

25    AND ARGUES THAT BY THIS, CONGRESS INTENDED TO DISPLACE THE MOST

1  SIGNIFICANT NATIONAL SECURITY PRIVILEGE IN THE LAW WITHOUT EVEN

2  MENTIONING IT EITHER IN THE STATUTE OR LEGISLATIVE HISTORY.

3          WE THINK THAT'S ENTIRELY IMPLAUSIBLE.  WE THINK YOU

4  ARE REQUIRED UNDER SUPREME COURT CANONS TO VIEW THE STATUTE AS

5  A WHOLE IN CONTEXT, AND WHEN YOU DO, YOU WILL SEE THAT THIS

6  PROVISION WAS INTENDED TO GOVERN THE USE OF THE SURVEILLANCE

7  EVIDENCE AGAINST THE PERSON ACKNOWLEDGED TO BE AGGRIEVED AND

8  THAT THE DISCOVERY MOTION THAT THEY CITE FITS NEATLY WITHIN

9  THAT.

10          LEGISLATIVE HISTORY EXPLAINS THIS VERY WELL.  THIS

11  STATUTE IS A FIX TO THE PROBLEM THAT CAME UP AFTER THE SUPREME

12  COURT'S DECISION IN *HALDERMAN* WHEN THE SUPREME COURT HELD IF

13  THE GOVERNMENT WAS GOING TO USE WIRETAP EVIDENCE AGAINST A

14  CRIMINAL DEFENDANT IN THAT CASE -- ALTHOUGH I'M NOT ARGUING

15  THIS IS SOLELY A CRIMINAL DEFENSE ISSUE, BUT IN THAT CASE IT

16  WAS.  AND THE SUPREME COURT HELD IF THE GOVERNMENT WAS GOING TO

17  USE WIRETAPS AND THE DEFENDANT ALLEGED IT WAS TAINTED EVIDENCE,

18  THE DEFENDANT WAS ENTITLED TO REVIEW THE WIRETAPS.  AND THE

19  GOVERNMENT ASKED THE COURT IF IT COULD PROVIDE THEM TO THE

20  DISTRICT COURT IN CAMERA.  THE SUPREME COURT SAID THAT WAS NOT

21  AN APPROPRIATE PROCESS UNDER REQUIREMENTS FOR DUE PROCESS IN A

22  CRIMINAL PROCEEDING.

23          WHEN THE FISA WAS ENACTED THE JUSTICE DEPARTMENT

24  ASKED CONGRESS TO FIX THIS PROBLEM WITH RESPECT TO FOREIGN

25  INTELLIGENCE SURVEILLANCE.  THAT'S WHAT THEY DID.  IT STANDS TO

1    REASON ONCE YOU PROVIDE NOTICE TO A CRIMINAL DEFENDANT, OR

2    ANYONE, THAT YOU ARE USING SURVEILLANCE EVIDENCE AGAINST THEM,

3    THEY WILL SEEK DISCOVERY.  THIS IS COMMON.

4         ALL OF THE CASES THAT REPORTED ON THE USE OF 1806(F)

5    INCLUDE INSTANCES WHERE THE DEFENDANT IS SEEKING DISCOVERY.

6    THAT'S WHY THE DISCOVERY CLAUSE IS THERE.  AND IN THAT

7    CONNECTION, THE STATUTE PROVIDES THAT ANY REVIEW OF THE

8    SURVEILLANCE MATERIALS WOULD BE EX PARTE IN CAMERA.

9         AND, BY THE WAY, NOT ONCE IN THE HISTORY OF THE

10   APPLICATION OF 1806(F) HAS ANY CRIMINAL DEFENDANT EVER BEEN

11   GIVEN ACCESS TO CLASSIFIED MATERIALS CONCERNING INTELLIGENCE

12   SOURCES AND METHODS.

13        I POINT OUT FURTHER, THE LEGISLATIVE HISTORY MAKES

14   CLEAR THE GOVERNMENT HAS THE CHOICE TO PROTECT GOVERNMENT

15   SOURCES AND METHODS, EVEN IN THE CONTEXT OF 1806(F), BUT BY NOT

16   USING THE EVIDENCE.  THAT'S OBVIOUSLY NOT A FACTOR HERE BECAUSE

17   WE ARE NOT USING EVIDENCE.  THEY'RE SEEKING TO USE THIS TO

18   FORCE THE DISCLOSURE OF PRIVILEGED INFORMATION.

19        I'LL BRIEFLY MENTION ON 2712, 18 USC 2712(B)(4) THAT

20   YOU MENTIONED, IT DOES INDICATE THAT SECTION 1806(F)WOULD APPLY

21   TO CAUSES OF ACTIONS AGAINST THE UNITED STATES UNDER THREE

22   OTHER FISA PROVISIONS.

23        HERE'S THE PROBLEM WITH THAT:  THEY'RE NOT BRINGING A

24   LAWSUIT UNDER ANY OF THOSE THREE FISA PROVISIONS.  AND --

25   NUMBER ONE.  NUMBER TWO, THOSE THREE FISA PROVISIONS CREATE A

1    CAUSE OF ACTION FOR THE USE OR DISCLOSURE OF INFORMATION

2    OBTAINED THROUGH ELECTRONIC SURVEILLANCE.  SO, IN THAT CONTEXT,

3    IT STANDS TO REASON THAT THE FISA, 1806 (F), WOULD APPLY TO A

4    LAWSUIT ON THAT ISSUE.

5          BUT THERE'S NOTHING IN THIS PROVISION HE CITED IN 18

6    USC 2712 WHICH SUGGESTS THAT FISA 1806(F) APPLIES IN THE WAY

7    THEY'VE ARGUED.  ALL THE STATUTE SAYS IS AS IT APPLIES, IT

8    APPLIES TO THESE THREE CAUSES OF ACTION.  CERTAINLY, THAT

9    PROVISION CAN'T BE READ TO SPEAK DIRECTLY TO DISPLACING THE

10   STATES SECRETS PRIVILEGE.

11         THANK YOU, YOUR HONOR.

12         **THE COURT:**  ALL RIGHT.  ANYTHING FURTHER?

13         **MR. WIEBE:**  IF I MAY, YOUR HONOR?

14         **THE COURT:**  VERY BRIEFLY.

15         **MR. WIEBE:**  I THINK WE'VE PRETTY MUCH EXHAUSTED THIS

16   QUESTION.

17         **THE COURT:**  GO AHEAD.

18         **MR. WIEBE:**  ON THE LAST POINT, ON THE 2712 POINT, IF

19   YOUR HONOR LOOKS AT THE STATUTE, 2712(B) AS A WHOLE IS TITLED

20   "PROCEDURES," I BELIEVE.

21         **THE COURT:**  RIGHT.

22         **MR. WIEBE:**  AND THE PROCEDURES ARE ONES THAT APPLY TO

23   ALL OF THE CLAIMS THAT ARE CREATED BY 2712.  THERE'S NOTHING IN

24   2712(B)(4) THAT LIMITS THAT ONLY TO THE THREE FISA CLAIMS THAT

25   2712(A) WAIVES SOVEREIGN IMMUNITY FOR.  2712(A) WAIVES

1    SOVEREIGN IMMUNITY FOR ALL WIRETAP CLAIMS, ALL STORED

2    COMMUNICATIONS ACT CLAIMS, AND, THREE, FISA CLAIMS.  BUT

3    THERE'S NOTHING -- THAT'S 2712(A).  THAT'S THE WAIVER OF

4    SOVEREIGN IMMUNITY.

5             2712(B)(4), AGAIN, IS A PROCEDURE THAT DOES NOT LIMIT

6    ITSELF ONLY TO THREE PARTICULAR CLAIMS THAT ARE WAIVED, BY ITS

7    PLAIN LANGUAGE APPLIES TO EVERYTHING THAT COMES WITHIN 2712.

8             **THE COURT:**  ALL RIGHT.

9             **MR. WIEBE:**  AS TO THE OTHER POINTS MR. COPPOLINO

10   RAISED, WE'VE ADDRESSED THOSE IN OUR OPPOSITION AND REPLY

11   BRIEF.

12            **THE COURT:**  YOU HAVE.

13            LET'S MOVE ON TO QUESTION NUMBER TWO.  QUESTION

14   NUMBER TWO SAYS THE FOLLOWING:  THIS WILL OBVIOUSLY -- THE

15   QUESTION IS AS FOLLOWS:

16            DOES THE GOVERNMENT'S PUBLIC DISCLOSURE OF MATERIAL

17   INFORMATION REGARDING THE VERY EXISTENCE OF A WARRANTLESS

18   SURVEILLANCE PROGRAM, INCLUDING ITS DENIAL IN THIS MATTER OF

19   THE ALLEGATIONS OF DOMESTIC SURVEILLANCE (PUBLIC DNI

20   DECLARATION AT PARAGRAPH 24, PUBLIC NSA DECLARATION AT

21   PARAGRAPH 18) PRECLUDE A FINDING REGARDING THE EXISTENCE OF THE

22   PROGRAM, AND THEREFORE THE SUBJECT MATTER OF THIS ACTION, IS

23   BARRED ENTIRELY BY THE STATE SECRETS PRIVILEGE?

24            AND THAT'S OBVIOUSLY A YES OR NO QUESTION.

25            AND THE FOLLOW-UP QUESTION IS:

1        WHAT SPECIFIC CITES IN THE VOLUMINOUS RECORDS

2   SUBMITTED BY PLAINTIFFS REFERENCE THE GOVERNMENT'S PUBLIC

3   DISCLOSURES REGARDING SOLELY DOMESTIC SURVEILLANCE?

4        SO, LET ME START WITH -- I THINK THIS IS TO BOTH

5   SIDES, BUT LET ME START WITH PLAINTIFFS ON THIS, AND THEN I'LL

6   HEAR FROM THE DEFENDANTS.

7        **MR. WIEBE:**  YES.  OUR ANSWER THERE IS YES, THERE HAS

8   BEEN SUFFICIENT PUBLIC DISCLOSURE, INCLUDING THE DENIALS THAT

9   THE QUESTION REFERENCES TO GET US BEYOND THE VERY SUBJECT

10  MATTER RULE OF THE SOVEREIGN INTENT.  I THINK IT'S INTERESTING,

11  EVEN IN *JEPPESEN*, THE *MOHAMED VERSUS JEPPESEN* CASE, THE COURT

12  IS FAMILIAR WITH, THE NINTH CIRCUIT THERE, EVEN THOUGH THERE

13  HAD BEEN MUCH LESS PUBLIC DISCLOSURE ABOUT THE EXTRAORDINARY

14  RENDITION THAT WAS AT ISSUE THERE, DID NOT DISMISS THAT CASE ON

15  VARIOUS SUBJECT MATTER GROUNDS.

16       IT SAID VARIOUS SUBJECT GROUNDS WAS QUOTE, "RARELY

17  APPLIED," CLOSE QUOTE, "NOT CLEARLY DEFINED," CLOSE QUOTE, AND

18  THE COURT SHOULD ORDINARILY DO A MORE DETAILED AND RIGOROUS

19  *REYNOLDS* ANALYSIS.  THAT'S AT 614 F.3D 1084.

20       I DON'T THINK THE GOVERNMENT SERIOUSLY PRESSES THIS

21  ARGUMENT.  THEY HAVE A SINGLE SENTENCE IN A FOOTNOTE IN THEIR

22  OPENING BRIEF, SINGLE SENTENCE IN THEIR REPLY BRIEF.  THAT'S

23  ALL THEY HAVE ADDRESSING THE VERY SUBJECT MATTER DISMISSAL.

24       IN ANY EVENT, IT'S OUR VIEW THE *GENERAL DYNAMICS*

25  CASE, THE SUPREME COURT CASE, HAS SUBSEQUENTLY MADE CLEAR THAT

1    THE *TOTTEN/TENET* VARIOUS SUBJECT MATTER DISMISSAL RULE ONLY

2    APPLIES IN GOVERNMENT CONTRACT CASES, CASES WITH ALLEGED SPIES,

3    CASES WITH GOVERNMENT CONTRACTORS.

4           AS YOUR HONOR KNOWS, THE SUPREME COURT WAS VERY

5    CAREFUL IN GENERAL DYNAMICS TO DISTINGUISH BETWEEN THE TWO

6    LINES OF STATE SECRETS CASE LAW, ONE COMING FROM *UNITED STATES*

7    *VERSUS REYNOLDS*, WHICH IT MADE CLEAR WAS PURELY AN EVIDENTIARY

8    PRIVILEGE THAT ONLY EXCLUDES EVIDENCE, THE OTHER, *TOTTEN/TENET*

9    LINE, WHICH IT SAID CAME FROM ITS AUTHORITY OVER GOVERNMENT

10   CONTRACTING.  AND, SO WE THINK THAT, ULTIMATELY, THE

11   *TOTTEN/TENET* RULES HERE WOULD NOT APPLY FOR THAT REASON AS

12   WELL, AND SIMPLY ISN'T AVAILABLE IN A NONCONTRACT CASE LIKE

13   THIS.

14          AS FOR THE SPECIFIC CITATIONS, YOUR HONOR, IF I MAY

15   HAND UP A LIST OF CITATIONS FOR THE COURT'S USE.

16          **THE COURT:**  OKAY.

17          **MR. WIEBE:**  THAT SEEMED TO BE THE BEST WAY TO ADDRESS

18   THAT.

19          **THE COURT:**  I THINK THAT'S RIGHT.  I WAS GOING TO SAY

20   YOU DON'T NEED TO CHARACTERIZE THEM UNLESS THEY NEED

21   CHARACTERIZATION.

22          **MR. WIEBE:**  YES.

23          **THE COURT:**  SO I'M GOING TO MARK, HAVE MARKED AS

24   COURT'S EXHIBIT 1 FOR THIS HEARING THIS SPREADSHEET, WHICH IS

25   ENTITLED, "PLAINTIFF'S RESPONSE TO THE COURT'S QUESTION TWO

1   REQUESTING CITATIONS TO THE RECORDS SUBMITTED BY PLAINTIFFS

2   THAT REFERENCE THE GOVERNMENT'S PUBLIC DISCLOSURES REGARDING

3   SOLE DOMESTIC SURVEILLANCE."

4           SO WITH THAT SUBMISSION, WHICH, OF COURSE, I WILL

5   REVIEW, IS THERE ANYTHING FURTHER YOU WISH TO SAY ON THIS

6   POINT?

7           **MR. WIEBE:**  JUST ONE OTHER POINT ON THIS PART OF THE

8   COURT'S QUESTION, AND THAT'S ONE THING WE DON'T REFERENCE

9   THERE, WHICH I DID WANT TO BRING TO THE COURT'S ATTENTION, WAS

10  IN THE *HEPTING* CASE, THE GOVERNMENT'S CONCESSION THROUGH THE

11  ASSISTANT ATTORNEY GENERAL KEISLER THAT NOTHING IN THE MARK

12  KLEIN DECLARATION -- IN THE AT&T DOCUMENTS ATTACHED TO THE MARK

13  KLEIN DECLARATION DETAILING THE STUDY GROUP THREE PROGRAM OR

14  THE MARCUS DECLARATION IMPLICATED ANY PRIVILEGED MATTER.  I

15  THINK THAT'S ANOTHER CONCESSION BY THE GOVERNMENT THAT I WANTED

16  TO BRING TO THE COURT'S ATTENTION, AND WE SUBMITTED THAT IN THE

17  FORM OF A REQUEST FOR JUDICIAL NOTICE.

18          **THE COURT:**  COUNSEL, IS THERE ANYTHING YOU WISH TO

19  SAY?

20          **MR. BRINCKERHOFF:**  JUST ONE THING, JUDGE.

21          **THE COURT:**  CERTAINLY.

22          **MR. BRINCKERHOFF:**  DO I NEED INTRODUCE MYSELF AGAIN?

23          **THE COURT:**  ONCE IS FINE.

24          **MR. BRINCKERHOFF:**  I JUST WANT TO MAKE SURE.

25          AGAIN, *SHUBERT* IS IN A SOMEWHAT DIFFERENT PROCEDURAL

1   POSTURE THAN *JEWEL*.  SPECIFICALLY, WE HAVE NOT MADE A MOTION

2   FOR SUMMARY JUDGMENT, AND, SO, THEREFORE, DID NOT SUBMIT ANY

3   KIND OF EVIDENCE, WHATEVER IT MIGHT BE.

4           IN THE *SHUBERT* COMPLAINT, THERE ARE A NUMBER OF AREAS

5   WHERE WE MAKE PUBLIC DISCLOSURE ALLEGATIONS.  MANY OF THEM HAVE

6   FOOTNOTES OR CITATIONS, WHICH I THINK ARE SUFFICIENT FOR

7   PURPOSES OF ANSWERING THE COURT'S QUESTION.

8           THERE ARE SOME THAT DO NOT HAVE THOSE CITATIONS, AND

9   WE WOULD BE HAPPY TO PROVIDE SPECIFIC CITATIONS FOR ANY OF

10  THOSE PUBLIC DISCLOSURE ALLEGATIONS IN THE COMPLAINT.  THE

11  REASON THEY HADN'T BEEN PROVIDED AT THIS STAGE IS BECAUSE WE

12  ARE DEALING WITH A MOTION TO DISMISS AND THE STANDARD ON A

13  MOTION TO DISMISS AND HAD NOT THOUGHT IT WOULD BE NECESSARY TO

14  PROVIDE THE SPECIFIC CITATIONS FOR EVERY ONE OF THOSE PUBLIC

15  DISCLOSURE ALLEGATIONS.

16          **THE COURT:**  IF THE COURT NEEDS THAT, IT WILL

17  CERTAINLY ORDER THAT IN A SUBSEQUENT ORDER.  BUT FOR THE

18  PURPOSE OF THESE PROCEEDINGS THE COURT WILL BASE ITS DECISION

19  ON THE CURRENT RECORD, AND IF THE COURT NEEDS SUPPLEMENTATION,

20  THE COURT WILL ORDER THAT.  ALL RIGHT.

21          **MR. BRINCKERHOFF:**  THANK YOU, YOUR HONOR.

22          **THE COURT:**  ALL RIGHT.  WHAT'S THE GOVERNMENT

23  POSITION WITH RESPECT TO QUESTION TWO?

24          **MR. COPPOLINO:**  THANK YOU, YOUR HONOR.  I KNOW YOU

25  READ THE QUESTION FOR THE RECORD, YOUR HONOR, BUT THE NUB OF IT

1    APPEARS TO BE THAT BECAUSE SOME INFORMATION HAS BEEN PUBLICLY

2    DISCLOSED, AND THE GOVERNMENT HAS DENIED SOME PART OF THE

3    ALLEGATIONS THAT THE PLAINTIFFS HAVE RAISED, WOULD THE VERY

4    SUBJECT MATTER DOCTRINE APPLY.

5            I WOULD TAKE IT A STEP FURTHER AND SAY IS THE CASE

6    BARRED FROM BEING DISMISSED AT THE OUTSET.  THE ANSWER TO YOUR

7    QUESTION IS DEFINITELY NO.  THERE'S A LOT TO UNPACK HERE, BUT

8    LET ME START WITH A COUPLE OF BASIC POINTS.

9            FIRST OF ALL, IN *AL-HARAMAIN* WHAT WAS AT ISSUE WAS

10   THE TERRORIST SURVEILLANCE PROGRAM, WHICH WAS A PUBLICLY

11   ACKNOWLEDGED PROGRAM BY PRESIDENT BUSH IN DECEMBER OF 2005,

12   WHICH WAS DESCRIBED AS WHEN THE PRESIDENT AUTHORIZED THE NSA TO

13   INTERCEPT THE CONTENT OF CERTAIN INTERNATIONAL COMMUNICATIONS

14   TO AND FROM THE UNITED STATES REASONABLY BELIEVED TO INVOLVE A

15   MEMBER OR AGENT OF AL QAEDA.  IT WAS AN AL QAEDA-SPECIFIC

16   TERRORIST SURVEILLANCE PROGRAM, AND IT IS NOT CHALLENGED HERE,

17   BUT THAT IS WHAT LED THE NINTH CIRCUIT TO CONCLUDE IN

18   *AL-HARAMAIN* THAT THERE WAS NO BASIS FOR DISMISSAL THERE ON THE

19   VERY SUBJECT MATTER OF THE CASE.  OF COURSE, THE DISTRICT

20   COURT -- THE CIRCUIT COURT UPHELD DISMISSAL OF CASE ON STATE

21   SECRETS GROUNDS ANYWAY.

22           THAT LEADS ME TO MY SECOND POINT, WHICH IS THAT THIS

23   VERY SUBJECT MATTER DOCTRINE IS NOT THE ONLY BASIS FOR

24   DISMISSAL OF THE STATE SECRETS CASE AT THE OUTSET.  IN FACT,

25   THERE ARE SEVERAL OTHERS.  THE PHRASE "VERY SUBJECT MATTER" HAS

1    FALLEN OUT OF VOGUE SOMEWHAT IN THE NINTH CIRCUIT, ALTHOUGH

2    IT'S NOT A DEAD CONCEPT.  I THINK WHAT I WOULD URGE THE COURT

3    TO DO IS SIMPLY NOT GET HUNG UP ON LABELS.  THE NINTH CIRCUIT

4    DECISION IN *JEPPESEN* AND IN *AL-HARAMAIN* LAY OUT THE ANALYSIS

5    EXTREMELY WELL.

6          WHAT THE COURT IN *AL-HARAMAIN* POINTED OUT IS THAT A

7    BRIGHT LINE DOES NOT ALWAYS DISTINGUISH BETWEEN THE SUBJECT

8    MATTER OF THE CASE OR THE REASON FOR DISMISSAL.  SOMETIMES IT'S

9    ON A CONTINUUM.  SOMETIMES VERY SUBJECT MATTER IS NOT A STATE

10   SECRET, BUT THE CASE MUST STILL BE DISMISSED AT THE OUTSET, AND

11   *AL-HARAMAIN* WAS SUCH A CASE, AND WE CONTEND THIS ONE IS AS

12   WELL.

13         IN THIS CASE WE HAVE NOT BASED DISMISSAL SOLELY ON

14   THE VERY SUBJECT MATTER DOCTRINE.  INDEED, AS MR. WIEBE POINTED

15   OUT, WE MENTIONED IT ONLY IN PASSING SIMPLY BECAUSE IT HAS

16   DIMINISHED SOMEWHAT IN THE NINTH CIRCUIT.  NINTH CIRCUIT

17   AUTHORITY POINTS OUT AT LEAST FOUR BASES FOR DISMISSAL OF A

18   CASE ON THE STATES SECRETS PRINCIPLE.

19         ONE, CAN THE PLAINTIFF ESTABLISH THEIR STANDING AS A

20   FACTUAL MATTER, NOT AS A MATTER OF ALLEGATION.  THAT'S HOW

21   *AL-HARAMAIN* WENT OFF.  THAT'S ONE OF THE GROUNDS FOR DISMISSAL

22   FOR SUMMARY JUDGMENT THAT WE SEEK HERE.

23         WE HAVE ASSERTED PRIVILEGE OVER WHETHER OR NOT THESE

24   PLAINTIFFS HAVE BEEN PERSONALLY SUBJECT TO ALLEGED NSA

25   SURVEILLANCE ACTIVITIES, AND WE HAVE DEMONSTRATED IN OUR

1    MATERIALS WHY WE BELIEVE THAT INFORMATION IS PROPERLY

2    PRIVILEGED, BECAUSE REASONABLY -- DISCLOSURE OF THAT

3    INFORMATION REASONABLY COULD BE EXPECTED TO CAUSE HARM TO

4    NATIONAL SECURITY BY INDICATING WHAT THE NSA DOES OR DOES NOT

5    DO, WHAT ITS CAPABILITIES ARE OR ARE NOT.

6            SO IN *AL-HARAMAIN* THE COURT TEACHES IF THE PLAINTIFFS

7    CANNOT ESTABLISH STANDING WITH PRIVILEGED INFORMATION, THE CASE

8    MUST BE DISMISSED.

9            *JEPPESEN* GOES FURTHER AND SAYS THERE IS ANOTHER BASIS

10   FOR DISMISSAL AT THE OUTSET, WHETHER THE PLAINTIFFS CAN

11   ESTABLISH THEIR PRIMA FACIE CASE WITHOUT PRIVILEGED

12   INFORMATION.  WE ALSO BELIEVE THAT'S NOT POSSIBLE.  BUT EVEN IF

13   THEORETICALLY THEY COULD, PLAINTIFFS WOULD ULTIMATELY BEAR THE

14   BURDEN OF PROOF ON THE MERITS IN THIS CASE, AND THEY COULD NOT

15   ESTABLISH THAT WITHOUT USING INFORMATION THAT'S PROPERLY

16   PRIVILEGED, INCLUDING, OF COURSE, WHETHER OR NOT THEIR CARRIERS

17   THAT ARE ALLEGED TO HAVE ASSISTED THE NSA HAVE, IN FACT, BEEN

18   ASSISTED IN THESE ALLEGED ACTIVITIES.

19           THAT IS INFORMATION OVER WHICH WE HAVE ASSERTED

20   PRIVILEGE, AND WE'VE SET FORTH IN OUR PAPERS WHY THAT

21   INFORMATION IS PROPERLY PROTECTED.  INDEED, CONGRESS ENACTED

22   LEGISLATION TO PROTECT THE CARRIERS FROM HAVING TO LITIGATE

23   THESE VERY ISSUES.  SO, A SECOND REASON IS THE PLAINTIFFS

24   CANNOT PROVE THEIR CASE.

25           THE PLAINTIFFS WOULD ALSO NEED TO ESTABLISH THE

1   EXISTENCE OF ANOTHER ACTIVITY AS TO WHICH THE GOVERNMENT HAS

2   NOT CONFIRMED OR DENIED THE ALLEGED COLLECTION OF COMMUNICATION

3   RECORDS.  THIS IS A SEPARATE CLAIM IN THIS CASE, AND THE

4   PLAINTIFFS WOULD NEED TO ESTABLISH THE EXISTENCE OF THAT

5   PROGRAM; HOW IT OPERATED AND WHETHER IT OPERATED AS TO THEIR

6   RECORDS.  AND IF THEY CANNOT DO THAT, AS WE BELIEVE THEY COULD

7   NOT, WITHOUT RISK OF HARM OR REQUIRING THE DISCLOSURE OF

8   PROPERLY PRIVILEGED INFORMATION, THE CASE WOULD HAVE TO BE

9   DISMISSED.

10          THE THIRD GROUND FOR DISMISSAL IS WHETHER DEFENDANTS

11  WOULD NEED THE INFORMATION IN ORDER TO PRESENT A DEFENSE.  NOT

12  JUST THE GOVERNMENT, BUT THERE ARE NUMEROUS INDIVIDUAL CAPACITY

13  DEFENDANTS IN THIS CASE THAT HAVE BEEN SUED, AND OUR MOTION TO

14  DISMISS OR FOR SUMMARY JUDGMENT ON THE STATES SECRETS PRIVILEGE

15  ENCOMPASSES CLAIMS AGAINST THOSE FOLKS ON THE GROUNDS OF THE

16  STATES SECRETS PRIVILEGE.  THEY WOULD CLEARLY NEED TO BE ABLE

17  TO PRESENT INFORMATION REGARDING CLASSIFIED NATIONAL SECURITY

18  MATTERS IN ORDER TO DEFEND.

19          THERE IS A FOURTH ASPECT OF *JEPPESEN* WHICH I WOULD

20  EXPRESS.  IN SOME WAYS IT'S SIMILAR TO THE VERY SUBJECT MATTER

21  DOCTRINE, AND IT IS A CATCH-ALL, AND IT IS THE ONE I THINK THAT

22  IS MOST APPLICABLE HERE, AND THAT IS, IF INFORMATION NEEDED TO

23  LITIGATE THE CASE -- NEEDED TO LITIGATE THE CASE TO A JUDGMENT

24  ON THE MERITS, IF THE DISCLOSURE OF THAT INFORMATION WOULD

25  PRESENT AN UNACCEPTABLE RISK OF HARM, THEN THE CASE CANNOT

1    PROCEED.  THAT OCCURS, AMONG OTHER PLACES, WHEN AS A PRACTICAL

2    MATTER SECRET AND NON-SECRET INFORMATION CANNOT BE SEPARATED,

3    WHEN THE PRIVILEGED INFORMATION IS SO INEXTRICABLY INTERTWINED

4    IN EVERY ALLEGATION AND IN EVERY STEP OF THE CASE SUCH THAT THE

5    RISK -- THE RISK OF DISCLOSURE EXISTS AT EVERY TURN FROM THE

6    OUTSET, *JEPPESEN* TEACHES THE CASE NOT ONLY SHOULD BE DISMISSED,

7    BUT IT ALSO ADVISES THE COURT -- THIS IS AT 614 F.3D 1082, THE

8    COURT MUST RESTRICT A PARTY'S ACCESS NOT ONLY TO EVIDENCE WHICH

9    ITSELF RISKS THE DISCLOSURE OF STATE SECRETS, BUT ALSO TO THOSE

10   PIECES OF EVIDENCE OR AREAS OF QUESTIONING WHICH PRESS SO

11   CLOSELY UPON HIGHLY SENSITIVE MATERIAL THAT THEY CREATE A HIGH

12   RISK OF INADVERTENT OR INDIRECT DISCLOSURE.

13            THAT UNQUESTIONABLY IS THE CASE HERE, BECAUSE THE

14   PLAINTIFFS ARE SEEKING DISCOVERY INTO THE VERY SUBJECT AREAS OF

15   THE PRIVILEGE ASSERTION.  THEY ARE NOT ATTEMPTING TO TAKE

16   DISCOVERY INTO SOME NON-CLASSIFIED AREA.

17            THERE'S NOTHING ABOUT THE STATE SECRETS PRIVILEGE

18   INFORMATION IN THIS CASE THAT IS PERIPHERAL TO THE CASE.  IT IS

19   DIRECTLY AT ISSUE.  THE CASE IS ABOUT WHAT DID PRESIDENT BUSH

20   AUTHORIZE NSA TO DO AFTER 9/11.  HOW DID THEY DO IT?  DID THEY

21   DO IT THESE PLAINTIFFS?  DID THEY WORK WITH THEIR CARRIERS?

22   THAT'S WHAT THE LAWSUIT IS ABOUT.  THERE'S NOTHING

23   NON-PRIVILEGED ABOUT ANY OF THIS CASE.

24            I WOULD LIKE TO ADDRESS MORE SPECIFICALLY THE

25   QUESTION, DOES THE GOVERNMENT'S DENIAL OF A PART OF THE

1   ALLEGATIONS IN THIS CASE WARRANT THAT THE CASE NOT BE DISMISSED

2   AT ALL?  AND I THINK THE ANSWER TO THAT QUESTION IS, AGAIN, NO.

3           I WANT TO MAKE CLEAR THAT THAT DENIAL DOES NOT APPLY

4   TO EVERY ALLEGATION THAT THEY'VE RAISED.  THERE'S ONE SPECIFIC

5   THING THAT THEY'VE ARGUED THAT IN THE SPRING OF 2006 PRESIDENT

6   BUSH AND OTHERS DENIED.

7           THAT IS WITH RESPECT TO THE COLLECTION OF CONTENT --

8   COMMUNICATION CONTENT AS DISTINGUISHED FROM RECORDS -- AND

9   WE'VE DEFINED IT IN OUR BRIEFS AND DECLARATIONS VERY

10  SPECIFICALLY AS THE SUBSTANCE AND THE MEANING OR THE PURPORT OF

11  A COMMUNICATION.  THE PRESIDENT WAS ASKED IF THE TERRORIST

12  SURVEILLANCE PROGRAM CONSTITUTED A DRAGNET ON THE COLLECTION OF

13  CONTENT IN THE UNITED STATES OF MILLIONS OF DOMESTIC

14  COMMUNICATIONS, AND THE PRESIDENT SAID IT DID NOT.

15          BY THE WAY, HIS STATEMENTS WERE QUOTED BY JUDGE

16  WALKER IN HIS DECISION IN *HEPTING* AT 439 F.SUPP.2D 987.

17          AND THE PRESIDENT SAID, THEN PRESIDENT BUSH SAID THE

18  TERRORIST SURVEILLANCE PROGRAM DID NOT --

19          **THE COURT:**  SLOW DOWN, PLEASE.

20          **MR. COPPOLINO:**  I'M SORRY.

21          THE PRESIDENT -- THEN PRESIDENT BUSH SAID THE

22  TERRORIST SURVEILLANCE PROGRAM DID NOT INVOLVE THE COLLECTION

23  OF DOMESTIC COMMUNICATIONS AND DID NOT INVOLVE THE COLLECTION

24  OF COMMUNICATIONS OF MILLIONS OF AMERICANS.

25          THE ATTORNEY GENERAL AT THAT TIME, ROBERTO GONZALES,

1    REITERATED THAT.  THIS WAS THE STATE OF THE RECORD WE HAD AT

2    THE OUTSET OF THE CASE.  THERE'S NOTHING IN THE LAW THAT

3    FORECLOSES THE GOVERNMENT FROM SEEKING DISMISSAL WHERE THE

4    INFORMATION NEEDED TO LITIGATE THE QUESTION OF WHETHER THAT

5    NARROW DENIAL IS TRUE OR NOT WOULD BE PROTECTED.

6            TO PROVE -- TO ADDRESS THAT ALLEGATION OF A CONTENT

7    DENIAL -- OF A CONTENT -- EXCUSE ME -- A CONTENT DRAGNET, WHICH

8    THE GOVERNMENT HAS DENIED FROM THE BEGINNING OF THE SUIT, YOU

9    WOULD HAVE TO PROVE A NEGATIVE.  YOU WOULD HAVE TO PROVE WHAT

10   THE NSA DOESN'T DO, AND YOU WOULD HAVE TO DO THAT BY SETTING

11   FORTH HOW THE NSA GOES ABOUT COLLECTING THE CONTENT OF

12   COMMUNICATIONS IN ITS SIGNALS INTELLIGENCE MISSION.

13           IT'S REALLY ALMOST UNLIMITED WHAT THAT INQUIRY COULD

14   BE.  BUT, IN ANY EVENT, ALL OF THE NSA SOURCES AND METHODS FOR

15   COLLECTING FOREIGN INTELLIGENCE INFORMATION TO PROTECT THIS

16   COUNTRY ARE GOING TO BE PRIVILEGED, AND THAT IS WHY THAT CLAIM

17   CANNOT PROCEED.

18           BUT I WANT TO EMPHASIZE A COUPLE OF OTHER THINGS.

19           THAT'S NOT THE ONLY BASIS FOR THE STATES SECRETS

20   PRIVILEGE.  WE'VE ASSERTED THE PRIVILEGE OVER WHETHER OR NOT

21   PARTICULAR CARRIERS WERE INVOLVED.  WE'VE ASSERTED THE

22   PRIVILEGE OVER THE COMMUNICATION RECORDS ALLEGATION, WHICH IS A

23   SEPARATE DEAL; EVEN JUDGE WALKER DIDN'T ALLOW DISCOVERY INTO

24   THAT.  AND WE'VE ASSERTED THE PRIVILEGE OVER WHETHER OR NOT THE

25   PLAINTIFFS HAVE BEEN SUBJECT TO SURVEILLANCE.

1             SO THE ANSWER TO YOUR QUESTION IS, EVEN IF YOU

2    THOUGHT THE VERY SUBJECT MATTER DOCTRINE DOESN'T APPLY, THE

3    CASE SHOULD STILL BE DISMISSED AT THE OUTSET BASED UPON OUR

4    PRIVILEGE ASSERTION.

5             **THE COURT:**  ANYTHING FURTHER YOU WANT TO SAY AT THIS

6    POINT?

7             **MR. WIEBE:**  YES, INDEED, YOUR HONOR.

8             MR. COPPOLINO HAS TAKEN THE OPPORTUNITY TO PRESENT TO

9    YOU ALL OF HIS STATE SECRETS --

10            **THE COURT:**  I KNOW.  I UNDERSTAND.  I THINK WE ARE

11   GOING TO GET INTO THAT, AND I HOPE WE DON'T HEAR ANY REPETITION

12   OF WHAT WAS JUST SAID DURING THIS ARGUMENT.  SO, FOR EXAMPLE,

13   ON THE NEXT QUESTION, WE TALK SPECIFICALLY ABOUT THE STATES

14   SECRETS PRIVILEGE.  YOU DON'T NEED TO -- IF THERE'S A SPECIFIC

15   POINT -- I DON'T WANT TO MAKE THIS PROCEEDING ARTIFICIALLY

16   WEDDED TO THE QUESTION.  SO IF THERE'S A SPECIFIC NARROW POINT

17   THAT THE GOVERNMENT JUST MADE THAT YOU WISH TO RESPOND TO, GO

18   AHEAD, BUT IF IT'S COVERED IN A LATER QUESTION, YOU CAN DO IT

19   IN THAT CONTEXT.  I'LL LEAVE IT TO UP YOU.

20            **MR. WIEBE:**  OKAY.  I WOULD LIKE TO ADDRESS, SINCE HIS

21   STATEMENTS ARE FRESH IN THE COURT'S MIND NOW, THE POINTS HE HAS

22   MADE.

23            FIRST OF ALL, I THINK HE'S CONCEDED THAT THE VERY

24   SUBJECT MATTER DOCTRINE, THE THRUST OF THE COURT'S QUESTION IS

25   A VERY NARROW DOCTRINE THAT REALLY DOESN'T HAVE ANY APPLICATION

1    HERE.

2           AS TO THE OTHER STATE SECRETS THRESHOLD DISMISSAL

3    ARGUMENTS HE'S MADE, FIRST OF ALL -- AND I WON'T REPEAT THIS.

4    WE'VE LAID OUT IN OUR BRIEF WHY WE THINK THAT *GENERAL DYNAMICS*

5    HAS MADE A GREAT SHIFT IN THE LAW IN THIS AREA AND HAS UNDERCUT

6    THE REASONING OF *MOHAMMED VERSUS JEPPESEN* WITH RESPECT TO THOSE

7    ARGUMENTS.

8           BUT EVEN IF YOU ASSUME THAT *MOHAMMED* STILL APPLIES

9    HERE, THERE WOULD STILL BE NO BASIS FOR A STATES SECRET

10   THRESHOLD DISMISSAL.

11          MR. COPPOLINO RAISES THE VALID DEFENSE EXCEPTION.  AS

12   WE'VE EXPLAINED AT LENGTH IN OUR PAPERS, THAT DOESN'T -- THAT

13   REQUIRES MORE THAN JUST A DEFENDANT COMING IN HERE AND SAYING,

14   WELL, I'VE GOT A DEFENSE, BUT I CAN'T TELL YOU WHAT IT IS.

15   THEY ACTUALLY HAVE TO PUT IN A PRIMA FACIE CASE OF EVIDENCE

16   PROVING UP THAT DEFENSE IN SECRET TO THE COURT.  THAT'S WHAT

17   *GENERAL DYNAMICS* SAYS, AND THAT'S WHAT *IN RE SEALED CASE*, THE

18   DISTRICT OF COLUMBIA CIRCUIT CASE WE CITE IN THE PAPERS, SAYS.

19   SO THEY HAVEN'T DONE THAT HERE, SO THAT'S NOT APPROPRIATE

20   FOR -- GROUND FOR DISMISSAL AT THE THRESHOLD.

21          HE ALSO BRINGS UP THE QUESTION OF WHETHER WE CAN

22   ESTABLISH OUR CASE WITH NON-SECRET EVIDENCE.  WE HAVE HAD NO

23   OPPORTUNITY TO CONDUCT DISCOVERY TO ATTEMPT TO DO THAT, SO

24   THAT'S CLEARLY PREMATURE AT THIS STAGE OF THE CASE.  THAT'S NO

25   BASIS FOR DISMISSING.

1          HE SAYS THAT THE SECRET EVIDENCE CAN'T BE

2     DISENTANGLED FROM THE NON-SECRET EVIDENCE HERE.  I THINK HE

3     GREATLY OVERSTATES WHAT THE NATURE OF OUR CLAIMS ARE.

4          THIS IS NOT A CASE LIKE *AL-HARAMAIN*, FOR EXAMPLE.

5     *AL-HARAMAIN* WAS A TARGETED SURVEILLANCE CASE.  WE ARE ALLEGING

6     UNTARGETED SURVEILLANCE.  WE DON'T NEED TO PROVE WHO THE

7     TARGETS THAT THE GOVERNMENT WAS ULTIMATELY GOING AFTER WERE.

8     WE DON'T HAVE TO PROVE WHAT THE THREATS THEY WERE DIRECTED AT

9     WERE.  ALL THAT IS COMPLETELY OUTSIDE THE SCOPE OF OUR CASE.

10    SO THE SUGGESTION AS IT'S MADE IN DIRECTOR CLAPPER'S

11    DECLARATION IS WE WOULD NEED TO PROVE WHO THE TARGETS WERE,

12    WHAT THE NATURE OF THE THREAT WAS, NONE OF THAT IS PART OF OUR

13    CASE.  AND AT THE VERY LEAST, IT'S CLEARLY PREMATURE TO SAY IT

14    COULDN'T BE DISENTANGLED BEFORE THE COURT HAS ACTUALLY

15    ATTEMPTED TO ENGAGE IN THAT PROCESS.

16          **MR. COPPOLINO:**  YOUR HONOR, COULD I HAVE JUST TWO

17    MINUTES RESPONSE?

18          **THE COURT:**  ONE, BECAUSE I WANT TO MOVE ON TO THE

19    NEXT QUESTION.

20          **MR. COPPOLINO:**  WE HAVE NOT CONCEDED THE CASE ISN'T

21    SUBJECT TO DISMISSAL ON VERY SUBJECT MATTER GROUNDS.  WE HAVE

22    FIVE OTHER GROUNDS TO DISMISS.

23          SECONDLY, *GENERAL DYNAMICS* DOES NOTHING TO AFFECT

24    NINTH CIRCUIT PRECEDENT, AND WE SET THAT FORTH IN OUR BRIEF.

25          (INTERRUPTION BY THE COURT REPORTER.)

1          **THE COURT:**  JUST BECAUSE I GAVE YOU ONE MINUTE

2     DOESN'T MEAN YOU HAVE TO --

3          **MR. COPPOLINO:**  THE VALID DEFENSE THEORY THAT HE'S

4     CITING IN THE *HORNE* CASE, *IN RE:  SEALED CASE*, *HORNE* FROM THE

5     D.C. CIRCUIT HAS NOT BEEN ADOPTED BY THE NINTH CIRCUIT.  WE

6     ACTUALLY DON'T THINK IT'S A CORRECT ANALYSIS.  WE AGREE WITH

7     THE DISSENT THERE.  ONE OF THE THINGS THE DISSENT POINT OUTS IS

8     IT'S NOT BEEN ADOPTED IN ANY OTHER CIRCUIT.  IT WOULD REQUIRE

9     YOU TO PROVE THE MERITS OF THE CLAIM IN ORDER TO OBTAIN THE

10    STATES SECRET DISMISSAL.  THAT FINDS NO SUPPORT IN *REYNOLDS* OR

11    ANY OTHER CASES APPLY THE STATE SECRETS PRIVILEGE.

12         HE'S GIVEN US A NUMBER OF CITES NOW TO THE RECORD.  I

13    WOULD JUST POINT OUT NOW THAT WE HAVE WHAT HE'S RELYING IN THAT

14    MASSIVE RECORD AS FAR AS GOVERNMENT STATEMENTS, WE'VE ADDRESSED

15    MUCH OF THIS IN OUR BRIEF, AND NONE OF THE STATEMENTS BY THE

16    GOVERNMENT OFFICIALS HE'S IDENTIFIED HAS DISCLOSED ANYTHING

17    THAT'S CLASSIFIED, ANYTHING THAT'S SUBJECT TO THE STATES

18    SECRETS PRIVILEGE, ANYTHING THAT WOULD REMOTELY UNDERCUT WHAT

19    WE HAVE ASSERTED PRIVILEGE OVER.  NOR HAVE THE STATEMENTS BY

20    MEMBERS OF CONGRESS -- CONGRESS CANNOT WAIVE THE EXECUTIVE

21    BRANCH'S PRIVILEGE.  THEY CONCEDED THAT.

22         LASTLY, DIRECTOR PETER KEISLER'S ARGUMENT IN THIS

23    COURT IN 2006 IS WHOLLY INCORRECT, AND I HAVE SUBMITTED

24    MATERIALS ON THAT WITH OUR EVIDENTIARY OBJECTION.  IF YOU WERE

25    GOING TO TAKE JUDICIAL NOTICE OF MR. KEISLER'S STATEMENTS, YOU

1    SHOULD TAKE JUDICIAL NOTICE OF THE ENTIRE STATEMENT.  HE DID

2    NOT ARGUE THAT THE SUBJECT MATTERS OF THE KLEIN AND MARCUS

3    DECLARATIONS WERE NOT SUBJECT TO THE PRIVILEGE.  HE ARGUED THAT

4    THE DOCUMENTS THEY RELIED ON WERE NOT PRIVILEGED BECAUSE THEY

5    WERE NOT GOVERNMENT DOCUMENTS.

6           THANK YOU, YOUR HONOR.

7           **THE COURT:**  COUNSEL, THAT IS THE LONGEST MINUTE I

8    EVER EXPERIENCED.

9           **MR. WIEBE:**  THIRTY SECONDS, YOUR HONOR?

10          JUST ONE POINT, AND THAT IS WITH RESPECT TO *IN RE:*

11   *SEALED CASE* IN THE NINTH CIRCUIT, THE *MOHAMMED* DECISION AT PAGE

12   1083 IN DISCUSSING THE VALID DEFENSE EXCEPTION FOLLOWS ITS

13   STATEMENT OF THE VALID DEFENSE EXCEPTION WITH A CITE, ACCORD,

14   *IN RE: SEALED CASE*.

15          **THE COURT:**  I WILL READ THOSE CASES, AND I APPRECIATE

16   COUNSEL'S CITING THOSE TO THE COURT.

17          QUESTION THREE I WANT TO START WITH PLAINTIFF'S

18   COUNSEL AND ASK THE QUESTION, WHICH IS -- THIS IS KIND OF --

19   YOU HAVE BEEN ARGUING THIS POINT, AND YOU DON'T NEED TO REPEAT,

20   BUT I WANT TO HEAR THE RESPONSE.

21          DOES THE STATE SECRETS PRIVILEGE BAR PLAINTIFF'S

22   CONSTITUTIONAL CLAIMS?

23          **MR. WIEBE:**  NO FOR TWO REASONS.

24          FIRST OF ALL, BECAUSE THE STATE SECRETS PRIVILEGE HAS

25   BEEN DISPLACED BY SECTION 1806(F) HERE.  1806(F) APPLIES TO ALL

1    OF OUR CLAIMS.  ONCE THE EVIDENCE COMES IN THROUGH 1806(F), THE

2    COURT IS TO DETERMINE THE LEGALITY OF THE SURVEILLANCE UNDER

3    EVERY APPLICABLE LEGAL STANDARD THAT THE PLAINTIFFS HAVE

4    RAISED, AND THE *ACLU VERSUS BARR* CASE SAYS THAT.

5              IN ANY EVENT, AS OUR BRIEFING EXPLAINS AND AS I'VE

6    SAID PREVIOUSLY, *GENERAL DYNAMICS* MAKES CLEAR, IN A

7    NON-CONTRACT CASE ALL THE STATE SECRET PRIVILEGE DOES IS BAR

8    EVIDENCE, NOT CLAIMS, AND IF THE EVIDENCE COMES IN, THEN IT'S

9    USED FOR ALL CLAIMS.

10             **THE COURT:**  ALL RIGHT.  COUNSEL?

11             **MR. COPPOLINO:**  YOUR HONOR, IF THE QUESTION IS DOES

12   THE STATE SECRET PRIVILEGE BAR CONSTITUTIONAL CLAIMS, THAT IS,

13   CAN IT EXTEND TO BARRING CONSTITUTIONAL CLAIMS, THE ANSWER IS

14   CLEARLY YES.  *AL-HARAMAIN* INVOLVED A CONSTITUTIONAL CLAIM.  A

15   VARIOUS SIMILAR CASE CALLED *ACLU VERSUS NSA* CITED IN OUR BRIEFS

16   ALSO INVOLVED A CONSTITUTIONAL CHALLENGE TO THE TERRORIST

17   SURVEILLANCE PROGRAM.

18             THERE ARE OTHERS.  THERE'S A FOURTH CIRCUIT CALLED

19   *EL-MASRI VERSUS TENET*, ALSO CITED IN OUR BRIEF, WHICH I'M QUITE

20   CERTAIN INVOLVED CONSTITUTIONAL CLAIMS.  D.C. CIRCUIT AUTHORITY

21   ON THE STATE SECRETS PRIVILEGE THAT GOES BACK AWHILE, A CASE

22   CALLED *MITCHELL VERSUS ELSBERG* AND *HALKIN*, H-A-L-K-I-N, ALSO

23   INVOLVED CONSTITUTIONAL CLAIMS.  THERE'S NO BAR ON THIS.

24             THE SHUBERT PLAINTIFFS ARGUED THAT SUPREME'S COURT

25   DECISION IN *WEBSTER VERSUS DOE* SUGGESTS THAT THE STATE SECRETS

1    PRIVILEGE COULD NOT APPLY TO CONSTITUTIONAL CLAIMS.  IN

2    *WEBSTER*, WHICH IS NOT A STATES SECRETS CASE, THE SUPREME COURT

3    WAS REVIEWING THE REVOCATION OF A SECURITY CLEARANCE OF A CIA

4    EMPLOYEE, AND THE COURT HELD THAT REVOCATION COULD NOT BE

5    REVIEWED ON STATUTORY GROUNDS, BUT THAT IT COULD BE REVIEWED ON

6    CONSTITUTIONAL GROUNDS.  BUT, AGAIN, HAD NOTHING TO DO WITH THE

7    STATE SECRETS PRIVILEGE.

8          AND, INTERESTINGLY, THE SUPREME COURT IN *WEBSTER*

9    TALKED ABOUT *REYNOLDS*.  IT SAID THERE WAS CONCERN IF THE COURT

10   ALLOWED CONSTITUTIONAL REVIEW OF THE SECURITY CLEARANCE

11   REVOCATION THAT WOULD RISK OR RESULT IN THE DISCLOSURE OF

12   NATIONAL SECURITY INFORMATION.  AND THE SUPREME COURT'S

13   DECISION SAID ESSENTIALLY NOT TO WORRY, YOU HAVE *UNITED STATES*

14   *VERSUS REYNOLDS* IF INFORMATION COMES UP IN THE COURSE OF

15   LITIGATING THE CONSTITUTIONAL CLAIM THAT WOULD NEED TO BE

16   PROTECTED.

17         ONE OTHER POINT.  MY COLLEAGUE, MR. WIEBE, SUGGESTED

18   THAT IF 1806(F) DID PREEMPT THE STATES SECRETS PRIVILEGE, IT

19   WOULD APPLY TO THE CONSTITUTIONAL CLAIMS.  THERE'S ABSOLUTELY

20   NO AUTHORITY FOR THAT.  WE DISAGREE THAT 1806(F) DOESN'T

21   DISPLACE -- WE DISAGREE WHETHER THAT PROVISION DISPLACES THE

22   STATE SECRETS PRIVILEGE AT ALL, BUT THERE ISN'T A SHRED OF

23   AUTHORITY SUGGESTING IT WOULD APPLY TO A NON-FISA CLAIM.

24         FISA OPERATES WITHIN ITS OWN TERMS.  IF 1806(F)

25   OPERATES ANYWHERE, IT'S WITH RESPECT TO ELECTRONIC SURVEILLANCE

1    AS DEFINED BY THE FISA IN THE CONTEXT OF THAT STATUTORY

2    PROVISION.

3              *ACLU VERSUS BARR* CERTAINLY DOESN'T HOLD THAT EVIDENCE

4    UNDER FISA COULD BE -- THAT FISA DISPLACEMENT WOULD APPLY TO A

5    NONCONSTITUTIONAL CLAIMS.  *ACLU VERSUS BARR* IS AN EXCELLENT

6    CASE FOR US.  IT HOLDS YOU CANNOT USE THE FISA TO DISCOVER

7    WHETHER OR NOT YOU HAVE BEEN SUBJECT TO SURVEILLANCE.

8              INDEED, THE COURT I THINK DROPPED A FOOTNOTE SAYING

9    THAT A LAWSUIT IS NOT A MOTION TO DISCOVER UNDER 1806(F).  SO

10   THAT'S NOT USEFUL AUTHORITY FOR THEM.

11             BUT, IN ANY EVENT, IF YOU THOUGHT 1806(F) DISPLACED

12   THE STATE SECRET PRIVILEGE, IT COULD APPLY ONLY TO A FISA CLAIM

13   AND ONLY A FISA CLAIM WAS AT ISSUE IN THE AL-HARAMAIN ACTION.

14             THANK YOU, YOUR HONOR.

15             **THE COURT:**  ALL RIGHT.

16             **MR. WIEBE:**  YOUR HONOR, *ACLU VERSUS BARR*, 952 F.2D,

17   PAGE 465, QUOTE:

18                  "WHEN A DISTRICT COURT CONDUCTS A

19                  SECTION 1806(F) REVIEW, ITS TASK IS NOT

20                  SIMPLY TO DECIDE WHETHER THE SURVEILLANCE

21                  COMPLIED WITH FISA.  SECTION 1806(F) REQUIRES

22                  THE COURT TO DECIDE WHETHER THE SURVEILLANCE

23                  WAS, 'LAWFULLY AUTHORIZED AND CONDUCTED.'

24                  THE CONSTITUTION IS LAW.  ONCE THE ATTORNEY

25                  GENERAL INVOKES SECTION 1806(F), THE

1              RESPONDENTS NAMED IN THAT PROCEEDING,

2         THEREFORE, MUST PRESENT NOT ONLY THEIR

3         STATUTORY BUT ALSO THEIR CONSTITUTIONAL

4         CLAIMS FOR DECISION.  ALTHOUGH THERE WILL BE

5         NO ADVERSARY HEARING, WE HAVE HELD THAT THE

6         PROCEDURE MANDATED BY SECTION 1806(F) IS AN

7         ACCEPTABLE MEANS OF ADJUDICATING THE

8         CONSTITUTIONAL RIGHTS OF PERSONS WHO HAVE

9         BEEN SUBJECTED TO FISA SURVEILLANCE."

10        AGAIN, THAT'S PAGE 465.

11        AND ON THE -- SO, I THINK IT'S CLEAR THERE IS

12   AUTHORITY THAT ONCE THE PROCEDURE IS INVOKED, IT APPLIES TO ALL

13   YOUR CLAIMS.

14        IN PARTICULAR, HERE, AGAIN, WE HAVE 2712 SAYING FOR

15   WIRETAP ACT CLAIMS, WHICH WE HAVE, FOR STORED COMMUNICATIONS

16   ACT CLAIMS, WHICH WE HAVE, APPLY SECTION 1806(F) TO THEM.

17   AGAIN, THAT'S SUBSECTION (B)(4), SECTION 2712.

18             **THE COURT:**  ALL RIGHT.

19             **MR. COPPOLINO:**  YOUR HONOR, JUST BRIEFLY.  MR. WIEBE

20   IS MAKING A DIFFERENT POINT FROM THE ONE I WAS MAKING.

21        IF YOU REACH THE MERITS OF WHETHER SURVEILLANCE IS

22   LAWFUL OR NOT UNDER 1806(F) -- AND, IN OUR VIEW, THAT ONLY

23   APPLIES IF SURVEILLANCE EVIDENCE IS BEING USED AGAINST

24   SOMEONE -- YES, THE COURT CONSIDERS THE LAWFULNESS UNDER

25   STATUTORY AND CONSTITUTIONAL LAW.

1          MY POINT, THOUGH, IS THAT THEIR ARGUMENT THAT THE

2     FISA SECTION 1806(F) DISPLACES THE STATE SECRETS PRIVILEGE

3     COULD ONLY APPLY TO A FISA CLAIM.  IN OTHER WORDS, FISA DOESN'T

4     OPERATE TO REGULATE THE GOVERNMENT'S ASSERTION OF PRIVILEGE

5     WITH RESPECT TO A NON-FISA CLAIM.  IT ONLY APPLIES WITHIN THE

6     CONFINES OF FISA.  THAT'S THE ONLY POINT I'M MAKING.

7          **THE COURT:**  MR. BRINCKERHOFF, DID YOU WANT TO SAY

8     SOMETHING?

9          **MR. BRINCKERHOFF:**  YES, AND DIRECTLY, I THINK, TO

10    THAT POINT, WHICH IS WHAT I THINK GOVERNMENT IS SAYING DOESN'T

11    MAKE A LOT OF SENSE IN THE FOLLOWING WAY:  IF THE EVIDENCE

12    COMES IN UNDER THE PROCEDURES OF 1806(F) BECAUSE OF THE FISA

13    CLAIM, THAT EVIDENCE, IN THE LIMITED WAY THAT IT COMES IN, IS

14    IN THE CASE, AND THERE'S NO REASON, LOGICAL OR OTHERWISE, OR AS

15    A MATTER OF COMMON SENSE, THAT THAT EVIDENCE CANNOT BE

16    CONSIDERED BY THE COURT IN EVALUATING THE OTHER CLAIMS,

17    CONSTITUTIONAL CLAIMS OR ANY OTHER CLAIMS IN THE CASE.

18          AND I ALSO DID JUST WANT TO ADDRESS THE POINT THAT

19    THE GOVERNMENT MADE ABOUT *WEBSTER VERSUS DOE*.

20          THE PLAINTIFFS' POSITION IN *SHUBERT* IS THAT WHEN YOU

21    LOOK AT *GENERAL DYNAMICS* AND YOU RECOGNIZE THAT THIS IS AN

22    EVIDENTIARY PRIVILEGE AND NOT SOMETHING MORE SWEEPING, WHICH,

23    OBVIOUSLY, THE CASE HAD BEEN MADE IN BOTH OF THE PLAINTIFFS'

24    CASES HERE, AND YOU LOOK AT THE FACT THAT THERE ARE

25    CONSTITUTIONAL CLAIMS, AND THE KIND OF CARE THAT A COURT NEEDS

1   USE IN EXAMINING THEM AND THINKING ABOUT DISMISSING THEM IN

2   TOTO, ALL YOU CAN DO IS TAKE EVIDENCE OUT OF THE CASE IF THE

3   STATE SECRETS PRIVILEGE APPLIES.  AND HERE UNDER 1806(F), IF

4   THE COURT FOLLOWS JUDGE WALKER'S OPINION, THERE WILL BE THAT

5   EVIDENCE IN THE CASE, AND, THEREFORE, WOULD BE CERTAINLY NO

6   BASIS FOR DISMISSING THE CONSTITUTIONAL CLAIMS OR ANY OF THE

7   OTHER CLAIMS.

8          **THE COURT:**  I WANT TO MOVE ON, BECAUSE I THINK WHAT

9   YOU JUST RAISED SEGUES VERY NICELY TO QUESTION FOUR, WHICH IS

10  QUESTION FOUR IS A TYPICAL DISTRICT COURT QUESTION.  THE NINTH

11  CIRCUIT AND SUPREME COURT GET TO, AS SOMEBODY ONCE SAID, GRADE

12  OUR PAPERS, AND IN A VERY ABSTRACT -- SOMEWHAT ABSTRACT WAY.

13  BUT I'M THE ONE THAT IF I DON'T DISMISS THESE CLAIMS WILL BE

14  TRYING THIS CASE OR DOING SOMETHING IN THE CASE.  "TRYING"

15  MAYBE IS THE WRONG WORD.  SO I ASKED THE FOLLOWING QUESTION

16  BECAUSE IT'S ONE I REALLY DON'T KNOW THE ANSWER TO.  THAT IS

17  THE FOLLOWING QUESTION:

18          FOUR, ASSUMING THE CASE IS NOT DISMISSED AT THIS

19  PROCEDURAL STAGE, WHAT ARE THE PRACTICAL PROCEDURES THAT THE

20  COURT SHOULD FOLLOW TO CONDUCT DISCOVERY AND MAKE FINDINGS OF

21  FACT?  I'LL CONTINUE WITH THIS QUESTION.

22          CONSIDERING THE PROCEDURAL CONTEXT AT SUMMARY

23  JUDGMENT, IN ADDITION TO THE PUBLIC AND UNDERSEAL SUBMISSIONS

24  ALREADY MADE BY DEFENDANTS, WHAT ADDITIONAL EVIDENCE COULD THE

25  GOVERNMENT PROVIDE THAT WOULD AFFECT THE COURT'S ANALYSIS OF

1    THE UNDERLYING ALLEGATIONS OF LIABILITY?

2                   I'LL START WITH PLAINTIFFS' COUNSEL.

3            **MR. WIEBE:**  THANK YOU, YOUR HONOR.

4            **THE COURT:**  WHAT DO I DO NEXT?

5            **MR. WIEBE:**  YOUR HONOR, I THINK JUDGE WALKER LAID OUT

6    A ROADMAP FOR THIS, FOR DOING SO, THAT IS FOR PROCEEDING

7    FORWARD USING SECTION 1806(F), AND THIS WAS IN HIS JANUARY 5TH,

8    2009 ORDER IN THE *AL-HARAMAIN* CASE, THAT'S AT 595 F.SUPP.2D

9    1077, AND HE ENDS THAT ORDER AT PAGES 1089 TO 1090 LAYING OUT A

10   ROADMAP FOR GOING FORWARD UNDER SECTION 1806(F).

11                  HE -- ONE STEP HE IDENTIFIES IS THE COURT REVIEWING

12   THE SECRET EVIDENCE IN CAMERA AS SECTION 1806(F) REQUIRES.

13   ANOTHER POINT HE, ON HIS ROADMAP, IS BRINGING THE PLAINTIFFS

14   INTO THE PROCESS THROUGH SECURITY CLEARANCES AND OTHER

15   APPROPRIATE SECURITY MEASURES.

16                  THIS IS SOMETHING WE DIDN'T TALK ABOUT EARLIER IN

17   CONTEXT OF 1806(F), BUT THE SECOND SENTENCE OF 1806(F) GOES ON

18   TO PROVIDE THAT IN CASES -- LET ME GET THAT LANGUAGE FOR YOU,

19   YOUR HONOR.

20                  AGAIN, THIS IS SECTION 1806(F).  IT'S THE LAST

21   SENTENCE OF THE SECTION.  IT SAYS, IN MAKING THIS

22   DETERMINATION -- QUOTE:

23                      "IN MAKING THIS DETERMINATION, THE

24                  COURT MAY DISCLOSE TO THE AGGRIEVED PERSON

25                  UNDER APPROPRIATE SECURITY PROCEDURES AND

1          PROTECTIVE ORDERS PORTIONS OF THE APPLICATION

2          ORDER OR OTHER MATERIALS RELATING TO THE

3          SURVEILLANCE ONLY WHERE SUCH DISCLOSURE IS

4          NECESSARY TO MAKE AN ACCURATE DETERMINATION

5          OF THE LEGALITY OF THE SURVEILLANCE.

6          NOW, IN THE *AL-HARAMAIN* CASE, JUDGE WALKER HAD

7     DECIDED IT WAS NECESSARY IN ORDER TO ACCURATELY DETERMINE THE

8     SURVEILLANCE -- THE LEGALITY OF THE SURVEILLANCE TO BRING IN

9     THE PLAINTIFFS THERE.  AND THAT'S A STEP ON HIS ROADMAP.

10          ANOTHER STEP ON HIS ROADMAP WAS TO DIRECT THE

11    DEFENDANTS TO DETERMINE WHAT GOVERNMENT EVIDENCE COULD BE

12    DECLASSIFIED AND MADE PUBLIC.

13          SO WE WOULD ANTICIPATE PROCEEDING IN A SIMILAR

14    MANNER.

15          NOW, MR. COPPOLINO EARLIER HAS AVERTED TO THE FACT

16    THAT, ULTIMATELY, JUDGE WALKER, THAT PROCESS DID NOT GO

17    FORWARD.  THERE WAS, AS HE'S ALSO AVERTED TO, HIGHLY

18    CONTENTIOUS RESISTANCE ON THE PART OF THE GOVERNMENT TO GOING

19    FORWARD WITH IT.  I DON'T THINK THAT'S A REASON FOR SAYING WE

20    DON'T APPLY THE STATUTE THAT IS 1806(F) SIMPLY BECAUSE ONE

21    PARTY DOESN'T WANT TO PLAY ALONG.

22          AND, ULTIMATELY, JUDGE WALKER'S DETERMINATION WAS

23    THAT IT WASN'T EVEN NECESSARY TO DO THIS BECAUSE THE PLAINTIFFS

24    HAD COME FORWARD AFTER DOING ADDITIONAL INVESTIGATION IN

25    DISCOVERY WITH SUFFICIENT NONCLASSIFIED EVIDENCE TO PROVE UP

1    THEIR CLAIMS.

2              AND, SO, AGAIN, WE WOULD ANTICIPATE PROCEEDING IN A

3    SIMILAR MEASURED, ORDERLY MANNER HERE.  I THINK THE FIRST STEP

4    WOULD BE MEETING AND CONFERRING TO COME UP WITH A DISCOVERY

5    PLAN FIRST STEP IN EVERY CASE BEFORE THIS COURT.

6              THERE'S GOVERNMENT STATEMENTS AND OTHER PUBLIC

7    EVIDENCE THAT COULD EASILY BE AUTHENTICATED AND DEVELOPED

8    WITHOUT TOUCHING ON STATE SECRETS AT ALL.  NEXT WOULD BE A CASE

9    MANAGEMENT CONFERENCE IN THE COURT.  SO JUST THE USUAL

10   PROCEDURE.  AND AS ISSUES ARISE, THEY'RE DEALT WITH BETWEEN THE

11   PARTIES AND WITH THE COURT'S ASSISTANCE, AS HAPPENS IN EVERY

12   CASE.

13             NOW, THE -- DO YOU WANT ME TO GO AHEAD AND ADDRESS

14   THE SECOND PART OF THE QUESTION?

15             **THE COURT:**  YES, PLEASE.

16             **MR. WIEBE:**  IN TERMS OF THIS PARTICULAR SUMMARY

17   JUDGMENT MOTION, WE DON'T THINK ADDITIONAL EVIDENCE AT THIS

18   TIME FROM THE GOVERNMENT MAKES SENSE JUST BECAUSE THEY HAVEN'T

19   BROUGHT A WE-DIDN'T-DO-IT SUMMARY JUDGMENT MOTION.  THEY ARE

20   NOT TRYING TO PROVE THEY'RE NOT LIABLE.  THEY HAVE RAISED THE

21   STATE SECRET PRIVILEGE GROUNDS AND THE SUMMARY JUDGMENT GROUNDS

22   TO AVOID ANY DETERMINATION OF WHETHER OR NOT THEY'RE LIABLE.

23   SO I DON'T THINK LIABILITY CAN BE DETERMINED IN THE CONTEXT OF

24   THIS PARTICULAR MOTION.

25             AT A LATER STAGE, THOUGH, THERE IS RELEVANT EVIDENCE

1    POSSESSED BY THE GOVERNMENT THAT MAY COME IN THROUGH THE

2    1806(F) PROCEDURE THAT INCLUDES EVIDENCE AS TO WHETHER THE

3    UNTARGETED DRAGNET SURVEILLANCE THAT WE'VE ALLEGED DID OCCUR AS

4    WE ALLEGED IT, EVIDENCE OF ANY COURT ORDERS AUTHORIZING THAT

5    SURVEILLANCE, EVIDENCE OF ANY APPLICATIONS SEEKING TO AUTHORIZE

6    THE SURVEILLANCE THAT WERE DENIED, THAT SORT OF THING.  AGAIN,

7    THAT EVIDENCE --

8            **THE COURT:**  THEN WHAT?  SO THERE'S TWO OBVIOUS --

9    THERE IS MULTIPLE POSSIBILITIES, OR TWO HYPOTHETICAL

10   POSSIBILITIES, OR ONE, THE PLAINTIFFS WERE, YOU KNOW, WERE

11   SURVEILLED OR THEIR INFORMATION WAS INTERCEPTED, AND THE OTHER

12   POSSIBILITY -- THERE'S MANY OTHERS.  THE OTHER POSSIBLE ANSWER

13   IS THEY WERE NOT.

14          SO LET'S ASSUME -- LET'S TAKE THE SECOND ONE.  LET'S

15   ASSUME HYPOTHETICALLY THAT AT SOME POINT THE GOVERNMENT COMES

16   FORTH WITH INFORMATION SUBMITTED ONLY TO THE COURT THAT THERE

17   WAS NO SURVEILLANCE OF YOUR PEOPLE OR THE SHUBERT PEOPLE.  DOES

18   THE COURT THEN MAKE FINDINGS -- WE'RE KIND OF GETTING A LITTLE

19   BIT INTO THE NEXT QUESTION, BUT WHAT HAPPENS?  THE COURT MAKES

20   FINDINGS, AND THEN THE PLAINTIFFS AND THE DEFENDANT ARE BOUND

21   BY THOSE FINDINGS WITHOUT ANY -- ESSENTIALLY, WITHOUT ANY

22   PARTICIPATION, FURTHER PARTICIPATION BY THE PLAINTIFFS?

23          **MR. WIEBE:**  WELL, IN TERMS OF THE LEGALITIES OF

24   SURVEILLANCE, AS WE'VE JUST GONE OVER, 1806(F) DOES ALLOW YOU

25   TO BRING THE PLAINTIFFS INTO THAT PROCESS AND MAKE IT AN

1    ADVERSARIAL PROCESS, AND I THINK DUE PROCESS, OBVIOUSLY,

2    FACTORS INTO THE COURT MAKING THAT DETERMINATION.

3          JUDGE WALKER -- ONE OF THE THINGS HE NOTED IN HIS

4    ROADMAP WAS THAT IT MAY BE THE CASE THAT IF HE WAS TO ISSUE

5    ORDERS, THOSE ORDERS WOULD BE REDACTED OR SEALED AND NOT

6    PUBLICLY DISCLOSED.

7          SO, I THINK THAT'S, YOU KNOW, A POSSIBILITY AS WELL.

8          **THE COURT:**  ALL RIGHT.  MR. BRINCKERHOFF.

9          **MR. BRINCKERHOFF:**  I HAVE NOTHING MORE TO ADD.

10         **THE COURT:**  MR. COPPOLINO.

11         **MR. COPPOLINO:**  YOUR HONOR, MY FIRST POINT WOULD

12   BE -- WHEN YOU CONSIDER WHAT MR. WIEBE JUST SAID THE FIRST

13   POINT I WOULD MAKE IS THAT WOULD BE COMPLETELY UNPRECEDENTED IN

14   THE HISTORY OF THE FEDERAL JUDICIARY FROM THE BEGINNING OF THE

15   REPUBLIC.  YOU WILL NOT FIND A SINGLE STATE SECRETS CASE THAT

16   HAS EVER PROCEEDED IN THAT MANNER.  YOU WILL NOT FIND A SINGLE

17   CASE IN WHICH 1806(F) HAS EVER BEEN APPLIED TO A CIVIL

18   PROCEEDING TO PERMIT DISCOVERY INTO WHETHER OR NOT A PERSON HAS

19   BEEN SUBJECT TO ALLEGED SURVEILLANCE.

20         AND SO -- AND, BY THE WAY, AS I MENTIONED BEFORE, YOU

21   WOULD NOT FIND A SINGLE 1806(F) CASE IN WHICH FISA APPLICATIONS

22   OR MATERIALS WERE EVER GIVEN TO A CRIMINAL DEFENDANT, AT LEAST

23   BASED ON THE CASE LAW I HAVE SEEN.

24         SO, THE FIRST POINT I WOULD MAKE IS, GIVEN THE WHOLLY

25   UNPRECEDENTED NATURE OF WHAT THEY'RE PROPOSING, IF YOU DO

1    HAPPEN TO AGREE WITH THEIR APPROACH WITH 1806(F), YOU SHOULD

2    CERTIFY THIS CASE FOR INTERLOCUTORY APPEAL.

3            I ASKED JUDGE WALKER TO DO THAT SEVERAL TIMES.  I

4    KNOW I ASKED HIM TO DO IT IN JANUARY OF 2009, AND IF HE HAD

5    TAKEN ME UP ON THAT, WE WOULD PROBABLY HAVE THE ANSWER RIGHT

6    NOW, AND ALL OUR LIVES WOULD BE A LOT EASIER.  HE DECIDED TO GO

7    FORWARD ON THIS ROADMAP MR. WIEBE IS TALKING ABOUT.

8            BUT THIS 1806(F) ISSUE IS AKIN TO A THRESHOLD

9    JURISDICTIONAL QUESTION.  IT IS NOVEL.  IT HAS NEVER BEEN

10   DECIDED.  AND IF YOU WERE TO AGREE WITH JUDGE WALKER'S

11   APPROACH, WE WOULD NEED A SECOND OPINION, BECAUSE IF YOU WERE

12   WRONG AND WE WERE RIGHT, HOW COULD YOU START DOWN A ROAD AND

13   DISPLACE SOMETHING AS SIGNIFICANT AS A NATIONAL SECURITY

14   PRIVILEGE FIRST AND THEN GET AN OPINION LATER?

15           THERE'S GOOD AUTHORITY IN THIS CIRCUIT THAT DENIALS

16   OF PRIVILEGE ARE SUBJECT TO IMMEDIATE REVIEW UNDER EITHER

17   COLLATERAL ORDER DOCTRINE OR MANDAMUS.  IN FACT, SECTION 1806

18   HAS A PROVISION ALLOWING FOR IMMEDIATE INTERLOCUTORY REVIEW OF

19   DISCLOSURE ORDERS.  IF THAT WERE TO OCCUR, THE NEXT STOP WOULD

20   HAVE TO BE THE COURT OF APPEALS IN ORDER TO SORT ALL THIS OUT.

21           SO, I GUESS I WOULD REPEAT THE PLEA I MADE OFTEN TO

22   JUDGE WALKER, THAT IF YOU WERE GOING TO GO DOWN THIS ROAD, LET

23   US APPEAL FIRST.

24           ONE OF THE REASONS FOR THAT IS THIS PROCESS WOULD, IN

25   OUR VIEW, INHERENTLY RISK OR REQUIRE OR RESULT IN THE

1    DISCLOSURE OF INFORMATION WE'RE TRYING TO PROTECT.

2            SO, IF WE'RE RIGHT ABOUT THE STATE SECRETS PRIVILEGE

3    AND WE'RE RIGHT ABOUT FISA PREEMPTION, THE COURT SHOULDN'T

4    PROCEED IN A MANNER WHICH WOULD RISK THE DISCLOSURE OF THAT

5    INFORMATION.

6            I HATE TO BE A CONTRARIAN, BUT MY ANSWER IS THERE ARE

7    NO PROCEDURES YOU COULD FOLLOW AT THIS POINT OTHER THAN PERHAPS

8    CERTIFYING THIS CASE.

9            THE ISSUES THAT ARE SUBJECT TO OUR STATE SECRETS

10   PRIVILEGE GO TO THE HEART OF THE CASE.  THERE'S NOTHING

11   PERIPHERAL ABOUT THIS INFORMATION.  IT GOES TO WHETHER THE

12   PLAINTIFFS CAN ESTABLISH THEIR STANDING AS A FACTUAL MATTER.

13           IF THEY CAN'T DO THAT, YOU DON'T EVEN HAVE

14   JURISDICTION TO PROCEED, IF THE INFORMATION NEEDED TO DETERMINE

15   WHETHER THEY ARE PERSONALLY INJURED IS UNAVAILABLE.  AND, BY

16   THE WAY, THAT IS RELEVANT INFORMATION.  YOU JUST CAN'T PROVE

17   THE EXISTENCE OF SOME PROGRAM OUT THERE AND SAY, WELL, IT MUST

18   HAVE COVERED US.  YOU'VE GOT TO SHOW THAT YOU HAVE A PERSONAL

19   INJURY TO PROCEED UNDER ARTICLE III.

20           **THE COURT:**  LITTLE BIT OF A CATCH-22, THOUGH, ISN'T

21   IT?  THEY CAN'T REALLY GET THE INFORMATION, YOU SAY IT'S THE

22   HEART OF THE CASE, THEY CAN'T GET THE INFORMATION -- A COURT

23   CAN GET THE INFORMATION, BUT WHAT YOU'RE ARGUING IS IF THE

24   COURT WERE TO MAKE FINDINGS SAYING, I'VE LOOKED AT MATERIALS IN

25   CAMERA, AND THIS IS ALL HYPOTHETICAL, AND BASED UPON THOSE, THE

1    PLAINTIFFS HAVE NO STANDING.

2          **MR. COPPOLINO:**  THAT'S CORRECT.

3          **THE COURT:**  IS THAT WHAT YOU'RE SAYING WOULD REVEAL A

4    STATE SECRET.

5          **MR. COPPOLINO:**  EXACTLY.  I WOULDN'T CALL IT A

6    CATCH-22.  I WOULD CALL IT THE RESULT OF THE APPLICATION OF THE

7    ESTABLISHED LAW IN STATE SECRETS PRIVILEGE.

8          **THE COURT:**  DEPENDS ON WHOSE OX IS BEING GORED, I

9    GUESS.

10          **MR. COPPOLINO:**  IN FACT, THE PLAINTIFFS HAVE NOT BEEN

11   SUBJECT TO CONTENT SURVEILLANCE OVER THE COLLECTION OF THEIR

12   COMMUNICATION RECORDS.  THEY HAVE NO STANDING.  AND THESE FOLKS

13   DON'T HAVE THE RIGHT TO LITIGATE THE CONSTITUTIONALITY OR THE

14   LAWFULNESS OF THOSE ALLEGED ACTIVITIES UNDER STATUTORY LAW.

15          AND, SO, MY POINT -- WHICH I KNOW MY FRIENDS ARE

16   PROBABLY TIRED OF HEARING -- IS THAT THIS INFORMATION GOES TO

17   THE HEART OF THE CASE.

18          **THE COURT:**  I HAVE HEARD THAT.  ANYTHING FURTHER ON

19   THIS?

20          **MR. COPPOLINO:**  THE JUDGE WALKER ROADMAP -- I LIVED

21   THROUGH THAT ROADMAP THAT HE'S SO FOND OF, AND IT WAS

22   BASICALLY, AS I MENTIONED BEFORE, A ROAD TO NOWHERE.

23          FIRST OF ALL, HE ORDERED THAT THE PLAINTIFFS COUNSEL

24   BE GRANTED A SECURITY CLEARANCE.  WE DECLINED TO AGREE TO THAT.

25   WE POINTED OUT TO JUDGE WALKER THE GRANTING OR DENIAL OF

1    SECURITY CLEARANCE IS WITHIN THE DISCRETION OF EXECUTIVE BRANCH

2    DEPENDING WHETHER YOU HAVE A NEED TO KNOW TO SERVE A

3    GOVERNMENTAL FUNCTION.  WE REFUSED.

4          HE THEN SAID, I ORDER YOU TO ENTER A PROTECTIVE ORDER

5    WITH THE PLAINTIFFS THAT WOULD GRANT THEM ACCESS.  IT SOUNDED

6    TO ME LIKE THE SAME QUESTION.  AND WE SAID, I'M SORRY, YOUR

7    HONOR, RESPECTFULLY, WE ARE NOT GOING TO AGREE TO A PROTECTIVE

8    ORDER GRANTING THEM ACCESS.

9          ACTUALLY -- I WILL MENTION HE ACTUALLY THREATENED TO

10   SANCTION US FOR NOT AGREEING TO GIVE THEM A PROTECTIVE ORDER,

11   AND I HAD TO POINT OUT TO HIM YOU CAN'T SANCTION A PARTY FOR

12   NOT AGREEING TO SOMETHING.  YOU CAN ORDER SOMETHING.  IF YOU

13   WANTED TO ISSUE AN ORDER SAYING, I HEREBY ORDER YOU TO DISCLOSE

14   CLASSIFIED INFORMATION TO THE PLAINTIFFS, YOU COULD DO THAT,

15   AND WE WOULD GO PROMPTLY TAKE IT UP ON APPEAL, BUT WE

16   WOULDN'T -- THEN HE REALIZED, AND I HAVE GREAT FONDNESS FOR

17   JUDGE WALKER -- HE REALIZED HE COULDN'T SANCTION US FOR NOT

18   AGREEING TO GIVE THEM THE INFORMATION.

19         BUT THEN HE DID WHAT MR. WIEBE SAID.  HE SAID, HERE'S

20   WHAT WE'LL DO, I'LL LET THEM MOVE FOR SUMMARY JUDGMENT BASED ON

21   PUBLIC EVIDENCE, AND I'LL SHIFT THE BURDEN OF PROOF TO YOU TO

22   DISPROVE THEIR EVIDENCE.  AND I THINK THAT MIGHT BE THE FIRST

23   TIME IN THE ANNALS OF CIVIL LITIGATION THAT HAS EVER HAPPENED.

24   HE ENTERED LIABILITY WHERE THE EVIDENCE WAS INADEQUATE, AND ALL

25   OF THAT WAS KNOCKED OUT BY THE NINTH CIRCUIT BECAUSE THERE WAS

1    NO WAIVER OF SOVEREIGN IMMUNITY.

2            HERE IS MY LAST -- MAYBE NOT MY LAST.

3            JUDGE WALKER ACTUALLY FOUND THE *JEWEL* AND *SHUBERT*

4    PLAINTIFFS FAILED TO ALLEGE SUFFICIENT INFORMATION TO TRIGGER

5    SECTION 1806(F).

6            AND IT'S INTERESTING, THE NINTH CIRCUIT WHEN THEY

7    REVERSED, THEY SAID THAT'S A SEPARATE QUESTION.  THEY SAID THAT

8    THE PLAINTIFFS HAD ALLEGED SUFFICIENT EVIDENCE -- SUFFICIENT

9    INJURY TO PROCEED, BUT AS TO WHETHER THEY WERE AGGRIEVED,

10   THAT'S A MERITS QUESTION UNDER FISA, THE DEFINITION OF

11   AGGRIEVED PERSON UNDER FISA.  THEY SAID -- THE NINTH CIRCUIT

12   SAID THAT'S A MERITS QUESTION.

13           JUDGE WALKER ALREADY LOOKED AT THEIR EVIDENCE AND

14   SAID, YOU HAVEN'T PROVEN THAT YOU WERE SUBJECT TO ALLEGED

15   SURVEILLANCE.  AND IN *AL-HARAMAIN* HE HAD A DIFFERENT VIEW, BUT

16   HERE HE EXPRESSED A VIEW.

17           FINALLY, YOUR HONOR, ON THE ISSUE OF DISCOVERY,

18   AGAIN, WE'VE LAID THIS OUT IN OUR BRIEFS SOMEWHAT, BUT THEIR

19   DISCOVERY IS NOT A DISCOVERY INTO NON-PRIVILEGED AREAS.  IT'S A

20   DISCOVERY INTO KNOWING WHAT HAPPENED, WHAT NSA DID.  THEY WANT

21   DISCOVERY INTO WHAT'S CLASSIFIED.  INDEED, THEY ARE QUITE

22   HONEST ABOUT IT.  THEY SAY, WE MAY NEED SECURITY CLEARANCES.

23           MY ARGUMENT TO YOU IS THAT WHOLE PROCESS IS FUTILE,

24   BECAUSE WHERE YOU ARE SEEKING DISCOVERY INTO STUFF WE THINK IS

25   PROPERLY PRIVILEGED, EVEN IF YOU DISAGREED WITH US, WE WOULD AT

1  LEAST HAVE TO GET A SECOND OPINION BEFORE OUR PRIVILEGE WAS

2  WAIVED OR ABROGATED BY A DISTRICT COURT RULING.

3          **THE COURT:**  ALL RIGHT.  LET ME MOVE ON TO THE NEXT

4  QUESTION.

5          **MR. WIEBE:**  MAY I RESPOND, YOUR HONOR?

6          **THE COURT:**  I THINK YOU'LL HAVE AN OPPORTUNITY IN THE

7  CONTEXT OF THE NEXT QUESTION, AND I'LL LET YOU GO OFF TOPIC A

8  LITTLE BIT TO RESPOND, BUT I WANT THIS TO CONTINUE TO FLOW

9  HERE.  WE'LL DO A COUPLE OF MORE OF THESE QUESTIONS, THEN WE

10  ARE GOING TO TAKE A BREAK.

11          QUESTION FIVE:  HOW CAN THE COURT GRANT OR DENY

12  RELIEF, THEREBY CONFIRMING OR REJECTING PLAINTIFFS' FACTUAL

13  ALLEGATIONS REGARDING SURVEILLANCE, WITHOUT IMPERILLING THE

14  NATIONAL SECURITY INTERESTS IDENTIFIED BY DEFENDANTS, BOTH IN

15  THEIR PUBLIC AND UNDER SEAL DECLARATIONS?  SEE *ACLU FOUNDATION*

16  *OF SOUTHERN CALIFORNIA VERSUS BARR*, 952 F.2D 457 AT 469,

17  NOTE 13, D.C. CIRCUIT 1991.

18          AND THE SECOND PART OF THAT QUESTION:  IF THE COURT

19  SHOULD FIND A VIOLATION UNDER FISA, WHAT IS THE INJUNCTIVE

20  RECOURSE PLAINTIFFS SEEK, AND IS THIS COURT THE PROPER FORUM TO

21  OBTAIN THAT RELIEF?

22          YOU CAN RESPOND FIRST.  AND IF YOU WANT TO BRIEFLY

23  JOIN IN ON ANY POINT THAT MR. COPPOLINO MADE, GO AHEAD.

24          **MR. WIEBE:**  THANK YOU, YOUR HONOR.

25          AS I MENTIONED EARLIER, ONE OF THE THINGS JUDGE

1    WALKER NOTED IN HIS ROADMAP WAS THE POSSIBILITY OF REDACTED

2    ORDERS.  I SUPPOSE THE SIMPLEST, IF YOU WERE TO DECIDE, FOR

3    EXAMPLE, WE HAD NOT BEEN SURVEILLED, WOULD BE TO SAY,

4    PLAINTIFFS' CASE IS DISMISSED.  THERE ARE A HOST OF REASONS

5    WHICH LEAD TO DISMISSAL OF CASES, MANY OF WHICH NEVER HAVE

6    ANYTHING TO DO WITH THE MERITS.  AND, SO, I DON'T THINK THAT

7    WOULD LEAD TO ANY INFERENCE OF ANYTHING.

8            IN TERMS OF THE QUESTION OF INJUNCTIVE RELIEF, IF YOU

9    DON'T MIND, I WOULD LIKE TO RESPOND A LITTLE TO MR. COPPOLINO

10   FIRST.  I THINK IT WILL FLOW BETTER.

11           **THE COURT:**  ALL RIGHT.

12           **MR. WIEBE:**  BECAUSE I THINK IT'S RELATED TO THE

13   REDACTED ORDER QUESTION AND HOW DOES THE COURT DEAL WITH IT.

14           YOU KNOW, HE SAYS OUR PROPOSAL TO GO FORWARD IS

15   COMPLETELY UNPRECEDENTED IN THE HISTORY OF THE REPUBLIC.  WE

16   THINK THE MASS DRAGNET SURVEILLANCE THAT THE GOVERNMENT HAS

17   BEEN CONDUCTING IS COMPLETELY UNPRECEDENTED IN THE HISTORY OF

18   THE REPUBLIC.

19           AND WE THINK THAT CONGRESS HAS ALREADY DONE THE HARD

20   WORK FOR THE COURT.  IT'S DONE THE BALANCING BETWEEN NATIONAL

21   SECURITY INTERESTS AND THE INTERESTS UNDER RULE OF LAW.  THAT'S

22   WHY I CAME UP WITH 1806(F).  THAT'S WHY IN 2712 IT SAYS USE

23   1806(F) FOR THESE CLAIMS.

24           HE MENTIONED THE POSSIBILITY OF AN INTERLOCUTORY

25   APPEAL.  I THINK IT'S INTERESTING TO NOTE THAT, IN FACT, THE

1  GOVERNMENT DID GO UP TO THE NINTH CIRCUIT IN FEBRUARY OF 2009

2  SEEKING TO RAISE THESE ISSUES, AND IT WENT BACK TO THE

3  *AL-HARAMAIN* PANEL THAT'S DEALT WITH THE *AL-HARAMAIN* CASE

4  THROUGHOUT IT, AND THEY SAID, NO, WE DON'T SEE A NEED FOR AN

5  INTERLOCUTORY APPEAL HERE.

6          IN TERMS OF OUR STANDING, I COMMEND TO THE COURT THE

7  KLEIN EVIDENCE THAT WE PUT IN.  THAT'S RECORD EVIDENCE OF A

8  PRIMA FACIE CASE OF SURVEILLANCE.

9          WHAT IT SHOWS IS THAT AT THE AT&T FACILITY RIGHT HERE

10  IN SAN FRANCISCO ON SECOND AND FOLSOM STREET, ALL OF THE

11  INTERNET TRAFFIC BETWEEN AT&T AND OTHER INTERNET PROVIDERS IS

12  SPLIT.  IT IS COPIED INTO TWO SIGNALS.  SO AN EXACT COPY OF ALL

13  THAT TRAFFIC IS SENT TO A ROOM UNDER THE CONTROL OF THE NSA.

14          THAT IS A PRIMA FACIE CASE OF ELECTRONIC

15  SURVEILLANCE.  AND THEY'VE SAID THAT IS NOT A STATE SECRET.

16          SO I THINK IT'S -- HE ALSO BRINGS UP THE FACT THAT

17  THE GOVERNMENT REFUSED TO COOPERATE WITH THE COURT'S SECURITY

18  MEASURES PROPOSED IN *AL-HARAMAIN*.

19          WELL, I THINK, AGAIN, THAT SECOND SENTENCE IN 1806(F)

20  TALKS ABOUT THE COURT'S POWER TO ORDER DISCLOSURE UNDER

21  APPROPRIATE SECURITY MEASURES.  SO I DON'T THINK THERE'S ANY

22  QUESTION OF THE COURT'S AUTHORITY TO DO THAT.

23          IN TERMS OF THE INJUNCTIVE RELIEF THAT WE SEEK, WE

24  SEEK TWO FORMS OF RELIEF.  ONE IS SIMPLY PROHIBITORY RELIEF,

25  THAT IS, HAVING THE GOVERNMENT CONFORM ITS CONDUCT TO LAW AND

1   STOP DOING ILLEGAL UNLAWFUL SURVEILLANCE.

2          THE SECOND IS A FORM OF MANDATORY RELIEF.  IT WOULD

3   BE DESTRUCTION OF ANY COMMUNICATIONS OR RECORDS THAT THEY'VE

4   UNLAWFULLY OBTAINED.

5          THE COURT ASKED IS THIS THE PROPER FORUM.  YES, IT IS

6   THE PROPER FORUM.  CONGRESS CREATED THESE CLAIMS.  CONGRESS

7   DESIGNATED THIS COURT AS THE PROPER FORUM.  AND, YOU KNOW,

8   ULTIMATELY IT COMES BACK TO A QUESTION THAT'S AS OLD AS *MARBURY*

9   *VERSUS MADISON*, ARE THE COURTS THE FINAL ARBITER OF WHAT THE

10  LAW IS.

11          **THE COURT:**  MR. BRINCKERHOFF, ANYTHING TO ADD?

12          **MR. BRINCKERHOFF:**  I JUST WANT TO POINT OUT THE

13  SHUBERT PLAINTIFFS' PLEA FROM THE START IS FOR THERE TO BE

14  JUDICIAL REVIEW, SUBSTANTIVE JUDICIAL REVIEW OF THE CLAIMS IN

15  THIS ACTION.  AND WHAT MR. COPPOLINO SAID ABOUT THAT REVIEW

16  TAKING PLACE UNDER THE GUISE OF FISA BEING UNPRECEDENTED MAY BE

17  TRUE IF YOU NARROWLY DEFINE THAT AS REVIEW UNDER FISA.  BUT

18  COURTS THROUGHOUT THE COUNTRY EVERY DAY DEAL WITH SENSITIVE

19  MATERIALS THAT HAVE TO BE REVIEWED IN CAMERA, SENSITIVE

20  MATERIALS THAT SOMETIMES HAVE TO BE REVIEWED ONLY EX PARTE.

21  THERE'S NOTHING UNUSUAL OR UNPRECEDENTED BY A COURT EXERCISING

22  ITS AUTHORITY, EXERCISING ITS SOUND DISCRETION, AND MANAGING

23  CLAIMS AS THE EVIDENCE GETS SUBMITTED TO IT, PRESUMABLY, AT

24  LEAST IN THE FIRST INSTANCE, IN CAMERA AND EX PARTE, AND MAKING

25  SOUND DECISIONS ABOUT WHAT CAN OR CANNOT BE DONE WITH THAT

1    INFORMATION.

2           AT THE END OF THE DAY, HOWEVER, HOWEVER THE COURT

3    HANDLES THOSE PROBLEMS -- AND THEY DEFINITELY CAN BE HANDLED;

4    THEY ARE DONE REGULARLY IN ALL DISTRICT COURTS FOR ONE REASON

5    OR ANOTHER -- AT LEAST THAT -- UNDER THAT METHODOLOGY THE

6    PLAINTIFFS WILL GET THEIR REVIEW.  THEY WILL FIND OUT WHETHER

7    OR NOT THIS UNPRECEDENTED PROGRAM EXISTS IN THE WAY THAT IT'S

8    BEEN DISCLOSED AND IT HAS SURVEILLED THEM IN THE WAY THEY

9    BELIEVE IT HAS.  AND WITHOUT THAT, THEY'RE BASICALLY -- AS MY

10   COLLEAGUE SAID, YOU HAVE THE COURTS BASICALLY ABDICATING THEIR

11   RESPONSIBILITY AND ABDICATING THE POWER THAT WAS GRANTED TO

12   THIS COURT SPECIFICALLY FOR ALL FISA CLAIMS.

13          **MR. COPPOLINO:**  YOUR HONOR, MY RESPONSE TO QUESTION

14   NUMBER FIVE -- AND I'M GOING TO -- I WOULD LIKE TO DEFER THE

15   PROPER FORUM ISSUE TO THE RESPONSE TO NUMBER SIX, JUST TO SAVE

16   A LITTLE TIME.

17          BUT, FIRST OF ALL, *JEPPESEN, AL-HARAMAIN*, *CASA*, THOSE

18   ARE THE GUIDES FOR PRECEDENCE IN THIS CIRCUIT ON STATE SECRETS

19   PRIVILEGE, AND THOSE CASES DO NOT DIRECT THE DISTRICT COURT

20   THAT WHEN THE PRIVILEGE IS ASSERTED YOU SHOULD CLEAR COUNSEL

21   AND CONDUCT PROCEEDINGS IN CAMERA TO REACH THE MERITS OF THE

22   CASE UNDER PROTECTIVE ORDERS.

23          IN FACT, IT'S QUITE OBVIOUS, THE AUTHORITY IS QUITE

24   TO THE CONTRARY.  IF INFORMATION IS NEEDED OR AT RISK OF

25   DISCLOSURE, THE CASE MUST BE DISMISSED.  SO THEIR ONLY ARGUMENT

1    FOR PROCEEDING IS IF THE NINTH CIRCUIT AUTHORITY DOESN'T APPLY

2    EITHER THROUGH THE FISA DISPLACEMENT THEORY OR *GENERAL DYNAMICS*

3    THEORY, WHICH IS SO WRONG, I'M NOT GOING TO ADDRESS IT ANY

4    MORE.  WE'VE GOT IT IN OUR BRIEF.  SUPREME COURT DID NOTHING TO

5    NINTH CIRCUIT PRECEDENT.

6         FISA 1806(F), THEIR ARGUMENT IS, IS THE LYNCHPIN TO

7    PUTTING ASIDE NINTH CIRCUIT PRECEDENT.  THAT'S KEY.  IF THEY'RE

8    WRONG ON THAT *JEPPESEN* GOVERNS, *CASA* GOVERNS, AND *AL-HARAMAIN*

9    GOVERNS.  IN FACT, THERE ARE SEVERAL CASES THAT HAVE APPLIED

10   THE STATE SECRETS PRIVILEGE, WHICH HAVE MADE CLEAR COUNSEL DOES

11   NOT GET ACCESS.  THE *ELSBERG* CASE CITE IN OUR BRIEF, *HALKIN* IS

12   TO NOT SLIGHT JUDGES, LAWYERS, OR ANYONE ELSE TO SUGGEST THAT

13   ANY DISCLOSURES CARRY SERIOUS -- CARRIES WITH IT A SERIOUS RISK

14   THAT HIGHLY SENSITIVE INFORMATION MAY BE COMPROMISED.  THEY

15   REFUSED TO GIVE COUNSEL ACCESS.

16        IN FACT, *REYNOLDS* DOESN'T EVEN REQUIRE THE GOVERNMENT

17   PROVIDES CLASSIFIED INFORMATION TO THE JUDGE IN CAMERA -- WE

18   HAVE A POLICY TO DO THAT.  WE WANT ARTICLE III JUDGES CONFIRMED

19   BY THE SENATE TO UNDERSTAND WHAT'S GOING ON IN THE CASE AND TO

20   ENSURE THAT THE OCCASION FOR THE PRIVILEGE IS PROPERLY INVOKED.

21        THERE IS NO PROCESS IN THE LAW, EVEN PROTECTIVE

22   ORDERS -- COURTS HAVE HELD THAT SEEKING TO PROCEED BY

23   PROTECTIVE ORDER COULD LEAD TO ACTUAL OR INADVERTENT

24   DISCLOSURES THAT WOULD HARM NATIONAL SECURITY.  THERE IS SIMPLY

25   NO SUPPORT FOR WHAT THEY ARE SUGGESTING TO YOU WITH RESPECT TO

1    PROCEDURES AND PROTECTIVE ORDERS.

2            AS I POINTED OUT, YES, FISA SAYS THAT COUNSEL MAY GET

3    ACCESS, BUT IT'S ONLY IN THE CONTEXT OF HOW THAT FISA PROVISION

4    OPERATES, WHICH IS WHEN THE USE OF SURVEILLANCE AUTHORITY IS AT

5    ISSUE -- USE OF SURVEILLANCE EVIDENCE IS AT ISSUE AGAINST AN

6    AGGRIEVED PERSON.  EVEN IN THAT SETTING, NO COURT HAS EVER

7    GIVEN COUNSEL ACCESS.

8            I'M NOT TRYING TO BE DIFFICULT.  I WASN'T TRYING TO

9    BE DIFFICULT WITH JUDGE WALKER.  IT'S JUST WE HAVE OUR

10   INTERESTS TO PROTECT.  WE BELIEVE OUR POSITION IS WELL FOUNDED,

11   OUR PRIVILEGE ASSERTION IS WELL FOUNDED.  WE BELIEVE WE ARE

12   REPRESENTING THE NATIONAL SECURITY INTERESTS OF THE UNITED

13   STATES AND THAT WE COULDN'T SEE THAT COMPROMISE BEFORE FOR THE

14   REVIEW.

15           I WANT TO MAKE A COUPLE OF OTHER POINTS ALONG IN

16   RESPONSE TO SOMETHING MY DISTINGUISHED COLLEAGUE SAID.

17           FIRST OF ALL, THE NINTH CIRCUIT DIDN'T DECLINE TO, IN

18   2009 TO HEAR AN INTERLOCUTORY REVIEW ON THIS.  JUDGE WALKER

19   DIDN'T CERTIFY THE QUESTION FOR INTERLOCUTORY REVIEW.  HE

20   DECLINED.

21           NOW, WE APPEALED HIS JANUARY 2009 ORDER DIRECTLY

22   BECAUSE WE FEARED IT WOULD IMMEDIATELY LEAD TO THE DISCLOSURE

23   OF INFORMATION BECAUSE HE HAD SAID, I ORDER YOU TO CLEAR

24   COUNSEL, AND ONCE THAT -- WE WERE AFRAID WE WERE SIMPLY GOING

25   TO GET A DISCLOSURE WITHOUT AN OPPORTUNITY TO APPEAL.

1          IN THE COURSE OF THAT APPEAL JUDGE WALKER MADE CLEAR

2   HE WOULD NOT ISSUE AN ORDER OF DISCLOSURE WITHOUT GIVING US

3   NOTICE.  AND THE NINTH CIRCUIT, AWARE THAT THERE WAS NO ORDER

4   OF ACTUAL DISCLOSURE, DECLINED TO HEAR THE APPEAL.  BUT THE LAW

5   IS VERY CLEAR THAT AN ORDER OF DISCLOSURE WOULD BE SUBJECT TO

6   APPEAL.

7          MY COLLEAGUES MENTIONED THEIR ALLEGATIONS CONCERNING

8   THE FOLSOM STREET FACILITY HERE IN SAN FRANCISCO, AND WE'VE

9   DISCUSSED THIS A BIT IN OUR PAPERS, BUT WE, OBVIOUSLY,

10  CANNOT -- WE ARE NOT IN A POSITION TO CONFIRM OR DENY ANY OF

11  THE ALLEGATIONS OF WHAT ACTIVITIES THEY ALLEGE HAVE OR MAY BE

12  OCCURRING AT THAT FACILITY OR ANY CARRIER FACILITY IN THE

13  UNITED STATES.  I JUST DON'T THINK THAT THOSE ALLEGATIONS ARE

14  SUFFICIENT TO DEFEAT OUR PRIVILEGE ASSERTION.

15         IN FACT, EVEN JUDGE WALKER DECLINED TO RELY ON THE

16  ASSERTIONS OF MR. KLEIN AND MR. MARCUS FOR PURPOSES OF RULING

17  ON THE STATE SECRETS PREJUDICE IN THE *HEPTING* CASE.

18         I MEAN NO DISRESPECT TO EITHER MR. KLEIN OR

19  MR. MARCUS WHEN I SAY THAT.  THEY DON'T ACTUALLY KNOW THE FULL

20  RANGE OF THE FACTS AS TO WHAT'S OCCURRED WITH RESPECT TO ANY OF

21  THESE ALLEGED ACTIVITIES.  THEY HAVE INDICATED THAT THEY HEARD

22  SOMETHING, THAT MAYBE SOMEBODY FROM NSA WAS THERE AT THAT

23  FACILITY, BUT THEY DON'T ACTUALLY KNOW.  MR.  MARCUS IS GIVING

24  HIS OPINION BASED ON SOMETHING HE'S BEEN TOLD ABOUT WHAT

25  EQUIPMENT MAY BE IN A ROOM, BUT HE'S NEVER BEEN IN THE ROOM.

1    HE DOESN'T KNOW IF THE EQUIPMENT IS THERE.  HE DOESN'T KNOW --

2          **THE COURT:**  YOU KNOW, COUNSEL, I'VE READ THAT, AND I

3    UNDERSTAND THAT.  I WANT TO MOVE ON TO THE NEXT QUESTION, THEN

4    WE WERE GOING TO TAKE A BREAK.

5          QUESTION NUMBER SIX:  IN *JEPPESEN DATAPLAN*, THE NINTH

6    CIRCUIT DESCRIBES OTHER POSSIBLE AVENUES OF RELIEF FOR

7    PLAINTIFFS WITHOUT JUDICIAL RECOURSE, 614 F.3D AT 1091 TO 1092.

8    THE MAJORITY SUGGESTS REMEDIES SUCH AS THE EXECUTIVE THOROUGHLY

9    REVIEWING THEIR OWN CONDUCT, OR A CONGRESSIONAL INVESTIGATION

10   OF ALLEGED WRONGDOING AND RESTRAINT FROM EXECUTIVE EXCESS, OR

11   CONGRESSIONAL ENACTMENT OF A PRIVATE BILL WHICH MAY REQUIRE THE

12   ALLEGED CONDUCT BE REVIEWED BY THE COURT OF FEDERAL CLAIMS.

13         THE QUESTION IS:  WHAT IS THE MECHANISM BY WHICH SUCH

14   REMEDIES MIGHT BE ACCESSIBLE TO PLAINTIFFS, OR DO THESE

15   SUGGESTED REMEDIES, AS THE DISSENT DECRIES, QUOTE, ELEVATE THE

16   IMPRACTICAL TO THE POINT OF ABSURDITY, UNQUOTE.  THAT WAS THE

17   SAME CASE AT ID AT 1101.

18         SO, LET ME START WITH MR. COPPOLINO.  WHAT'S YOUR

19   VIEW ABOUT THAT?

20         **MR. COPPOLINO:**  I REREAD JUDGE HAWKINS' VIEWS ON THAT

21   LAST NIGHT.  HE WAS IN PARTICULAR REACTING TO THE ANALOGY TO

22   REPARATIONS TO THE JAPANESE INTERNMENT AND DIDN'T THINK THAT

23   WAS A PARTICULARLY ADEQUATE REMEDY FOR THAT MATTER.  BUT I DO

24   THINK IN THIS CASE, HOWEVER, THERE ARE REASONABLE

25   ALTERNATIVES -- ALTERNATIVE REMEDIES TO A JUDICIAL FORUM, AND

1     WE POINTED SOME OF THEM OUT ALREADY TO THE COURT.  THERE IS A

2     LOT THAT HAS HAPPENED SINCE 9/11, SINCE 2006 WHEN THIS LAWSUIT

3     BEGAN.

4              WE'VE INDICATED PUBLICALLY IN OUR PAPERS THAT THE

5     TERRORIST SURVEILLANCE PROGRAM IS NO LONGER OPERATIVE.  THAT

6     WAS TRANSITIONED IN JANUARY 2007 TO ORDERS OF THE FOREIGN

7     INTELLIGENCE SURVEILLANCE COURT.  MAYBE I'LL START THAT

8     SENTENCE OVER.  THE TERRORIST SURVEILLANCE PROGRAM WAS

9     TRANSITIONED TO ORDERS OF THE FOREIGN INTELLIGENCE SURVEILLANCE

10    COURT.

11             IN ADDITION, IN 2008 CONGRESS ENACTED LEGISLATION

12    CALLED THE FISA ACT AMENDMENTS OF 2008 WHICH CREATED NEW

13    STATUTORY AUTHORITY FOR THE INTELLIGENCE COMMUNITY TO UNDERTAKE

14    SURVEILLANCE OF CERTAIN NON-U.S. PERSONS LOCATED OVERSEAS.

15    AND, IN GENERAL TERMS, THIS WAS INTENDED TO PROVIDE THE NSA THE

16    KIND OF FLEXIBILITY IT HAD UNDER THE TERRORIST SURVEILLANCE

17    PROGRAM.

18             PRECEDING THE ENACTMENT OF THAT LEGISLATION, THERE

19    WAS EXTENSIVE OVERSIGHT OF THE TERRORIST SURVEILLANCE PROGRAM

20    BEFORE THE SENATE AND HOUSE SELECT COMMITTEES ON INTELLIGENCE.

21    SO, THAT OVERSIGHT HAS ALREADY OCCURRED.  I THINK THE COURT CAN

22    TAKE SOME COMFORT IN THAT.

23             IN ADDITION, INTELLIGENCE ACTIVITIES TO BE UNDERTAKEN

24    UNDER THE FISA ACT AMENDMENTS ARE SUPERVISED BY THE FOREIGN

25    INTELLIGENCE SURVEILLANCE COURT.

1          SO, YOU HAVE ALL THREE BRANCHES OF THE FEDERAL

2     GOVERNMENT COMING TOGETHER TO ADDRESS THE KINDS OF CONCERNS

3     THAT HAVE BEEN RAISED IN THIS LAWSUIT:  THE PRESIDENT, THE

4     CONGRESS, AND THE JUDICIAL BRANCH THROUGH THE FISA COURT.  I

5     THINK THE COURT CAN TAKE SOME COMFORT IN THAT, THAT IN THIS

6     PARTICULAR CASE WHETHER OR NOT JUDGE HAWKINS BELIEVED IT TO BE

7     AN ADEQUATE REMEDY IN *JEPPESEN*, IN THIS PARTICULAR CASE, THE

8     JUDICIAL BRANCHES, ALL THREE HAVE COME TOGETHER TO SUPERVISE,

9     OVERSEE AND ENSURE THAT SURVEILLANCE ACTIVITIES UNDERTAKEN IN

10    THIS COUNTRY ARE CONSISTENT WITH THE CONSTITUTION AND STATUTORY

11    REQUIREMENTS.  THEY HAVE A SECURE WAY TO DO THAT.

12          THE SENATE SELECT COMMITTEE ON INTELLIGENCE, WHICH I

13    BELIEVE SENATOR FEINSTEIN IS ON THE HOUSE SELECT COMMITTEE ON

14    INTELLIGENCE, CAN RECEIVE TESTIMONY IN A SECURE FASHION AND

15    OVERSEE WHAT THE AGENCIES DO IN A SECURE FASHION.  AND, OF

16    COURSE, THE FISA COURT HAS SECURE PROCEEDINGS AS WELL.

17          SO, THOSE ALTERNATIVES EXIST.  THEY HAVE BEEN

18    IMPLEMENTED, AND THEY DO PROVIDE ASSURANCE TO THE AMERICAN

19    PEOPLE THAT GOVERNMENT SURVEILLANCE ACTIVITIES ARE BE CONDUCTED

20    IN ACCORDANCE WITH LAW.

21          THANK YOU, YOUR HONOR.

22          **THE COURT:**  COUNSEL?

23          **MR. WIEBE:**  YOUR HONOR, WE DON'T NEED CONGRESS TO

24    CREATE ADDITIONAL REMEDIES FOR US BECAUSE CONGRESS HAS ALREADY

25    CREATED THOSE REMEDIES.  IT DID SO IN THE WIRETAP ACT, THE

1    STORED COMMUNICATION ACT, FISA.

2         IT'S IMPORTANT, I THINK, TO REALIZE THAT THE 2712,

3    INCLUDING 2712(B)(4), WAS PASSED AFTER 9/11.  IT WAS PART OF

4    THE PATRIOT ACT.  SO CONGRESS WAS AWARE OF THE THREATS FACING

5    THE COUNTRY, AND, NONETHELESS, THOUGHT IT WAS IMPORTANT TO

6    IMPOSE THE RULE OF LAW ON SURVEILLANCE ACTIVITIES.

7         WE ARE NOT LIKE THE *JEPPESEN* PLAINTIFFS.  THE

8    *JEPPESEN* PLAINTIFFS WERE SUING UNDER THE ALIEN COURT STATUTE.

9    THEY HAD NO FEDERAL STATUTORY OR CONSTITUTIONAL CAUSES OF

10   ACTION, ONLY ONE ARISING UNDER THE LAW OF NATIONS.

11        CONGRESS HAD NOT GIVEN THEM ANY STATUTORY REMEDY THE

12   WAY CONGRESS HAS HERE.  WE DO HAVE CONGRESSAL REMEDIES, AND

13   CONGRESS INTENDED FOR THE COURTS TO ENFORCE THEM.

14        **THE COURT:**  ALL RIGHT.  DO YOU WANT TO ADD ANYTHING?

15        **MR. BRINCKERHOFF:**  NOTHING FURTHER, YOUR HONOR.

16        **THE COURT:**  ALL RIGHT.  SO WHAT WE ARE GOING TO DO

17   NOW IS TAKE A TEN-MINUTE BREAK, OR SO, AND WE'LL MOVE ON TO

18   QUESTION NUMBER SEVEN.  THANK YOU VERY MUCH.

19        **MR. WIEBE:**  THANK YOU, YOUR HONOR.

20        (RECESS TAKEN.)

21        **THE COURT:**  ALL RIGHT.  YOU MAY BE SEATED.  SO LET'S

22   MOVE ON TO QUESTION -- HELLO THERE.

23        **MS. BERMAN:**  HELLO.

24        **THE COURT:**  QUESTION NUMBER SEVEN THAT READS AS

25   FOLLOWS, QUOTE:

1       ANY LAWSUIT AGAINST AN AGENCY OF THE UNITED STATES OR

2  AGAINST AN OFFICER OF THE UNITED STATES IN HIS OR HER OFFICIAL

3  CAPACITY IS CONSIDERED AN ACTION AGAINST THE UNITED STATES,

4  UNQUOTE.

5       AND I'M CITING THERE *BALSER*, B-A-L-S-E-R, *VERSUS*

6  *DEPARTMENT OF JUSTICE*, 327 F.3D 903 AT 907, NINTH CIRCUIT CASE

7  CITED IN -- DECIDED IN 2003, WITH THE CITATIONS BEING OMITTED.

8       THUS, ASSUMING *ARGUENDO* THAT THE DOCTRINE ARTICULATED

9  IN *LARSON VERSUS DOMESTIC & FOREIGN COMMERCE CORPORATION*, OF

10  SUING OFFICERS FOR *ULTRA VIRES* ACTS SURVIVES THE 1976 AMENDMENT

11  OF THE ADMINISTRATIVE PROCEDURES ACT, THE APA, PLAINTIFFS MUST

12  SUE THE OFFICER IN THEIR INDIVIDUAL OR PERSONAL CAPACITY, 337

13  U.S. 682 (1949), IN THEIR STATUTORY CLAIMS FOR INJUNCTIVE

14  RELIEF, PLAINTIFFS NAME KEITH B. ALEXANDER, MICHAEL B. MUKASEY,

15  AND JOHN M. MCCONNELL IN THEIR OFFICIAL AND PERSONAL

16  CAPACITIES.  IN THEIR COMBINED REPLY, WHICH IS DOCKET NUMBER

17  112, PLAINTIFFS ARGUE THAT THESE CLAIMS ARE AGAINST ALEXANDER,

18  ERIC HOLDER, AND JAMES R. CLAPPER.  HOWEVER, PLAINTIFFS HAVE

19  NOT MOVED TO SUBSTITUTE IN OR AMENDED THEIR COMPLAINT TO NAME

20  HOLDER OR CLAPPER.  TO THE EXTENT PLAINTIFFS ARE SUING HOLDER

21  AND CLAPPER IN THEIR OFFICIAL CAPACITY, THERE IS NO NEED TO DO

22  SO.  SEE FEDERAL RULE OF CIVIL PROCEDURE 25.  HOWEVER, RULE 25

23  DOES NOT APPLY TO OFFICERS WHO ARE SUED IN THEIR INDIVIDUAL

24  CAPACITIES.  ON WHAT BASIS DO PLAINTIFFS CONTEND THEY MAY SUE

25  HOLDER AND CLAPPER IN THEIR INDIVIDUAL CAPACITIES WHEN HOLDER

1    AND CLAPPER HAVE NOT BEEN NAMED AS DEFENDANTS IN THIS SUIT?

2            I'LL, OF COURSE, START OFF WITH PLAINTIFFS' COUNSEL.

3        **MR. WIEBE:**  THANK YOU, YOUR HONOR.  AGAIN, RICHARD

4    WIEBE, COUNSEL FOR THE *JEWEL* PLAINTIFFS.

5            THE QUESTION HERE IS WHETHER THOSE AUTOMATIC

6    SUBSTITUTION PROVISIONS OF RULE 25(D) APPLY TO A *LARSON*

7    INJUNCTIVE RELIEF CLAIM AGAINST GOVERNMENT OFFICERS TO

8    AUTOMATICALLY SUBSTITUTE IN A NEW OFFICE HOLDER OR WHETHER

9    AMENDMENT OF THE COMPLAINT IS NECESSARY.

10           DOES YOUR HONOR, BY ANY CHANCE, HAVE THE NOTICE OF

11   ADDITIONAL AUTHORITIES THAT WE SUBMITTED ON WEDNESDAY NIGHT?

12       **THE COURT:**  I DO.

13       **MR. WIEBE:**  IF I COULD RESPECTFULLY REFER YOUR HONOR

14   TO EXHIBIT A OF THAT DOCUMENT?

15       **THE COURT:**  ALL RIGHT.

16       **MR. WIEBE:**  EXHIBIT A IS --

17       **THE COURT:**  JUST A MOMENT.

18       **MR. WIEBE:**  FEDERAL RULE OF CIVIL PROCEDURE 25.

19       **THE COURT:**  ALL RIGHT.

20       **MR. WIEBE:**  WITH THE ADVISORY COMMITTEE NOTES.

21       **THE COURT:**  ALL RIGHT.

22       **MR. WIEBE:**  IF I CAN DIRECT YOUR HONOR TO THE SECOND

23   PAGE OF THAT DOCUMENT, THE THIRD BOLD-FACED HEADING THERE IS

24   "NOTES OF ADVISORY COMMITTEE ON 1961 AMENDMENTS TO THE RULE."

25   IF I COULD THEN DIRECT YOUR HONOR TO THE FOURTH PARAGRAPH UNDER

1    THOSE 1961 NOTES OF THE ADVISORY COMMITTEE?

2              **THE COURT:**  ALL RIGHT.

3              **MR. WIEBE:**  AND THE UPSHOT IS WHAT THESE NOTES SAY IS

4    THAT, YES, AUTOMATIC SUBSTITUTION DOES APPLY TO *LARSON* CLAIMS,

5    AND ONLY MONEY DAMAGE CLAIMS TO BE PAID PERSONALLY BY THE

6    OFFICER ARE OUTSIDE THE SCOPE OF RULE 25 SUBSTITUTION.

7              NOW, AGAIN, THIS IS IN THE FOURTH PARAGRAPH, THE -- I

8    GUESS IT'S THE -- STARTING WITH THE THIRD SENTENCE, IT SAYS:

9                        "THUS, THE AMENDED RULE, THAT IS

10                  RULE 25(D), WILL APPLY TO ACTIONS AGAINST

11                  OFFICERS TO COMPEL PERFORMANCE OF OFFICIAL

12                  DUTIES OR TO OBTAIN JUDICIAL REVIEW OF THEIR

13                  ORDERS.  IT WILL ALSO APPLY TO ACTIONS TO

14                  PREVENT OFFICERS FROM ACTING IN EXCESS OF

15                  THEIR AUTHORITY OR UNDER AUTHORITY NOT

16                  VALIDLY CONFERRED."

17            IT THEN CITES THE *PHILADELPHIA VERSUS STIMSON*, WHICH

18    IS ONE OF THE CASES CITED IN OUR PAPERS.

19            IT THEN GOES ON TO SAY:

20                        "IN GENERAL, IT WILL APPLY WHENEVER

21                  EFFECTIVE RELIEF WOULD CALL FOR CORRECTIVE

22                  BEHAVIOR BY THE ONE THEN HAVING OFFICIAL

23                  STATUS AND POWER, RATHER THAN ONE WHO HAS

24                  LOST THAT STATUS AND POWER BY CEASING TO HOLD

25                  OFFICE."

1    THEN IT DOES CITE THE *LARSON* CASE.

2    GOES ON TO SAY:

3        "EXCLUDED FROM THE OPERATION OF THE

4        RULE ARE THE RELATIVELY INFREQUENT CASES

5        WHICH ARE DIRECTED TO SECURING MONEY

6        JUDGMENTS AGAINST THE NAMED OFFICERS

7        ENFORCEABLE AGAINST THEIR PERSONAL ASSETS."

8    SO, I THINK THIS ADVISORY COMMITTEE NOTE MAKES CLEAR,

9    IN FACT, THE AUTOMATIC SUBSTITUTION PROVISIONS OF 25(D) DO

10   APPLY TO OUR *LARSON* CLAIMS FOR INJUNCTIVE RELIEF.

11       **MR. BRINCKERHOFF:**  NOTHING FURTHER, YOUR HONOR.

12       **THE COURT:**  DO YOU AGREE?

13       **MS. BERMAN:**  YOUR HONOR, MARCIA BERMAN FROM THE

14   DEPARTMENT OF JUSTICE FOR THE GOVERNMENT DEFENDANTS.

15       WE DO AGREE, YOUR HONOR, THAT *LARSON* DOES PERMIT SUIT

16   AGAINST OFFICERS, FEDERAL OFFICERS, IN THEIR OFFICIAL CAPACITY

17   AS OPPOSED TO THEIR INDIVIDUAL CAPACITY, YOU KNOW, CONTRARY TO

18   THE GENERAL RULE THAT YOU DID CITE AT THE BEGINNING OF THIS

19   QUESTION.  HOWEVER, FOR A NUMBER OF REASONS WE THINK THAT

20   *LARSON* IS INAPPLICABLE HERE.

21       THE FIRST REASON, AND THIS COMES DIRECTLY FROM *LARSON*

22   ITSELF, IS THAT THE CRUCIAL QUESTION IN DETERMINING WHETHER

23   *LARSON* APPLIES IS WHETHER THE RELIEF SOUGHT IN A SUIT NOMINALLY

24   ADDRESSED TO THE OFFICER IS RELIEF AGAINST THE SOVEREIGN, AND A

25   SUIT IS AGAINST THE SOVEREIGN IF THE JUDGMENT SOUGHT WOULD

1    INTERFERE WITH THE PUBLIC ADMINISTRATION OR IF THE EFFECT OF

2    THE JUDGMENT WOULD BE TO RESTRAIN GOVERNMENT FROM ACTING.

3              THAT POINT HAS BEEN MADE IN A NUMBER OF CASES

4    INCLUDING, *PENNHURST, DUGAN*, AND, AGAIN, *LARSON* ITSELF MAKES

5    THAT POINT.  THIS IS EXACTLY WHAT THE PLAINTIFFS HERE ARE

6    SEEKING, TO HALT AN ALLEGED WIDESPREAD INTELLIGENCE-GATHERING

7    ACTIVITY OF THE UNITED STATES.

8              AS MR. WIEBE SAID IN RESPONSE TO QUESTION FIVE WHEN

9    HE WAS ASKED ABOUT WHAT INJUNCTIVE RELIEF ARE THE PLAINTIFFS

10   SEEKING, HE SAID TO HAVE THE GOVERNMENT STOP DOING THE ALLEGED

11   ILLEGAL SURVEILLING.  SO, CLEARLY, THEY ARE SEEKING TO HAVE THE

12   GOVERNMENT STOP THIS PROGRAM.

13             AND IT'S ALSO EVIDENCED -- THAT'S ALSO EVIDENCED BY

14   THE FACT THAT THE PLAINTIFFS HAVE ACTUALLY SUED THE UNITED

15   STATES HERE, EVEN THOUGH THEIR CLAIMS FOR EQUITABLE RELIEF ARE

16   FRAMED AS AGAINST THE NAMED OFFICERS IN THEIR OFFICIAL

17   CAPACITY.  THE UNITED STATES IS A PARTY TO THIS CASE, AND I

18   THINK THAT'S VERY INDICATIVE OF THE TYPE OF BROAD-RANGING

19   INJUNCTIVE RELIEF AGAINST THE SOVEREIGN THAT THEY SEEK.

20             AND, ALSO, AS YOUR HONOR POINTS OUT, I THINK IN

21   QUESTION EIGHT, THE PLAINTIFFS DO SEEK TO ENJOIN THE DEFENDANTS

22   AND ANYBODY ACTING IN CONCERT OR PARTICIPATION WITH THEM, SO IT

23   GOES BEYOND JUST THE ACTIONS OF THESE NAMED DEFENDANTS.

24             YOUR HONOR, THE SECOND REASON WHY THE *LARSON* DOCTRINE

25   DOES NOT APPLY HERE IS BECAUSE, AGAIN, DIRECTLY FROM *LARSON*

1    ITSELF, IT ONLY APPLIES WHEN THE GOVERNMENT OFFICERS ACTED

2    WITHOUT ANY AUTHORITY WHATSOEVER, WHEN THERE'S BEEN A LACK OF

3    DELEGATED POWER, AND THE *LARSON* COURT SAID A CLAIM OF ERROR IN

4    THE EXERCISE OF THAT POWER IS, THEREFORE, NOT SUFFICIENT TO

5    COME WITHIN *LARSON*.

6         AND, AGAIN, THAT'S EXACTLY WHAT WE HAVE HERE.  THE

7    GOVERNMENT DEFENDANTS CLEARLY HAVE THE AUTHORITY TO CONDUCT

8    ELECTRONIC SURVEILLANCE, AND PLAINTIFFS' CLAIM IS THAT THEY

9    ERRED IN EXERCISING THAT AUTHORITY.

10        THE THIRD REASON, YOUR HONOR, WHY WE DO NOT THINK

11   *LARSON* APPLIES HERE IS HAVING A LOT TO DO WITH MR. COPPOLINO'S

12   ARGUMENT TODAY, THE INFORMATION THAT THE PLAINTIFFS WOULD NEED

13   IN ORDER TO PROVE -- AGAIN, WE'RE AT SUMMARY JUDGMENT NOW, NOT

14   JUST THE PLEADINGS -- IN ORDER TO PROVE THAT THE NAMED

15   DEFENDANTS, IN FACT, ACTED BEYOND THEIR STATUTORY AUTHORITY OR

16   IN VIOLATION OF IT, OR IN EXCESS OF IT, HOWEVER YOU FRAME IT,

17   THAT INFORMATION IS SUBJECT TO THE STATE SECRETS PRIVILEGE THAT

18   WE'VE ASSERTED.  SO, THEY WOULD ACTUALLY NEED TO PROVE WHAT THE

19   NAMED DEFENDANTS DID HERE IN ORDER TO AVAIL THEMSELVES OF THE

20   *LARSON* DOCTRINE.

21        AND, LASTLY, YOUR HONOR, AS WE ARGUED IN OUR PAPERS,

22   WE BELIEVE THAT CONGRESS REPLACED -- EFFECTIVELY REPLACED THE

23   *LARSON* DOCTRINE IN THE ADMINISTRATIVE PROCEDURE ACT WHEN IT

24   WAIVES SOVEREIGN IMMUNITY SUBJECT TO CERTAIN EXCEPTIONS.  AND,

25   IN FACT, WHEN CONGRESS ENACTED THE WAIVER IN SECTION 702 OF THE

1   APA, IT SAID, QUOTE:

2                    "ACTIONS CHALLENGING OFFICIAL

3            CONDUCT ARE INTRINSICALLY AGAINST THE UNITED

4            STATES AND ARE NOW TREATED STATE AS SUCH FOR

5            ALL PRACTICAL PURPOSES."

6            CLOSE QUOTE.

7            THAT'S QUOTING FROM THE HOUSE REPORT 94-1656,

8   PAGE 11, THAT WE CITED IN OUR PAPERS.

9            AND, IN FACT, THE NINTH CIRCUIT HAS SAID IN, YOU

10  KNOW, VERY CLEAR TERMS THAT WHILE IT FOLLOWED *LARSON* IN CASES

11  PRIOR TO 1976, IT NOW LOOKS TO SECTION 702 OF THE APA INSTEAD.

12  THAT'S THE *PEABODY* CASE AND *PRESBYTERIAN CHURCH* CASE, BOTH

13  CITED IN OUR PAPERS.

14            **THE COURT:**  THANK YOU.

15            COUNSEL?

16            **MR. WIEBE:**  YOUR HONOR, WE'VE MOVED BEYOND QUESTION

17  SEVEN.

18            **THE COURT:**  WHY DON'T WE MOVE TO QUESTION EIGHT?

19            **MR. WIEBE:**  LET ME ADDRESS THE POINTS IF I MAY?

20            **THE COURT:**  YES.

21            **MR. WIEBE:**  FIRST OF ALL, THE DIVIDING LINE BETWEEN A

22  *LARSON* CLAIM IS WHETHER OR NOT THE ACTIONS ARE WITHIN THE SCOPE

23  OF THE AUTHORITY CONGRESS HAS GRANTED TO THE OFFICER OR NOT,

24  AND WE HAVE A VERY CLEAR ANSWER IN THIS CASE, BECAUSE CONGRESS

25  HAS BEEN VERY CLEAR ABOUT WHAT AUTHORITY TO CONDUCT ELECTRONIC

1    SURVEILLANCE HAS BEEN GRANTED.

2              IF I MAY REFER YOUR HONOR TO 18 USC 2511 -- I DON'T

3    KNOW IF THAT'S IN YOUR MATERIALS OR NOT.

4         **THE COURT:**  NOT IN THOSE MATERIALS, BUT I HAVE MY

5    DOUBLE SECRET MATERIALS HERE.  OKAY.  I'M WITH YOU.

6         **MR. WIEBE:**  ALL RIGHT.  WE'RE IN 18 USC 2511, WHICH

7    IS PART OF THE WIRETAP ACT, AND IT BEGINS WITH A -- IN

8    SUBSECTION ONE WITH A GENERAL PROHIBITION ON INTERCEPTION OF

9    COMMUNICATIONS EXCEPT AS OTHERWISE AUTHORIZED BY STATUTE.

10             IF I MAY DIRECT YOUR HONOR THEN TO SUBSECTION TWO F?

11        **THE COURT:**  ARE YOU SAYING "F" AS IN FRANK?

12        **MR. WIEBE:**  F AS IN FRANK, YOUR HONOR.

13        **THE COURT:**  ALL RIGHT.  YES.

14        **MR. WIEBE:**  THAT SUBSECTION IS RATHER LONG.  IT ENDS

15   WITH A STATEMENT THAT THE PROCEDURES IN THIS CHAPTER, THAT IS

16   THE WIRETAP ACT, OR CHAPTER 121, WHICH IS THE STORED

17   COMMUNICATIONS ACT, OR 206, WHICH DEALS WITH PEN REGISTERS AND

18   THE FOREIGN INTELLIGENCE SURVEILLANCE ACT OF 1978:

19                   "...SHALL BE THE EXCLUSIVE MEANS BY

20             WHICH ELECTRONIC SURVEILLANCE AS DEFINED IN

21             SECTION 101 OF SUCH ACT AND THE INTERCEPTION

22             OF DOMESTIC WIRE, ORAL, AND ELECTRONIC

23             COMMUNICATIONS MAY BE CONDUCTED."

24             THERE'S A SIMILAR PROVISION IN ALMOST EXACTLY THE

25   SAME WORDS IN FISA IN SECTION 1812 OF TITLE 50.

1          SO CONGRESS HAS BEEN VERY CLEAR THAT, EXCEPT AS

2     AUTHORIZED BY STATUTE, SURVEILLANCE IS PROHIBITED.  SO ANY

3     OFFICER WHO CONDUCTS SURVEILLANCE THAT IS NOT EXPRESSLY

4     AUTHORIZED BY STATUTE HAS EXCEEDED THE BOUNDS OF THE STATUTORY

5     AUTHORITY AND IS SUBJECT TO A LARSON CLAIM.

6          SO THAT -- AND, CLEARLY, THAT'S EXACTLY WHAT WE'RE

7     ALLEGING HERE.  WE ARE ALLEGING THEY HAVE TRANSGRESSED THOSE

8     BOUNDARIES.  ALL *LARSON* ALLOWS YOU TO DO IS PUSH THE OFFICER

9     BACK WITHIN THOSE BOUNDARIES.  AS LONG AS THE OFFICER IS ACTING

10    WITHIN THE BOUNDARIES, A *LARSON* CLAIM DOESN'T APPLY.  THAT'S

11    NOT WHAT WE'VE ALLEGED.  WE'VE ALLEGED TRANSGRESSION OF THOSE

12    BOUNDARIES.

13         AS TO WHETHER *LARSON* SURVIVES, WE BRIEFED THAT

14    EXTENSIVELY.  I'LL JUST REFER YOU TO THE *CHAMBER OF COMMERCE*

15    *VERSUS REICH* CASE THAT'S CITED IN OUR PAPERS.

16         LET'S SEE.

17         THE BOTTOM LINE IS WE BELIEVE THAT WE HAVE -- THAT

18    *LARSON* SURVIVES AND GIVES US A CAUSE OF ACTION HERE.

19         SHALL I PROCEED TO ADDRESS THE OTHER MATTERS IN

20    QUESTION EIGHT OR --

21         **THE COURT:**  NO.  I'D LIKE TO GO -- FIRST, LET ME ASK

22    MS. BERMAN IF SHE HAS ANY RESPONSE TO WHAT YOU JUST SAID, AND

23    THEN WE WILL MOVE DIRECTLY TO QUESTION EIGHT.

24         **MS. BERMAN:**  YES, YOUR HONOR, A FEW QUICK COUPLE OF

25    RESPONSES.

1              **THE COURT:**  SLOWLY.

2              **MS. BERMAN:**  YES, I'M TRYING.

3        THE FIRST IS THAT THE LAW IN THIS AREA IS, IN FACT,

4   VERY COMPLICATED AS MOST, YOU KNOW, SCHOLARS OR PEOPLE WHO HAVE

5   READ THE STATUTES HAVE ACKNOWLEDGED, AND IT'S ALSO VERY FACT

6   SPECIFIC.  WHILE THE COMPLAINT MAY ALLEGE CONDUCT THAT IS

7   BEYOND CERTAIN AUTHORITIES, WE'RE AT SUMMARY JUDGMENT NOW AND

8   THE PLAINTIFFS HAVE TO PROVE WHAT THE NAMED DEFENDANTS AND

9   THEIR AGENCIES ACTUALLY DID HERE, AND THAT INFORMATION IS

10  SUBJECT TO THE PRIVILEGE, AND I DIDN'T HEAR ANY RESPONSE TO

11  THAT.

12       ONE OTHER QUICK POINT IS THAT MR. WIEBE IS FOCUSING

13  ON THE ASPECT OF *LARSON* THAT HAS TO DO WITH *ULTRA VIRES*

14  CONDUCT, AND ACTING BEYOND STATUTORY AUTHORITY EQUALLY AS

15  IMPORTANT, IF NOT MORE IMPORTANT, IS THE RELIEF THAT'S SOUGHT.

16  AND, CLEARLY, HERE THERE REALLY CAN BE NO ARGUMENT THAT THE

17  RELIEF DOES NOT RUN AGAINST THE GOVERNMENT THAT'S THE

18  SOVEREIGN, AND SO THE DOCTRINE DOES NOT APPLY.

19       LASTLY, THE *CHAMBER OF COMMERCE* CASE THAT MR. WIEBE

20  RELIES ON IS NOT FROM THE NINTH CIRCUIT.  AND, IN ANY EVENT, IN

21  THAT CASE THE COURT, WHILE IT DOES MENTION *LARSON* AND DISCUSSES

22  *LARSON* SOMEWHAT IN A CASE AFTER 1976, IT DOES NOT ADDRESS THE

23  INTERPLAY BETWEEN SECTION 702 AND *LARSON*, ET AL.

24             **THE COURT:**  ALL RIGHT.  LET'S MOVE TO QUESTION EIGHT,

25  AND WE WILL START DISCUSSING SOME OF THE INTERPLAY HERE.

1    QUESTION NUMBER EIGHT READS AS FOLLOWS:

2            UNDER *LARSON*, THE COURT MUST LOOK TO THE REMEDY

3    PLAINTIFFS SEEK IN ORDER TO DETERMINE WHETHER THEIR CLAIMS

4    TRULY ARE AGAINST THE OFFICERS IN THEIR INDIVIDUAL CAPACITY OR

5    ARE AGAINST THE UNITED STATES.  PLAINTIFFS BROADLY SEEK TO

6    ENJOIN DEFENDANTS AND, QUOTE, "ALL THOSE IN ACTIVE CONCERT AND

7    PARTICIPATION WITH THEM FROM VIOLATING THE PLAINTIFF'S AND

8    CLASS MEMBERS' STATUTORY RIGHTS": UNQUOTE.  AND THAT QUOTE CAME

9    FROM THE COMPLAINT AT PARAGRAPHS 155, 183, 220 AND 243.

10           QUESTION 8(A):  TO THE EXTENT THAT THE PLAINTIFFS MAY

11   BRING A CLAIM UNDER *LARSON*, THE COURT MUST EXAMINE THE SCOPE OF

12   THE REQUESTED INJUNCTION TO DETERMINE WHETHER THE CLAIM, QUOTE,

13   "WOULD WORK AN INTOLERABLE BURDEN ON GOVERNMENTAL FUNCTIONS,"

14   UNQUOTE, CITING *WASHINGTON VERSUS UDALL* 417 F.2D 1310 AT 1318,

15   A NINTH CIRCUIT CASE DECIDED IN 1969.  WHAT SPECIFIC CONDUCT

16   ARE PLAINTIFFS SEEKING TO ENJOIN?

17           **MR. WIEBE:**  WHAT WE'RE SEEKING TO ENJOIN IS EXACTLY

18   WHAT *LARSON* ADDRESSES, WHICH IS CONGRESS -- I'M SORRY --

19   CONDUCT THAT GOES BEYOND THE LIMITS OF THE OFFICERS' STATUTORY

20   AUTHORITY.  THERE IS NO STATUTORY AUTHORITY FOR CONDUCTING MASS

21   DRAGNET SURVEILLANCE.  WE WANT THE OFFICERS WHO ARE SUBJECT TO

22   OUR *LARSON* CLAIMS TO BE CONFINED TO ONLY OPERATING WITHIN THE

23   LIMITS OF THE WIRETAP ACT, THE STORED COMMUNICATIONS ACT AND

24   FISA.

25           THAT'S THE RELIEF AS FAR AS *LARSON* GOES THAT WE'RE

1  SEEKING AGAINST THOSE OFFICERS.

2          AS FAR AS THE ACTIVE CONCERT AND PARTICIPATION

3  LANGUAGE, AS YOUR HONOR KNOWS, THAT'S STANDARD INJUNCTIVE ORDER

4  FROM RULE 65(D) OF THE FEDERAL RULES OF CIVIL PROCEDURE, WHICH

5  SAYS EVERY INJUNCTIVE ORDER SHOULD HAVE THAT LANGUAGE.  THAT'S

6  JUST THE STANDARD PROVISION THAT -- TO PROHIBIT AN ENJOINED

7  DEFENDANT FROM EVADING THE COURT'S MANDATE BY INDIRECTLY HAVING

8  OTHERS DO WHAT THEY ARE DIRECTLY FORBIDDEN FROM DOING

9  THEMSELVES.  SO I DON'T THINK THERE'S ANYTHING UNIQUE ABOUT

10  THAT.

11          I WANT TO ADDRESS THE INTOLERABLE BURDEN QUESTION

12  WHICH THE COURT AROSE.

13          THE DISCUSSION IN *WASHINGTON VERSUS UDALL* ABOUT THE

14  INTOLERABLE BURDEN QUESTION COMES OUT OF FOOTNOTE 11 OF *LARSON*.

15  NOW, WHAT FOOTNOTE 11 OF *LARSON* IS, IT'S, IF YOU WILL, AN

16  EXCEPTION TO THE *LARSON* EXCEPTION.  IT SAYS THAT IT'S FINE TO

17  ORDER AN OFFICER MERELY TO CEASE THEIR UNLAWFUL CONDUCT, BUT IF

18  A COURT GOES BEYOND THAT, THEN IT SHOULD EQUITABLY LOOK AT WHAT

19  THE BURDEN'S LIKE.

20          IN PARTICULAR, THAT FOOTNOTE 11 FROM *LARSON*, WHICH IS

21  AT PAGE 691, SAYS THAT THIS INTOLERABLE BURDEN QUESTION ARISES

22  ONLY, QUOTE, "IF THE RELIEF REQUESTED CANNOT BE GRANTED BY

23  MERELY ORDERING THE CESSATION OF THE CONDUCT COMPLAINED OF, BUT

24  WILL REQUIRE AFFIRMATIVE ACTION BY THE SOVEREIGN AGENCY."

25          AS I'VE SAID, WE HAVE TWO PORTIONS OF OUR REQUEST FOR

1    EQUITABLE RELIEF.  ONE IS SIMPLY STOP DOING IT.  THAT IS

2    CESSATION OF THE CONDUCT COMPLAINED OF AND THAT IS -- THE

3    INTOLERABLE BURDEN QUESTION DOES NOT APPLY IN THOSE

4    CIRCUMSTANCES.  IT'S ONLY IF YOU ARE GOING BEYOND THAT, AND

5    PART OF OUR REQUEST FOR RELIEF DOES GO BEYOND THAT.  WE ASK FOR

6    DESTRUCTION OF ILLEGALLY-ACQUIRED COMMUNICATIONS AND

7    COMMUNICATIONS RECORDS.

8               AS TO THAT, THE COURT WOULD DO WHAT IT ALWAYS DOES AS

9    THE COURT OF EQUITY, AND THIS COURT ALWAYS SITS AS A COURT OF

10   EQUITY, IT BALANCES THE HARDSHIPS.  IT LOOKS AT THE COMPETING

11   EQUITIES.  AND AS TO ONLY THAT PORTION OF OUR EQUITABLE RELIEF

12   THAT IS ACTUALLY REQUESTING DESTRUCTION OF RECORDS, THE COURT

13   WOULD WISELY USE ITS EQUITABLE POWERS AS IT WOULD IN ANY

14   EQUITABLE CASE.

15              AND, IN ANY EVENT, IT'S NOT AN INTOLERABLE BURDEN FOR

16   THE EXECUTIVE TO BE REQUIRED TO OBEY THE EXPRESS LIMITATIONS

17   THAT THE CONSTITUTION AND CONGRESS HAVE IMPOSED ON ELECTRONIC

18   SURVEILLANCE.

19              **THE COURT:**  ALL RIGHT.  COUNSEL?

20              **MR. BRINCKERHOFF:**  IF I MAY, YOUR HONOR?

21              **THE COURT:**  YES.

22              **MR. BRINCKERHOFF:**  I JUST WANT TO POINT OUT A COUPLE

23   OF DISTINCTIONS THAT MAY OR MAY NOT BE MEANINGFUL BUT ARE

24   IMPORTANT, POTENTIALLY, IN ANY EVENT.  ONE --

25              **THE COURT:**  HOW COULD THEY BE NOT MEANINGFUL BUT BE

```
1    IMPORTANT?

2              MR. BRINCKERHOFF:  WELL, IT WILL DEPEND ON HOW YOU

3    RESOLVE MANY OF THE QUESTIONS WE ARE ADDRESSING THIS MORNING

4    WHETHER THEY BECOME MATERIAL OR NOT --

5              THE COURT:  ALL RIGHT.

6              MR. BRINCKERHOFF:  -- I THINK IS WHAT I WAS REFERRING

7    TO.

8              THE COURT:  ALL RIGHT.

9              MR. BRINCKERHOFF:  ONE, AT LEAST IN THE SHUBERT CASE,

10   WE DID NOT SUE THE UNITED STATES OR ANY AGENCY OF THE FEDERAL

11   GOVERNMENT.  WE DID SUE THREE DEFENDANTS IN THEIR OFFICIAL

12   CAPACITIES, AND UNDER THE RECENT DECISION IN AL-HARAMAIN, THAT

13   MAY, INDEED, BE UNDERMINED.  BUT THERE'S NO QUESTION THAT THE

14   CONDUCT THAT WE ALLEGE HERE IS ULTRA VIRES FOR ALL THE REASONS

15   MR. WIEBE HAS DETAILED.

16             AND I THINK, YOU KNOW, THE RESPONSE FROM THE

17   GOVERNMENT IS, YOU KNOW, WE'RE AT THE SUMMARY JUDGMENT STAGE,

18   YOU NEED TO PROVE WHAT WE HAVE DONE IS ULTRA VIRES AND SOMEHOW

19   BEYOND THE SCOPE OF OUR AUTHORITY; AND, BY THE WAY, WE'RE

20   INVOKING PRIVILEGE AND YOU CAN'T PROVE ANYTHING.  IT, AGAIN,

21   HIGHLIGHTS THAT CIRCULAR OR CATCH-22 NATURE OF THE POSITION

22   WE'RE IN.

23             THE ALLEGATIONS THAT WE MADE CERTAINLY ARE ABOUT

24   ULTRA VIRES ACTS, AND LARSON CLEARLY APPLIES.  PENNHURST, WHICH

25   WAS REFERRED TO, IS AN 11TH AMENDMENT CASE ABOUT FEDERALISM
```

 1    CONCERNS AND STATE IMMUNITIES.  IT HAS NOTHING TO DO WITH WHAT
 2    WE'RE DEALING WITH HERE.
 3                 **THE COURT:**  MS. BERMAN?
 4                 **MS. BERMAN:**  YES, YOUR HONOR.
 5                 FIRST, IN RESPONSE TO THE POINT ABOUT RULE 65 AND THE
 6    LANGUAGE FROM THE COMPLAINT, WHILE THAT RULE CERTAINLY ALLOWS
 7    EXTENDED RELIEF BEYOND THE PARTIES, I DON'T BELIEVE IT REQUIRES
 8    IT.  SO THAT IS SOMETHING THAT THEY HAVE SPECIFICALLY ASKED FOR
 9    IN THE COMPLAINT.
10                 YOUR HONOR, IN TERMS OF THE *LARSON* FOOTNOTE THAT
11    PLAINTIFFS POINT TO, I WOULD JUST LIKE TO ALSO POINT OUT THAT
12    THERE IS LANGUAGE IN THE TEXT OF *LARSON* TOWARDS THE END OF THE
13    OPINION WHERE THE COURT SAYS -- AND THIS IS AT PAGE 704 OF THE
14    OPINION, QUOTE:
15                      "IT IS A FAR DIFFERENT MATTER TO
16              PERMIT A COURT TO EXERCISE ITS COMPULSORY
17              POWERS TO RESTRAIN THE GOVERNMENT FROM ACTING
18              OR TO COMPEL IT TO ACT.  THERE ARE THE
19              STRONGEST REASONS OF PUBLIC POLICY FOR THE
20              RULE THAT SUCH RELIEF CANNOT BE HAD AGAINST
21              THE SOVEREIGN."
22                 SO IT'S NOT A MATTER OF JUST COMPELLING IT TO ACT.
23    CERTAINLY, RESTRAINING IT FROM ACTING IS RELIEF AGAINST THE
24    SOVEREIGN.
25                 IN TERMS OF *SHUBERT*, I WOULD LIKE TO POINT OUT WITH

1    RESPECT TO THE SOVEREIGN IMMUNITY QUESTION THAT THERE'S NO

2    COUNT IN *LARSON*, ACTUALLY IN THE COMPLAINT, SEEKING ANY KIND OF

3    INJUNCTIVE RELIEF.  THERE'S A PASSING REFERENCE IN ONE OF THE

4    FACTUAL ASSERTIONS, PARAGRAPH ASSERTIONS.  THERE'S NO COUNT

5    ACTUALLY SEEKING INJUNCTIVE RELIEF; NOR IS THERE ANY ASSERTION

6    OF *LARSON* AS A WAIVER OF SOVEREIGN IMMUNITY IN THEIR COMPLAINT.

7            LASTLY, IN TERMS OF *PENNHURST*, PLAINTIFFS ARE WRONG

8    TO DISCOUNT *PENNHURST*.  *PENNHURST* DOES HAVE TO DO WITH STATE

9    IMMUNITY, BUT IT RELIES HEAVILY ON THE OPINION IN *LARSON* AND

10   *DUGAN*.

11           **THE COURT:**  ANYTHING FURTHER FROM PLAINTIFFS?

12           **MR. WIEBE:**  JUST BRIEFLY, YOUR HONOR.

13           FIRST OF ALL, THE WHOLE POINT OF *LARSON* AND THE OTHER

14   CASES WE'VE CITED, *HERMAN V. BRUCKER* (PHONETIC), *PHILADELPHIA*

15   *V. STIMSON*, THEY ALL RECOGNIZE THE POINT OF IT IS TO RESTRAIN

16   OFFICERS FROM ULTRA VIRES CONDUCT.  TO THE EXTENT WE ARE

17   RELYING ON *LARSON*, THAT'S EXACTLY WHAT WE'RE DOING HERE; KEEP

18   THEM WITHIN THE SCOPE OF THEIR STATUTORY AND CONSTITUTIONAL

19   LIMITATIONS.

20           AGAIN, AS FAR AS THE ASSERTION THAT WE HAVEN'T PROVEN

21   THAT THEY'VE GONE BEYOND THOSE LIMITATIONS, THIS SUMMARY

22   JUDGMENT MOTION WAS NOT A NON-LIABILITY MOTION.  IT WAS NOT A

23   MOTION, YOU HAVE NO EVIDENCE WE'VE DONE IT; IT'S YOU DON'T GET

24   TO THE STAGE OF PROVING WHETHER OR NOT THEY'VE DONE IT BECAUSE

25   OF THE STATE SECRETS PRIVILEGE AND SOVEREIGN IMMUNITY.  SO

1    THEIR PAPERS NEVER EVEN RAISED THAT ISSUE.

2              **THE COURT:**  ALL RIGHT.  LET'S MOVE TO QUESTIONS 8(B),

3    AND I'LL READ THE ENTIRE QUESTION.

4              ARE PLAINTIFFS SEEKING TO ENJOIN CONDUCT BY ANYONE

5    OTHER THAN ALEXANDER, HOLDER, OR CLAPPER?  IF SO -- ONE

6    LITTLE I -- IF SO, ON WHAT BASIS DO PLAINTIFFS CONTEND THAT

7    SUCH AN INJUNCTION WOULD FALL WITHIN THE LIMITS OF A CLAIM

8    UNDER *LARSON*.  AND TWO LITTLE I'S:  IF NOT, IN LIGHT OF THE

9    FACT THAT PLAINTIFFS SEEK TO ENJOIN PERSONS IN ACTIVE CONCERT

10   AND PARTICIPATION WITH THESE OFFICERS, AND THE REALITY THAT THE

11   ALLEGED PROGRAM IS CARRIED OUT BY PROGRAM OFFICIALS IN ADDITION

12   TO THESE THREE OFFICERS, HOW WOULD AN INJUNCTION DIRECTED

13   SOLELY AT ALEXANDER, HOLDER, AND CLAPPER IN THEIR INDIVIDUAL

14   CAPACITIES PROVIDE PLAINTIFFS WITH THE RELIEF THEY SEEK?

15             **MR. WIEBE:**  YOUR HONOR, WE DO SEEK TO ENJOIN OTHERS.

16   SPECIFICALLY, WE SEEK TO ENJOIN THE UNITED STATES, THE NATIONAL

17   SECURITY AGENCY, AND THE DEPARTMENT OF JUSTICE FOR BOTH

18   STATUTORY AND JUNCTIONAL VIOLATIONS.  I THINK IT'S SIGNIFICANT

19   THAT DEFENDANTS HAVEN'T CHALLENGED THE ABILITY OF THE COURT TO

20   ENJOIN CONSTITUTIONAL VIOLATIONS.

21             THE BASIS FOR DOING SO IS SECTION 702 OF THE APA.

22   SECTION 702 OF THE APA WAIVES SOVEREIGN IMMUNITY BOTH FOR

23   CLAIMS BROUGHT DIRECTLY UNDER THE APA ITSELF, AND, MORE

24   GENERALLY, FOR CLAIMS THAT AN AGENCY IS VIOLATING OTHER

25   STATUTORY OR CONSTITUTIONAL PROHIBITIONS.  THESE ARE SOMETIMES

1    REFERRED TO SOMEWHAT CONFUSINGLY AS NONSTATUTORY CLAIMS.

2            THE AUTHORITY FOR THAT SECTION 702 DOES WAIVE BOTH

3    CLASSES OF CLAIMS.  WE DIRECT THE COURT TO THE *PRESBYTERIAN*

4    *CHURCH* CASE, NINTH CIRCUIT CASE THAT'S 879 F.2D AT 523 TO 526.

5    THE *TRUDEAU* CASE, THAT'S A D.C. CIRCUIT CASE.  AND, CERTAINLY,

6    THE D.C. CIRCUIT IS THE CASE THAT MOST DEALS WITH

7    ADMINISTRATIVE LAW AND MOST DEALS WITH THE APA.  AGAIN, THAT'S

8    THE *TRUDEAU* CASE AT 456 F.3D AT 185 TO 187 AND 189 TO 190.

9            *CHAMBER OF COMMERCE VERSUS REICH* CASE, ANOTHER D.C.

10   CIRCUIT CASE, 74 F.3D AT 1327 TO 1328.

11           ESSENTIALLY, THE APA LETS YOU BRING A CLAIM ALLEGING

12   THAT AN AGENCY HAS VIOLATED SOME STATUTORY DUTY OR OBLIGATION.

13   IN THIS CASE, IT'S -- IT PARALLELS THE *LARSON* CLAIMS WE'VE

14   BROUGHT AGAINST THE OFFICERS INDIVIDUALLY.

15           SO, SECTION 702 WAIVES SOVEREIGN IMMUNITY FOR

16   EQUITABLE RELIEF CLAIMS AGAINST THE UNITED STATES, THE NATIONAL

17   SECURITY AGENCY, THE DEPARTMENT OF JUSTICE, AND, FOR THAT

18   MATTER, OFFICERS IN THEIR OFFICIAL CAPACITIES.

19           IN FACT, ONE OF THE REQUIREMENTS UNDER 702 FOR

20   INJUNCTIVE RELIEF IS THAT THE INJUNCTION NAME A SPECIFIC

21   OFFICER WHO'S PERSONALLY RESPONSIBLE FOR COMPLIANCE WITH IT.

22           ADDITIONALLY, THE CONSTITUTION ALSO PROVIDES FOR

23   DIRECT ACTIONS FOR EQUITABLE RELIEF AGAINST THOSE DEFENDANTS,

24   AND FOR THAT WE CITE THE *TRUDEAU* CASE AGAIN AT 456 F.3D 190,

25   FOOTNOTE 22 ON PAGE 178.  AGAIN, THE DEFENDANTS HAVEN'T

1    CONTENDED THAT OUR CONSTITUTIONAL CLAIMS FOR EQUITABLE RELIEF

2    ARE INFIRM.

3            SO THIS -- BECAUSE OF THE APA AND *LARSON* BOTH, THAT

4    ALLOWS US INJUNCTIVE RELIEF AGAINST THE OFFICERS IN WHATEVER

5    CAPACITY AGAINST -- AND AGAINST THE GOVERNMENT DIRECTLY.  THAT

6    SHOULD PROVIDE ALL THE RELIEF THAT WE WOULD NEED.

7            **THE COURT:**  DO YOU WISH TO ADD ANYTHING,

8    MR. BRINCKERHOFF?

9            **MR. BRINCKERHOFF:**  NOT AT THIS TIME, YOUR HONOR.

10           **THE COURT:**  ALL RIGHT.

11           MS. BERMAN?

12           **MS. BERMAN:**  YOUR HONOR, THE FIRST -- ONE OF THE

13   FIRST THINGS MR. WIEBE SAID WAS THAT THEY DO SEEK TO ENJOIN

14   OTHERS, FOLKS OTHER THAN THE NAMED DEFENDANTS, AND SPECIFICALLY

15   THE AGENCIES AND THE UNITED STATES.  AGAIN, THAT'S EXACTLY WHAT

16   *LARSON* PREVENTS.

17           SO, NOW THE SHIFT HAS BEEN MADE TO SECTION 702, TO

18   RELY ON THAT.  AND JUST TO START OFF BY SAYING MR. WIEBE IS

19   CORRECT THAT WE ARE NOT MAKING A SOVEREIGN IMMUNITY ARGUMENT

20   WITH RESPECT TO THEIR CONSTITUTIONAL CLAIMS FOR INJUNCTIVE

21   RELIEF.  IT'S JUST THE STATUTORY CLAIMS.

22           SECTION 702 OF THE APA DOES WAIVE SOVEREIGN IMMUNITY

23   FOR EQUITABLE RELIEF CLAIMS, AS I SAID BEFORE, BUT THERE'S A

24   PRETTY BIG CATCH-ALL EXCEPTION OR EXCEPTIONS TO THAT RULE WHERE

25   IT SAYS, BUT NOT WHEN ANOTHER STATUTE THAT GRANTS CONSENT TO

1    SUIT EXPRESSLY OR IMPLIEDLY FORBIDS RELIEF SOUGHT.

2            AND HERE IT'S VERY CLEAR THAT WHEN CONGRESS ENACTED

3    THE PATRIOT ACT IN 2001, IN SECTION 223 OF THAT ACT, IT

4    BASICALLY TOOK OUT OF A SECTION OF THE WIRETAP ACT AND THE

5    STORED COMMUNICATIONS ACT.  IT TOOK CLAIMS AWAY FROM THE

6    GOVERNMENT.  IN OTHER WORDS, IT SAYS YOU CAN'T SUE THE UNITED

7    STATES FOR EQUITABLE RELIEF.

8            AND THEN IN SECTION 2712 IN THIS SAME SECTION IT

9    ADDED BACK CLAIMS AGAINST THE GOVERNMENT BUT ONLY FOR MONEY

10   DAMAGES.

11           SO THAT'S -- 2712 IMPLIEDLY FORBIDS THE EQUITABLE

12   RELIEF SOUGHT, AND THE WIRETAP ACT AND SCA PROVISIONS EXPRESSLY

13   FORBID IT.

14           SO WE THINK THAT THE COMBINATION OF THOSE AUTHORITIES

15   UNDER SECTION 223 CLEARLY EXPRESS THE CONGRESSIONAL INTENT

16   THAT, YOU KNOW, THAT THE RELIEF BE ONLY MONDAY -- MONEY DAMAGES

17   AGAINST THE UNITED STATES.

18           AND JUST ONE OTHER POINT ON MR. WIEBE'S AUTHORITIES,

19   JUST TO POINT OUT *PRESBYTERIAN CHURCH* ONLY INVOLVED

20   CONSTITUTIONAL CLAIMS.

21           **THE COURT:**  ALL RIGHT.  ANYTHING YOU WANT TO SAY IN

22   RESPONSE?

23           **MR. WIEBE:**  OH, YES.

24           ON THIS LAST POINT, AGAIN, WE'RE BACK TO THE LANGUAGE

25   OF SECTION 2712 HERE, AND THE GOVERNMENT'S ARGUMENT IS THAT IT

1    FORBIDS EQUITABLE RELIEF.  THAT'S NOT WHAT IT SAYS.  IT DOESN'T

2    MENTION EQUITABLE RELIEF AT ALL.  IT GRANTS A RIGHT TO SUE THE

3    GOVERNMENT FOR MONEY DAMAGES.  IT DOESN'T SAY YOU CAN'T BRING

4    THEM FOR EQUITABLE RELIEF.  THERE IS A PROVISION IN THERE.  IT

5    IS SUBSECTION (D) OF SECTION 2712.

6              **THE COURT:**  YES, I HAVE THAT.

7              **MR. WIEBE:**  SUBSECTION (D) SAYS ANY ACTION AGAINST

8    THE UNITED STATES UNDER THIS SUBSECTION SHALL BE THE EXCLUSIVE

9    REMEDY AGAINST THE UNITED STATES FOR ANY CLAIMS WITHIN THE

10   PURVIEW OF THIS SECTION.

11             SO THE QUESTION THEN IS WHAT'S WITHIN THE PURVIEW OF

12   THAT SECTION, AND THAT QUESTION IS ANSWERED BY SUBSECTION (A)

13   WHICH DESCRIBES THE CLAIMS AS, QUOTE, AN ACTION IN UNITED

14   STATES DISTRICT COURT AGAINST THE UNITED STATES TO RECOVER

15   MONEY DAMAGES.

16             NOW, THE CONCERN HERE WAS ONE OF THE THINGS THAT 2712

17   DOES IS BRING IN THE PROCEDURE OF THE FEDERAL TORT CLAIMS ACT,

18   AND YOU COULD SEE THAT HAVING DONE THAT, LITIGANTS MIGHT TRY TO

19   BRING OTHER TYPES OF MONEY DAMAGE CLAIMS AGAINST THE UNITED

20   STATES, NOT JUST THE MONEY DAMAGE CLAIM OF 2712(A), BUT MAYBE A

21   STATE LAW CLAIM FOR MONEY DAMAGES, OTHER THEORIES LIKE THAT.

22             AND, SO, ALL THAT SUBSECTION (D) DOES IS SAY THIS IS

23   YOUR ONLY WAY TO GET MONEY OUT OF THE GOVERNMENT.  IT DOESN'T

24   SAY THAT YOU CAN'T BRING A CLAIM FOR EQUITABLE RELIEF.  AND SO,

25   OUR RELIANCE ON SECTION 702 OF THE APA IS COMPLETELY WELL

1    FOUNDED.

2            AND THE OTHER PROVISIONS THAT THE GOVERNMENT'S CITED,

3    2520, WHICH IS THE WIRETAP ACT AUTHORIZATION FOR CLAIMS AGAINST

4    INDIVIDUALS, AND 2707, WHICH IS THE STORED COMMUNICATIONS ACT

5    AUTHORIZATION -- SIMILAR AUTHORIZATION FOR CLAIMS AGAINST

6    INDIVIDUALS.  THEY DON'T PROHIBIT INJUNCTIVE RELIEF AGAINST THE

7    GOVERNMENT.  THEY DON'T HAVE ANYTHING TO DO WITH THE

8    GOVERNMENT.  THEY JUST SAY THESE ARE JUST CLAIMS AGAINST

9    INDIVIDUALS, AND THESE ARE WHAT YOU GET TO DO AGAINST

10   INDIVIDUALS.

11           AND I THINK IN THAT RESPECT, THE *PATCHAK* CASE WHICH

12   WE CITE IS RELEVANT AUTHORITY HERE.  THIS IS -- THIS IS A

13   RECENT SUPREME COURT CASE FROM LAST SPRING ADDRESSING THE APA

14   AND THIS BAR UNDER THE APA.

15           WHAT THE COURT SAID THERE -- THIS IS 132 SUPREME

16   COURT REPORTER AT 2199, AND THEN THE PIN CITE IS 2209.  THERE

17   THE COURT REJECTED THE VIEW THAT, QUOTE:

18                   "IN AUTHORIZING ONE PERSON TO

19             BRING ONE KIND OF SUIT SEEKING ONE FORM OF

20             RELIEF, CONGRESS BARRED ANOTHER PERSON FROM

21             BRINGING ANOTHER KIND OF SUIT SEEKING ANOTHER

22             FORM OF RELIEF."

23           THAT'S EXACTLY THE GOVERNMENT'S ARGUMENT HERE, IS ONE

24   THAT THE SUPREME COURT WAS REJECTING.  HERE THE GOVERNMENT IS

25   SAYING, WELL, BECAUSE INDIVIDUALS IN 2520 AND 2707 ARE ALLOWED

1    TO BRING CLAIMS FOR DAMAGES IN EQUITABLE RELIEF, THAT MEANS

2    GOVERNMENT -- OR THAT MEANS THAT PLAINTIFFS CAN'T BRING CLAIMS

3    AGAINST THE GOVERNMENT FOR EQUITABLE RELIEF.  THAT'S THE THEORY

4    THAT THE COURT REJECTED HERE.

5         **THE COURT:**  ALL RIGHT.  ANYTHING YOU WANT -- YES,

6    MR. BRINCKERHOFF.

7         **MR. BRINCKERHOFF:**  IF I MAY?  I JUST WANTED TO

8    CORRECT ONE STATEMENT THAT WAS MADE BY THE GOVERNMENT.

9         THE PLAINTIFFS IN *SHUBERT* CLEARLY AND UNEQUIVOCALLY

10   ARE SEEKING INJUNCTIVE RELIEF OF THE SAME TWO KINDS THAT ARE

11   BEING SOUGHT IN JEWEL, BE IT NOT THE SAME DEFENDANTS, BE IT A

12   PROHIBITORY INJUNCTION AGAINST THE INDIVIDUAL DEFENDANTS.

13   THERE ARE THREE OF THEM -- I KNOW WE ARE GOING TO ADDRESS THIS

14   QUESTION LATER -- IN THEIR OFFICIAL AND ONE IN THEIR PERSONAL

15   CAPACITIES.

16        IT'S IN THE "WHEREFORE" CLAUSE ON PAGE 26 OF THE

17   COMPLAINT THAT MAKES IT CLEAR THE FORMS OF RELIEF WE'RE SEEKING

18   THAT ARISE FROM THE FOUR CLAIMS THAT WE BROUGHT, THREE

19   STATUTORY AND ONE BEING CONSTITUTIONAL.

20        **THE COURT:**  ALL RIGHT.  MS. BERMAN, ANYTHING FURTHER

21   YOU WANT TO SAY ON THAT QUESTION?

22        **MS. BERMAN:**  YES, YOUR HONOR.  SO IN TERMS OF

23   MR. WIEBE'S ARGUMENT ABOUT SECTION 2520 OF THE WIRETAP ACT AND

24   2707 OF THE STORED COMMUNICATIONS ACT, I THINK THE IMPORTANT

25   THING IS THAT YOU HAVE TO LOOK AT SECTION 223 OF THE PATRIOT

1    ACT, AND YOU HAVE TO LOOK AT WHAT CONGRESS WAS ATTEMPTING TO DO

2    THERE HOLISTICALLY.  AND IT'S NOT JUST THAT 2520 AND 2707 GIVE

3    THE RIGHT FOR EQUITABLE RELIEF AGAINST INDIVIDUALS; IT'S THAT

4    CONGRESS SPECIFICALLY TOOK OUT THAT RIGHT, SAID OTHERS ADDED IN

5    THE WORDS "OTHER THAN THE UNITED STATES" FROM THOSE SECTIONS,

6    AND PUT THE CAUSE OF ACTION INTO SECTION 2712, AND SPECIFICALLY

7    LIMITED THAT SECTION TO MONEY DAMAGES.

8           SO I THINK IT'S VERY CLEAR WHEN YOU LOOK AT THOSE TWO

9    ACTIONS IN CONCERT WITH EACH OTHER WHAT THEY WERE DOING.

10          IN TERMS OF MR. WIEBE'S ARGUMENT ABOUT SECTION

11   2712(D), I'M NOT ENTIRELY SURE I UNDERSTAND THE ARGUMENT

12   BECAUSE IT SEEMS VERY CIRCULAR TO ME.  BUT, IN ANY EVENT, IT'S

13   CLEAR THAT THAT PROVISION SAYS THAT THESE REMEDIES SHALL BE THE

14   EXCLUSIVE REMEDIES AGAINST THE UNITED STATES FOR ANY CLAIMS

15   WITHIN THE PURVIEW OF THIS SECTION.  THEY ARE THE ONES RELYING

16   ON THIS SECTION FOR THEIR CLAIMS.

17          SO, I STILL THINK IT'S VERY POWERFUL.  THEY'RE SAYING

18   THIS IS THE EXCLUSIVE REMEDY.  AND, IN FACT, WHEN CONGRESS

19   AMENDED SECTIONS 702 OF THE APA TO ADD THIS EXCEPTION, IT

20   SPECIFICALLY LOOKED AT STATUTES WHERE IT WAS NOT EXPRESSED THAT

21   THERE COULD BE NO EQUITABLE RELIEF.

22          THEY SPECIFICALLY TALKED ABOUT SITUATIONS WHERE THERE

23   WAS A REMEDY THAT WAS FOR MONEY DAMAGES AND THE FACT THAT IT

24   DIDN'T -- IT ONLY SPECIFIED MONEY DAMAGES IMPLIEDLY FORBID THE

25   EQUITABLE RELIEF.  SO THEY ADDED THOSE WORDS INTO THE STATUTE.

1          **THE COURT:** ALL RIGHT.  LET'S MOVE ON TO --

2          **MR. WIEBE:** IF I MAY, YOUR HONOR?  JUST THAT LAST

3  POINT?

4          **THE COURT:** YES.

5          **MR. WIEBE:** THANK YOU.

6          AGAIN, WHAT THE GOVERNMENT HAS SAID ABOUT 2520 AND

7  2707 IS EXACTLY THE THEORY THAT *PATCHAK* REJECTED.

8          WHAT THEY SAY ABOUT 2712(D), AGAIN, IT'S WHAT I

9  EXPLAINED ABOUT THE PURVIEW OF THE SECTION.  WE DO RELY ON 2712

10  BUT ONLY FOR OUR MONEY DAMAGES.  WE RELY ON THE APA AS A WAIVER

11  OF SOVEREIGN IMMUNITY FOR OUR EQUITABLE RELIEF.  AGAIN, THE

12  PURVIEW OF THE SECTION, AS SUBSECTION (A) OF 2712 SAYS, AN

13  ACTION FOR MONEY DAMAGES AGAINST UNITED STATES.

14          **THE COURT:** OKAY.  LET'S MOVE ON TO QUESTION NUMBER

15  NINE:  IS SECTION 1809 THE ONLY PROVISION OF FISA THAT

16  PLAINTIFFS ALLEGE DEFENDANTS -- THE QUESTION IS 1809, SECTION

17  1809, THE ONLY PROVISION OF FISA THAT PLAINTIFFS ALLEGE

18  DEFENDANTS VIOLATED?  IF NOT, WHAT OTHER SPECIFIC PROVISIONS

19  UNDER FISA DO PLAINTIFFS ALLEGE THAT DEFENDANTS VIOLATED?

20          AND THAT'S SECTION A.

21          SECTION B:  IF SO, TO THE EXTENT PLAINTIFFS ARE SUING

22  THE INDIVIDUAL OFFICERS IN THEIR OFFICIAL CAPACITY, ON WHAT

23  BASIS DO PLAINTIFFS CONTEND THAT SUCH A CLAIM FOR INJUNCTIVE

24  RELIEF IS NOT BARRED BY *AL-HARAMAIN*?  690 F.3D AT 1089.

25  ALTHOUGH THE NINTH CIRCUIT IN *AL-HARAMAIN* ADDRESSED A CLAIM FOR

1   DAMAGES, THE COURT STATED THAT A VIOLATION OF SECTION 1809 IS A

2   CRIME OFFENSE.  THE COURT EXPLAINED HOLDING A CRIMINAL

3   PROSECUTION AGAINST AN OFFICER IN HIS OFFICIAL CAPACITY, AND

4   THUS AGAINST AN OFFICE, WOULD BE UNPRECEDENTED, UNQUOTE, AND

5   THAT CRIMINALLY PROSECUTING A SUCCESSOR IN OFFICE FOR ACTIONS

6   OF HIS PREDECESSOR WOULD BE, QUOTE, "PATENTLY ABSURD," UNQUOTE.

7   THAT'S THE *AL-HARAMAIN* CASE AT 1098 THROUGH 1099.

8          IT'S BIG MOUTHFUL.  WHAT'S THE PLAINTIFFS' RESPONSE?

9          **MR. WIEBE:**  THANK YOU, YOUR HONOR.

10         I THINK WE NEED TO STEP BACK A BIT AND LOOK AT ALL

11  THREE ACTS TOGETHER, THE WIRETAP ACT, THE STORED COMMUNICATIONS

12  ACT, AND FISA.

13         **THE COURT:**  WILL YOU BE GETTING TO RESPONSES TO THE

14  QUESTIONS WHETHER YOU ARE --

15         **MR. WIEBE:**  YES, YES.

16         **THE COURT:**  OKAY.

17         **MR. WIEBE:**  BUT I THINK THE RESPONSE WOULD BE MUCH

18  MORE COMPREHENSIBLE IF I APPROACH IT FROM THIS DIRECTION.

19         **THE COURT:**  VERY WELL.

20         **MR. WIEBE:**  THANK YOU, YOUR HONOR.

21         THE WIRETAP ACT IN SECTION 25.1 BEGINS WITH A GENERAL

22  PROHIBITION OF COMMUNICATIONS INTERCEPTIONS, IN SUBSECTION 1 OF

23  2511.  THEN A LIST OF EXCEPTIONS IN SUBSECTION 2, INCLUDING

24  WIRETAP ACT AND FISA WARRANTS.  AND THEN A PROVISION, AS I

25  MENTIONED EARLIER, THAT THE WIRETAP ACT, THE STORED

1    COMMUNICATIONS ACT, AND FISA ARE THE EXCLUSIVE MEANS OF

2    SURVEILLANCE.

3            THE STORED COMMUNICATIONS ACT IS SIMILAR.  IT BEGINS

4    WITH THE GENERAL PROHIBITION AGAINST DISCLOSING COMMUNICATION

5    RECORDS IN 2702, AND THEN A SERIES OF EXCEPTIONS, INCLUDING

6    WARRANTS IN 2702, 2703 AND OTHER SECTIONS.

7            NOW, FISA SECTION 109, THE SECTION THAT THE COURT

8    ADDRESSED IN *AL-HARAMAIN*, DOESN'T IMPOSE ANY ADDITIONAL

9    SUBSTANTIVE STANDARDS OR LIMITATIONS OF ITS OWN.  IT SIMPLY

10   SAYS IF YOU CONDUCT SURVEILLANCE PROHIBITED BY THE WIRETAP ACT,

11   THE STORED COMMUNICATIONS ACT OR FISA, YOU VIOLATED

12   SECTION 109.

13           IT'S LARGELY DUPLICATIVE OF THE INDEPENDENT

14   PROHIBITIONS IN THE WIRETAP ACT AND THE STORED COMMUNICATIONS

15   ACT.

16           AND CONGRESS RECOGNIZES IN FISA LEGISLATIVE

17   HISTORY -- IN THE HOUSE REPORT THEY TALK ABOUT HOW THERE WILL

18   BE OCCASIONS WHERE THE SAME CONDUCT WILL VIOLATE THE WIRETAP

19   ACT AND FISA.

20           SO THESE ARE INDEPENDENT, CUMULATIVE, PARALLEL

21   REMEDIES AND -- SO WE ARE SEEKING INJUNCTIVE RELIEF NOT JUST

22   UNDER FISA, BUT UNDER THE STORED COMMUNICATIONS ACT AND THE

23   WIRETAP ACT.  AND BECAUSE OF THE 702 WAIVER, WE CAN GET RELIEF

24   DIRECTLY FOR THAT SAME CONDUCT UNDER THOSE ACTS.

25           IN ADDITION, IN OUR FISA EQUITABLE RELIEF CLAIM, THIS

1   IS COUNT FIVE OF OUR COMPLAINT, WE DO ALLEGE A VIOLATION OF

2   FISA SECTION 1812 -- THAT'S 50 USC SECTION 1812 -- WHICH IS

3   VERY SIMILAR TO 1809.  IT PROHIBITS ELECTRONIC SURVEILLANCE

4   OTHERWISE THAN AS EXPRESSLY AUTHORIZED BY STATUTE.  SO,

5   UNLAWFUL SURVEILLANCE IS ALSO A FISA SECTION 1812 VIOLATION,

6   AND OUR CLAIMS FOR EQUITABLE RELIEF RUN UNDER THAT.

7         SO, TO SUMMARIZE, WE'VE GOT EQUITABLE RELIEF CLAIMS

8   UNDER WIRETAP ACT, STORED COMMUNICATIONS ACT, AND FISA

9   SECTION -- FISA SECTION 1812.

10         WE ALSO STILL HAVE, IN THE DAMAGES ARENA, FISA

11   SECTION 1809, 1810 CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

12   WHICH AREN'T AT ISSUE IN THESE MOTIONS AT ALL.

13        **THE COURT:**  ALL RIGHT.  MR. BRINCKERHOFF, DO YOU HAVE

14   ANY --

15        **MR. BRINCKERHOFF:**  JUST ONE POINT OF CLARIFICATION OR

16   DISTINCTION AGAIN.

17        THE PLAINTIFFS IN *SHUBERT* ARE BRINGING THEIR CLAIM

18   UNDER FISA AS CHARACTERIZED AS A CLAIM UNDER SECTION 1810 WHICH

19   IS THE PROVISION THAT SAYS IF YOU VIOLATE 1810, IT GIVES RISE

20   TO A CIVIL ACTION.  SO IT'S CHARACTERIZED THAT WAY, BUT IT'S

21   ACTUALLY UNDER OLD SECTION OF FISA INCLUDING 1809.

22        **THE COURT:**  ALL RIGHT.

23        MS. BERMAN?

24        **MS. BERMAN:**  YES, YOUR HONOR.  I UNDERSTOOD THIS

25   QUESTION TO BE WHAT PROVISIONS UNDER FISA ARE PLAINTIFFS

1    ALLEGING DEFENDANTS VIOLATED AND NOT WHAT ARE THEIR CLAIMS

2    UNDER THE WIRETAP ACT OR THE SCA.  AND, CLEARLY, THEIR CLAIM

3    UNDER SECTION 1809 OF FISA IS OUT OF THE CASE AFTER

4    *AL-HARAMAIN*, AS THE COURT -- AS YOUR HONOR POINTS OUT.

5             THE SECTION THAT THEY CITE IN THEIR COMPLAINT,

6    SECTION 1812, JUST HAS TO DO WITH SOMETHING BEING THE EXCLUSIVE

7    MEANS BY WHICH ELECTRONIC COMMUNICATIONS MAY BE CONDUCTED DOES

8    NOT SEEM TO ME TO BE A SUBSTANTIVE PROVISION ALLEGING A CAUSE

9    OF ACTION.

10            **THE COURT:**  ALL RIGHT.  DO YOU HAVE ANYTHING TO SAY

11   IN RESPONSE TO THAT?

12            **MR. WIEBE:**  SURE.  AGAIN, THE CAUSE OF ACTION COMES

13   UNDER 1702.  IT'S THE SO-CALLED NON-STATUTORY CLAIM UNDER 702

14   OF THE APA.

15            CERTAINLY, 1812 IS A SUBSTANTIVE LIMITATION.  IT SAYS

16   THAT, YOU KNOW, EXCEPT AS -- AGAIN, IT'S LIKE 2711 -- I'M

17   SORRY -- 2511(F) AND 1809.  IT SAYS UNLESS YOU'RE PROCEEDING

18   UNDER AN EXPRESS STATUTORY AUTHORIZATION OF EITHER WIRETAP,

19   STORED COMMUNICATIONS ACT, OR FISA, ELECTRONIC SURVEILLANCE IS

20   PROHIBITED.

21            **THE COURT:**  ALL RIGHT.  ANYTHING MORE YOU WANT TO SAY

22   ON THAT, MS. BERMAN?

23            **MS. BERMAN:**  THAT'S FINE.

24            **THE COURT:**  LET'S MOVE ON TO QUESTION NUMBER TEN,

25   WHICH READS AS FOLLOWS:  SECTION 702 OF THE APA DOES NOT,

1    QUOTE, "CONFER AUTHORITY TO GRANT RELIEF IF ANY OTHER STATUTE

2    THAT GRANTS CONSENT TO SUIT EXPRESSLY OR IMPLIEDLY FORBIDS

3    RELIEF WHICH IS SOUGHT," UNQUOTE.  AND THAT'S 5 UNITED STATES

4    CODE SECTION 702.

5              ARE PLAINTIFFS ARGUING THAT THIS LIMITATION ON THE

6    APA'S WITHDRAWAL OF SOVEREIGN IMMUNITY DOES NOT APPLY IF THE

7    GRANT OF CONSENT AND THE LIMITATIONS ARE CONTAINED WITHIN TWO

8    STATUTES AS OPPOSED TO ONE?  IN OTHER WORDS, BECAUSE THE GRANT

9    OF CONSENT TO SUE UNDER FISA AND THE WIRETAP ACT IS CONTAINED

10   WITHIN A SEPARATE STATUTE, THE STORED COMMUNICATIONS ACT, OR

11   SCA, 18 UNITED STATES CODE SECTIONS 2701, ET SEQ., IS THE COURT

12   REQUIRED TO CONSIDER ONLY THE SCA IN ORDER TO DETERMINE WHETHER

13   THE LIMITATION UNDER THE APA APPLIES TO PLAINTIFFS' CLAIMS

14   UNDER FISA AND THE WIRETAP ACT?

15             AND THE LAST PART OF THE QUESTION IS:  CAN ANY PARTY

16   REFER THIS COURT TO A CASE WHERE, IN DETERMINING THE SCOPE OF

17   THIS LIMITATION UNDER THE APA, A COURT HAS ADDRESSED THE ISSUE

18   OF WHETHER IT MAY CONSIDER BOTH STATUTES IN CONJUNCTION WITH

19   ONE ANOTHER WHEN ONE STATUTE AMENDS ANOTHER?

20             SIMPLE QUESTION.

21        **MR. WIEBE:**  THANK YOU, YOUR HONOR.

22             THE APA DOES SAY A STATUTE, SINGULAR, THAT BOTH

23   GRANTS RELIEF AND FORBIDS EQUITABLE RELIEF -- I'M SORRY -- A

24   STATUTE THAT BOTH GRANTS CONSENT TO SUE AND FORBIDS EQUITABLE

25   RELIEF.  AND I THINK THAT MAKES PERFECT SENSE GIVEN WHAT

1   CONGRESS WAS TRYING TO DO IN ENACTING 702 IS EXPAND THE

2   OPPORTUNITIES FOR PLAINTIFFS TO SEEK EQUITABLE RELIEF FOR

3   UNLAWFUL CONDUCT.

4          THERE'S A STRONG PRESUMPTION IN FAVOR OF JUDICIAL

5   REVIEW.  AND THE POINT OF CONGRESS REQUIRING THAT BOTH THE

6   CONSENT TO SUIT AND THE FORBIDDING OF EQUITABLE RELIEF BE IN

7   THE SAME STATUTE IS TO ENSURE THAT CONGRESS REALLY MEANT TO

8   PRECLUDE EQUITABLE RELIEF.  OTHERWISE, YOU GET WHAT THE

9   DEFENDANTS HAVE TRIED TO DO HERE, WHICH IS PARSING AND TAKING

10  LITTLE BITS AND PIECES FROM LOTS OF DIFFERENT STATUTES AND

11  HOLDING THEM UP AND SAYING, IF YOU LOOK AT IT THIS WAY, IT'S

12  KIND OF IMPLIED THERE'S NO EQUITABLE RELIEF HERE.

13         AGAIN, THE WHOLE PURPOSE OF 702 WAS TO EXPAND THE

14  OPPORTUNITIES FOR EQUITABLE RELIEF.  AND ONCE YOU START DOING

15  THAT, THAT KIND OF AN INQUIRY, YOU ARE GOING AGAINST CONGRESS'S

16  INTENT, AND THAT'S WHY CONGRESS SAID IT'S GOT TO BE IN THE SAME

17  STATUTE.  SO IT'S CLEAR THAT'S WHAT WE MEANT TO DO, TO LIMIT

18  YOU ONLY TO SOME OTHER FORM OF RELIEF THAN EQUITABLE.

19         TO ANSWER THE COURT'S SECOND QUESTIONS, WE ARE NOT

20  AWARE OF ANY CASE WHERE A COURT HAS EVER ENGAGED IN THAT KIND

21  OF EXERCISE OF PULLING DIFFERENT THREADS OUT OF DIFFERENT

22  FABRICS.

23         **THE COURT:**  ALL RIGHT.  ANYTHING YOU WANT TO SAY,

24  MR. BRINCKERHOFF?

25         **MR. BRINCKERHOFF:**  NOTHING FURTHER, YOUR HONOR.

1          **THE COURT:**  MS. BERMAN?

2          **MS. BERMAN:**  YOUR HONOR, STARTING OFF WITH CONGRESS'S

3    INTENT, CONGRESS'S INTENT IN WAIVING SOVEREIGN IMMUNITY FOR

4    EQUITABLE RELIEF WHEN IT AMENDED SECTION 702 WAS CLEARLY

5    SUBJECT TO EXCEPTIONS THAT ARE IN THE STATUTE, AND IT INTENDED

6    THAT SECTION 702 NOT PERMIT SUIT FOR EQUITABLE RELIEF WHERE

7    OTHER STATUTES FORBID IT OR LIMIT THE RELIEF SOUGHT.  AND THE

8    STATUTES THAT WE HAVE POINTED TO ARE, IN FACT, IN ONE STATUTE,

9    WHICH IS THE PATRIOT ACT.

10          SECTION 223 OF THE PATRIOT ACT PUT IN SECTION 2712

11   THAT RESTRICTED ACTIONS AGAINST THE UNITED STATES TO MONEY

12   DAMAGES, AND IT TOOK OUT FROM THE WIRETAP ACT AND THE STORED

13   COMMUNICATIONS ACT CLAIMS AGAINST THE UNITED STATES FOR

14   EQUITABLE RELIEF.

15          **THE COURT:**  ANYTHING FURTHER?

16          **MR. WIEBE:**  JUST A COUPLE OF POINTS, YOUR HONOR.

17          AGAIN, WE'VE ALREADY EXPLAINED WHY 2520, 2707, AND

18   2712 DO NOT MEAN WHAT THE GOVERNMENT THINKS THEY MEAN.  AND I'D

19   ALSO AGAIN REFER THE COURT TO THE *PATCHAK* CASE.  AGAIN, THAT'S

20   132 SUPREME COURT REPORTER AT 2199, WHICH DOES ADDRESS THIS

21   VERY ISSUE OF WHEN CAUSES OF ACTION FOR EQUITABLE RELIEF ARE

22   PRECLUDED.

23          I THINK IT MAKES CLEAR, AGAIN, THE FACT THAT YOU'RE

24   DEALING, AS 2520 AND 2707 DO, SOLELY WITH CAUSES OF ACTION

25   AGAINST INDIVIDUALS, DOES NOT ALLOW ANY INFERENCE UNDER APA 702

1  AS TO WHAT RELIEF MIGHT BE AVAILABLE TO OTHER PARTIES FOR OTHER

2  CLAIMS.

3            **THE COURT:**  MS. BERMAN?

4        **MS. BERMAN:**  NOTHING TO ADD, YOUR HONOR.

5        **THE COURT:**  ALL RIGHT.  THANK YOU.

6            QUESTION NUMBER 11, WHICH IS THE LAST SUBSTANTIVE

7  QUESTION, TO SOME EXTENT THIS HAS BEEN COVERED, BUT I'D LIKE TO

8  GET A LITTLE BIT MORE.  I WOULD LIKE TO SORT OF GET THE

9  MATERIAL OR THE SIGNIFICANT DIFFERENCES.

10           WHAT ARE THE SIGNIFICANT DIFFERENCES BETWEEN THE

11 *JEWEL* AND THE *SHUBERT* COMPLAINTS WITH REGARD TO THE STRUCTURE

12 OF DECIDING THE PENDING MOTIONS?

13       **MR. WIEBE:**  FIRST OF ALL, I DON'T CLAIM TO BE THE

14 MASTER OF THE *SHUBERT* COMPLAINT, SO TAKE ANYTHING I SAY ABOUT

15 THEIR COMPLAINT WITH A GRAIN OF SALT, PLEASE.

16           IT IS TRUE THAT AT THIS TIME THEY'VE ONLY NAMED

17 INDIVIDUAL DEFENDANTS.  I DON'T BELIEVE THERE'S A DIRECT CLAIM

18 UNDER THE APA, WHICH DOESN'T MEAN THEY COULDN'T RELY ON THE APA

19 FOR NONSTATUTORY CLAIMS.  AND WE HAVE ADDITIONAL CONSTITUTIONAL

20 CLAIMS UNDER THE FIRST AMENDMENT AND THE SEPARATION OF POWERS

21 THAT I DON'T BELIEVE THEY HAVE.

22       **THE COURT:**  ALL RIGHT.  DO YOU AGREE WITH THAT, OR DO

23 YOU WANT TO ADD TO THAT?

24       **MR. BRINCKERHOFF:**  I THINK THAT'S CORRECT, BUT I

25 THINK IT'S WORTH PARSING IT A LITTLE MORE FINELY JUST SO THE

1    COURT IS CLEAR.

2         *SHUBERT* IS BOTH MORE EXPANSIVE IN THE SENSE THAT THE

3    CLASS ITSELF AS DEFINED IS BROADER AND INCLUDES CONSUMERS OR

4    CUSTOMERS OF TELECOMMUNICATIONS -- SORRY -- COMPANIES OTHER

5    THAN AT&T.  BUT IN ITS CLAIMS AND RELIEF, I WOULD SAY IT'S FAIR

6    TO SAY IT'S NARROWER.

7         WE ONLY ASSERT FOUR CLAIMS.  THREE OF THEM ARE SOLELY

8    FOR DAMAGES, NOT FOR INJUNCTIVE RELIEF.  THE THREE CLAIMS

9    SOLELY FOR DAMAGES ARE FOURTH AMENDMENT CLAIM UNDER THE

10   DOCTRINE OF *BIVENS* AGAINST FOUR DEFENDANTS.  IT DOES NOT

11   INCLUDE DEFENDANT OBAMA OR DEFENDANT HOLDER.

12        AND THE SAME WITH THE WIRETAP ACT AND THE STORED

13   COMMUNICATIONS.  THOSE ARE -- ALL THREE OF THOSE ARE CLAIMS FOR

14   DAMAGES UNDER THOSE UNDER TWO STATUTES AND THE CONSTITUTION.

15        AND UNDER FISA WE ASSERT CLAIMS AGAINST SIX

16   DEFENDANTS, THREE IN THEIR PERSONAL CAPACITY FOR DAMAGES WHO

17   ARE NO LONGER WORKING IN GOVERNMENT AND THREE AGAINST THREE

18   CURRENT OFFICE HOLDERS, TWO IN THEIR OFFICIAL CAPACITY, AND

19   MR. ALEXANDER IN BOTH HIS OFFICIAL AND PERSONAL CAPACITY.

20        **THE COURT:**  ALL RIGHT.  MR. COPPOLINO.

21        **MR. COPPOLINO:**  I DON'T THINK THERE ARE SIGNIFICANT

22   DIFFERENCES IN TERMS OF HOW YOU WOULD STRUCTURE YOUR DECISION

23   BETWEEN THESE TWO CASES, BUT I WOULD POINT OUT A COUPLE OF

24   THINGS.

25        THE ONLY STATUTORY CLAIM AGAINST THE GOVERNMENT THAT

1    WAS IN *SHUBERT* WAS THE FISA 1810 CLAIM WHICH WOULD BE OUT NOW

2    UNDER THE *AL-HARAMAIN* DECISION FORECLOSING A CAUSE OF ACTION

3    AGAINST THE GOVERNMENT UNDER 1810.  SO *SHUBERT* HAS NO STATUTORY

4    CLAIMS AGAINST THE UNITED STATES LEFT.  AND AS HE JUST

5    MENTIONED, THEY HAVE CLAIMS AGAINST INDIVIDUAL CAPACITY

6    DEFENDANTS.  THE ONLY CLAIM AGAINST UNITED STATES IN *SHUBERT*

7    THAT WOULD BE ACTIVE WOULD BE CLAIM FOUR UNDER THE FOURTH

8    AMENDMENT, THE CONSTITUTIONAL CLAIM.

9            SO THAT'S, I THINK, ONE BIG DIFFERENCE.

10           AND THERE ARE ALSO, AS YOU NOTED, FAR FEWER CLAIMS IN

11   *SHUBERT*.

12           SO I THINK IN TERMS OF STRUCTURING THIS, IT MIGHT BE

13   APPROPRIATE FOR THE COURT TO DEAL WITH THE STATUTORY CLAIMS

14   FIRST, BECAUSE WE'VE RAISED SOVEREIGN IMMUNITY DEFENSES AS TO

15   ALL OF THEM.  THE 1810 ISSUE HAS BEEN DECIDED FOR YOU BY THE

16   NINTH CIRCUIT.  THEN YOU NEED TO ADDRESS THE ARGUMENTS WE HAVE

17   RAISED ON SOVEREIGN IMMUNITY WITH RESPECT TO THE *JEWEL*

18   PLAINTIFF CLAIMS THAT MS. BERMAN HAS JUST BEEN ADDRESSING UNDER

19   THE WIRETAP ACT AND THE STORED COMMUNICATIONS ACT, AND THE

20   *LARSON* DOCTRINE, AND THE AVAILABILITY OF EQUITABLE RELIEF.

21           THAT'S NOT GOING TO ELIMINATE THE NEED TO REACH THE

22   STATE SECRETS PRIVILEGE, BUT IT WOULD NARROW -- POTENTIALLY

23   NARROW, IF YOU AGREED WITH OUR ARGUMENTS ON SOVEREIGN IMMUNITY,

24   YOU WOULD HAVE TO APPLY THE STATES SECRET PRIVILEGE, AND,

25   CONCEIVABLY, THAT MIGHT MATTER TO A REVIEWING COURT TRYING TO

1    NARROW THE SCOPE OF THE STATE SECRET PRIVILEGE.

2            IN SUM, WE THINK THE STATE SECRET PRIVILEGE WOULD

3    ONLY APPLY TO CONSTITUTIONAL CLAIMS AGAINST THE GOVERNMENT, BUT

4    IT WOULD APPLY TO STATUTORY CLAIMS AGAINST THE INDIVIDUAL

5    CAPACITY DEFENDANTS AS WELL.

6            SO I GUESS IN A CONFUSING FASHION WHAT I'M SAYING IS

7    THERE'S NO AVOIDING THE STATE SECRETS PRIVILEGE IN EITHER OF

8    THESE TWO CASES.  YOU COULD JUST DO IT FIRST, OR YOU COULD DO

9    IT SECOND.  BUT I WOULD NOT DISREGARD THE STATUTORY ARGUMENTS

10   BECAUSE IT'S A WAY TO NARROW THE LAWSUITS.

11           I WOULD ALSO POINT OUT SOMETHING THAT OCCURRED TO ME

12   REGARDING *SHUBERT*, AND THAT IS, IT'S NOT REALLY CLEAR WHETHER

13   *SHUBERT* IS CHALLENGING THE ALLEGED COLLECTION OF COMMUNICATION

14   RECORDS.

15           JUDGE WALKER DIDN'T READ THEIR COMPLAINT AS DOING

16   THAT.  HE READ IT AS PERTAINING SOLELY TO AN ALLEGED CONTENT

17   DRAGNET; THAT IS TO SAY, THE ALLEGATION THAT THE GOVERNMENT HAS

18   DENIED.  AND SO IF THAT'S THE CASE, THERE WOULD BE NO ISSUE IN

19   *SHUBERT* UNDER THE STATE SECRETS PRIVILEGE REGARDING THE ALLEGED

20   COMMUNICATIONS RECORDS ALLEGATION -- THE COMMUNICATIONS RECORDS

21   ALLEGATION.

22           NOW, IT MAY NOT MATTER SINCE YOU MAY REACH THAT

23   ANYWAY, BUT I THOUGHT I WOULD POINT THAT OUT AS WELL, YOUR

24   HONOR.

25           THE BASIS FOR DISMISSAL ON THE STATE SECRETS

1    PRIVILEGE IS THE SAME IN BOTH CASES.  THEY'RE SEEKING -- THEY

2    ARE RELYING ON THE SAME EVIDENCE, AND THEY'RE MAKING

3    ESSENTIALLY THE SAME ALLEGATIONS, AT LEAST INSOFAR AS THE

4    ALLEGED CONTENT DRAGNET IS CONCERNED.

5         **THE COURT:**  ANYTHING FURTHER YOU WISH TO SAY ON THAT

6    QUESTION?

7         **MR. WIEBE:**  NOT ON THE QUESTION OF THE DIFFERENCE

8    BETWEEN THE TWO CASES.

9         **THE COURT:**  ALL RIGHT.

10        MR. BRINCKERHOFF?

11        **MR. BRINCKERHOFF:**  I DID WANT TO ADD ONE THING, AND

12   THAT IS WE -- RIGHT.  WE JOINED THE *JEWEL* PLAINTIFFS IN ALL OF

13   THEIR ARGUMENTS AND THEIR PRESENTATIONS, AS THE COURT IS AWARE.

14   GIVEN THAT THE *AL-HARAMAIN* DECISION CAME DOWN ONLY RECENTLY ON

15   THE FOREIGN SOVEREIGN IMMUNITY QUESTION, AND WE WERE SUING

16   DEFENDANT ALEXANDER IN HIS INDIVIDUAL CAPACITY AND SEEKING

17   INJUNCTIVE RELIEF, WE ARE NECESSARILY BOUND UP IN THE *LARSON*

18   ARGUMENTS AND ARE RELYING ON *LARSON*, CONTINUING TO RELY ON

19   *LARSON* TO SEEK INJUNCTIVE RELIEF AGAINST MR. ALEXANDER IN HIS

20   PERSONAL CAPACITY UNDER FISA.

21        **THE COURT:**  ALL RIGHT.  WE ARE AT THE VERY LAST

22   QUESTION.  IT'S NOT AN OPPORTUNITY FOR CLOSING ARGUMENT,

23   BECAUSE YOU'VE ALL ARGUED -- RESPONDED VERY WELL TO THE

24   QUESTION.

25             IS THERE ANYTHING ELSE YOU WISH TO ADDRESS THAT YOU

1    THINK THE COURT NEEDS TO HEAR THAT'S NOT MENTIONED IN THE

2    PAPERS, WE DIDN'T COVER IT TODAY, AND IT MAY BE MATERIAL TO THE

3    COURT'S DECISION MAKING?

4            START WITH PLAINTIFFS.

5            **MR. WIEBE:**  IF I COULD, YOUR HONOR?

6            I WANTED TO EXPLAIN JUST A LITTLE BIT ABOUT THE OTHER

7    ITEM IN OUR NOTICE OF ADDITIONAL AUTHORITIES, BECAUSE,

8    OTHERWISE, IT MAY BE COMPLETELY CRYPTIC TO THE COURT WHY WE

9    SUBMITTED THAT.

10           AGAIN, THIS IS THE NOTICE OF ADDITIONAL AUTHORITIES

11   WE SUBMITTED ON DECEMBER 12TH.

12           EXHIBIT B IS A COPY OF THE EXCERPTS FROM THE HOUSE

13   JUDICIARY COMMITTEE REPORT ON THE PATRIOT ACT.  THAT IS

14   REPORT 107-236.

15           WHAT THIS GOES TO IS AN ARGUMENT THAT THE GOVERNMENT

16   MAKES IN ITS PAPERS.  IT GOES TO THE QUESTION OF SOVEREIGN

17   IMMUNITY FOR DAMAGES FOR ALL VIOLATIONS OF THE WIRETAP ACT AND

18   THE STORED COMMUNICATIONS ACT UNDER 2712.  SO THIS IS

19   COMPLETELY SEPARATE FROM THE EQUITABLE RELIEF QUESTIONS WE HAVE

20   BEEN TALKING BEFORE.

21           GOVERNMENT MAKES THE ARGUMENT THAT, CONTRARY TO THE

22   PLAIN LANGUAGE OF 2712, WHICH SAYS IT'S A DAMAGE REMEDY FOR ANY

23   WILLFUL VIOLATION OF THIS CHAPTER THE WIRETAP ACT -- I'M

24   SORRY -- THE STORED COMMUNICATIONS ACT OR CHAPTER 119 -- THAT'S

25   THE WIRETAP ACT.  THEY SAY, WELL, IT MAY SAY THAT, BUT THE

1  LEGISLATIVE HISTORY IS DIFFERENT.

2          WHAT THEY RELY ON IS LEGISLATIVE HISTORY BEFORE THE

3  HOUSE JUDICIARY COMMITTEE AND SPECIFICALLY ON STATEMENTS BY

4  CONGRESSMAN BARNEY FRANK.

5          THAT LEGISLATIVE HISTORY IS -- THEIR ACCOUNT OF IT IS

6  COMPLETELY WRONG.  THEY SAY BARNEY FRANK INTRODUCED 2712 AND

7  THAT THE HOUSE JUDICIARY COMMITTEE REPORT ADDRESSES THAT.

8          IN FACT, IF YOU -- ONCE THE COURT HAS AN OPPORTUNITY

9  TO REVIEW THE PIN CITES WE GAVE FOR EXHIBIT B, YOU'LL SEE THAT

10  BARNEY FRANK OFFERED A COMPLETELY DIFFERENT AMENDMENT WHICH

11  WOULD HAVE LEFT LIABILITY AGAINST THE GOVERNMENT IN 2520 AND

12  2707.

13          HE HAD NOTHING TO DO WITH 2712.  THE JUDICIARY

14  COMMITTEE HAD NOTHING TO DO WITH 2712.  THE BILL GOT CHANGED

15  AFTER IT LEFT THE JUDICIARY COMMITTEE.  2712 THEN APPEARS OUT

16  OF NOWHERE.  SO THERE'S LITERALLY NO LEGISLATIVE HISTORY OF

17  2712.  THAT'S THE ONLY POINT I WANTED TO MAKE THERE.

18          OTHERWISE, WE THINK UNDER 1806(F) AND 2712(B)(4)

19  CONGRESS WANTED THESE CASES TO GO FORWARD.  IT DID THE

20  BALANCING BETWEEN NATIONAL SECURITY AND THE RULE OF LAW AND

21  CAME UP WITH A SECURE PROCEDURE FOR THIS COURT TO PROCEED

22  FORWARD.

23          THANK YOU, YOUR HONOR.

24          **THE COURT:**  THANK YOU.

25          MR. COPPOLINO, ANYTHING FURTHER YOU WANT TO ADD, OR

1    MS. BERMAN?

2              **MR. COPPOLINO:**  WE MAY ADD A POINT ON THIS EXHIBIT

3    THAT WE JUST GOT THE OTHER DAY.

4              **THE COURT:**  ALL RIGHT.

5              **MS. BERMAN:**  YES, YOUR HONOR.  I'D JUST LIKE TO POINT

6    OUT THAT THE LANGUAGE THAT SECTION 2712, WHATEVER ITS

7    PROGRESSION THROUGH CONGRESS, STARTED OFF AS AN AMENDMENT BY

8    MR. FRANK, BY REPRESENTATIVE FRANK, AND SO, THEREFORE, THE

9    LEGISLATIVE HISTORY THAT WE QUOTED MR. FRANK AS BEING, YOU

10   KNOW, CONCERNED WITH LEAKS AND CRACKING DOWN ON LEAKING AND NOT

11   THE MERE GATHERING OF INTELLIGENCE IS STILL RELEVANT TO WHAT

12   CONGRESS WAS TRYING TO GET AT.  AND YOU KNOW WHAT THEY

13   ULTIMATELY ENACTED IN SECTION 2712, WHICH IS WHAT GOVERNS HERE,

14   IS TITLED "CIVIL LIABILITY FOR CERTAIN UNAUTHORIZED

15   DISCLOSURES."

16            AND THERE ARE OTHER INDICIA THAT WE POINTED TO IN OUR

17   BRIEFS ABOUT -- IN SECTION 2712 AND IN SECTION 223 OF THE

18   PATRIOT ACT THAT SUPPORT OUR INTERPRETATION.  SO I JUST POINT

19   YOU TO THOSE AUTHORITIES.

20            **THE COURT:**  THANK YOU.  ANYTHING FURTHER?

21            **MR. COPPOLINO:**  YOUR HONOR, TO THE EXTENT THIS HAS

22   ANY BEARING ON YOUR DECISION, SINCE WE'VE JUST GOT THIS AND

23   HAVEN'T SEEN THIS ARGUMENT BRIEFED, WE COULD ADDRESS IT.

24            I DO HAVE ONE -- I GUESS IT'S A MINOR HOUSEKEEPING

25   MATTER.  THAT IS, I THINK THERE IS NO JUDGE PRESENTLY ASSIGNED

1    TO MDL 1791, WHICH HAD BEEN JUDGE WALKER'S MULTIDISTRICT

2    LITIGATION PROCEEDINGS.  *SHUBERT* IS BEFORE THIS DISTRICT COURT

3    ONLY AS PART OF THAT MDL.  IT IS NOT A FREESTANDING CASE.

4    THERE WOULD BE NO VENUE, I DON'T BELIEVE, AS A FREESTANDING

5    CASE.

6         MATTERS ARE STILL BEING FILED IN THAT DOCKET.  IT'S

7    STILL UNDER THE VRW INITIALS.  IT SEEMED LOGICAL THAT YOU BE

8    ASSIGNED TO THAT AS WELL, SINCE YOU ALREADY HAVE THE ONE ACTIVE

9    MDL CASE.  THERE IS ANOTHER MDL IN THE COURT OF APPEALS THAT'S

10   STILL PENDING.

11        AND THE LAST POINT I MAKE IS I KNOW WE'VE GIVEN YOU

12   AN AWFUL LOT TO CONSIDER, BUT WE HAVE PRESSED OUR ARGUMENT ON

13   THIS MATTER OVER SIX YEARS SINCE *HEPTING*.  WE THINK THESE

14   ALLEGATIONS CANNOT BE LITIGATED INVOLVING ALLEGED CARRIER

15   ASSISTANCE WITHOUT RISKING SIGNIFICANT -- EXCEPTIONALLY

16   SIGNIFICANT HARM TO NATIONAL SECURITY.

17        I WOULD URGE THE COURT NOT FOLLOW THE ROAD TAKEN IN

18   NEITHER *HEPTING* OR *AL-HARAMAIN*, BUT TO REVIEW OUR PRIVILEGE

19   ASSERTION FIRST, IF YOU HAVE QUESTIONS, AND WE CAN DEAL WITH

20   THOSE IN A SECURE FASHION.  IF YOU DO HAVE QUESTIONS, WE WOULD

21   BE HAPPY TO WORK WITH YOU AND THE COURT SECURITY OFFICER TO DO

22   THAT.

23        OUR BOTTOM LINE IS WE DON'T SEE HOW THIS CASE CAN

24   PROCEED WITHOUT RISK OR RESULTING IN THE DISCLOSURE OF PROPERLY

25   PRIVILEGE INFORMATION.

1          THANK YOU, YOUR HONOR.

2          **THE COURT:**  ALL RIGHT.  ANYTHING FURTHER?

3          **MR. WIEBE:**  ON MY COLLEAGUE'S POINT REGARDING THE

4    LEGISLATIVE HISTORY, I THINK ONCE THE COURT HAS AN OPPORTUNITY

5    TO REVIEW IT, SPECIFICALLY PAGES 305 TO 310 OF THE LEGISLATIVE

6    HISTORY, IT WILL BE CLEAR THAT MR. FRANK DID NOT PROPOSE THAT

7    AMENDMENT.

8          **THE COURT:**  I WILL REVIEW THE ENTIRE LEGISLATIVE

9    HISTORY.

10          **MR. WIEBE:**  CERTAINLY.

11          **THE COURT:**  THANK YOU VERY MUCH.  MATTER IS

12    SUBMITTED.  THANK YOU.

13          EXCUSE ME.  MY LAW CLERK JUST REREMINDED ME OF

14    SOMETHING.  YOU CAN BE SEATED.

15          THIS IS UNDER THE HEADING OF HOUSEKEEPING.

16          THIS IS THE FIRST PROCEEDING THAT'S BEEN RECORDED FOR

17    UPLOADING TO THE COURT'S WEBSITE.  AS THESE THINGS GO FORWARD,

18    THERE'S PROCEDURES.  ONE OF THE PROCEDURES THAT'S IMPLIED BY

19    THE PILOT PROJECTS IS THAT WHETHER ANY -- A PARTY WOULD HAVE AN

20    OPPORTUNITY AFTER THE PROCEEDINGS, EVEN THOUGH THEY HAD

21    PREVIOUSLY CONSENTED TO THE RECORDING, TO OBJECT TO ANY PORTION

22    OF WHAT WAS DISCUSSED IN COURT OR WHAT WAS SAID IN COURT FROM

23    BEING MADE PUBLIC TO THE EXTENT IT'S UPLOADED TO THE COURT'S

24    WEBSITE.

25          STARTING WITH PLAINTIFFS, DOES THE PLAINTIFF NEED ON

1   OPPORTUNITY, A DELAY, TO DETERMINE WHETHER AN OBJECTION IS

2   APPROPRIATE?

3        **MR. WIEBE:**  NO, WE DON'T, YOUR HONOR, AND WE CONSENT

4   TO UPLOADING OF MATERIAL TO THE COURT'S WEBSITE.

5        **THE COURT:**  IS THAT CORRECT, MR. BRINCKERHOFF?

6        **MR. BRINCKERHOFF:**  WE JOIN.

7        **THE COURT:**  MR. COPPOLINO OR MS. BERMAN?

8        **MR. COPPOLINO:**  NO OBJECTION, YOUR HONOR.

9        **THE COURT:**  CAN WE HAVE A WRITTEN STIPULATION BY THE

10  PARTIES, A VERY SIMPLE ONE?  I THINK WE NEED DO IT BECAUSE THE

11  PILOT PROJECT REQUIRES IT.

12       ANOTHER THING IS -- I'M SORRY.  I'M GOING TO DIRECT

13  THE PARTIES TO JOINTLY ORDER A TRANSCRIPT OF THESE PROCEEDINGS,

14  EVEN THOUGH IT'S RECORDED, FOR THE COURT TO WRITE ITS DECISION.

15  YOU'VE GIVEN ME A LOT OF MEAT TO LOOK AT, SOME OF WHICH IS NOT

16  IN THE PAPERS.  SO PLEASE ORDER THE TRANSCRIPT ON AN EXPEDITED

17  BASIS.  OBVIOUSLY THERE'S A HOLIDAY, AND WE CAN'T EXPEDITE

18  BEYOND THE ABILITY OF THE COURT REPORTER TO DO IT.

19       AND WE DON'T NEED TO -- AS I LOOK AT THE PILOT

20  PROJECT, WE DON'T NEED A WRITTEN STIPULATION.  YOUR

21  ON-THE-RECORD STIPULATION IS APPROPRIATE, AND WE'LL JUST UPLOAD

22  THIS RECORDING.

23       THANK YOU VERY MUCH.

24       **MR. WIEBE:**  VERY WELL.  THANK YOU, YOUR HONOR.

25       (PROCEEDINGS ADJOURNED.)

1

2                          **CERTIFICATE OF REPORTER**

3          I, JOAN MARIE COLUMBINI, OFFICIAL REPORTER FOR THE

4    UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

5    CERTIFY THAT THE FOREGOING PROCEEDINGS IN C 08-4373 JSW,

6    JEWEL V. NSA, AND C 07-0693 JSW, SHUBERT V. OBAMA, WERE

7    REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE

8    THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING;

9    THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID

10   PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

11         THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID

12   TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE

13   COURT FILE.

14

15         _____

16              JOAN MARIE COLUMBINI, CSR 5435, RPR

17                 FRIDAY, DECEMBER 22, 2012

18

19

20

21

22

23

24

25