1    [COUNSEL LISTED ON FOLLOWING PAGE]

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

| | |
|---|---|
| 11  CAROLYN JEWEL, TASH HEPTING, YOUNG BOON HICKS, as executrix of the estate of GREGORY HICKS, ERIK KNUTZEN and JOICE WALTON, on behalf of themselves and all other similarly situated, | Case No. 08-cv-4373-JSW |
| | **JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER** |
| | Date:         September 27, 2013 |
| Plaintiffs, | Time:         1:30 p.m. |
| | Place:        Courtroom 11, 19th Floor |
| v. | Judge:        Hon. Jeffrey S. White |
| NATIONAL SECURITY AGENCY, et al., | Date Filed:  September 18, 2008 |
| Defendants. | Trial Date:  Not Yet Set |

| | |
|---|---|
| VIRGINIA SHUBERT, NOHA ARAFA, SARAH DRANOFF and HILARY BOTEIN, individually and on behalf of all others similarly situated, | Case No. 07-cv-0693-JSW |
| | **JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER** |
| | Date:         September 27, 2013 |
| Plaintiffs, | Time:         1:30 p.m. |
| | Place:        Courtroom 11, 19th Floor |
| v. | Judge:        Hon. Jeffrey S. White |
| BARACK OBAMA, KEITH B. ALEXANDER, ERIC HOLDER, MICHAEL HAYDEN, ALBERTO GONZALES, JOHN ASHCROFT, UNITED STATES OF AMERICA, and JOHN/JANE DOES #1-100 (07-693) | Date Filed:  May 17, 2006 |
| | Trial Date:  Not Yet Set |
| Defendants. | |

**COUNSEL FOR THE *JEWEL* PLAINTIFFS:**

CINDY COHN (SBN 145997)
cindy@eff.org
LEE TIEN (SBN 148216)
KURT OPSAHL (SBN 191303)
JAMES S. TYRE (SBN 083117)
MARK RUMOLD (SBN 279060)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Fax: (415) 436-9993

RICHARD R. WIEBE (SBN 121156)
wiebe@pacbell.net
LAW OFFICE OF RICHARD R. WIEBE
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Fax: (415) 433-6382

RACHAEL E. MENY (SBN 178514)
rmeny@kvn.com
PAULA L. BLIZZARD (SBN 207920)
MICHAEL S. KWUN (SBN 198945)
AUDREY WALTON-HADLOCK (SBN 250574)
BENJAMIN W. BERKOWITZ (SBN 244441)
JUSTINA K. SESSIONS (SBN 270914)
KEKER & VAN NEST, LLP
633 Battery Street
San Francisco, California 94111
Telephone: (415) 391-5400
Fax: (415) 397-7188

THOMAS E. MOORE III (SBN 115107)
tmoore@moorelawteam.com
ROYSE LAW FIRM, PC
1717 Embarcadero Road
Palo Alto, CA 94303
Tel.: (650) 813-9700
Fax: (650) 813-9777

ARAM ANTARAMIAN (SBN 239070)
aram@eff.org
LAW OFFICE OF ARAM ANTARAMIAN
1714 Blake Street
Berkeley, CA 94703
Telephone: (510) 289-1626

**COUNSEL FOR THE *SHUBERT* PLAINTIFFS:**

Ilann M. Maazel (*pro hac vice*)
Matthew D. Brinckerhoff (*pro hac vice*)
**EMERY CELLI BRINCKERHOFF &
ABADY LLP**
75 Rockefeller Plaza, 20th Floor
New York, New York 10019
Telephone: (212) 763-5000
Facsimile: (212) 763-5001

---

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER
Case Nos. 07-cv-0693-JSW; 08-cv-4373-JSW

1  **COUNSEL FOR THE GOVERNMENT ENTITY AND OFFICIAL CAPACITY DEFENDANTS:**

2

3  STUART F. DELERY
   Assistant Attorney General
4  JOSEPH H. HUNT
   Director, Federal Programs Branch
   ANTHONY J. COPPOLINO
5  Deputy Branch Director
   tony.coppolino@usdoj.gov
6  JAMES J. GILLIGAN
   Special Litigation Counsel
7  james.gilligan@usdoj.gov
   MARCIA BERMAN
8  Senior Trial Counsel
   marcia.berman@usdoj.gov
9  U.S. Department of Justice, Civil Division
   20 Massachusetts Avenue, NW, Rm. 7132
10 Washington, D.C. 20001
   Phone: (202) 514-2205; Fax: (202) 616-8470

11

12

13  **COUNSEL FOR THE PERSONAL CAPACITY DEFENDANTS:**

14

15  BRIAN HAUCK
    Deputy Assistant Attorney General
16  RUPA BHATTACHARYYA
    Director, Torts Branch
17  JAMES R. WHITMAN
    Senior Trial Attorney (D.C. Bar No. 987694)
18  United States Department of Justice
    Civil Division, Torts Branch
19  P.O. Box 7146, Ben Franklin Station
    Washington, DC 20044-7146
20  Tel: (202) 616-4169
    Fax: (202) 616-4314
21  james.whitman@usdoj.gov

22

23

24

25

26

27

28

1       The parties to the above-entitled actions jointly submit this JOINT CASE

2 MANAGEMENT STATEMENT AND PROPOSED ORDER pursuant to the Court's

3 orders of July 23, 2013 (*Jewel* ECF No. 153) and August 5, 2013 (*Jewel* ECF No. 156),

4 in connection with the case management conference ("CMC") scheduled for September

5 27, 2013 at 1:30 p.m.  As set forth further below, the parties disagree about the scope of

6 the issues for the CMC and this Statement, and on the next steps for proceedings in each

7 of these two actions.  The parties' respective positions are set forth below.

8

9

10 **TABLE OF CONTENTS**

11

12 *JEWEL* PLAINTIFFS' STATEMENT:.........................................................................................1

13 *SHUBERT* PLAINTIFFS' STATEMENT:..................................................................................24

14 GOVERNMENT DEFENDANTS' STATEMENT:...................................................................33

15 THE INDIVIDUAL CAPACITY DEFENDANTS' STATEMENT:............................................47

16

17

18

19

20

21

22

23

24

25

26

27

28

# JOINT CASE MANAGEMENT STATEMENT

## *JEWEL* PLAINTIFFS' STATEMENT:

In this lawsuit, Plaintiffs challenge the mass, untargeted acquisition by the government of the communications and communications records of millions of innocent Americans.  Significantly, *proof of Plaintiffs' claims will not require proof of who the government targeted for surveillance or what information the government was seeking about those targets*.

Moreover, as the Court is aware, there have been a continuing cascade of public revelations in the past three months regarding the government's past and present surveillance activities, including significant governmental admissions and declassification of relevant documents.  *See*, *e.g.*, ECF No. 144, 147.  These revelations have largely confirmed the allegations of Plaintiffs' complaint, while removing any argument that resolving Plaintiffs' claims on the merits would necessarily disclose state secrets.

Plaintiffs filed their complaint on September 18, 2008.  To date, no defendant has answered the complaint.  Although the complaint in this case was filed over five years ago, this is the first Case Management Statement submitted by the parties and this will be the Initial Case Management Conference held by the Court.  It is time to bring this case within the established framework of civil litigation procedures and move it forward expeditiously towards final resolution.

Plaintiffs are five individuals suing on behalf of themselves and a class of similarly-situated people.  There are two groups of defendants:  United States government agencies and officials sued in their official capacities; and individual United

States officials sued in their personal capacities.[1]

On April 3, 2009, the government entity defendants and the defendants sued in their official capacities (hereafter sometimes "the Government Defendants") moved to dismiss certain claims based on sovereign immunity and for summary judgment on all claims based on the state secrets privilege.  ECF No. 18.

On January 21, 2010, the Court, per Walker, C.J., *sua sponte* dismissed all claims for failure to allege an injury sufficiently particularized to support standing.  ECF No. 57.  The Court did not rule on any of the arguments raised by the United States.  *Id.*  Plaintiffs appealed.

The Ninth Circuit reversed the dismissal of the complaint and remanded "with instructions to consider the government's assertion that the state secrets privilege barred this litigation."  ECF No. 75.  On July 2, 2012, Plaintiffs moved for partial summary judgment seeking a determination that the procedures of 50 U.S.C. § 1806(f) displaced the state secrets privilege in this lawsuit.  ECF No. 83.  On September 12, 2012, the Government Defendants filed a second motion to dismiss and for summary judgment, seeking dismissal of Plaintiffs' statutory claims against the government entity and official capacity defendants on sovereign immunity grounds and seeking dismissal of all of Plaintiffs' claims on the ground that the claims were barred by the state secrets privilege.  ECF No. 102 at 1.  Both motions were heard on December 14, 2012.  On February 27, 2013, the Court ordered additional briefing concerning standing in light of *Clapper v. Amnesty International USA*, 133 S.Ct. 1138 (2013).  ECF No. 138.

On July 8, 2013, the Court issued its order on the parties' cross-motions.  ECF

---

[1] The government entity defendants and the defendants sued in their official capacities are the United States of America, the President of the United States of America (currently, Barack H. Obama), the National Security Agency, the Director of the National Security Agency (currently, Keith B. Alexander), the Department of Justice, the United States Attorney General (currently, Eric H. Holder), and the Director of National Intelligence (currently, James R. Clapper).  The personal capacity defendants are Keith B. Alexander, Michael V. Hayden, George W. Bush, Richard B. Cheney, David S. Addington, Michael B. Mukasey, Alberto R. Gonzales, John D. Ashcroft, John M. McConnell, and John D. Negroponte.

No. 148.  The Court entered an amended order on July 23, 2013.  ECF No. 153.  The

Court granted Plaintiffs' motion for partial summary judgment, finding that the statutory

procedures of section 1806(f) displace the state secrets privilege and granted in part the

Government Defendants' motion to dismiss and motion for summary judgment,

dismissing Plaintiffs' claims against the government entity and official capacity

defendants for damages under FISA and Plaintiffs' statutory claims for injunctive relief

against them.  ECF No. 153 at 24.  The Court also stated that:  "The Court RESERVES

ruling on the Defendants' motion for summary judgment on remaining non-statutory

claims (counts 1-4 of the *Jewel* Complaint and the fourth cause of action in the *Shubert*

Complaint)."  *Id*.  The Court framed the issue as:  "[T]he scope of FISA preemption on

the Plaintiffs' constitutional claims, specifically, whether the scope of the preemption

only provides a procedural mechanism for the review of submitted evidentiary materials

or whether the scope of FISA preemption is broader to foreclose altogether the

substantive constitutional claims."  *Id*.

      The Court also set a case management conference which, at the government's

request, was continued until September 27, 2013.  ECF No. 156.

## 1.     <u>Jurisdiction and Service</u>

      The Court has subject matter jurisdiction over the remaining claims in this case

pursuant to 28 U.S.C. § 1331.  The government entity and official capacity defendants

were served with the Summons and Complaint on October 6, 2008.  ECF No. 12.  The

personal capacity defendants were served on December 2, 2008.  *Id*.  The government

entity and official capacity defendants do not contest personal jurisdiction or venue.  The

personal capacity defendants reserve the right to contest personal jurisdiction or venue.

## 2.     <u>Facts</u>

      This case is a class action brought on behalf of the named plaintiffs and a class of

residential subscribers or customers of AT&T's telephone services or Internet services.

      The Court has previously described the allegations in this case as follows:

Plaintiffs allege that, in addition to eavesdropping on or reading specific communications, Defendants have "indiscriminately intercepted the communications content and obtained the communications records of millions of ordinary Americans as part of the Program authorized by the President." (*Id.* [Complaint] at ¶ 7.)  The core component of the Program is a nationwide network of sophisticated communications surveillance devices attached to the key facilities of various telecommunications companies that carry Americans' Internet and telephone communications. (*Id.* at ¶¶ 8, 42.)  Plaintiffs allege that Defendants have unlawfully solicited and obtained the private telephone and internal [Internet] transactional records of millions of customers of the telecommunications companies, including records indicating who the customers communicated with, when those communications took place and for how long, among other sensitive information.  Plaintiffs allege these records include both domestic and international communications. (*Id.* at ¶ 10.)

ECF No. 153 at 3-4.

As the Court is well aware, there have been significant additional public disclosures and declassifications by the government recently regarding the government's electronic surveillance activities over the past 12 years.  Among other things, the government has declassified documents that describe the NSA's bulk collection of telecommunications data, including a program under which NSA collects and analyzes large amounts of transactional data obtained from telecommunications service providers in the United States.[2]

The disclosures include:

- FISA Court orders authorizing the suspicionless bulk collection and review of the telephone call data records of many millions of domestic telephone calls each day.  ECF No. 144, Ex. A; FISC Primary Order of

---

[2] Many of the disclosures made by the government are available at a new Tumblr site—icontherecord.tumblr.com—created by the Director of National Intelligence in response to the President's direction.  The President stated last month "[W]e can, and must, be more transparent.  So I've directed the intelligence community to make public as much information about these programs as possible."  Transcript of the President's Remarks in a Press Conference (August 9, 2013), *available at* http://www.whitehouse.gov/the-press-office/2013/08/09/remarks-president-press-conference.  The President concluded by stating: "[T]his is how we're going to resolve our differences in the United States—through vigorous public debate, guided by our Constitution, with reverence for our history as a nation of laws, and with respect for the facts."  *Id.*  Plaintiffs agree.

April 25, 2013, *available at*

http://www.dni.gov/files/documents/PrimaryOrder_Collection_215.pdf.

- On September 10, 2013, the government declassified additional FISA Court orders on the bulk telephone records collection program going back to the first order in 2006, including orders arising from the government's discovery of over 2 years of overcollection and improper searching as part of the program and its misrepresentations to the FISA court regarding the program. *Available at* http://icontherecord.tumblr.com/tagged/declassified.

- The "working draft" of the NSA Inspector General's report on the so-called "President's Surveillance Program," presenting a detailed if self-serving history of the program from 2001 to 2007. ECF No. 147, Ex. A. The report describes in detail all four aspects of the NSA's communications surveillance and collection program: Telephone metadata, telephone content, Internet metadata, and Internet content.

- The government's confirmation of its bulk collection of Internet metadata, which the government claims it ended in December 2011. July 26, 2013 letter from Director of National Intelligence Clapper to Senator Wyden, *available at* http://www.wyden.senate.gov/download/clapper-response-to-questions-from-26-bipartisan-senators.

- FISA Court orders detailing the government's "Upstream" program for acquiring Internet content, the government's misrepresentations to the FISA court regarding the scope of the Upstream collection program, and the Fourth Amendment violations of the Upstream program. FISC Orders of October 3, 2011, November 30, 2011, and September 25, 2012, *available at* http://www.dni.gov/index.php/newsroom/press-releases/191-press-releases-2013/915-dni-declassifies-intelligence-community-documents-regarding-collection-under-section-702-of-the-foreign-

intelligence-surveillance-act-fisa.

Importantly, Plaintiffs do not allege they were the targets of surveillance, and proof of who the government targeted for surveillance is not an element of their claims. Plaintiffs' claims instead are based on the unlawful bulk collection of communications and communications records that occurs before the government begins selecting out the communications and records it targets for further examination.  Plaintiffs' claims can be resolved without any inquiry or probing of who the government has targeted for surveillance or what information the government was seeking, unlike the claims at issue in *Clapper v. Amnesty International USA*, 133 S.Ct. 1138 (2013), which alleged the *Clapper* plaintiffs' communications were subjected to targeted surveillance and required proof of targeted surveillance.

## 3.   Legal Issues

### A.   Remaining Claims Against the Government Entity Defendants and Official Capacity Defendants

The Court granted the government entity defendants' and official capacity defendants' motion to dismiss on the basis of sovereign immunity Plaintiffs' FISA claim for damages against them and Plaintiffs' statutory claims for injunctive relief against them.  ECF No. 153 at 24.  Thus, the plaintiffs' remaining claims against the government entity defendants and official capacity defendants are as follows:

| Claims Against The Government Entity And Official Capacity Defendants | Relief Sought |
|---|---|
| Count I:  Fourth Amendment | Declaratory, injunctive, and other equitable relief. |
| Count III:  First Amendment | Declaratory, injunctive, and other equitable relief. |
| Count IX:  Wiretap Act, 18 U.S.C. § 2511 | Damages per 18 U.S.C. § 2712(a). |
| Count XII:  Stored Communications Act, 18 U.S.C. § 2703 (a) & (b) | Damages per 18 U.S.C. § 2712(a). |

*Jewel* Plaintiffs' Statement

| Claims Against The Government Entity And Official Capacity Defendants | Relief Sought |
|---|---|
| Count XV:  Stored Communications Act, 18 U.S.C. § 2703 (c) | Damages per 18 U.S.C. § 2712(a). |
| Count XVII: Separation of Powers | Declaratory, injunctive, and other equitable relief. |

### B.    Claims Against The Personal Capacity Defendants

The personal capacity defendants have not yet answered, moved to dismiss, or otherwise responded to the complaint.

The claims against the personal capacity defendants are as follows:

| Claims Against Personal Capacity Defendants | Relief Sought |
|---|---|
| Count I:  Fourth Amendment | Declaratory, injunctive, and other equitable relief against Defendant Alexander only. |
| Count II:  Fourth Amendment | Damages per *Bivens*. |
| Count III:  First Amendment | Declaratory, injunctive, and other equitable relief against Defendant Alexander only. |
| Count IV:  First Amendment | Damages per *Bivens*. |
| Count VI:  FISA, 50 U.S.C. § 1810 | Damages per 50 U.S.C. § 1810. |
| Count VII:  Wiretap Act, 18 U.S.C. § 2511 | Declaratory, injunctive, and other equitable relief against Defendant Alexander only, per 18 U.S.C. §§ 2510(6), 2520(b)(1). |
| Count VIII:  Wiretap Act, 18 U.S.C. § 2511 | Damages per 18 U.S.C. § 2520(b)(2). |
| Count X:  Stored Communications Act, 18 U.S.C. § 2703 (a) & (b) | Declaratory, injunctive, and other equitable relief against Defendant Alexander only, per 18 U.S.C. §§ 2510(6), 2707(b)(1). |

7

*Jewel* Plaintiffs' Statement

| Claims Against Personal Capacity Defendants | Relief Sought |
|---|---|
| Count XI:  Stored Communications Act, 18 U.S.C. § 2703 (a) & (b) | Damages per 18 U.S.C. § 2707(b)(2). |
| Count XIII:  Stored Communications Act, 18 U.S.C. § 2703 (c) | Declaratory, injunctive, and other equitable relief against Defendant Alexander only, per 18 U.S.C. §§ 2510(6), 2707(b)(1). |
| Count XIV:  Stored Communications Act, 18 U.S.C. § 2703 (c) | Damages per 18 U.S.C. § 2707(b)(2). |
| Count XVII: Separation of Powers | Declaratory, injunctive, and other equitable relief against Defendant Alexander only. |

### C.     Other Threshold Legal Issues

The Court has ruled that "[g]iven the multiple public disclosures of information regarding the surveillance program, the Court does not find that the very subject matter of the suits constitutes a state secret."  ECF No. 153 at 10.  The Court further ruled that the state secrets privilege has been displaced by the statutory procedure prescribed in 50 U.S.C. § 1806(f).  *Id*. at 11, 12, 14-15.

### 4.     Motions

#### A.     Prior Motions

The prior cross-motions of Plaintiffs and of the government entity and official capacity defendants raised three issues:  1) Does 50 U.S.C. § 1806(f) displace the state secrets privilege in Plaintiffs' lawsuit?  2) Does the state secrets privilege mandate the dismissal of Plaintiffs' lawsuit?  3) Are Plaintiffs' statutory claims against the government entity and official capacity defendants barred by sovereign immunity?

The Court's order fully resolved all of these issues.  It held that section 1806(f) displaces the state secrets defense, that sovereign immunity is waived for Plaintiffs' statutory damages claims against the Government Defendants under 18 U.S.C. § 2712, and that sovereign immunity is not waived for Plaintiffs' FISA damages claim or

8

1   Plaintiffs' claims for injunctive relief for statutory violations against the Government

2   Defendants.  ECF No. 153 at 24.

3        The Court's order raised a new issue, not raised by the previous motions:

4        "[W]hether the scope of FISA preemption is broader to foreclose altogether the

5   substantive constitutional claims."  ECF No. 153 at 24; *see also id*. at 2-3 (noting that the

6   parties have not previously raised this issue).  The Court stated it intended to have the

7   parties brief this new issue.

8        Plaintiffs respectfully request that the Court reconsider its intention to require

9   briefing *sua sponte* on this new issue.  In seven years of litigation in this case, the related

10  *Hepting* case, and the NSA MDL litigation, Defendants have never asserted that FISA or

11  any other statute bars constitutional claims challenging the Program.  (Likewise, in a new

12  lawsuit filed two months ago in the Southern District of New York challenging the

13  government's telephone call records program, the government has not asserted that FISA

14  or anything else bars the plaintiffs' constitutional claims but is litigating them on the

15  merits.  Defendants' Memorandum of Law in Support of Motion to Dismiss the

16  Complaint, *ACLU v. Clapper*, No. 13-cv-3994-WHP (S.D.N.Y. Aug. 26, 2013), ECF No.

17  33).  There is no reasonable ground on which Defendants could do so, and no reason to

18  send this lawsuit down that detour.

19       The Ninth Circuit has already addressed the issue of the viability of Plaintiffs'

20  constitutional claims, when *Hepting* and this case were on appeal together before it (the

21  same panel heard both appeals in the same hearing, and issued both opinions on the same

22  day).  At issue in *Hepting* was whether Congress in its telecom immunity statute (50

23  U.S.C. § 1885a) could permissibly extinguish the constitutional claims brought by four of

24  the five plaintiffs here (plaintiffs Hepting, Jewel, Hicks, and Knutzen) against AT&T

25  challenging its participation in the government's surveillance activities.  The Ninth

26  Circuit held that the telecom immunity statute was constitutional because Plaintiffs

27  remained able to pursue their constitutional and other claims "against government actors

28  and entities who are the primary players in the alleged wiretapping":  "[A] 'serious

9

1    constitutional question . . . would arise if a federal statute were construed to deny *any*

2    *judicial forum* for a colorable [constitutional] claim.'  *Webster v. Doe,* 486 U.S. 592, 603

3    (1988) (emphasis added). . . . Such is not the situation here.  The federal courts remain a

4    forum to consider the constitutionality of the wiretapping scheme and other claims,

5    including claims for injunctive relief.  The judiciary's essential role in protecting

6    constitutional rights is not undermined simply because Hepting is unable to bring twin

7    claims against the telecommunications companies and the government."  *In re Nat'l Sec.*

8    *Agency Telecommunications Records Litigation (Hepting)*, 671 F.3d 881, 899 (9th Cir.

9    2011) (italics original), *see also id.* at n.3 (noting the existence of the *Jewel* lawsuit).  The

10   Ninth Circuit's ruling is both binding and correct, for nothing in FISA exhibits the

11   necessary "clear and convincing" evidence that Congress intended to totally eliminate

12   judicial review of constitutional claims.  *See Webster v. Doe*, 486 U.S. at 603; *Johnson v.*

13   *Robison*, 415 U.S. 361, 373-74 (1974).  The purpose of FISA was to expand, not contract,

14   remedies for unlawful surveillance.

15           **B.    <u>Future Motions</u>**

16           Plaintiffs anticipate bringing one or more motions for summary judgment and a

17   motion for class certification.

18           In particular, Plaintiffs intend to bring an early motion for partial summary

19   judgment on their Fourth Amendment claim against the government entity and official

20   capacity defendants for the current, ongoing interception and acquisition of their Internet

21   communications—the so-called "Upstream" collection program confirmed by the

22   government's release of FISA Court orders relating to that program.  (This motion would

23   not address past Fourth Amendment violations relating to the interception and acquisition

24   of Internet communications, in particular those occurring before any FISA Court orders,

25   or Fourth Amendment violations in connection with the collection of communications

26   records or other aspects of the surveillance program.)  As noted below, the same as any

27   other litigant, Plaintiffs will seek to meet their burden on standing on this limited claim

28   for purposes of seeking partial summary judgment.

Plaintiffs propose filing their motion December 20, 2013.

### C. Plaintiffs' Response to the Government Defendants' Proposed Motions

The Government Defendants disagree with Plaintiffs' position. They propose a far different course of action, which Plaintiffs assert lacks merit.

1. In its order, the Court raised a new issue "that the parties have *not* addressed" (ECF No. 153 at 2-3 (italics added)): "[W]hether the scope of the preemption only provides a procedural mechanism for the review of submitted evidentiary materials or whether the scope of FISA preemption is broader to foreclose altogether the substantive constitutional claims." ECF No. 153 at 24. But the Government Defendants instead suggest that the parties brief a different issue, one that the parties have already briefed and that the Court has already ruled on: "whether FISA § 1806(f) displaces the state secrets privilege as to constitutional claims." Govt. Defs. Statement, *infra*.

The Government's Defendants' suggestion would amount to a grant of reconsideration without the showing required by Local Rule 7-9. The Court has already ruled that section 1806(f) displaces the state secrets privilege with respect to all of Plaintiffs' claims, statutory and constitutional: "[T]he Court GRANTS Plaintiffs' motion for partial summary adjudication by rejecting the state secrets defense as having been displaced by the statutory procedure prescribed in 50 U.S.C. § 1806(f) of FISA." ECF No. 153 at 24. In their motion for partial summary judgment, Plaintiffs specifically argued that "Section 1806(f) applies to all civil claims challenging the lawfulness of electronic surveillance, whether brought under section 1810 of FISA or some other law, such as *the constitutional claims*, Wiretap Act claims, and SCA claims brought by Plaintiffs here." ECF No. 83 at 17-18 (italics added). Plaintiffs repeated the point in their combined reply and opposition. ECF No. 112 at 6.

The Government Defendants did not controvert Plaintiffs' position in their briefing, and for good reason. The government's opposition relied on the use of section1806(f) in criminal cases where the defendants bring a suppression motion under

1    the Fourth Amendment such as *Alderman v. United States*, 394 U.S. 165, 176 (1969).

2    ECF No. 102 at 39.  Thus, the government in its prior briefing argued that section 1806(f)

3    applies to constitutional claims, and cannot now credibly argue that it does not.

4            For all these reasons, the Court should reject the Government Defendants'

5    suggestion that the Court substitute a different issue for the one the Court identified.

6    And, for the reasons stated in section 4(A) above, Plaintiffs respectfully request that the

7    Court reconsider its intention to have the parties brief the issue the Court did identify.

8            2.  The Government Defendants next propose that the Court force Plaintiffs to

9    bring an immediate motion for summary judgment proving up their standing for all their

10   claims using only non-secret evidence.  The Government Defendants would then file a

11   cross-motion on the ground that "properly privileged state secrets" (Govt. Defs.

12   Statement, *infra*) bar Plaintiffs from proving up their standing.  Both of these steps lack

13   support in the law or in the Court's order.

14           As to the motion the Government Defendants want to force Plaintiffs to bring,

15   they argue that the Court should require Plaintiffs to prove up their standing immediately

16   for all their claims with non-secret evidence or have their lawsuit dismissed, before any

17   defendant has answered the complaint and before any discovery has occurred.  This is not

18   the law and it is not what the Court said.  As to the law, this lawsuit remains at the

19   beginning of the pleading stage, and the Supreme Court has repeatedly held that at the

20   pleading stage a plaintiff need demonstrate its standing only with well-pleaded

21   allegations.  *Bennett v. Spear*, 520 U.S. 154, 167-68 (1997) ("each element of Article III

22   standing 'must be supported in the same way as any other matter on which the plaintiff

23   bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the

24   successive stages of the litigation.' . . . '[a]t the pleading stage, general factual allegations

25   of injury resulting from the defendant's conduct may suffice . . . .' ").  It is law of the

26   case that Plaintiffs' allegations of standing are legally sufficient.  *Jewel v. National*

27   *Security Agency*, 673 F.3d 902 (9th Cir. 2011).  The Government Defendants' proposal

28   that before any defendant has answered and before any discovery Plaintiffs must

12

1 immediately prove up their standing or have their lawsuit dismissed thus inverts the

2 proper order of litigation and is contrary to Supreme Court precedent.

3       The Government Defendants are also wrong in asserting that the Court ordered

4 that Plaintiffs must immediately prove their standing without any discovery or any

5 answer to their complaint.  The Court wrote:  "Should the Court permit the constitutional

6 claims to proceed and find that § 1806(f) merely provides the mechanism for review of

7 submitted materials, Plaintiffs shall be tasked with the burden to establish standing to sue

8 without resulting in impermissible damage to ongoing national security efforts."  ECF

9 No. 153 at 24.  Every plaintiff in every lawsuit is "tasked with the burden to establish

10 standing to sue."  Nothing in the Court's statement says that Plaintiffs here, unlike the

11 plaintiffs in every other case in federal court and contrary to *Bennett v. Spear*, must prove

12 up their standing *immediately*, before any defendant has answered the complaint and

13 before they have been permitted any discovery, even into non-secret evidence.

14       Moreover, the Court did not include Plaintiffs' standing in the issues it reserved

15 for decision as part of the parties' cross-motions, further indicating that the issue of

16 standing should proceed as *Bennett v. Spear* directs.

17       The Government Defendants' further proposal that Plaintiffs not only must

18 immediately prove up their standing, but must do so as the moving party and subject to

19 dismissal if they lose is a particularly egregious inversion of the litigation process.

20 Plaintiffs have no burden to prove their standing before trial.  As noted above, plaintiffs

21 can attempt to do so as part of a motion for summary judgment, and they intend to do so

22 as part of their Fourth Amendment partial summary judgment motion contemplated

23 above.  But there is no requirement that they do so as an affirmative matter at this

24 juncture.  Moreover, if Plaintiffs try but fail on summary judgment to prove that the facts

25 establishing their standing are undisputed, the consequence is that discovery goes forward

26 and the case continues to trial (including, if necessary, proceedings under section

27 1806(f)), not that it is dismissed.

28       As for the Government Defendants' proposed cross-motion, it is both wholly

1   premature and an attempt to bring the state secrets privilege back into the case after the

2   Court has rejected it.  Such a motion, in which the Government Defendants would have

3   the burden of showing no evidence exists from which Plaintiffs can prove their standing,

4   is premature and could not possibly be granted now because Plaintiffs have not yet been

5   afforded any opportunity for discovery.  The Government Defendants cannot cast upon

6   Plaintiffs the affirmative burden of proving up standing at the pleading stage, as they are

7   attempting to do.

8         There is a fundamental difference between the motions proposed by the

9   Government Defendants and Plaintiffs' proposed motion.  In the case of Plaintiffs'

10  motion, it is possible for the Court to find that Plaintiffs have established their standing

11  on their Fourth Amendment claim—i.e., to find that Plaintiffs' Internet communications

12  are being acquired by the Government Defendants as part of a program of mass

13  untargeted surveillance—if it concludes that the evidence Plaintiffs currently possess

14  establishes that fact.  In the case of the Government Defendants' proposed motions,

15  without Defendants having answered the complaint and without Plaintiffs having been

16  permitted any discovery, the Court could not find as a matter of law that it is impossible

17  for Plaintiffs ever to prove that their communications and communications records were

18  acquired by the government.

19        The Government Defendants' proposed cross-motion is also an attempt to bring

20  the state secrets privilege back into the case.  Its entire premise is that evidence necessary

21  to establish Plaintiffs' standing is still "subject to the state secrets privilege" (Govt. Defs.

22  Statement, *infra*), notwithstanding the Court's ruling to the contrary.  Further, the

23  Government Defendants' proposal ignores completely the possibility of proceedings

24  under section 1806(f), rendering the Court's ruling that section 1806(f) displaces the state

25  secrets privilege here a dead letter.

26        Additionally, the Government Defendants also seek to cast upon Plaintiffs the

27  burden of showing that proving standing—i.e., proving that their communications and

28  communications records were acquired by the government along with those of millions of

1   other Americans—will not result in impermissible damage to national security.  Even in

2   cases subject to the state secrets privilege, however, it is the government's burden to

3   show that disclosure would harm national security, not the plaintiff's burden to show that

4   disclosure would *not* harm national security.  *See United States v. Reynolds*, 345 U.S. 1,

5   10 (1953); *Mohamed v. Jeppesen Dataplan*, 614 F.3d 1070, 1080-82 (9th Cir. 2010) (en

6   banc).

7          When it does come time for Plaintiffs to prove up their standing, i.e., to prove that

8   they were injured in fact, nothing in *Clapper v. Amnesty International* will stand as a

9   barrier to them doing so.  As noted above, *Clapper* was a case where plaintiffs alleged

10  their communications were likely to be targeted for interception, unlike this one which

11  alleges Plaintiffs were subject to untargeted surveillance.  The concern expressed in

12  footnote 4 of *Clapper*, cited in the Court's order (ECF No. 153 at 24-25) was that

13  determining whether the plaintiffs' communications had been targeted would reveal who

14  was on the list of surveillance targets.  133 S.Ct. at 1149 n.4.  Here, however, to establish

15  their standing Plaintiffs need only show untargeted surveillance, and proving untargeted

16  mass surveillance will not reveal who is on the list of surveillance targets.  Moreover,

17  footnote 4 of *Clapper* discusses only a "hypothetical disclosure proceeding"; section

18  1806(f) is not a hypothetical proceeding but one established by Congress in which

19  Congress itself struck the balance, protecting national security while permitting claims of

20  unlawful surveillance to go forward to a decision on the merits.

21         Other defects exist with the Government Defendants' proposal.  The Government

22  Defendants propose that Plaintiffs file the first brief, but by the device of framing their

23  opposition as a "cross-motion"—even though it would address only the same issues as

24  thosee Plaintiffs would be forced to address in the brief Defendants would have the Court

25  compel Plaintiffs to file—they give themselves not only an opposition but an additional

26  sur-reply.  The Government Defendants also give themselves the opportunity to make "a

27  renewed state secrets privilege assertion"—essentially an unauthorized motion for

28  reconsideration of the Court's ruling that section 1806(f) displaces the state secrets

15

privilege.  In addition, the Government Defendants want Plaintiffs to submit their opening brief without knowing what information the government still contends is secret, effectively demanding that Plaintiffs make guesses as to what the government still considers secret based upon its broad assertions of secrecy prior to the recent revelations.

Finally, the Government Defendants' "aggrieved person" argument amounts to yet another request for reconsideration:  the Government Defendants argued in opposition to Plaintiffs' motion that section 1806(f) did not apply here because Plaintiffs had not proven they were aggrieved persons (ECF No. 102 at 2, 29, 37-41; ECF No. 119 at 1, 3-4), and the Court rejected this argument in granting Plaintiffs' motion.

3.  Moreover, and again as noted above, even if the Court concludes that the parties should brief whether FISA "foreclose[s] altogether the substantive constitutional claims" (ECF No. 153 at 24), Plaintiffs' anticipated summary judgment challenging on Fourth Amendment grounds the current program collecting Internet communications (discussed in section 4(B) above) provides an appropriate vehicle for doing so.  If the Government Defendants contend that FISA does foreclose Plaintiffs' constitutional claims, they can make that argument in their opposition.  Plaintiffs' Fourth Amendment motion will also put Plaintiffs to the test of establishing their standing with respect to the current program of collecting Internet communications.

## 5.    **Amendment of Pleadings**

Plaintiffs do not anticipate amending the complaint at this time.  No defendant has yet answered.

## 6.    **Evidence Preservation**

On November 16, 2009, the Court entered an order reminding the parties of their obligation to preserve evidence and requiring counsel for each party to certify that the Court's directive relating to evidence preservation had been carried out.  ECF No. 51. The parties submitted statements under seal.  The parties agree that the obligations outlined in the November 16, 2009 Order continue to apply.

The parties have reviewed the Guidelines Relating to the Discovery of

16

Electronically Stored Information and have met and conferred pursuant to Federal Rule
of Civil Procedure 26(f) regarding reasonable and proportionate steps taken to preserve
evidence relevant to the issues reasonably evident in this action.  Plaintiffs believe that
the Court's November 16, 2009 Order supplies the appropriate standard for evidence
preservation in this case.

**7.**   **Disclosures**

The parties met and conferred September 17, 2013 pursuant to Rule 26.  Plaintiffs
propose that the parties make mutual and simultaneous Rule 26(a)(1) disclosures in 120
days.

**8.**   **Discovery**

No discovery has been taken to date.  Plaintiffs note that this case has been
pending for five years, and are eager to proceed to discovery and resolution on the merits.
Plaintiffs intend to begin party and non-party discovery.

**A.  Plaintiffs' Plan for Handling National Security Evidence in Discovery**

Given the breadth and magnitude of the recent disclosures concerning the
government's surveillance activities, it may well turn out that there is little need to rely
on the procedures of section 1806(f) here.  For example, in the recently-filed *ACLU v.
Clapper* lawsuit pending in the Southern District of New York challenging the
government's telephone call records program, the government has not asserted the state
secrets privilege but is litigating the plaintiffs' claims on the merits.  Defendants'
Memorandum of Law in Support of Motion to Dismiss the Complaint, *ACLU v. Clapper*,
No. 13-CV-3994-WHP (S.D.N.Y. Aug. 26, 2013), ECF No. 33.  Additionally, in
*Electronic Frontier Foundation v. United States Department of Justice*, a FOIA action
pending in this District and brought by Plaintiffs' counsel, the government has
declassified and released substantial additional materials totaling thousands of pages
pertaining to orders of the FISA Court and other relevant matters.  No. 11-cv-5221-YGR
(N.D. Cal.).  Plaintiffs understand further disclosures will be forthcoming.

Nevertheless, the Court and the parties should create a plan for handling national

17

security evidence in discovery.  Consistent with section 1806(f), Plaintiffs propose the following plan for addressing in discovery information whose disclosure the Attorney General attests would harm national security (hereafter "national security evidence").

      1.   Document Requests:  If the government determines that a document request propounded by Plaintiffs calls for documents whose disclosure in part or in whole would harm national security, it shall do the following:  a) In its written response to Plaintiffs' document request, the government shall give notice that it is withholding documents on the ground that their disclosure would harm national security.  b) The written response shall be accompanied by an attestation under oath by the Attorney General pursuant to section 1806(f) that disclosure of the withheld documents would harm national security. c) The government shall provide Plaintiffs with redacted copies of any withheld documents.  d) The government shall segregate and maintain unredacted copies of any withheld documents.  e) The government shall provide Plaintiffs with an index of the withheld documents describing the author(s), recipient(s), title, and general subject matter of the document.

      2.   Interrogatories:  If the government determines that an interrogatory propounded by Plaintiffs calls for information whose disclosure in part or in whole would harm national security, it shall do the following:  a) In its written response to the interrogatory it provides to Plaintiffs, the government shall give notice that it is withholding information on the ground that its disclosure would harm national security. b) The written response shall be accompanied by an attestation under oath by the Attorney General pursuant to section 1806(f) that disclosure of the withheld information would harm national security.  c) In its written response to the interrogatory it provides to Plaintiffs, the government shall answer the interrogatory to the extent possible without disclosing the withheld information.  The government shall take special care that its partial response is not misleading by reason of the omitted information.  d) The government shall also prepare and maintain a complete written response to the interrogatory.

3.   Requests For Admission:  If the government determines that its answer to a request for admission propounded by Plaintiffs would disclose information that would harm national security, it shall do the following:  a) In its written response to the request for admission it provides to Plaintiffs, the government shall give notice that it is not answering the request fully on the ground that the answer would disclose information that would harm national security.  b) The written response shall be accompanied by an attestation under oath by the Attorney General pursuant to section 1806(f) that a full and complete answer would disclose information that would harm national security.  c) In its written response to the request for admission it provides to Plaintiffs, the government shall admit or deny the request to the extent possible without disclosing the withheld information.  The government shall take special care that its partial response is not misleading by reason of the omitted information.  d) The government shall also prepare and maintain a complete written response to the request for admission.

4.   Depositions:  If the government objects to a question asked during a deposition on the ground that it calls for information whose disclosure in part or in whole would harm national security, the following process shall apply:  a) The court reporter shall mark the question.  b) To the extent the question can be answered in part without disclosing information the government contends is national security evidence, the witness shall answer the question.  c) At the conclusion of the deposition, there shall be an *ex parte, in camera* session attended by only the witness, the court reporter, and counsel for the government.  d) In the *ex parte, in camera* session, the court reporter shall propound to the witness all questions that were the subject of objection and any follow-up questions provided by Plaintiffs, and shall transcribe the witness's answers to those questions. e) The transcript of the *ex parte, in camera* session shall be provided to and maintained by the government.  f) The government shall promptly provide an attestation under oath by the Attorney General pursuant to section 1806(f) that disclosure of the answers in the *ex parte, in camera* transcript would harm national security.  Any answers by the witness that the Attorney General does not attest would harm national security if disclosed shall

19

be provided to Plaintiffs.

5.  Further Proceedings Under Section 1806(f):  If the government has refused to respond to discovery requests or has objected to deposition questions on the ground that they call for national security evidence, Plaintiffs will then decide, at an appropriate stage of proceedings, whether to proceed under section 1806(f) to seek a ruling on the lawfulness of the surveillance based on the evidence withheld by the government, as well as the non-secret evidence.

### B.  Other Discovery Issues

Plaintiffs believe that use of interrogatories may significantly help reduce the extent to which it is necessary to pursue discovery of national security evidence. Plaintiffs thereby respectfully request that the Court waive the presumptive 25-interrogatory limit of Fed. R. Civ. P. 33(a)(1).

### 9.  Class Actions

Plaintiffs propose that the following class be certified pursuant to Federal Rule of Civil Procedure 23(b)(2):

> All individuals in the United States that are current residential subscribers or customers of AT&T's telephone services or Internet services, or that were residential telephone or Internet subscribers or customers at any time after September 2001.

(Complaint ¶ 98).  Plaintiffs anticipate filing a motion for class certification once appropriate discovery has been completed.

### 10.  Related Cases

This case was related to *Hepting, et al. v. AT&T Corp.*, No. 06-cv-0672-VRW, which was thereafter dismissed.  This case is also related to *First Unitarian Church of Los Angeles et al. v. National Security Agency et al.*, No. 13-cv-3287-JSW.

Also pending before this Court is *Shubert v. Obama*, No. C-07-0693-JSW, a case from the Eastern District of New York transferred for pretrial proceedings to this district pursuant to MDL No. 06-1791.

**11.**    <u>**Relief**</u>

Plaintiffs, on their own behalf and on behalf of the class they seek to represent, seek to enjoin Defendants' unlawful acquisition of Plaintiffs' and class members' communications and communications records, to require the inventory and destruction of those that have already been seized, and to obtain appropriate statutory, actual, and punitive damages to compensate for past harms and to deter future illegal surveillance, and seek corresponding declaratory relief.

**12.**    <u>**Settlement and ADR**</u>

No settlement discussions have taken place.  The parties do not believe that ADR would be productive at this time.

**13.**    <u>**Consent to Magistrate Judge for All Purposes**</u>

The parties do not consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

**14.**    <u>**Other References**</u>

The parties agree that this case is not suitable for reference to binding arbitration or a special master.

**15.**    <u>**Narrowing of Issues**</u>

The Court's order ruling on the parties' cross-motions has resolved the issue of section 1806(f)'s displacement of the state secrets privilege in this lawsuit and has narrowed Plaintiffs' claims against the government entity and official capacity defendants.

As explained above, the recent public disclosures and declassifications regarding the government's past and continuing surveillance activities have reduced the necessity for secret evidence in this case.

Moreover, these disclosures have confirmed many of Plaintiffs' allegations, reducing the scope of disputed facts.  Plaintiffs anticipate that as the case progresses, many of the underlying facts will turn out to be undisputed and the parties' dispute will focus on the legal consequences of those facts.

Plaintiffs anticipate narrowing the issues further by seeking partial summary judgment on the question of whether the current collection of Internet content (the "Upstream" program) violates the Fourth Amendment.

**16.  Expedited Trial Procedure**

The parties agree that this is not the type of case that can be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A.

**17.  Scheduling**

Plaintiffs propose the following case schedule:

Class certification motion filed:  October 2014

Expert designation date:  January 31, 2015

Fact discovery cut-off:  February 28, 2015

Expert discovery cut-off:  April 15, 2015

Last day for filing dispositive motions:  May 1, 2015

Trial:  October 2015

**18.  Trial**

Plaintiffs have demanded a trial by jury of all issues so triable.  Plaintiffs anticipate that a full trial, if necessary, will take approximately four weeks.  Plaintiffs also anticipate, however, that it will be possible to resolve many issues on summary judgment.

**19.  Disclosure of Nonparty Interested Entities or Persons**

Plaintiffs have filed a Certification of Interested Entities or Persons required by Civil Local Rule 3-16.  Plaintiffs hereby restate the contents of their prior certification and state that, to their knowledge, no entities other than the parties themselves have either: (i) a financial interest (of any kind) in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

No defendant has filed a Certification of Interested Entities or Persons.

**20.   Other Issues**

A.  Plaintiffs respectfully request that, given the recent revelations and declassifications, the Court require Defendants to review the declarations and any other materials they have previously filed *ex parte*, under seal and to disclose to Plaintiffs and in the public record any portions of those filed documents addressing matters that are no longer secret.  Plaintiffs have a fundamental due process right of access to materials submitted to the Court in opposition to their lawsuit.  *Goldberg v. Kelly*, 397 U.S. 254, 270 (1970).  To the extent that all or part of the contents of those materials address matters that are no longer secret, there is no countervailing interest that would justify denying Plaintiffs access to that evidence and argument Defendants have filed with the Court in opposition to them.

B.  Plaintiffs' claims against the personal capacity defendants were stayed while the Court decided the issues raised by Plaintiffs' motion for partial summary judgment and the Government Defendants' cross-motion to dismiss and for summary judgment. The personal capacity defendants propose that the stay continue.  Plaintiffs are agreeable to continuing the stay in the immediate future but are concerned that the stay not turn into an open-ended one with no fixed terminus.  Given the great disparity between the proposals for how Plaintiffs' claims against the Government Defendants should go forward, Plaintiffs propose that the stay of the claims against the personal capacity defendants continue for an additional 90 days from the date of the CMC.  (Likewise, the deadline for substitution in the case of deceased plaintiff Gregory Hicks' claims against the personal capacity defendants should be extended to the same date.  *See* ECF. No. 135.)  At that time, the Court will have decided how Plaintiffs' claims against the Government Defendants' claims should go forward, and the parties can then best determine their positions on whether the stay should continue beyond that time.

1    **SHUBERT PLAINTIFFS' STATEMENT:**

2          In this lawsuit, Plaintiffs challenge the mass, untargeted acquisition by the

3    government of the communications and communications records of millions of innocent

4    Americans.  Proof of Plaintiffs' claims will *not* require proof of who the government

5    targeted for surveillance or what information the government was seeking about those

6    targets.

7          Moreover, as the Court is aware, there has been a continuing cascade of public

8    revelations in the past three months regarding the government's past and present

9    surveillance activities, including significant governmental admissions and

10   declassification of relevant documents.  *See, e.g.*, *Shubert* Dkt. 92.  These revelations

11   have largely confirmed the allegations of Plaintiffs' complaint, while removing any

12   argument that resolving Plaintiffs' claims on the merits would necessarily disclose state

13   secrets.

14         Plaintiffs filed their complaint on May 17, 2006 in the Eastern District of New

15   York.  Thereafter, it was transferred by the Judicial Panel on Multidistrict Litigation to

16   this district for pretrial proceedings as part of the *In re NSA Telecommunications*

17   *Litigation* MDL proceeding.  To date, no defendant has answered the complaint.

18   Although the complaint in this case was filed over seven years ago, this is the first Case

19   Management Statement submitted by the parties and this will be the Initial Case

20   Management Conference held by the Court.  It is time to bring this case within the

21   established framework of civil litigation procedures and move it forward expeditiously

22   towards final resolution.

23         Plaintiffs are four individuals suing on behalf of themselves and a class of

24   similarly-situated people.  There are two groups of defendants:  the United States and

25   officials sued in their official capacities; and individual United States officials sued in

26

27

28

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER
Case Nos. 07-cv-0693-JSW; 08-cv-4373-JSW

1 | their personal capacities.[3]

2 |    Defendants filed their first Motion to Dismiss or for Summary Judgment on May

3 | 25, 2007, No. 3:06-md-01791-VRW, Dkt. 295, citing, *inter alia*, the state secrets

4 | privilege; this motion was later administratively closed.  On October 30, 2009,

5 | defendants filed a Second Motion to Dismiss and for Summary Judgment, raising, *inter*

6 | *alia*, the state secrets privilege and sovereign immunity.  *Shubert* Dkt. 38.

7 |    On January 21, 2010, the Court, per Walker, C.J., *sua sponte* dismissed all claims

8 | for failure to allege an injury sufficiently particularized to support standing.  *Shubert* Dkt.

9 | 46.  The Court did not rule on any of the arguments raised by the United States.  *Id.*

10 | Plaintiffs appealed.

11 |    The Ninth Circuit reversed the dismissal of the complaint and remanded "with

12 | instructions to consider the government's assertion that the state secrets privilege barred

13 | this litigation."  *Shubert* Dkt. 60.  On July 2, 2012, the Jewel Plaintiffs moved for partial

14 | summary judgment seeking a determination that the procedures of 50 U.S.C. § 1806(f)

15 | displaced the state secrets privilege in this lawsuit.  *Jewel v. National Security Agency,*

16 | No. 08-cv-4373-JSW, Dkt. 83.  On September 28, 2012, the Government Defendants

17 | filed a third motion to dismiss and for summary judgment, seeking dismissal of Plaintiffs'

18 | statutory claims against the government entity and official capacity defendants on

19 | sovereign immunity grounds and seeking dismissal of all of Plaintiffs' claims on the

20 | ground that the claims were barred by the state secrets privilege.  *Shubert* Dkt. 69 at 1.

21 | Both motions were heard on December 14, 2012.  On February 27, 2013, the Court

22 | ordered additional briefing concerning standing in light of *Clapper v. Amnesty*

23 | *International USA*.  *Shubert* Dkt. 85.

24 |    On July 8, 2013, the Court issued its order on the parties' cross-motions.  *Shubert*

25 | Dkt. 95.  The Court entered an amended order on July 23, 2013.  *Shubert* Dkt. 98.  The

26 |

---

[3] The government entity defendants and the defendants sued in their official capacities
are the United States of America, Barack Obama, Keith Alexander, and Eric Holder. The
personal capacity defendants are Keith Alexander, Michael Hayden, Alberto Gonzales,
and John Ashcroft.

1   Court granted the *Jewel* Plaintiffs' motion for partial summary judgment, and denied the

2   Government's motions in part as against the *Shubert* and the *Jewel* plaintiffs, finding that

3   the statutory procedures of section 1806(f) displace the state secrets privilege.  The Court

4   granted in part the Government Defendants' motion to dismiss and motion for summary

5   judgment, dismissing Plaintiffs' claims against the government entity and official

6   capacity defendants for damages under FISA and Plaintiffs' statutory claims for

7   injunctive relief against them.  *Shubert* Dkt. 98 at 24.  The Court also stated that:  "The

8   Court RESERVES ruling on the Defendants' motion for summary judgment on

9   remaining non-statutory claims (counts 1-4 of the *Jewel* Complaint and the fourth cause

10  of action in the *Shubert* Complaint)."  *Id*.  The Court framed the issue as:  "[T]he scope of

11  FISA preemption on the Plaintiffs' constitutional claims, specifically, whether the scope

12  of the preemption only provides a procedural mechanism for the review of submitted

13  evidentiary materials or whether the scope of FISA preemption is broader to foreclose

14  altogether the substantive constitutional claims."  *Id*.

15         The Court also set a case management conference which, at the government's

16  request, was continued until September 27, 2013.  *Shubert* Dkt. 100.

17  **1.**     **Jurisdiction and Service**

18         The Court has subject matter jurisdiction over the remaining claims in this case

19  pursuant to 28 U.S.C. § 1331.  The government entity and official capacity defendants

20  were served with the Summons and Complaint on May 18, 2006.  *Shubert et al v. Bush et*

21  *al*, No. 1:06-cv-02282-FB-MDG, Dkt. 2 (E.D.N.Y.).  The personal capacity defendants

22  were served on July 31, 2006.  *Id*., Dkt. 43-4 (DOJ counsel's acceptance of service of

23  complaint on behalf of Alexander, Hayden, Gonzales and Ashcroft in their individual

24  capacities).  The government entity and official capacity defendants do not contest

25  personal jurisdiction or venue.  The personal capacity defendants reserve the right to

26  contest personal jurisdiction or venue.

27  **2.**     **Facts**

28         This case is a class action brought on behalf of the named plaintiffs and a class of

United States persons who have been or will be subject to electronic surveillance by the National Security Agency without a search warrant, court order, or other lawful authorization since September 12, 2001.

This lawsuit is based on the same operative facts as the *Jewel* case, and Plaintiffs agree with and adopt the *Jewel* plaintiffs' statement of facts and the summary of recent public disclosures regarding the government's surveillance program.

## 3.   Legal Issues

### A.   Remaining Claims Against the Government Entity Defendants and Official Capacity Defendants

The Court granted the government entity defendants' and official capacity defendants' motion to dismiss Plaintiffs' FISA claim for damages against them and Plaintiffs' statutory claims for injunctive relief against them.  *Shubert* Dkt. 98 at 24. Thus, the plaintiffs' remaining claims against the government entity defendants and official capacity defendants are as follows:

| Claims Against The Government Entity And/Or Official Capacity Defendants | Relief Sought |
|---|---|
| Count IV:  Fourth Amendment | Declaratory, injunctive, and other equitable relief |

### B.   Claims Against The Personal Capacity Defendants

The personal capacity defendants have not yet answered, moved to dismiss, or otherwise responded to the complaint.

The claims against the personal capacity defendants are as follows:

| Claims Against Personal Capacity Defendants | Relief Sought |
|---|---|
| Count I:  FISA, 50 U.S.C. § 1810 | Damages |

27

*Shubert* Plaintiffs' Statement

| Claims Against Personal Capacity Defendants | Relief Sought |
|---|---|
| Count II:  Wiretap Act, 18 U.S.C. § 2510 | Damages |
| Count III:  Stored Communications Act, 18 U.S.C. § 2701 | Damages |
| Count IV:  Fourth Amendment | Damages per *Bivens* and declaratory, injunctive, and other equitable relief |

### C.    Other Threshold Legal Issues

The Court has ruled that "[g]iven the multiple public disclosures of information regarding the surveillance program, the Court does not find that the very subject matter of the suits constitutes a state secret." *Shubert* Dkt. 98 at 10.  The Court further ruled that the state secrets privilege has been displaced by the statutory procedure prescribed in 50 U.S.C. § 1806(f).  *Id*. at 11, 12, 14-15.

### 4.    Motions

### A.    Prior Motions

Plaintiffs agree with the statement of the *Jewel* Plaintiffs regarding the prior motions before the Court and the Court's order ruling on them.

### B.    Future Motions

Plaintiffs anticipate bringing one or more motions for summary judgment and a motion for class certification.

In particular, Plaintiffs anticipate bringing an early motion for partial summary judgment on their Fourth Amendment claim against the government entity and official capacity defendants for interception and acquisition of their Internet communications—the so-called "Upstream" collection program confirmed by the government's release of FISA court orders relating to that program.  This motion would be similar to the proposed motion of the *Jewel* plaintiffs.  As noted below, the same as any other litigant, Plaintiffs will seek to meet their burden on standing for purposes of seeking partial summary

28

judgment.

Plaintiffs propose filing this motion December 20, 2013, on the same schedule as the *Jewel* defendants' Fourth Amendment motion.

### C.   Plaintiffs' Response to the Government Defendants' Proposed Motions

Plaintiffs agree with the *Jewel* Plaintiffs' statement regarding the Government Defendants' proposed motions, and agree that the Government Defendants' proposal lacks merit.

### 5.   Amendment of Pleadings

Plaintiffs do not anticipate amending the complaint at this time.  No defendant has yet answered.

### 6.   Evidence Preservation

On November 6, 2007, the Court entered an order reminding the parties of their obligation to preserve evidence and requiring counsel for each party to certify that the Court's directive relating to evidence preservation had been carried out.  No. 3:06-md-01791-VRW, Dkt. 393.  The parties submitted statements under seal.  The parties agree that the obligations outlined in the November 6, 2007 Order continue to apply.

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred pursuant to Federal Rule of Civil Procedure 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.  Plaintiffs believe that the Court's November 6, 2007 Order supplies the appropriate standard for evidence preservation in this case.

### 7.   Disclosures

The parties met and conferred September 17, 2013 pursuant to Rule 26.  Plaintiffs propose that the parties make mutual and simultaneous Rule 26(a)(1) disclosures in 120 days.

**8.**   **Discovery**

No discovery has been taken to date.  Plaintiffs note that this case has been pending for seven years, and are eager to proceed to discovery and resolution on the merits.  Plaintiffs intend to begin party and non-party discovery.

### A.  Plaintiffs' Plan for Handling National Security Evidence in Discovery

Plaintiffs agree with the plan proposed by the *Jewel* plaintiffs for handling national security evidence in discovery and propose that it be adopted in this lawsuit as well.

### B.  Other Discovery Issues

Plaintiffs believe that use of interrogatories may significantly help reduce the extent to which it is necessary to pursue discovery of national security evidence. Plaintiffs thereby respectfully request that the Court waive the presumptive 25-interrogatory limit of Fed. R. Civ. P. 33(a)(1).

**9.**   **Class Actions**

Plaintiffs propose that the following class be certified pursuant to Federal Rule of Civil Procedure 23(b)(2):

> [A]ll present and future United States persons who have been or will be subject to electronic surveillance by the National Security Agency without a search warrant, court order, or other lawful authorization since September 12, 2001.

(*Shubert* Complaint ¶ 27).  Plaintiffs anticipate filing a motion for class certification once appropriate discovery has been completed.

**10.**   **Related Cases**

Also pending before this Court are *Jewel v. National Security Agency,* No. 08-cv-4373-JSW and *First Unitarian Church of Los Angeles et al. v. National Security Agency et al.*, No. 13-cv-3287-JSW, both of which were filed after the *Shubert* case.

Plaintiffs, on their own behalf and on behalf of the class they seek to represent, seek to enjoin Defendants' unlawful acquisition of Plaintiffs' and class members' communications, to require the inventory and destruction of those that have already been seized, and to obtain appropriate statutory, actual, and punitive damages to compensate

30

for past harms and to deter future illegal surveillance, and seek corresponding declaratory relief.

**11.     Settlement and ADR**

No settlement discussions have taken place.  The parties do not believe that ADR would be productive at this time.

**12.     Consent to Magistrate Judge for All Purposes**

The parties do not consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

**13.     Other References**

The parties agree that this case is not suitable for reference to binding arbitration or a special master.

**14.     Narrowing of Issues**

The Court's order ruling on the parties' cross-motions has resolved the issue of section 1806(f)'s displacement of the state secrets privilege in this lawsuit and has narrowed Plaintiffs' claims against the government entity and official capacity defendants.

As explained above, the recent public disclosures and declassifications regarding the government's past and continuing surveillance activities have reduced the necessity for secret evidence in this case.

Moreover, these disclosures have confirmed many of Plaintiffs' allegations, reducing the scope of disputed facts.  Plaintiffs anticipate that as the case progresses, many of the underlying facts will turn out to be undisputed and the parties' dispute will focus on the legal consequences of those facts.

Plaintiffs anticipate narrowing the issues further by seeking partial summary judgment on the question of whether the current collection of Internet content (the "Upstream" program) violates the Fourth Amendment.

**15.     Expedited Trial Procedure**

The parties agree that this is not the type of case that can be handled under the

Expedited Trial Procedure of General Order No. 64 Attachment A.

**16.**     <u>**Scheduling**</u>

Plaintiffs propose the following case schedule:

Class certification motion filed:  October 2014

Expert designation date:  January 31, 2015

Fact discovery cut-off:  February 28, 2015

Expert discovery cut-off:  April 15, 2015

Last day for filing dispositive motions:  May 1, 2015

Remand to the Eastern District of New York for Trial:  October 2015

**17.**     <u>**Trial**</u>

Plaintiffs have demanded a trial by jury of all issues so triable.  Plaintiffs note that any trial will occur in the Eastern District of New York.  Plaintiffs anticipate that a full trial, if necessary, will take approximately four weeks.  Plaintiffs also anticipate, however, that it will be possible to resolve many issues on summary judgment.

**18.**     <u>**Other Issues**</u>

Plaintiffs agree with and adopt the statement of other issues by the *Jewel* plaintiffs.

**GOVERNMENT DEFENDANTS' STATEMENT:**

The parties disagree about the scope of the issues for the CMC and this Statement. All of the defendants (the Government Defendants sued in their official capacities and the individual defendants sued in their personal capacities) view the purpose of the CMC and this Statement to facilitate the additional briefing requested by the Court at the end of its July 23, 2013 Order and set the schedule for such briefing, as the Court indicated in ordering the CMC and joint case management statement, not to actually brief those issues herein.  July 23, 2013 Order at 25.

In the above-captioned *Jewel* and *Shubert* cases, Plaintiffs allege that, following the 9/11 terrorist attacks, then-President George W. Bush authorized the National Security Agency (NSA) to undertake, with the assistance of major telecommunications companies, indiscriminate warrantless surveillance of the communications of millions of Americans.  Plaintiffs claim this alleged "dragnet" surveillance included collection of the content of telephone and Internet communications as well as communications records.  In their complaints, Plaintiffs claim this conduct violates the First and Fourth Amendments of the United States Constitution; the separation of powers doctrine; the Foreign Intelligence Surveillance Act (FISA), 50 U.S.C. §§ 1809, 1810; the Wiretap Act, 18 U.S.C. § 2511(1)(a), (b), and (d); and the Electronic Communications Privacy Act (ECPA) or the Stored Communications Act (SCA), 18 U.S.C. § 2703(a), (b), and (c).  *See* July 23, 2013 Order at 4 (summarizing claims).  They seek money damages as well as declaratory and injunctive relief.

On July 8, 2013, the Court issued an Order on Plaintiffs' motion for partial summary judgment and Government Defendants' motion to dismiss and for summary judgment (ECF No. 148) and amended that order on July 23, 2013 in response to the parties' request for clarification (ECF No. 153).  The Court made several findings and rulings in its decision.  Because the decision is critical to the purpose of the instant case management conference, we summarize it in some detail below.

First, the Court reviewed Government Defendants' state secrets privilege assertion and found that "the state secrets privilege would apply to bar disclosure of significant materials relating to the alleged Program."  July 23, 2013 Order at 11.  The Court concluded that the Government "successfully invoked the privilege with regard to significant evidence tending to confirm or negate the factual allegations in Plaintiffs' complaints."  *Id*.  The Court held, however, that "the FISA procedural mechanism prescribed under 50 U.S.C. § 1806(f) preempts application of the state secrets privilege." *Id*.  The Court concluded that § 1806(f) sets out "specific procedures courts must follow to evaluate evidence where disclosure could endanger national security," *id*. at 13, and found that, through this provision, Congress intended for FISA to displace the state secrets privilege with regard to matters within FISA's purview.  *Id*. at 14.

The Court nevertheless went on to hold that Plaintiffs' FISA claims against Government Defendants fail for lack of a waiver of sovereign immunity, under *Al-Haramain v. Obama*, 690 F.3d 1089 (9th Cir. 2012).  *Id*. at 16.  The Court did find a waiver of sovereign immunity for Plaintiffs' Wiretap Act and SCA claims, so Plaintiffs' claims against Government Defendants for money damages under those statutes remain in the case.  *Id*. at 16-18.  The Court rejected Plaintiffs' arguments that statutory claims for injunctive relief were authorized under 5 U.S.C. § 702 or the *ultra vires* doctrine, and dismissed those claims.  *Id*. at 18-24.  Lastly, the Court reserved ruling on Government Defendants' motions for summary judgment with respect to Plaintiffs' non-statutory, constitutional claims, pending the briefing described below.  *Id*. at 24.

The Court proceeded to order additional briefing on two issues:

1.      "[T]he scope of FISA preemption on the Plaintiffs' constitutional claims, specifically, whether the scope of the preemption only provides a procedural mechanism for the review of submitted evidentiary materials or whether the scope of FISA preemption is broader to foreclose altogether the substantive constitutional claims. Should the Court permit the constitutional claims to proceed and find that § 1806(f)

34

merely provides the mechanism for review of submitted materials, Plaintiffs shall be tasked with the burden to establish standing to sue without resulting in impermissible damage to ongoing national security efforts.  *See Clapper v. Amnesty International USA*, 133 S. Ct. 1138, 1149 n.4 (2013) (noting that, pursuant to hypothetical in camera proceedings permitted under § 1806(f), 'the court's postdisclosure decision about whether to dismiss the suit for lack of standing would surely signal to the terrorist whether his name was on the list of surveillance targets.')  Although the Court finds, at this procedural posture, that Plaintiffs here do not allege the attenuated facts of future harm which barred standing in Clapper, the potential risk to national security may still be too great to pursue confirmation of the existence or [sic] facts relating to the scope of the alleged governmental Program."  July 23, 2013 Order at 24-25.

2.      "[T]he impact on the Defendants' assertion of such a risk following the recent disclosure of the government's continuing surveillance activities and the statement by the Director of National Intelligence that certain information related to the 'business records' provision of FISA should be declassified and immediately released to the public."  *Id*. at 25.

The Court concluded by setting a case management conference for August 23, 2013 "to facilitate this process and set the schedule for such further briefing."  *Id*.  The Court granted a subsequent uncontested request by Government Defendants to continue the CMC to September 27, 2013, in light of various vacation plans during the month of August, with a joint case management statement due on September 20.  August 5, 2013 Order.

Given the Court's instructions in setting the CMC, Government Defendants understand that the purpose of the CMC, and thus this Statement, is to facilitate the process for the additional briefing requested by the Court and set a schedule for that briefing.  The additional briefing requested by the Court concerns threshold issues that should properly be addressed and decided at this juncture before the case proceeds to

further stages such as discovery and class certification.  Specifically, the Court has requested briefing on the scope of § 1806(f) preemption, Plaintiffs' ability to establish their standing without harm to national security, and the impact of recent disclosures on the Government's state secrets privilege assertion.  Accordingly, Government Defendants focus in this Statement on the briefing process and schedule for addressing these issues, as opposed to the more general pretrial case management issues addressed by Plaintiffs in their statements.

With respect to the first issued identified by the Court for further briefing, Government Defendants respectfully advise the Court that we believe there is some ambiguity as to what specifically the Court is asking the parties to brief concerning the scope of its FISA displacement ruling.  We agree with Plaintiffs that there is no issue in this case as to whether the Plaintiffs may *raise* a constitutional claim in this case.  It appears to the Government that the Court seeks briefing on "the scope of FISA preemption" – specifically on whether FISA § 1806(f) displaces the state secrets privilege as to constitutional claims.   In any event, contrary to Plaintiffs' assertion, the Government is not suggesting that any particular issue be briefed.  Rather, while Plaintiffs seek to brief those alternative possibilities above in this Case Management Report, the Government would respectfully ask the Court at the Case Management Conference to clarify the issue on which it seeks briefing and then provide the parties an opportunity to brief that issue , if there remains any disagreement between the parties about the issue.

If the Court decides that Plaintiffs' constitutional claims may proceed, then all remaining statutory and constitutional claims would be in the same posture.  As outlined by the Court, Plaintiffs then "shall be tasked with the burden to establish standing to sue without resulting in impermissible damage to ongoing national security efforts."  July 23, 2013 Order at 24.  This leads to the second issue for briefing identified by the Court.

In order to assess the potential harm to national security at issue in Plaintiffs'

attempt to establish their standing, the Court needs to know if the Government's privilege assertion has been affected by official Government declassification decisions and official disclosures by the Government made after recent unauthorized disclosures regarding NSA surveillance programs.  That is the subject of the second issue for additional briefing requested by the Court.  In response to that request, Government Defendants would advise the Court what information that was subject to its privilege assertion continues to be properly protected from disclosure and should be excluded from this case in order to protect national security concerns.  In connection with that review and further briefing, the Government would submit any renewed state secrets privilege assertion applicable to this case and address its impact on the litigation.  The submission of a renewed state secrets privilege assertion would reflect the results of the Government's declassification review process concerning NSA surveillance matters that has been taking place over the past months.  As part of that process, the Government has declassified in part and released numerous documents.  *See* http://icontherecord.tumblr.com.  At this time, more documents and information remain subject to review, including in response to a Freedom of Information Act request brought by the *Jewel* plaintiffs' counsel, Electronic Frontier Foundation.  *EFF v. DOJ*, Case No. 4:11-cv-05221-YGR (N.D. Cal.).

Contrary to Plaintiffs' assertion, the Government's review of its state secrets privilege assertion in light of declassification decisions is not a matter of "re-injecting" this issue or seeking reconsideration of a prior decision.  The Government's state secrets privilege assertion relates directly to the issue of standing and, specifically, to the question identified by the Court as to whether standing can be established without harm to national security.  For example, the privilege assertion encompasses facts concerning whether particular plaintiffs have been subjected to alleged NSA surveillance activities – facts necessary for plaintiffs to establish their standing.  It is Plaintiffs' burden to establish their standing for any and all claims as a factual matter, including whether they are "aggrieved persons" as defined by FISA (*i.e.* persons who were the target or subject

37

to surveillance), without harm to national security.  The Government disagrees with Plaintiffs' contention that they need only show "untargeted mass surveillance" to prove their standing and, in further briefing requested by the Court, would address whether and to what extent still properly privileged state secrets would be at risk of disclosure or required for Plaintiffs to establish their standing and "aggrieved" status for purposes of invoking § 1806(f) procedures.   Indeed, the Government anticipates that information that would be required for Plaintiffs to establish their standing will remain properly classified and subject to the state secrets privilege.  Thus, the very issue on which the Court has requested briefing – the impact of declassification decisions – will bear directly on Plaintiffs' ability to establish their standing.[4]

Rather than fully addressing Plaintiffs' legal arguments as to when and how standing may be established in this Case Management Report, the Government proposes that this issue be briefed as the Court has requested.  For now, the Government sets forth three points in reply to Plaintiffs' position on the order of briefing on standing.

First, in a decision by then-Chief Judge Walker on the question of whether FISA displaces the state secrets privilege – a decision on which this Court relied in making its FISA displacement ruling, *see* July 23 Order at 12, 15 – the court held that a plaintiff must first established that they are "aggrieved" as defined by the FISA before § 1806(f) procedures would apply to the case.  *See In re N.S.A. Telecommunications Records Litig.* 564 F. Supp. 2d 1109, 1134 (N.D. Cal. 2008) ("As the court reads section 1806(f), a litigant must first establish himself as an "aggrieved person" before seeking

---

[4]  Accordingly, any renewed state secrets privilege assertion would not be a "motion to reconsider" as Plaintiffs' contend, but, rather, would be offered in compliance with the Court's request that the Government brief the impact of recent declassification decisions and address the national security concerns related to establishing standing.  In addition, any renewed privilege assertion would be needed to provide a more current record for any appellate review in this case.  And, contrary to Plaintiffs' contention, until a final determination on whether the privileged has been displaced, it remains an issue in this case.

to make a "motion or request * * * to discover or obtain applications or orders or other materials relating to electronic surveillance [etc].").  Although the Government disagreed with the court's holding in that (and other subsequent) decisions, Government Defendants' proposal that Plaintiffs address their standing now is consistent with Judge Walker's initial ruling, since only an "aggrieved" person as defined by FISA can invoke § 1806(f).  *See* 50 U.S.C. §1806(f).   Contrary to Plaintiffs' contention, their "aggrieved" status for purposes of FISA has not been adjudicated.

Second, the Ninth Circuit held in the *Jeppesen* case that the issue of whether harm to national security would result from proceeding in litigation should properly be addressed before further proceedings in the case.  *See Mohamed v. Jeppesen Dataplan, Inc.* 614 F.3d 1070, 1083 (9th Cir. 2010); *see also* July 23 Order at 9.

Third, Plaintiffs propose to file a motion for partial summary judgment by December 20, 2013 that seeks to establish their standing as to at least one of the constitutional claims (under the Fourth Amendment).  *See supra*.  Government Defendants believe standing should be addressed for all claims, because there is no sound reason to address standing in piecemeal fashion, and because the same national security concerns may foreclose proceeding as to any and all claims.  Moreover, Government Defendants should not be foreclosed from bringing their own motion with respect to standing in response to Plaintiffs' motion.   Accordingly, after Plaintiffs bring their motion, the Government would respond with its own cross-motion and thereby address the issues identified by the Court for further briefing.

For these reasons, Government Defendants believe that the additional issues to be briefed – the scope of displacement of the state secrets privilege by § 1806(f), Plaintiffs' ability to establish their standing without harming national security, and the impact of declassification on the Government's state secrets privilege assertion – are interwoven. A briefing schedule that reflects the interrelatedness of the issues would promote judicial

economy and the efficient resolution of the issues.[5]

Accordingly, Government Defendants propose that these issues be briefed as follows, in both substance and timing:

Substance of Briefing:

1.      Plaintiffs file a combined brief addressing the scope of § 1806 preemption on the state secrets privilege with respect to Plaintiffs' constitutional claims (if necessary after clarification of the issue at the Case Management Conference) and their proposed motion for partial summary judgment addressing their ability to establish standing to sue with respect to their Fourth Amendment claim and all other claims without resulting in impermissible damage to ongoing national security.  In this brief, Plaintiffs would set forth facts they contend are publicly available to establish their standing to sue for their statutory claims and their constitutional claims, should the Court find that the latter claims may proceed.  Because it is Plaintiffs' burden to establish their standing, and because they have advanced the FISA preemption theory, Government Defendants contend that Plaintiffs should file the first brief on these issues, and Plaintiffs have already proposed to do so with respect to the Fourth Amendment claim.

2.      Government Defendants would file a responsive brief on both issues – that is, the scope of § 1806 preemption issue (if necessary) and Plaintiffs' ability to establish standing without harm to national security – and any cross-motion.  In conjunction with this brief, Government Defendants would respond to the Court's request for briefing on

---

[5]  Finally, the Government notes that, following the conclusion of the additional briefing, should the Court order the disclosure of privileged information to Plaintiffs in a § 1806(f) proceeding, or undertake proceedings that would risk or result in the disclosure of privileged information, interlocutory review may be appropriate or required.  *See* 50 U.S.C. § 1806(h) (district court orders "requiring review or granting disclosure of applications, orders, or other materials relating to a surveillance shall be final orders"); *In re Copley Press, Inc.*, 518 F.3d 1022, 1025-26 (9th Cir. 2008) ("Secrecy is a one-way street: Once information is published [or disclosed], it cannot be made secret again," and thus holding that the court of appeals has jurisdiction under the collateral order doctrine to hear interlocutory appeal from order unsealing documents).  For this reason as well, further proceedings under § 1806(f) should await a determination as to whether Plaintiffs can establish their standing without harm to national security.

the impact of declassification decisions on the protection of classified information

relevant to the case, submit any renewed state secrets privilege assertion, and set forth

argument on the impact of a renewed assertion on further proceedings in the case.

3.  Plaintiffs would file a reply and opposition brief on both issues.

4.  Government Defendants would file a reply brief to Plaintiffs' response to

Government Defendants' position on the impact of declassification on this case and any

renewed state secrets privilege assertion, as well as in response to argument about the

impact of any remaining privilege assertion on this case.

Timing of Briefing:

For the reasons discussed above, Government Defendants' proposed briefing

schedule is based in part on the Government's ongoing declassification review process

and deadlines in FOIA cases related to NSA surveillance.  Government Defendants

respectfully request that the briefing schedule entered here allow them time to incorporate

decisions made in conjunction with the ongoing declassification review process and

current production deadlines in the FOIA cases.  In particular, the court in the *EFF* FOIA

case in this district has ordered production of all responsive, non-exempt records by

October 31, 2013.  *EFF v. DOJ*, Case No. 4:11-cv-05221-YGR, September 6, 2013 Order

(ECF No. 64).  Plaintiffs acknowledge in their Statement that additional disclosures in

that FOIA case will be forthcoming.  Pls.' Statement at ¶ 8(A) (discovery).  Government

Defendants believe this approach would ensure that information provided to the Court in

response to the second briefing topic is the most current.  Government Defendants also

believe it would benefit Plaintiffs to wait to file their initial brief until the October 31

FOIA deadline has passed so that they have knowledge of any additional declassified

facts with which to attempt to establish their standing.  With these considerations in

mind, Government Defendants propose the following briefing schedule corresponding to

the briefing described above:

Plaintiffs' opening brief and motion due December 20, 2013

Government Defendants' response brief and any cross motion due January 31, 2014

Plaintiffs' reply brief and opposition due February 28, 2014

Government Defendants' reply to any opposition  due March 21,  2014.

**GOVERNMENT DEFENDANTS' SPECIFIC RESPONSES TO PLAINTIFFS' STATEMENTS:**

For the reasons stated above, Government Defendants believe that Plaintiffs' proposed course for proceeding is not responsive to the issues identified by the Court and is highly premature until Plaintiffs' standing to proceed can be established without harm to national security.  Indeed, Plaintiffs' statement does not address the topics identified by the Court except to oppose further briefing on the FISA displacement issue.  The Government Defendants nonetheless respond, where appropriate, as follows to the individual items in Plaintiffs' Statements:

1.      Jurisdiction and Service:  Government Defendants do not challenge service of process, but with respect to the Court's subject matter jurisdiction do contend that Plaintiffs cannot establish standing without risk of harm to national security.

2.      Facts:  Government Defendants do not dispute that Plaintiffs have raised the allegations identified in this section.  Government Defendants do not believe this report is the appropriate place to brief the impact of recent disclosures and declassifications on Plaintiffs' ability to establish their standing without causing harm to national security or on the Government's state secrets privilege assertion.

3.      Legal Issues:  Government Defendants do not dispute the Plaintiffs' lists of the claims that remain after the Court's July 23, 2013 Order and before decision on the issues on which the Court requested additional briefing.  Government Defendants disagree with Plaintiffs' characterization of "other threshold legal issues" notably because it omits mention of the legal issues on which the Court ordered briefing.  We refer the Court to Government Defendants' Statement above for a discussion of those issues.

4.      Motions:  Government Defendants disagree with Plaintiffs' contention that the Court's July 23, 2013 Order "fully resolved" all of the issues before the Court.  The Court's request for additional briefing at the conclusion of that Order speaks for itself. Government Defendants also disagree with many of the statements in this section but do not believe this is the appropriate place to brief these issues.  In connection with the issues identified for further briefing, Government Defendants anticipate the possibility of filing a further dispositive motion addressing Plaintiffs' inability to establish standing without harm to national security.

5.      Amendment of Pleadings:  Government Defendants do not disagree with Plaintiffs' statements on this issue.

6.      Evidence Preservation:  Government Defendants agree that the Court's Orders of November 6, 2007, and November 16, 2009 remain operative.

7-9      Disclosures, Discovery, and Class Actions:  Government Defendants believe that Plaintiffs' statements on these issues are premature, for the reasons stated above.  As the Court's July 23, 2013 Order contemplated, (i) Plaintiffs must establish their standing for any and all claims without harm to national security; (ii) Government Defendants must submit briefing on the impact of declassification decisions on its state secrets privilege assertion and protection of national security information at issue in this case; and (iii) the Court should determine the impact of FISA preemption on Plaintiffs' constitutional claims.  These issues should be resolved before any discovery or any attempt to rely on § 1806(f) in discovery proceedings.  As noted above, appellate review of the § 1806(f) preemption issue should occur before any actual disclosures of privileged information are at risk or required.  In addition, until the question of whether § 1806(f) displaces the state secrets privilege is finally resolved in this litigation, Government Defendants cannot be compelled to waive their right to assert applicable privileges under non-statutory law.

Plaintiffs' attempt to rely on the Government's positions in the *ACLU v. Clapper*

suit in the Southern District of New York to justify any further proceedings at this stage in this case is well off the mark.  *See* ¶ 8(A).  The *ACLU* case presents a challenge to an acknowledged activity approved by the Foreign Intelligence Surveillance Court that is narrower than the allegations at issue here and, in any event, the Government has challenged the plaintiffs' standing in *ACLU* and also argued that the plaintiffs there have failed to state a claim.  The Government has also reserved the right in that case to contest the plaintiffs' ability to prove their allegations without implicating protected state secrets.  Defs' Mot. to Dismiss at 7 n.4 (ECF No. 33).

Government Defendants agree that the parties met and conferred on September 17, 2013, about this joint statement, but disagree that that meet-and-confer was pursuant to Rule 26.

10.     Related Cases:  Government Defendants agree with Plaintiffs' statements on this issue.

11.     Relief:  Government Defendants do not agree that Plaintiffs are entitled to any relief.

12-14   Settlement and ADR, Consent to Magistrate Judge, and Other References:  Government Defendants agree with Plaintiffs' statements on these issues.

15.     Narrowing of Issues:  Government Defendants disagree with Plaintiffs' statements on this issue.  Government Defendants contend that the issues identified by the Court for additional briefing have the potential to further narrow the issues in the case, and may dispose of some or all claims if Plaintiffs are unable to demonstrate that standing can be established without harm to national security.

16.     Expedited Trial Procedure:  Government Defendants agree with Plaintiffs' statement on this issue.

17.     Scheduling:  Government Defendants disagree with Plaintiffs' statements on this issue and refer the Court to Government Defendants' proposed briefing schedule above.

18.     Trial:  Government Defendants agree that issues may be resolved on summary judgment, including Plaintiffs' inability to establish standing without harm to national security.  Government Defendants disagree that Plaintiffs are entitled to a jury trial for the claims against Government Defendants.

19.     Disclosure of Non-party Interested Entities or Persons:  Civil Local Rule 3-16 is inapplicable to governmental entities or agencies.

20.     Other issues:  Government Defendants disagree with Plaintiffs' request that the Court order Government Defendants to disclose to Plaintiffs and on the public record those portions of its state secrets privilege assertion that are no longer secret.  The Court has already asked for briefing on the impact of declassification decisions on the Government's privilege assertion, and that is the appropriate mechanism for addressing the issue raised by Plaintiffs.   Also, the Government has set forth on the public record a description of its privilege assertion, and would do so again for any renewed, revised assertion.  Plaintiffs provide no support for their request for access to materials that have been filed solely for *in camera*, *ex parte* review by the Court in support of a privilege assertion, and Government Defendants are aware of no support or precedent for such a request applicable to the state secrets privilege.  If necessary, this issue can be addressed in the further briefing requested by the Court.

* * *

In sum, Government Defendants believe the parties should now proceed to address the issues as to which the Court has requested further briefing, which continue to

1    concern significant threshold issues as to whether and how this case can proceed.[6]

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21    _____

22    [6]  For all of the reasons discussed above, as well as those discussed below in the
     Individual Capacity Defendants' Statement, Government Defendants agree that the

23    individual capacity claims in *Jewel* and *Shubert* should be stayed pending the Court's
     resolution of the issues for which it has ordered further briefing.  As Government

24    Defendants explained in their brief supporting the individual capacity defendants' prior
     request to stay the individual capacity claims in *Jewel*, the Government has not

25    authorized the individual capacity defendants, or anyone else, to use the information
     subject to its state secrets privilege assertion, including in the course of any proceeding

26    under 50 U.S.C. § 1806(f).  *See Jewel* ECF No. 45, Gov't Defs.' Statement (Sept. 3,
     2009).  Because that information is necessary for the individual capacity defendants to

27    assert a qualified immunity defense, the Court should resolve the matters for which it has
     ordered further briefing before injecting personal capacity claims into the litigation.

28

**THE INDIVIDUAL CAPACITY DEFENDANTS' STATEMENT:**

The individual capacity defendants in *Jewel* and *Shubert* adopt the Government Defendants' Statement in its entirety.[7]  Here we separately address the individual capacity claims in both cases.

For the reasons summarized below, the individual capacity claims in *Jewel* and *Shubert* should be held in abeyance until the Court has ruled on the matters for which it has ordered further briefing.  In short, trying to brief those claims at the same time as the parties are briefing, and the Court is deciding, the issues identified in the Court's Order of July 23, 2013, would be highly inefficient, possibly unnecessary, and extremely prejudicial to the individual defendants.

Many of the plaintiffs' individual capacity claims are identical to, and all are predicated on the same set of operative allegations as, their claims against the Government Defendants.  *See generally Jewel* ECF No. 1, Pls.' Compl. (Sept. 18, 2008);

---

[7]  Altogether, the plaintiffs in *Jewel* and *Shubert* have asserted eighteen claims against ten current and former government officials in their individual capacity.  The individual capacity defendants in *Jewel* are:  former President George W. Bush; former Vice-President Richard B. Cheney; David Addington, chief of staff to former Vice-President Cheney; former Directors of National Intelligence John M. McConnell and John D. Negroponte; current NSA Director Keith B. Alexander and former NSA Director Michael V. Hayden; and former Attorneys General Michael B. Mukasey, Alberto R. Gonzales, and John D. Ashcroft.  The individual capacity defendants in *Shubert* are:  NSA Director Alexander, former NSA Director Hayden, and former Attorneys General Gonzales and Ashcroft.

47

Individual Capacity Defendants' Statement

*Shubert* ECF No. 771, Pls.' Sec. Am. Compl. (May 8, 2012).[8]  As a result, the Court's

resolution of the issues yet to be briefed—the scope of FISA preemption, whether the

plaintiffs can establish standing, and the effect of recent disclosures on the risk to

national security—will necessarily and directly affect how, if at all, the individual

capacity claims are litigated.

For example, the Court has tasked the plaintiffs "with the burden to establish

standing to sue without resulting in impermissible damage to ongoing national security

efforts," given that "the potential risk to national security may still be too great to pursue

confirmation of the existence or facts relating to the scope of the alleged governmental

Program."  July 23, 2013 Order at 24-25.  As indicated above, the Government

Defendants anticipate bringing a further dispositive motion challenging the plaintiffs'

ability to establish standing without harm to national security as to all claims against all

defendants in both *Jewel* and *Shubert*.  If the Court ultimately determines that the

plaintiffs cannot prove standing—because "the potential risk to national security" in

disclosing the evidence necessary to prove standing would indeed be too great—then that

determination would require the dismissal of *all* of the plaintiffs' claims, including their

individual capacity claims.  *See*, *e.g.*, *Jewel* ECF No. 102, Gov't Defs.' Sec. Mot. to

---

[8]  The *Jewel* and *Shubert* plaintiffs allege similar claims for damages against the
individual capacity defendants under the Fourth Amendment, FISA, the Wiretap Act, and
the Stored Communications Act; the *Jewel* plaintiffs also include in their complaint a
*Bivens* claim under the First Amendment, and seek equitable relief from some of the
individual capacity defendants in all of their constitutional and statutory causes of action,
including those brought under the Constitution's separation of powers and the
Administrative Procedure Act ("APA").  *See Jewel* Compl. ¶¶ 108-265; *Shubert* Sec.
Am. Compl. ¶¶ 103-118.  In their statement above, however, the *Jewel* plaintiffs appear
to have abandoned their APA claim altogether against any individual capacity defendant,
as well as their requests for equitable relief against any individual capacity defendant
except NSA Director Alexander.  As to the latter, the Court already has ruled that it is
improper to sue government employees in their personal capacity for equitable relief.  *See*
July 23, 2103 Order at 23 & n.3.

Individual Capacity Defendants' Statement

Dismiss & for Summ. J. (Sept. 12, 2012), at 14-15, 25-26; *Shubert* ECF No. 102, Gov't

Defs.' Third Mot. to Dismiss & for Summ. J. (Sept. 28, 2012), at 6-7.

Likewise, if the Court were to agree with the Government Defendants that the

state secrets privilege remains a valid basis for dismissing the plaintiffs' constitutional

claims, that would also foreclose plaintiffs' constitutional claims against the individual

capacity defendants.[9]   The Court specifically reserved ruling on "the *Shubert* Plaintiffs'

fourth cause of action for violation of the Fourth Amendment," and the *Jewel* plaintiffs'

claims under the First and Fourth Amendments and for violation of the Constitution's

separation of powers, as they are the claims that are subject to the Court's preemption

ruling.  *See* July 23, 2013 Order at 3.  The plaintiffs have brought these exact same claims

and causes of action against the individual capacity defendants (some of them are in fact

brought against the official capacity defendants in the exact same counts).  *See Jewel*

Compl. ¶¶ 108-42, 262-65; *Shubert* Sec. Am. Compl. ¶¶ 115-18.

In short, the Court has determined that it needs additional briefing on standing and

the scope of FISA preemption before it can decide how, if at all, these cases should

proceed.  As a matter of fact, logic, and the law, the briefing on those issues will address

the viability of the plaintiffs' individual capacity claims.  It thus would be extraordinarily

wasteful to have several additional but separate and simultaneous rounds of briefing on

---

[9]   As the Government Defendants note in their Statement above, the issue that the Court identified concerning the scope of FISA preemption is better understood as focusing on whether FISA has displaced the state secrets privilege as to the constitutional claims, rather than whether FISA bars the constitutional claims entirely.  *See supra* note 3 and accompanying text.  But even assuming the Court were to find that "the scope of FISA preemption . . . foreclose[s] altogether the substantive constitutional claims," July 23, 2013 Order at 24, that would still require the dismissal of *all* of the plaintiffs' constitutional claims, including those against the individual capacity defendants.

Individual Capacity Defendants' Statement

dispositive motions regarding the individual capacity claims before the Court-ordered

briefing is completed and resolved.[10]

More than that, briefing the individual capacity claims at this time would be

inherently prejudicial to the individual capacity defendants, as it would leave them

severely hamstrung in their ability to raise qualified immunity, their most important and

potent affirmative defense.  Those defendants previously moved for a stay of the claims

against them in *Jewel* because the Government's privilege assertions prevents them from

using any of the privileged information to support complete qualified immunity

arguments as part of a threshold motion for summary judgment.  *See Jewel* ECF No. 32,

Individual Capacity Defs.' Mot. (July 10, 2009); *Jewel* ECF No. 44, Individual Capacity

_____

[10]  For many of the same reasons, we consider the Court's prior stay of the individual
capacity claims in *Jewel* to still be in effect.  Pursuant to a stipulation of the parties, the
Court previously ordered that "dispositive motions by the individual capacity defendants
concerning the claims against them need not be submitted until after resolution of any
dispositive motion by the Government Defendants sued in their official capacities."
*Jewel* ECF No. 93.  It further stated that "[t]he deadline for the individual capacity
defendants to respond to the complaint is hereby extended until 60 days after the issuance
of an order by this Court deciding the parties' cross-motions."  *Id.*  By expressly
reserving a ruling on the Government Defendants' motion as to the plaintiffs' non-
statutory claims, *see* July 23, 2013 Order at 3, the Court has not yet resolved or decided
the parties' cross-motions.  In *Shubert*, counsel for the plaintiffs and the individual
capacity defendants informally agreed to postpone a response to any individual capacity
claims in *Shubert* until the Court had ruled on the United States' state secrets assertion.
Given that *Shubert* and *Jewel* have proceeded in tandem throughout this litigation, and
given the issues still to be briefed and considered, including an anticipated renewal of the
state secrets privilege that would prevent the plaintiffs from establishing their standing,
the Court should formally stay the individual capacity claims in *Shubert*, and reaffirm the
stay in *Jewel*, pending its resolution of the remainder of the government defendants'
dispositive motion and the other issues identified in its Order of July 23, 2013.

50

Individual Capacity Defendants' Statement

Defs.' Reply Br. (Sept. 3, 2009).[11]  That remains equally true today.  The Court has

directed further briefing on the privilege assertion as well as the plaintiffs' ability to

establish standing without harm to national security, and the Government Defendants

anticipate that information necessary to litigating these cases will remain subject to the

state secrets privilege.  At the very least, the Court will need to assess whether "the recent

disclosure of the government's continuing surveillance activities" affects the

Government's assertion that confirming "the existence or facts relating to the scope of the

alleged governmental Program" would pose a risk to national security.  July 23, 2013

Order at 25.

        The bottom line for the individual capacity defendants is that they still cannot

present a complete defense until the issues raised by the Court are fully resolved.  In

these circumstances, requiring the individual defendants to respond to the claims against

them while the issues identified in the Court's July 23, 2013 Order remain unresolved

would force them to forego an essential personal defense and deprive them of the primary

benefit of that defense, which is to be freed of the burdens of litigation at the earliest

possible stage.  *See*, *e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (stating that "basic

thrust of the qualified-immunity doctrine is to free officials from the concerns of

litigation"); *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987) (explaining that

---

[11]  Those briefs explore in detail several related reasons why a stay of the individual
capacity claims is necessary pending the Court's resolution of the government's
dispositive motion.  Many of those reasons still apply to the current procedural posture of
the *Jewel* and *Shubert* cases.  Rather than duplicate that discussion here, though, we
respectfully refer the Court to that briefing.  That said, if the Court were at all inclined to
lift the stay of the individual capacity claims at this point in the litigation, we would
respectfully request the opportunity to file a formal motion to stay and brief the matter
further.

Individual Capacity Defendants' Statement

individual capacity claims against government officials should "be resolved prior to discovery and on summary judgment if possible").

For all of these reasons, as well as those discussed in the individual capacity defendants' prior briefing on this subject, *see Jewel* ECF Nos. 32, 44, the Court should stay the individual capacity claims in *Jewel* and *Shubert* pending its resolution of the issues identified in its Order of July 23, 2013.  The individual capacity defendants agree with the *Jewel* plaintiffs that the Court also should extend the deadline for the substitution of deceased plaintiff Gregory Hicks with respect to Mr. Hicks' claims against the individual capacity defendants, so that it coincides with the stay of the individual capacity claims themselves.

**INDIVIDUAL CAPACITY DEFENDANTS SPECIFIC RESPONSES TO THE PLAINTIFFS' STATEMENTS:**

For the foregoing reasons, as well as those discussed in the Government Defendants' Statement, the individual capacity defendants believe the items included in the Plaintiffs' Statement are premature in general, but particularly so with respect to the individual capacity claims.  Out of an abundance of caution, however, the individual capacity defendants respond as follows to those individual items:

1.      Jurisdiction and Service:  The individual capacity defendants do not challenge service of process.  The individual capacity defendants further hereby adopt the Government Defendants' response to this portion of the Plaintiffs' Statement.

2.      Facts:  The individual capacity defendants hereby adopt the Government Defendants' response to this portion of the Plaintiffs' Statement.

3.      Legal Issues:  As noted above, the *Jewel* plaintiffs appear to have abandoned certain claims against some of the individual capacity defendants.  *See supra* note 7.  The

Individual Capacity Defendants' Statement

individual capacity defendants do not oppose the dismissal of that portion of the *Jewel* complaint.  The individual capacity defendants disagree with the plaintiffs' omission of the legal issues the Court ordered briefing on and refers the Court to the Government Defendants' Statement above for a discussion of those issues.

4.       Motions:  The individual capacity defendants hereby adopt the Government Defendants' response to this portion of the Plaintiffs' Statement.  In addition, and as noted above, the individual capacity defendants would file a formal motion to stay the individual capacity claims if the Court desired further briefing on that subject.

5.       Amendment of Pleadings:  The individual capacity defendants do not disagree with the Plaintiffs' Statement on this issue.

6.       Evidence Preservation:  The individual capacity defendants hereby adopt the Government Defendants' response to this portion of the Plaintiffs' Statement.

7-9.     Disclosures, Discovery, and Class Actions:  The individual capacity defendants hereby adopt the Government Defendants' response to this portion of the Plaintiffs' Statement.  In addition, proceeding with these matters as to the individual capacity defendants would be particularly inappropriate for the reasons discussed above in the Individual Capacity Defendants' Statement.

10.      Related Cases:  The individual capacity defendants do not disagree with the Plaintiffs' Statement on this issue.

11.      Relief:  The individual capacity defendants do not agree that the plaintiffs are entitled to any relief.

Individual Capacity Defendants' Statement

12-14.  <u>Settlement and ADR, Consent to Magistrate Judge, and Other References</u>:  The individual capacity defendants do not disagree with the Plaintiffs' Statement on this issue.

15.      <u>Narrowing of Issues</u>:  The individual capacity defendants hereby adopt the Government Defendants' response to this portion of the Plaintiffs' Statement.

16.      <u>Expedited Trial Procedure</u>:  The individual capacity defendants do not disagree with the Plaintiffs' Statement on this issue.

17.      <u>Scheduling</u>:  The individual capacity defendants hereby adopt the Government Defendants' response to this portion of the Plaintiffs' Statement.  In addition, and as indicated above, the individual capacity claims should remain stayed pending the Court's resolution of the matters identified in its Order of July 23, 2013, and those identified above in the Government Defendants' Statement.

18.      <u>Trial</u>:  The individual capacity defendants agree that many, if not all, issues will be resolved on summary judgment.

19.      <u>Disclosure of Non-party Interested Entities or Persons</u>:  Civil Local Rule 3-16 is inapplicable to governmental entities or agencies.

20.      <u>Other issues</u>:  The individual capacity defendants hereby adopt the Government Defendants' response to this portion of the Plaintiffs' Statement.

Dated:  September 20, 2013                    By:

**COUNSEL FOR THE *JEWEL* PLAINTIFFS:**

_____  s/ *Richard R. Wiebe*  _____

ELECTRONIC FRONTIER FOUNDATION
CINDY COHN (SBN 145997)
LEE TIEN (SBN 148216)
KURT OPSAHL (SBN 191303)
JAMES S. TYRE (SBN 083117)
MARK RUMOLD (SBN 279060)

KEKER & VAN NEST, LLP
RACHAEL E. MENY (SBN 178514)
PAULA L. BLIZZARD (SBN 207920)
MICHAEL S. KWUN (SBN 198945
BENJAMIN BERKOWITZ (SBN 244441)
AUDREY WALTON-HADLOCK (SBN 250574)
JUSTINA K. SESSIONS (SBN 270914)

LAW OFFICE OF RICHARD R. WIEBE
RICHARD R. WIEBE (SBN 121156)

THE MOORE LAW GROUP
THOMAS E. MOORE III (SBN 115107)

LAW OFFICE OF ARAM ANTARAMIAN
ARAM ANTARAMIAN (SBN 239070)

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER
Case Nos. 07-cv-0693-JSW; 08-cv-4373-JSW

**COUNSEL FOR THE *SHUBERT* PLAINTIFFS:**

_____s/ Ilann M. Maazel_____

Ilann M. Maazel (*pro hac vice*)
Matthew D. Brinckerhoff (*pro hac vice*)
**EMERY CELLI BRINCKERHOFF & ABADY LLP**
75 Rockefeller Plaza, 20th Floor
New York, New York 10019
Telephone: (212) 763-5000
Facsimile:  (212) 763-5001

**COUNSEL FOR THE GOVERNMENT ENTITY AND OFFICIAL CAPACITY DEFENDANTS:**

STUART F. DELERY
Assistant Attorney General
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Deputy Branch Director
tony.coppolino@usdoj.gov
JAMES J. GILLIGAN
Special Litigation Counsel
james.gilligan@usdoj.gov

_____s/ Marcia Berman_____
MARCIA BERMAN
Senior Trial Counsel
marcia.berman@usdoj.gov
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, NW, Rm. 7132
Washington, D.C. 20001
Phone: (202) 514-2205; Fax: (202) 616-8470

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER
Case Nos. 07-cv-0693-JSW; 08-cv-4373-JSW

**COUNSEL FOR THE PERSONAL CAPACITY DEFENDANTS:**

BRIAN HAUCK
Deputy Assistant Attorney General

RUPA BHATTACHARYYA
Director, Torts Branch

/s/ *James R. Whitman*
JAMES R. WHITMAN (D.C. Bar No. 987694)
Senior Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
P.O. Box 7146, Ben Franklin Station
Washington, DC 20044-7146
Tel: (202) 616-4169
Fax: (202) 616-4314
james.whitman@usdoj.gov

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER
Case Nos. 07-cv-0693-JSW; 08-cv-4373-JSW

# **CASE MANAGEMENT ORDER**

     IT IS SO ORDERED.

Dated: _____

                                              _____

                                              HON. JEFFREY S. WHITE

## CIVIL L.R. 5.1 CERTIFICATION

I attest that I have obtained the concurrence of Ilann Maazel (counsel for the *Shubert* defendants), Marcia Berman (counsel for the government entity and official capacity defendants) and James Whitman (counsel for the personal capacity defendants), in the filing of this document.


/s/ Richard R. Wiebe

RICHARD R. WIEBE

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER
Case Nos. 07-cv-0693-JSW; 08-cv-4373-JSW