STUART F. DELERY
Assistant Attorney General
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Deputy Branch Director
JAMES J. GILLIGAN
Special Litigation Counsel
MARCIA BERMAN
Senior Trial Counsel
marcia.berman@usdoj.gov
BRYAN DEARINGER
Trial Attorney
RODNEY PATTON
Trial Attorney
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, NW, Rm. 7132
Washington, D.C. 20001
Phone: (202) 514-2205; Fax: (202) 616-8470

*Attorneys for the Government Defendants*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| CAROLYN JEWEL, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL SECURITY AGENCY, *et al.*, <br><br> Defendants. | Case No. C-08-4373-JSW |
| VIRGINIA SHUBERT, *et al.,* <br><br> Plaintiffs, <br><br> v. <br><br> BARACK OBAMA, President of the United States, *et al.* <br><br> Defendants. | Case No. C-07-0693-JSW <br><br> **GOVERNMENT DEFENDANTS' SUPPLEMENTAL BRIEF ON THRESHOLD LEGAL ISSUES AS ORDERED BY THE COURT AT THE SEPTEMBER 27, 2013, STATUS CONFERENCE** <br><br> No Hearing Scheduled <br> Courtroom 11 – 19th Floor <br> Judge Jeffrey S. White |

**INTRODUCTION**

At the conclusion of its July 28, 2013, ruling on the Government Defendants' motion to dismiss and for summary judgment, and Plaintiffs' cross-motion for partial summary judgment, the Court ordered the parties to provide supplemental briefing on a number of threshold legal issues, and further refined the statement of those issues at the September 27, 2013 case management conference. As directed by the Court, Government Defendants submit this brief on the following issues: (1) whether section 1806(f) of the Foreign Intelligence Surveillance Act ("FISA") preempts the application of the state secrets privilege to Plaintiffs' constitutional claims; (2) whether the Court must follow section 1806(f)'s procedural mechanisms when adjudicating Plaintiffs' constitutional claims; and (3) the impact of recent disclosures about National Security Agency ("NSA") intelligence-gathering activities on the Government Defendants' assertion of the risks to national security presented by this case.

As to the first issue, while the Government Defendants do not believe that FISA displaces the state secrets privilege as to any of Plaintiffs' claims, the Government does not contest that the reasoning by which the Court concluded that section 1806(f) preempts application of the privilege to Plaintiffs' statutory claims would apply equally to Plaintiffs' constitutional claims. The Government Defendants' position on the second issue is that, as to Plaintiffs' remaining statutory and constitutional claims, the provisions of section 1806(f) apply only if Plaintiffs can first demonstrate, without the benefit of national security information over which the Government has asserted the state secrets privilege, that they are "aggrieved persons" challenging allegedly unlawful "electronic surveillance"—requirements imposed by the terms of section 1806(f) itself. In addition, even if these pre-requisites are met, the Court should treat section 1806(f), according to its terms, as a tool made available to the Attorney General, to be invoked at his discretion, allowing the Government to seek *ex parte* consideration of classified information where production of surveillance information sought by a plaintiff "would harm the national security of the United States." *Id.* § 1806(f). In no event should the Court, even if proceeding under section 1806(f), risk or require disclosures of classified information that could be harmful to national security.

Regarding the third issue, the Director of National Intelligence ("DNI") has announced the declassification of the existence of certain NSA intelligence-gathering activities, authorized by President George W. Bush beginning in October 2001, that are at issue in this litigation. The Government Defendants had previously asserted the state secrets privilege in this litigation over the existence of those activities under presidential authorization, as well as the subsequent transition of these activities to the supervision of the Foreign Intelligence Surveillance Court (FISC). As explained in the accompanying Public Declaration of James R. Clapper, Director of National Intelligence ("Public DNI Decl."), the Government continues to protect certain still-classified information about these activities in order to protect sensitive intelligence sources and methods, such as particular targets and subjects of surveillance, methods of collecting and analyzing intelligence information, and whether particular telecommunications carriers have assisted the NSA in intelligence activities.[1]

## PROCEDURAL BACKGROUND

Plaintiffs in these cases allege that following the September 11, 2001, attacks the NSA, acting under authority of then-President Bush, undertook indiscriminate warrantless surveillance of domestic communications and that this alleged "dragnet" surveillance encompassed collection

---

[1] The Government's privilege assertion has been reviewed and approved pursuant to the Attorney General's 2009 policy concerning the defense of state secrets privilege assertions by the Department of Justice. Under that policy, the Department of Justice will defend an assertion of the state secrets privilege in litigation only when "necessary to protect against the risk of significant harm to national security." Policies and Procedures Governing Invocation of the State Secrets Privilege at 1, available at http://www.justice.gov/opa/documents/state-secret-privileges.pdf. Moreover, "[t]he Department will not defend an invocation of the privilege in order to: (i) conceal violations of the law, inefficiency, or administrative error; (ii) prevent embarrassment to a person, organization, or agency of the United States government; (iii) restrain competition; or (iv) prevent or delay the release of information the release of which would not reasonably be expected to cause significant harm to national security." *Id*. at 2. The Attorney General's policy also establishes detailed internal procedures for review of a proposed assertion of the state secrets privilege in a particular case. Those procedures require submissions by the relevant government departments or agencies specifying "(i) the nature of the information that must be protected from unauthorized disclosure; (ii) the significant harm to national security that disclosure can reasonably be expected to cause; [and] (iii) the reason why unauthorized disclosure is reasonably likely to cause such harm." *Id*. The Department will defend an assertion of the privilege in court only with the personal approval of the Attorney General following review and recommendations from senior Department officials. *Id*. at 3.

of both the content of telephone and Internet communications as well the communication records of millions of Americans. *See, e.g., Jewel* Complaint ¶ 1, 7; *see also id*. ¶¶ 9-11; 73-75; 82-97. Plaintiffs claim that the alleged warrantless surveillance remains ongoing today, in violation then and now of their Constitutional rights, and federal statutes.   On September 12, 2012, the Government moved to dismiss or for summary judgment on all of Plaintiffs' claims, asserting that sovereign immunity barred litigation of Plaintiffs' statutory claims, and that the state secrets privilege required dismissal of the case in its entirety because attempting to litigate the matter to a judgment on the merits would present an unacceptable risk of disclosing state secrets.  *See* ECF No. 102.  The Government's privilege assertion encompassed (i) information concerning the specific nature of the terrorist threat posed by al Qa'ida and its affiliates and other threats to the United States; (ii) information necessary to adjudicate Plaintiffs' claims about alleged "dragnet" surveillance programs involving bulk collection of communications content and of telephony and Internet non-content information about communications (i.e., metadata); (iii) information that may tend to confirm or deny whether Plaintiffs have personally been subject to the collection of their communications content or records; and (iv) other information concerning NSA intelligence activities, sources, or methods necessary to adjudicate Plaintiffs' allegations that their particular alleged telecommunications providers have assisted the NSA as part of the challenged programs.

Plaintiffs cross-moved for partial summary judgment on the ground that the state secrets privilege is assertedly preempted by the procedure prescribed in FISA section 106, 50 U.S.C. § 1806(f) of the FISA, *see* ECF Nos. 83, 112, and the Court heard argument on the motions on December 14, 2012.  On July 8, 2013, the Court issued a decision and order on the parties' cross motions, reaching several conclusions therein, followed by an Amended Order on July 23, 2013 ("Amended Order").  ECF Nos. 148, 153.

First, the Court reviewed the Government's assertion of the state secrets privilege and concluded that the Government had properly invoked the privilege "with regard to significant evidence tending to confirm or negate the factual allegations in Plaintiffs' complaints." Amended Order at 11.  The Court held, however, that section 1806(f) preempts application of the state secrets privilege in these cases.  *See id.* at 12-15.  Turning to Plaintiffs' claims individually,

the Court dismissed all of Plaintiffs' FISA claims for lack of a waiver of sovereign immunity. *Id.* at 15-16. It also dismissed Plaintiffs' other statutory claims for injunctive relief, again finding no applicable waive of sovereign immunity, but concluded that sovereign immunity had been waived for Plaintiffs' money damages claims under the Wiretap Act and the Stored Communications Act. *Id.* at 16-24. The Court reserved ruling on the Government's motion with respect to Plaintiffs' constitutional claims, and ordered further briefing by the parties. *Id.* at 24.[2] Specifically, the Court stated that it would require further briefing regarding the scope of FISA preemption on Plaintiffs' constitutional claims, and the impact of recent disclosures about the NSA's telephony metadata program on the Government's assertion of the risk to national security of litigating Plaintiffs' claims in this case. *Id.* at 24-25.

Following the ruling in its Amended Order the Court held a status conference at which it refined the list of issues requiring further briefing, identifying four questions on which it wished to hear from the parties in order to resolve the "important threshold legal issues" in these cases. Transcript of Proceedings dated September 17, 2013 ("Tr.") at 5. These questions are:

1. Whether FISA preempts the application of the state secrets privilege to Plaintiffs' constitutional claims;

2. Whether the Court must follow FISA's procedural mechanisms when adjudicating the Plaintiffs' constitutional claims;

3. Assuming the state secrets privilege does not bar Plaintiffs' constitutional claims, and that 50 U.S.C. § 1806(f) does not bar Plaintiffs' constitutional claims, and that § 1806(f) provides the mechanism for review of submitted materials, whether Plaintiffs can carry their burden of establishing standing to sue "without resulting in impermissible damage to ongoing national security efforts," citing *Clapper v. Amnesty International USA*, 133 S. Ct. 1138, 1149 n.4 (2013); and

4. The impact of ongoing disclosures and declassification of the materials involving the Government's continuing surveillance activities on the Government Defendants' assertion of the risks to national security presented by this case.

*See* Tr. at 6-7.

---

[2] The Court has also stayed the claims against the personal capacity defendants, pursuant to the parties' stipulation. ECF No. 161 (Am. Minute Order of Sept. 27, 2013).

In accordance with the briefing schedule adopted by the Court at the September 17, 2013, status conference, *see* Amended Civil Minute Order, ECF No. 161, the Government Defendants address issues 1, 2, and 4 below.[3]

## DISCUSSION

### A. The Government Defendants Do Not Contest That the Rationale of the Court's Ruling on FISA Preemption of the State Secrets Privilege Would Apply Equally to Plaintiffs' Statutory and Constitutional Claims.

As to the first question on which the Court directed further briefing—whether FISA preempts application of the state secrets privilege to Plaintiffs' constitutional claims—the position of the Government Defendants is that while they do not believe that FISA displaces the state secrets privilege as to any of Plaintiffs' claims, the Government does not contend that the reasoning by which the Court concluded that section 1806(f) preempts application of the privilege would apply solely to Plaintiffs' statutory claims and not to their constitutional claims.

In its Amended Order, the Court concluded that FISA section 1806(f) displaces the state secrets privilege in cases challenging the legality of electronic surveillance, providing *ex parte* procedures "under which courts can consider national security evidence that the application of the state secrets privilege would otherwise summarily exclude." Amended Order at 12. The Court reasoned that under the terms of the statute as the Court construed them, section 1806(f) is the "exclusive procedure for reviewing sensitive surveillance materials gathered by the Executive under FISA and other surveillance statutes," and that the legislative history reflected, in the Court's view, a purpose on Congress's part "to formulate a balanced legislative solution to the national security problems raised in litigation over possibly unlawful executive surveillance programs. *Id.* at 13-14. The Court concluded that by enacting section 1806(f) Congress intended "to displace federal common law rules such as the state secrets privilege with regard to matters

---

[3] The Court also directed the Government Defendants to review their prior *ex parte* submissions of classified information in support of past assertions of the state secrets privilege in these cases, to determine the extent to which these materials, in light of recent disclosures about NSA intelligence programs, can be placed on the public record of this litigation. Tr. at 8-9. In accordance with the Court's instructions, the Government Defendants have prepared unclassified (redacted) versions of the classified DNI and NSA declarations submitted by the Government Defendants in support of their assertions of the state secrets privilege in 2007, 2009, and 2012, and filed them herewith.

within FISA's purview" and "'occupy the field through the establishment of a comprehensive regulatory program.'" *Id.* (quoting *City of Milwaukee v. Illinois,* 451 U.S. 304, 317 (1981)).

The Court directed the Government Defendants not to reargue their position to the contrary, and so they briefly note that they respectfully continue to disagree with the Court's analysis of this issue, and maintain that section 1806(f) does not displace the state secrets privilege as to either Plaintiffs' statutory or constitutional claims, because section 1806(f) does not speak clearly and directly to the application of the common law—the state secrets doctrine—in cases of this kind. *See City of Milwaukee,* 451 U.S. at 315; *Kasza v. Browner*, 133 F.3d 1159, 1167 (9th Cir. 1998). Likewise, nothing in FISA's text or legislative history provides any indication that Congress intended to override the Executive's long-recognized and constitutionally based ability to assert the state secrets privilege in litigation, or to override the process for doing so established by the Supreme Court in *United States v. Reynolds,* 345 U.S. 1 (1953). *See generally* Gov't Defs.' Second Mot. To Dismiss and for Summ. Judg., at 29-42 (ECF No. 102). The Government Defendants respectfully reserve their right to contest the Court's ruling on this issue as may later be necessary and appropriate.

That said, however, the Government Defendants see nothing in the Court's preemption analysis that distinguishes between claims challenging the lawfulness of electronic surveillance under statute, and claims based on the Constitution. Accordingly, the Government Defendants do not contest that the Court's analysis of the preemption issue would lead to the same result for Plaintiffs' constitutional claims as it does for their statutory claims.

> B.  **Even Under the Court's Reading, the Provisions of Section 1806(f) Apply Only if Plaintiffs Can First Prove That They Are "Aggrieved Persons" Challenging "Electronic Surveillance," and Can Litigate Their Claims Without Risking Harm to National Security.**

The second question posed by the Court is whether the Court must follow the procedural mechanisms of section 1806(f) when adjudicating the Plaintiffs' constitutional claims. Again, because the reasoning underlying the Court's ruling on FISA preemption would apply equally to Plaintiffs' constitutional and statutory claims, so too does the answer to this question. The answer, in short, is that unless and only to the extent that Plaintiffs can first demonstrate—

without the benefit of national security information over which the DNI has asserted privilege—that they are "aggrieved persons" challenging the lawfulness of "electronic surveillance," the provisions of section 1806(f) do not apply.  Moreover, even if Plaintiffs overcame this two-prong hurdle, which is erected by the express terms of section 1806(f) itself, then the procedures established under section 1806(f) for *ex parte* review of sensitive national security information would only come into play if the Attorney General, in his discretion, chooses to invoke the provision in the face of a motion by Plaintiffs seeking discovery of such information.  Furthermore, even under the procedures allowed by section 1806(f), the Court must in all events protect against disclosures of classified information that could place national security at risk.

As pertinent here, section 1806(f) authorizes procedures for the *in camera*, *ex parte* review of information to determine the lawfulness of FISA surveillance

> whenever any motion or request is made by an *aggrieved person* pursuant to any other statute or rule of the United States or any State before any court or other authority of the United States or any State to discover or obtain applications or orders or other materials relating to *electronic surveillance* or to discover, obtain, or suppress evidence or information obtained or derived from *electronic surveillance* under this chapter.

50 U.S.C. § 1806(f) (emphasis added).  FISA defines an "aggrieved" person as "a person who is the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance." *Id.* § 1801(k).  "Electronic surveillance" is defined, as pertinent here, as the acquisition of the contents of wire and/or radio communications, under various specified circumstances, "by an electronic, mechanical, or other surveillance device." *Id.* § 1801(f)(1)-(3).[4]  When faced with a motion "made by an aggrieved person … to discover or obtain … materials relating to electronic surveillance," the Attorney General may file an affidavit attesting that "disclosure … would harm the national security of the United States." *Id.* § 1806(f).  Upon that occasion, section 1806(f) authorizes the court to "review in camera … [the] materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted." *Id.*

---

[4] FISA defines the "contents" of communications as "any information concerning the identity of the parties" to a communication "or the existence, substance, purport, or meaning of [the] communication."  50 U.S.C. § 1801(n).

Even assuming that "'FISA preempts or displaces the state secrets privilege,'" it does so "'only in cases within the reach of its provisions,'" as the Court has recognized. Amended Order at 15 (quoting *In re NSA Telecommun. Records Litig.*, 564 F. Supp. 2d 1109, 1124 (N.D. Cal. 2008). To bring themselves within the reach of section 1806(f), Plaintiffs must first establish, regarding each alleged NSA intelligence-gathering activity as to which they seek privileged state secrets, that they have been targets of or subject to the challenged activity. 50 U.S.C. §§ 1801(k), 1806(f). Second, even if they could establish that they have been targets of or subject to a particular intelligence-gathering activity, Plaintiffs would have to show that the activity in question constitutes "electronic surveillance" under FISA. *Id.* § 1801(f), 1806(f).[5] Nothing in section 1806(f) indicates that a person can trigger *ex parte, in camera* review of privileged state secrets merely by seeking to discover whether he or she has been subject to alleged electronic surveillance. The only determination that a district court is authorized to make under subsection 1806(f) is "whether the surveillance of [an] aggrieved person was lawfully authorized and conducted." In this case, however, the very questions of whether Plaintiffs are "aggrieved persons" whose communications have been subject to "electronic surveillance" are subject to the Government's state secrets and statutory privilege assertions, which encompass any and all "information that would tend to confirm or deny whether the Plaintiffs in this action have been subject to" alleged surveillance activities at issue in the complaint, and still-classified operational details about NSA intelligence activities implicated by Plaintiffs' allegations. *See* Public DNI Decl. ¶¶ 10, 19.

Hence, before resort can be had to the procedural mechanism established under section 1806(f) to litigate the merits of Plaintiffs' claims, Plaintiffs must demonstrate, without the use or consideration of information protected by the DNI's assertion of privilege, that they are aggrieved persons whose communications have been subject to electronic surveillance. *Cf. Steele Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94-96 (1998). That is the import of the third issue on which the Court directed additional briefing: whether Plaintiffs can establish

---

[5] The NSA's ongoing collection of bulk telephony metadata falls under FISA's "business records" provision, 50 U.S.C. § 1861, which provides for the production tangible things, documents and records to the Government pursuant to orders issued by the FISC.

their standing to sue—*i.e.,* whether they are aggrieved persons—without risking damage to national security. Tr. at 6. Indeed, the Court required supplemental briefing on standing expressly because of the concern, expressed by the Supreme Court in *Clapper v. Amnesty Int'l, Inc.,* that attempts to litigate standing by disclosing *ex parte* to a court whether a plaintiff has been subjected to Government surveillance would run an inherent risk of disclosing privileged national security information, because "'the court's postdisclosure decision about whether to dismiss the suit for lack of standing would surely signal to [a] terrorist whether his name was on the list of surveillance targets.'" *Id.* at 6-7 (quoting 133 S. Ct. 1138, 1149 n.4 (2013))

Even if Plaintiffs could carry this threshold burden and bring one or more of their claims within the purview of section 1806(f) (as the Court has construed it), the Court should bear in mind that the statute is not a means by which the Plaintiffs may seek and obtain an order from the Court requiring *ex parte, in camera* submission of privileged information for purposes of adjudicating their claims. Rather, on its face section 1806(f) is a tool made available to the Attorney General, to be invoked at his discretion, allowing the Government to seek *ex parte* consideration of classified information where production of surveillance information sought by a plaintiff "would harm the national security of the United States." *Id.* § 1806(f). Only in that event does section 1806(f) authorize the court to "review in camera … [the] materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted." *Id.*

The Court should also bear in mind that while it "*may* disclose to the aggrieved person" the sought-after materials (subject to appropriate security procedures) if "such disclosure is necessary to make an accurate determination of the legality of the surveillance," *id.,* the terms of the statute do not require it to do so, and so it remains incumbent upon the Court, even when proceeding under section 1806(f), to avoid any risk of disclosure of classified information that would place national security at risk.[6] The Supreme Court's admonition in *Amnesty*

---

[6] As explained by the Government Defendants in prior briefing, not a single court applying section 1806(f) has ever granted an aggrieved person access to underlying surveillance information following *in camera* proceedings, and the Government would oppose such an action in this case.

*International*, that a court must not place the burden on the Government of revealing the details of its intelligence-gathering activities in order to disprove a Plaintiffs' allegations, or otherwise proceed in a fashion that risks harmful disclosures of national security information, *see* 133 S. Ct. at 1149 n.4, applies just as equally to the merits of Plaintiffs' claims as it does to the question of their standing. *See* Tr. at 6.  The Government Defendants respectfully reserve their right to appeal or otherwise seek relief from any order as necessary and appropriate to prevent disclosures of classified information as to which the DNI has asserted privilege in this litigation.

      **C.**     **The Government Has Declassified the Existence of Certain Presidentially Authorized Intelligence Programs, Beginning in October 2001 and Later Transitioned to FISC Authority, But Continues To Assert Privilege Over the Scope and Other Still-Classified Operational Details of Those Programs.**

Finally, the Court directed the Government to address the impact on its assessment of the risks to national security presented by this litigation of the public disclosures about NSA intelligence programs that have occurred since June 2013.  *See* Tr. at 7.  In short, the Government is no longer asserting the state secrets privilege, or the statutory privilege under the National Security Act of 1947, as amended, 50 U.S.C. § 3024(i)(1), over the existence of various presidentially authorized NSA intelligence activities, later transitioned to authority under FISA, that are implicated by Plaintiffs' allegations.  The Government continues to assert privilege over certain still-classified information concerning the scope and operational details of these intelligence activities, including but not limited to information that would tend to confirm or deny that particular persons were targets of or subject to NSA intelligence activities, or that particular telecommunications providers have assisted NSA in conducting intelligence activities. As the DNI concludes, disclosure of this still-classified information regarding the scope and operational details of NSA intelligence activities implicated by Plaintiffs' allegations could be expected to cause extremely grave damage to the national security of the United States.  *See* Public Declaration of James R. Clapper, Director of National Intelligence, dated December 20, 2013 ("Public DNI Decl.") (filed herewith), ¶ 2.

In making these determinations, the Government was mindful of the wave of unauthorized public disclosures of classified information regarding NSA intelligence activities,

Gov't Defs.' Supp. Br. on Threshold Legal Issues
*Jewel v. Nat'l Security Agency,* No. C-08-4373-JSW; *Shubert v. Obama,* No. C-07-0693-JSW    11

to which the Court alluded at the September 27, 2013, status conference. Those disclosures have been extremely damaging to the national security of the United States. At the same time, these disclosures have generated great public interest in how the NSA uses its special tools and authorities to gather intelligence, and whether they have been used appropriately. Therefore, the DNI, at the President's direction and in consultation with the Intelligence Community, declassified and publicly released numerous documents disclosing the existence of, and a number of details about, the NSA's collection of bulk telephony and Internet metadata, and the content of communications of non-U.S. persons located abroad, under various provisions of FISA. These documents and the information they contain were properly classified, and the decision to release them was made only after the DNI concluded that facilitating public debate about the value and appropriateness of these programs outweighed the potential for additional damage to national security. Public DNI Decl. ¶ 5.

In addition, the existence of NSA intelligence collection activities authorized by President Bush beginning in October 2001, and known collectively as the President's Surveillance Program, has also been declassified. These activities included the collection of (1) the contents of certain international communications, involving persons believed to be agents of al Qai'da or its affiliated organizations (a program later referred to and publicly declassified and acknowledged by President Bush in 2005 as the Terrorist Surveillance Program ("TSP")), and (2) bulk telephony and Internet non-content communications information (referred to as "metadata"). *Id.*, ¶ 6. These activities were periodically re-authorized by President Bush every 30-60 days; each presidential authorization required the minimization of information collected regarding American citizens to the extent consistent with effectively accomplishing the mission of detecting and preventing acts of terrorism within the United States. NSA also applied its own internal constraints. *Id.* ¶ 7. Over time, these presidentially authorized activities transitioned to the bulk metadata and content-collection programs, discussed above, conducted under authority of the FISA. *Id.* ¶ 8.

As a result of the declassification of this information, the Government is no longer asserting privilege over the existence of these programs, whether conducted under presidential

authority or FISC authorization. The DNI has determined that it remains necessary, however, to protect certain still-classified information about these programs, including particular targets and subjects of surveillance, and methods of collecting and analyzing intelligence information, because public disclosure of this information would likely cause even graver damage to national security than has already been done by the unauthorized disclosures that have occurred since June 2013. As the DNI concludes, the same is true with respect to the highly sensitive and still-classified information that is implicated by the Plaintiffs' allegations in this litigation. Therefore, notwithstanding the unauthorized disclosures and the official declassification and release of information about NSA intelligence programs that have taken place since June of this year, the classified, privileged national security information described below (in unclassified terms) will risk further and exceptionally grave damage to the national security of the United States. *Id.* ¶ 9.

Accordingly, the DNI continues to assert the state secrets privilege, and his authority to protect intelligence sources and methods pursuant to 50 U.S.C. § 3024(i)(l), to protect against the disclosure of certain highly classified and important intelligence information, sources and methods put at issue in this litigation, many of which are vital to the national security of the United States, including:

> (a) information concerning the specific nature of the terrorist threat posed by al Qa'ida and its affiliates and other foreign terrorist organizations to the United States;
>
> (b) information that would tend to confirm or deny whether particular individuals, including the named Plaintiffs, have been subject to any NSA intelligence activities;
>
> (c) information concerning the scope or operational details of NSA intelligence activities that may relate to or be necessary to adjudicate Plaintiffs' allegations, including Plaintiffs' claims that the NSA indiscriminately intercepts the content of communications, and their claims regarding the NSA's bulk collection of telephony and Internet communications records ("metadata"); and
>
> (d) information that may tend to confirm or deny whether any telecommunications carrier has provided assistance to the NSA in connection with any intelligence activity.

*Id.* § 10; *see also id.* ¶ 19.

For the reasons explained in the DNI's public and classified declarations filed herewith, as well as the accompanying public and classified declarations of Frances J. Fleisch, Acting Deputy Director for the NSA, *see* Gov't Defs.' Notices of Lodging of *In Camera, Ex Parte* Declarations (filed herewith), litigation of Plaintiffs' claims (including their standing to bring those claims in the first place) would risk or require disclosures of information that could reasonably be expected to lead to exceptionally grave damage to the national security of the United States. *See id.* ¶¶ 4, 11, 19. Accordingly, notwithstanding the declassification of the once presidentially authorized intelligence activities, now conducted under FISC orders, that are implicated by these cases, the classified national security information as to which the DNI has asserted privilege should be protected from disclosure in this case.

## CONCLUSION

For the reasons explained above, (1) the Government does not dispute that the Court's ruling on FISA preemption would apply equally to Plaintiffs' constitutional claims as it does to their statutory claims; (2) nevertheless, the procedural mechanism for *ex parte, in camera* review under FISA section 1806(f) applies here only to the extent that Plaintiffs can show, without reliance on privileged state secrets, that they are "aggrieved persons" whose communications have been subject to "electronic surveillance" within the meaning of FISA, and (3) the Court, whether proceeding under section 1806(f) or otherwise, must protect against disclosures of classified national security information over which the Government continues to assert the state secrets privilege and its statutory privilege under the National Security Act.

Dated: December 20, 2013

    Respectfully submitted,

    STUART F. DELERY
    Assistant Attorney General

    JOSEPH H. HUNT
    Director, Federal Programs Branch

    ANTHONY J. COPPOLINO
    Deputy Branch Director

      */s/ James J. Gilligan*
JAMES J. GILLIGAN
Special Litigation Counsel

MARCIA BERMAN
Senior Trial Counsel
marcia.berman@usdoj.gov

BRYAN DEARINGER
Trial Attorney

RODNEY PATTON
Trial Attorney

U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-3358
Fax: (202) 616-8470

*Attorneys for the Government Defendants*