

TOP SECRET//TSP//COMINT███████ ███████//HCS//ORCON/NOFORN//███

BETH S. BRINKMANN
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
VINCENT M. GARVEY
Deputy Branch Director
ANTHONY J. COPPOLINO
Special Litigation Counsel
MARCIA BERMAN
Senior Litigation Counsel
PAUL E. AHERN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782
Fax:    (202) 616-8460

*Attorneys for the Government Defendants*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION | ) No. M:06-cv-01791-VRW ) ) **CLASSIFIED DECLARATION** ) **OF DENNIS C. BLAIR** ) **DIRECTOR OF** ) **NATIONAL INTELLIGENCE** |
| This Document Relates Solely To: | ) ) ***EX PARTE, IN CAMERA*** |
| *Shubert, et al. v. United States of America, et al.* (Case No. 07-cv-00693-VRW) | ) ) Date:  December 15, 2009 ) Time:  10:00 a.m. ) Courtroom 6, 17th Floor ) Chief Judge Vaughn R. Walker |

Derived From: NSA/CSSM 1-52
Dated: 20091030
Declassify On: 20341030

TOP SECRET//TSP//COMINT███████ ███████//HCS//ORCON/NOFORN//███

TOP SECRET//TSP//COMINT ███████████ //HCS//ORCON/NOFORN// ███

(U) **Table of Contents**

I.    (U) Introduction

II.   (U) Summary

III.  (U) Classification of Declaration

IV.   (U) Background on Director of National Intelligence

V.    (U) Assertion of State Secrets Privilege

VI.   (U) Assertion of Statutory Privilege under National Security Act

VII.  (U) Information Subject to Assertions of Privilege

VIII. (U) Description of Information and Harm of Disclosure

      A.    (U) Information Concerning the al-Qaeda Terrorist Threat

            1.    (S//NF) Al-Qaeda Remains Intent on Striking the Homeland

            2.    (S//NF) Al-Qaeda Continues Efforts to Train and Deploy Operatives

            3.    (S//NF) Al-Qaeda's Weapons and Tactics

      B.    (U) Information that May Tend to Confirm or Deny Whether the Plaintiffs Have Been Subject to the Alleged NSA Intelligence Activities

      C.    (U) Information Concerning NSA Activities, Sources, or Methods

      D.    (U) Allegations that Telecommunications Companies Assisted the NSA

IX.   (U) Risk of Litigation

X.    (U) Conclusion

TOP SECRET//TSP//COMINT ███████████ //HCS//ORCON/NOFORN// ███

TOP SECRET//TSP//COMINT███ ████████//HCS//ORCON/NOFORN//███

I, Dennis C. Blair, do hereby state and declare as follows:

## I. (U) INTRODUCTION

1. (U) I am the Director of National Intelligence (DNI) of the United States. I have held this position since January 29, 2009. In 2002, I retired as an Admiral from the United States Navy after a 34-year career, which included my service as Commander-in-Chief of the U.S. Pacific Command. During my naval career, I also served as Director of the Joint Staff and as Associate Director of Central Intelligence for Military Support, as well as in policy positions on the National Security Council staff. From 2003 to 2006, I was President and CEO of the Institute for Defense Analyses, an organization that analyzes and makes recommendations on national security policy matters.

2. (U) The purpose of this declaration is to formally assert, in my capacity as the Director of National Intelligence and head of the United States Intelligence Community, the military and state secrets privilege (hereafter "state secrets privilege") and a statutory privilege under the National Security Act, *see* 50 U.S.C. § 403-1(i)(1), in order to protect intelligence sources and methods that are at risk of disclosure in this case. The statements made herein are based on my personal knowledge as well as on information provided to me in my official capacity as the Director of National Intelligence.

## II. (U) SUMMARY

3. (U) In the course of my official duties, I have been advised of this lawsuit and the allegations at issue in the plaintiffs' Amended Complaint. In personally considering this matter, I have executed a separate unclassified declaration dated October 30, 2009. Moreover, I have read and personally considered the information contained in the Public and *In Camera, Ex Parte* Declaration of Lieutenant General Keith B. Alexander, Director of the National Security

TOP SECRET//TSP//COMINT███ ████████//HCS//ORCON/NOFORN//███

~~TOP SECRET//TSP//COMINT~~ ███████ //HCS//ORCON/NOFORN// ███

Agency, executed on October 30, 2009 (hereafter "Classified NSA Declaration"). Disclosure of the information covered by this privilege assertion reasonably could be expected to cause exceptionally grave damage to the national security of the United States and, therefore, the information should be excluded from any use in this case. In addition, it is my judgment that sensitive state secrets are so central to the subject matter of the litigation that any attempt to proceed in the case will substantially risk the disclosure of the classified privileged national security information described herein and will therefore risk exceptionally grave damage to the national security of the United States.

4.    ~~(TS//TSP//SI-~~ ███████ ~~//OC/NF)~~ As the NSA states, *see* Classified NSA Decl. ¶¶ 4-7, the allegations in this lawsuit put at risk of disclosure information concerning several highly classified and critically important NSA intelligence activities that commenced after the 9/11 terrorist attacks, but which are now conducted pursuant to authority of the Foreign Intelligence Surveillance Act ("FISA"), including ongoing activities conducted under orders approved by the Foreign Intelligence Surveillance Court ("FISC"). Specifically, in order to address plaintiffs' allegation that the NSA, with the assistance of telecommunication companies, has indiscriminately intercepted the content and obtained the communications records of millions of ordinary Americans as part of an alleged presidentially authorized "Program" after 9/11, *see, e.g.*, Amended Compl. ¶¶ 1, 4-8, further litigation risks the disclosure of information concerning several classified NSA intelligence activities, sources and methods ███████ ████████████████████████████████ in connection with: (1) NSA's targeted content[1] surveillance aimed at al-Qaeda and affiliated terrorist organizations,

---

[1] ~~(TS//SI//OC/NF)~~ The term "content" is used in this declaration to refer to the substance, meaning, or purport of a communication, as defined in 18 U.S.C.§ 2510(8), as opposed to the type of addressing or routing information referred throughout this declaration as "meta data."

~~TOP SECRET//TSP//COMINT~~ ███████ //HCS//ORCON/NOFORN// ███

TOP SECRET//TSP//COMINT‑████████████████ //HCS//ORCON/NOFORN//████

pursuant to Terrorist Surveillance Program ("TSP") ████████████████; (2) the bulk collection and targeted analysis of non-content information about telephone and Internet communications—critically important and highly sensitive activities that are also now conducted pursuant to FISC orders and that enable the NSA to uncover the contacts ████████████ ████████████████████████████; and (3) ████ ████████████████████████████████████████ ████████████████████████████████ ████████████████████████. This lawsuit therefore puts at risk of disclosure information concerning essential ongoing foreign intelligence-gathering activities being utilized to meet the extremely serious threat of another terrorist attack on the U.S. Homeland ████████ ████████████ (a threat which I describe further below based on recent assessments of the National Counterterrorism Center (NCTC) prepared in January 2009 and March 2009.)

5.    (TS//TSP//SI ████████ //OC/NF) Accordingly, as set forth further below, I am asserting the state secrets privilege and the DNI's authority to protect intelligence sources and methods pursuant to 50 U.S.C. § 403-1(i)(1) to protect against the disclosure of the highly classified intelligence sources and methods put at issue in this case and vital to the national security of the United States, including: (1) any information that would tend to confirm or deny whether particular individuals, including the named plaintiffs, have been subject to the alleged NSA intelligence activities; (2) information concerning NSA intelligence sources and methods, including facts demonstrating that the content collection under the TSP was limited to specific al-Qaeda and associated terrorist-related international communications and was not a content surveillance dragnet as plaintiffs allege; (3) facts that would tend to confirm or deny the existence of the NSA's bulk non-content (*i.e.*, meta data) collection and use, and any information about those activities; and (4) ████████████████████████████

TOP SECRET//TSP//COMINT‑████ ████████████ //HCS//ORCON/NOFORN//████

Classified *In Camera*, *Ex Parte* Declaration of Dennis C. Blair, Director of National Intelligence
*Virginia Shubert, et al. v. United States of America, et al.* (No. 07-cv-693-VRW; MDL No. 06-1791)    5

TOP SECRET//TSP//COMINT ▮▮ //HCS//ORCON/NOFORN// ▮▮

▮▮. I specifically concur with the NSA that public speculation about alleged NSA activities does not diminish the need to protect intelligence sources and methods from further exposure, and that official confirmation and disclosure of the classified privileged national security information described herein would cause exceptionally grave damage to the national security. For these reasons, as set forth further below, I request that the Court uphold the state secrets and statutory privilege assertions that I make herein, as well as the statutory privilege assertion made by the NSA, pursuant to Section 6 of the National Security Agency Act, see 50 U.S.C. § 402 (note), and protect the information described in this declaration from disclosure.

### III. (U) CLASSIFICATION OF DECLARATION

6.    (S//SI//NF) Pursuant to the standards in Executive Order No. 12958, as amended by Executive Order No. 13292, this declaration is classified as: TOP SECRET//TSP//COMINT ▮▮ //HCS//ORCON/NOFORN// ▮▮    The details concerning these classification markings are set forth in paragraphs 8-11 of the Classified NSA Declaration and are briefly summarized here. Under Executive Order No. 12958, information is classified "TOP SECRET" if unauthorized disclosure of the information reasonably could be expected to cause exceptionally grave damage to the national security of the United States; "SECRET" if unauthorized disclosure of the information reasonably could be expected to cause serious damage to national security; and "CONFIDENTIAL" if unauthorized disclosure of the information reasonably could be expected to cause identifiable damage to national security. At the beginning of each paragraph of this declaration, the letters "U," "C," "S," and "TS" indicate respectively that the information is either UNCLASSIFIED, or is classified CONFIDENTIAL, SECRET, or TOP SECRET.

7.    (S//SI//NF) Additionally, this declaration also contains Sensitive Compartmented

TOP SECRET//TSP//COMINT ▮▮ //HCS//ORCON/NOFORN// ▮▮

TOP SECRET//TSP//COMINT████████████//HCS//ORCON/NOFORN//███

Information (SCI), which is subject to special access and handling requirements because it involves or derives from particularly sensitive intelligence sources and methods. This declaration references communications intelligence (COMINT), also referred to as special intelligence (SI), which is a subcategory of SCI that identifies information that was derived from exploiting cryptographic systems or other protected sources by applying methods or techniques, or from intercepted foreign communications. This declaration also references human intelligence (HCS), another subcategory of SCI that identifies information derived from individuals who provide intelligence information. ████████████████

████████████████████

████████████

8.    (TS//TSP//SI-████████//OC/NF) This declaration also contains information about the Terrorist Surveillance Program (TSP), a prior controlled access signals intelligence program that operated under presidential authorization in response to the attacks of September 11, 2001, until January 2007. Information pertaining to this program is denoted with the special marking "TSP." ████████████████████████

████████████████████

████████████████████

9.    (S//SI//NF) Finally, information labeled "NOFORN" may not be released to foreign governments, foreign nationals, or non-U.S. citizens without permission of the originator and in accordance with DNI policy. The "ORCON" designator means that the originator of the information controls to whom it is released.

## IV.   (U) BACKGROUND ON DIRECTOR OF NATIONAL INTELLIGENCE

10.    (U) The position of Director of National Intelligence was created by Congress in the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. 108-458, §§ 1011(a) and

TOP SECRET//TSP//COMINT████████████//HCS//ORCON/NOFORN//███

TOP SECRET//TSP//COMINT-████        ████//HCS//ORCON/NOFORN//███

1097, 118 Stat. 3638, 3643-63, 3698-99 (2004) (amending sections 102 through 104 of Title I of the National Security Act of 1947). Subject to the authority, direction, and control of the President, the Director of National Intelligence serves as the head of the U.S. Intelligence Community and as the principal adviser to the President, the National Security Council, and the Homeland Security Council for intelligence matters related to the national security. *See* 50 U.S.C. § 403(b)(1), (2).

11.    (U) The United States "Intelligence Community" includes the Office of the Director of National Intelligence; the Central Intelligence Agency; the National Security Agency; the Defense Intelligence Agency; the National Geospatial-Intelligence Agency; the National Reconnaissance Office; other offices within the Department of Defense for the collection of specialized national intelligence through reconnaissance programs; the intelligence elements of the military services, the Federal Bureau of Investigation, the Department of the Treasury, the Department of Energy, the Drug Enforcement Administration, and the Coast Guard; the Bureau of Intelligence and Research of the Department of State; the elements of the Department of Homeland Security concerned with the analysis of intelligence information; and such other elements of any other department or agency as may be designated by the President, or jointly designated by the DNI and heads of the department or agency concerned, as an element of the Intelligence Community. *See* 50 U.S.C. § 401a(4).

12.    (U) The responsibilities and authorities of the Director of National Intelligence are set forth in the National Security Act of 1947, as amended. *See* 50 U.S.C. § 403-1. These responsibilities include ensuring that national intelligence is provided to the President, the heads of the departments and agencies of the Executive Branch, the Chairman of the Joint Chiefs of Staff and senior military commanders, and the Senate and House of Representatives and committees thereof. *See* 50 U.S.C. § 403-1(a)(1). The DNI is also charged with establishing the

TOP SECRET//TSP//COMINT-████        ████//HCS//ORCON/NOFORN//███

TOP SECRET//TSP//COMINT███████//HCS//ORCON/NOFORN/███

objectives of, determining the requirements and priorities for, and managing and directing the tasking, collection, analysis, production, and dissemination of national intelligence by elements of the Intelligence Community. *Id.* § 403-1(f)(1)(A)(i) and (ii). The DNI is also responsible for developing and determining, based on proposals submitted by the heads of agencies and departments within the Intelligence Community, an annual consolidated budget for the National Intelligence Program for presentation to the President, and for ensuring the effective execution of the annual budget for intelligence and intelligence activities, and for managing and allotting appropriations for the National Intelligence Program. *Id.* § 403-1(c)(1)-(5).

13.    (U) In addition, the National Security Act of 1947, as amended, provides that "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403-1(i)(1). Consistent with this responsibility, the DNI establishes and implements guidelines for the Intelligence Community for the classification of information under applicable law, Executive orders, or other Presidential directives and access to and dissemination of intelligence. *Id.* § 403-1(i)(2)(A), (B). In particular, the DNI is responsible for the establishment of uniform standards and procedures for the granting of access to Sensitive Compartmented Information ("SCI") to any officer or employee of any agency or department of the United States, and for ensuring the consistent implementation of those standards throughout such departments and agencies. *Id.* § 403-1(j)(1), (2).

14.    (U) By virtue of my position as the Director of National Intelligence, and unless otherwise directed by the President, I have access to all intelligence related to the national security that is collected by any department, agency, or other entity of the United States. *See* 50 U.S.C. § 403-1(b); Executive Order 12333 § 1.3(a). 46 Fed. Reg. 59941 (Dec. 4, 1981), as amended. Pursuant to Executive Order No. 12958, 3 C.F.R. § 333 (1995), as amended by Executive Order 13292 (March 25, 2003), reprinted as amended in 50 U.S.C.A. § 435 at 93

TOP SECRET//TSP//COMINT███████//HCS//ORCON/NOFORN/███

TOP SECRET//TSP//COMINT ████████████ //HCS//ORCON/NOFORN// ████

(Supp. 2004), the President has authorized me to exercise original TOP SECRET classification authority.

## V. (U) ASSERTION OF STATE SECRETS PRIVILEGE

15.     (U) After careful and personal consideration of the matter, based upon my own knowledge and information obtained in the course of my official duties, including the information contained in the Public and Classified *In Camera*, *Ex Parte* Declarations of Lieutenant General Keith B. Alexander, Director of the National Security Agency, I have determined that the disclosure of certain information—as set forth herein and described in more detail in the Classified NSA Declaration—would cause exceptionally grave damage to the national security of the United States and, therefore, must be protected from disclosure and excluded from this case. Thus, as to this information, I formally assert the state secrets privilege. In addition, it is my judgment that sensitive state secrets are so central to the subject matter of the litigation that any attempt to proceed in the case will substantially risk the disclosure of the privileged information described herein and will therefore risk exceptionally grave damage to the national security of the United States.

## VI. (U) ASSERTION OF STATUTORY PRIVILEGE UNDER NATIONAL SECURITY ACT

16.     (U) Through this declaration, I also hereby invoke and assert a statutory privilege held by the Director of National Intelligence under the National Security Act to protect the information described herein. *See* 50 U.S.C. § 403-1(i)(1). My assertion of this statutory privilege for intelligence sources and methods is coextensive with and protects the information subject to my state secrets privilege assertion.

TOP SECRET//TSP//COMINT ████████████ //HCS//ORCON/NOFORN// ████

TOP SECRET//TSP//COMINT- ██████████ //HCS//ORCON/NOFORN// ███

## VII. (U) INFORMATION SUBJECT TO ASSERTIONS OF PRIVILEGE

17.　　(U) In general and unclassified terms, the following categories of information are subject to my state secrets and statutory privilege assertions:

A.　　(U) Information that may tend to confirm or deny whether the plaintiffs have been subject to any alleged NSA intelligence activity that may be at issue in this matter; and

B.　　(U) Any information concerning NSA intelligence activities, sources, or methods that may relate to or be necessary to adjudicate plaintiffs' allegations, including allegations that the NSA, with the assistance of telecommunications carriers, indiscriminately intercepts the content of communications and also, to the extent applicable to plaintiffs' claim, the communications records of millions of Americans as part of an alleged "Program" authorized by the President after 9/11. *See, e.g.,* Amended Compl. ¶¶ 1-8, 58.

(U) The scope of this assertion includes but is not limited to:

(i) (U) Information concerning the scope and operation of the now inoperative "Terrorist Surveillance Program" ("TSP") regarding the interception of the content of certain one-end international communications reasonably believed to involve a member or agent of al-Qaeda or an affiliated terrorist organization, and any other information related to demonstrating that the NSA does not otherwise engage in the content surveillance dragnet that the plaintiffs allege; and

(ii) (U) Any other information concerning NSA intelligence activities, sources, or methods that would be necessary to adjudicate the plaintiffs' claims, including, to the extent applicable, information that would tend to confirm or deny whether or not the NSA obtained from telecommunications companies communication transactional records; and

(iii) (U) Information that may tend to confirm or deny whether any telecommunications carrier has provided assistance to the NSA in connection with any alleged activity.

TOP SECRET//TSP//COMINT- ██████████ //HCS//ORCON/NOFORN// ███

Classified *In Camera, Ex Parte* Declaration of Dennis C. Blair, Director of National Intelligence
*Virginia Shubert, et al. v. United States of America, et al.* (No. 07-cv-693-VRW; MDL No. 06-1791)　　　　11

TOP SECRET//TSP//COMINT███████████//HCS//ORCON/NOFORN//████

## VIII. (U) DESCRIPTION OF INFORMATION AND HARM OF DISCLOSURE

### A. (U) Information Concerning the al-Qaeda Terrorist Threat

18.  (U) To the extent specific information about the al-Qaeda threat is relevant to litigation of plaintiffs' allegations as to post-9/11 actions taken to meet that threat, such information could not be disclosed without revealing intelligence sources, methods, and information of the United States and thereby causing exceptionally grave damage to the national security.  Therefore, I assert the state secrets and statutory privilege to protect such information from disclosure.

19.  (S//OC/NF) The intelligence activities, sources, and methods that are implicated by this lawsuit, and put at risk of disclosure in further proceedings, must be viewed and understood in the context of the extremely serious threat faced by the United States.  In sum, the Intelligence Community assesses that al-Qaeda remains intent on conducting terrorist attacks inside the United States.  This is so notwithstanding a series of setbacks to the al-Qaeda terrorist network. ████████████████████

████████████████████

████████████████████

████  Preventing such attacks is the U.S. Intelligence Community's highest priority, and the Intelligence Community is collecting information aggressively against the al-Qaeda network to uncover indications of credible threats.[2]

---

[2] (S//OC/NF) The following summary of the current al-Qaeda threat is drawn from an Intelligence Community assessment made in January 2009 and more current reporting.

TOP SECRET//TSP//COMINT██████████//HCS//ORCON/NOFORN//████

TOP SECRET//TSP//COMINT███████████//HCS//ORCON/NOFORN//███

1. (S//NF) Al-Qaeda Remains Intent on Striking the Homeland

20.   (TS//HCS/███/OC/NF//████ ███████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

████████████████ A body of reporting—including public statements from senior

leaders, ████████████████████—highlights the persistent and evolving

threat the group poses to the United States and our allies.

- In June and September 2009, al-Qaeda leader Usama bin Laden warned the American people to be prepared to continue reaping what was sowed by the White House during the coming years; and al-Qaeda's third-in-command, Shaykh Sa'id al-Masri, also reiterated in June the group's strategy of attacking the United States to drain the U.S. economy.

- ███████████████████████████████, ████████ ████████████████████████████████ ████████████████████████████████████ ████████████████████████████████ ████████████████████████████

- The plot to bring down airliners between the United Kingdom and North America that was disrupted in August 2006 demonstrated al-Qaeda's continued emphasis on large scale, high-profile attacks against the West, ████████████████ ████████

TOP SECRET//TSP//COMINT███████████//HCS//ORCON/NOFORN//███

Classified *In Camera*, *Ex Parte* Declaration of Dennis C. Blair, Director of National Intelligence
*Virginia Shubert, et al. v. United States of America, et al.* (No. 07-cv-693-VRW; MDL No. 06-1791)          13

TOP SECRET//TSP//COMINT ███████ //HCS//ORCON/NOFORN// ███

21. **(TS//HCS** ██//OC/NF) The bulk of al-Qaeda's Western attack plans since 2001 have relied on operatives with citizenship or personal knowledge of their target location. ███

TOP SECRET//TSP//COMINT ███████ //HCS//ORCON/NOFORN// ███

Classified *In* Camera, *Ex Parte* Declaration of Dennis C. Blair, Director of National Intelligence
*Virginia Shubert, et al. v. United States of America, et al.* (No. 07-cv-693-VRW; MDL No. 06-1791)                    14

TOP SECRET//TSP//COMINT ▬▬ ▬▬ //HCS//ORCON/NOFORN//▬▬

**2. (S//NF) Al-Qaeda Continues Efforts to Train and Deploy Operatives**

22.    (TS//HCS▬//OC/NF) ▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬

▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬

▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬

▬ ▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬

▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

•    ▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬

TOP SECRET//TSP//COMINT ▬▬ //HCS//ORCON/NOFORN//▬▬

TOP SECRET//TSP//COMINT █████████████ //HCS//ORCON/NOFORN// ████

████████████████████████

25.    (TS//HCS/███/OC/NF) The death or detention of more than a dozen al-Qaeda senior leaders and their deputies since early 2008 represent significant losses for the group.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████

26.    (TS/███████) The Internet is a contributing factor in the radicalization of some individuals, increasing the risk of self-selecting fighters attempting to establish affiliations with extremist organizations or engaging in operations independent of formal terrorist groups. Additionally, al-Qaeda and like-minded Sunni extremists are attempting to use the Internet to radicalize and recruit individuals to promote and conduct violent acts, perhaps contributing to the spread of al-Qaeda -inspired violent extremism across the globe.  The number of Sunni extremist Web sites continues to grow, possibly contributing to Islamic radicalization while inspiring individuals in the United States to act on behalf of al-Qaeda or its ideology.

**3.  (S//NF)  Al-Qaeda's Weapons and Tactics**

27.    (TS/██NF) ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

TOP SECRET//TSP//COMINT █████████████ //HCS//ORCON/NOFORN// ████

Classified *In Camera*, *Ex Parte* Declaration of Dennis C. Blair, Director of National Intelligence
*Virginia Shubert, et al. v. United States of America, et al.* (No. 07-cv-693-VRW; MDL No. 06-1791)                16

TOP SECRET//TSP//COMINT ███████ //HCS//ORCON/NOFORN/███

29.  (TS//HCS███//OC/NF/███ █████████

30.  (TS//███//OC/NF) These various examples of some of our intelligence information demonstrate that the al-Qaeda network continues to plan ways to inflict a catastrophic attack.

TOP SECRET//TSP//COMINT ███████ //HCS//ORCON/NOFORN/███

Classified *In Camera*, *Ex Parte* Declaration of Dennis C. Blair, Director of National Intelligence
*Virginia Shubert, et al. v. United States of America, et al.* (No. 07-cv-693-VRW; MDL No. 06-1791)        17

TOP SECRET//TSP//COMINT- ████████ //HCS//ORCON/NOFORN/ ████

The severity of that threat and the difficulty of tracking al-Qaeda is precisely the reason the Government is utilizing all lawful intelligence gathering capabilities. I set forth this information not only to provide the Court with crucial background as to why the intelligence activities implicated by or directly at issue in this case are being undertaken, but also to assert a claim of privilege over this threat information. Although the foregoing threat assessment demonstrates why the Government undertakes the activities described herein, the Government cannot disclose this threat information in defending the legality of the intelligence activities, sources, and methods being challenged, since to do so obviously would disclose to our adversaries what we know of their plans and how we may be obtaining information about them. Such disclosures would lead our adversaries not only to alter their plans, but also to implement greater security for their communications, thereby increasing the risk of non-detection. In addition, disclosure of threat information might reveal human sources for the United States and, thus compromise those sources and put lives in danger. Accordingly, although I believe this threat information is crucial to understanding the NSA intelligence activities, sources, and methods implicated by the plaintiffs' allegations, I must assert the states secrets privilege and the DNI's statutory privilege over this classified threat information because of the exceptionally grave danger to national security that could reasonably be expected to result from its disclosure.

**B.  (U) Information That May Tend to Confirm or Deny Whether the Plaintiffs Have Been Subject to the Alleged NSA Intelligence Activities**

31.    (U) Next, I am also asserting privilege over information that would reveal whether particular individuals, including the named plaintiffs in this lawsuit, have been subject to the alleged NSA intelligence activities. Disclosure of such information would cause exceptionally grave damage to the national security.

TOP SECRET//TSP//COMINT ████████ //HCS//ORCON/NOFORN/ ████

Classified *In Camera, Ex Parte* Declaration of Dennis C. Blair, Director of National Intelligence
*Virginia Shubert, et al. v. United States of America, et al.* (No. 07-cv-693-VRW; MDL No. 06-1791)         18

TOP SECRET//TSP//COMINT███████████//HCS//ORCON/NOFORN//



33.    (U) The NSA cannot publicly confirm or deny whether any particular individual is subject to surveillance activities. If the NSA were to reveal that an individual is the target of surveillance, the collection capability of that individual would certainly be compromised. On the other hand, if the NSA were to reveal that an individual is not the target of surveillance, adversaries would know that a particular individual has avoided surveillance and is a secure source for communicating. Moreover, providing assurances to those individuals that are not being targeted quickly becomes unworkable when faced with a case in which the individual has in fact been targeted. If the NSA were to confirm that any specific individual is not the target of surveillance, but later refuse to confirm or deny that information in a case involving an actual target, it would be apparent that surveillance was occurring in the latter case. The only recourse for NSA is to neither confirm nor deny whether someone has been targeted or subject to NSA activities, regardless of whether the individual has been targeted or not. To say otherwise when challenged in litigation would result in the frequent, routine exposure of NSA information, sources, and methods, and would severely undermine surveillance activities in general.

TOP SECRET//TSP//COMINT████████//HCS//ORCON/NOFORN//███

Classified *In* Camera, *Ex Parte* Declaration of Dennis C. Blair, Director of National Intelligence
*Virginia Shubert, et al. v. United States of America, et al.* (No. 07-cv-693-VRW; MDL No. 06-1791)        19

TOP SECRET//TSP//COMINT ███████ //HCS//ORCON/NOFORN// ███

C. (U) **Information Concerning NSA Activities, Sources, or Methods**

34.    (U) I am also asserting privilege over any other facts concerning NSA intelligence activities, sources, or methods that may relate to or be necessary to adjudicate the plaintiffs' claims, including, but not limited to, allegations that the NSA, with the assistance of telecommunication companies, has indiscriminately intercepted the content and obtained large quantities of communications records as part of the Program authorized by the President after 9/11. *See, e.g.*, Amended Compl. ¶¶ 1-4, 58.  As noted above, my privilege assertion encompasses (1) facts concerning the operation of the now-defunct Terrorist Surveillance Program, including any facts needed to demonstrate that the TSP was limited to the interception of the content[3] of one-end foreign communications reasonably believed to involve a member or agent of al-Qaeda or an affiliated terrorist organization, and that the NSA does not otherwise conduct a dragnet of content surveillance as the plaintiffs allege; and (2) information concerning whether or not the NSA obtains communication transactional records from telecommunications companies.

35.    (U) As the NSA indicates, *see* Public NSA Decl. ¶ 19, the NSA's collection of the content of communications under the TSP was directed at international communications in which a participant was reasonably believed to be associated with al-Qaeda or an affiliated organization.  Thus, as the Government has previously stated, plaintiffs' allegation that the NSA has indiscriminately collected the content of millions of communications sent or received by people inside the United States after 9/11 under the TSP is false.  I concur with the NSA that to the extent it must demonstrate in this case that the TSP was not the content dragnet plaintiffs allege, or demonstrate that the NSA has not otherwise engaged in the alleged content dragnet,

_____

[3] (U) The term "content" is used herein to refer to the substance, meaning, or purport of a communication, as defined in 18 U.S.C.§ 2510(8).

TOP SECRET//TSP//COMINT ███████ //HCS//ORCON/NOFORN// ███

Classified *In Camera, Ex Parte* Declaration of Dennis C. Blair, Director of National Intelligence
*Virginia Shubert, et al. v. United States of America, et al.* (No. 07-cv-693-VRW; MDL No. 06-1791)          20

TOP SECRET//TSP//COMINT███████████/HCS//ORCON/NOFORN/█████

highly classified NSA intelligence sources and methods about the operation of the TSP and other NSA intelligence activities would be disclosed or at risk of disclosure which would cause exceptionally grave harm to national security.

36.    (U) To the extent implicated by the plaintiffs' allegations in this case, I am also asserting privilege over information concerning whether or not the NSA obtained from telecommunications companies transactional records of those companies' customers, including the plaintiffs. *See* Amended Compl. ¶¶ 5-8, 58; Classified NSA Decl. ¶¶ 32 & n.17, 33. I concur with the NSA that confirmation or denial of any information concerning this allegation would cause exceptionally grave harm to national security, including by risking disclosure of whether or not the NSA utilizes particular intelligence sources and methods and, thus, the NSA's capabilities or lack thereof.

37.    (TS//TSP//SI//OC/NF) In particular, as set forth in the NSA's Classified Declaration, the United States faced urgent and immediate intelligence challenges after the September 11 attacks, and undertook signals intelligence activities pursuant to presidential authorization that were designed to meet those challenges and to detect and prevent future terrorist attacks by al-Qaeda and its affiliates. Those activities include the TSP and similar content surveillance that later became subject to orders of the Foreign Intelligence Surveillance Court, as well as the bulk collection of telephony and Internet non-content meta data currently authorized by the FISC, which is used to discover contacts ████████████████████ ████████████████████████████ *See* Classified NSA Decl. ¶¶ 39-66.

38.    (TS//TSP//SI//OC/NF) Based on my personal consideration and judgment as to the harm disclosure would cause to national security, my privilege assertion includes, but is not limited to, the following activities discussed in the NSA classified declaration:

TOP SECRET//TSP//COMINT ███████████ /HCS//ORCON/NOFORN/█████

TOP SECRET//TSP//COMINT-███ ████████ //HCS//ORCON/NOFORN// ███

39.    (TS//TSP//SI//OC/NF) First, I assert privilege over facts concerning the operation of the Terrorist Surveillance Program and any other NSA intelligence activities needed to demonstrate that the TSP was limited to the interception of one-end foreign communications reasonably believed to involve a member or agent of al-Qaeda or an affiliated terrorist organization, and that the NSA does not otherwise conduct a dragnet of content surveillance as the plaintiffs allege. Such facts include those concerning (1) how targets were selected under the TSP; (2) how specific methods were used under the TSP to intercept telephone and Internet communications and to minimize the risk of collecting non-target communications and purely domestic communications; (3) the nature and identity of the targets under the TSP, ██████ ████████ (4) additional classified details about the operation of the TSP that would be necessary to adjudicate the plaintiffs' allegations (to the extent relevant) including facts concerning the operational swiftness and agility of the TSP, particularly in conjunction with meta data analysis, ███████████████████████████; and the effectiveness and success of the TSP; and (5) other NSA surveillance activities that may be needed to address and disprove the content dragnet allegations, ████████████ ████████████. See Classified NSA Decl. ¶ 47. In my judgment, revealing or risking disclosure of the foregoing NSA intelligence activities, sources, and methods in order to show that NSA is not conducting the "dragnet" on the content of communications that plaintiffs allege would cause exceptional harm to national security by disclosing to our adversaries the ability of the United States to monitor and track their activities and communications.

40.    (TS//TSP//SI//OC/NF) Second, I also assert privilege over facts that would disclose or describe the NSA's non-content meta data collection activities, including over whether or not the plaintiffs have been subject to those activities. See Classified NSA Decl.

TOP SECRET//TSP//COMINT-███ ████████ //HCS//ORCON/NOFORN// ███

TOP SECRET//TSP//COMINT ██████████//HCS//ORCON/NOFORN/██████

¶¶ 49-57. In my judgment, the NSA is unable to disclose any information about the existence or operation of the NSA's bulk collection or targeted analysis of Internet or telephony meta data without causing exceptionally grave harm to national security. These are among the most important intelligence tools the NSA uses, and they have never been officially confirmed or denied by the United States. Disclosing or confirming these activities would seriously undermine an essential tool for tracking possible terrorist plots and would help foreign adversaries evade detection. Such a disclosure would also undermine ongoing intelligence operations authorized by the FISC.

41. (TS//SI//OC/NF) Third, I also assert privilege over information concerning NSA activities conducted pursuant to various FISC orders and under the authority of the FISA described by the NSA. *See* Classified NSA Decl. ¶¶ 57-66. In my judgment, disclosure of current surveillance activities under orders and supervision of the FISC and authority of the FISA, either directly or indirectly, would seriously compromise, if not destroy, vital ongoing intelligence operations. My privilege assertion extends to the existence of and any information concerning the (i) FISC Pen Register Order, as subsequently reauthorized, *see id.* ¶ 58; (ii) FISC Telephone Business Records Order, as subsequently reauthorized, *see id.* ¶¶ 59-62; ██████ ███████████████████ ██ (iv) FISC Foreign Telephone and Email Order, *see id.* ¶ 64; and (v) NSA activities conducted pursuant to the Protect America Act and the Foreign Intelligence Surveillance Act Amendments Act of 2008, including directives issued to telecommunication carriers under those Acts, *see id.* ¶¶ 65-66.

42. (TS//SI//OC/NF) I concur with the NSA that the activities discussed herein and described further by the NSA—in particular the meta data collection activities—are among the most important intelligence tools available to the United States for protecting the Homeland from another catastrophic terrorist attack. I also concur that ███████████████████████e

TOP SECRET//TSP//COMINT ██████████//HCS//ORCON/NOFORN/██████

Classified *In Camera, Ex Parte* Declaration of Dennis C. Blair, Director of National Intelligence
*Virginia Shubert, et al. v. United States of America, et al.* (No. 07-cv-693-VRW; MDL No. 06-1791)         23



TOP SECRET//TSP//COMINT- ███████ //HCS//ORCON/NOFORN//

. In my judgment, after personal consideration of the matter, disclosing the information described herein and by the NSA would compromise these critical activities, sources, and methods, thereby helping our adversaries evade detection and causing exceptionally grave damage to the national security of the United States.

**D. (U) Allegations that Telecommunications Companies Assisted the NSA**

43.    (U) In addition, I am asserting privilege over information that may tend to confirm or deny whether or not any telecommunications provider has assisted the NSA with alleged intelligence activities. The disclosure of any information that would tend to confirm or deny allegations of such assistance would cause exceptionally grave harm to the national security. Confirming or denying such allegations, again, would reveal to foreign adversaries whether or not the NSA utilizes particular intelligence sources and methods and, thus, would either compromise actual sources and methods or disclose that the NSA does not utilize a particular source or method. Such confirmation or denial would also replace speculation with certainty for hostile foreign adversaries who are balancing the risk that a particular channel of communication may not be secure against the need to communicate efficiently.

44.    (TS//TSP//SI- ████ /OC/NF) ███████

TOP SECRET//TSP//COMINT- ████ //HCS//ORCON/NOFORN//

Classified *In Camera, Ex Parte* Declaration of Dennis C. Blair, Director of National Intelligence
*Virginia Shubert, et al. v. United States of America, et al.* (No. 07-cv-693-VRW; MDL No. 06-1791)        24

TOP SECRET//TSP//COMINT ██ ██ //HCS//ORCON/NOFORN/ ██

45.   (TS//TSP// ██ //OC/NF) ██

46.   ██

---

[4] (TS//TSP//SI- ██ //OC/NF) In addition, I have reviewed the classified certification of then-Attorney General Mukasey submitted to the Court pursuant to Section 802 of the FISA Amendments Act of 2008 and assert privilege over specific information described therein, ██

TOP SECRET//TSP//COMINT ██ //HCS//ORCON/NOFORN/ ██



TOP SECRET//TSP//COMINT ████████ //HCS//ORCON/NOFORN//

47.    (TS//TSP//SI-████//OC/NF)

Accordingly, I assert the state secrets and DNI statutory privilege over such information,

## IX. (U) RISK OF LITIGATION

48.    (TS//SI//OC/NF) Finally, I concur with the NSA that further litigation of this case will inherently risk the disclosure of highly classified activities. While plaintiffs wrongly allege that the NSA is conducting a dragnet program of content surveillance, disproving plaintiffs' speculation would risk or require revealing NSA intelligence activities, sources and methods, including bulk meta data collection activities. The stakes we face in the U.S. Intelligence Community are of the highest magnitude. We know that al-Qaeda continues to plan a mass casualty "spectacular" attack inside the United States again that would cause catastrophic loss of life, severe economic harm, or threaten the continuity of government. The NSA's

TOP SECRET//TSP//COMINT ████████ //HCS//ORCON/NOFORN//████

TOP SECRET//TSP//COMINT ███████████ //HCS//ORCON/NOFORN/███

activities described herein and by the NSA, including NSA sources and methods currently being utilized under authority of the FISA, are all directed at this terrible threat.

## X. (U) CONCLUSION

49. (U) In sum, I am asserting the state secrets privilege and the DNI's statutory privilege set forth in 50 U.S.C. § 403-1(i)(1) to protect the classified national security information described herein and in the Classified NSA Declaration. Moreover, because proceedings in this case risk disclosure of privileged and classified intelligence-related information, I respectfully request that the Court not only protect that information from disclosure, but to take all steps necessary, including dismissal of this action, to protect the intelligence information, sources, and methods described herein in order to prevent exceptionally grave harm to the national security of the United States.

I declare under penalty of perjury that the foregoing is true and correct.

DATE: 30 Oct 2019

_____
DENNIS C. BLAIR
Director of National Intelligence

TOP SECRET//TSP//COMINT ████████████ //HCS//ORCON/NOFORN/███

Classified *In Camera, Ex Parte* Declaration of Dennis C. Blair, Director of National Intelligence
*Virginia Shubert, et al. v. United States of America, et al.* (No. 07-cv-693-VRW; MDL No. 06-1791)      27