# EXHIBIT A

TOP SECRET//COMINT████████/TSP//ORCON/NOFORN//MR

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

MDL Dkt. No. 06-1791-VRW

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION<br><br>This Document Relates to:<br><br>ALL CASES except *Al-Haramain v. Bush* (07-109); *CCR v. Bush* (07-1115); *United States v. Farber* (07-1324); *United States v. Adams* (07-1326); *United States v. Volz* (07-1396); *United States v. Gaw* (07-1242); *Clayton v. AT&T Communications of the Southwest* (07-1187) | **CLASSIFIED DECLARATION OF** ████████<br>**NATIONAL SECURITY AGENCY**<br><br><br>**SUBMITTED *IN CAMERA, EX PARTE***<br><br>Hon. Vaughn R. Walker<br><br>Date:   November 15, 2007<br>Time:   2:00 pm<br>Courtroom: 6 - 17th Floor |

I, ████████ do hereby state and declare as follows:

<u>Introduction</u>

1.      **(U)** I am the Deputy Chief of Staff for Operations and Support for the Signals Intelligence Directorate of the National Security Agency (NSA), an intelligence agency within the Department of Defense. I oversee signals intelligence (SIGINT) operations of NSA which includes the SIGINT units of the U.S. armed services. Under Executive Order No. 12333, 46 Fed. Reg. 59941 (1981), as amended on January 23, 2003, 68 Fed. Reg. 4075 (2003), and August 27, 2004, 69 Fed. Reg. 53593 (2004), the NSA SIGINT Directorate is responsible for the collection, processing, and dissemination of SIGINT information for the foreign intelligence purposes of the United States. I am responsible for protecting NSA SIGINT activities, sources and methods against unauthorized disclosures. I have been designated an original TOP SECRET classification authority under Executive Order No. 12958, 60 Fed. Reg. 19825 (1995),

Classified Declaration of ████████
National Security Agency, *Ex Parte In Camera* Review
MDL No. 06-1791-VRW

TOP SECRET//COMINT████████/TSP//ORCON/NOFORN//MR

1   as amended on March 25, 2003, 68 Fed. Reg. 15315 (2003), and Department of Defense

2   Directive No. 5200.1-R, Information Security Program Regulation, 32 C.F.R. § 159a.12 (2000).

3   I have worked at NSA for thirty three years in various positions as a linguist, analyst and

4   supervisor.   As the Deputy Chief of Staff for Operations and Support, I am familiar with the

5   document retention and preservation policies of the NSA.

6        2.   (TS//SI████████//TSP//OC/NF)[1]  I make this declaration in support of the

7   United States' Opposition to Plaintiffs' Motion for an Order to Preserve Evidence.  The

8   purpose of this declaration is to describe the policies and practices in place at NSA to preserve

9   documents and information related to particular intelligence activities authorized by the

10  President after the 9/11 attacks that are implicated by the claims in this proceeding, as well as to

11  discuss steps that I understand have been taken ████████████████████

12  ████████████████████████

13       3.   (TS//SI████████//TSP//OC/NF)  I will address the following topics in this

14  declaration.  First, I briefly summarize the intelligence activities implicated by these lawsuits

15  and which are subject to the Government's state secrets privilege assertion, as previously in

16  described in the classified Declarations that Lt. General Keith T. Alexander, Director of NSA,

17  has submitted in support of the United States' assertion of the state secrets privilege and NSA

18  statutory privilege in *Hepting v. AT&T*, which involved claims against AT&T, and in the

19  various cases against various *Verizon* defendants (hereafter "*In Camera* Alexander Declaration

20  in *Hepting* Case or *Verizon* Cases").  Second, I identify categories of documents and

21  information that may be related to these activities ████████████████████

22  ████████████████ Third, ████████████████████

23

24  [1] (U) Classification markings in this declaration are in accordance with the marking system

25  described in the *In Camera* Alexander Declarations submitted in the *Hepting* and *Verizon* cases.

26  Classified Declaration of ████████████

27  National Security Agency, *Ex Parte In Camera* Review
    MDL No. 06-1791-VRW

28

TOP SECRET//COMINT▬▬▬▬//TSP//ORCON/NOFORN//MR

1  ▬▬▬ I then describe the specific preservation status of various categories of documents

2  and information potentially relevant to this litigation.

3      4.    **(U)** My statements in this declaration are based on my personal knowledge of

4  NSA activities as well as information provided to me in the course of my official duties. I have

5  become familiar with the subject matter of the lawsuits before the Court in this action and the

6  Plaintiffs' pending motion. In particular, I have read the Plaintiffs' Motion as well as the

7  classified declarations that General Alexander has submitted, *see supra* ¶ 3

8      5.    (TS//SI▬▬▬▬//TSP//OC/NF) In addition, the description set forth herein

9  of the documents and information maintained and preserved ▬▬▬▬▬▬▬ is

10  known to and has been obtained by NSA in the course of its official duties. As previously

11  described by General Alexander, NSA ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

12  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ in carrying out its signals intelligence mission.

13  *See In Camera* Alexander Declaration in *Hepting* Case ¶¶ 3, 27-33; *In Camera* Alexander

14  Declaration in *Verizon* Cases ¶¶ 3-4, 24-26.

15

16

17

18

19

20

21

22

23

24

25

26  **Classified Declaration of** ▬▬▬▬▬
27  **National Security Agency,** *Ex Parte In Camera* **Review**
    **MDL No. 06-1791-VRW**

28       TOP SECRET//COMINT▬▬▬▬//TSP//ORCON/NOFORN//MR    3

TOP SECRET//COMINT█████████//TSP//ORCON/NOFORN//MR

Summary

6. (TS//SI█████████//TSP//OC/NF) NSA█████████████taken affirmative steps (described below) to ensure the preservation of information that may be relevant to this litigation. In particular, NSA is preserving a range of documents and communications concerning the presidentially-authorized activities at issue, including: authorizations for these activities by the President; communications█████████ ████████████ documents related to the TSP, including specific selectors (*e.g.*, telephone numbers and email addresses) tasked for content interception and the reasons they were targeted; the actual content of communications intercepted under the TSP; intelligence reports containing TSP information; Internet and telephony metadata collected under the Presidential authorization; requests that NSA task that metadata for analysis to obtain information on terrorist contacts█████████████ and the reports of that analysis; and miscellaneous information concerning these activities, including legal opinions and analysis relating to the lawfulness of the TSP and metadata activities; briefing materials used to advise Members of Congress and the Foreign Intelligence Surveillance Court about these activities; internal NSA oversight materials, such as NSA Inspector General oversight of the operation of these activities; guidance used by NSA analysts concerning how to designate, use, and protect TSP information in intelligence reports; and technical information concerning the manner in which these presidentially-authorized activities were implemented,████████
████████████████████████████████████████████
████████████████████

7. (TS//SI█████████//TSP//OC/NF)
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

Classified Declaration of████████
National Security Agency, *Ex Parte In Camera* Review
MDL No. 06-1791-VRW

TOP SECRET//COMINT█████████//TSP//ORCON/NOFORN//MR                    4



[redacted]

## Background

A. ~~(TS//SI//TSP//OC/NF)~~ NSA Activities

8. ~~(TS//SI~~[redacted]~~//TSP//OC/NF)~~ As General Alexander has previously described in detail, the lawsuits before the Court implicate several highly classified and critically important NSA intelligence activities [redacted] As General Alexander explained, this information is subject to the Government's assertion of the state secrets and related statutory privileges and cannot be disclosed without causing exceptionally grave harm to national security. *See In Camera* Alexander Declaration in *Hepting* Case ¶¶ 27-78; *In Camera* Alexander Declaration in *Verizon* Cases ¶¶ 23-90.

---

[2] ~~(TS//SI~~[redacted]~~//TSP//OC/NF)~~ [redacted]

[3] ~~(TS//SI~~[redacted]~~//TSP//OC/NF)~~ [redacted]

TOP SECRET//COMINT███████TSP//ORCON/NOFORN//MR

9. (TS//SI███████TSP//OC/NF) First, these lawsuits put at issue whether the NSA has intercepted the content of domestic communications of the plaintiffs and other U.S. citizens. As set forth in General Alexander's prior submissions, although the Plaintiffs wrongly allege that the NSA conducts a dragnet of surveillance of the content of millions of communications sent or received by people inside the United States, *see In Camera* Alexander Declaration in *Verizon* Cases at ¶ 54, █████████████████the NSA █████████the interception of the content of communications reasonably believed to involve a member or agent of al Qaeda or an affiliated terrorist organizations pursuant to the President's Terrorist Surveillance Program ("TSP")█████████████████

10. (TS//SI███████TSP//OC/NF) Second, again after the 9/11 attacks and pursuant to an authorization of the President, ████████the NSA█ the bulk collection of non-content information *about* telephone calls and Internet communications (hereafter "metadata")—activities that enable the NSA to uncover the contacts ████████████████of members or agents of al Qaeda or affiliated terrorist organizations. Specifically, the President authorized the NSA to collect metadata related to *Internet* communications for the purpose of conducting targeted analysis to track al Qaeda-related networks. Internet metadata is header/router/addressing information, such as the "to," "from," "cc," and "bcc" lines, as opposed to the body or "re" lines, of a standard email. Since July 2004, the collection of Internet metadata has been conducted pursuant to an Order of the Foreign Intelligence Surveillance Court ("FISC") authorizing the use of a pen register and trap and trace device ("FISC Pen Register Order"). *See* 18 U.S.C. § 3127 (defining "pen register" and "trap and trace device").

11. (TS//SI███████TSP//OC/NF) In addition, also after the 9/11 attacks,

Classified Declaration of ████████
National Security Agency, *Ex Parte In Camera* Review
MDL No. 06-1791-VRW

TOP SECRET//COMINT███████TSP//ORCON/NOFORN//MR          6

TOP SECRET//COMINT████████//TSP//ORCON/NOFORN//MR

1  ████████████████ the NSA ████ the collection of *telephony* metadata conducted

2  pursuant to an authorization of the President. Such metadata is compiled from call detail data

3  ████████████████████████████████████████ that reflects non-content

4  information such as the date, time, and duration of telephone calls, as well as the phone

5  numbers used to place and receive the calls. As with the broad Internet metadata collection

6  now authorized by the FISA Court, the bulk collection of telephony metadata was and remains

7  necessary to utilize sophisticated analytical tools for tracking the contacts ████████████

8  ████████████████████ Since May 2006, ████████████████████████████

9  have been required to produce this information by order of the FISA Court ("FISC Telephone

10 Records Order").

11 B.    (TS//SI//TSP//OC/NF) Document Categories

12     12.    (TS//SI)████████//TSP//OC/NF) I describe below the categories and

13 preservation status of documents or information maintained by NSA ████████████████

14 ████████████████████████ in the following three program activities prior to the relevant

15 FISC Order for that activity:[4]

16     (i)    The Terrorist Surveillance Program authorized by the President to
17            intercept certain international communications into or out of the United
               States (*i.e.*, "one-end" foreign) that are reasonably believed to involve a
18            member or agent of al Qaeda or affiliated terrorist organization; and

19     (ii)   The collection of non-content data concerning Internet
               communications authorized by the President ("Internet
20            metadata").

21     (iii)  The collection of telephone calling record information
               ("telephony metadata") authorized by the President.

22

23

24 [4]    (TS//SI) Because Plaintiffs have not challenged activities occurring pursuant to an order
    of the FISC, this declaration does not address information collected pursuant to such an
25 authorization or any retention policies associated therewith.

26 **Classified Declaration of** ████████████
    **National Security Agency,** *Ex Parte In Camera* **Review**
27 **MDL No. 06-1791-VRW**

28          TOP SECRET//COMINT████████//TSP//ORCON/NOFORN//MR          7

TOP SECRET//COMINT████████//TSP//ORCON/NOFORN//MR

1  I cannot state that all documents and information concerning these activities have been

2  preserved since the activities commenced under presidential authorization after the 9/11 attacks.

3  I specifically describe below various categories of documents and information concerning these

4  activities that may be potentially relevant to the litigation and that NSA███████████████

5  ████ acted to preserve since the onset of this litigation.

6               (TS//SI//TSP//OC/NF)  Preservation of Information

7  A.    (TS//SI) National Security Agency Information

8        13.  (TS//SI//TSP//OC/NF)  As set forth below, the NSA preserving documents and

9  information potentially relevant to the claims and issues in this lawsuit with respect to the three

10  categories of activities authorized by the President after 9/11 and detailed above for the period

11  prior to the respective superseding FISC orders.  NSA has taken various steps to ensure that

12  staff and officials in offices that were cleared to possess information related to the presidentially

13  authorized activities are preserving documents contained in their files and on their computer

14  systems that relate to these activities.  Initially, on January 10, 2006, the General Counsel of the

15  National Security Agency, through a classified electronic mail communication, instructed that

16  information, records, or materials (including in electronic form) related to the presidentially-

17  authorized activities be preserved.  Prior to the initiation of these lawsuits, NSA has held

18  monthly internal meetings between the Office of General Counsel (OGC), Office of the

19  inspector General, Signals Intelligence Directorate, and senior agency management, to discuss

20  operational and logistical issues associated with the operation of the presidentially-authorized

21  activities; the preservation of information and documents related to those activities has been

22  regularly discussed at these meetings.  Following the initiation of theses cases in 2006, NSA's

23  OGC has used these meetings to regularly advise the relevant program offices to preserve all

24  information related to these activities, including in electronic form.  In addition, in August

25

26  **Classified Declaration of** ████████████
27  **National Security Agency,** *Ex Parte In Camera* **Review**
     **MDL No. 06-1791-VRW**

28       TOP SECRET//COMINT████████//TSP//ORCON/NOFORN//MR                8

TOP SECRET//COMINT█████████//TSP//ORCON/NOFORN//MR

1  2007, following the issuance of Congressional subpoenas for information related to the
2  presidentially-authorized activities, NSA's OGC again instructed the NSA program officials
3  and personnel who had been cleared for access to information concerning the pesidentially-
4  authorized activities that all information and documents (including written or electronic) related
5  to these activities and the current litigation be preserved.  The categories of documents and
6  information related to the presidentially authorized activities is described below.

7    1.    (TS//SI//TSP//OC/NF) ████████████████████████
8    14.   (TS//SI//TSP//OC/NF) ████████████████████████

████████████████████████████████████████████████

14    15.   (TS//SI████████//TSP//OC/NF)████████

████████████████████████████████████████   See

18  *In Camera* Alexander Declaration in *Hepting* Case ¶¶ 61, 74-75; *In Camera* Alexander
19  Declaration in *Verizon* Cases ¶¶ 49-52; and *In Camera* Alexander Declaration in *Shubert* Cases
20  ¶¶ 34-36.  Pursuant to the presidential authorization, NSA analysts queried the collected
21  metadata using telephone numbers and email addresses that are reasonably suspected to be
22  associated with al Qaeda or a group affiliated with al Qaeda (as discussed above). ████████

████████████████████████████████████████

26  **Classified Declaration of** ████████
27  **National Security Agency,** *Ex Parte In Camera* **Review**
    **MDL No. 06-1791-VRW**

28  TOP SECRET//COMINT█████████//TSP//ORCON/NOFORN//MR        9

TOP SECRET//COMINT ██████ //TSP//ORCON/NOFORN//MR

1
2
3
4                                                                         Also, as
5  set forth below, NSA has preserved metadata collected in bulk ████████ under
6  presidential authorization.
7        2.      (TS//SI//TSP//OC/NF) Presidential Authorizations
8        16.     (TS//SI//TSP//OC/NF) NSA is preserving copies of all Presidential
9  authorizations of the TSP and metadata collection activities described herein from the inception
10 of these activities, including the periodic re-authorization of these activities by the President.
11 These authorizations were accompanied by a current analysis of the terrorist threat facing the
12 United States, and these threat memoranda have also been preserved.  These documents
13 originated outside of NSA and were obtained and are preserved solely in paper form.  These
14 documents are maintained in the offices of the NSA Director.
15       3.      (TS//SI ██████ //TSP//OC/NF)
16       17.     (TS//SI ██████ //TSP//OC/NF)
17
18
19
20
21       4.      (U) Terrorist Surveillance Program Information
22       18.     (TS//SI//TSP//OC/NF) NSA is preserving several categories of documents
23 related to the Terrorist Surveillance Program under which the content of international, one-end
24 foreign telephone and Internet communications reasonably believed to involve a member or
25
26 Classified Declaration of
27 National Security Agency, *Ex Parte In Camera* Review
   MDL No. 06-1791-VRW
28       TOP SECRET//COMINT ██████ //TSP//ORCON/NOFORN//MR          10

TOP SECRET//COMINT ▮▮▮▮ //TSP//ORCON/NOFORN//MR

1  agent of al Qaeda or affiliated terrorist organization were intercepted during the existence of
2  that program. These TSP documents include the following:

3       19.   (TS//SI//TSP//OC/NF) TSP Tasking and Probable Cause Information: NSA is
4  preserving documentation assembled by its analysts in the process of determining whether it
5  should, in connection with the TSP, intercept the content of communications of a particular
6  selector (e.g., telephone number or email address). As set forth in General Alexander's prior
7  declarations in this case, the interception of the content of communications under the TSP was
8  triggered by a range of information, including sensitive foreign intelligence, obtained or derived
9  from various sources indicating that a particular phone number or email address is reasonably
10  believed by the U.S. Intelligence Community to be associated with a member or agent of al
11  Qaeda or an affiliated terrorist organization. See, e.g., In Camera Alexander Declaration in
12  Verizon Cases ¶ 55. After NSA would task for content collection a particular phone number or
13  email address that met this criteria, it preserved documentation of the particular selectors
14  (telephone numbers and Internet addresses) and are reasons for the tasking.

15
16
17
18
19
20

21       20.   (TS//SI//TSP//OC/NF) ▮▮▮▮▮▮▮▮▮▮ NSA preserves
22  documentation on an electronic database of telephony selectors tasked (i.e., telephone numbers
23  reasonably believed to be associated with persons outside the United States). Since
24  approximately September 2005, NSA has also maintained a record of foreign Internet selectors

25
26  **Classified Declaration of** ▮▮▮▮
27  **National Security Agency,** *Ex Parte In Camera* **Review**
    **MDL No. 06-1791-VRW**
28          TOP SECRET//COMINT ▮▮▮▮ //TSP//ORCON/NOFORN//MR     11

TOP SECRET//COMINT          //TSP//ORCON/NOFORN//MR

1  in an electronic database (which includes the basis for tasking the selector).  For the period

2  prior to September 2005, tasking documentation identifying foreign Internet selectors is not

3  complete.  However, since the initiation of this lawsuit, NSA has acted to preserve all records

4  that did exist at that time for foreign Internet tasking.

5

6      21.    (TS//SI//TSP//OC//NF) TSP Intercepted Content:  As described herein, NSA is

7  preserving the actual content of communications intercepted under the presidentially-authorized

8  TSP as described in this paragraph.  For voice intercepts under the TSP, NSA has maintained

9  all "raw traffic" in an electronic database.[5]  From the initiation of the TSP until the program

10 ceased in 2007, the raw traffic of Internet content intercepts were maintained on a database for

11 approximately 180 days.  Because the operational relevance of this intelligence declined over

12 time, and because the performance of this system is affected by the volume maintained on the

13 online database, NSA migrated the raw Internet traffic to computer tape.  However, NSA is

14 preserving tapes of the Internet content intercepted under the TSP since the inception of the

15 program.

16     22.    (TS//SI//TSP//OC/NF) Intelligence Reports:  NSA analysts have prepared

17 detailed intelligence reports that utilize content intercepts obtained under the TSP authorization

18 by the President.  NSA intelligence reports are written assessments of intelligence on particular

19 topics (for example, the threat of al Qaeda attacks or the activities of suspected al Qaeda

20 operatives).  For each of these reports, an NSA analyst is able to determine if information

21 obtained through a TSP intercept was utilized.  All NSA intelligence reports are preserved

22

23 [5]   (TS//SI//TSP//OC/NF) Due to a technical malfunction (which occurred on or about
   January 26, 2007), raw telephony intercept for a period of approximately six months (June
24 2005-December 2005) was inadvertently deleted from this database.  However, foreign
25 intelligence information derived from these raw intercepts is preserved.

26 **Classified Declaration of**
   **National Security Agency,** *Ex Parte In Camera* **Review**
27 **MDL No. 06-1791-VRW**

28     TOP SECRET//COMINT          //TSP//ORCON/NOFORN//MR          12

TOP SECRET//COMINT████████//TSP//ORCON/NOFORN//MR

1 permanently in paper and electronic form.

2   **5.** (TS//SI//TSP//OC/NF) **Internet and Telephony Metadata Collection**

3   23.   (TS//SI████████//TSP//OC/NF) Internet Metadata Collection: As described

4 above and in General Alexander's prior Declarations, starting in October 2001, and now

5 pursuant to the FISC Pen Register Order, NSA has obtained ████████

6 ████████ bulk metadata associated with electronic communications ████

7 ████████

8 ████████

9 ████████

10   ¶ *See, e.g., In Camera* Alexander Declaration in *Verizon* Cases, ¶ 31. NSA collected

11 Internet metadata pursuant to Presidential authorization until ████ 2004 (nearly two years

12 before these lawsuits commenced). On ████ 2004, NSA took initial steps to embargo this

13 data from access by all NSA analysts. Because the Internet metadata collected prior to the FISC

14 order was no longer being used for analysis, it was migrated to electronic tapes starting in

15 January 2006. Those tapes are stored by the Signals Intelligence Directorate. To be clear, the

16 presidentially authorized collection of internet metadata is segregated from information

17 collected under the FISC Order of July 2004 and has not been destroyed.

18   24.   (TS//SI████████//TSP//OC/NF) Telephony Metadata Collection: As

19 described above and in General Alexander's prior declarations, starting in October 2001, and

20 now pursuant to the FISC Telephone Records Order entered in May 2006 (FISC Telephone

21 Records Collection Order), NSA has collected ████████

22 telephony metadata compiled from call detail records that ████████

23 ████████ reflects non-content information such as the date, time, and duration

24 of telephone calls, as well as the phone numbers used to place and receive the calls. *See, e.g.,*

25

26 **Classified Declaration of** ████████
27 **National Security Agency,** *Ex Parte In Camera* **Review**
**MDL No. 06-1791-VRW**

28   TOP SECRET//COMINT████████//TSP//ORCON/NOFORN//MR   13

TOP SECRET//COMINT███████//TSP//ORCON/NOFORN//MR

1  *In Camera* Alexander Declaration in *Verizon* Cases ¶ 32. The telephony metadata NSA
2  collected ████████ prior to the FISC order is segregated in an online database from that
3  collected after May 2006 under the FISC Order, but remains subject to querying for analysis of
4  ████████████████████ contacts by those reasonably believed to be associated with al
5  Qaeda and affiliated terrorist organizations.

6      25.   (TS//SI//████████//TSP//OC/NF) For operational reasons, NSA maintains
7  approximately five years worth of telephony metadata in its online database. Data acquired
8  after 2003 under Presidential authorization is preserved electronically in an online data base.
9  NSA has migrated to tapes telephony metadata collected during the period 2001-02, since the
10 current operational relevance of that data has declined and continuing to maintain it on current
11 operational systems would be unnecessary and would encumber current operations with more
12 recent data. NSA's operational policy is to continue to migrate telephony metadata beyond five
13 years old from an online database to tapes for preservation. To the extent NSA is required to
14 halt the migration of older telephony metadata to tape, less relevant data would be retained in
15 the operational system, encumbering the performance of the current online database because of
16 the volume of data, and this would severely undermine NSA's ability to identify ████████
17 contacts of suspected terrorist communications.

18     26.   (TS//SI//TSP//OC/NF) Information Pertaining to Queries of Meta-Data: NSA is
19 preserving documentation of requests that it query its database of Internet and telephony
20 metadata for analysis. *See In Camera* Alexander Declaration in *Verizon* Cases ¶¶ 31-32 and *In*
21 *Camera* Alexander Declaration in *Hepting* Cases ¶¶ 37-43 (describing contact chaining ████████
22 ████████████ of metadata). This documentation indicates the selectors (Internet addresses
23 and phone numbers) that NSA searched in order to analyze particular contacts ████████████
24 ████████████ for that selector, and the basis for its analysis for the selectors under which the
25

26 **Classified Declaration of** ████████████
27 **National Security Agency,** *Ex Parte In Camera* **Review**
   **MDL No. 06-1791-VRW**
28      TOP SECRET//COMINT███████//TSP//ORCON/NOFORN//MR          14

TOP SECRET//COMINT~~████~~//TSP//ORCON/NOFORN//MR

1   metadata was queried. Documentation of metadata queries is maintained by NSA's Signals

2   Intelligence Directorate in electronic form.

3       27.    (TS//SI//TSP//OC/NF) Reports of Metadata Analysis: NSA is preserving

4   documentation of its analysis of Internet and Telephony Metadata obtained pursuant to

5   Presidential authorization and prior to the respective FISC Orders for these activities. These

6   reports include the results of any contact chaining ████████ for particular selectors

7   reasonably believed to be that of a member or agent of al Qaeda or affiliated terrorist

8   organization. This documentation sets forth NSA's assessment of a particular Internet or

9   telephony selector's contacts ████████ in order to detect other potential al

10  Qaeda associates. Reports documenting metadata analysis are maintained by NSA's Signals

11  Intelligence Directorate in both an electronic database and in paper form.

12      **6.    (TS/SI) Miscellaneous NSA Information**

13      28.    (TS//SI~~████~~//TSP//OC/NF) As summarized below, NSA is also preserving

14  miscellaneous categories of administrative records related to the presidentially-authorized

15  activities implicated by these lawsuits (TSP content collection, Internet metadata collection,

16  telephony metadata collection). These categories include:

17  (i)     *Legal Opinions* and analysis relating to the lawfulness of the TSP and metadata
18          activities. This information is maintained in paper form in the Office of the General
            Counsel.

19  (ii)    *Materials Related to Briefings to Members of Congress and the FISA Court* on the TSP
20          and metadata activities since their inception. These documents are being maintained
            and preserved in paper form by the Program Manager's Office for these NSA activities.
21          In addition, an electronic version of the latest iteration of these briefings is also
            maintained. Although no briefing materials have been destroyed since the initiation of
22          these lawsuits in 2006, it is possible that not all earlier iterations of briefings have been
            preserved.

23  (iii)   *NSA Internal Oversight Documents* of the presidentially-authorized TSP and metadata
24          collection activities, including reports by the NSA General Counsel and the NSA
            Inspector General of the operation of these activities. NSA also is preserving agendas
25          and notes of regular monthly meetings between the Office of the General Counsel,

26  **Classified Declaration of** ████████
    **National Security Agency,** *Ex Parte In Camera* **Review**
27  **MDL No. 06-1791-VRW**

28      TOP SECRET//COMINT~~████~~//TSP//ORCON/NOFORN//MR        15

TOP SECRET//COMINT███████//TSP//ORCON/NOFORN//MR

Office of the Inspector General, and the Signals Intelligence Directorate, which review and address legal and operational issues concerning the TSP and metadata collection activities described herein.

(iv)   *Classification Guides* that address the classification status, processing, dissemination, and reporting of intelligence traffic and information obtained pursuant to the presidential authorization. This guidance, which NSA intelligence analysts use in analyzing TSP traffic, includes instructions on how to designate and protect TSP information in intelligence reports, how to designate its classification status, and how to implement NSA minimization procedures in drafting reports (typically procedures that require the minimization of the names of U.S. persons mentioned in such reports who are not foreign intelligence targets). This information is maintained in electronic form.

(v)    *Technical Information* concerning the manner in which presidentially-Authorized activities were implemented. ███████████████████████████ such as technical proposals, and technical plans for undertaking particular tasks.



TOP SECRET//COMINT ▮▮▮▮//TSP//ORCON/NOFORN//MR

Classified Declaration of ▮▮▮▮
National Security Agency, *Ex Parte In Camera* Review
MDL No. 06-1791-VRW

TOP SECRET//COMINT ▮▮▮▮//TSP//ORCON/NOFORN//MR    17



TOP SECRET//COMINT█████████//TSP//ORCON/NOFORN//MR

Classified Declaration of █████████
National Security Agency, *Ex Parte In Camera* Review
MDL No. 06-1791-VRW

TOP SECRET//COMINT█████████//TSP//ORCON/NOFORN//MR          18


TOP SECRET//COMINT██████//TSP//ORCON/NOFORN//MR

Classified Declaration of ██████
National Security Agency, *Ex Parte In Camera* Review
MDL No. 06-1791-VRW



TOP SECRET//COMINT███████//TSP//ORCON/NOFORN//MR

Classified Declaration of ███████
National Security Agency, *Ex Parte In Camera* Review
MDL No. 06-1791-VRW

TOP SECRET//COMINT███████//TSP//ORCON/NOFORN//MR    21



TOP SECRET//COMINT █████████//TSP//ORCON/NOFORN//MR

Classified Declaration of █████████
National Security Agency, *Ex Parte In Camera* Review
MDL No. 06-1791-VRW

TOP SECRET//COMINT █████████//TSP//ORCON/NOFORN//MR

22

TOP SECRET//COMINT███████//TSP//ORCON/NOFORN//MR



Classified Declaration of ███████
National Security Agency, *Ex Parte In Camera* Review
MDL No. 06-1791-VRW

TOP SECRET//COMINT███████//TSP//ORCON/NOFORN//MR               23



TOP SECRET//COMINT████████//TSP//ORCON/NOFORN//MR

**Classified Declaration of** ████████
National Security Agency, *Ex Parte In Camera* Review
MDL No. 06-1791-VRW

TOP SECRET//COMINT████████//TSP//ORCON/NOFORN//MR          24



TOP SECRET//COMINT███████//TSP//ORCON/NOFORN//MR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26  Classified Declaration of ███████
27  National Security Agency, *Ex Parte In Camera* Review
    MDL No. 06-1791-VRW
28

TOP SECRET//COMINT███████//TSP//ORCON/NOFORN//MR                25

[redacted]

* * *

54. (U) If the Court has any questions concerning this submission, the NSA is prepared to address them and assist the Court further through secure *in camera, ex parte*

TOP SECRET//COMINT███████████//TSP//ORCON/NOFORN//MR

1   proceedings.

2       I declare under penalty of perjury that the foregoing is true and correct.

3

4   DATE: _25 October 2007_

5

6

7                                    Deputy Chief of Staff for Operations and Support
                                     Signals Intelligence Directorate
8                                    National Security Agency

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  **Classified Declaration of** ███████
    **National Security Agency,** *Ex Parte In Camera* **Review**
27  **MDL No. 06-1791-VRW**

28      TOP SECRET//COMINT███████████//TSP//ORCON/NOFORN//MR          27