STUART F. DELERY
Assistant Attorney General
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Deputy Branch Director
JAMES J. GILLIGAN
Special Litigation Counsel
james.gilligan@usdoj.gov
MARCIA BERMAN
Senior Trial Counsel
marcia.berman@usdoj.gov
BRYAN DEARINGER
Trial Attorney
RODNEY PATTON
Trial Attorney
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, NW, Rm. 7132
Washington, D.C. 20001
Phone: (202) 514-2205; Fax: (202) 616-8470
*Attorneys for the Government Defs. in their Official Capacity*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| CAROLYN JEWEL, *et al.*, | Case No. 4:08-cv-04373-JSW |
| Plaintiffs, | Case No. 4:07-cv-00693-JSW |
| v. | **GOVERNMENT DEFENDANTS'** |
| NATIONAL SECURITY AGENCY, *et al.*, | **BRIEF REGARDING COMPLIANCE** |
| Defendants. | **WITH PRESERVATION ORDERS** |
| VIRGINIA SHUBERT, et al., | No hearing scheduled |
| Plaintiffs, | Oakland Courthouse, Courtroom 5, |
| v. | 2nd Floor |
| BARACK OBAMA, *et al.*, | The Honorable Jeffrey S. White |
| Defendants. | |

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

    A.    The History of the *Jewel*, *Shubert*, and Multidistrict Litigation and the
            Preservation Dispute ................................................................................. 2

    B.    The Present Preservation Dispute ........................................................................ 8

ARGUMENT ...................................................................................................................... 10

    I.    COMMON LAW PRESERVATION OBLIGATIONS IN CIVIL
          LITIGATION ................................................................................................... 10

    II.    THE PRESERVATION ORDERS IN *JEWEL* AND *SHUBERT* DO NOT
          REQUIRE THE GOVERNMENT TO PRESERVE INFORMATION
          RELATED TO FISC-AUTHORIZED ACTIVITIES, BECAUSE THOSE
          CASES CHALLENGED ONLY ACTIVITY THAT WAS *NOT*
          AUTHORIZED BY THE FISC OR ANY OTHER COURT. .............................. 13

    III.    THE GOVERNMENT HAS COMPLIED FULLY WITH THE
          PRESERVATION  ORDERS ISSUED IN *JEWEL* AND *SHUBERT*,
          AND CONTINUES TO DO SO. ........................................................................ 26

CONCLUSION ................................................................................................................... 30

# TABLE OF AUTHORITIES

## CASES

*Apple Inc. v. Samsung Elec. Co., Ltd.*,

    881 F. Supp. 2d 1132 (N.D. Cal. 2012) ................................................................. 10

*Clapper v. Amnesty Int'l*,

    133 S. Ct. 1138 (2013) ............................................................................................ 16

*Columbia Pictures Indus. v. Bunnell*,

    2007 WL 2080419 (C.D. Cal. May 29, 2007) ....................................................... 12

*Donini Intern., SPA v. Satec, LLC*,

    2006 WL 695546 (S.D.N.Y. Mar. 16, 2006) ......................................................... 12

*In re Napster, Inc. Copyright Litig.*,

    462 F. Supp. 2d 1060 (N.D. Cal. 2006) ................................................................. 10

*Jardin v. Datallegro, Inc.*,

    2008 WL 4104473 (S.D. Cal. Sept. 3, 2008) ........................................................ 12

*Jewel v. Nat'l Sec. Agency*,

    965 F. Supp. 2d 1090 (N.D. Cal. 2013) ................................................................... 3

*Orbit One Commc'ns, Inc. v. Numerex Corp.*,

    271 F.R.D. 429 (S.D.N.Y. 2010) .................................................................... 10, 11

*Pippins v. KPMG LLP*,

    279 F.R.D. 245 (S.D.N.Y. 2012) .................................................................... 11, 12

*Rimkus Consulting Grp., Inc. v. Cammarata*,

    688 F. Supp. 2d 598 (S.D. Tex. 2010) ................................................................... 11

*Silvestri v. Gen. Motors Corp.*,

    271 F.3d 583 (4th Cir. 2001) ................................................................................. 10

*Sloan Valve Co. v. Zurn Indus., Inc.*,

    No. 10-CV-204, 2012 WL 1886353 (N.D. Ill. May 23, 2012) ............................. 11

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,

    269 F.R.D. 497 (D. Md. 2010) ........................................................................ 10, 11

*West v. Goodyear Tire & Rubber Co.*,

    167 F.3d 776 (2d Cir. 1999) ................................................................................. 10

*Young v. Facebook, Inc.*,

    2010 WL 3564847 (N.D. Cal. Sept. 13, 2010) ........................................................ 12

*Zubulake v. UBS Warburg LLC*,

    220 F.R.D. 212 (S.D.N.Y. 2003) ........................................................................... 10

*Zubulake v. UBS Warburg LLC*,

    229 F.R.D. 422 (S.D.N.Y. 2004) ........................................................................... 10

**STATUTES**

18 U.S.C. § 2511(2)(a)(ii) ......................................................................................... 14

18 U.S.C. § 2703(e) ................................................................................................... 14

18 U.S.C. § 2707(e) ................................................................................................... 14

50 U.S.C. § 1803(a) ..................................................................................................... 4

50 U.S.C. § 1861 ......................................................................................................... 9

50 U.S.C. § 1861(e) ................................................................................................... 14

50 U.S.C. § 1881a ...................................................................................................... 16

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 26 ................................................................................................. 10, 12

Fed. R. Civ. P. 34(a)(1) ............................................................................................. 10

## INTRODUCTION

While there have been many disputes in the course of this long-running litigation, until recently there has been no dispute about what the Plaintiffs are complaining about—the legality of certain alleged intelligence-gathering activities authorized by President Bush after the September 11, 2001 terrorist attacks. More specifically, Plaintiffs claim that following the September 11 terrorist attacks, the National Security Agency ("NSA"), pursuant to presidential authorization and with the assistance of Plaintiffs' telecommunications companies, indiscriminately intercepted the content and obtained the communications records, or metadata, of millions of ordinary Americans as part of an alleged "dragnet" communications surveillance. The gravamen of this complaint is that these activities occurred without any judicial approval and outside the requirements of statutory law. Indeed, it was this very concern that prompted the Government in 2004, 2006 and 2007 to obtain authorization from the Foreign Intelligence Surveillance Court ("FISC") for certain presidentially-authorized activities.

As the Court is aware, over the past year the Government has, in response to last summer's unprecedented, unauthorized, and unlawful disclosures by a former NSA contractor, officially acknowledged the existence and some information concerning the bulk telephony metadata program authorized by the FISC in 2006; the bulk Internet metadata program authorized by the FISC in 2004 and discontinued in 2011; certain information about the Government's use of authority conferred by Section 702 of the Foreign Intelligence Surveillance Act ("FISA") to collect, for foreign intelligence purposes, certain communications of non-U.S. persons located outside the United States, pursuant to approval of the FISC; and the fact that the two metadata collection activities were conducted prior to FISC authorization under presidential authorizations issued by President Bush in the wake of the September 11 attacks.

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

Plaintiffs now seek to recast their complaints to take advantage of these official disclosures and contend that the Government failed to preserve relevant evidence. Plaintiffs have not, however, sought to amend their complaints but instead make the argument that the complaints should be read to encompass the FISC-authorized activities. Such a reading is directly contrary to the actual allegations in the complaints and stretches them beyond recognition. The complaints and the parties' representations during the long course of this litigation firmly establish the reasonableness of the Government's understanding of Plaintiffs' complaints as challenging presidentially, not FISC, authorized intelligence-gathering activities.

The Government has fully complied with its preservation obligations by preserving information that may be relevant to Plaintiffs' actual claims. It has done so by diligently identifying the government agencies and components likely to have information that may be potentially relevant to this litigation, issuing specific notices to those entities as to their preservation duties, and confirming that those entities are indeed preserving a wide range of documents and information related to the NSA intelligence activities authorized by President Bush after 9/11 that may be relevant to the Plaintiffs' claims. Details regarding these considerable efforts are set forth in two declarations, one classified and one unclassified, that accompany this brief.

## BACKGROUND

A.    The History of the *Jewel*, *Shubert*, and Multidistrict Litigation and the Preservation Dispute

*Jewel* and *Shubert* are lawsuits challenging alleged surveillance activities authorized by the President after the 9/11 attacks, specifically on the grounds that these activities were undertaken without judicial approval and outside the requirements of statutory law, including the

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

2

1   FISA.  Plaintiffs claim "that the federal government, with the assistance of major

2   telecommunications companies, conducted widespread warrantless dragnet communications

3   surveillance of United States citizens following the attacks of September 11, 2001."  *Jewel v.*

4   *NSA*, 965 F. Supp. 2d 1090, 1097-98 (N.D. Cal. July 23, 2013).

5       *Shubert* was filed on May 17, 2006, and it was transferred to the *In re NSA*

6   *Telecommunications Records Litigation* Multi-District Litigation (MDL) proceeding (designated

7   as 3:06-md-1791-VRW (hereafter MDL-1791).  Joint Case Management Statement at 24 (*Jewel*

8   ECF No. 159).  The lead case in the Multi-District Litigation, *Hepting v. AT&T*, No. 06-cv-0672

9   (N.D. Cal.), was filed following President Bush's December 2005 public acknowledgment, in

10  response to media reports, that he authorized a program in which the NSA intercepted certain

11  international communications to or from the United States reasonably believed to involve a

12  member or agent of al Qaeda (later referred to as the Terrorist Surveillance Program ("TSP")).

13  *See* First Statement of Interest of the United States at 2 (*Hepting* ECF No. 82).  *Hepting* was filed

14  against AT&T entities and alleged that they assisted in a warrantless surveillance program

15  authorized by the President following the September 11 attacks by disclosing to the Government

16  the contents of the communications of, and the communications records about, millions of its

17  customers.  *Hepting* Amended Complaint ¶ 6 ("Am. Cmplt.") (*Hepting* ECF No. 8).

18      *Jewel*, filed on Sept. 18, 2008, was related to *Hepting*, on plaintiffs' motion.  *See* Admin.

19  Motion by Plaintiffs to Consider Whether Cases Should be Related ("Pls.' Mot. to Relate

20  Cases") (*Jewel* ECF No. 7); Plaintiffs' Opening Brief Re Evidence Preservation at 2 ("Pls.'

21  Preservation Brief") (*Jewel* ECF No. 191).  Four of the five plaintiffs who filed *Jewel* were also

22  plaintiffs in *Hepting*.  Pls.' Preservation Brief at 1.  Unlike *Hepting*, however, *Jewel* was brought

23  exclusively against the United States, its agencies, and current and former officials, not any

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

telecommunications carriers, although it alleged, as did *Hepting*, that AT&T assisted the Government with the alleged program.  Pls.' Motion to Relate Cases at 2-3.  The *Jewel* Plaintiffs' motion to relate the cases asserted that "*Jewel* and *Hepting* concern substantially the same transactions and events.  In particular, both cases allege the same facts:  that in 2001 the President authorized a program of domestic surveillance without court approval or other lawful authorization, and that through this Program, the government illegally obtained and continues to obtain with AT&T's assistance the contents of Plaintiffs' and class members' telephone and Internet communications, as well as records concerning those communications." *Id*. at 3.  *See also Jewel* Complaint ¶ 7 (*Jewel* ECF No. 1) ("In addition to eavesdropping on or reading specific communications, Defendants have indiscriminately intercepted the communications content and obtained the communications records of millions of ordinary Americans as part of the Program authorized by . . . President [Bush].").  The Plaintiffs also represented that the cases "raise identical legal questions."  Pls.' Motion to Relate Cases at 3.

The Government first asserted the state secrets privilege in the MDL litigation in 2006.  *See* 2006 Redacted DNI Decl. (*Jewel* ECF No. 222); 2006 Redacted NSA Decl. (*Jewel* ECF No. 224).  The Government submitted detailed, now-declassified as redacted declarations in support of its privilege assertion, in which it described intelligence-gathering activities at risk of disclosure from litigating the Plaintiffs' claims and the harm to national security that disclosure of those activities could reasonably be expected to cause.  The Government described the activities that were authorized by the President after the 9/11 attacks and also the transition that occurred as those activities were authorized by orders of the FISC, an Article III court (*see* 50 U.S.C. § 1803(a)), issued pursuant to the FISA.  The purpose of notifying the Court of the transition of the presidentially-authorized activities to orders of the FISC was to demonstrate that

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

4

litigating the Plaintiffs' claims about the legality of the activities under presidential authorization risked revealing activities that were ongoing.  Thus, the litigation of the Plaintiffs' claims could expose and compromise current sources and methods of intelligence gathering, causing harm to national security.  Particularly pertinent to the instant preservation issues, the Government specifically informed the Court in June 2006 that the FISC May 24, 2006 Order authorizing the Government to collect bulk telephony metadata contained a five-year retention limitation. Redacted Supplemental Declaration of John D. Negroponte, Director of National Intelligence, at 2 (June 16, 2006) (*Jewel* ECF No. 223) ("[T]he FISC has authorized the NSA to retain the meta data for five years, after which time it shall be destroyed.").

In the fall of 2007, Plaintiffs in the MDL-1791 litigation, represented by the same counsel that represents the *Jewel* Plaintiffs, moved the Court for an order requiring the preservation of evidence.  Plaintiffs' Motion for Order to Preserve Evidence (MDL-1791 ECF No. 373). Because the Government had asserted the state secrets privilege over facts necessary to litigate Plaintiffs' allegations of bulk collection of the content of the communications of millions of Americans and of bulk collection of communications records, the Government made clear in response to that motion that the parties were unable to discuss basic factual document preservation issues, such as what different types of potentially relevant information exists, where it is located, how it is being preserved, whether those steps are adequate, and whether additional steps are necessary or would be unduly costly or burdensome.  *See* United States' Opposition to Plaintiffs' Motion for an Order to Preserve Evidence at 2 (MDL-1791 ECF No. 386). Recognizing that it could not meaningfully confer with the Plaintiffs about basic document preservation issues, the Government submitted a classified declaration and supplemental memorandum (both now filed in redacted form) with its opposition to the Plaintiffs' motion that

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

5

described how potentially discoverable information, if any, was being preserved.  *See* United States' Notice of *In Camera*, *Ex Parte* Material (MDL-1791 ECF No. 387).  In its public opposition to the preservation motion, the Government referenced the classified record and offered to address any questions the Court might have about it in a classified setting.  United States' Opposition to Plaintiffs' Motion for an Order to Preserve Evidence at 2 (MDL-1791 ECF No. 386).

The purpose of the classified declaration submitted in response to the preservation motion in MDL-1791 was to "describe the policies and practices in place at NSA to preserve documents and information related to particular intelligence activities authorized by the President after the 9/11 attacks that are implicated by the claims in this proceeding . . . ."  Redacted Declaration of National Security Agency ¶ 2 ("Redacted NSA Decl.") (attached as Ex. A to Gvt. Defs.' Response to Pls.' Opening Brief Re: Preservation, *Jewel* ECF No. 193-1).  The declaration made clear, in a number of places, that Plaintiffs challenged activities that occurred under presidential authorization, not under orders of the FISC, and that the declaration was therefore limited to describing information collected pursuant to presidential authorization and the retention thereof. In particular, the declaration stated that "[b]ecause Plaintiffs have not challenged activities occurring pursuant to an order of the FISC, this declaration does not address information collected pursuant to such an authorization or any retention policies associated therewith." Redacted NSA Decl. ¶ 12 n.4.  *See also id.* ¶ 23 ("To be clear, the presidentially authorized collection of internet metadata is segregated from information collected under the FISC Order of July 2004 and has not been destroyed."); ¶ 24 ("The telephony metadata NSA collected [redacted] prior to the FISC order is segregated in an online database from that collected after May 2006 under the FISC Order . . . ."); ¶ 27 ("NSA is preserving documentation of its analysis

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

6

of Internet and telephony metadata obtained pursuant to Presidential authorization and prior to the respective FISC Orders for these activities.").  At the conclusion of this declaration, the Government offered to address any questions the Court may have had about the classified submission through secure *in camera*, *ex parte* proceedings.  *Id.* ¶ 54.  The Court made no further inquiry of the Government regarding what information was and was not being preserved.

The Government coupled the declaration with a classified memorandum.  This memorandum also informed the Court that the NSA was preserving documents and information related to the presidentially-authorized activities which may be relevant to the Plaintiffs' claims, not documents and information related to activities occurring pursuant to an order of the FISC, because the Plaintiffs' claims were that the challenged activities occurred without court approval. *See, e.g.*, Redacted Supplemental Memorandum of the United States in Opposition to Plaintiffs' Motion for Order to Preserve Evidence at 3 n.4 (attached as Ex. B to Gvt. Defs.' Response to Pls.' Opening Brief Re: Preservation, *Jewel* ECF No. 193-2) ("Because Plaintiffs have not challenged activities occurring pursuant to an order of the FISC, the NSA classified submission does not address information collected pursuant to FISA authorization or any retention policies associated therewith."); at 8 ("As set forth by NSA, telephony metadata collected under presidential authorization is being preserved by NSA . . . ."); at 9 ("any discussion of the matter would also risk or require disclosure of the FISC Telephone Records Collection Order itself, to demonstrate an important limitation on the scope of potentially relevant evidence concerning telephony metadata."); at 10 ("NSA . . . preserves the [Internet] metadata collected prior to the July 2004 FISC Pen Register Order . . . .").

On November 6, 2007, the Court entered a preservation order in the MDL litigation (which, again, included *Hepting,* the predecessor to *Jewel* and *Shubert*).  MDL-1791 ECF No.

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

393.  In that order, the Court reminded the parties of their duties to preserve evidence that may

be relevant to the claims in the action.  *Id.* at 2.  The Court instructed that preservation includes

taking "reasonable" steps to prevent the destruction of information "reasonably anticipated to be

subject to discovery . . . ."  *Id.* at 3.  Then the Court directed counsel "to inquire of their

respective clients if the business practices of any party involve the routine destruction . . . of such

materials and, if so, direct the party, *to the extent practicable for the pendency of this order*,

either to (1) halt such business processes; (2) sequester or remove such material from the

business process; or (3) arrange for the preservation of complete and accurate duplicates or

copies of such material, suitable for later discovery if requested."  *Id.* (emphasis added).

      In light of the substantially similar allegations between *Hepting* and *Jewel*, and the fact

that the Government had already set forth for the Court the actions it had taken to preserve

evidence related to those allegations, there was little purpose in re-litigating the same

preservation issue in *Jewel*.  Accordingly, in November 2009, the parties in *Jewel* jointly moved

the Court to enter a preservation order identical in substance to the MDL preservation order.

*Jewel* ECF No. 50.  On November 16, 2009, the Court issued the parties' proposed order, noting

that it was based on the MDL order.  *Jewel* ECF No. 51.  The *Jewel* preservation order contains

the language quoted above.

      B.     The Present Preservation Dispute

      Following the unauthorized disclosure in June 2013 of a FISC order, issued on April 25,

2013, which directed the production to the NSA of bulk call detail records, and the

Government's confirmation of the authenticity of that order, several plaintiffs filed suit in

various United States District Courts challenging the legality of the Government's receipt of bulk

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

8

telephony metadata pursuant to FISC orders.[1]  The complaints in these cases, in contrast to the complaints in *Jewel*, *Shubert*, *Hepting*, and other cases in the MDL proceeding, challenge the legality of the Government's acquisition of bulk telephony metadata pursuant to FISC orders (specifically, orders issued under Section 215 of the USA PATRIOT Act, Pub. L. No. 107-56 (2001) (Section 215), codified at 50 U.S.C. § 1861).  *See, e.g.*, *First Unitarian* First Amended Complaint ¶ 4 ("FAC") (*First Unitarian* ECF No. 9).

As the Court is aware, in February 2014, the Government sought relief from the FISC's requirement that telephony metadata acquired under the FISC's orders be destroyed after five years, to enable the Government to preserve information that may be relevant to the new cases challenging the FISC's telephony metadata orders.  The FISC denied without prejudice the Government's request, causing the Plaintiffs in *Jewel* and *First Unitarian* to seek an order from this Court enjoining the destruction of any telephony metadata.  The Court held a hearing on March 19, 2014 and issued a preservation order to govern *First Unitarian* on March 21, 2014 (*First Unitarian* ECF No. 103), but it reserved addressing the question of whether the Government had complied with the Court's preservation order in *Jewel*, pending further briefing.

This brief responds to the Court's instruction at the end of the March 19 hearing that the Government brief its compliance with this Court's preservation order in *Jewel*, and to the *Shubert* Plaintiffs' unopposed request that this briefing include compliance with this Court's preservation order in *Shubert*.  *Shubert* ECF No. 117.

---

[1]    *See, e.g.*, *American Civil Liberties Union v. Clapper*, No. 13-cv-3994 (WHP) (S.D.N.Y.); *Klayman v. Obama*, Nos. 13-cv-851, 13-cv-881, 14-cv-092 (RJL) (D.D.C.); *Smith v. Obama*, No. 13-cv-00257 (D. Idaho); *First Unitarian Church v. NSA*, No. 3:13-cv-3287 (JSW) (N.D. Cal.); *Paul v. Obama*, No. 14-cv-0262 (RJL) (D.D.C.).

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

9

**ARGUMENT**

**I.    COMMON LAW PRESERVATION OBLIGATIONS IN CIVIL LITIGATION**

When litigation is reasonably anticipated against a party, that party has a common law obligation to preserve—i.e., identify, locate, and maintain—information that is "relevant to specific, predictable, and identifiable litigation." *Apple Inc. v. Samsung Elec. Co., Ltd.*, 881 F. Supp. 2d 1132, 1137 (N.D. Cal. 2012). "It is well-established that the duty pertains only to relevant documents." *Id.* (collecting cases). "Relevant" in this context means relevant for purposes of discovery, *see, e.g.*, Fed. R. Civ. P. 26(b)(1), 34(a)(1), including information that relates to the claims or defenses of any party, and that which is reasonably calculated to lead to the discovery of admissible evidence. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217-18, 220 (S.D.N.Y. 2003) ("*Zubulake IV* ").

Once the duty to preserve takes effect, the preserving party is "required to suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1070 (N.D. Cal. 2006); *Apple Inc.*, 881 F. Supp. 2d at 1137; *see Jewel v. NSA*, 08-cv-04373-JSW, ECF No. 51 at 3 (ordering parties to halt destruction policies "to the extent practicable for the pendency of this order"). The common law duty to preserve relevant, discoverable information persists throughout the litigation. *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432-33 (S.D.N.Y. 2004) ("*Zubulake V* ").

Reasonableness and proportionality are recurring touchstones informing the extent of a party's preservation obligations. *Apple Inc.*, 881 F. Supp. 2d at 1137 n.26, 1144; *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010). *Orbit One Commc'ns, Inc. v.*

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

*Numerex Corp.*, 271 F.R.D. 429, 436 n.10 (S.D.N.Y. 2010). Because the duty to preserve "is neither absolute, nor intended to cripple organizations," *Victor Stanley, Inc.*, 269 F.R.D. at 523 (internal quotation omitted), courts have explained that preservation obligations require a litigant to take reasonable and proportional steps to preserve discoverable information under the circumstances. *Id.* at 522-23; *see also, e.g.*, *Sloan Valve Co. v. Zurn Indus., Inc.*, 2012 WL 1886353, at *11-12 (N.D. Ill. May 23, 2012) ("A party fulfills its duty to preserve evidence if it acts reasonably."). Determining whether preservation conduct is acceptable in a given case "depends on what is reasonable, and that in turn depends on whether what was done—or not done—was proportional to that case." *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010); *see also Pippins v. KPMG LLP*, 279 F.R.D. 245, 255 (S.D.N.Y. 2012) (explaining that this inquiry "depends heavily on the facts and circumstances of each case and cannot be reduced to a generalized checklist of what is acceptable or unacceptable") (internal quotations omitted).

Because "[p]reservation and production are necessarily interrelated," application of the proportionality and reasonableness principles to preservation "flow[] from the existence of th[ose] principle[s] under the Federal Rules of Civil Procedure." *Pippins*, 279 F.R.D. at 255 ("[P]roportionality is necessarily a factor in determining a party's preservation obligations."); *Orbit One Commc'ns, Inc.*, 271 F.R.D. at 436 n.10 ("Reasonableness and proportionality are surely good guiding principles for a court that is considering imposing a preservation order.").

To that end, Rule 26(b)(2)(C)(iii)'s "'proportionality' test for discovery" applies to the preservation context, *Pippins*, 279 F.R.D. at 255, insofar as it requires courts to "limit the frequency or extent of discovery," and thus the scope of preservation, where its "burden or expense . . . outweighs its likely benefit considering the needs of the case, the amount in

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

11

controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii); U.S. District Court for the Northern District of California, Guidelines for the Discovery of Electronically Stored Information ("ESI"), Guideline 1.03 ("The proportionality standard set forth in Fed. R. Civ. P. 26(b)(2)(C) . . . should be applied to," *inter alia*, "the preservation . . . of [electronically stored information (ESI)]."); *see also Pippins*, 279 F.R.D. at 255 (citing *The Sedona Conference Commentary on Proportionality in Electronic Discovery*, 11 SEDONA CONF. J. 289, 291 (2010) ("The burdens and costs of preservation of potentially relevant information should be weighed against the potential value and uniqueness of the information when determining the appropriate scope of preservation. . . . Technologies to reduce cost and burden should be considered in the proportionality analysis."))[2] For this reason, courts considering a party's preservation obligations, including whether additional preservation measures are necessary, balance the burden of preserving certain information with the moving party's showing of its relevance. *See, e.g.*, *Young v. Facebook, Inc.*, 2010 WL 3564847, at *1 (N.D. Cal. Sept. 13, 2010); *Jardin v. Datallegro, Inc.*, 2008 WL 4104473, at *1 (S.D. Cal. Sept. 3, 2008); *Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419, at *4-6, 13 (C.D. Cal. May 29, 2007); *Donini Intern., SPA v. Satec, LLC*, 2006 WL 695546, at *8 (S.D.N.Y. Mar. 16, 2006).

---

[2]    *See also, e.g.*, Fed. R. Civ. P. 26(b)(2)(B) (establishing additional limitations on the discovery of ESI, including ESI "not reasonably accessible because of undue burden or cost"); *id.* Advisory Comm. Notes to 2006 Amendments (stating that such burdens and costs are properly considered as part of the proportionality analysis).

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

12

**II.    THE PRESERVATION ORDERS IN *JEWEL* AND *SHUBERT* DO NOT REQUIRE THE GOVERNMENT TO PRESERVE INFORMATION RELATED TO FISC-AUTHORIZED ACTIVITIES, BECAUSE THOSE CASES CHALLENGED ONLY ACTIVITY THAT WAS *NOT* AUTHORIZED BY THE FISC OR ANY OTHER COURT**

The 2007 preservation order in MDL-1791, which applied to *Shubert*, and the 2009 preservation order in *Jewel*, did not require the Government to preserve information related to the newly FISC-authorized intelligence-gathering activities, for the fundamental reason that the Plaintiffs' complaints in those cases did not challenge FISC-authorized activity, under any reasonable reading.  Therefore, such information would not be relevant to the claims in the action.  Preservation Orders at 2.

The lynchpin of the MDL cases in which the original preservation order was litigated was the claim that the alleged government program to intercept telephone, Internet, and email communications and communications records was done *without* the authorization of any court, including the FISA court.  *See, e.g.*, *Hepting* Am. Cmplt. ¶ 2 ("This case challenges the legality of Defendants' participation in a secret and illegal government program to intercept and analyze vast quantities of Americans' telephone and Internet communications, surveillance done without the authorization of a court and in violation of federal electronic surveillance and telecommunications statutes, as well as the First and Fourth Amendments to the United States Constitution."), ¶ 3 ("This surveillance program, purportedly authorized by the President at least as early as 2001 and primarily undertaken by the National Security Agency ("NSA") without judicial review or approval, intercepts and analyzes the communications of millions of Americans."); *Shubert* Second Amended Complaint, filed May 8, 2012, ¶ 2 ("SAC") (MDL-1791 ECF No. 771) ("Without the approval of Congress, without the approval of any court, and without notice to the American people, President George W. Bush authorized a secret program to

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

13

spy upon millions of innocent Americans, including the named plaintiffs."), ¶ 9 ("This class

action is brought on behalf of all present and future United States persons who have been or will

be subject to electronic surveillance by the National Security Agency without a search warrant, a

court order, or other lawful authorization since September 12, 2001."), ¶ 55 ("Although it is true

that federal law requires law enforcement officers to get permission from a federal judge to

wiretap, track, or search, President Bush secretly authorized a Spying Program that did none of

those things."), ¶ 66 ("The Program admittedly operates 'in lieu of' court orders or other judicial

authorization . . . ."), ¶ 93 ("Prior to its initiation, defendants never sought authorization from the

FISA Court to conduct the Spying Program."); Master Consolidated Complaint Against MCI

Defendants and Verizon Defendants ¶ 3 (MDL-1791 ECF No. 125) ("This case challenges the

legality of Defendants' participation in an illegal federal government program to intercept and

analyze vast quantities of Americans' telephone and electronic communications and records,

surveillance done without any statutorily authorized permission, customers' knowledge or

consent, or the authorization of a court . . . .").

    Indeed, it was important for the complaints in the cases in the MDL-1791 litigation, filed

against telecommunications service providers, to claim that the challenged activity occurred

without a court order, because several federal statutes protect private parties from suit for

providing assistance to the Government at the direction of a court order.  *See* 50 U.S.C. §1861(e)

(FISA); 18 U.S.C. §§ 2707(e), 2703(e) (ECPA); 18 U.S.C. § 2511(2)(a)(ii) (Wiretap Act).

Moreover, the factual allegations of the complaints are the facts about the presidentially-

authorized activities—*i.e.*, the collection of communications content and records under the

President's Surveillance Program.  *See Shubert* SAC ¶¶ 53-96; Master Consol. Cmplt. ¶¶ 136-

158; *Hepting* Am. Cmplt. ¶¶ 32-41.

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

14

Although the Plaintiffs in *Jewel* sued the Government, not telecommunications service providers, their complaint repeats at length the allegations in *Hepting*, concerns "substantially the same transactions and events" (Pls.' Motion to Relate Cases at 3), and, again, is unmistakably about the presidentially-authorized intelligence activities allegedly conducted without a court order. *See, e.g.*, *Jewel* Complaint ¶ 7 ("In addition to eavesdropping on or reading specific communications, Defendants have indiscriminately intercepted the communications content and obtained the communications records of millions of ordinary Americans as part of the Program authorized by . . . President [Bush]."), ¶ 39 (President Bush "authoriz[ed] "a range of surveillance activities . . . without statutory authorization or court approval, including electronic surveillance of Americans' telephone and Internet communications (the 'Program')"), ¶ 76 ("Defendants' above-described acquisition in cooperation with AT&T of . . . communications content and non-content information is done without judicial, statutory, or other lawful authorization, in violation of statutory and constitutional limitations, and in excess of statutory and constitutional authority."), ¶ 92 ("Defendants' above-described solicitation of the disclosure by AT&T of . . . communications records . . . is done without judicial, statutory, or other lawful authorization, in violation of statutory and constitutional limitations, and in excess of statutory and constitutional authority."),  ¶¶ 110, 120, 129, 138 ("Defendants have [acquired] . . . contents of communications, and records pertaining to . . . communications . . . without judicial or other lawful authorization, probable cause, and/or individualized suspicion, in violation of statutory and constitutional limitations, and in excess of statutory and constitutional authority.").[3]

---

[3]   Plaintiffs highlight the inclusion of the words "without . . . probable cause and/or individualized suspicion" in these latter allegations. *See* Plaintiffs' Reply Brief Re Evidence Preservation at 8 ("Pls.' Preservation Reply") (*Jewel* ECF No. 196).  The suggestion that the Government should have read these few words to mean the secret FISC orders were also at issue

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

15

Plaintiffs' assertion that FISC-authorized activities are at issue in *Jewel* and *Shubert* is also belied by their failure to raise any challenge to such activities even after it was made public that surveillance under the presidentially-authorized TSP was being transitioned to FISA authority.  While the Government's bulk collection of telephony metadata and Internet metadata pursuant to FISC orders was secret until recently, the fact that the collection of communications content that occurred under the TSP had been brought under the FISA was publicly acknowledged, first when it was publicly announced in January 2007 that the TSP was being transitioned to FISA orders, and secondly when Congress enacted the Protect America Act of 2007 (PAA) and, later, the FISA Amendments Act of 2008 ("FAA"), which included Section 702 of the FISA, 50 U.S.C. § 1881a.  Despite the fact that these developments preceded the filing of the *Jewel* complaint and Plaintiffs had knowledge of them, *see* Pls.' Rule 1006 Summary of Evidence at 46 (*Jewel* ECF No. 30-1); *Clapper v. Amnesty International*, 133 S. Ct. 1138, 1146 (2013) (challenging legality of Section 702), they did nothing to challenge any FISA-authorized activities in the *Jewel* complaint or to change their allegations in *Hepting*.

Instead, the *Jewel* Plaintiffs distanced their complaint from these FISA-authorized activities.  In a January 2007 filing, Plaintiffs explained that the transition of the TSP to FISC orders was "irrelevant" to Plaintiffs' claim of dragnet surveillance of communications, because the TSP and the FISC orders involved targeted, not bulk, collection of communications.  Pls.' Preservation Reply at 12 (quoting Pls.' Opp. to Stay at 3-4 n.2 (MDL-1791 ECF No. 128) (Jan. 17, 2007)).  At another point in the litigation, Plaintiffs confirmed that "none of the assistance alleged in the various complaints was provided pursuant to the PAA or the FAA."  Pls.' Rule

---

ignores the overall thrust of the allegations, indeed the entire complaint, which contended the activities occurred without judicial authorization of any kind.

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

16

1006 Summary of Evidence at 41 (*Jewel* ECF No. 113).  Plaintiffs now contend that the burden

was on the Government, after reading these statements, to have clarified the scope of Plaintiffs'

claims with them (Pls' Preservation Reply at 12-13), but the scope was in fact clear—Plaintiffs

were undoubtedly challenging the activities that were authorized by President Bush, not the

FISC.  The Government was not obligated by the MDL or *Jewel* preservation orders to preserve

information about FISC-authorized activities that Plaintiffs themselves deemed irrelevant to their

claims.

Plaintiffs consistently framed their claims as challenges to the legality of presidentially-

authorized activities unauthorized by any court order, until the Government recently disclosed

the existence of the FISC-authorized telephony and Internet metadata programs.  *See, e.g.*,

Plaintiffs' Request for Judicial Notice at 2, 4 (*Hepting* ECF No. 20) (requesting the court take

judicial notice of facts including that in the fall of 2001, the President authorized the NSA to

launch a secret electronic surveillance program; "Under the Program, the NSA intercepts

communications without obtaining a warrant or any other type of judicial authorization."); May

1, 2006 letter from Plaintiffs to Hon. Vaughn R. Walker at 2 (*Hepting* ECF No. 94) (explaining

that Plaintiffs' motion for preliminary injunction contends that "defendants have received no

court order or other judicial authorization for this broader [surveillance] program"); Plaintiffs'

Case Management Statement at 1-2 (*Hepting* ECF No. 109) (Plaintiffs "contend that defendants

have received no court order or other judicial authorization for this broader program, and that

defendants have received no executive branch authorization that comports with the Foreign

Intelligence Surveillance Act, the Wiretap Act, or any other congressionally-established

procedure."); Plaintiffs' Opposition to Government Defendants' Motion to Dismiss and For

Summary Judgment at 6-7 (*Jewel* ECF No. 29) (certain counts of the complaint "seek equitable

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency*
(08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

17

relief against Government Officer Defendants Alexander, Holder, and Blair on the grounds that

they lack statutory authority for the dragnet surveillance they are conducting and that they are

exceeding statutory limitations on their authority."); Plaintiffs' Motion for Partial Summary

Judgment at 6-9 (*Jewel* ECF No. 83) and Plaintiffs' Opposition to Defs.' Third Motion to

Dismiss and for Summary Judgment at 2-5, 18 (*Shubert* ECF No. 76) (discussing the facts of the

presidentially-authorized activities).

        Similarly, the Government consistently articulated its understanding of Plaintiffs' claims

as being about presidentially-authorized activities, not FISC-authorized activities.  These

statements occurred on the public record, not in secret as Plaintiffs maintain (*see* Pls'

Preservation Reply at 2, 5, 6, 7, 9, 13).  In filing after filing, the Government described Plaintiffs'

claims as a challenge to the alleged surveillance activities authorized by the President after the

9/11 attacks.  But the Government also demonstrated that it believed Plaintiffs' assertions that

they were not challenging FISC-authorized activities.  *See, e.g.*, United States' Reply in Support

of Mot. to Dismiss or, in the Alternative, for Summ. Judgment (MDL-1791 ECF No. 520) at 32

n.29 ("All of the claims in this litigation are premised on the alleged absence of court orders in

support of the alleged activities . . . ."); United States' Response to Plaintiffs' Mem. of Points

and Authorities in Response to Court's May 17, 2006 Minute Order at 11 (*Hepting* ECF No.

145) ("Plaintiffs' claims are based on their contention that the alleged surveillance activities

should have occurred under FISA, but allegedly did not . . . ."); Government Defendants' Reply

in Support of Second Motion to Dismiss and For Summary Judgment at 10 (*Jewel* ECF No. 119)

("For this proposition [that any alleged activity is ongoing], plaintiffs cite statements concerning

the transition of the Terrorist Surveillance Program—which they do not challenge—to FISA

authority in January 2007, as well as media reports concerning the FISA Amendments of 2008—

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency*
(08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

18

also not challenged here. . . .  The 2010 Inspector General report also indicates that certain

classified activities authorized by the President after 9/11 in the same order have been

transitioned to authority of the FISA, again not challenged here."); Appellant's Brief in *Jewel*

Appeal, 2010 WL 4310707 at 7 ("Notably, plaintiffs do not challenge surveillance authorized by

the FISA Court.  Nor do plaintiffs challenge surveillance authorized by legislation, such as the

FISA Amendments Act of 2008.") (cited in Pls.' Preservation Brief at 9).

      The Government also informed the Court in classified filings of its understanding of

Plaintiffs' claims—most pertinently in the 2007 preservation declaration and memorandum it

submitted.  As clearly stated in that declaration and memorandum, the NSA was preserving,

pursuant to its litigation preservation obligations, a range of documents and information

concerning the presidentially-authorized activities at issue in the Plaintiffs' complaints, but not

information about activities conducted pursuant to FISC orders.  The Government specifically

explained that "[b]ecause Plaintiffs have not challenged activities occurring pursuant to an order

of the FISC, this declaration does not address information collected pursuant to such an

authorization or any retention policies associated therewith."  Redacted NSA Decl. ¶ 12 n.4; *see*

*also* Redacted Mem. at 3 n.4.  The submission specifically addressed telephony and Internet

metadata, explaining that metadata collected under presidential authorization had been

segregated from that collected under FISC order, and that NSA was preserving the metadata

collected under presidential authorization prior to the entry of the FISC orders.  Redacted NSA

Decl. ¶¶ 23-24; Redacted Mem. at 4, 8, 10.  *See also, e.g.,* Redacted NSA Decl. ¶ 6 (NSA is

preserving "Internet and telephony metadata collected under the Presidential authorization").

The Government further described the FISC telephony metadata and Internet metadata orders as

"important limitation[s] on the scope of potentially relevant evidence . . . ."  Redacted Mem. at 9,

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

11. At the time the parties were litigating the preservation order, the existence of these activities was highly classified, thus the Government could have provided this detailed discussion of what it was and was not preserving only to the Court, not the Plaintiffs.[4]

Following this submission, the Court entered a preservation order that contained language consistent with the Government's classified submission. The parties were instructed to preserve evidence "that may be relevant to this action" and that there was a reasonableness limitation to preservation. Nov. 6, 2007 Preservation Order (MDL-1791 ECF No. 393) at 3 (preservation includes taking "reasonable" steps to prevent the destruction of information "reasonably anticipated to be subject to discovery . . . ."). The Court directed counsel "to inquire of their respective clients if the business practices of any party involve the routine destruction . . . of such materials and, if so, direct the party, *to the extent practicable for the pendency of this order*, either to (1) halt such business processes; (2) sequester or remove such material from the business process; or (3) arrange for the preservation of complete and accurate duplicates or copies of such material, suitable for later discovery if requested." *Id*. (emphasis added). Moreover, Plaintiffs' contention that the Court entered a preservation order "that matched the one Plaintiffs sought" and that this shows that the Court determined the Government's preservation efforts to be inadequate (Pls.' Preservation Reply at 9-10) is wrong on both counts. The limiting language of "to the extent practicable for the pendency of this order" was not in the Plaintiffs' proposed preservation order, but rather was added by the Court. *See* Plaintiffs'

---

[4]    *See also* Redacted Certification of the Attorney General at ¶ 88 (*Jewel* ECF No. 219) ("[A]ny attempt to delineate between [redacted] for certain periods of time under overlapping or consecutive authority—[redacted] based on presidential authorization, then based on [redacted] FISC Orders, PAA Directives, or FISA Act of 2008 Directives—would necessarily risk the disclosure of intelligence activities that were and still are being undertaken pursuant to legal authority that is not being challenged in this case . . . .").

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

Proposed Interim Order to Preserve Evidence (MDL-1791 ECF No. 375).  And instructing the parties to preserve what they reasonably believe is relevant to the claims and defenses is by no means an indictment of the Government's viewpoint on the scope of the claims and what was and was not relevant.[5]

Plaintiffs' argument in support of their effort to recast their complaints as challenging FISC-authorized activities, in a transparent attempt to capitalize on recent official disclosures concerning those activities, is unpersuasive.  Plaintiffs first point to the statement in their Rule 56(f) declaration that they intended to take discovery regarding the fact of carriers' interception and disclosure of the communications and communications records of customers.  Pls.' Opening Preservation Br. at 7; Pls.' Preservation Reply at 11.  But that indicates nothing more than that they seek discovery concerning an allegation in the complaint that records were collected pursuant to presidential authorization in "the Program," and does not indicate Plaintiffs are challenging a FISC-authorized collection or records, nor does it undermine the Government's understanding of Plaintiffs' claims.

Plaintiffs also point to references to now declassified FISC activities wholly out of context in an effort to show their complaints must challenge activities undertaken *with* judicial authority.  Plaintiffs cite references they made to "post-FISC transition surveillance" in the Joint Case Management Statement filed by the parties on September 20, 2013 (*Jewel* ECF No. 159).

---

[5]   In fact, the Court did not question the Government's approach to preservation or instruct the Government to preserve information related to the FISC-authorized programs, which had been described by the Government to the Court repeatedly in classified declarations in support of the state secrets privilege dating back to 2006.  Nor did it take Plaintiffs up on their suggestion that the Court may "wish to make more specific requirements of the . . . government in an *ex parte, in camera* order . . . based on the presumably more specific information it has received from the government *in camera, ex parte*."  Plaintiffs' Reply in Support of Motion for Order to Preserve Evidence at 3 (MDL-1791 ECF No. 392).

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

Pls.' Preservation Br. at 7.  But those references concern what Plaintiffs claim to be the

Government's official disclosures following the unauthorized disclosures that began in June

2013—the subject the joint statement was supposed to address—and which prompted the Court

to require further briefing on the national security issues in this case.  *See* Jt. Statement at 4-5.

Plaintiffs further argue that in the Government's section of the joint statement, "rather than

asserting its current, cramped claims about the scope of the *Jewel* claims, the government instead

conceded that 'Plaintiffs claim this alleged 'dragnet' surveillance included collection of the

content of telephone and Internet communications as well as communications records."  Pls.'

Opening Preservation Br. at 7-8.  But in the immediately preceding sentence, the Government

specifically referred to the activities authorized by President Bush.  Jt. Statement at 33 ("In the

above-captioned *Jewel* and *Shubert* cases, Plaintiffs allege that, following the 9/11 terrorist

attacks, then-President George W. Bush authorized the National Security Agency (NSA) to

undertake, with the assistance of major telecommunications companies, indiscriminate

warrantless surveillance of the communications of millions of Americans.").  Nothing stated by

the Government remotely concedes that the *Jewel* Complaint challenges judicially-authorized

FISC activities.

Nor did the Government concede that Plaintiffs' claims included the FISC-authorized

activities in the now-declassified declarations they submitted in the *Jewel* and *Shubert* cases.

Pls.' Preservation Br. at 8-9; Pls.' Preservation Reply at 11.  Plaintiffs badly misconstrue these

declarations in making this argument.  Those declarations, submitted in support of the

Government's state secrets privilege assertion prior to the recent disclosures, simply provided the

Court with a then-classified fact:  that the presidentially-authorized activities that were being

challenged in *Jewel* and *Shubert* had been subsequently transitioned to FISC-authorized

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

22

activities.  The Government's then-classified declarations consistently described Plaintiffs'

claims as being about the presidentially-authorized activities only.  *See, e.g.*, 2009 Redacted

NSA Decl. ¶ 3 (*Jewel* ECF No. 172-5) ("In sum, plaintiffs allege that, after the 9/11 attacks, the

NSA received presidential authorization to engage in surveillance activities far broader than the

publicly acknowledged 'Terrorist Surveillance Program' ('TSP'), which involved the

interception of specific international communications involving persons reasonably believed to

be associated with al Qaeda and affiliated terrorist organizations.  Plaintiffs allege that the NSA,

with the assistance of telecommunications companies including AT&T, has indiscriminately

intercepted the content and obtained the communications records of millions of ordinary

Americans as part of an alleged presidentially-authorized 'Program' after 9/11."); 2013 NSA

Unclassified Decl. at ¶ 18 (*Jewel* ECF No. 169) ("In sum, plaintiffs allege that, after the 9/11

attacks, the NSA received presidential authorization to engage in 'dragnet' communications

surveillance in concert with major telecommunications companies. . . .  Plaintiffs allege that,

pursuant to presidential authorization and with the assistance of telecommunications companies

(including AT&T and Verizon), the NSA indiscriminately intercepted the content and obtained

the communications records of millions of ordinary Americans.").

        To the extent the declarations discussed the fact that the presidentially-authorized

activities transitioned to orders of the FISC, they did so to show that disclosing or confirming

these activities under Presidential authorization in order to litigate Plaintiffs' claims would risk

the disclosure of ongoing, highly classified intelligence operations authorized by the FISC,

causing exceptional harm to national security.  For instance, the NSA's declarant explained in

2012 as follows:

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

23

While the plaintiffs' allegations are focused on the period immediately following 9/11, and seek to challenge alleged activities undertaken pursuant to presidential authorization, the sources and methods used by NSA at that time continue to be used under subsequent authorizations.  To expose a source and method, based on its use during one period of time, under one authority, would compromise, if not destroy, NSA's ability to use that method today.  All of the presidentially authorized activities being challenged in this lawsuit (starting in July 2004) were placed under other FISA authority and have been subject to Congressional oversight.  The need to protect these sources and methods continues to exist notwithstanding plaintiffs' challenge to the lawfulness of their use under presidential authorization.

2012 Redacted NSA Decl. ¶ 52 (*Jewel* ECF No. 172-8).  *See also id*. at ¶¶ 7, 34, 37, 84; 2007

2007 Redacted DNI Decl. ¶ 3 (*Jewel* ECF No. 172-1); 2007 Redacted NSA Decl. ¶¶ 62-64

(*Jewel* ECF No. 172-2); 2009 Redacted DNI Decl. ¶ 40-41 (*Jewel* ECF No. 172-4); 2009

Redacted NSA Decl. ¶¶ 26-27, 57- 67 (*Jewel* ECF No. 172-5); 2012 Redacted DNI Decl. ¶ 56-57

(*Jewel* ECF No. 172-7).

In sum, the claims in *Jewel* and the MDL litigation, including *Shubert*, were clearly

directed at presidentially-authorized NSA intelligence activities, unauthorized by a court order,

and the Government correctly construed its preservation obligations as limited to such activities.

Nonetheless, rather than remaining silent on its assessment of what information should be

preserved, the Government, at the time of the first preservation motion, specifically informed the

Court in a detailed, classified filing of precisely how it was satisfying its preservation

obligations, and in particular the fact that it was only preserving those materials related to the

presidentially-authorized activities, not to FISC-authorized activities, consistent with Plaintiffs'

claims.  In these circumstances, where the complaints challenged alleged surveillance activities

undertaken without judicial authorization and in violation of statutory requirements, including

under the FISA, and where the Government expressly advised the Court of its preservation steps

before the entry of the preservation order, Plaintiffs' contention that the preservation obligations

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

in *Jewel* and *Shubert* extended to preserving data that were collected pursuant to judicial order, subject to statutory requirements set forth in the FISA (including requirements to minimize the retention of such records), is entirely without merit.

Indeed, Plaintiffs' position fails to appreciate the circumstances facing the Government after the FISC orders were implemented. Despite the fact that Plaintiffs had challenged alleged presidentially-authorized activities undertaken *without* judicial orders and *outside of* FISA limitations, the Government knew at the time the 2007 preservation order was being litigated that two of those activities (Internet and telephony metadata collection) had already transitioned to FISC-approved classified programs, and so advised the Court in a classified filing. And by the time the *Jewel* Complaint had been filed in September 2008, the third presidentially-authorized activity (the collection of content) had also publicly transitioned to FISA without any challenge from Plaintiffs. The transition of these activities to FISC authorization was intended to address the core concern that presidentially-authorized surveillance programs be placed under judicial supervision and subjected to statutory requirements—the very concern raised in the MDL-1791 litigation and in *Jewel*. Plaintiffs nevertheless take the position that the Government could only have met its preservation obligations in *Jewel* and *Shubert* if it indefinitely suspended the restrictions on the retention of data imposed by the FISC—the Article III court vested by Congress with jurisdiction to issue orders authorizing foreign intelligence surveillance activities and enforcing statutory restrictions on the retention of data under the FISA—just as they were being put in place, on the assumption that the *Jewel* Plaintiffs might later claim that the FISC lacked authority to implement those activities. Plaintiffs' position is nothing more than post-hoc second-guessing of the preservation efforts undertaken in connection with *Jewel* and *Shubert,*

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

unsupported by their own complaints and the record of this case when the preservation orders were litigated.[6]

### III.   THE GOVERNMENT HAS COMPLIED FULLY WITH THE PRESERVATION ORDERS ISSUED IN *JEWEL* AND *SHUBERT*, AND CONTINUES TO DO SO

The Government has met its common law preservation obligations and complied fully with the preservation orders entered in *Jewel* and *Shubert*, which require reasonable and proportional steps to prevent the destruction of information "reasonably anticipated to be subject to discovery."  Preservation Orders at 3; *see also* cases cited *supra* at 10-11.  It has done so by diligently identifying the government agencies and components likely to have information that may be potentially relevant to this litigation, issuing specific notices to those entities as to their preservation duties, and by confirming that those entities are indeed preserving a range of documents and information related to the NSA intelligence activities authorized by President Bush after 9/11 that may be relevant to the Plaintiffs' claims.  Further details regarding these considerable efforts are set forth in the redacted NSA Declaration of Miriam P. ("NSA Miriam P. Decl.") and the Declaration of Anthony J. Coppolino ( "Coppolino Decl."), filed concurrently with this brief.[7]

On the same day the *Shubert*/MDL Litigation preservation order was issued (November 6, 2007), counsel for the official capacity Government Defendants ("counsel for the

---

[6]   It is also worth noting the implications of Plaintiffs' position—that the Government should have taken steps to supersede the order of an Article III court and preserve a substantial quantity of communication records for the past eight years while this lawsuit has been pending. The terms of this Court's preservation order, weighed against the allegations of the *Jewel* and *Shubert* complaints, do not require or support that position.

[7]   A classified version of the NSA declaration of Miriam P. has been made available for the Court's *ex parte*, *in camera* review.  All citations herein are to the redacted version of this declaration.

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

Government" or "Government counsel") sent that order to the NSA, the agency whose activities were centrally at issue in that case and which had already undertaken preservation efforts prior to the entry of the order. *See* Coppolino Decl. ¶ 7 & n.2. Shortly thereafter, counsel for the Government sent to the NSA a preservation notice that provided background on the case, again attached and discussed the Court's preservation order, and explained the NSA's duty to preserve a range of information consistent with those orders. *Id.* ¶¶ 7, 17-18. Counsel for the Government undertook the same efforts two years later with respect to the preservation order entered on November 16, 2009 in *Jewel*. *See id.* ¶¶ 17-18. At no time has counsel for the Government advised NSA that its preservation obligations under these orders have expired. *Id.* ¶ 20.

As noted above, in litigating the Plaintiffs' motion for an order to preserve evidence in the MDL Litigation, the NSA informed the Court in October 2007 in a classified filing about its efforts to preserve documents and information that were potentially relevant to the claims and issues in that litigation, Redacted NSA Decl. ¶¶ 2, 13, explained the various steps taken to ensure that NSA personnel cleared to possess information related to the presidentially-authorized activities were preserving "documents contained in their files and on their computer systems that relate to these activities," *id.* ¶ 13, and described the documents and information (in paper and electronic form) that the NSA was, in fact, preserving. *See, e.g.*, *id.* ¶ 6. Numerous categories of documents and information were being preserved related to the Presidentially-authorized surveillance programs, including, but not limited to, Presidential authorizations and re-authorizations; legal opinions and analyses; communications; TSP tasking and probable cause information; content of communications intercepted under the TSP; intelligence reports containing TSP information; Internet and telephony metadata collected under the Presidential

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

27

authorizations; requests that NSA task that metadata for analysis to obtain information on terrorist contacts; reports of metadata analysis; briefing and oversight materials; guidance used by NSA analysts concerning how to designate, use, and protect TSP information in intelligence reports; and technical information concerning the manner in which the Presidentially-authorized activities were implemented.  *Id.* ¶¶ 6, 13-28; Declass. Mem. at 4-5.

The NSA continues to preserve these documents and information, as explained in greater detail in the redacted NSA declaration filed concurrently with this brief.  *See* NSA Miriam P. Decl. ¶¶ 27-45.  Since this Court's preservation order of March 19, 2014, NSA's Office of General Counsel has taken diligent steps to reconfirm that NSA personnel cleared to possess information related to the presidentially-authorized activities continue to preserve the material described above, *see id.* ¶¶ 25-26, reconfirm the exact location of such materials and the media by which they are maintained, *see id.* ¶¶ 30-31, 33-34, 36-42, and has preserved additional potentially relevant documents and information that the NSA has identified since its October 2007 declaration was filed.  *See id.* ¶¶ 26, 43-44.  The NSA's Office of General Counsel has not lifted the litigation holds it imposed after *Shubert* and *Jewel* were filed, and has continued to advise (and remind) its personnel that they must preserve all documents and information, regardless of the medium in which they exist, related to the intelligence activities authorized by President Bush after 9/11 that are or may be relevant to the Plaintiffs' claims.  *Id.* ¶¶ 22, 24, 45.

In addition to instructing the NSA as to its preservation obligations under the orders in *Shubert* and *Jewel* shortly after each was entered, *see* Coppolino Decl. ¶¶ 7, 16, Government counsel also issued preservation notices to the Executive Office of the President (EOP) related to these cases on December 14, 2007 and December 10, 2009, respectively, that provided background on these cases, attached and discussed the Court's preservation orders, and explained

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the EOP's duty to preserve a range of information consistent with those orders.  *See id.* ¶¶ 12-14, 16-20.  In each of these notices, counsel for the Government described the allegations contained in the complaints, and instructed the EOP to determine if they possessed any information that was potentially relevant to these matters and to preserve that information in accordance with the Court's order.  *Id.*  The EOP also was instructed, on both occasions, that its duty to preserve evidence potentially relevant to these cases would continue until the Civil Division of the Department of Justice advised it otherwise, and it has not been so advised.  *Id.* ¶¶ 14, 20.  Near the end of President George W. Bush's term in office, Government counsel made follow-up inquiries and confirmed that EOP materials subject to the preservation notices would be transferred to the custody of the National Archives and Records Administration (NARA) at the conclusion of the administration.  *Id.* ¶ 22.  Thereafter, counsel for the Government confirmed that these materials were indeed transferred to NARA and that NARA continues to preserve them.  *Id.* ¶¶ 23-24.

Counsel for the Government Defendants also issued similar preservation notices (with the same attachments) related to *Shubert* and *Jewel* on December 11, 2007 and December 10, 2009, respectively, to components within the Department of Justice reasonably likely to possess potentially relevant documents and information.  *Id.* ¶¶ 8, 16.  These recipients also were informed that their component's duty to preserve evidence potentially relevant to the case would continue until the Civil Division of the Department of Justice advised them otherwise, and they have not been so advised.  *Id.* ¶¶ 11, 20.  Since this Court's order of March 19, 2014, counsel for the Government has met with the records managers at these various components and with the Director of the Office of Records Management Policy at the Department of Justice to discuss their policies and practices for the retention of records and to confirm, *inter alia*, that documents

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency* (08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

and information potentially relevant to these cases continue to be preserved for both current and former personnel.  *See id.* ¶¶ 26-31.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that it has complied with the preservation orders in *Jewel* and *Shubert*.

Dated:  May 9, 2014                          Respectfully Submitted,


                                            STUART F. DELERY
                                            Assistant Attorney General

                                            JOSEPH H. HUNT
                                            Director, Federal Programs Branch

                                            ANTHONY J. COPPOLINO
                                            Deputy Branch Director

                                                */s/ Marcia Berman*
                                            JAMES J. GILLIGAN
                                            Special Litigation Counsel
                                            james.gilligan@usdoj.gov
                                            MARCIA BERMAN
                                            Senior Trial Counsel
                                            marcia.berman@usdoj.gov
                                            BRYAN DEARINGER
                                            Trial Attorney
                                            bryan.dearinger@usdoj.gov
                                            RODNEY PATTON
                                            Trial Attorney
                                            rodney.patton@usdoj.gov
                                            JULIA BERMAN
                                            julia.berman@usdoj.gov
                                            U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            20 Massachusetts Avenue, NW, Rm. 7132
                                            Washington, D.C. 20001
                                            Phone: (202) 514-2205
                                            Fax: (202) 616-8470

                                            *Attorneys for the Government Defendants*
                                            *Sued in their Official Capacities*

Government Defendants' Brief Regarding Compliance with Preservation Orders, *Jewel v. National Security Agency*
(08-cv-4373-JSW), *Shubert v. Obama* (07-cv-693-JSW)

30