STUART F. DELERY
Acting Assistant Attorney General
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Deputy Branch Director
JAMES J. GILLIGAN
Special Litigation Counsel
MARCIA BERMAN
Senior Trial Counsel
BRYAN DEARINGER
RODNEY PATTON
JULIA BERMAN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782
Fax:    (202) 616-8460

*Attorneys for the United States and
Government Defendants Sued in their
Official Capacities*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CAROLYN JEWEL, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL SECURITY AGENCY, *et al.*<br><br>Defendants. | Case No. 08-cv-4373-JSW |
| VIRGINIA SHUBERT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>BARACK OBAMA, President of the United States, *et. al.*,<br><br>Defendants. | Case No. C-07-0693-JSW<br><br>**DECLARATION OF RICHARD H. LEDGETT, JR. DEPUTY DIRECTOR, NATIONAL SECURITY AGENCY** |

1

Declaration of Richard H. Ledgett, Jr., National Security Agency
*Jewel et al. v. National Security Agency et al.* (08-cv-4373-JSW)

I, Richard H. Ledgett, Jr. do hereby state and declare as follows:

1. I am the Deputy Director of the National Security Agency (NSA), an intelligence agency within the Department of Defense (DoD). I am responsible for directing the NSA and overseeing the operations undertaken to carry out its mission, to include the NSA's signals intelligence mission such as that related to Section 702 of FISA as enacted by the FISA Amendments Act of 2008 (FAA) (50 U.S.C. § 1881a).

2. The purpose of this declaration is to support the United States Government's (USG) motion to seek a stay of the Court's June 5, 2014 order, whereby the USG has been directed to preserve all Section 702 materials," and to oppose Plaintiffs' motion for an order directing long-term preservation of such materials. Preservation of all Section 702 materials could encompass all raw data obtained pursuant to FISC orders issued under Section 702, including Internet and telephone content, telephone records, and Internet records (Section 702 collection).[1] For the reasons explained herein, the USG cannot, in the near-term, reconcile this Court's order with orders of the FISC. Moreover, even if the competing court orders were reconciled, it would not be possible for the NSA to immediately preserve all Section 702 data in accordance with this Court's June 5, 2014 order, Any attempt at an immediate solution would unleash a series of consequences that the U.S. government cannot predict because a requirement to preserve all data acquired under Section 702 presents significant operational problems, only one of which is that the NSA may have to shut down all systems and databases that contain Section 702 information in order to attempt to preserve. However, due to the complexity of NSA's architecture and

---

[1] I understand that Plaintiffs allege that these activities, which occur pursuant to Section 702 of FISA, are part of the original complaint, which prompted this Court's June 5, 2014 order. I am advised that the USG continues to dispute that activities conducted pursuant to orders of the FISC are at issue.

2

Declaration of Richard H. Ledgett, Jr., National Security Agency
*Jewel et al. v. National Security Agency et al.* (08-cv-4373-JSW)

broad scope of this Court's order without further opportunity to study technical options, NSA cannot be certain that these steps would achieve preservation. Regardless, such actions would have an immediate, specific, and harmful impact on the national security of the United States. In the longer term, this Court's order could still present significant operational problems that would impact NSA's ability to carry out its national security mission, and place the NSA in violation of both criminal statutes and requirements imposed by the FISC to meet statutory and constitutional mandates.

      3. Quite simply, the NSA cannot immediately effectuate this Court's order while remaining in compliance with the legal requirements of the FAA and related orders of the FISC. Implementation would be a massive and uncertain endeavor – it would not simply be a matter of flipping a switch, rewriting some code, or purchasing some number of backup storage tapes. Unlike the Section 215 bulk telephony metadata program, which resides on a discrete computer systems architecture and which could be preserved by transitioning to alternative storage media (albeit at significant cost and burden to the Government), communications acquired pursuant to Section 702 reside within multiple databases contained on multiple systems and the precise manner in which NSA stays consistent with its legal obligations under the FAA has resulted from years of detailed interaction with the FISC and DoJ. The communications that are contained within these databases and systems are collected pursuant to differing legal authorities and are subject to different retention rules. These databases and systems were constructed over many years at a considerable cost. The NSA's technological architecture has been adapted and optimized for the NSA to meet its legal, technical and mission requirements, including to age-off[2] and to purge data.[3] As a result, the NSA's databases and systems are extraordinarily

---

[2] The "age-off" of data is defined as the scheduled removal of data on a known, publishable basis for legal,

3

Declaration of Richard H. Ledgett, Jr., National Security Agency
*Jewel et al. v. National Security Agency et al.* (08-cv-4373-JSW)

complex and any changes of the scope and scale contemplated by this Court's order would ordinarily require months of development and testing to be implemented effectively and comprehensively to the extent implementation is feasible.  For these reasons, the NSA is unable to immediately implement this Court's June 5, 2014 order in the near term.  Moreover, if compelled to implement this order without additional time for a more thoughtful review, the NSA may be forced to consider drastic measures, to include, the possible suspension of all operations related to the collection, processing, analysis, and dissemination of communications acquired pursuant to Section 702 and other collection authorities.  Moreover, it might be necessary to discontinue the NSA's operational use of many of the databases and systems that process and store Section 702 acquired communications as well as the cessation of the ingestion of newly acquired communications under Section 702 and other authorities. The suspension of such operations would immediately impair the national security of the United States.

    4. Under Section 702 of the FISA, the NSA is authorized to target only non-U.S. persons who are reasonably believed to be located outside of the United States.  The NSA databases and systems containing communications acquired pursuant to Section 702 have been developed in a manner designed to implement the FISC-approved minimization procedures, which require the prompt purge of certain acquired communications and the age-off of certain raw data within specific time constraints.   If the NSA were prohibited from purging certain Section 702 data because of this Court's order to preserve, the NSA would be at serious risk of violating 50 U.S.C. § 1809, a statute which contains criminal penalties, unless first reconciled with orders from the FISC.  The NSA is legally obligated to promptly purge communications that do not

---

policy, performance or technical reasons.

   [3] The "purge" of data is defined as an on-demand, retroactive reactionary deletion of data.

4

Declaration of Richard H. Ledgett, Jr., National Security Agency
*Jewel et al. v. National Security Agency et al.* (08-cv-4373-JSW)

meet certain retention standards set out in the NSA FAA 702 Minimization Procedures. These purge requirements are intended to protect the privacy of U.S. persons and ensure compliance with statutory prohibitions. For similar reasons, the NSA is required to age off certain raw data when it no longer meets the retention limits set out in the NSA FAA 702 Minimization Procedures.

5. The purge and age-off requirements are specifically incorporated into the technical infrastructure that the NSA uses to handle acquired Section 702 communications and other authorities in order to optimize the NSA's ability to meet its legal requirements. Some of the NSA systems also age off data prior to the FISC imposed retention limits on such data in order to meet the NSA's mission needs. As a result, the NSA's systems carry out regular, ongoing removal of older data via a combination of technical and human-based processes. If the NSA did nothing, data would continue to age off. In order to meet this Court's order, the USG would first have to reconcile the Court's order with conflicting FISC requirements. Then, the NSA would have to identify technical options to implement the reconciled requirements and would have to begin taking active steps to halt and/or reverse significant safeguards and processes that are already in place and routinely operating in order to meet the Agency's legal obligations imposed on the NSA by FISA and the FISC orders.

6. Even if the conflicting obligations imposed by this Court's order and the order of the FISC could be reconciled, it is imperative that the NSA thoroughly test and develop major system changes and new systems prior to implementation to ensure that deployment is done responsibly and does not create unforeseen legal and operational problems. Such unforeseen problems could impair NSA operations, possibly resulting in significant harm to the NSA's ability to provide foreign intelligence to US policymakers and military customers.

5

Declaration of Richard H. Ledgett, Jr., National Security Agency
*Jewel et al. v. National Security Agency et al.* (08-cv-4373-JSW)

## RISK TO NATIONAL SECURITY IF THE NSA IS REQUIRED TO PRESERVE ALL SECTION 702 DATA IN CONTRAVENTION OF FISC MINIMIZATION PROCEDURES

7. As numerous officials within the Intelligence Community have publicly stated, the acquisition of communications pursuant to Section 702 of FISA is the most significant tool in the NSA collection arsenal for the detection, identification, and disruption of terrorist threats to the U.S. and around the world as well as other grave threats faced by the United States and its allies. Section 702 collection against foreign terrorists has been critical to the discovery and disruption of threats to both the U.S. and allied countries and provides significant insight into terrorist networks and plans. The information gathered under this program has provided the U.S. Government with critical leads to help prevent potential terrorist events in countries around the world. Furthermore, communications acquired pursuant to Section 702 have yielded intelligence regarding proliferation networks and have directly and significantly contributed to successful operations to impede the proliferation of weapons of mass destruction and related technologies. Finally, communications acquired pursuant to Section 702 have provided significant and unique intelligence regarding potential cyber threats to the United States including specific potential computer network attacks. This insight has led to successful efforts to mitigate these threats. For the reasons discussed above, any decision that might impair NSA operations could immediately deprive the Nation of this valuable tool as well as other lawful SIGINT collection and cause immediate and grave danger to the national security.

8. Even if the NSA is ultimately able to redesign its systems in such a manner so as to reconcile this Court's order with the orders of the FISC, national security will remain at risk. An order prohibiting the destruction of any Section 702 data will cause a lack of or delayed access to lawfully collected SIGINT data on foreign intelligence targets of interest to the NSA's

Declaration of Richard H. Ledgett, Jr., National Security Agency
*Jewel et al. v. National Security Agency et al.* (08-cv-4373-JSW)

6

customers. The NSA has a finite amount of data storage capacity, and if the NSA were ordered to retain data that would otherwise be aged-off of its systems, the NSA would be limited in the amount of newly collected non-FAA data that it could store. The NSA would have to redesign its systems in such a manner so as to give FAA data precedence over data acquired pursuant to other authorities, such as data collected pursuant to Executive Order 12333. This would preclude analysts from having access to potentially critical information in prosecuting their foreign intelligence targets. Even if the NSA identified resources enabling it to bring additional storage capacity online, consequences could include both scheduled and unscheduled outages to ensure, among other things, compliance with FISC requirements and this Court's order to preserve. Processing of communications indicating a potential attack could be delayed to the point where the attack has already occurred before the communication can be identified, analyzed, and disseminated. As a result, analysts will be prevented from accessing needed data placing national security at risk.

9. In contrast to the potentially enormous consequences for the NSA's national security mission, the legal framework underpinning the NSA's Section 702 collection operations makes it exceedingly unlikely that retaining all Section 702 data will be of benefit to the Plaintiffs, because of the extreme unlikelihood that any data pertaining to Plaintiffs' telephone or electronic communications have been acquired. While as a matter of course, the NSA cannot publicly confirm or deny whether any individual is or has been subject to intelligence-gathering activities because to do so would tend to reveal actual targets or subjects, Section 702 facilitates the targeted acquisition of foreign intelligence information concerning <u>foreign targets located outside the United States</u>. Consistent with Section 702, the NSA's targeting procedures require that there be an appropriate, documented foreign intelligence purpose for the acquisition and that the

7

Declaration of Richard H. Ledgett, Jr., National Security Agency
*Jewel et al. v. National Security Agency et al.* (08-cv-4373-JSW)

targeted selector (e.g. telephone number or email address) be used by a non-U.S. person reasonably believed to be located outside the United States. Moreover, even in the event a communication is acquired through the targeting of a U.S. person or person located in the U.S. under the reasonable, but mistaken, belief that the person was a non-U.S. person located outside the U.S., the NSA has minimization, dissemination, and retention procedures, which govern the disposition of those communications, and which are subject to extensive oversight by all three branches of the Government, to protect individual privacy interests in such communications.

10. For these reasons I urge the Court to stay it's June 5, 2014 Order and to deny Plaintiff's request for a further Order directing the preservation of communications data acquired by the NSA pursuant to Section 702.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on: June 6, 2014

_____
Richard H. Ledgett, Jr.
Deputy Director, National Security Agency

8

Declaration of Richard H. Ledgett, Jr., National Security Agency
*Jewel et al. v. National Security Agency et al.* (08-cv-4373-JSW)