TOP SECRET//SI//NOFORN

JOYCE R. BRANDA
Acting Assistant Attorney General
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Deputy Branch Director
JAMES J. GILLIGAN
Special Litigation Counsel
MARCIA BERMAN
Senior Trial Counsel
RODNEY PATTON
JULIA BERMAN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-3358
Fax: (202) 616-8470
*Attorneys for the United States and Government Defendants Sued in their Official Capacities*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | | |
|---|---|---|
| CAROLYN JEWEL, et al., | ) | Case No. 4:08-cv-4373-JSW |
| Plaintiffs, | ) | **CLASSIFIED DECLARATION OF MIRIAM P., NATIONAL SECURITY AGENCY** |
| v. | ) | ***EX PARTE, IN CAMERA* SUBMISSION** |
| NATIONAL SECURITY AGENCY, et al., | ) | Date: December 19, 2014 |
| Defendants. | ) | Time: 9:00 a.m. |
| | ) | Courtroom 5, 2nd Floor |
| | ) | The Honorable Jeffrey S. White |

Classified *In Camera, Ex Parte* Declaration of Miriam P., National Security Agency
*Jewel. v. NSA* (No. 4:08-cv-4873-JSW)

TOP SECRET//SI//NOFORN

TOP SECRET//SI//NOFORN

1. (U) I, Miriam P., do hereby state and declare as follows:

2. (U) I am the Deputy Chief of Staff for Signals Intelligence (SIGINT) Policy and Corporate Issues for the Signals Intelligence Directorate (SID) of the National Security Agency (NSA), an intelligence agency within the Department of Defense.

3. (U) I am responsible for, among other things, protecting NSA SIGINT activities, sources, and methods against unauthorized disclosures. Under Executive Order No. 12333, the NSA SIGINT Directorate is responsible for the collection, processing, and dissemination of SIGINT information for the foreign intelligence purposes of the United States. 46 Fed. Reg. 59941 (Dec. 4, 1981) as amended by Executive Order 13284 (2003), Executive Order 13355 (2004), 69 Fed. Reg. 53,593 (Aug. 27, 2004); Executive Order 13470 (2008), 73 Fed. Reg. 45325. I have been designated an original TOP SECRET classification authority under Executive Order (E.O.) 13526, 75 Fed. Reg. 707 (Jan. 5, 2010), and Department of Defense Manual No. 5200.1, Vol. 1, Information and Security Program (Feb. 24, 2012).

4. (U) My statements herein are based upon my personal knowledge of SIGINT collection and NSA operations, the information available to me in my capacity as the Deputy Chief of Staff for SIGINT Policy and Corporate Issues for SID, and the advice of counsel.

5. (U) I submit this declaration for three purposes. First, this declaration describes on the public record, to the extent practicable, the effectiveness of the NSA's "Upstream" collection of communications under Section 702 of the Foreign Intelligence Surveillance Act ("FISA") as a method of gathering foreign intelligence information. Second, this declaration provides some details on the effectiveness of the program that cannot be disclosed on the public record. Although the Government has released to the public some information about NSA's Upstream collection, the operational details and much of the information about its effectiveness, set forth below in classified paragraphs, has not been officially disclosed and remains classified. Because the disclosure of this information could reasonably be expected to cause exceptionally grave damage to national security, it falls within the NSA's claim of statutory privilege under Section 6

Classified *In Camera, Ex Parte* Declaration of Miriam P., National Security Agency
*Jewel. v. NSA* (No. 4:08-cv-4873-JSW)

2

TOP SECRET//SI//NOFORN

TOP SECRET//SI/NOFORN

of the National Security Agency Act of 1959, Public Law No. 86-36 (codified at 50 U.S.C. § 3601 et seq.), see Classified, Ex Parte Declaration of Frances J. Fleisch, NSA ¶¶ 8, 44(B)(1)(b) (Dec. 20, 2013), which, in turn, formed the basis of the assertion of the state secrets privilege by the Director of National Intelligence ("DNI"). See Public Declaration of James R. Clapper, DNI (Sept. 11, 2012) (ECF No. 104) ¶¶ 3, 9, 11; Public Declaration of James R. Clapper, DNI (Dec. 20, 2013) (ECF No. 168) ¶¶ 4, 9, 11, 19.C.1.b. And finally, I describe the impracticability of obtaining a warrant each time the NSA needs to target a selector for Upstream collection of communications.

6. (U) Under the authority of Section 702 of the FISA Amendments Act ("FAA") the NSA acquires information through two different methods. Under the PRISM collection, the government sends selectors, such as an e-mail address, to a United States-based electronic communication service provider that has been served with a directive issued in accordance with the criteria of Section 702. The provider, such as an Internet Service Provider ("ISP"), then furnishes to the government the communications from specific accounts that have been targeted for collection. The content of telephone calls is not acquired through the PRISM collection. I understand that PRISM collection is not at issue in the current motions practice before the Court.

7. (U) Upstream collection, in contrast, involves the compelled assistance (through a Section 702 directive) of certain providers that control the telecommunications backbone over which telephone and Internet-based communications transit. Unlike PRISM, Upstream collection generally involves the acquisition of certain communications as they traverse the telecommunications backbone.

**(U) Impracticability of Acquiring the Same Information through Other Methods**

8. (U) The NSA's Upstream collection is capable of acquiring certain types of targeted communications containing valuable foreign intelligence information that cannot be collected under PRISM or other SIGINT methods authorized by FISA.

Classified In Camera, Ex Parte Declaration of Miriam P., National Security Agency
Jewel v. NSA (No. 4:08-cv-4873-JSW)

TOP SECRET//SI/NOFORN

~~TOP SECRET//SI//NOFORN~~

1. 9. ~~(TS//SI//NF)~~ ████████████████

2. 10. ~~(TS//SI//NF)~~ ████████████████

3. 11. ~~(TS//SI//NF)~~ ████████████████

12. (U) In addition, unlike 702 PRISM collection, 702 Upstream is a valuable source of "abouts" collection in which the targeted identifier (e.g., an e-mail address) is contained in the

Classified *In Camera, Ex Parte* Declaration of Miriam P., National Security Agency
*Jewel. v. NSA* (No. 4:08-cv-4873-JSW)                                                                     4

~~TOP SECRET//SI//NOFORN~~

TOP SECRET//SI//NOFORN

1 content of the communication. For example, a communication would be acquired via Upstream
2 collection if the targeted selector was found only in the body of an e-mail message and not in the
3 "to/from" line.
4     13.   (U) "Abouts" communications are a valuable source of foreign intelligence
5 information that cannot be obtained through other FISA collection techniques currently used,
6 including PRISM collection.
7     14.   (S//SI//NF)



15. (TS//SI//NF)

16. (U) Acquiring the content of certain telephone calls through Upstream collection
allows NSA to acquire significant foreign intelligence information that it may not otherwise
obtain through other methods of signals intelligence.

---

[1] (TS//SI//NF)

Classified *In Camera, Ex Parte* Declaration of Miriam P., National Security Agency
*Jewel. v. NSA* (No. 4:08-cv-4873-JSW)

TOP SECRET//SI//NOFORN

TOP SECRET//SI//NOFORN

### (U) Contribution of Upstream Collection to NSA's Mission

17. (U) Upstream collection fills a critical gap in U.S. intelligence gathering. Upstream collection has enabled the NSA to acquire—quickly and effectively—a greater range of foreign intelligence information that it otherwise would not be able to obtain. Upstream collection is a proven critical tool in the collection of significant and sometimes uniquely valuable foreign intelligence information necessary to protect the Nation's security. It allows the NSA to direct collection against targets quickly so that the NSA can nimbly turn collection into actionable intelligence leads for the Intelligence Community. Below is an outline of some of the ways Upstream collection has contributed significantly to the NSA's mission to defend the United States and its interests at home and abroad.

18. (TS//SI//NF) ██████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

(TS//SI//NF) ████████████████████████████████████████████████

19. (TS//SI//NF) ████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

20. (TS//SI//NF) ████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

Classified *In Camera, Ex Parte* Declaration of Miriam P., National Security Agency
*Jewel. v. NSA* (No. 4:08-cv-4873-JSW)       6

TOP SECRET//SI//NOFORN

TOP SECRET//SI//NOFORN

21. (TS//SI//NF) ███

22. (TS//SI//NF) ███

23. (TS//SI//NF) ███

(TS//SI//NF) ███

24. (TS//SI//NF) ███

---

[2] (TS//SI//NF) ███

Classified *In Camera, Ex Parte* Declaration of Miriam P., National Security Agency
*Jewel. v. NSA* (No. 4:08-cv-4873-JSW)

7

TOP SECRET//SI//NOFORN

TOP SECRET//SI//NOFORN

25. (TS//SI//NF) [REDACTED]

(TS//SI//NF) [REDACTED]

26. (TS//SI//NF) [REDACTED]

27. (TS//SI//NF) [REDACTED]

(TS//SI//NF) [REDACTED]

28. (TS//SI//NF) [REDACTED]



Classified *In Camera, Ex Parte* Declaration of Miriam P., National Security Agency
*Jewel. v. NSA* (No. 4:08-cv-4873-JSW)    8

TOP SECRET//SI//NOFORN

TOP SECRET//SI//NOFORN

1  (TS//SI//NF) ███████████████████
2  29.  (TS//SI//NF) ███████████████
3-7 ████████████████████████████████
8  30.  (TS//SI//NF) ███████████████
9-11 ██████████████████████████████
12 31.  (TS//SI//NF) ███████████████
13 ████████████████████████████████

**(U) Impracticality of Obtaining a Warrant**

32. (U) The reasons for which the Government sought the authority and renewal of the authority provided in Section 702 to collect intelligence targeted at non-U.S. persons located outside the United States without individualized warrants apply to both of NSA's methods of collection under Section 702—Upstream and PRISM.

33. (U) Requiring the NSA to obtain a FISA (or other type of) warrant each time the NSA needs to target a selector tasked for Upstream collection would be impractical and could result in the loss of critical foreign intelligence information such as that described above. Requiring the Government to obtain a warrant each time the NSA needed to task a selector also would be impractical given the significant number of selectors that need to be tasked for Upstream collection. Additionally, given that the collection of signals intelligence to obtain foreign intelligence information requires speed and flexibility so that NSA can respond to new and quickly evolving threats facing our nation, imposing a warrant requirement would reduce the

Classified *In Camera, Ex Parte* Declaration of Miriam P., National Security Agency
*Jewel. v. NSA* (No. 4:08-cv-4873-JSW)                                                                                           9

TOP SECRET//SI//NOFORN

TOP SECRET//SI//NOFORN

NSA's flexibility and significantly slow its ability to respond to fast-moving threat scenarios and evolving efforts by our adversaries to evade detection through frequent shifts in their communication patterns or platforms. Such a warrant requirement would also impose an extraordinary burden on the NSA's intelligence resources, diverting resources from mission critical activities. And, finally, the delays inherent in such a requirement would impede the NSA's ability to collect critical and time-sensitive foreign intelligence information. Critical intelligence would be lost.

**(U) Conclusion**

34. (U) The information set forth in the classified paragraphs above fall within the NSA's assertion of statutory privilege under Section 6 of the National Security Agency Act, which, in turn, formed the basis of the DNI's assertion of the state secrets privilege and so cannot be disclosed for purposes of addressing the allegations in Plaintiffs' Combined Reply in Support of their Motion for Partial Summary Judgment and Opposition to the Government Defendants' Cross-Motion for Partial Summary Judgment (or for any other purpose) without risking exceptionally grave damage to national security.

(U) I declare under penalty of perjury that the foregoing is true and correct.

DATE: November 7, 2014

*Miriam P.*

(U) Miriam P.
(U) Deputy Chief of Staff for
SIGINT Policy and Corporate Issues, Signals
Intelligence Directorate

Classified *In Camera, Ex Parte* Declaration of Miriam P., National Security Agency
*Jewel. v. NSA* (No. 4:08-cv-4873-JSW)

10

TOP SECRET//SI//NOFORN