PAGES 1 - 141

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CAROLYN JEWEL, ET AL.,      )
                            )
           PLAINTIFFS,      )    NO. C-08-4373 JSW
                            )
  VS.                       )    FRIDAY, DECEMBER 19, 2014
                            )
NATIONAL SECURITY AGENCY,   )    OAKLAND, CALIFORNIA
ET AL.,                     )
                            )    CROSS-MOTIONS FOR PARTIAL
           DEFENDANTS.      )        SUMMARY JUDGMENT
_____ )

**BEFORE THE HONORABLE JEFFREY S. WHITE, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF**S:          LAW OFFICE OF RICHARD R. WIEBE
                            ONE CALIFORNIA STREET, SUITE 900
                            SAN FRANCISCO, CALIFORNIA 94111
                      BY:   RICHARD R. WIEBE, ESQUIRE

                            ELECTRONIC FRONTIER FOUNDATION
                            815 EDDY STREET
                            SAN FRANCISCO, CALIFORNIA 94109
                      BY:   CINDY COHN, ESQUIRE
                            ANDREW CROCKER, ESQUIRE

                      (APPEARANCES CONTINUED)

**REPORTED BY:**             DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                            OFFICIAL COURT REPORTER

          TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

```
1                              ROYSE LAW FIRM, PC
                               1717 EMBARCADERO ROAD
2                              PALO ALTO, CALIFORNIA 94303
                          BY:  THOMAS E. MOORE, III, ESQUIRE
3

4    FOR DEFENDANTS:           U.S. DEPARTMENT OF JUSTICE
                               CIVIL DIVISION
5                              20 MASSACHUSETTS AVE., NW
                               WASHINGTON, DC 20530
6                         BY:  JAMES J. GILLIGAN, ESQUIRE
                               MARCIA BERMAN, ESQUIRE, ESQUIRE
7                              RODNEY PATTON, ESQUIRE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1    FRIDAY, DECEMBER 19, 2014                          9:03 A.M.

2                        P R O C E E D I N G S

3              THE COURT:  GOOD MORNING, EVERYBODY.  PLEASE BE

4    SEATED.

5         PLEASE CALL THE CASE.

6              THE CLERK:  CALLING CASE NUMBER C-08-4373 CAROLYN

7    JEWEL, ET AL. VERSUS NATIONAL SECURITY AGENCY, ET AL.

8         COUNSEL, PLEASE STEP FORWARD TO THE PODIUMS AND STATE YOUR

9    APPEARANCES.

10             MR. WIEBE:  GOOD MORNING, YOUR HONOR.  RICHARD WIEBE

11   FOR THE PLAINTIFFS.

12             THE COURT:  GOOD MORNING.

13             MR. WIEBE:  GOOD MORNING.

14             MR. MOORE:  GOOD MORNING, YOUR HONOR.  TOM MOORE ALSO

15   FOR THE PLAINTIFFS.

16             THE COURT:  GOOD MORNING.

17             MS. COHN:  GOOD MORNING, YOUR HONOR.  CINDY COHN FOR

18   THE PLAINTIFFS.

19             THE COURT:  GOOD MORNING.

20             MR. CROCKER:  GOOD MORNING, YOUR HONOR.  ANDREW

21   CROCKER FOR THE PLAINTIFFS.

22             THE COURT:  GOOD MORNING.

23             MR. GILLIGAN:  GOOD MORNING, YOUR HONOR.  FOR THE

24   DEFENDANTS JAMES GILLIGAN FOR THE DEPARTMENT OF JUSTICE.

25             THE COURT:  GOOD MORNING.
```

1          **MR. PATTON:**  GOOD MORNING, YOUR HONOR.  RODNEY PATTON

2     ALSO WITH DEPARTMENT OF JUSTICE FOR THE DEFENDANTS.

3          **THE COURT:**  GOOD MORNING.

4          **MS. BERMAN:**  GOOD MORNING, YOUR HONOR.  MARCIA BERMAN

5     FOR THE DEFENDANTS AS WELL.

6       I WOULD LIKE TO INTRODUCE MAUREEN FILO AT COUNSEL TABLE

7     FROM THE NATIONAL SECURITY AGENCY.

8          **THE COURT:**  PLEASE BE SEATED.

9       BEFORE WE GET STARTED, I WANTED TO MAKE A STATEMENT JUST

10    TO TRY TO PUT THIS -- THESE PROCEEDINGS IN CONTEXT AND ALSO

11    SET THE GROUNDWORK FOR THE ARGUMENTS TO COME AND THE RESPONSES

12    TO THE COURT'S QUESTIONS.

13       AS WE ALL KNOW, THIS CASE CHALLENGES THE LAWFULNESS OF THE

14    UPSTREAM OF COMMUNICATIONS PURSUANT TO SECTION 702 OF THE

15    FOREIGN INTELLIGENCE SECURITY ACT.  AS PLAINTIFFS DESCRIBE IT,

16    THE UPSTREAM COLLECTION PROGRAM INVOLVES A PROCESS BY WHICH

17    THE STREAM OF ELECTRONIC COMMUNICATION TRAVELING ON THE

18    FIBER-OPTIC NETWORK OF TELECOMMUNICATIONS-SERVICE PROVIDERS IS

19    ELECTRONICALLY COPIED, FILTERED TO REMOVE WHOLLY DOMESTIC

20    COMMUNICATION, AND THEN SCANNED FOR COMMUNICATIONS CONTAINING

21    TARGETED SELECTORS CONTAINING POSSIBLY TERRORIST-RELATED

22    INFORMATION.

23       AFTER THIS PROCESS, THE COPIED COMMUNICATIONS NOT FOUND TO

24    CONTAIN PREVIOUSLY IDENTIFIED SELECTORS ARE DESTROYED WITHIN

25    MILLISECONDS OF THEIR CREATION AND THE COMMUNICATIONS WITH

1   POSSIBLE LINKS TO TERRORIST THREATS ARE RETAINED FOR FURTHER

2   REVIEW.  PLAINTIFFS CONTEND THAT THIS UPSTREAM COLLECTION

3   PROGRAM CONSTITUTES A WARRANTLESS AND SUSPICIONLESS DRAGNET

4   SEARCH AND SEIZURE IN VIOLATION OF THE PROTECTIONS AFFORDED TO

5   THEM BY THE FOURTH AMENDMENT.

6       NOW BEFORE THE COURT ARE THE STANDING ISSUES PRESENTED IN

7   FURTHER BRIEFING THIS COURT REQUIRED AFTER THE PRELIMINARY

8   ROUND OF DISPOSITIVE MOTIONS AS WELL AS THE CROSS-MOTIONS FOR

9   PARTIAL SUMMARY JUDGMENT ON THE PLAINTIFFS' FOURTH AMENDMENT

10  CLAIM IN *JEWEL VERSUS NATIONAL SECURITY AGENCY*.  THE ISSUES

11  RAISED BY THE PENDING MOTIONS AND ADDITIONAL BRIEFING BEFORE

12  THE COURT COMPEL THE COURT TO EXAMINE SERIOUS ISSUES, NAMELY

13  NATIONAL SECURITY AND THE PRESERVATION OF THE RIGHTS AND

14  LIBERTIES GUARANTEED BY THE UNITED STATES CONSTITUTION.

15      HOWEVER, THE HEARING TODAY IS LIMITED IN SCOPE TO THE

16  COURT'S QUESTIONS.  THE COURT HAS REVIEWED ALL OF THE BRIEFS

17  AND PUBLIC SUBMISSIONS MADE BY THE PARTIES, ALL CLASSIFIED

18  SUBMISSIONS MADE TO DATE BY THE GOVERNMENT DEFENDANTS, AND THE

19  PARTIES' RECENTLY-FILED SUPPLEMENTAL AUTHORITIES.

20      THE COURT DENIES PLAINTIFFS' MOTION TO STRIKE THE

21  DEFENDANTS' CLASSIFIED BRIEF AS NOT WELL-FOUNDED, AND THE

22  COURT HAS CONSIDERED THAT BRIEF AS WELL AS THE CLASSIFIED

23  DECLARATIONS SUBMITTED IN CONJUNCTION WITH THE PENDING

24  CROSS-MOTIONS FOR SUMMARY JUDGMENT.

25      THE COURT IS PRIMARILY CONCERNED WITH WHETHER THERE IS

1    SUFFICIENT ADMISSIBLE EVIDENCE IN THE RECORD TO PERMIT THIS

2    CASE TO PROCEED, AND THE QUESTION WHETHER PLAINTIFFS LACK

3    STANDING TO ALLEGE THEIR CLAIMS.

4        THE COURT IS ALSO CONCERNED THAT EVEN IF PLAINTIFFS COULD

5    MAKE OUT A FOURTH AMENDMENT CLAIM, THE DEFENSES TO SUCH A

6    CLAIM WOULD IMPLICATE THE STATE SECRETS PRIVILEGE.  TO MAKE

7    THE RECORD CLEAR, THE COURT SHALL READ THE QUESTIONS ISSUED

8    WITHOUT CITATIONS AND HAVE THE PARTIES ADDRESS EACH IN TURN.

9        WHAT I ALSO WILL DO IS, TO THE EXTENT THAT THE PARTIES

10   HAVE SUBMITTED RECENTLY ADDITIONAL AUTHORITIES WHICH -- TO

11   RESPOND FROM THEIR PERSPECTIVE TO THE COURT'S QUESTIONS, I

12   WILL READ WHAT THE COURT GLEANS FROM THOSE AUTHORITIES SO WHEN

13   THE PARTIES ANSWER THE QUESTION, THEY WILL KNOW AT LEAST WHAT

14   THE COURT BELIEVES, WHY THE COURT BELIEVES THE PARTIES

15   SUBMITTED A PARTICULAR AUTHORITY AND, OF COURSE, YOU'RE FREE

16   TO ADDRESS THOSE AUTHORITIES AND THE COURT'S CONSTRUCTION OF

17   THEM IN RESPONDING TO THE QUESTIONS.

18       SO, AGAIN, I WANT TO SAY ONE LAST TIME, AS ALL OF YOU KNOW

19   BECAUSE YOU HAVE BEEN BEFORE THIS COURT BEFORE IN LAW AND

20   MOTION MATTERS, THAT THE COURT HAS REVIEWED THE PARTIES'

21   PAPERS AND, THUS, DOES NOT WISH TO HEAR THE PARTIES RE-ARGUE

22   MATTERS ADDRESSED IN THOSE PLEADINGS, OBVIOUSLY, EXCEPT TO THE

23   EXTENT THEY ARE DIRECTLY ON POINT WITH -- TO THE COURT'S

24   QUESTIONS.

25       AND ALSO WHAT I WANT TO AVOID AND I HAVEN'T HAD IN THIS

1    CASE FORTUNATELY, BECAUSE THE COURT IS FOCUSED ON A NARROW SET

2    OF QUESTIONS AND ISSUES, ARE GENERALIZED 4TH OF JULY SPEECHES

3    ABOUT RIGHTS AND OBLIGATIONS.  I'M AWARE OF THOSE, AND I'M

4    GOING TO TAKE THEM INTO ACCOUNT, AND THESE ARE THE QUESTIONS

5    THAT THE COURT HAS.

6         SO, THE FOLLOWING QUESTIONS.  THE FIRST QUESTION IS -- AND

7    THEN AS I MENTIONED, I'M GOING TO SUMMARIZE THE SUPPLEMENTAL

8    AUTHORITIES, AT LEAST WHAT I GLEAN FROM THEM, AND THEN -- SO

9    THAT YOU WILL KNOW NOT ONLY THAT I HAVE READ THEM, BUT I

10   CONSTRUED THEM IN A CERTAIN WAY AND TAKE AWAY A CERTAIN

11   CONCEPT OR PRINCIPLE, AND THEN YOU CAN ADDRESS THAT AS WELL.

12        SO, THE FIRST QUESTION IS, AND I AM GOING TO ADDRESS THIS

13   FIRST TO PLAINTIFFS' COUNSEL IN THE FIRST INSTANCE:

14            "WITHOUT STANDING, THE COURT MUST DISMISS THE ENTIRE

15             SUIT NOT JUST THE FOURTH AMENDMENT CLAIM.  ON WHAT

16             SPECIFIC ADMISSIBLE EVIDENCE, WITH CITES TO THE

17             RECORD, DO PLAINTIFFS RELY TO ESTABLISH THEIR

18             STANDING TO SUE?"

19        BEFORE YOU RESPOND, IN TERMS OF SUPPLEMENTAL AUTHORITIES,

20   THE PLAINTIFF SUBMITS EXCERPTS FROM PRIVACY AND CIVIL

21   LIBERTIES OVERSIGHT BOARD, REPORT ON THE SURVEILLANCE PROGRAM

22   OPERATED PURSUANT TO SECTION 702 OF THE FOREIGN INTELLIGENCE

23   SURVEILLANCE ACT ON THE PUBLICLY AVAILABLE OPERATIONAL DETAILS

24   OF THE INTERNET UPSTREAM PROGRAM.

25        THE GOVERNMENT SUBMITS *IN RE NATIONAL SECURITY AGENCY*

1    *TELECOMMUNICATIONS RECORDS LITIGATION* AT 564 FED. SUPP. 2D

2    1109 AT 1134, NORTHERN DISTRICT OF CALIFORNIA 2008 FOR THE

3    PROPOSITION THAT PLAINTIFFS MAY NOT USE CLASSIFIED DOCUMENTS

4    OR INFORMATION TO ESTABLISH THEIR STATUS AS QUOTE "AGGRIEVED

5    PERSONS" UNQUOTE WITHIN THE MEANING OF FISA -- THAT'S F-I-S-A,

6    AND CANNOT SEEK FURTHER DISCOVERY TO ESTABLISH STANDING.

7        THE GOVERNMENT SUBMITS TO THE COURT THE CASE OF *OLLIER*

8    *VERSUS SWEETWATER UNION HIGH SCHOOL*, 768 F.3D 843 AT 859

9    THROUGH 861 CITED BY THE NINTH CIRCUIT IN 2014 FOR THE

10   PROPOSITION THAT THE COURT MAY EXCLUDE EXPERT EVIDENCE IN THIS

11   MATTER, THE MARCUS DECLARATION, WHEN IT IS NOT BASED ON

12   THOROUGH IN-PERSON INVESTIGATION OR PERSONAL KNOWLEDGE.

13       SO WITH THAT PREAMBLE, I WILL HEAR FROM PLAINTIFFS'

14   COUNSEL FIRST.

15           **MR. WIEBE:**  GOOD MORNING, YOUR HONOR.

16           **THE COURT:**  GOOD MORNING, AGAIN.

17           **MR. WIEBE:**  THANK YOU FOR THE OPPORTUNITY TO BE HERE

18   TODAY.  WE APPRECIATE IT VERY MUCH.

19       FOR THE FOURTH AMENDMENT CLAIMS IN THIS MOTION, THE SAME

20   EVIDENCE THAT WE USED TO PROVE OUR CLAIM IS ALSO THE EVIDENCE

21   THAT ESTABLISHES OUR STANDING.

22       IN RESPONSE TO THE COURT'S QUESTION IN WHICH THE COURT

23   ASKED FOR SPECIFIC CITATIONS TO THE RECORD, WE HAVE PREPARED A

24   LIST WHICH WE HAVE GLEANED FROM OUR BRIEFS PREVIOUSLY FILED IN

25   THIS CASE TO SUMMARIZE THAT EVIDENCE ACCORDING TO TOPIC.

1          MAY I HAND THAT UP TO THE COURT NOW?

2              **THE COURT:**  YES.  HAVE YOU GIVEN THAT TO THE

3     DEFENDANTS?

4                      (DOCUMENT HANDED TO COURT.)

5              **MR. WIEBE:**  YES, WE HAVE PROVIDED THAT TO THEM.

6              **THE COURT:**  VERY WELL.

7          AND I WILL ORDER THAT IT BE FILED.  PERHAPS YOU CAN EFILE

8     IT AFTER THE PROCEEDINGS AS WELL.

9              **MR. WIEBE:**  CERTAINLY WE WILL DO THAT.

10             **THE COURT:**  THANK YOU VERY MUCH.

11         YOU MAY PROCEED.

12             **MR. WIEBE:**  THANK YOU, YOUR HONOR.

13         I WON'T ATTEMPT TO READ ALL THESE CITATIONS, BUT WE DID

14    THINK IT WAS IMPORTANT TO PROVIDE THEM TO THE COURT FOR ITS

15    REVIEW.

16         I DO WANT TO GIVE A BRIEF SUMMARY, IF I MAY, OF THE

17    EVIDENCE ON DIFFERENT POINTS BECAUSE I THINK IT'S IMPORTANT

18    AND RESPONSIVE TO THE COURT'S QUESTION.

19             **THE COURT:**  VERY WELL.

20             **MR. WIEBE:**  AS IN ANY OTHER CASE, MANY DIFFERENT

21    PIECES OF EVIDENCE HERE COME TOGETHER TO PROVE OUR CLAIM.  AND

22    I THINK TO A REMARKABLE DEGREE THE EVIDENCE HERE IS BOTH

23    CONSISTENT AND MUTUALLY REINFORCING.

24         SO IN SUMMARY, FIRST WE HAVE THE GOVERNMENT'S ADMISSIONS

25    THAT IT CONDUCTS ONGOING INTERNET BACKBONE SURVEILLANCE IN ITS

1  SUBMISSIONS ABOUT THE PROCESS OF FILTERING AND SEARCHING BY

2  WHICH IT PERFORMS THIS SURVEILLANCE.  NOW, THESE ADMISSIONS,

3  AMONG OTHER PLACES, ARE INCLUDED IN THE PRIVACY AND CIVIL

4  LIBERTIES OVERSIGHT BOARD REPORT THAT YOU REFERRED TO.

5     WE --

6        **THE COURT:**  LET ME ASK YOU ABOUT THAT, PLEASE.  AND

7  BRIEFLY LOOKING AT YOUR SUMMARY HERE, SOME OF THIS

8  INFORMATION -- SOME OF THIS EVIDENCE FALLS INTO THIS CATEGORY,

9  BUT I'M NOT -- I SPECIFICALLY, YOU KNOW, I'M A TRIAL GUY.  I

10  AM NOT AN APPELLATE GUY.  I AM VERY INTERESTED IN EVIDENCE,

11  BOTH IN THE SUMMARY JUDGMENT CONTEXT AND IN A TRIAL CONTEXT.

12     AND I WONDER WITH THESE COMMISSIONS AND THESE

13  CONGRESSIONAL FINDINGS AND THINGS OF THAT NATURE, TO WHAT

14  EXTENT ARE THOSE ADMISSIBLE EVIDENCE IN THIS PROCEEDING AS

15  OPPOSED TO AS THE GOVERNMENT CONTENDS, AND I'M SURE I WILL

16  HEAR SOON, BASED UPON SPECULATION, CONJECTURE, AND NOT TRULY

17  ADMISSIBLE EVIDENCE.

18        **MR. WIEBE:**  CERTAINLY.  AND I THINK THAT'S AN

19  IMPORTANT ISSUE.  I THINK IT IS ALSO IMPORTANT TO NOTE THAT

20  BOTH PARTIES HAVE RELIED ON SUCH EVIDENCE HERE BEFORE YOU IN

21  THIS -- IN THIS MATTER.

22     THE -- FROM OUR PERSPECTIVE, AS PLAINTIFFS, GOVERNMENT

23  STATEMENTS ARE ADMISSIONS.  AND TO SOME EXTENT ADMISSIONS IS A

24  ONE-WAY STREET.  THAT IS, WE CAN USE THINGS AS ADMISSIONS FROM

25  THEM WHICH WOULD BE HEARSAY IF THEY WOULD TRY TO INTRODUCE IT

1    AFFIRMATIVELY IN THEIR CASE.

2            **THE COURT:**  CORRECT.

3            **MR. WIEBE:**  SO IN OUR VIEW, THE PCLOB REPORT IS HOW

4    WE REFERRED TO IT, THE PRIVACY BOARD REPORT, IS AN EXAMPLE OF

5    A GOVERNMENT ADMISSION; THAT TO THE EXTENT THERE ARE

6    STATEMENTS IN THERE WHICH SUPPORT OUR CASE, WE CAN PRESENT

7    THEM AND THEY ARE ADMISSIBLE UNDER RULE 801 AS PARTY

8    ADMISSIONS.

9            AND CERTAINLY IT'S NOT JUST THE PCLOB REPORT.  THERE ARE A

10   NUMBER OF GOVERNMENT DECLARATIONS THAT HAVE BEEN FILED IN THIS

11   CASE.  AND, AGAIN, CERTAINLY WE CAN PRESENT THEM AS ADMISSIONS

12   ON THE PART OF THE GOVERNMENT UNDER RULE 801.

13           I THINK THAT IN SOME CASES THE ISSUE WILL NOT SO MUCH BE

14   THE ADMISSIBILITY, BUT THE WEIGHT OF THE EVIDENCE OR THE

15   RELEVANCE OF THE EVIDENCE THAT MAY BE THE ISSUE HERE, BUT I

16   WILL JUST FLAG THAT POINT.

17           I MENTIONED A MINUTE AGO THAT TO SOME EXTENT ADMISSIONS IS

18   A ONE-WAY STREET.  SO, WE CERTAINLY THINK THAT THE PORTIONS OF

19   THE PCLOB REPORT THAT WE PRESENTED TO YOU AND THAT WE RELY ON

20   ARE ADMISSIBLE AS ADMISSIONS, AND THERE'S CERTAINLY NO STATE

21   SECRET PRIVILEGE ISSUE AS TO THEM.

22           SO THE ADMISSION OF THE -- OF THE FACT OF THE ONGOING

23   INTERNET BACKBONE SURVEILLANCE, IT'S IN THE PCLOB REPORT, IT'S

24   IN THE FISC OPINIONS, IT'S IN THE GOVERNMENT DECLARATIONS

25   FILED IN THIS CASE, AMONG OTHER PLACES.  AND WE THINK ALL OF

1    THAT IS ON A VERY FIRM EVIDENTIARY GROUND.

2         SECOND, WE HAVE AT&T'S ADMISSION THAT IT PERFORMS FISA

3    SURVEILLANCE FOR THE GOVERNMENT.  AND IT'S DONE THIS, AS WE'VE

4    EXPLAINED, NOT ONLY IN OUR BRIEFING HERE, BUT EARLIER IN OUR

5    FOUR QUESTIONS BRIEFING ON THE COURT'S QUESTIONS, WE EXPLAINED

6    HOW THAT THE GOVERNMENT NOW PERMITS TELECOMMUNICATIONS

7    PROVIDERS TO DISCLOSE THE FACT OF THEIR PARTICIPATION IN FISA

8    SURVEILLANCE.  AND AT&T, IN FACT, HAS DONE THAT.

9         **THE COURT:**  IS THERE SUFFICIENT EVIDENCE IN THE

10   RECORD AS TO STATEMENTS MADE BY OR ON BEHALF OF AT&T, IS THERE

11   SUFFICIENT DETAIL IN THE RECORD FROM AN EVIDENTIARY

12   PERSPECTIVE THAT WOULD BEAR ON THE STANDING QUESTION?

13        THERE'S GENERALIZED STATEMENTS ABOUT WHAT AT&T WAS DOING.

14   THERE'S GENERALIZED STATEMENTS ABOUT WHAT GENERALLY THE

15   GOVERNMENT HAS ASKED AT&T TO DO, BUT IN TERMS OF THE DETAILS

16   OF THE PROGRAM -- AND I UNDERSTAND ASKING THAT QUESTION YOU

17   ARE AT A DISADVANTAGE BECAUSE YOU CAN'T -- YOU DON'T KNOW AND

18   THE GOVERNMENT SAYS YOU CAN'T KNOW ALL OF THE DETAILS, BUT

19   UNFORTUNATELY FOR YOU, GIVEN THE BALANCE BETWEEN NATIONAL

20   SECURITY AND INDIVIDUAL RIGHTS, THAT'S -- THE COURT HAS TO

21   MAKE THAT DETERMINATION.

22        SO THAT'S WHAT I AM INTERESTED IN.  YES, THERE'S A LOT OF

23   STATEMENTS MADE BY THE PLAINTIFF, WELL, WE HAVE THIS PROGRAM,

24   THAT PROGRAM, AT&T IS DOING THIS AND THAT, MY QUESTION IS,

25   THIS IS -- WE ARE BEYOND THE 12(B)(6) STAGE NOW, WE ARE IN THE

1    SUMMARY JUDGMENT LAND, AND THE QUESTION IS, WHAT SPECIFIC

2    EVIDENCE IN THE RECORD AS TO AT&T'S ADMISSIONS OR WHAT HAS

3    COME OUT ABOUT WHAT AT&T HAS BEEN DOING HELPS THE COURT IN

4    TERMS OF THE STANDING QUESTION?

5         **MR. WIEBE:**  YEAH.  AND I WOULD LIKE TO RUN THROUGH

6    THAT WITH YOUR HONOR.

7         AGAIN, THERE'S -- AS IN ANY OTHER CASE, THE COURT LOOKS AT

8    ALL THE EVIDENCE AND PUTS IT TOGETHER.  SO THERE ARE A NUMBER

9    OF DIFFERENT ITEMS OF EVIDENCE BEARING ON AT&T'S PARTICIPATION

10   THAT I THINK THE COURT NEEDS TO LOOK AT TOGETHER.

11        ONE IS THE ADMISSION IN ITS TRANSPARENCY REPORT WHICH

12   WE'VE SUBMITTED AT ECF-295.  IT'S EXHIBIT B.  AND THAT'S AT&T

13   SAYING, YES, WE ARE CURRENTLY CONDUCTING SURVEILLANCE UNDER

14   FISA ON BEHALF OF THE GOVERNMENT.  AND THAT'S A DIRECT

15   STATEMENT BY AT&T AND ONE THAT'S -- THE GOVERNMENT HAS

16   AUTHORIZED THEM TO MAKE.

17        WE ALSO HAVE, AS WE EXPLAINED IN OUR BRIEF, THE NSA

18   INSPECTOR GENERAL REPORT.  NOW, THIS IS AN IMPORTANT DOCUMENT.

19   WE DISCUSS IT IN OUR OPENING BRIEF AT PAGES 10 AND 11.  IT'S

20   ECF-147, EXHIBIT A.

21        AND WHAT IT DOES IS IT DESCRIBES THE SURVEILLANCE PROGRAM

22   AS IT WAS CONDUCTED FROM 2001 TO 2007.  AND IT TALKS ABOUT TWO

23   COMPANIES PARTICIPATING IN THE VERY INTERNET BACKBONE

24   SURVEILLANCE THAT IS THE SUBJECT OF OUR CLAIMS.

25        AND WHAT IT SAYS IS, THOSE TWO COMPANIES WERE THE TWO

1    LARGEST PROVIDERS OF TELECOMMUNICATIONS AT THAT TIME.  AND IF

2    YOU LOOK AT FCC RECORDS, AGAIN, GOVERNMENT DOCUMENTS THAT ARE

3    CLEARLY ADMISSIBLE, YOU SEE THE TWO LARGEST PROVIDERS AT THAT

4    TIME, ONE OF THEM WAS AT&T.  SO THAT CONFIRMS AT&T'S

5    PARTICIPATION AT WELL.

6        YOU ALSO HAVE TO LOOK AT THAT IN LIGHT OF THE NEW EXCERPTS

7    FROM THE PCLOB REPORT WHICH WE SUBMITTED IN OUR ADDITIONAL

8    AUTHORITIES.  AND WHAT THEY SAY IS, THAT THE PROGRAM, AS IT

9    BEGAN IN 2001, HAS CONTINUED TO TODAY.  AND THAT WHAT'S --

10   WHAT'S CHANGED ABOUT IT IS THE LEGAL AUTHORITY THAT IT'S BEEN

11   CONDUCTED UNDER.  ORIGINALLY IT WAS CONDUCTED SOLELY UNDER

12   PRESIDENTIAL AUTHORITY.  IT TRANSITIONED IN 2007 FIRST TO

13   FISA, THEN TO THE PROTECT AMERICA ACT, AND NOW TO SECTION 702,

14   BUT THE COLLECTION HAS CONTINUED UNINTERRUPTED SINCE THAT

15   TIME.

16         **THE COURT:**  BUT AS I UNDERSTAND IT, PLAINTIFFS ARE

17   NOT COMPLAINING ABOUT THE STAGE 1 SO-CALLED SURVEILLANCE,

18   THE -- WHAT YOU CALL THE MASS COLLECTION, YOU'RE CONCERNED

19   MORE ABOUT PERHAPS STAGES 3 AND 4.  YOU'RE NOT CONTESTING

20   STAGE 1.  I READ THAT IN YOUR BRIEF LAST NIGHT.

21         **MR. WIEBE:**  I DON'T BELIEVE THAT IS IN OUR BRIEF

22   BECAUSE, IN FACT, WE ARE CONTESTING STAGE 1.

23         **THE COURT:**  THE STATEMENT WAS STAGE 1 IS NOT AN

24   ISSUE, AS I RECALL.  I CAN FIND IT.  THAT IS WHY WE HAVE ORAL

25   ARGUMENT.  IF THAT IS NOT YOUR POSITION, THEN ABSOLUTELY LET

1    ME KNOW.

2            **MR. WIEBE:**  IT IS NOT OUR POSITION.  LET ME STATE

3    UNEQUIVOCALLY ON THE RECORD, WE ARE CHALLENGING BOTH STAGE 1

4    AND STAGE 3, THAT IS, WE'RE CHALLENGING THE INITIAL COPYING

5    THAT'S A SEIZURE AND THEN --

6            **THE COURT:**  BY WHOM?

7            **MR. WIEBE:**  BY -- IT'S COPYING BY AT&T ON BEHALF OF

8    THE GOVERNMENT.  AND WE CITE THE AUTHORITY THAT WHEN A PRIVATE

9    PARTY ACTS AS THE AGENT OF THE GOVERNMENT IN CONDUCTING A

10   SEARCH AND SEIZURE, IT'S NO DIFFERENT THAN IF THE GOVERNMENT

11   WAS DOING THAT DIRECTLY.

12           **THE COURT:**  BUT DO WE KNOW IN THIS RECORD EXACTLY

13   WHAT AT&T IS DOING IN RESPONSE TO THE GOVERNMENT'S 702

14   REQUEST?  DO WE KNOW THAT?

15           **MR. WIEBE:**  WE DO.  AND THAT TAKES US TO THE MARK

16   KLEIN EVIDENCE.  AND I'M SURE THE COURT'S FAMILIAR WITH THE

17   MARK KLEIN DECLARATION.  AND WHAT THAT IS, IT'S FIRSTHAND

18   EVIDENCE CORROBORATING THE FACT OF THE STAGE 1 COPYING FROM

19   AT&T'S INTERNET BACKBONE AND THE DELIVERY OF THAT

20   COMMUNICATION STREAM TO THE NSA.

21       AND ALONG WITH THE -- WITH THE KLEIN REPORT, WE HAVE THE

22   KLEIN DECLARATION, WE HAVE THE AT&T DOCUMENTS THAT ARE

23   ATTACHED TO IT WHICH CONFIRM THE FACT OF THE SPLITTING AND

24   LIST THE EQUIPMENT IN THE SECRET ROOM.

25           **THE COURT:**  SO IT'S YOUR CONTENTION THEN THAT -- AND

1    I HAVE READ THE KLEIN DECLARATION AND ALL THE OTHERS WITH

2    RESPECT TO THAT, IS THAT, JUST SO I UNDERSTAND IT, THAT AT THE

3    STAGE 1, AT&T COPIES THROUGH A SPLITTER ALL OF THIS INTERNET

4    COMMUNICATION, AND ON A WHOLESALE BASIS, TAKES ALL OF THAT

5    EITHER WITH A FURTHER ACT OR SOME AUTOMATIC PROCESS, AND TURNS

6    THAT ENTIRE BULK OF INFORMATION OVER TO THE NSA.

7         **MR. WIEBE:**  THAT'S EXACTLY CORRECT, YOUR HONOR.

8         **THE COURT:**  OKAY.

9         **MR. WIEBE:**  AND JUST, AGAIN, TO BE PERFECTLY CLEAR,

10   WE ARE CHALLENGING THAT INITIAL COLLECTION AS A FOURTH

11   AMENDMENT VIOLATION.

12        **THE COURT:**  FAIR ENOUGH.

13        **MR. WIEBE:**  AND THEN LIKEWISE, ONCE IT GETS IN THE

14   NSA'S HANDS, THERE IS NO DISPUTE, I THINK, THAT WHAT THE NSA

15   DOES IS FILTER IT FIRST TO TRY TO FILTER OUT DOMESTIC

16   COMMUNICATIONS AND THEN CONDUCTS THE STAGE 3 SEARCH.  AND WE

17   ARE ALSO CHALLENGING THE STAGE 3 SEARCH.

18        **THE COURT:**  OKAY.

19        **MR. WIEBE:**  AND THE REASON WHY I SAY I THINK THOSE

20   ARE UNDISPUTED IS THE PCLOB REPORT DESCRIBES THAT VERY PROCESS

21   THAT SAYS THAT ONCE THE NSA GATHERS THE COMMUNICATIONS, IT

22   FILTERS THEM FOR FOREIGNNESS.  AND THIS IS AT PAGE 36 AND 37

23   OF THE PCLOB REPORT.

24        SO WE HAVE THE KLEIN TESTIMONY.  WE HAVE THE AT&T

25   DOCUMENTS THAT CONFIRMS THE SPLITTING.  WE HAVE THE

1    DECLARATION OF JAMES RUSSELL.  I DON'T KNOW IF YOUR HONOR HAS

2    SEEN --

3              **THE COURT:**  I'VE READ EVERY WORD.

4         **MR. WIEBE:**  OKAY.

5              **THE COURT:**  THE HARD THING FOR ME, THOUGH, I HAVE TO

6    ADMIT HERE, I MEAN, THIS IS SORT OF THE -- IF YOU WILL, THE

7    ELEPHANT IN THE ROOM IS THAT MY HEAD IS NOT A COMPUTER.  AND I

8    HAVE READ -- AS I READ A VAST STORE OF INFORMATION, I HAVE --

9    IN THE PUBLIC RECORD, I HAVE ALSO READ MAYBE, I WOULDN'T SAY

10   AN EQUALLY LARGE VOLUME OF INFORMATION THAT'S CLASSIFIED, AND

11   THE COURT IS BEING VERY CAREFUL TO BE -- BOTH IN THE QUESTIONS

12   AND IN DIALOGUING WITH COUNSEL TO BOTH (A), REMEMBER WHAT'S

13   CLASSIFIED AND NOT, AND (B) WORSE, NOT TO DISCLOSE IT.  SO

14   IT'S A LITTLE BIT OF A BURDEN ON ANY COURT WHEN YOU HAVE THE

15   1806 STATUTE THAT YOU ARE WORKING WITH.

16      SO, I HAVE READ THAT, YES, AND I'M GLAD YOU REMINDED ME

17   BECAUSE THAT IS IN THE PUBLIC RECORD.

18              **MR. WIEBE:**  YES.  YES, IT IS IN THE PUBLIC RECORD AND

19   THE -- IT'S -- RUSSELL IS THE MANAGER OF ACID PROTECTION TO

20   AT&T.  AND WHAT HE DOES IS HE CONFIRMS THE ACCURACY OF THE

21   AT&T DOCUMENTS AND THE AUTHENTICITY OF THEM, AND KLEIN'S

22   DESCRIPTION OF THE EQUIPMENT USED.

23      NOW, MARCUS TAKES -- HE SUPPORTS KLEIN.  MARCUS IS OUR

24   EXPERT, SCOTT MARCUS.  AND I KNOW YOU'VE REVIEWED HIS

25   DECLARATION.  AGAIN, A PUBLIC DOCUMENT.

1    WHAT HE DOES IS HE TAKES SOME OF WHAT KLEIN DECLARES.  HE

2    DOESN'T RELY ON ANY OF KLEIN'S STATEMENTS ABOUT THE NSA'S

3    PARTICIPATION, JUST -- WHAT HE RELIES ON ARE THE PERSONAL

4    OBSERVATIONS OF THE SPLITTER AND THE SECRET ROOM AND THE AT&T

5    DOCUMENTS.

6    AND WHAT HE SAYS IS -- FIRST OF ALL, HE EXPLAINS THE

7    FUNCTIONALITY OF THAT EQUIPMENT.  AND HE -- AND HE SHOWS THAT

8    THERE'S NO BUSINESS PURPOSE FOR AT&T TO HAVE THAT SURVEILLANCE

9    CONFIGURATION.  SO, AGAIN, THIS IS, AS YOU OFTEN HAVE IN JUST

10   A RUN-OF-THE-MILL CASE, AN EXPERT WHO IS COMING ALONG SAYING

11   I'M LOOKING AT EVIDENCE IN THE RECORD, I'M DRAWING CONCLUSIONS

12   FROM THAT EVIDENCE, AND MY CONCLUSION IS THAT AT&T WOULD NOT

13   HAVE CONSTRUCTED THIS WITHOUT IT.

14   WELL, WHO IS MARCUS?  HE WAS THE EXPERT ON THE INTERNET AT

15   THE FCC IN THE EARLY 2000'S.  HE WAS THEIR SENIOR ADVISER FOR

16   ALL INTERNET MATTERS.  BEFORE THAT HE HAD WORKED IN THE

17   PRIVATE SECTOR AND HE HAD HELPED INITIALLY SET UP AT&T'S

18   INTERNET NETWORK BACK IN THE '90S.  SO CLEARLY SOMEONE OF

19   EXPERIENCE AND QUALIFICATION TO MAKE THESE ASSESSMENTS.  THAT

20   IS JUST A SMALL FRACTION OF HIS BACKGROUND.  I KNOW YOUR HONOR

21   HAS REVIEWED ALL HIS BACKGROUND IN HIS DECLARATION.

22   AND SO NOW THE GOVERNMENT, OF COURSE, IS CHALLENGING

23   MARCUS, BUT ON NO SUBSTANTIAL GROUND REALLY BECAUSE, FIRST OF

24   ALL, THEY IGNORE THAT HE'S ONLY RELYING ON KLEIN'S

25   DESCRIPTION, HIS FIRSTHAND OBSERVATIONS OF THE SPLITTER AND

THE EQUIPMENT.

NOW, ONE OF THE POINTS THEY CONTEND IS THAT, WELL, THERE'S NO CONFIRMATION OF WHAT EQUIPMENT IS ACTUALLY IN THE SECRET ROOM BECAUSE KLEIN NEVER HAD THE CHANCE TO OBSERVE THAT. WELL, WE HAVE RUSSELL.  RUSSELL COMES ALONG.  HE SPECIFICALLY DISCUSSES THE KLEIN DECLARATION -- I'M SORRY, THE MARCUS DECLARATION.  AND HE SAYS THE EQUIPMENT IN THE SECRET ROOM THAT MR. MARCUS DISCUSSES IS, IN FACT, THERE.  AND WE -- WE GIVE YOU THE CITATIONS IN OUR BRIEF ON THAT POINT.

THE GOVERNMENT -- SO THE GOVERNMENT -- I DON'T -- I THINK IT IS FAIR TO SAY THE GOVERNMENT DOESN'T CHALLENGE KLEIN'S FIRSTHAND KNOWLEDGE OF THE COPYING OF THE INTERNET BACKBONE COMMUNICATIONS USING THE SPLITTER AND THE DIVERSION TO THE SECRET ROOM.  THAT'S ALL PERSONAL OBSERVATION BY KLEIN.

WHAT THEY DO SAY IS ANYTHING THAT KLEIN SAYS ABOUT THE NSA'S PARTICIPATION IS INADMISSIBLE HEARSAY.  AND THAT'S JUST NOT CORRECT.

FIRST OF ALL, WE CITE TO YOU THE CASES SHOWING BROAD SCOPE AND ABILITY OF EMPLOYEES TO TESTIFY TO CORPORATE ACTIVITIES AND RELATIONSHIPS OF THEIR EMPLOYEES AND COWORKERS.  THAT'S ON PAGE 26 OF OUR REPLY BRIEF.  AND IT'S A WHOLE LIST OF AUTHORITIES AND CITATIONS.

ONE OF THEM WE RELY ON, FOR EXAMPLE, IS THE *U.S. VERSUS NEAL* CASE, N-E-A-L.  THAT'S A CASE WHERE A BANK EMPLOYEE HAD -- AT A BANK ROBBERY TRIAL, WHOSE ONLY KNOWLEDGE WAS WHAT

1    SHE READ IN BANK DOCUMENTS.  SHE HADN'T TALKED TO ANYONE, EVEN

2    WITHIN THE BANK MUCH LESS OUTSIDE THE BANK, AND SOLELY BASED

3    ON READING THESE DOCUMENTS, SHE TESTIFIED TO THE BANK'S

4    RELATIONSHIP WITH THE FEDERAL AGENCY, THE FEDERAL DEPOSIT

5    INSURANCE COMPANY.  AS I KNOW YOUR HONOR KNOWS, IN A BANK

6    ROBBERY CASE, YOU HAVE TO PROVE A FEDERAL NEXUS.  AND THE

7    ADMISSION OF HER -- IN HER TESTIMONY WAS ADMISSIBLE.

8        WE CITE MANY OTHER CASES WHERE EMPLOYEES DESCRIBE THE

9    ACTIVITIES OF THEIR BUSINESS, THE RELATIONSHIP OF THEIR

10   BUSINESS TO OUTSIDE ENTITIES, AND IT'S ALL ADMISSIBLE AS

11   PERSONAL KNOWLEDGE.  THE PERSONAL KNOWLEDGE REQUIREMENT IS A

12   LOW BARRIER, AS THE CASES SAY.

13       SECOND, EVEN APART FROM THAT ADMISSIBILITY, THE

14   STATEMENTS -- KLEIN TESTIFIES TO TWO MEETINGS THAT WERE HELD

15   AT AT&T HERE IN SAN FRANCISCO WITH THE NSA AND AT&T.  THE

16   STATEMENTS REGARDING THOSE MEETINGS, BEFORE THE MEETINGS

17   PEOPLE HAD TOLD HIM HE RECEIVED EMAILS AND ALSO IN

18   CONVERSATIONS THEY TOLD HIM THE NSA WILL BE MEETING WITH US TO

19   SET UP THIS PROGRAM.

20       THE STATEMENTS REGARDING THOSE ARE ADMISSIBLE AS

21   STATEMENTS OF INTENT UNDER RULE 803.3.  AND THAT RULE EXTENDS

22   TO SHOWING THAT WHAT -- THAT THE MEETINGS THAT WERE

23   ANTICIPATED ACTUALLY DID OCCUR.  AND THAT'S -- I'M SURE WE ALL

24   REMEMBER FROM EVIDENCE CLASS, THE *MUTUAL INSURANCE VERSUS*

25   *HILLMAN* CASE, 1990 SUPREME COURT CASE CITING IF SOMEONE

1   TESTIFIES THAT THEY ARE PLANNING TO HAVE A MEETING TO DO

2   SOMETHING IN THE FUTURE, IT'S ADMISSIBLE NOT ONLY FOR THE

3   POINT THAT THAT WAS THEIR INTENT TO DO IT, BUT AS EVIDENCE

4   THAT IT ACTUALLY HAPPENED SUBSEQUENTLY.

5       FINALLY, THE STATEMENTS ARE ALL ADMISSIBLE AS -- UNDER

6   802(D)(2)(D) AS NONHEARSAY STATEMENTS BY AT&T AS THE

7   GOVERNMENT'S AGENT.

8       NOW, I GLEAN FROM SOME OF THE ADDITIONAL AUTHORITIES THAT

9   THE GOVERNMENT HAS SUBMITTED THAT ONE OF THEIR GROUNDS FOR

10  CHALLENGING THE 802(D)(2)(D) ADMISSION IS A CONTENTION THAT

11  THERE'S NO INDEPENDENT EVIDENCE OF AN AGENCY RELATIONSHIP

12  BETWEEN THE GOVERNMENT AND AT&T.  AND THAT'S NOT CORRECT.

13      FIRST OF ALL, YOU CAN CONSIDER THE STATEMENT ITSELF AS

14  EVIDENCE OF THE RELATIONSHIP, ALTHOUGH BY ITSELF IT'S NOT

15  SUFFICIENT.

16      SECOND OF ALL, WE HAVE THE AT&T'S ADMISSION THAT IT IS

17  CURRENTLY CONDUCTING FISA SURVEILLANCE.  THAT'S EVIDENCE OF

18  THE AGENCY RELATIONSHIP.  WE HAVE THE NSA INSPECTOR GENERAL'S

19  REPORT.  THAT'S EVIDENCE OF THE AGENCY RELATIONSHIP BETWEEN

20  AT&T AND THE GOVERNMENT.

21      AND SO WE THINK THAT THOSE -- THOSE CONTENTIONS ARE NOT

22  WELL-TAKEN.

23      AND, FINALLY, AS THE FINAL STEP SHOWING OUR STANDING, WE

24  HAVE OUR CLIENTS' DECLARATIONS SHOWING THAT THEY ARE AT&T

25  CUSTOMERS, THEY USE AT&T INTERNET SERVICES, INCLUDING TO

1    COMMUNICATE INTERNATIONALLY.

2         **THE COURT:**  SO THE NEXUS THERE IS THEY'RE AT&T

3    CUSTOMERS, AND SINCE ALL OF THIS TRAFFIC IS GOING TO THE

4    GOVERNMENT IN WHOLESALE FASHION, AND THEIR COMMUNICATIONS ON

5    THE INTERNET ARE INCLUDED BY VIRTUE OF THEIR BEING AT&T

6    CUSTOMERS, THAT GIVES THEM THE STANDING?

7         **MR. WIEBE:**  THAT'S EXACTLY RIGHT, YOUR HONOR.

8         **THE COURT:**  BUT YOU ARE NOT CONTENDING -- ARE YOU

9    CONTENDING -- AND I RE-READ THE BRIEF, BY THE WAY, YOU ARE

10   ABSOLUTELY RIGHT, YOU ARE CONTESTING STAGE 1, I THINK IT WAS

11   STAGE 4 THAT YOU WEREN'T CONTESTING --

12        **MR. WIEBE:**  THAT'S RIGHT, TOO, YOUR HONOR.

13        **THE COURT:**  -- IS THERE ANY STANDING WITH RESPECT

14   TO -- LET'S SAY THIS CASE WAS ONLY ABOUT STAGE 3.  IS THERE

15   ANY EVIDENCE THAT YOUR CLIENTS QUALIFY UNDER STAGE 3 -- WOULD

16   HAVE STANDING UNDER STAGE 3?

17        **MR. WIEBE:**  UNDER STAGE 3, YES.  NOW, WHAT HAPPENS --

18        **THE COURT:**  WHAT IS THAT?

19        **MR. WIEBE:**  BETWEEN STAGE 1 AND STAGE 3?

20        **THE COURT:**  YES.

21        **MR. WIEBE:**  OKAY.

22      STAGE 1 STARTS WITH THE WHOLE BALL OF WAX.  ALL OF THE

23   COMMUNICATIONS.

24      STAGE 2 IS A FILTERING, TRYING TO FILTER OUT ONLY THOSE

25   COMMUNICATIONS WHICH ARE TRAVELING INTERNATIONALLY.

1        SO, TO BE -- TO HAVE STANDING FOR STAGE 3, YOU NEED TO

2    MAKE COMMUNICATIONS THAT TRAVEL INTERNATIONALLY.  ALTHOUGH WE

3    WOULD ALSO CONTEND THAT GIVEN THE IMPERFECTION OF THE

4    FILTERING AND THE FACT THAT WHOLLY DOMESTIC COMMUNICATIONS END

5    UP IN STAGE 4, THAT THAT MAY NOT BE NECESSARY FOR STANDING,

6    BUT IT'S CERTAINLY SUFFICIENT FOR STANDING.

7        AND SO IN OUR CLIENT DECLARATIONS, THE CLIENTS DOCUMENT

8    THAT THEY DO COMMUNICATE INTERNATIONALLY.  SO THEIR

9    COMMUNICATIONS WILL MAKE IT THROUGH THE STAGE 2 FILTER FROM

10   STAGE 1 TO STAGE 3.

11        **THE COURT:**  WHAT IS THE EVIDENCE OF THAT?  I READ

12   SOMETHING ABOUT A PHONE CALL THAT WAS MADE MAYBE TO ANOTHER

13   COUNTRY IN 2009, WHAT EVIDENCE IS THERE OF ONGOING -- BECAUSE

14   YOU'RE ASKING TO ENJOIN FUTURE ACTIVITY -- ONGOING

15   INTERNATIONAL COMMUNICATION BY THE PLAINTIFFS?

16        **MR. WIEBE:**  IF I MAY, YOUR HONOR.

17        **THE COURT:**  SURE.

18        **MR. WIEBE:**  SO THE PLAINTIFF DECLARATIONS ARE ECF

19   NUMBERS 263, 264, AND 265.

20        AND LOOKING AT THE FIRST ONE, DOCUMENT NUMBER 263, THIS IS

21   THE DECLARATION OF THE NAMED PLAINTIFF CAROLYN JEWEL.  AND IF

22   WE LOOK AT HER DECLARATION, SHE BEGINS BY DESCRIBING THE

23   HISTORY OF HER USE OF AT&T INTERNET SERVICES.  AND THEN WE

24   COME TO PARAGRAPH 6 WHERE SHE SAYS QUOTE:

25        "THROUGHOUT MY TIME AS A SUBSCRIBER, CONTINUING UP TO THE

1    PRESENT", I'M OMITTING PORTIONS OF THIS FOR SPEED, "I HAVE

2    ENGAGED IN EMAIL CORRESPONDENCE WITH INDIVIDUALS IN MANY

3    FOREIGN COUNTRIES, INCLUDING ENGLAND, GERMANY, INDONESIA, NEW

4    ZEALAND AND AUSTRALIA.  I REGULARLY RECEIVE AND RESPOND TO

5    EMAILS FROM FANS, TRANSLATORS, AND OTHERS IN FOREIGN

6    COUNTRIES."

7        WHAT SHE IS REFERRING TO IS, SHE'S A NOVELIST AND WRITES

8    BOOKS AND RECEIVES THESE INTERNATIONAL COMMUNICATIONS IN

9    RESPONSE TO THAT.

10        PARAGRAPH 7, SHE GOES ON TO DISCUSS THE FACT THAT SHE'S

11    REGULARLY ACCESSED WEBSITES THAT ARE HOSTED IN FOREIGN

12    COUNTRIES, INCLUDING THE BBC, ONE, AND IN OTHER -- WEBSITES IN

13    OTHER COUNTRIES THAT SHE'S USED IN HER WORK RESEARCHING HER

14    NOVELS.

15        AND LIKEWISE PARAGRAPH 8 ALSO SUBSTANTIATES THAT.

16        SO THAT'S -- I CAN GO ON, BUT I THINK THAT'S DIRECTLY

17    RESPONSIVE TO YOUR QUESTION.

18            **THE COURT:**  WHAT EVIDENCE IS THERE THAT THE

19    MONITORING THAT OCCURS AT STAGE 3 DEALS WITH ANY INTERNATIONAL

20    COMMUNICATIONS AS OPPOSED TO COMMUNICATIONS WITH SUSPECTED

21    TERRORISTS -- HOT SPOTS LIKE SYRIA, OR YEMEN, OR SOMALIA, OR

22    SOMETHING LIKE THAT?

23            **MR. WIEBE:**  UH-HUH.  THE -- ONE EXAMPLE OF THAT IS

24    THE PCLOB REPORT, WHICH TALKS ABOUT THE PROCESS THAT GOES

25    THROUGH FROM STAGE 1 TO STAGE 3, AND IT EXPLAINS THAT THE

1   POINT OF STAGE 2 IS TO TRY TO FILTER OUT DOMESTIC

2   COMMUNICATIONS, BUT TO LEAVE ALL THE FOREIGN GROUP

3   COMMUNICATIONS.  SO THAT'S -- THAT'S WHAT THE GOVERNMENT IS

4   TRYING TO DO.

5       AS WE EXPLAIN IN OUR BRIEF, THEY DO THAT AND MORE.  AND

6   WHAT I MEAN BY THAT IS NOT ONLY DOES ALL THE FOREIGN STUFF GO

7   THROUGH, BUT THEY ERR ON THE SIDE OF INCLUSIVENESS.  SO A LOT

8   OF DOMESTIC STUFF, IN FACT, DOES MAKE IT TO STAGES 3 AND 4.

9   BUT CERTAINLY ALL THE INTERNATIONAL STUFF MAKES IT TO STAGE 3,

10  AND I DON'T THINK THERE'S REALLY A DISPUTE ABOUT THAT.

11      SO THAT'S A SUMMARY OF OUR EVIDENCE.  I THINK IT'S

12  IMPORTANT TO NOTE THAT THE GOVERNMENT HASN'T PUT IN ANY

13  EVIDENCE IN THE PUBLIC RECORD DISPUTING ANY OF THOSE

14  CONTENTIONS.  THIS IS NOT A SUMMARY JUDGMENT WHERE BOTH

15  PARTIES HAVE PUT IN CONFLICTING EVIDENCE THAT CREATES A

16  MATERIAL DISPUTE OF FACT.

17          **THE COURT:**  WOULD YOU AGREE, HOWEVER, JUST PICKING UP

18  ON THE STATEMENT THAT YOU JUST MADE, THAT THE COURT IS TO

19  REVIEW THE ENTIRE RECORD, INCLUDING THOSE MATTERS SUBMITTED

20  UNDER SEAL IN CAMERA THAT ARE CLASSIFIED?

21          **MR. WIEBE:**  NO.  I -- THAT'S NOT CORRECT AND I DON'T

22  THINK THAT'S WHAT THE GOVERNMENT IS SUGGESTING EITHER.

23      I MEAN OBVIOUSLY YOU NEED TO REVIEW -- YOU MAY REVIEW THE

24  SECRET MATERIALS IN CONNECTION WITH THEIR ARGUMENT THAT THE

25  STATE SECRETS PRIVILEGE PRECLUDES THE LITIGATION, BUT I THINK

```
 1    THEY'VE BEEN CLEAR THAT AS FAR AS MAKING THE MERITS

 2    DETERMINATION ON THE MOTIONS, YOU SHOULD ONLY LOOK AT THE

 3    PUBLIC RECORD.  I MEAN --

 4              THE COURT:  THAT'S AN INTERESTING QUESTION, AND ONE

 5    I'M GOING TO ASK THE GOVERNMENT ABOUT, WHICH IS THE

 6    GOVERNMENT -- THERE IS THE RECORD WHICH CONSISTS OF, YOU KNOW,

 7    BASICALLY TWO GROUPS OF EVIDENCE, ONE IN THE PUBLIC RECORD AND

 8    ONE IN THE PRIVATE RECORD.  AND LET'S SAY HYPOTHETICALLY IN A

 9    CASE, NOT THIS CASE, THE GOVERNMENT SUBMITS MATERIALS

10    PROPERLY, LEGALLY UNDER SEAL AND IT'S CLASSIFIED, THAT EITHER

11    CREATES AN ISSUE OF FACT OR TO THE CONTRARY, SHOWS WHY PERHAPS

12    THE PLAINTIFFS ARE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW

13    AND THE GOVERNMENT IS.

14        ARE YOU SAYING THAT -- ARE YOU SAYING THAT THE GOVERNMENT

15    AGREES THAT THAT INFORMATION CANNOT BE CONSIDERED BY THE COURT

16    ON THE MERITS OF THE MOTION ITSELF?  PUTTING ASIDE STATE

17    SECRETS DEFENSE -- STATE SECRETS DEFENSE.

18              MR. WIEBE:  AND OBVIOUSLY WE WILL HEAR SOON ENOUGH

19    WHAT THE GOVERNMENT'S POSITION IS, AND I DON'T MEAN TO

20    MISCHARACTERIZE ANYTHING IN WHAT THEY SAY.  WHAT I'M RELYING

21    ON ARE STATEMENTS, FOR EXAMPLE, IN THEIR REPLY BRIEF AT

22    PAGE 17 AND NOTE 18 AND PAGE 20.

23        I MEAN, CLEARLY THEY HAVE PRESERVED THEIR STATE SECRET

24    ARGUMENT AND THE ARGUMENT THAT LOOK AT THE SECRET EVIDENCE,

25    JUDGE, AND DISMISS THIS CASE.
```

1    BUT I THINK OR I UNDERSTOOD THEM TO BE SAYING IN -- IN

2    DECIDING THE MERITS OF THIS MOTION, YOU SHOULD ONLY LOOK TO

3    THE PUBLIC EVIDENCE BECAUSE THE WHOLE RULE OF THE STATE

4    SECRETS PRIVILEGE IS IT'S A PRIVILEGE.  IT EXCLUDES EVIDENCE.

5    SO YOU CAN'T CONSIDER ON THE MERITS EVIDENCE WHICH WOULD BE --

6    WHICH THEY ASSERT ARE PRIVILEGED TO -- BECAUSE OF THE EFFECT

7    OF THE PRIVILEGE IS TO EXCLUDE EVIDENCE.

8         **THE COURT:**  ALL RIGHT.

9         **MR. WIEBE:**  BUT LET ME, IF I CAN, ADDRESS --

10        **THE COURT:**  I THINK MAYBE YOU SHOULD WRAP UP YOUR

11   INITIAL PRESENTATION AT THIS POINT.

12        **MR. WIEBE:**  I DID WANT TO ADDRESS MORE, IF I MAY, IS

13   THE QUESTION OF HOW DOES THE SECRET EVIDENCE PLAY INTO THIS,

14   WHICH IS THE BROADER QUESTION YOU HAD ASKED.

15        **THE COURT:**  PLEASE, I WOULD LIKE YOU TO CONFINE IT --

16   I SORT OF DO THINGS IN A COMPARTMENTALIZED WAY, WHICH IS MY

17   WAY.

18        **MR. WIEBE:**  OKAY.

19        **THE COURT:**  SO IF THAT IS MORE PERTINENT TO A LATER

20   QUESTION, YOU'RE MORE THAN HAPPY -- BECAUSE WE WILL BE TALKING

21   ABOUT --

22        **MR. WIEBE:**  SURE.  SURE.

23        **THE COURT:**  -- THE STATE SECRETS ISSUE AND -- LATER

24   ON.

25        **MR. WIEBE:**  IT'S -- I HAVE PREPARED REMARKS ON THAT

1    IN RESPONSE TO QUESTION 10, AND I CAN RESERVE IT.

2        JUST BRIEFLY --

3            **THE COURT:** YES.

4            **MR. WIEBE:** -- TO SUMMARIZE THOSE.  OUR VIEW IS THERE

5    IS A WAY FOR YOU TO CONSIDER THAT SECRET EVIDENCE ON THE

6    MERITS.  THAT PATH IS 1806(F).

7            **THE COURT:** RIGHT.

8            **MR. WIEBE:** BUT TO GO DOWN THAT PATH, FIRST THE

9    GOVERNMENT HAS TO INVOKE 1806(F), WHICH THEY HAVE NOT DONE SO

10   FAR.  ONCE THEY DO, YOU CAN CONSIDER THAT SECRET EVIDENCE.

11   BUT THE PURPOSE OF CONSIDERING IT IS NOT TO DISMISS THE CASE

12   MERELY BECAUSE THERE IS SECRET EVIDENCE, BUT TO DECIDE THE

13   MERITS.

14       AND WE BELIEVE THERE ARE WAYS YOU CAN DECIDE THE MERITS

15   THAT WOULDN'T INVOLVE ANY DISCLOSURE OF STATE SECRETS, BUT

16   WE'LL GET TO THAT.

17       IF I MAY JUST MAKE ONE FINAL POINT ON THE --

18           **THE COURT:** SURE.

19           **MR. WIEBE:** -- ON THE BODY OF EVIDENCE.

20       AS I WAS SAYING, I THINK IT IS IMPORTANT TO NOTE THAT IN

21   THE PUBLIC RECORD, AT LEAST, THE GOVERNMENT IS NOT DISPUTING

22   ANY OF THE EVIDENCE THEY PUT FORWARD.  THEY'VE -- YOU KNOW,

23   THEY HAVEN'T SAID IN THE PUBLIC RECORD THAT THEY ARE NOT

24   CONDUCTING THE SURVEILLANCE OR IT DOESN'T INVOLVE AT&T.

25       AND I THINK THAT DOES MATTER IN THE SUMMARY JUDGMENT

1    POSTURE BECAUSE IT IS THEIR BURDEN UNDER THE SUMMARY JUDGMENT

2    STANDARD TO COME FORWARD WITH THAT EVIDENCE.

3            **THE COURT:**  ALL RIGHT.  THANK YOU VERY MUCH.

4        **MR. WIEBE:**  THANK YOU, YOUR HONOR.

5            **THE COURT:**  I WILL NOW HEAR FROM GOVERNMENT COUNSEL,

6    PLEASE.

7        **MR. GILLIGAN:**  THANK YOU, YOUR HONOR.  MR. GILLIGAN

8    FOR THE DEFENDANTS.

9        I'LL START, AND I THINK YOUR HONOR PRETTY MUCH FOLLOW IN

10   THE ORDER THAT MR. WIEBE ADDRESSED THE EVIDENCE, PUTATIVE

11   EVIDENCE THAT THE DEFENDANTS ARE RELYING ON.

12       IT IS TRUE, THE GOVERNMENT HAS ACKNOWLEDGED THAT IT

13   CONTINUES TO ENGAGE IN WHAT'S CALLED UPSTREAM COLLECTION OF

14   CERTAIN COMMUNICATIONS --

15           **THE COURT:**  IF YOU WANT TO SIT DOWN, YOU ARE MORE

16   THAT HAPPY TO DO SO BECAUSE HE IS GOING TO BE SPEAKING A WHILE

17   AND I'LL GIVE YOU AN OPPORTUNITY TO REPLY.

18       **MR. WIEBE:**  THANK YOU, YOUR HONOR.

19           **THE COURT:**  YOU CAN, IF YOU WANT, BUT YOU DON'T HAVE

20   TO.

21       ALL RIGHT.  GO AHEAD.  SORRY.

22       **MR. GILLIGAN:**  NOT AT ALL, YOUR HONOR.

23       SO AS I WAS SAYING, YES, THE GOVERNMENT HAS ACKNOWLEDGED

24   THAT IT ENGAGES IN A FORM OF SURVEILLANCE CALLED UPSTREAM

25   COLLECTION INVOLVING THE ACQUISITION OF CERTAIN COMMUNICATIONS

1    AS THEY TRANSIT THE INTERNET BACKBONE OF CERTAIN

2    TELECOMMUNICATION SERVICE PROVIDERS.  BUT THE QUESTION, AS

3    YOUR HONOR PUT YOUR FINGER ON, IS WHAT EVIDENCE IS THERE THAT

4    THIS SURVEILLANCE PROCESS ACTUALLY INVOLVES THE COMMUNICATIONS

5    OF THE PLAINTIFFS.  BECAUSE IT IS ONLY ON THAT BASIS THAT THEY

6    CAN HAVE STANDING.  AND THAT REQUIRES NOT RUST GENERALITIES

7    ABOUT THE EXISTENCE OF THE PROGRAM, BUT SPECIFIC INFORMATION

8    ABOUT ITS SCOPE AND THE DETAILS OF ITS OPERATION, AND THAT

9    INFORMATION SIMPLY IS NOT IN THIS RECORD --

10          **THE COURT:**  IS IT ENOUGH?  I AM SORRY.  IS IT ENOUGH,

11    AS PLAINTIFFS HAVE ARGUED IN THEIR BRIEFS AND MR. WIEBE JUST

12    ARGUED, THAT IF -- IF THE RECORD SUPPORTS, THE PUBLIC RECORD

13    SUPPORTS -- THERE'S EVIDENCE IN THE PUBLIC RECORD THAT USING

14    AT&T, THE GOVERNMENT IS COLLECTING WHOLESALE, WITH AT&T'S

15    HELP, ALL OF THE INTERNET COMMUNICATIONS, STAGE 1 AND THAT THE

16    PLAINTIFFS ARE AT&T CUSTOMERS AND THAT AS WELL FOR STAGE 3,

17    THE PLAINTIFFS ENGAGE IN INTERNATIONAL COMMUNICATIONS, IS THAT

18    ENOUGH?

19          **MR. GILLIGAN:**  TO THAT SUMMARY OF THEIR CASE, YOUR

20    HONOR, I WOULD ADD THEY ALSO CLAIM THAT THE SCREENING AT STAGE

21    3 INVOLVES THE SCREENING OF ALL FOREIGN COMMUNICATIONS THAT

22    ARE CARRIED ON THE AT&T NETWORK.

23        YES, THAT IS OUR UNDERSTANDING OF THEIR CASE, THAT IS,

24    THAT IT IS A WHOLESALE COPYING OF EVERY COMMUNICATION ON THE

25    AT&T NETWORK TURNED OVER TO THE GOVERNMENT, AND THEN ALL OF

1    THE FOREIGN COMMUNICATIONS ARE SCREENED.

2        IF THERE WERE EVIDENCE OF THAT, THAT MIGHT BE SUFFICIENT

3    TO ESTABLISH THEIR STANDING, BUT THERE IS ABSOLUTELY NO

4    EVIDENCE --

5            **THE COURT:**  WHAT ABOUT ALL THIS EVIDENCE, THE PCLOB,

6    MR. KLEIN, I THINK ALL THIS EVIDENCE THAT THE PLAINTIFFS

7    ALLUDE TO THAT THERE IS -- WHEN YOU PUT IT ALTOGETHER, THERE'S

8    SOME PRETTY BROAD STATEMENTS ABOUT WHAT THE GOVERNMENT IS

9    DOING, SOME OF THEM BY VIRTUE OF ADMISSION BY HIGH GOVERNMENT

10   OFFICIALS WOULD SEEM TO SAY THERE IS THIS WHOLESALE GRABBING

11   IN THE FIRST INSTANCE.

12       CAN YOU DRILL DOWN INTO THE EVIDENCE THAT THEY -- THAT THE

13   PLAINTIFFS CITE TO WHICH BASICALLY LEAVES -- SAYS THERE'S

14   EITHER AN ISSUE OF FACT OR AS A MATTER OF LAW IT'S TO THE

15   CONTRARY?

16       THAT IS WHAT I AM TRYING TO FIGURE OUT HERE.  THERE IS SO

17   MUCH GENERALITY.  THERE'S SO MUCH MATERIAL THAT HAS BEEN

18   GENERATED BY COMMISSIONS, ET CETERA.  SO THAT'S REALLY WHAT I

19   WOULD LIKE YOU TO SORT OF ENGAGE THE PLAINTIFF ON THAT POINT.

20           **MR. GILLIGAN:**  I WOULD BE HAPPY TO, YOUR HONOR.

21       AND AS A -- SOMEBODY IN OUR POSITION MUST DO, WHAT I CAN

22   DO IS LIMIT, WHAT I CAN DO IS POINT TO THE ABSENCE IN ANY OF

23   THE AUTHORITIES THEY'VE CITED, THE PCLOB REPORT, THE NSA'S

24   CIVIL LIBERTIES OVERSIGHT BOARD REPORT AND OTHERS.  THERE IS

25   NO STATEMENT IN ANY OF THOSE PUBLIC REPORTS THAT THE

1    GOVERNMENT ACQUIRES ALL OF THE COMMUNICATIONS CARRIED BY AT&T

2    OR ANY OTHER TELECOMMUNICATIONS SERVICE PROVIDER.  THERE IS

3    SIMPLY NO STATEMENT TO THAT EFFECT.

4        AND, IN FACT, AS -- AS IS DISCUSSED IN THE PUBLIC STATE

5    SECRETS DECLARATIONS BY THE DIRECTOR OF NATIONAL INTELLIGENCE

6    AND ALSO SUBMITTED BY THE NSA, THESE ARE THE KINDS OF

7    OPERATIONAL DETAILS REGARDING THE UPSTREAM PROGRAM THAT

8    REMAIN, REMAIN CLASSIFIED THAT HAVE NOT BEEN PUBLICLY

9    DISCLOSED.

10       THE COURT CAN REVIEW THE REPORTS BY THE PCLOB AND BY THIS

11   CPL AND OTHERS.  THE COURT WILL LOOK IN VAIN FOR ANYTHING THAT

12   SAYS THAT IT IS A WHOLESALE COPYING OF THE ENTIRE

13   COMMUNICATIONS STREAM FOLLOWED BY ELECTRONIC SCANNING OF ALL

14   OF THE FOREIGN COMMUNICATIONS.  THAT KIND OF DETAIL ABOUT THE

15   EXACT SCOPE, WHETHER IT IS OR ISN'T, AND IF IT ISN'T ON WHAT

16   SCALE OF SCOPE UPSTREAM IS CONDUCTED, THAT IS NOT A MATTER OF

17   PUBLIC RECORD.

18           **THE COURT:**  SO LET'S PUT ASIDE FOR THE MOMENT, AND I

19   WILL LET YOU CONTINUE YOUR RESPONSE BECAUSE WE ARE NOW IN THE

20   CONTEXT OF WHAT MR. WIEBE JUST SAID, SO LET'S TAKE STAGE 3

21   WHERE WE ADMITTED -- I WOULDN'T SAY "ADMITTEDLY", BUT THE

22   RECORD DOES SEEM TO SAY THAT THE GOVERNMENT IS -- THEN DOES

23   GET IN STAGE 3 FOREIGN COMMUNICATIONS.  PLAINTIFFS SAY, OKAY,

24   IRRESPECTIVE OF WHAT HAPPENED IN STAGE 1, WE -- WE ENGAGE IN

25   FOREIGN COMMUNICATIONS, SO IT'S STAGE 3.  CLEARLY OUR

1    COMMUNICATIONS ARE IN THAT GROUP OF -- PIECE OF INFORMATION

2    THAT THE GOVERNMENT IS GETTING AND IS SUBJECTING TO WHAT THE

3    PLAINTIFFS WOULD ARGUE IS A SEARCH.

4        WHAT DO YOU HAVE TO SAY ABOUT THAT IN TERMS OF STANDING?

5            **MR. GILLIGAN:**  WHAT I WOULD SAY ABOUT THAT, YOUR

6    HONOR, IS THEIR ARGUMENT ON THAT SCORE IS, AGAIN, PREDICATED

7    ON THE NOTION THAT THE SCANNING THAT TAKES PLACE AT STAGE 3 IS

8    A -- IS THE SCANNING OF ALL OF THE FOREIGN COMMUNICATIONS

9    CARRIED ON A PROVIDER'S NETWORK, WHICH IS NECESSARILY

10   DEPENDENT ON THEIR ASSERTION REGARDING WHAT HAPPENS AT STAGE

11   1, WHICH IS THAT AT&T, OR WHATEVER PROVIDER, WHOLESALE COPIES

12   EVERY COMMUNICATION THAT IS CARRIED ON ITS BACKBONE NETWORK

13   AND PROVIDES IT TO THE NSA.

14       THERE IS NO EVIDENCE --

15           **THE COURT:**  BUT THERE IS EVIDENCE THAT HOWEVER THEY

16   GET IT, HOWEVER NSA GETS IT, AT SOME POINT THEY GET A PIECE OF

17   THE INFORMATION, A SUBSET OF ALL OF THE INFORMATION WHICH THEY

18   SUBJECT TO SCRUTINY.  AND ONCE IT IS IN THEIR POSSESSION,

19   ARGUABLY, THEN IT BECOMES A SEIZURE AND THEN A SEARCH.  AND

20   THAT IS WHAT THEY GET IN GROSS, WHAT THE NSA GETS -- GRABS,

21   PER THE PLAINTIFFS IN THE PUBLIC RECORD, CORRECT ME IF I'M

22   WRONG, IS ALL FOREIGN COMMUNICATIONS.

23           **MR. GILLIGAN:**  THERE IS -- THERE IS -- THERE IS NO

24   PUBLIC EVIDENCE TO THAT EFFECT, YOUR HONOR.  AGAIN, I CAN --

25           **THE COURT:**  WHAT IS THE EVIDENCE WITH RESPECT TO THAT

```
 1    IN THE PUBLIC RECORD?

 2              MR. GILLIGAN:  NONE.  SO THINK --

 3                   (SIMULTANEOUS COLLOQUY.)

 4         THE COURT:  SO WHAT YOU ARE SAYING -- SORRY TO

 5    INTERRUPT YOU -- YOU ARE SAYING THAT THERE'S NO EVIDENCE ONE

 6    WAY OR THE OTHER ABOUT WHAT EXACTLY THE NSA LOOKS AT IN STAGE

 7    3; IS THAT ESSENTIALLY WHAT YOU ARE SAYING?

 8         MR. GILLIGAN:  YES.  THERE'S -- THERE IS NO PUBLIC

 9    EVIDENCE ABOUT THE SIZE OR THE SCOPE OF THE BODY OF

10    COMMUNICATIONS THAT ARE ACTUALLY, ACTUALLY GO THROUGH THE

11    STAGE 3 SCREENING PROCESS, HOW MUCH HAS BEEN OBTAINED TO THAT

12    POINT.

13         THE COURT:  OKAY.

14         MR. GILLIGAN:  NONE.  MR. WIEBE WAS REFERRING TO THE

15    PCLOB REPORT WHICH SAYS THE DOMESTIC COMMUNICATIONS ARE

16    SCREENED OUT.  AND FROM THAT HE INFERS THAT, WELL, THAT MUST

17    MEAN THAT ALL THE FOREIGN COMMUNICATIONS REMAIN.

18         AGAIN, THAT IS PREDICATED ON THEIR POSITION ABOUT STAGE 1,

19    WHICH IS THAT STAGE 1 INVOLVES A WHOLESALE COPYING AND THE

20    DETECTION BY NSA OF ALL COMMUNICATIONS ON THE NETWORK.  THAT'S

21    NOT DEMONSTRATED ONE WAY OR THE OTHER --

22         THE COURT:  WHAT ABOUT THE --

23         MR. GILLIGAN:  -- IN THE PUBLIC RECORD.

24         THE COURT:  SORRY TO INTERRUPT YOU.

25         WHAT ABOUT THE CIRCUMSTANTIAL EVIDENCE FROM KLEIN, MARSHAL
```

1    AND MARCUS THAT SAYS THAT THEY OPINE THAT AT&T WOULD NEVER

2    COPY IN ANY FASHION AS AT LEAST SOMETHING -- AT&T COPIED

3    SOMETHING VIA SPLITTER.  THEY WOULDN'T DO THAT ON THEIR OWN

4    FOR BUSINESS PURPOSES, SO IT MUST BE THE CASE THAT THEY ARE

5    DOING THAT PURSUANT TO THE GOVERNMENT'S REQUEST.

6        WHAT ABOUT THAT EVIDENCE?

7            **MR. GILLIGAN:**  WELL, I WOULD LOVE TO TALK ABOUT THE

8    KLEIN AND MARCUS EVIDENCE.

9            **THE COURT:**  I DON'T KNOW IF YOU WOULD LOVE IT, BUT

10   YOU WOULD PROBABLY ENJOY IT.

11                            (LAUGHTER.)

12           **THE COURT:**  LOVE IS A VERY STRONG TERM.

13           **MR. GILLIGAN:**  LOVE IS A VERY STRONG TERM.

14           **THE COURT:**  YES.

15           **MR. GILLIGAN:**  I WOULD BE HAPPY TO.

16           **THE COURT:**  THANK YOU.

17           **MR. GILLIGAN:**  IT'S -- THE -- THE TESTIMONY PROVIDED

18   BY MR. KLEIN AND MARCUS, YOUR HONOR, IS A COMBINATION OF --

19   JUST TO GET THE BALL ROLLING -- HEARSAY AND SPECULATION.

20       AND ALSO VERY IMPORTANTLY, AND THIS IS A SUBJECT MR. WIEBE

21   DIDN'T TOUCH ON, IT CONCERNS ALLEGED EVENTS 10 TO 12 YEARS

22   AGO.  IT'S -- IT'S -- IT'S FAR, FAR TOO REMOTE IN TIME IN THE

23   FINAL ANALYSIS, WHATEVER ELSE MAY BE SAID ABOUT IT, TO BE

24   PROBATIVE OF ANYTHING THAT'S SUPPOSEDLY OCCURRING TODAY.

25       BUT TO TAKE IT FROM THE TOP, IF I MAY, ALLOW ME FIRST TO

1    ADDRESS THE SO-CALLED AT&T ADMISSIONS BECAUSE THAT WILL PLAY

2    INTO THE KLEIN AND MARCUS EVIDENCE.

3        FIRST, MR. WIEBE REFERS TO AT&T'S RECENT TRANSPARENCY

4    REPORT, AS IT IS CALLED.  THE TRANSPARENCY REPORT ONLY REVEALS

5    IN VERY GENERAL TERMS THAT AT&T HAS RESPONDED TO FISA ORDERS

6    ISSUED ON BEHALF OF UNIDENTIFIED GOVERNMENT AGENCIES, AND NOT

7    WHETHER AT&T DOES NOW OR DID AT ANY OTHER TIME, PARTICIPATE IN

8    ANY PARTICULAR INTELLIGENCE PROGRAM, SUCH AS UPSTREAM OR THE

9    OTHER FORM OF 702 COLLECTION, PRISM, OR TRADITIONAL FISA

10   TITLE I ORDERS, AND IT DOESN'T STATE ON BEHALF OF WHAT

11   AGENCIES AT&T HAS RESPONDED TO FISA ORDERS.  THE NSA IS NOT

12   THE ONLY AGENCY ON BEHALF OF WHICH FISA ORDERS ARE ISSUED.

13        **THE COURT:**  DOES IT MATTER IF IT IS PART OF THE

14   EXECUTIVE BRANCH WHETHER --

15        **MR. GILLIGAN:**  IT MATTERS TO THE EXTENT THAT WE ARE

16   TALKING ABOUT AT&T'S PARTICIPATION IN THE CHALLENGED PROGRAM

17   HERE TODAY.

18        **THE COURT:**  ALL RIGHT.

19        **MR. GILLIGAN:**  YES, IT DOES MATTER VERY MUCH, YOUR

20   HONOR.

21        SO THERE'S NOTHING IN THE TRANSPARENCY REPORT THAT'S

22   SPECIFIC TO WHAT THE PLAINTIFFS ARE CHALLENGING TODAY.

23        THE OTHER DOCUMENT THEY REFER TO IS THE -- AND I CAN'T

24   STRESS THIS ENOUGH -- THE ALLEGED NSA OIG REPORT.

25        WHAT MR. WIEBE IS REFERRING TO IS A DOCUMENT THAT WAS

1    POSTED ON THE INTERNET BY *THE GUARDIAN* WITH THE CLAIM THAT

2    THIS IS A REPORT BY THE NSA INSPECTOR GENERAL'S OFFICE.  THE

3    GOVERNMENT HAS NEVER CONFIRMED OR DENIED THAT TO BE THE CASE.

4    AND IT IS WHOLLY UNAUTHENTICATED.

5        AND AS -- AS THE EASTERN DISTRICT OF CALIFORNIA SAID IN

6    THE *SCHWARZ* CASE, WE CITED -- IT WAS ACTUALLY IN OUR BRIEF ON

7    THE COURT'S FOUR THRESHOLD QUESTIONS OF MARCH 7TH, PAGE 21,

8    NOTE 14:

9            "ANY EVIDENCE PROCURED OFF THE INTERNET IS ADEQUATE

10           FOR ALMOST NOTHING WITHOUT PROPER AUTHENTICATION."

11       AND THAT DOCUMENT IS NOT AUTHENTICATED, YOUR HONOR.

12       TURNING THEN TO THE KLEIN AND MARCUS EVIDENCE.  I THINK,

13   AS YOUR HONOR MENTIONED EARLIER, THE KEY POINT IS WHAT WENT ON

14   IN WHAT THE PLAINTIFFS REFER TO AS THE SG3 SECURE ROOM.  THE

15   COMMUNICATIONS APPARENTLY WERE SPLIT OFF WITH THE USE OF THIS

16   SPLITTER CABINET, AND IT APPEARS FROM MR. MARCUS' DECLARATION

17   HE MAY HAVE SOME FIRSTHAND KNOWLEDGE OF THAT, BUT HE HAS NO

18   FIRSTHAND KNOWLEDGE OF WHAT OCCURRED IN THE SG3 ROOM.

19       WE KNOW THAT FOR CERTAINTY FROM PARAGRAPH 17 OF HIS OWN

20   DECLARATION IN WHICH HE STATES THAT HE DID NOT WORK IN THERE

21   AND, IN FACT, EXCEPT ON ONE BRIEF OCCASION WHEN HE WAS

22   ACCOMPANYING ANOTHER AT&T TECHNICIAN WHO HAD TO PICK UP A

23   PIECE OF EQUIPMENT, HE NEVER EVEN SET FOOT IN THAT ROOM; WAS

24   NOT AUTHORIZED TO SET FOOT IN THAT ROOM.  SO HE CANNOT ATTEST

25   FROM PERSONAL KNOWLEDGE WHAT WAS INSTALLED THERE AND WHAT IT

1    WAS USED FOR.

2         NOW, THE PLAINTIFFS RELY ON EXHIBIT C TO HIS DECLARATION

3    WHICH MR. KLEIN DESCRIBES AS A LIST OF EQUIPMENT IN THE SG3

4    ROOM.  BUT WITHOUT ANY PERSONAL KNOWLEDGE OF WHAT EQUIPMENT

5    WAS ACTUALLY IN THAT ROOM, HE HAS NO BASIS ON WHICH TO ATTEST

6    TO THAT FROM PERSONAL KNOWLEDGE.  AND THE DOCUMENT ITSELF DOES

7    NOT SUPPORT THAT CONCLUSION.  IN CONTRAST TO THE FIRST TWO

8    EXHIBITS, WHICH SAY HERE IS THE EQUIPMENT THAT IS IN THIS

9    ROOM, EXHIBIT C IS SELF-DESCRIBED, FIRST ISSUE OF AN

10   INSTALLATION THAT AT SOME POINT PERHAPS WAS SUPPOSED TO OCCUR,

11   BUT THERE'S NO EVIDENCE THAT THAT IS, IN FACT, WHAT HAPPENED.

12        AND THAT'S -- THAT'S DEVASTATING FOR MR. MARCUS' TESTIMONY

13   BECAUSE HIS OPINION ABOUT WHAT SURVEILLANCE HE THINKS AT&T MAY

14   HAVE BEEN ASSISTING THE GOVERNMENT WITH, IS BASED ENTIRELY ON

15   HIS ASSESSMENT OF THE CAPABILITIES OF THE DEVICES LISTED IN

16   EXHIBIT C TO MR. KLEIN'S DECLARATION.  AND THAT'S SET FORTH IN

17   PARAGRAPHS 64 TO 68 OF MR. MARCUS' DECLARATION.  BUT

18   MR. MARCUS, OF COURSE, DOES NOT CLAIM ANY FIRSTHAND KNOWLEDGE

19   OF WHAT EQUIPMENT WAS IN THAT ROOM.

20        SO WHILE HE IS PERHAPS QUALIFIED TO OPINE ON THE

21   CAPABILITIES OF THE DEVICES THAT ARE LISTED IN THE DOCUMENT,

22   WITHOUT EVIDENCE THAT THE EQUIPMENT WAS ACTUALLY INSTALLED

23   THERE, HIS OPINION ABOUT ITS CAPABILITIES IS IRRELEVANT TO

24   WHAT ACTUALLY OCCURRED THERE.  AND SO, AGAIN, IT PROVIDES NO

25   ADMISSIBLE EVIDENCE ON THIS POINT.

```
1         ON THE QUESTION OF GOVERNMENT INVOLVEMENT, NSA

2    INVOLVEMENT, IT IS AGAIN CLEAR ON THE FACE OF MR. KLEIN'S OWN

3    DECLARATION THAT HIS ASSERTIONS ABOUT NSA INVOLVEMENT IS

4    INADMISSIBLE HEARSAY BECAUSE HE ACKNOWLEDGES THAT WHEN HE SAYS

5    THAT IT WAS NSA AGENTS THAT MET WITH VARIOUS TECHNICIANS ABOUT

6    WORKING IN THE SG3 SECURE ROOM, THAT WAS BASED ON WHAT HE WAS

7    TOLD BY YET ANOTHER TECHNICIAN, WHOSE OWN PERSONAL KNOWLEDGE

8    OF THE MATTER IS NOT ESTABLISHED IN THE DECLARATION.  AND THAT

9    IS -- THAT CAN BE FOUND AT PARAGRAPHS 10 AND 16 OF MR. KLEIN'S

10   DECLARATION.

11        HE ALSO RELIES ON WHAT AT THE TIME OF HIS -- THE EXECUTION

12   OF HIS DECLARATION IN 2006, WOULD HAVE BEEN HIS NEARLY

13   FOUR-YEAR-OLD RECOLLECTION OF AN EMAIL THAT CAME FROM

14   UNIDENTIFIED HIGHER MANAGEMENT THAT WAS TALKING ABOUT SOME

15   SORT OF A VISIT AND MENTIONED THE NSA.

16        WHATEVER THAT EMAIL FROM HIGHER MANAGEMENT MAY HAVE SAID,

17   WE DON'T KNOW BECAUSE IT'S NOT IN THE RECORD, AGAIN, THAT

18   WOULD BE HEARSAY ON MR. KLEIN'S PART.

19        NOW, THE PLAINTIFFS WOULD HAVE THE COURT CONCLUDE THAT

20   THERE ARE SEVERAL HEARSAY EXCEPTIONS THAT WOULD ALLOW THIS

21   TESTIMONY TO COME IN.  NONE OF THEM APPLIES.

22        MR. WIEBE FIRST MENTIONED 803.3, THE STATEMENT OF INTENT.

23   WELL, WHEN THE MANAGEMENT TECHNICIAN SAYS TO MR. KLEIN, AND

24   THIS IS IN HIS PARAGRAPH 10 OF HIS DECLARATION, THAT AN NSA

25   AGENT IS COMING TO VISIT, THAT'S NOT A STATEMENT OF INTENT OF
```

1    ANY KIND ON BEHALF OF THAT TECHNICIAN.  IT IS SIMPLY A

2    STATEMENT OF FACT THAT SOMEBODY WHO IS ALLEGEDLY AN NSA AGENT

3    IS COMING TO VISIT.

4             **THE COURT:**  AS OPPOSED TO, I INTEND TO HAVE A

5    MEETING, OR I'M GOING TO HAVE A MEETING WITH AN NSA OFFICIAL?

6             **MR. GILLIGAN:**  AS OPPOSED TO THAT AND SOMETHING MORE

7    AKIN TO THAT I DO ACKNOWLEDGE IS IN PARAGRAPH 16 OF THE

8    DECLARATION WHERE THAT MANAGEMENT TECHNICIAN SAID, "I'M GOING

9    TO HAVE A MEETING WITH THIS NSA AGENT".

10        BUT THE PROBLEM THERE IS THAT A STATEMENT OF INTENT IS

11   ONLY ADMISSIBLE TO PROVE THAT IF HE SAYS HE IS GOING TO MEET

12   WITH SOMEBODY, THAT HE MET WITH THE INDIVIDUAL.  BUT

13   PLAINTIFFS WANT TO ADMIT IT FOR THE FACT THAT THE PERSON HE

14   MET WITH WAS AN NSA AGENT.  AND IN THAT RESPECT, THE STATEMENT

15   IS A STATEMENT OF BELIEF, HIS STATEMENT THAT THE INDIVIDUAL

16   WAS AN NSA AGENT, AND THE RULE EXPRESSLY STATES THAT THE

17   STATEMENT OF INTENT IS NOT ADMISSIBLE TO PROVE A STATEMENT OF

18   BELIEF SUCH AS THAT.

19        I WOULD POINT TO THE AUTHORITY *BANKS* THAT THE PLAINTIFFS

20   THEMSELVES RELY ON FOR SUPPORT FOR THIS ARGUMENT WHERE THE

21   SECOND CIRCUIT SAID THAT -- SAID FURTHER THAT A STATEMENT OF

22   INTENT IS NOT ADMISSIBLE AGAINST A NONDECLARANT.

23        IT IS ONE THING TO ADMIT A STATEMENT I AM GOING TO HAVE A

24   MEETING WITH SO AND SO AGAINST ME AS EVIDENCE THAT I, IN FACT,

25   DID MEET WITH THAT INDIVIDUAL, BUT THEY DON'T WANT TO ADMIT

1    THE STATEMENT AGAINST THE MANAGEMENT TECHNICIAN OR EVEN

2    AGAINST AT&T, THEY WANT TO ADMIT IT AGAINST THE GOVERNMENT, A

3    NONDECLARANT.  AND THE SECOND CIRCUIT HAS SAID THAT THAT'S NOT

4    PERMISSIBLE UNDER 803.3 WITHOUT INDEPENDENT EVIDENCE

5    CONNECTING THE INTENDED ACTION, THE MEETING, TO ACTIVITIES

6    THAT THE NONDECLARANT WAS INVOLVED IN.  AND, AGAIN, THERE IS

7    NO INDEPENDENT EVIDENCE OF GOVERNMENT INVOLVEMENT IN THESE

8    ACTIVITIES.

9        THAT, OF COURSE, BEING SO, ONE, BECAUSE -- AND THIS BRINGS

10   US BACK TO THE TRANSPARENCY REPORT, OF ITS VERY GENERAL

11   NATURE, BUT ALSO THE TRANSPARENCY REPORT IS DISCUSSING ONLY

12   AT&T'S ACTIVITIES AND RESPONSIBILITIES -- RESPONSE TO FISA

13   ORDERS IN A PERIOD APPROXIMATELY IN 2013.

14       BUT WHAT WE ARE TALKING ABOUT HERE ARE EVENTS THAT

15   ALLEGEDLY OCCURRED IN 2003 AND 2004.  SO, THERE'S A 10-YEAR

16   GAP THERE.  AND IT SEEMS THE PLAINTIFFS ARE DOING SORT OF A

17   BACK TO THE FUTURE SORT OF THING HERE WHERE THEY WANT TO TAKE

18   A STATEMENT BY AT&T FROM 2013 AND USE THAT TO IMPUGN AN AGENCY

19   RELATIONSHIP OVER TEN YEARS PRIOR TO THAT.  AND THAT DOESN'T

20   HOLD UP, YOUR HONOR.

21       THE PLAINTIFFS ALSO RELY ON RULE 801(D)(2)(D) AND (E) FOR

22   THE PROPOSITION THAT THE STATEMENTS BY THE MANAGEMENT

23   TECHNICIAN AND THE EMAIL ARE ADMISSIBLE AS STATEMENTS BY THE

24   PARTIES, THE GOVERNMENT'S SO-CALLED AGENTS.

25       BUT AS -- EVEN -- I REALIZE MR. WIEBE RECOGNIZED, OUR

1    POSITION IS THAT THE PLAINTIFFS HAVE NOT LAID THE PREDICATE

2    FOR INVOCATION OF THAT RULE.  THEY HAVE -- THEY HAVE NOT SHOWN

3    BY INDEPENDENT EVIDENCE, EVIDENCE INDEPENDENT OF THE STATEMENT

4    ITSELF, WHICH THE RULE EXPRESSLY REQUIRES, THAT THE AGENCY

5    RELATIONSHIP EXISTS.

6        AGAIN, THEY RELY ON THE TRANSPARENCY REPORT WHICH IS TEN

7    YEARS OUT OF WACK AND IS ALSO TOO GENERAL TO SUPPORT ANY

8    INFERENCES ABOUT PARTICIPATION IN THIS PROGRAM.  AND THE

9    INADMISSIBLE OIG REPORT THAT, SO-CALLED ANYWAY, THAT -- THAT

10   HAS BEEN POSTED ON THE INTERNET.

11       SO, THERE IS -- THERE IS NO INDEPENDENT EVIDENCE ON WHICH

12   TO ESTABLISH THE EXISTENCE OF THE AGENCY RELATIONSHIP.  AND BY

13   THE SAME TOKEN, FOR PURPOSES OF 801(D)(2)(E), NO INDEPENDENT

14   EVIDENCE WHICH THE RULE ALSO REQUIRES TO ESTABLISH THE

15   EXISTENCE OF A CONSPIRACY, WHAT FORM I'M AT A LOSS TO

16   UNDERSTAND, THERE IS NO INDEPENDENT EVIDENCE OF A CONSPIRACY

17   BETWEEN THE GOVERNMENT AND AT&T.

18       SO, IF I MAY HAVE A MOMENT TO LOOK AT MY NOTES HERE, YOUR

19   HONOR, BECAUSE THERE IS A LOT OF --

20           **THE COURT:**  LET ME ASK YOU A QUESTION WHILE YOU ARE

21   DOING THAT, WHICH IS, I WOULD LIKE YOU TO RESPOND TO THE

22   QUESTION I PUT TO MR. WIEBE ABOUT THE PROCEDURE HERE.

23       AND THE QUESTION IS:  TO WHAT EXTENT, IF AT ALL, CAN THE

24   COURT RELY UPON, WITHOUT DISCLOSING IT, CLASSIFIED INFORMATION

25   THAT IS IN THE RECORD, ALBEIT SEALED AND SUBMITTED EX PARTE

1    AND IN CAMERA, TO ADDRESS THE CROSS-MOTIONS FOR SUMMARY

2    JUDGMENT OR PARTIAL SUMMARY JUDGMENT ON THE MERITS?

3        MR. WIEBE SAYS THE GOVERNMENT'S NOT ASKING THE COURT TO DO

4    THAT.

5        WHAT IS YOUR POSITION ABOUT THAT?

6            **MR. GILLIGAN:**  I -- RESERVING OUR RIGHT TO SPEAK FOR

7    MYSELF, I WILL SAY I THINK MR. WIEBE GOT IT PRETTY MUCH RIGHT.

8    WE ARE NOT ASKING THE COURT -- IT MAY BE THE ONLY THING.

9                        (LAUGHTER.)

10           **MR. GILLIGAN:**  DON'T GET YOUR HOPES UP.

11           **THE COURT:**  THAT'S RIGHT.

12           **MR. GILLIGAN:**  WE ARE NOT ASKING THE COURT TO RELY ON

13   THE CLASSIFIED EVIDENCE THAT WE SUBMITTED EX PARTE FOR

14   PURPOSES OF RULING ON THE MERITS OF THE PLAINTIFFS' MOTION.

15       OUR POSITION IN A NUTSHELL IS, IS THAT THERE IS NO

16   ADMISSIBLE EVIDENCE OF THE CONDUCT THAT THE PLAINTIFFS

17   DESCRIBED TO THE GOVERNMENT.  THERE IS NO -- THAT THE CONDUCT

18   ASCRIBED TO THE GOVERNMENT DOES NOT CONSTITUTE A FOURTH

19   AMENDMENT SEIZURE OR SEARCH.  I KNOW THOSE ARE SUBJECTS OF

20   LATER QUESTIONS.  I WILL NOT GET INTO THAT NOW.

21       OUR POSITION THEN IS EVEN IF THE COURT WERE TO FIND AS A

22   TECHNICAL MATTER THAT A SEARCH OR SEIZURE HAD OCCURRED HERE,

23   THE RESULTING INTRUSION ON FOURTH AMENDMENT INTEREST IS SO, SO

24   MINIMAL THAT THE -- THAT UNDER THE FOURTH AMENDMENT SPECIAL

25   NEEDS ANALYSIS --

1          **THE COURT:**  WE ARE GETTING BEYOND STANDING NOW, I

2  THINK.

3          **MR. GILLIGAN:**  ALL RIGHT.  BUT THERE'S A METHOD TO

4  IT, YOUR HONOR.

5      WHAT I'M SAYING IS THAT OUR BELIEF IS THAT THE COURT

6  SHOULD RESOLVE ALL THOSE ISSUES, STANDING, SEARCH AND SEIZURE,

7  SPECIAL NEEDS, ALL ON THE BASIS OF THE PUBLIC RECORD.  AND

8  ONLY IF IT CONCLUDES IT IS NOT ABLE TO, THAT PERHAPS THERE ARE

9  ISSUES OF FACT THAT WOULD REQUIRE RELIANCE ON THAT EVIDENCE,

10  THE CLASSIFIED EVIDENCE TO RESOLVE, THEN THE STATE SECRETS

11  PRIVILEGE WOULD REQUIRE DISMISSAL OF THE CLAIM -- NOT A RULING

12  ON THE MERITS, BUT A DISMISSAL OF THE CLAIM BECAUSE IT CANNOT

13  BE LITIGATED WITHOUT RISK OF DISCLOSING VERY SENSITIVE

14  NATIONAL SECURITY INFORMATION.

15          **THE COURT:**  WHAT IF IT NEED NOT BE LITIGATED?

16      AGAIN, I DON'T WANT TO -- I DON'T WANT TO TALK YOU OUT OF

17  A POINT THAT YOU'VE MADE, ESPECIALLY WHEN YOU'VE AGREED WITH

18  OPPOSING COUNSEL, BUT I UNDERSTAND WE ARE GOING TO GET INTO

19  THE STATE SECRETS ISSUE LATER.

20      BUT WHAT IF, IN A HYPOTHETICAL CASE, THE GOVERNMENT

21  PRESENTS INFORMATION THAT BASICALLY, YOU KNOW, TO QUOTE "MY

22  COUSIN VINNY", THE DEFENSE IS WRONG AND THE DEFENSE DOESN'T

23  HOLD WATER BECAUSE OF SOMETHING THE GOVERNMENT AFFIRMATIVELY

24  STATED.  THE COURT COULD, WITHOUT DISCLOSING THE INFORMATION,

25  AGAIN THIS IS JUST TALKING HYPOTHETICALLY.  MAYBE IT IS EVEN

```
1    ACADEMIC IN THIS CASE BECAUSE I AM NOT ADDRESSING AT ALL THE

2    INFORMATION THAT WE ARE TALKING ABOUT NOW, IS IT APPROPRIATE

3    FOR THE COURT TO THEN, IF IT NEED NOT DISCLOSE IN THE PUBLIC

4    RECORD THE EVIDENCE, TO RULE AS A MATTER OF LAW BASED UPON THE

5    ENTIRE RECORD THAT ONE SIDE OR THE OTHER IS ENTITLED TO

6    SUMMARY JUDGMENT?

7         MR. GILLIGAN:  OUR POSITION, YOUR HONOR, IS THAT, NO,

8    THAT WOULD NOT BE APPROPRIATE, THAT IT WOULD NOT BE

9    APPROPRIATE TO USE THE CLASSIFIED EVIDENCE TO -- IN ORDER TO

10   MAKE A RULING ON THE MERITS.

11        THE COURT:  ALL RIGHT.  I APPRECIATE YOUR CANDOR ON

12   THAT.

13      ANYTHING FURTHER YOU'D LIKE TO --

14        MR. GILLIGAN:  I JUST WANT TO COME BACK TO THE POINT

15   I RAISED BRIEFLY AT THE TOP OF MY PRESENTATION REGARDING THE

16   AGE OF -- OF THE EVIDENCE WE ARE TALKING ABOUT OR RATHER THE

17   TIME PERIOD TO WHICH IT PERTAINS.

18      MR. KLEIN SPEAKS IN HIS DECLARATION ABOUT EVENTS THAT HE

19   BELIEVED WERE OCCURRING BETWEEN DECEMBER OF 2002 AND AT BEST

20   MAY OF 2004 WHEN HE RETIRED.  WE ARE TALKING ABOUT EVENTS 10

21   TO 12 YEARS AGO.

22      WE HAVE CITED MANY CASES IN OUR REPLY BRIEF, PAGES 5 TO 6,

23   FOOTNOTE 4 WHERE THE COURTS, AND THIS SHOULD COME AS NO

24   SURPRISE, SIMPLY SAY THAT EVIDENCE OF MATTERS OCCURRING TEN

25   YEARS PRIOR TO THE MATTER IN LITIGATION IS SIMPLY TOO DATED,
```

1    FAR TOO TEMPORALLY REMOTE TO BE PROBATIVE OF ANY MATTERS TO BE

2    DECIDED BY THE COURT AND IS, THEREFORE, NOT ADMISSIBLE UNDER

3    RULE 401.  AND WE BELIEVE THAT IS THE CASE HERE.

4        EVEN IF THERE WAS A SMATTERING OF EVIDENCE ABOUT WHAT MAY

5    HAVE BEEN HAPPENING IN 2003 AND 2004, IT TELLS THE COURT

6    NOTHING ABOUT WHAT'S HAPPENING TODAY IN 2014.  AND IF THERE IS

7    AN ONGOING INJURY TO THE PLAINTIFFS THAT EMPOWERS THIS COURT

8    TO ISSUE AN INJUNCTION AGAINST A CRITICAL FOREIGN INTELLIGENCE

9    PROGRAM SUCH AS THE ONE AT ISSUE HERE, THAT KIND OF

10   SPECULATION, YOUR HONOR, WE SUBMIT WOULD BE INSUFFICIENT UNDER

11   *AMNESTY INTERNATIONAL* TO SUPPORT THE PLAINTIFFS' STANDING.

12       AND I WOULD ALSO ADD THAT, VERY QUICKLY, EVEN IF SOME OF

13   THIS EVIDENCE WERE TO HEED TO CROSS THE THRESHOLD OF

14   ADMISSIBILITY AND RELEVANCE, EVIDENCE OF SOMETHING THAT MIGHT

15   HAVE BEEN HAPPENING TEN YEARS AGO WOULD STILL BE AT BEST A

16   SCINTILLA OF EVIDENCE, WHICH I AM SURE THE COURT APPRECIATES,

17   IS INSUFFICIENT AS A MATTER OF LAW TO WITHSTAND A SUMMARY

18   JUDGMENT MOTION.

19           **THE COURT:**  THANK YOU VERY MUCH.

20       DO YOU HAVE ANYTHING YOU WANT TO SAY IN REPLY, MR. WIEBE?

21           **MR. WIEBE:**  I DO, YOUR HONOR.

22           **THE COURT:**  YOU OWE HIM ONE IN TERMS OF AGREEING WITH

23   HIM ON SOMETHING NOW.

24           **MR. WIEBE:**  I KNOW.  I'M GOING TO HAVE TO THINK HARD

25   ABOUT WHAT THAT IS.

1      **THE COURT:**  I WON'T ORDER YOU TO DO SO.

2      **MR. WIEBE:**  THANK YOU, YOUR HONOR.  I DO APPRECIATE

3    NOT ONLY THE PERSONAL AFFIRMATION, WHICH IS SOMETHING WE DON'T

4    ALWAYS GET EVERY DAY, BUT ALSO --

5      **MR. GILLIGAN:**  FROM A STRANGER NO LESS.

6      **MR. WIEBE:**  INDEED.  BUT ALSO THE FACT THAT

7    SUBSTANTIVELY WE ARE IN AGREEMENT THAT FOR PURPOSES OF THE

8    MERITS OF THE MOTIONS BEFORE YOU, THE SECRET EVIDENCE MUST BE

9    SET ASIDE.

10     AND I'LL HAVE MUCH MORE TO SAY ABOUT WAYS YOU COULD

11   CONSIDER THE SECRET EVIDENCE USING 1806(F) LATER IN RESPONSE

12   TO QUESTION 10, AND I WILL DEFER THAT UNTIL THEN.

13     **THE COURT:**  ALL RIGHT.

14     **MR. WIEBE:**  JUST BRIEFLY.

15     AGAIN, AS IN ANY CASE, IN ORDER TO DECIDE WHETHER A CLAIM

16   IS ESTABLISHED, YOU LOOK AT THE EVIDENCE AS A WHOLE.  THERE'S

17   NEVER A CASE WHERE THERE'S ONE PIECE OF EVIDENCE THAT PROVIDES

18   ALL THE ELEMENTS OF A CLAIM.  SO, I THINK THAT'S CRUCIAL FOR

19   THE COURT TO DO HERE.

20     COUPLE OF ISSUES THAT THEY HAVE RAISED.  FIRST OF ALL, I

21   THINK ONE OF YOUR HONOR'S QUESTIONS GOT TO THIS POINT, IS THAT

22   IN PROVING A MASS SURVEILLANCE CLAIM, IT'S DIFFERENT THAN

23   TRYING TO PROVE A TARGETED SURVEILLANCE CLAIM WHERE YOU DO

24   NEED OPERATIONAL DETAILS AND A MUCH FINER GRAINED EVIDENCE IN

25   ORDER TO SHOW "I WAS PARTICULARLY PICKED OUT AND TARGETED AND

```
1   THEY GOT MY COMMUNICATIONS WITHOUT GETTING ANYONE ELSE'S".  AS

2   I THINK YOUR HONOR RECOGNIZES, IN A MASS SURVEILLANCE CLAIM,

3   ALL YOU HAVE TO DO IS SHOW THE INITIAL MASS COLLECTION.

4       THE GOVERNMENT RAISES THE QUESTION OF WHETHER THE

5   SCREENING INCLUDES ALL FOREIGN COMMUNICATIONS, THAT IS THE

6   STAGE 3.  CERTAINLY I THINK IT WOULD BE SURPRISING, AT THE

7   LEAST, IF THE GOVERNMENT WERE TURNING A BLIND EYE TO FOREIGN

8   COMMUNICATIONS THAT THEY HAVE POSSESSION OF AND COULD SEARCH,

9   BUT DECIDES NOT TO.  BUT CERTAINLY THEY HAVEN'T, AGAIN, PUT IN

10  ANY EVIDENCE IN THE PUBLIC RECORD, WHICH THEY AGREE IS ALL

11  THAT MAY BE CONSIDERED ON THE MERITS, DISPUTING THAT FACT.

12      THEY ALSO CONTEST WHETHER ALL COMMUNICATIONS ARE ACQUIRED.

13  WELL, AS WE EXPLAINED IN OUR BRIEF, ACQUIRED HAS BEEN USED IN

14  MANY DIFFERENT SENSES HERE.  SO I'LL JUST SAY -- I'LL REPHRASE

15  THAT AS -- AS WHETHER THERE'S WHOLESALE COPYING INITIALLY AT

16  STAGE 1.  AND THAT'S EXACTLY WHAT KLEIN DEMONSTRATES.  I THINK

17  THE GOVERNMENT AGREED THAT HE DOES HAVE PERSONAL FIRSTHAND

18  KNOWLEDGE AND OBSERVATION.

19          THE COURT:  HE HAD IT MANY YEARS AGO.  THE QUESTION

20  IS WHETHER HE -- WHETHER THE INFORMATION, YOU KNOW, CONTINUES,

21  ONGOING.

22          MR. WIEBE:  I WILL ADDRESS THAT POINT, IF I MAY, IN

23  JUST A MINUTE.

24          THE COURT:  PLEASE.

25          MR. WIEBE:  BUT I THINK IT IS IMPORTANT TO REALIZE
```

1    THAT HE DOES HAVE -- HE DID -- HE DOES PRESENT EVIDENCE OF

2    WHOLESALE COPYING AND THAT IT'S NOT CIRCUMSTANTIAL EVIDENCE OR

3    OPINION EVIDENCE, AS THE GOVERNMENT SUGGESTED, IT'S PERSONAL

4    KNOWLEDGE.

5         AND I THINK IT IS ALSO IMPORTANT TO REMEMBER THAT THE

6    GOVERNMENT WAIVED ANY PRIVILEGE WITH RESPECT TO THE KLEIN AND

7    MARCUS EVIDENCE, THE AT&T DOCUMENTS BACK IN 2006, AND WE HAVE

8    SUBMITTED THIS IN OUR BRIEFING, TOO.

9         THE -- WHAT THE GOVERNMENT WOULD HAVE YOU DO IN THEIR

10   STALENESS ARGUMENT IS CARVE OUT KLEIN IN ISOLATION AND LOOK AT

11   IT ALONE WITHOUT CONSIDERING THE WHOLE BODY OF EVIDENCE.  KIND

12   OF A DEATH-BY-A-THOUSAND-CUTS ARGUMENT.

13        AND I THINK IT'S IMPORTANT TO START OUT THINKING ABOUT

14   THAT; TO REALIZE THAT EVERYTHING THE GOVERNMENT HAS DISCLOSED

15   IN THE PAST FEW YEARS HAS ONLY CONFIRMED WHAT WE ALLEGED

16   STARTING SIX OR EIGHT YEARS AGO.  THE GOVERNMENT'S

17   SUBMISSIONS, AS I'VE DESCRIBED EARLIER, SHOW THAT NOT ONLY

18   DID -- IS THE COLLECTION ONGOING NOW, BUT IT BEGAN IN 2001.

19        THE -- ONE OF THE THINGS WE RELY ON IS THIS OFFICE OF

20   INSPECTOR GENERAL REPORT.  I'M SURPRISED TO HEAR THESE

21   AUTHENTICITY OBJECTIONS SURFACING FOR THE FIRST TIME IN THIS

22   HEARING.  THEY MOVED TO EXCLUDE CERTAIN EVIDENCE OF OURS IN

23   THEIR PAPERS, AS THE LOCAL RULES REQUIRE, BUT IN THEIR SUMMARY

24   JUDGMENT OPPOSITION AND REPLY THEY DID NOT MOVE TO EXCLUDE THE

25   INSPECTOR GENERAL'S REPORT, WHICH WE RELIED ON.  SO I THINK

1    THEY HAVE WAIVED THAT ARGUMENT.  AND IT IS AN ADMISSION.

2         THE -- THEY ALSO SAY THERE'S NO EVIDENCE AS TO WHAT'S

3    ACTUALLY IN THE SECRET ROOM IN TERMS OF EQUIPMENT.  THAT IS

4    NOT CORRECT EITHER.  AND THAT'S AN IMPORTANT POINT.

5         SO I WOULD LIKE TO REFER YOU TO THE RUSSELL DECLARATION.

6    NOW, AS THE GOVERNMENT EXPLAINED, AND I'M SURE THE COURT

7    KNOWS, MARCUS TALKS ABOUT THE MACHINES THAT ARE IN THE SECRET

8    ROOM AND WHAT THEIR FUNCTIONALITY IS.

9         THE GOVERNMENT SAYS, WELL, THERE'S NO FOUNDATION FOR THAT.

10   THERE'S NO EVIDENCE THOSE THINGS ARE IN THE SECRET ROOM.  IN

11   FACT, THERE IS EVIDENCE.  IF YOU LOOK AT THE RUSSELL

12   DECLARATION, PARAGRAPH 23, HE SAYS:

13             "AMONG OTHER NONPUBLIC INFORMATION, THE MARCUS

14             DECLARATION DESCRIBES A SPECIFIC SAN FRANCISCO AT&T

15             LOCATION AND TYPES OF EQUIPMENT CONTAINED IN THAT

16             BUILDING."

17        SO RUSSELL IS CONFIRMING THAT THE MACHINES THAT MARCUS

18   SAID WERE IN THERE, MARCUS IN TURN RELIED ON KLEIN, IN FACT

19   ARE IN THERE.  SO I DON'T THINK THERE'S ANY DISPUTE ON THAT

20   POINT.

21        WE HAVE ALREADY GIVEN YOU OUR ARGUMENTS IN OUR PAPERS AND

22   HERE TODAY ON WHY THE VARIOUS KLEIN STATEMENTS REGARDING THE

23   NSA PARTICIPATION ARE ADMISSIBLE, AND I DON'T THINK ANYTHING

24   THE GOVERNMENT HAS SAID HAS OVERCOME THOSE ARGUMENTS.

25        CONSPIRACY IS ANOTHER GROUND OF ADMISSIBILITY AS WE -- AS

```
1    WE SET FORTH IN OUR PAPERS.  AND IN TERMS OF CONSPIRACY, I

2    THINK IT'S IMPORTANT TO RECOLLECT THAT THE -- AT THAT TIME

3    WHEN KLEIN FIRST MADE THESE OBSERVATIONS, THIS SURVEILLANCE

4    WAS BEING CONDUCTED IN VIOLATION OF FISA.  NOT JUST IN

5    VIOLATION OF THE FOURTH AMENDMENT, BUT CONTRARY TO THE -- TO

6    THE PROCEDURES CONGRESS HAD ESTABLISHED IN FISA.

7         SO I DON'T THINK THERE'S ANY DOUBT THAT WE MEET THE TEST

8    FOR ADMISSION UNDER CONSPIRACY, BUT I DON'T THINK THE COURT

9    NEEDS TO GO THERE BECAUSE WE HAVE GOT THE OTHER GROUNDS FOR

10   ADMISSION AS I'VE EXPLAINED.

11        IN TERMS OF THE TIMELINESS OF THE EVIDENCE, AGAIN, I THINK

12   YOU NEED TO LOOK AT NOT JUST KLEIN IN ISOLATION, BUT THE PCLOB

13   REPORT SAYING THAT THE SURVEILLANCES CONTINUED SINCE 2001 TO

14   THE PRESENT DAY.  ALL THAT'S CHANGED IS THE LEGAL AUTHORITY,

15   AT&T'S ADMISSION THAT IT IS CONTINUING TO CONDUCT SURVEILLANCE

16   UNDER FISA, AND THE NSA INSPECTOR GENERAL REPORT.

17        AGAIN, I THINK WHEN THE COURT LOOKS AT ALL THE EVIDENCE,

18   IT'S MORE THAN ADEQUATE TO SUPPORT OUR CLAIM.

19             THE COURT:  ALL RIGHT.  I WOULD LIKE TO MOVE ON TO

20   QUESTION NUMBER TWO NOW, AND I'M GOING TO CALL ON DEFENSE

21   COUNSEL TO RESPOND IN THE FIRST INSTANCE TO THAT QUESTION.  SO

22   YOU MIGHT WANT TO COME UP TO THE LECTERN.

23        AND THE QUESTION IS AS FOLLOWS:

24             "THE DEFENDANTS MAINTAIN THAT THERE IS NO EVIDENTIARY

25             PROOF OF THE SECTION 702 SURVEILLANCE PROGRAM
```

1           CAPTURING DOMESTIC INTERNET TRANSACTIONS. HOWEVER,

2           THE FOREIGN INTELLIGENCE SURVEILLANCE COURT ALREADY

3           FOUND THAT QUOTE -- FOUND QUOTE 'THAT NSA HAS

4           ACQUIRED, IS ACQUIRING, AND IF THE CERTIFICATIONS AND

5           PROCEDURES NOW BEFORE THE COURT ARE APPROVED WILL

6           CONTINUE TO ACQUIRE, TENS OF THOUSANDS OF WHOLLY

7           DOMESTIC COMMUNICATIONS'" UNQUOTE.

8     I WILL LEAVE OUT THE CITATIONS IN THE PUBLIC RECORD, BUT

9   IT WAS A -- THE CITATION IS THERE AND IT'S RELATIVELY RECENT.

10    SO WHAT'S THE GOVERNMENT'S POSITION?

11    THE QUESTION IS: WHY SHOULD THIS COURT NOT ACCEPT THIS

12  FINDING OF THAT COURT AS TO THE EXISTENCE OF THE UPSTREAM

13  COLLECTION PROGRAM OF WHOLLY DOMESTIC COMMUNICATIONS?

14       **MR. GILLIGAN:** YOUR HONOR, WE DON'T CONTEST JUDGE

15  BATES' FINDING, AT LEAST FOR CERTAIN PURPOSES OF THE CURRENT

16  PROCEEDING THAT UPSTREAM COLLECTION DOES ACQUIRE UNINTENTIONAL

17  A VERY SMALL PERCENTAGE OF WHOLLY DOMESTIC COMMUNICATIONS.

18    BUT WE DON'T BELIEVE, FOR ALL THE REASONS THAT MR. WIEBE

19  AND I WERE JUST DISCUSSING WITH YOUR HONOR, THAT THAT'S --

20  THAT THAT FACT HAS A BEARING ON THE THRESHOLD QUESTION: ARE

21  PLAINTIFFS COMMUNICATIONS, WHETHER OVERSEAS COMMUNICATIONS OR

22  WHOLLY DOMESTIC COMMUNICATIONS, AMONG THOSE THAT ARE COPIED

23  AND SCANNED AND INGESTED INTO A DATABASE; JUDGE BATES' FINDING

24  THAT THERE ARE CERTAIN -- THERE'S, AGAIN, A VERY TINY

25  PERCENTAGE OF WHOLLY DOMESTIC COMMUNICATIONS ACQUIRED AT

1    STAGE 4.

2        THAT -- THAT SIMPLY DOES NOT HAVE A BEARING ON THE

3    THRESHOLD STANDING ISSUE BEFORE THE COURT.  AND, FOR THAT

4    MATTER, DOES NOT HAVE A BEARING ON THE MERITS QUESTION EITHER

5    BECAUSE THE -- THE -- WHAT IS ACQUIRED AT STAGE 4, THE

6    PLAINTIFFS HAVE SAID, IS NOT PART OF THEIR CASE.  THAT IS

7    PAGES 8 AND 9 OF THEIR BRIEF.  THOSE COMMUNICATIONS THAT ARE

8    (SIC) ACTUALLY MAKE IT THROUGH, THE -- THE COPYING AND THE

9    SCANNING AND THEN ARE INGESTED INTO A DATABASE ARE NOT AT

10   ISSUE IN THIS MATTER.

11       SO, WHILE I DO NOT CONTEST JUDGE BATES' FINDING, WE SUBMIT

12   THAT IT IS NOT MATERIAL TO THE ISSUES BEFORE YOUR HONOR TODAY.

13           **THE COURT:**  THANK YOU.

14       MR. WIEBE?

15           **MR. WIEBE:**  THANK YOU, YOUR HONOR.

16       I WANT TO BE SURE WE ARE ALL COMMUNICATING CLEARLY HERE.

17   I HAVE A COPY OF THE CHART THAT WAS FOUND ON PAGE 5 OF OUR

18   PLAINTIFFS' OPENING BRIEF.  IT MAY MAKE IT EASIER FOR THE

19   COURT TO FOLLOW ALONG.

20           **THE COURT:**  YES.

21           **MR. WIEBE:**  IF I MAY PROVIDE THAT TO THE COURT?

22           **THE COURT:**  YES.  OKAY.

23               (DOCUMENT HANDED TO COURT.)

24           **THE COURT:**  THAT'S THE ONE THAT THE COURT WAS

25   REFERRING TO THAT WAS RIGHT BEFORE THE PLAINTIFFS INDICATED

1    WHICH STAGES WERE PART OF THIS LAWSUIT.

2           **MR. WIEBE:**  EXACTLY.  AND I THOUGHT HAVING THE VISUAL

3    REPRESENTATION BEFORE US WOULD MAKE MY DISCUSSION CLEARER.

4        AGAIN, AS I MENTIONED A MINUTE AGO, I THINK WE HAVE

5    CONFRONTED IN THIS CASE SHIFTING USES OF TERMS LIKE

6    "ACQUIRING", "COLLECTION", "CAPTURING", AND SO THAT'S WHY WE

7    HAD DIVIDED THINGS INTO STAGES TO TRY AND GET EVERYONE ON THE

8    SAME PAGE LITERALLY IN DISCUSSING THIS.

9        SO UPSTREAM BEGINS BY CAPTURING AND COPYING WITHIN THE

10   UNITED STATES THE COMMUNICATION STREAM ON THE INTERNET

11   BACKBONE.  THAT'S STAGE 1.  AND, AGAIN, I'M DESCRIBING OUR --

12   WHAT WE THINK OUR EVIDENCE SHOWS.

13       THIS COPIED COMMUNICATION STREAM INCLUDES WHOLLY DOMESTIC

14   COMMUNICATION AS WELL AS COMMUNICATIONS BY U.S. PERSONS

15   TRANSMITTED BETWEEN U.S. AND FOREIGN LOCATIONS.  AND THAT'S --

16   AND THEN THE -- THIS WHOLESALE -- THIS COMMUNICATION STREAM

17   THAT HAS BEEN COPIED WHOLESALE IS THEN FILTERED TO TRY TO

18   EXCLUDE DOMESTIC COMMUNICATIONS.  THAT'S STAGE 2.

19       AND THEN AFTER THAT IS WHEN IT'S SEARCHED WITH THESE MANY

20   SELECTORS THE GOVERNMENT USES, AND THAT IS STAGE 3.

21       NOW, LATER ON, AT STAGE 4, AT THE CONCLUSION OF THE

22   PROCESS, UPSTREAM DOES RESULT IN THE RETENTION OF WHOLLY

23   DOMESTIC COMMUNICATIONS, AS THE FISC FINDS.  AND THERE ARE A

24   NUMBER OF WAYS THAT HAPPENS.  WE DESCRIBED SOME IN OUR BRIEF.

25   THE FISC OPINION DESCRIBES SOME.  I WON'T GO INTO THOSE NOW.

1      WE THINK THIS LANGUAGE THAT THE COURT HAS FOCUSED THE

2   PARTIES ON ACTUALLY IS IMPORTANT AND IS RELEVANT, SO WE

3   DISAGREE WITH THE GOVERNMENT ON THAT.  LET ME EXPLAIN WHAT

4   THAT IS.

5      THE IMPORTANCE OF THAT LANGUAGE THAT THE COURT HAS QUOTED

6   FROM THE FISC OPINION IS THAT IT IS FURTHER EVIDENCE OF

7   STAGE 1 COPYING.  THAT IS, THESE TENS OF THOUSANDS OF WHOLLY

8   DOMESTIC COMMUNICATIONS THAT THE FISC FOUND THAT THE NSA WAS

9   RETAINING AT STAGE 4 AT THE END OF THE PROCESS ARE ONLY THERE

10  BECAUSE THE GOVERNMENT STARTS THE PROCESS AT STAGE 1 BY

11  COPYING THE ENTIRE COMMUNICATION STREAM.

12     THE DOMESTIC COMMUNICATIONS WOULDN'T BE THERE IN STAGE 4

13  IF THEY HADN'T BEEN THERE IN THE BEGINNING AT STAGE 1.  SO WE

14  BELIEVE --

15          **THE COURT:**  I -- I AM KIND OF -- I'M STALLED ON THAT

16  POINT.

17          **MR. WIEBE:**  OKAY.

18          **THE COURT:**  WHERE'S THE NEXUS THERE?  SO, YOU KNOW,

19  THE GOVERNMENT -- YOU SAY THERE'S THIS WHOLESALE COPYING AND

20  THEN THERE'S AT SOME POINT A FILTERING AT STAGE 2, AND THEN

21  THERE'S DOMESTIC.  WHY IS IT NOT EQUALLY PLAUSIBLE THAT THERE

22  IS A DIFFERENT KIND OF FILTERING THAT'S DONE UP ABOVE IN THE

23  STAGES, AND THAT THAT DIFFERENT KIND OF FILTERING, WHICH DOES

24  NOT NECESSARILY REPRESENT WHOLESALE COPYING OF ALL THE

25  COMMUNICATION, AND IT'S FROM THAT NARROWER UNIVERSE THAT THESE

1   DOMESTIC COMMUNICATIONS ARE, FROM THE GOVERNMENT'S

2   PERSPECTIVE, INADVERTENTLY PICKED UP.

3       WHAT IS THE LOGICAL NEXUS BETWEEN THOSE TWO?

4           **MR. WIEBE:**  THE LOGIC IS ANYTHING THAT'S AT -- THAT

5   MAKES IT THROUGH TO STAGE 4, THAT MAKES IT THROUGH ALL THE

6   FILTERING AND DOWN THROUGH THE BUCKETS AND ENDS UP IN THE

7   FINAL BUCKET OF STAGE 4 HAS TO BE THERE AT STAGE 1.  LOGICALLY

8   IT'S -- THE PROCESS IS A CONTINUING NARROWING AND WINNOWING.

9   IF IT'S NOT THERE AT THE BEGINNING, IT CAN'T BE THERE AT THE

10  END.

11      SO THE FACT THAT THERE ARE WHOLLY DOMESTIC COMMUNICATIONS

12  AT STAGE 4 MEANS THAT THEY ARE PRESENT AT STAGE 1 BECAUSE

13  OTHERWISE THEY WOULD NOT HAVE GOTTEN TO STAGE 4.

14      SO IT'S YET ANOTHER PIECE OF EVIDENCE THAT STAGE 1 IS NOT

15  SOMETHING THAT'S LIMITED TO FOREIGN COMMUNICATIONS; THAT IT

16  INCLUDES WHOLLY DOMESTIC COMMUNICATIONS THAT THE GOVERNMENT

17  ISN'T INTENDING TO RETAIN ULTIMATELY AT STAGE 4.

18          **THE COURT:**  I UNDERSTAND.

19          **MR. WIEBE:**  SO THAT'S OUR ONLY POINT ON THAT.

20          **THE COURT:**  ALL RIGHT.

21      ALL RIGHT.  THANK YOU VERY MUCH.  I THINK -- VERY BRIEF

22  RESPONSE AND REPLY, AND THEN WE ARE GOING TO TAKE A SHORT

23  RECESS AND GIVE EVERYBODY A BREAK.

24          **MR. GILLIGAN:**  VERY WELL, YOUR HONOR.  VERY BRIEF

25  REPLY.

1      I THINK YOUR HONOR PUT YOUR FINGER ON IT, THAT SIMPLY

2    BECAUSE THERE ARE SOME DOMESTIC COMMUNICATIONS THAT MAKE IT TO

3    STAGE 4, DOESN'T MEAN THAT THE NSA HAD ALL OF THEM AT STAGE 1.

4      I MEAN, WHAT -- MR. KLEIN TELLS US THAT SIGNALS ARE

5    DIVERTED FROM -- VIA THE SPLITTER TO THE SG3 ROOM, BUT THEN HE

6    HAS NO INFORMATION ABOUT WHAT HAPPENS THERE.  AND IS THERE

7    ADDITIONAL SCREENING THAT THE PLAINTIFFS ARE NOW ALLEGING THAT

8    GOES ON?  AS YOUR HONOR SAID, THAT'S A POSSIBILITY.  THE

9    EVIDENCE DOESN'T SAY ONE WAY OR THE OTHER ON THE PUBLIC

10   RECORD.  AND CERTAINLY THE FACT THAT AT STAGE 4 THERE ARE SOME

11   DOMESTIC COMMUNICATIONS, AS JUDGE BATES FOUND, DOESN'T MEAN

12   THAT THE -- AT THE START OF THE PROCESS THAT THE NSA HAD ALL

13   OF THEM.

14             **THE COURT:**  ALL RIGHT.  THANK YOU.

15             **MR. WIEBE:**  IF I MAY --

16             **THE COURT:**  PLEASE, ONE LAST POINT.

17             **MR. WIEBE:**  JUST MAKE ONE POINT.

18      THE DIRECT EVIDENCE OF WHOLESALE COPYING AT STAGE 1

19   OBVIOUSLY IS THE KLEIN DECLARATION.  THE SPLITTER TAKES

20   EVERYTHING.  IT DOES NO FILTERING.

21             **THE COURT:**  OKAY.  I HEAR THAT.

22      WE ARE GOING TO TAKE A SHORT RECESS, MAYBE 10 OR 15

23   MINUTES, AND THEN WE'LL CONTINUE AND JUST KEEP GOING.

24             **MR. WIEBE:**  THANK YOU, YOUR HONOR.

25        (RECESS TAKEN AT 10:30 A.M.; RESUMED AT 10:45 A.M.)

```
 1          THE CLERK:  REMAIN SEATED.  COME TO ORDER.  WE ARE

 2   BACK IN SESSION.

 3          THE COURT:  JUST GIVE ME A MOMENT.  I LEFT THE

 4   QUESTIONS IN MY CHAMBERS.  I DON'T KNOW THEM BY HEART.

 5      JUST IN TERMS OF SCHEDULING, WE WILL GO -- I DON'T PLAN ON

 6   TAKING A LUNCH BREAK PER SE.  WE WILL BREAK EVERY HOUR AND A

 7   HALF FOR ABOUT 15 MINUTES UNTIL WE ARE DONE.  SO WE AN -- SO

 8   THOSE OF YOU WHO HAVE PLANES TO CATCH, WE WILL GET DONE SOONER

 9   RATHER THAN LATER.  I WON'T OBVIOUSLY RESTRICT ANY OF YOUR

10   ARGUMENTS BECAUSE I WANT TO GET ANSWERS TO MY QUESTIONS.

11      SO QUESTION NUMBER THREE NOW, AND WE ARE GOING TO -- I

12   WILL START -- ADDRESS THIS INITIALLY WITH THE DEFENDANTS.  AND

13   SO THE QUOTE THAT I PUT AS A PREAMBLE IN MY QUESTIONS, AND I

14   WILL LEAVE OUT THE CITATIONS.

15          "IT HAS LONG BEEN ESTABLISHED THAT AN ADDRESSEE HAS

16           BOTH A POSSESSORY AND A PRIVACY INTEREST IN A MAILED

17           PACKAGE, AND A LEGITIMATE INTEREST THAT A MAILED

18           PACKAGE WILL NOT BE OPENED AND SEARCHED EN ROUTE.

19           THE SUPREME COURT AND THE NINTH CIRCUIT ALSO

20           RECOGNIZE THAT THE MAIN FOURTH AMENDMENT INTEREST IN

21           A MAILED PACKAGE ATTACHES TO THE PRIVACY OF ITS

22           CONTENTS NOT THE SPEED WITH WHICH IT IS DELIVERED."

23      NOW, LET ME DIGRESS AND SAY THAT THE PLAINTIFFS, IN

24   RESPONSE TO THIS QUESTION, SUBMITTED THE CASE OF *HEARST VERSUS*

25   *BLACK*, 87 F.2D 68 AT 70 THROUGH 72 DECIDED BY THE DC CIRCUIT
```

1    IN 1936, FOR THE PROPOSITION THAT PLAINTIFFS MAINTAIN PROPERTY

2    OR POSSESSORY RIGHTS IN THE CONTENT OF THEIR COMMUNICATIONS.

3        THE DEFENDANTS -- CONTINUING WITH THE QUESTION:

4        "THE DEFENDANTS CONTEND THAT IN *UNITED STATES VERSUS*

5    *JEFFERSON*, THE NINTH CIRCUIT HELD THAT A PERSON'S POSSESSORY

6    INTEREST IN A PACKAGE IS LIMITED TO QUOTE 'SOLELY IN THE

7    PACKAGE'S TIMELY DELIVERY'", UNQUOTE.

8        NOW, LET ME START OFF WITH GOVERNMENT COUNSEL.  IS THIS

9    HOLDING LIMITED TO INSPECTION OF THE EXTERNAL INFORMATION OF A

10   PACKAGE IN TRANSIT?  AND WHY -- AND I WILL ASK A COMPOUND

11   QUESTION, WHY IS THE NEARLY INSTANTANEOUS COPYING AND SCAN OF

12   ELECTRONIC COMMUNICATIONS NOT THE EQUIVALENT OF OPENING AND

13   SEARCHING A PACKAGE WHILE EN ROUTE?

14       **MR. GILLIGAN:**  THANK YOU, YOUR HONOR.  I WILL START

15   WITH THE FIRST OF THE TWO QUESTIONS.

16       AND THE ANSWER IS, TO REPRISE THE QUESTION, IS JEFFERSON'S

17   HOLDING REGARDING THE NATURE OF THE POSSESSORY IN THE PACKAGE

18   LIMITED TO INSPECTION OF EXTERNAL INFORMATION?

19       NO, YOUR HONOR, IS THE SHORT ANSWER BECAUSE THE NATURE OF

20   THE INSPECTION CONDUCTED ONCE THE GOVERNMENT HAS DETAINED A

21   PACKAGE, IMPLICATES THE OWNER'S PRIVACY INTEREST WHICH GOES TO

22   WHETHER A SEARCH HAS OCCURRED, RATHER THAN A POSSESSORY

23   INTEREST WHICH GOES TO WHETHER A SEIZURE HAS OCCURRED.

24       AS THE SUPREME COURT EXPLAINED IN *SEGURA* AND *JACOBSEN*,

25   BOTH OF WHICH ARE CITED IN OUR PAPERS, THE NINTH CIRCUIT ALSO

1    OBSERVED IN THE *JEFFERSON* CASE ITSELF DIFFERENT INTERESTS ARE

2    IMPLICATED BY A SEIZURE THEN A SEARCH.  A SEIZURE AFFECTS ONLY

3    A PERSON'S POSSESSORY INTEREST, WHEREAS A SEARCH AFFECTS THE

4    INDIVIDUAL'S PRIVACY INTERESTS.

5        AND THE TWO ARE DISTINCT AS THE NINTH CIRCUIT SAID IN THE

6    *HERNANDEZ* CASE CITED IN YOUR HONOR'S -- IN THE WRITTEN FORM OF

7    THE QUESTION, IT IS THE EXTENT OF THE INTERFERENCE WITH THE

8    DEFENDANT'S POSSESSORY INTEREST IN THE PROPERTY THAT

9    DETERMINES WHETHER A SEIZURE HAS OCCURRED.

10       SO, WHEN *JEFFERSON* SAID THAT THE SOLE POSSESSORY INTEREST

11   IN A MAILED PACKAGE IS ITS TIMELY DELIVERY, THAT IS SO

12   REGARDLESS OF THE NATURE OF ANY INSPECTION THAT'S CONDUCTED

13   WHILE THE PACKAGE IS DETAINED.

14       SO, FOR EXAMPLE, IN *JEFFERSON* ITSELF, THE DEFENDANT'S

15   PACKAGE WAS DETAINED OVERNIGHT, MUCH, MUCH LONGER THAN

16   ANYTHING THAT'S ALLEGED IN THIS CASE.

17       IT WAS DETAINED OVERNIGHT FOR AN INITIAL CANINE SNIFF FOR

18   NARCOTICS.  AND AFTER THE DOG ALERTED TO THE PRESENCE OF

19   NARCOTICS IN THE PACKAGE, THE OFFICERS OBTAINED A WARRANT,

20   OPENED THE PACKAGE, DISCOVERED NARCOTICS INSIDE, PUT A

21   TRACKING DEVICE INSIDE, RESEALED THE PACKAGE, AND THEN SAW TO

22   IT THAT IT WAS DELIVERED BY THE SCHEDULED TIME, CONTRACTED-FOR

23   TIME.

24       AND THE COURT HELD THAT THIS INITIAL OVERNIGHT DETENTION,

25   NOTWITHSTANDING ALL THAT THAT HAD OCCURRED, WAS NOT A SEIZURE

1    BECAUSE THE PACKAGE WAS STILL DELIVERED ON TIME.

2        NOW, IF, INSTEAD OF CONDUCTING THE DOG SNIFF FIRST, THE

3    OFFICERS IN *JEFFERSON* HAD JUMPED THE GUN AND JUST RIPPED THE

4    PACKAGE OPEN WITHOUT FIRST OBTAINING PROBABLE CAUSE AND A

5    WARRANT, BUT STILL NEVERTHELESS PUT THE CONTENTS BACK IN

6    RESEALED THE PACKAGE AND DELIVERED IT ON TIME, ON THE SEIZURE

7    ISSUE, THE OUTCOME WOULD HAVE BEEN THE SAME.  THERE WOULD HAVE

8    BEEN NO SEIZURE BECAUSE THERE WAS NO MEANINGFUL INTERFERENCE

9    WITH THE POSSESSORY INTEREST.

10        UNQUESTIONABLY IN MY HYPOTHETICAL REVISION OF *JEFFERSON*,

11    THERE WOULD HAVE BEEN AN UNLAWFUL FOURTH AMENDMENT SEARCH

12    BECAUSE THE PACKAGE WAS OPENED WITHOUT FIRST OBTAINING

13    PROBABLE CAUSE.  THE -- THE REVERSE --

14            **THE COURT:**  IF THAT'S TRUE, THEN WOULDN'T THE SEIZURE

15    BE A FORTIORI ILLEGAL?

16            **MR. GILLIGAN:**  NO.  THE SEARCH -- TWO DISTINCTIVE

17    INTERESTS, YOUR HONOR.  A SEIZURE PROTECTS YOUR -- THE SEIZURE

18    CLAUSE PROTECTS YOUR POSSESSORY INTEREST.  THE SEARCH CLAUSE

19    PROTECTS YOUR PRIVACY INTEREST.  SO THE -- THE PRESENCE OF ONE

20    DOES NOT NECESSARILY -- IS NOT DEPENDENT ON THE PRESENCE OF

21    THE OTHER.

22        THE -- FOR EXAMPLE, THE REVERSE SITUATION IS PRESENTED BY

23    THE SUPREME COURT'S DECISION IN *UNITED STATES VERSUS PLACE*,

24    THE CASE WHERE THE TRAVELER'S LUGGAGE AT THE AIRPORT WAS

25    SUBMITTED TO A CANINE DOG SNIFF.

1    THERE, THE COURT HELD THAT THE CANINE SNIFF OF THE LUGGAGE

2    WAS NOT A SEARCH BECAUSE IT EXPOSED NONE OF THE LEGITIMATE

3    CONTENTS OF THE SUITCASE TO HUMAN OBSERVATION, BUT NONETHELESS

4    THERE WAS A SEIZURE IN THAT CASE BECAUSE THE TRAVELER'S

5    SUITCASE WAS TAKEN FROM HIS IMMEDIATE POSSESSION, HE WAS

6    DETAINED FOR 90 MINUTES BEFORE THE CANINE SNIFF, AND HIS

7    TRAVEL PLANS AND FREEDOM OF MOVEMENT WERE DISRUPTED.

8    SO -- SO THE NATURE OF THE INSPECTION THAT OCCURS DURING A

9    DETENTION IS NOT PERTINENT TO THE QUESTION OF A SEIZURE.  THE

10   NATURE OF THE INSPECTION THAT OCCURS IS PERTINENT ONLY TO THE

11   QUESTION OF WHETHER THERE HAS BEEN A SEARCH.

12   SO, OUR ANSWER TO THE FIRST OF THE TWO QUESTIONS IN NUMBER

13   THREE IS THAT JEFFERSON'S HOLDING REGARDING THE NATURE OF THE

14   POSSESSORY INTEREST IN A MAILED PACKAGE, AND THAT IT IS ONLY

15   IN THE TIMELY DELIVERY IS TRUE REGARDLESS OF THE NATURE OF THE

16   INSPECTION.  THE NATURE OF THE INSPECTION GOES TO WHETHER A

17   SEARCH HAS OCCURRED.

18          **THE COURT:**  ALL RIGHT.

19          **MR. GILLIGAN:**  THE SECOND QUESTION THEN?

20          **THE COURT:**  YES.

21          **MR. GILLIGAN:**  WHY ELECTRONIC SCANNING IS NOT THE

22   EQUIVALENT OF OPENING AND SEARCHING A PACKAGE WHILE EN ROUTE?

23   THAT IS THE CASE, YOUR HONOR, BECAUSE THE SCAN POSITED

24   HERE BY THE ELECTRONIC DEVICE OF COMMUNICATIONS THAT ARE NOT

25   FOUND TO CONTAIN TARGETED SELECTORS, AND SO ARE NOT RETAINED

1    IN ANY KIND OF GOVERNMENT DATABASE BUT ARE DESTROYED IN

2    MILLISECONDS, NO INFORMATION ABOUT THOSE COMMUNICATIONS IS

3    EXPOSED TO HUMAN OBSERVATION.

4        THERE ARE TWO KINDS OF COMMUNICATIONS IN THEORY TO

5    CONSIDER; THOSE THAT SCAN POSITIVE FOR TARGET SELECTORS AND SO

6    ARE INGESTED INTO THE GOVERNMENT DATABASE AND THOSE THAT SCAN

7    NEGATIVE, NO TARGETED SELECTORS AND SO THEY ARE INSTEAD

8    DISCARDED WITHOUT EVER HAVING BEEN SEEN WITH HUMAN EYES.

9        THE FIRST CATEGORY THE PLAINTIFFS TELL US, PAGES 8 AND 9

10   OF THEIR OPENING BRIEF, IS NOT AN ISSUE IN THIS CASE.  WE ARE

11   ONLY CONCERNED WITH THE COMMUNICATIONS IN THE SECOND CATEGORY

12   WHICH TEST NEGATIVE FOR THE TARGETED SELECTORS AND ARE

13   DESTROYED WITHIN MILLISECONDS OF THEIR CREATION WITHOUT ANY

14   HUMAN BEING EVER ACTUALLY HAVING REVIEWED THEM.  AS A

15   RESULT --

16        **THE COURT:**  BUT THE HUMAN BEINGS PROGRAM THE

17   COMPUTERS.  AND ISN'T THE POLICY THAT YOU ARE URGING ON THE

18   COURT CONCERNING, GIVEN OUR DIGITAL AGE, IF THE GOVERNMENT

19   CAN'T DO SOMETHING DIRECTLY, I.E., BY HUMAN -- DIRECT HUMAN

20   EYESIGHT, BUT CAN DO IT BY A MACHINE, DOESN'T THAT SORT OF

21   OPEN THE DOOR TO SOME CLEVER ACTIVITY BY THE GOVERNMENT TO GET

22   AROUND WHETHER OR NOT THERE WAS AN ILLEGAL SEARCH AND SEIZURE?

23        **MR. GILLIGAN:**  WELL, I THINK, YOUR HONOR, WE HAVE TO

24   BE -- WHAT THE COURT'S PRECEDENTS TELL US IS THAT WE HAVE TO

25   EVALUATE FIRST WHETHER THERE HAS BEEN A SEARCH OR SEIZURE.

```
1        I WOULD DIRECT THE COURT'S DIRECTION TO THE KARO CASE

2   WHICH WAS CITED IN OUR REPLY BRIEF.  THAT IS THE CASE WHERE

3   THE GOVERNMENT PLACES AN ELECTRONIC TRACKING DEVICE IN A CAN

4   OF ETHER THAT'S PURCHASED BY THE DEFENDANT THAT THE GOVERNMENT

5   SUSPECTED WOULD BE USED FOR PURPOSES RELATED TO DRUG

6   TRAFFICKING.

7        THE COURT HELD THAT ULTIMATELY, WHEN THE BEEPER WAS

8   MONITORED AND -- AND LAW ENFORCEMENT OFFICIALS WERE THEREBY

9   ABLE TO DETERMINE THAT IT WAS LOCATED IN KARO'S HOME, THAT

10  THAT CONSTITUTED AN UNLAWFUL FOURTH AMENDMENT SEARCH OF KARO'S

11  HOME.

12       BUT THE COURT BELOW IN KARO HELD, ACTUALLY, THAT THE

13  PLACEMENT OF THE TRACKING DEVICE IN THE CAN OF ETHER

14  CONSTITUTED A SEARCH AT THE MOMENT IT WAS PLACED THERE.

15       AND THE COURT OF APPEALS ACTUALLY STATED -- IF YOU WILL

16  GIVE ME A MOMENT, YOUR HONOR, I CAN FIND THE QUOTE I'M LOOKING

17  FOR.  THE -- I WON'T DETAIN THE COURT.  THE -- THERE IT IS.

18       THE TENTH CIRCUIT STATED THAT THE PLACEMENT, THE VERY

19  PLACEMENT OF THE MONITOR IN THE CAN OF ETHER, THE TRACKER,

20  VIOLATED THE FOURTH AMENDMENT RIGHTS OF MR. KARO BECAUSE HE

21  HAD A LEGITIMATE EXPECTATION OF PRIVACY OF OBJECTS COMING INTO

22  HIS OWNERSHIP WOULD NOT HAVE ELECTRONIC DEVICES ATTACHED TO IT

23  BY THE GOVERNMENT.

24       AND THE SUPREME COURT FLATLY REJECTED THAT REASONING AND

25  SAID THERE WAS NO SEARCH OCCASIONED BY THE MERE PLACEMENT OF
```

```
1    THE TRACKER.  AND THAT WAS SO BECAUSE AT THE TIME THE TRACKER
2    WAS PLACED IN THE CAN OF ETHER AND CAME INTO KARO'S
3    POSSESSION, IT WAS NOT BEING MONITORED BY ANY OF THE LAW
4    ENFORCEMENT OFFICIALS INVOLVED WITH THE INVESTIGATION.
5        AND THE COURT SAID THAT UNDER THOSE CIRCUMSTANCES IT
6    "CONVEYED NO INFORMATION AT ALL".  "CONVEYED NO INFORMATION AT
7    ALL."  THAT IS A QUOTE FROM THE COURT'S DECISION.  AND AS A
8    RESULT, DID NOT VIOLATE HIS FOURTH AMENDMENT RIGHTS BECAUSE NO
9    INFORMATION THAT -- IN WHICH HE HAD A PRIVACY INTEREST, INDEED
10   NO INFORMATION AT ALL, WAS CONVEYED TO HUMAN LAW ENFORCEMENT
11   AGENTS.
12       AND THAT, YOUR HONOR, IS WHAT HAPPENS WITH THE ELECTRONIC
13   SCANNING.
14       AND I WANT TO TALK ABOUT JACOBSEN AND PLACE, BUT LET ME
15   SAY SOMETHING, YOUR HONOR.
16       IF THERE IS A CONCERN HERE THAT -- AS PERHAPS -- AS WAS
17   STATED BY THE COURT IN THE KEITH CASE ABOUT THE GOVERNMENT
18   USING SURVEILLANCE IN ORDER TO -- IN ORDER TO OVERSEE DOMESTIC
19   POLITICAL DISSENT AND TO TRACK THE MOVEMENTS AND OPERATIONS OF
20   DISFAVORED DOMESTIC ORGANIZATIONS OF ONE KIND OR ANOTHER, THE
21   SUPREME COURT HAS MADE CLEAR IN EXTREME CIRCUMSTANCES SUCH AS
22   THAT, THE FIRST AMENDMENT MAY HAVE A ROLE TO PLAY.
23       BUT WE ARE -- WE ARE DEALING HERE WITH A FOURTH AMENDMENT
24   CLAIM.  AND THE SUPREME COURT MADE CLEAR IN KARO THAT WE MUST
25   APPLY TRADITIONAL FOURTH AMENDMENT PRINCIPLES AND ASCERTAIN
```

1    FIRST WHETHER A SEARCH OR A SEIZURE PROTECTED BY THE FOURTH

2    AMENDMENT IS -- HAS -- HAS BEEN ALLEGED TO HAVE PROVEN.

3        WE THINK ELECTRONIC SCANNING DOESN'T -- OF COMMUNICATIONS

4    THAT DO NOT CONTAIN TARGETED SELECTORS DOESN'T CONSTITUTE A

5    SEARCH, AGAIN, BECAUSE IT CONVEYS NO INFORMATION AT ALL AS IN

6    THE *KARO* CASE AND IT ALSO FOLLOWS FROM THE LOGIC OF *PLACE* AND

7    *JACOBSEN*, THE CASES INVOLVING THE CANINE DOG SNIFF AND THE

8    CHEMICAL FIELD TEST FOR COCAINE THAT FOLLOWED.

9        THE DISTINCTION THAT THE COURT APPLIED IN *PLACE* APPLIES

10   HERE AS WELL.  YOUR HONOR QUERIED IS THE ELECTRONIC SCANNING

11   NOT THE SAME AS TAKING A PACKAGE AND OPENING IT EN ROUTE.

12   AND, AGAIN, WE SUBMIT THE ANSWER IS NO BECAUSE WHEN A PACKAGE

13   IS OPENED, THE CONTENTS ARE EXPOSED TO HUMAN OBSERVATION;

14   WHEREAS THE ELECTRONIC SCANNING EXPOSES NO INFORMATION TO

15   HUMAN SCRUTINY.

16       THAT'S EXACTLY THE DISTINCTION THAT THE COURT RELIED ON IN

17   *PLACE* WHEN IT HELD THAT A DOG SNIFF OF LUGGAGE DOES NOT

18   CONSTITUTE A SEARCH.  IN REACHING THAT RESULT, IT

19   DISTINGUISHED THE DOG SNIFF FROM AN OFFICER PHYSICALLY

20   RUMMAGING THROUGH THE CONTENTS OF A SUITCASE AS -- AS YOUR

21   QUESTION POSITS SOME SORT OF LAW ENFORCEMENT OFFICIAL

22   RUMMAGING THROUGH THE CONTENTS OF A PACKAGE.

23       THE COURT SAID THAT THE DOG SNIFF IS DIFFERENT BECAUSE THE

24   LEGITIMATE CONTENTS OF THE LUGGAGE ARE NOT EXPOSED TO HUMAN

25   OBSERVATION, ONLY THE PRESENCE OR ABSENCE OF NARCOTICS.

1        AND HERE, THE ELECTRONIC SCAN DOES NOT EXPOSE ANY

2   INFORMATION.  IN FACT, EXPOSES EVEN LESS INFORMATION THAN WAS

3   MADE AVAILABLE TO LAW ENFORCEMENT OFFICERS ABOUT THE CONTENTS

4   OF THE LUGGAGE IN *PLACE*.

5        GOVERNMENT OFFICIALS DO NOT LEARN ANYTHING ABOUT THE

6   CONTENTS OF THE COMMUNICATIONS THAT ARE AT ISSUE IN THIS

7   MATTER RIGHT NOW.  THEY DON'T LEARN WHO THE PARTIES TO THE

8   COMMUNICATIONS WERE, WHEN THE COMMUNICATIONS TOOK PLACE.  THEY

9   DON'T EVEN KNOW THE COMMUNICATIONS EXIST BECAUSE THEY ARE

10  ELECTRONICALLY SCANNED, AND HAVING FOUND -- BEEN FOUND NOT TO

11  CONTAIN TARGETED SELECTORS, ARE DESTROYED IN A FLASH BEFORE

12  ANY HUMAN BEING COULD REVIEW OR POSSIBLY DO ANYTHING WITH

13  THEM.

14              **THE COURT:**  ALL RIGHT, THANK YOU.  MR. WIEBE.

15              **MR. WIEBE:**  THANK YOU, YOUR HONOR.

16       THE QUICK ANSWER TO BOTH OF YOUR -- BOTH OF THE COURT'S

17  QUESTIONS IS YES.

18       BEFORE WE GET THERE, HOWEVER, THERE IS A FACTUAL ISSUE I

19  NEED TO RAISE HERE.  AND THAT HAS TO DO WITH THE WORD

20  "MILLISECOND", WHICH THE GOVERNMENT HAS INJECTED INTO ITS

21  BRIEFING AND ITS ARGUMENT TODAY.

22       NOW, OUR POSITION IS DURATION DOESN'T MATTER EITHER FOR

23  SEARCH OR SEIZURE, BUT THERE'S NOTHING IN THE RECORD THAT SAYS

24  THE COPIES LAST ONLY MILLISECONDS.  THERE'S NO WITNESS WHO

25  USES THAT WORD.  WE DON'T ASSERT THAT AND THE GOVERNMENT HAS

1    PUT IN NO EVIDENCE ON THAT.  SO, THAT'S THE RECORD.

2         BUT THE RELEVANT POINT IS THAT WHATEVER THE DURATION, IT'S

3    LONG ENOUGH FOR THE GOVERNMENT TO ACCOMPLISH ITS PURPOSE OF

4    SEARCHING THE CONTENTS OF PLAINTIFFS' COMMUNICATION.  AND THE

5    GOVERNMENT CAN'T ESCAPE THE FOURTH AMENDMENT SIMPLY BY

6    AUTOMATING ITS SEARCHES AND SEIZURES.

7         LET ME GO BACK TO DISCUSS YOUR HONOR'S QUESTION IN MORE

8    DETAIL.  AND I DO WANT TO KEEP THE SEARCH AND SEIZURE

9    DISCUSSION SEPARATE.  BOTH WERE RAISED IN THE COURSE OF THE

10   GOVERNMENT'S PRESENTATION, SO LET ME BEGIN WITH THE SEIZURE.

11        THIS IS NOT A MERE DETENTION CASE.  IT IS THE EQUIVALENT

12   OF OPENING AND SEARCHING A PACKAGE EN ROUTE.  NOW, PLAINTIFFS

13   HAVE A POSSESSORY INTEREST IN THE CONTENTS OF THEIR INTERNET

14   COMMUNICATIONS, JUST AS THEY WOULD IN THE CONTENTS OF A LETTER

15   OR OTHER PAPERS.

16        AND *BERGER* AND *KATZ* MAKE THAT CLEAR.  IN THOSE TWO CASES,

17   COPYING AND ORAL CONVERSATION, RECORDING IT, THE SUPREME COURT

18   HELD, WAS A SEIZURE.  AND THAT'S 388 U.S. AT 59 TO 60 AND 389

19   U.S. AT 353.

20        AND *JACOBSEN* ITSELF, ONE OF THE CASES THE GOVERNMENT

21   RELIES ON, SAYS TO GO INSIDE A LETTER, YOU NEED A WARRANT.

22   THAT'S 466 U.S. AT 114.

23        AND AS YOUR HONOR POINTS OUT, THE *HEARST VERSUS BLACK* CASE

24   THAT WE SUBMITTED ALSO HOLDS THAT THERE'S A PROPERTY RIGHT IN

25   COMMUNICATIONS.  AND THAT WAS A TELEGRAM DRAGNET CASE.  THE

1    GOVERNMENT WAS COPYING TELEGRAMS EN MASS, AND THE DC CIRCUIT

2    HELD THERE WAS A PROPERTY RIGHT IN THE CONTENTS OF THOSE

3    TELEGRAMS.

4        THIS ALSO GOES BACK TO THE *EX PARTE JACOBSEN* -- I'M SORRY,

5    *EX PARTE JACKSON* CASE WE CITE, THE SUPREME COURT CASE FROM

6    1877 HOLDING THAT LETTERS ARE PROTECTED AS -- UNDER THE FOURTH

7    AMENDMENT, THE CONTENTS OF THE LETTERS AND CAN'T BE OPENED

8    WITHOUT A WARRANT.

9        ALSO THERE ARE TWO *JEFFERSON* CASES FLOATING AROUND IN THE

10   PAPERS.  THERE'S THE NINTH CIRCUIT ONE THAT YOUR HONOR QUOTES

11   IN THE QUESTION AND THERE'S ALSO ONE FROM THE EASTERN DISTRICT

12   OF VIRGINIA.  THAT'S 571 F.SUPP. AT 702 TO 704, WHICH ALSO

13   TALKS ABOUT THE PROPERTY RIGHT AND INFORMATION.

14       AND EVEN AS WE CITE IN OUR BRIEF, JUST ORDINARY LAW GIVES

15   US PROPERTY RIGHTS IN OUR INFORMATION.  WE CITE THE *SHULMAN*

16   CASE.  THAT'S A CASE FROM THE CALIFORNIA SUPREME COURT.  WE

17   CITE COPYRIGHT LAW.  SO I DON'T THINK THERE'S ANY DOUBT THAT

18   WE OWN OUR INFORMATION.

19       SO THE QUESTION IS, IS THERE AN INTRUSION ON THAT?  IS THE

20   GOVERNMENT EXERCISING DOMINION AND CONTROL OVER IT IN

21   DEROGATION OF THE PLAINTIFFS' RIGHTS?  AND IT'S CLEAR THAT

22   COPYING IS THAT.  BECAUSE PART OF YOUR RIGHTS AND YOUR

23   COMMUNICATIONS IS THE RIGHT TO EXCLUDE OTHERS FROM COPYING.

24       AND THAT'S EXACTLY WHAT THE GOVERNMENT IS DOING HERE IS

25   COPYING THE ENTIRE COMMUNICATION.  IT'S GOING INSIDE THE

1    COMMUNICATION AND COPYING IT.

2        AND IT'S -- AND THAT'S A FUNDAMENTALLY DIFFERENT

3    INTERFERENCE THAN A MERE DETENTION.  IN ALL THE CASES THE

4    GOVERNMENT RELIES ON, THE GOVERNMENT HADN'T GONE INSIDE A

5    PACKAGE, HADN'T COPIED ANY PAPERS INSIDE IT.  AND SO THE

6    DEFENDANTS WERE LEFT WITH NOTHING TO ARGUE BUT JUST THE MERE

7    SPAN OF TIME.

8        AND THAT'S NOT THE CASE HERE.  THE GOVERNMENT ISN'T JUST

9    SEQUESTERING THESE COMMUNICATIONS.  IT'S COPYING THEM AND THEN

10   SEARCHING THE COPIES.

11       AND *JEFFERSON*, THE NINTH CIRCUIT *JEFFERSON* CASE, IN

12   PARTICULAR, SAYS NOTHING ABOUT THE INTERFERENCE THAT COPYING A

13   COMMUNICATION CAUSES, IT'S JUST A DOG SNIFF OF THE OUTSIDE OF

14   THE PACKAGE, AND THE PACKAGE WAS NOT OPENED UNTIL A WARRANT

15   WAS OBTAINED.  AND THAT'S TRUE IN THE OTHER PACKAGE CASES.

16   THE PACKAGE IS NOT OPENED UNTIL THE GOVERNMENT GETS A WARRANT.

17       AND BECAUSE -- I THINK IT'S ANOTHER -- JUST ONE OTHER

18   POINT ON THIS THAT WE RAISE IN OUR PAPERS IS THE WIRETAP ACT

19   TAKES THE SAME VIEW.

20       THE WIRETAP ACT WAS PASSED IMMEDIATELY AFTER *BERGER* AND

21   *KATZ*.  AND WHAT CONGRESS WAS TRYING TO DO IS SET UP A

22   STATUTORY FRAMEWORK THAT IMPLEMENTED WHAT *BERGER* AND *KATZ* HAD

23   SAID WAS CONSTITUTIONAL LAW.  AND THAT'S WHAT THE LEGISLATIVE

24   HISTORY WE QUOTE TO YOU SAYS.

25       AND UNDER THE WIRETAP ACT, COPYING A COMMUNICATION IS A

1    VIOLATION EVEN IF NO ONE EVER READS OR LISTENS TO THE

2    COMMUNICATION.  AND THAT'S THE *JACOBSON VERSUS ROSE* CASE.

3    THAT'S A NINTH CIRCUIT CASE, 592 F.2D AT 522.

4        SO, OUR POSITION IS THAT COPYING IS AN INTERFERENCE WITH

5    THE PLAINTIFFS' RIGHT TO EXCLUDE OTHERS FROM COPYING THEIR

6    COMMUNICATIONS.  IF IT'S AN EXERCISE OF DOMINION AND CONTROL,

7    AND IT'S -- *JACOBSON* TALKS ABOUT EXERCISE OF DOMINION AND

8    CONTROL BEING A SEIZURE, AND THAT'S A SEIZURE.

9        ONE OTHER POINT.  AS WE CITE IN OUR PAPERS, THERE'S AN --

10   IN THE *PLACE* CASE AT 462 U.S. 706, THE SUPREME COURT, AND WE

11   CITE THIS IN OUR PAPERS, SAID IF -- IF THE INVESTIGATIVE

12   PROCEDURE IS ITSELF A SEARCH REQUIRING PROBABLE CAUSE, THE

13   INITIAL SEIZURE FOR THE PURPOSE OF SUBJECTING IT TO A SNIFF

14   TEST, NO MATTER HOW BRIEF, COULD NOT BE JUSTIFIED ON LESS THAN

15   PROBABLE CAUSE.

16       SO THERE IS SOME INTERACTION BETWEEN SEARCHES AND

17   SEIZURES.  AND IF YOUR PURPOSE FOR CONDUCTING A DETENTION, AND

18   EVEN UNDER THE DETENTION VIEW, IF YOUR PURPOSE OF CONDUCTING

19   THE DETENTION IS TO DO A SEARCH REQUIRING A WARRANT, THEN THAT

20   DETENTION BECOMES A SEIZURE.

21       TURNING TO SEARCH.  I THINK IT'S -- MY UNDERSTANDING OF

22   THE GOVERNMENT'S POSITION IS THAT THEY DON'T CONTEST WHETHER

23   THERE'S A REASONABLE EXPECTATION OF PRIVACY IN THESE

24   COMMUNICATIONS.  AND I THINK THAT'S CORRECT.  *COTTERMAN*, THE

25   NINTH CIRCUIT EN BANC CASE RECENTLY DECIDED, I THINK MAKES

1    CLEAR THAT THERE IS A REASONABLE EXPECTATION OF PRIVACY IN

2    INTERNET COMMUNICATIONS.  AND THAT'S 709 F. 3D AT 964 TO '66.

3         AND I THINK YOUR HONOR'S MADE A VERY GOOD POINT ABOUT,

4    AGAIN, THE FACT THAT THE GOVERNMENT HAS AUTOMATED A SEARCH

5    DOES NOT ALLOW IT TO ESCAPE THE WARRANT REQUIREMENT.  IT'S

6    IMPORTANT TO RECOGNIZE THEY ARE DOING FULL CONTENT SEARCHING

7    FROM TOP TO BOTTOM OF THESE COMMUNICATIONS LOOKING FOR MANY

8    SELECTORS WITHIN THEM.

9         AND AS YOUR HONOR POINTED OUT, IT'S NOT THE MACHINE ACTING

10   ON ITS OWN.  THERE'S A PERSON BEHIND THE MACHINE WHO'S

11   DESIGNED THE PROGRAM, A PERSON -- PERSONS WHO DECIDED WHAT TO

12   SEARCH FOR, WHO HAVE CHOSEN THE SELECTORS THAT ARE GOING TO BE

13   SEARCHED FOR, AND WHAT ACTION TO TAKE AS A RESULT OF THAT.

14        SO THE GOVERNMENT -- IT'S NOT THE CASE THAT THE GOVERNMENT

15   DOESN'T LEARN ANYTHING ABOUT THE COMMUNICATIONS.  THE

16   GOVERNMENT LEARNS WHETHER THE COMMUNICATIONS CONTAIN ANY OF

17   THE GOVERNMENT'S MANY SELECTOR TERMS, AND IT THEN MAKES A

18   DECISION ON THAT BASIS WHETHER OR NOT TO RETAIN THE

19   COMMUNICATION FOR FURTHER PROCESSING.  IT LEARNS WHAT THE

20   CONTENTS OF THESE COMMUNICATIONS ARE, AND IT ACTS ON IT.

21        IF THE GOVERNMENT WEREN'T LEARNING SOMETHING ABOUT THE

22   CONTENTS OF THESE COMMUNICATIONS, WHY WOULD IT COPY MILLIONS

23   OF THEM?

24        IT'S ALSO CLEAR THAT THIS IS NOT A CONTRABAND SEARCH CASE

25   LIKE *PLACE* OR *JACOBSEN*, OR THE OTHER AUTHORITIES THE

```
1    GOVERNMENT CITES.  THE SUPREME COURT IS CAREFUL TO DESCRIBE

2    THOSE DOG SNIFF CASES AS SUI GENERIS.  THERE ARE TWO

3    DISTINGUISHING FEATURES -- ACTUALLY A NUMBER OF THEM, BUT TWO

4    THAT I WANT TO FOCUS ON THAT DISTINGUISH THE CONTRABAND CASES

5    FROM OUR CASE.

6        FIRST OF ALL, IN THOSE CASES THERE'S NO INTRUSION INSIDE

7    THE PACKAGE OR LETTER, AND THE SEARCH IS LIMITED TO ATTEMPTING

8    TO DETECT AN EXTERNAL CHARACTERISTIC OF THE CONTRABAND OBJECT.

9    THE DOG IS TRYING TO SNIFF ANY ODOR MOLECULES OF DRUGS THAT

10   HAVE SEEMED OUT OF THE PACKAGE.

11       HERE, THE GOVERNMENT ISN'T STAYING OUTSIDE IN AN

12   ATTEMPT -- IN ATTEMPTING TO DETECT SOME KIND OF EXTERNAL

13   CHARACTERISTIC.  IT'S GOING INSIDE AND COPYING AND SEARCHING.

14       AND THIS IS LIKE THE AUTOMATED SO-CALLED HASH VALUE

15   SEARCHING IN THE CRIST, C-R-I-S-T, AT 627 F.SUPP. AT 578 AND

16   585 THAT WE CITE IN OUR PAPERS.  IT IS INTRUDING INTO THE

17   PROTECTED AREA OF THE PLAINTIFFS' PAPERS AND LOOKING TO SEE

18   WHAT'S IN THERE.

19       AND EVEN CONTRABAND SEARCHING HAS ITS LIMIT.  THAT EDMOND

20   CASE WE CITE, FLORIDA VERSUS JARDINES, THOSE WERE DOG SNIFF

21   CASES, AND THE SUPREME COURT HELD THEY WERE UNCONSTITUTIONAL

22   FOURTH AMENDMENT VIOLATIONS.

23       AND, IN ADDITION, WHEN CONTRABAND SEARCHING IS APPLIED ON

24   A MASS SUSPICIONLESS BASIS, IT CAN ALSO VIOLATE THE FOURTH

25   AMENDMENT.  THAT'S THE BOURGEOIS VERSUS PETERS CASE WE CITE
```

1    WHERE THE GOVERNMENT WANTED TO SEND 15,000 PEOPLE WHO WERE

2    CONDUCTING A PROTEST THROUGH A METAL DETECTOR BEFORE THE

3    PROTEST, AND THAT WAS HELD AN -- UNCONSTITUTIONAL.

4       JUST A COUPLE OF POINTS THAT THE GOVERNMENT RAISED THAT I

5    WILL NOTE.  I THINK *KARO*, THE FACTS OF *KARO* HAVE NOTHING TO DO

6    WITH THIS CASE.  YOU KNOW, JUST FROM THE GOVERNMENT'S

7    DESCRIPTION, I THINK THAT WAS CLEAR TO THE COURT THAT IT'S

8    JUST NOT WHAT'S HAPPENING HERE.

9       AND I'LL NOTE THAT, IN FACT, THERE IS A FIRST AMENDMENT

10   CLAIM IN THIS CASE.  AND WITH THAT I'LL SIT DOWN UNLESS YOU

11   HAVE ANY QUESTIONS.

12            **THE COURT:**  NO.

13      IS THERE ANYTHING ELSE YOU WANT TO SAY IN REPLY BRIEFLY?

14            **MR. GILLIGAN:**  YES, I WOULD LIKE TO RESPOND TO A

15   NUMBER OF POINTS YOUR HONOR RAISED BY MR. WIEBE THERE, AND

16   JUST TRY TO TAKE THEM MORE OR LESS IN ORDER.

17      HE SAYS THAT THE -- NO WITNESS EVER TALKS ABOUT THE

18   DURATION OF THE EXISTENCE OF THESE COPIED COMMUNICATIONS BEING

19   IN TERMS OF MILLISECONDS, BUT PLAINTIFFS AND THEIR EXPERT,

20   MR. MARCUS, POSIT THAT MILLIONS OF ONLINE COMMUNICATIONS ARE

21   BEING CONTINUOUSLY COPIED AND FILTERED AND SCANNED FOR TARGET

22   SELECTORS ALL IN, AND TO USE MR. MARCUS' TERMINOLOGY, "REAL

23   TIME AT TRUE CARRIER SPEEDS", WE'RE TALKING ABOUT TRUE CARRIER

24   SPEEDS ON FIBER-OPTIC NETWORKS WHERE INFORMATION TRAVELS AT

25   THE SPEED OF LIGHT.

1        AND HE SAYS FURTHER THAT THIS ALL OCCURS WITHOUT

2   INTERRUPTING THAT FLOW OF COMMUNICATIONS AT THE SPEED OF

3   LIGHT.

4        AND THIS INFORMATION IS GENERALLY SET FORTH IN PARAGRAPHS

5   62, 72, AND 73, 80 AND 83 OF MR. MARCUS' DECLARATION AND IT'S

6   ALSO DISCUSSED ON PAGES 6 TO 8 OF PLAINTIFFS' BRIEF.

7        IF -- IF -- IF WE ARE COPYING COMMUNICATIONS THAT ARE

8   TRAVELING -- MILLIONS AT A TIME AT LIGHT SPEED, FILTERING THEM

9   AND SCANNING FOR TARGETED SELECTORS, AND THEN DISCARDING THE

10  ONES THAT DO NOT CONTAIN TARGETED SELECTORS, ALL WITHOUT

11  INTERRUPTING THE FLOW OF COMMUNICATION TRAFFIC ON THE

12  INTERNET, THEN THIS MUST BE HAPPENING AT INCREDIBLE SPEED.

13  CERTAINLY THAN THE -- THE COMMUNICATIONS COMING TO AND OUT OF

14  EXISTENCE IN MILLISECONDS, CERTAINLY IN A FRACTION OF THE TIME

15  IT HAS TAKEN ME TO COMPLETE THIS SENTENCE.

16       WE SUBMIT, YOUR HONOR, THAT THAT DOES NOT CONSTITUTE

17  MEANINGFUL INTERFERENCE WITH SOMEBODY'S POSSESSORY INTEREST IN

18  THESE COMMUNICATIONS.

19       MR. WIEBE IS RIGHT, WE DON'T CONTEST, FOR PURPOSES OF THIS

20  MOTION ANYWAY, THAT THE PLAINTIFFS HAVE A POSSESSORY INTEREST

21  EVEN IN THE DUPLICATES.  WE DON'T CONTEST, AT LEAST FOR

22  PURPOSES OF THIS MOTION, THAT THEY HAVE A PRIVACY INTEREST IN

23  THE CONTENTS OF THE COMMUNICATIONS, BUT THAT DOESN'T ANSWER

24  THE FOURTH AMENDMENT ISSUE.

25       THE FOURTH AMENDMENT ISSUE IS WHETHER THERE HAVE BEEN

1    INFRINGEMENTS UPON THOSE INTERESTS.  AND WE SUBMIT THAT A

2    MILLISECOND DOES NOT CONSTITUTE MEANINGFUL INTERFERENCE WITH

3    THAT INTEREST.  THIS IS A MATTER THAT I IMAGINE WE'LL DISCUSS

4    IN GREATER LENGTH IN QUESTION NUMBER FOUR, YOUR HONOR.

5        NOW, MR. WIEBE GOES ON TO SAY THAT AS A RESULT OF SOMEBODY

6    PROGRAMMING A DEVICE TO ONLY COLLECT COMMUNICATIONS THAT HAVE

7    TARGETED SELECTORS, THE GOVERNMENT LEARNS WHETHER THEIR

8    COMMUNICATIONS CONTAIN TARGETED SELECTORS OR NOT AND ACTS ON

9    IT.

10       MR. WIEBE CAN ONLY MAKE THAT STATEMENT BY USING AN

11   ABSTRACTION, THE GOVERNMENT, WITHOUT GRAPPLING WITH THE ISSUE

12   AS TO WHETHER HUMAN BEINGS ACTUALLY OBSERVE ANY INFORMATION

13   ABOUT THEIR COMMUNICATIONS, AND THAT, *KARO* TEACHES US, AS WELL

14   AS *PLACE* AND *JACOBSEN*, IS THE CRITICAL ISSUE HERE FOR PURPOSES

15   OF DETERMINING WHETHER THERE'S BEEN A FOURTH AMENDMENT

16   SEIZURE -- EXCUSE ME, A FOURTH AMENDMENT SEARCH.

17       AND IF -- IF A COMMUNICATION IS -- DOES NOT HAVE A

18   TARGETED SELECTOR IN IT, AND IS INSTEAD -- THE COPY'S INSTEAD

19   DESTROYED IN A FLASH, AS -- IS THE ONLY INFERENCE THAT CAN

20   POSSIBLY FOLLOW FROM THE FACTS THAT THE PLAINTIFFS THEMSELVES

21   ASSERT, THEN THERE IS NO POSSIBILITY OF ANY HUMAN REVIEW OF

22   THESE COMMUNICATIONS.  AND, INDEED, THEY ARE NOT ALLEGING AS

23   SUCH.  THEIR CASE IS BASED ON THE NOTION THAT THE ELECTRONIC

24   SCANNING IS OF ITSELF A -- SHOULD BE REGARDED AS A SEARCH.

25       THAT IS NOT ONLY -- THAT IS NOT ONLY REFUTED BY THE

1    SUPREME COURT'S DECISIONS IN *KARO, JACOBSEN*, AND *PLACE*, BUT

2    THERE ARE OTHER AUTHORITIES CITED IN OUR REPLY BRIEF THAT

3    SUPPORT THIS DISTINCTION, YOUR HONOR.

4        IT'S -- THEY ARE CITED IN FOOTNOTE 13 ON PAGE 11 OF OUR

5    REPLY BRIEF, JUST TO GIVE YOU A FEW EXAMPLES.

6        WHEN CONGRESS ENACTED THE ELECTRONIC COMMUNICATIONS

7    PRIVACY ACT IN 1986, ALMOST 30 YEARS AGO, IT EXPLAINED IN THE

8    SENATE REPORT ACCOMPANYING THE LEGISLATION THAT THE LAW

9    PERMITTED SERVICE PROVIDERS TO MONITOR TRANSITION STREAMS ON

10   THEIR NETWORKS IN ORDER TO PROPERLY ROUTE AND TERMINATE

11   COMMUNICATIONS BECAUSE SUCH MONITORING DID NOT INVOLVE

12   EXPOSING INDIVIDUALS' COMMUNICATIONS TO HUMAN BEINGS.  THAT'S

13   WHAT THE REPORT SAYS.

14       BUT THEN IT RETAINED TRADITIONAL LIMITS ON OTHER FORMS OF

15   MONITORING THAT DID INVOLVE HUMAN ACCESS TO COMMUNICATION.  SO

16   THE IMPORTANCE OF THIS DISTINCTION WAS RECOGNIZED BY CONGRESS

17   30 YEARS AGO.

18       THE STATE BARS OF THE 50 STATES, THE GENERAL RULE AMONG

19   THE STATE BARS IS THAT LAWYERS MAY USE EMAIL SERVICES, SUCH AS

20   GMAIL THAT ELECTRONICALLY SCAN EMAILS TO GENERATE COMPUTER

21   ADVERTISING WITHOUT VIOLATING THEIR DUTY OF CONFIDENTIALITY TO

22   THEIR CLIENTS BECAUSE THAT ELECTRONIC SCANNING DOES NOT RESULT

23   IN INFORMATION ABOUT THE EMAILS BEING PROVIDED TO HUMAN BEINGS

24   OTHER THAN THE SENDER AND THE INTENDED RECIPIENT.

25       PROFESSOR ORIN KERR OF GEORGE WASHINGTON UNIVERSITY WHO

1    HAS WRITTEN AT LENGTH ON SEARCHES AND SEIZURES OF DIGITAL

2    INFORMATION; HE WROTE RECENTLY IN THE *HARVARD LAW REVIEW* THAT

3    THE RULE SHOULD BE THAT A SEARCH OCCURS ONLY WHEN INFORMATION

4    FROM OR ABOUT ELECTRONIC DATA IS EXPOSED TO HUMAN OBSERVATION,

5    BECAUSE THAT MOST ACCURATELY TRANSFERS TO THE DIGITAL REALM

6    THE FOURTH AMENDMENT CONCEPTS OF WHAT IT MEANS TO SEARCH A

7    HOUSE OR A CONTAINER, BOTH OF WHICH REQUIRE EXPOSING

8    RESPECTIVELY THE INTERIOR OF THE HOUSE OR CONTENTS OF THE

9    CONTAINER TO HUMAN OBSERVATION.

10   JUDGE POSNER, IN A CHICAGO LAW SCHOOL SYMPOSIUM ALSO CITED

11   IN THE SAME FOOTNOTE, ALSO CAME TO THE SAME VIEW THAT ONLY

12   HUMAN -- IN MATTERS INVOLVING ELECTRONIC SURVEILLANCE,

13   INVOLVING ELECTRONICALLY INTERCEPTING AND DATA MINING

14   COMMUNICATIONS FOLLOWED BY HUMAN REVIEW, IN THAT KIND OF

15   SCENARIO, ONLY THE HUMAN REVIEW SHOULD RAISE CONSTITUTIONAL

16   ISSUES BECAUSE, AS JUDGE POSNER SAID, SEARCH PROGRAMS ARE NOT

17   SANCTIONED BEINGS AND, THEREFORE, COMPUTER SEARCHES CANNOT

18   INVADE PRIVACY.

19   SO THIS DISTINCTION THAT WE ARE RELYING ON REGARDING

20   WHETHER A SEARCH HAS OCCURRED ON THE FACTS ALLEGED HERE IS

21   WELL-ESTABLISHED IN THE LEGAL AUTHORITIES AND AMONG THE LEGAL

22   COMMENTATORS.

23   I WOULD -- THE -- I WOULD JUST SAY ABOUT THE *CRIST* CASE

24   VERY QUICKLY THAT MR. WIEBE REFERRED TO, THAT CASE IS ALSO

25   DISCUSSED IN OUR REPLY BRIEF.  AND AS WE DISCUSSED THERE, THAT

1    CASE INVOLVED A SEARCH THAT RESULTED IN INFORMATION ABOUT THE

2    CONTENTS OF THE INDIVIDUAL'S COMPUTER ACTUALLY BEING REVEALED

3    TO LAW ENFORCEMENT OFFICIALS, UNLIKE THE SITUATION WE ARE

4    DEALING WITH HERE.

5        AND *KARO* REFUTES THE IDEA THAT THE PRINCIPLE WE ARE

6    RELYING ON IS LIMITED TO, AS MR. WIEBE PUTS IT, CONTRABAND

7    SEARCHES.  THE COURT RECOGNIZED IN *KARO* THAT THE BEEPER, THE

8    TRACKER, WHEN MONITORED, COULD INVADE MR. KARO'S LEGITIMATE

9    PRIVACY INTEREST.  IT HELD THAT IT DID RESULT IN AN UNLAWFUL

10   SEARCH OF HIS HOME.  BUT WHEN IT WAS NOT MONITORED, WHEN IT

11   DID NOT CONVEY INFORMATION TO HUMAN BEINGS, IT HELD THAT THERE

12   WAS NO INFRINGEMENT ON MR. KARO'S PRIVACY INTERESTS THAT COULD

13   RESULT IN A SEARCH.

14           **THE COURT:**  THANK YOU VERY MUCH.

15       IS THERE ANYTHING ELSE YOU WANT TO SAY ON THIS POINT

16   BRIEFLY.

17           **MR. WIEBE:**  THERE IS, YOUR HONOR.  THANK YOU.

18           **THE COURT:**  ALL RIGHT.

19           **MR. WIEBE:**  FIRST OF ALL, WE NEED TO TALK ABOUT

20   MILLISECONDS SOME MORE.  AND I'M GOING TO SAY IT'S A LITTLE

21   INTERESTING TO ME THAT HAVING SPENT SO MUCH TIME TEARING DOWN

22   MR. MARCUS AS AN EXPERT, SUDDENLY WE SEE THE GOVERNMENT

23   RELYING ON HIM.

24       THE -- BUT THAT'S NOT WHAT MARCUS SAYS IN THOSE PARAGRAPHS

25   80 AND 83.  HE SAYS NOTHING AT ALL ABOUT THE DELETION OF

1    COMMUNICATIONS, OF WHEN THEY ARE DISCARDED OR DELETED.  HE

2    SAYS NOTHING AT ALL ABOUT HOW LONG THE COPIES ARE KEPT.

3        HE SAYS THE CAPTURING AND THE COLLECTION AND THE

4    PROCESSING HAPPEN -- HAPPENS VERY RAPIDLY.  BUT ALL THOSE ARE

5    THINGS THAT HAPPEN BEFORE THE DELETION.  HE SAYS NOTHING AT

6    ALL ABOUT IT.  AND I SUGGEST THAT IF THE GOVERNMENT WANTS TO

7    MAKE THIS POINT, THEY NEED TO GET THEIR OWN EXPERT AND PUT IN

8    SOME EVIDENCE ON IT.

9        THE GOVERNMENT ALSO ARGUES THAT, AGAIN, THERE'S NO SEARCH

10   BECAUSE HUMAN EYES HAVE NOT SEEN IT.  WELL, THE GOVERNMENT'S

11   MACHINE IS THE ACTION.  THE FOURTH AMENDMENT PROTECTS PERSONS,

12   INDIVIDUALS AGAINST INTRUSION BY THE GOVERNMENT, NOT JUST BY

13   PARTICULAR GOVERNMENT EMPLOYEES.  AND IT DOESN'T MATTER IF

14   THAT INTRUSION HAPPENS BY A MACHINE OR BY A GOVERNMENT

15   EMPLOYEE.

16       YOU KNOW, IF SUDDENLY OUR HOMES WERE BEING SEARCHED BY

17   DRONES AUTOMATICALLY, IF THEY SEND A DRONE THAT FLEW AROUND

18   THE ROOMS OF YOUR HOUSE, AND RECORDED EVERYTHING IN THERE, AND

19   SAID, WELL, YES, WE ARE RECORDING THIS AND -- BUT NO ONE EVER

20   LOOKS AT IT UNLESS THE MACHINE DETECTS THE PRESENCE OF A GUN

21   IN THE ROOM.  YOU KNOW?  THAT WOULDN'T BE PERMISSIBLE UNDER

22   THE FOURTH AMENDMENT.

23       I THINK WHAT REALLY MATTERS IS NOT WHAT THE GOVERNMENT

24   GAINS, BUT WHAT THE PLAINTIFFS LOSE.  THEY LOSE PRIVACY.  AND

25   THE GOVERNMENT MAKES A DECISION BASED ON WHAT IT FINDS IN

1    THESE COMMUNICATIONS.

2        AND I THINK THAT'S REALLY WHAT WE ARE TALKING ABOUT.  YOU

3    KNOW, THE FOURTH AMENDMENT PROTECTS ALL OF US AGAINST MASS

4    SUSPICIONLESS SURVEILLANCE OF OUR PAPERS.  AND KNOWING YOUR

5    COMMUNICATIONS ARE NOT SUBJECT TO THAT KIND OF SCRUTINY,

6    WHETHER IT'S AUTOMATIC OR HUMAN, IS -- IS REALLY BASIC TO A

7    FREE SOCIETY.

8        THE *KARO* CASE --

9            **THE COURT:**  COUNSEL, I DON'T WANT TO CUT YOU OFF, BUT

10   I CAN READ THAT CASE.  I UNDERSTAND YOUR VARIOUS POSITIONS

11   ABOUT IT.  THAT'S A SITUATION WHERE YOU ARE DISCUSSING A CASE,

12   I CAN READ IT AND MAKE MY OWN CONCLUSIONS.  I UNDERSTAND THE

13   POINTS WHICH BOTH SIDES ARE CITING IT.

14           **MR. WIEBE:**  I JUST HAVE ONE -- IF I MAY?

15           **THE COURT:**  YES.

16           **MR. WIEBE:**  ONE POINT ON THAT, WHICH IS, THAT WHEN

17   THE BEEPER WAS NOT ACTIVE, IT WAS NOT CONVEYING INFORMATION

18   AUTOMATICALLY TO THE GOVERNMENT THAT THE GOVERNMENT WAS MAKING

19   A DECISION ON.

20       HERE, THERE IS INFORMATION CONVEYED TO THE GOVERNMENT THAT

21   THE GOVERNMENT IS AUTOMATICALLY MAKING A DECISION ON.

22       THEY CITE A LOT OF SECONDARY AUTHORITY.  WE RELY ON CASES.

23       AND I THINK THAT'S IT.

24           **THE COURT:**  THANK YOU.

25       LET'S MOVE ON TO THE NEXT QUESTION, QUESTION NUMBER FOUR.

1    AND IT'S OBVIOUSLY FOR THE DEFENDANTS FIRST.

2         I UNDERSTAND, MR. GILLIGAN, THAT SOME OF THIS MAY HAVE

3    BEEN -- MAY CALL FOR REPETITIVE INFORMATION, AND YOU DON'T

4    NEED TO GO OVER WHAT YOU HAVE GONE OVER BEFORE.

5         WHEN I WAS WORKING ON THESE QUESTIONS, IT WAS REALLY SORT

6    OF THE WAY I WAS COMPARTMENTALIZING THINGS, BUT I REALIZE THAT

7    SOME OF THE ARGUMENTS NECESSARILY SPILL OVER.  SO YOU DON'T

8    NEED TO FILL THE NEED TO SAY, I REALLY MEANT IT WHEN I JUST

9    SAID SUCH AND SUCH OR SEE MY OTHER ARGUMENT AND REPEAT IT.

10        THE QUESTION IS:

11             "DO DEFENDANTS CONTEND THAT THE ALLEGED SEIZURE IS SO

12             LIMITED IN TIME AS TO NOT CONSTITUTE MEANINGFUL

13             INTERFERENCE WITH POSSESSORY INTEREST?  SEE *UNITED*

14             *STATES VERSUS VA LERIE*, EIGHTH CIRCUIT CASE."

15        THE SECOND PART OF THE QUESTION IS:

16             "IS THERE A POSSESSORY INTEREST IN THE CONTENTS OF

17             THE COMMUNICATIONS?"

18        IT HAS BEEN DISCUSSED BEFORE.

19             "DOES THE ALLEGED SEIZURE CONSTITUTE A BRIEF

20             NONINTRUSIVE INSPECTION?"

21        AND THE GOVERNMENT SUBMITS IN ITS SUPPLEMENTAL AUTHORITIES

22    THE CASE OF *UNITED STATES VERSUS HECKENKAMP*,

23    H-E-C-K-E-N-K-A-M-P, 482 F.3D 1142, AND THE PIN CITE IS 1146,

24    THROUGH '47, A NINTH CIRCUIT CASE DECIDED IN 2007, FOR THE

25    PROPOSITION THAT A PERSON'S REASONABLE EXPECTATION OF PRIVACY

1    MAY BE DIMINISHED IN TRANSMISSIONS OVER THE INTERNET

2    ESPECIALLY WHERE A PERSONAL COMPUTER IS CONNECTED TO A

3    UNIVERSITY NETWORK BUT THERE ARE SOME OBJECTIVELY REASONABLE

4    EXPECTATION THAT THE SEARCH BY A COLLEGE ADMINISTRATOR WAS

5    NEEDED.

6        YOU MAY PROCEED WITH THE ANSWER NOW.

7            **MR. GILLIGAN:**  LET ME FIRST SAY REGARDING THE CASE

8    *HECKENKAMP*?

9            **THE COURT:**  YES.

10           **MR. GILLIGAN:**  THAT WAS A CASE WE SUBMITTED FOR

11   PURPOSES OF THE SPECIAL NEEDS ARGUMENT AND THE BALANCING TEST.

12   BECAUSE I THINK I KNOW WHERE YOUR HONOR MIGHT BE GOING WITH

13   RESPECT TO THAT CASE ON QUESTION FOUR THAT --

14           **THE COURT:**  MAYBE YOU CAN TELL ME SO I'LL KNOW.

15                       (LAUGHTER).

16           **MR. GILLIGAN:**  IF THE COURT WOULD LIKE TO DISCUSS THE

17   SPECIAL NEEDS --

18           **THE COURT:**  NO, I DON'T WANT TO DO THAT NOW.  THAT'S

19   WHY I SORT OF HAVE SUMMARIZED SOME OF THE -- WHERE I SLIDE IT

20   IN IN MY OWN MIND, THE SUPPLEMENTAL AUTHORITIES, AND THAT'S

21   EXACTLY THE PURPOSE.  SO YOU CAN SAY, NO, THAT'S NOT THE POINT

22   FOR WE WHICH WE WERE --

23           **MR. GILLIGAN:**  THAT -- THAT IS, INDEED, NOT THE POINT

24   FOR WHICH WE SUBMITTED THAT CASE AND IT IS NOT A POSITION THAT

25   WE ARE ARGUING FOR PURPOSES OF THIS MOTION.

1          WE ARE NOT RELYING IN ANY WAY ON -- ON AN ARGUMENT THAT

2     PLAINTIFFS HAVE DIMINISHED EXPECTATION OF PRIVACY IN THE

3     CONTENTS OF THEIR COMMUNICATIONS OR DIMINISHED POSSESSORY

4     INTEREST IN THEIR COMMUNICATION OR DUPLICATES OF THEIR

5     COMMUNICATIONS.

6          TO COME TO THE FIRST PART OF QUESTION FOUR, OUR -- OUR

7     POSITION IS PRECISELY AS THE COURT PUT IT, THAT THE ALLEGED

8     SEIZURE, THE LIFE SPAN OF THESE COPIED COMMUNICATIONS IS SO

9     BRIEF, SO VANISHINGLY BRIEF SO AS NOT TO CONSTITUTE MEANINGFUL

10    INTERFERENCE WITH THE PLAINTIFFS' POSSESSORY INTEREST, THAT IS

11    THE STANDARD THAT THE SUPREME COURT HAS SET FORTH IN ITS --

12    ITS PRECEDENTS, SUCH AS *JACOBSEN* AND *ARIZONA VERSUS HICKS*.

13         AS THE EIGHTH CIRCUIT EXPLAINED IN THE *VA LERIE* CASE IN

14    THE COURT'S QUESTION, THE GOVERNMENT DOESN'T SEIZE PROPERTY

15    EVERY TIME IT HANDLES PROPERTY.  BY REQUIRING MEANINGFUL

16    INTERFERENCE, THE SUPREME COURT NECESSARILY EXCLUDES

17    INCONSEQUENTIAL INTERFERENCE WITH PROPERTY RIGHTS AND

18    POSSESSORY INTERESTS FROM THE MEANING OF A FOURTH AMENDMENT

19    SEIZURE.  AND WE SUBMIT IF A MATTER OF MILLISECONDS ISN'T

20    INCONSEQUENTIAL, THEN NOTHING IS.

21         BUT IN ADDITION TO THE FLEETING CONTENT WE ARE TALKING

22    ABOUT HERE IS THE FACT THAT THE ELECTRONIC SCANNING OF

23    PLAINTIFFS' COMMUNICATIONS AS THEY ALLEGE IT RESULTS IN NONE

24    OF THE ENSUING CONSEQUENCES THAT COURTS LOOK TO WHEN

25    EVALUATING WHETHER A SEIZURE HAS OCCURRED.

1        NO PROPERTY IS TAKEN FROM PLAINTIFFS' IMMEDIATE

2    POSSESSION, AS MR. PLACE WAS DIVESTED OF POSSESSION OF HIS

3    SUITCASE AT THE AIRPORT.

4        NO PROPERTY OF THEIRS IS DESTROYED.

5        THE RECEIPT OF -- OF THEIR COMMUNICATIONS IS NOT DELAYED.

6        AND OBVIOUSLY THERE'S NOTHING THAT IMPEDES THEIR FREEDOM

7    OF MOVEMENT, THEIR PERSONAL LIBERTY AS A RESULT OF THE ALLEGED

8    SEIZURE.

9        AND THEIR COMMUNICATIONS ARE NOT HANDLED IN ANY WAY THAT

10   DIFFERS FROM WHAT ORDINARILY OCCURS TO ELECTRONIC

11   COMMUNICATIONS AS THEY ARE TEMPORARILY COPIED AND STORED BY

12   NUMEROUS INTERMEDIATE COMPUTERS AND SERVERS WHILE MAKING THEIR

13   WAY ACROSS THE INTERNET.

14       AND THAT PROCESS IS DESCRIBED, I BELIEVE IT'S THE

15   COUNCILMAN CASE, 418 F. 3D 67 IN OUR REPLY BRIEF.

16       SO ONCE THE ALLEGEDLY COPIED COMMUNICATIONS ARE ALLEGEDLY

17   SCANNED AND THEREAFTER DESTROYED WITHIN MILLISECONDS OF THEIR

18   CREATION, PLAINTIFFS' EXCLUSIVE CONTROL, SUCH AS IT ACTUALLY

19   IS IN THE REALITIES OF THE INTERNET, OVER THEIR COMMUNICATIONS

20   IS RESTORED AS IF THE COPIES HAD NEVER EXISTED AT ALL.

21       AND THAT, WE SUBMIT, YOUR HONOR, IS -- IS ABOUT AS

22   INCONSEQUENTIAL AN INTERFERENCE WITH THEIR POSSESSORY INTEREST

23   IN THEIR COMMUNICATIONS AS COULD BE IMAGINABLE.

24       AGAIN, WE SUBMIT THAT THE -- IT DOES NOT MATTER TO THE

25   SEIZURE ANALYSIS.  MR. WIEBE WAS SPEAKING TO THIS POINT A

1   MOMENT AGO, THAT DURING THE VERY BRIEF LIFE SPAN OF THESE

2   COPIED COMMUNICATIONS THERE'S TIME AT VERY HIGH SPEEDS TO SCAN

3   THEM FOR TARGETED SELECTORS.  AGAIN, THE NATURE OF THE

4   INSPECTION THAT OCCURS DURING THE DETENTION OF THE ITEM GOES

5   TO WHETHER THERE HAS BEEN A SEARCH, NOT TO WHETHER THERE HAS

6   BEEN A SEIZURE.

7       IN REGARD TO THE LANGUAGE THAT MR. WIEBE READ FROM THE

8   *PLACE* OPINION A FEW MOMENTS AGO, IT HAD ALREADY BEEN

9   DETERMINED THERE THAT A SEIZURE HAD TAKEN PLACE, SO TO SPEAK,

10  AND SO THE PRINCIPLE THAT THE COURT ENUNCIATED IN THE LANGUAGE

11  THAT MR. WIEBE WAS READING FROM, DEALT WITH A SITUATION WHERE

12  IT HAD ALREADY BEEN DETERMINED THERE WAS A SEIZURE OF SOME

13  KIND.  HERE, THE QUESTION IS, HAS THERE BEEN A SEIZURE.  AND

14  WE SUBMIT THAT THERE HAS NOT.

15      IN THEIR PAPERS, THE PLAINTIFFS HAVE TAKEN THE POSITION

16  THAT EVEN IF IT'S JUST A MATTER OF MILLISECONDS, IT DOESN'T

17  MATTER HOW LONG THE ELECTRONIC COPIES OF THEIR COMMUNICATIONS

18  EXIST BECAUSE A SEIZURE OCCURS AT THE MOMENT THE COMMUNICATION

19  IS COPIED.  INSTANTANEOUSLY.  REGARDLESS OF HOW LONG IT

20  EXISTS.

21      BUT APART FROM THE FACT THAT THEY CITE NO SUPPORT FOR THAT

22  PROPOSITION, IT IS, IN FACT, REFUTED BY CONTROLLING PRECEDENT

23  IN THE NINTH CIRCUIT AND IN THE SUPREME COURT.

24      FOR EXAMPLE, THE *JEFFERSON* CASE, THE NINTH CIRCUIT

25  *JEFFERSON* CASE AS WELL AS THE *HOANG* CASE.  THERE, MAILED ITEMS

1    WERE DETAINED FOR PERIODS OF TIME ON ORDERS AND ORDERS OF

2    MAGNITUDE LONGER THAN WE ARE TALKING ABOUT HERE.  TEN MINUTES

3    IN *HOANG*, OVERNIGHT IN *JEFFERSON*.

4        AND IT WAS ARGUED IN THOSE CASES THAT -- THAT THE

5    DEFENDANTS' PACKAGES HAD BEEN SEIZED THE MOMENT THEY WERE

6    REMOVED FROM THE FLOW OF THE MAIL STREAM.  AND THAT ARGUMENT

7    WAS REJECTED BY THE COURT OF APPEALS IN BOTH THOSE DECISIONS.

8        THE -- THE PRINCIPLE THAT THE PLAINTIFFS ADVOCATE HERE IS

9    ALSO IRRECONCILABLE WITH THE SUPREME COURT'S DECISION IN

10   *ARIZONA VERSUS HICKS*.  THAT WAS THE CASE WHERE THE POLICEMEN

11   ENTERED, AS THE COURT DESCRIBED IT, A RATHER SHABBY APARTMENT

12   OF THE DEFENDANT, SAW SOME RATHER SPECTACULAR-LOOKING STEREO

13   EQUIPMENT, AND SUSPECTING IT HAD BEEN STOLEN, THE POLICE

14   OFFICER LIFTED UP, AT THE VERY LEAST MOVED AROUND ONE OF THE

15   PIECES OF STEREO EQUIPMENT TO GET THE SERIAL NUMBER, COPIED IT

16   DOWN IN ORDER TO ASCERTAIN WHETHER IT HAD BEEN REPORTED

17   STOLEN.  THE SUPREME COURT HELD THAT ALTHOUGH THERE HAD BEEN A

18   SEARCH BECAUSE THE POLICEMAN OBTAINED INFORMATION, THE SERIAL

19   NUMBER, THERE WAS NO SEIZURE BECAUSE HIS LIFTING AND MOVING

20   AROUND A PIECE OF STEREO EQUIPMENT WAS INCONSEQUENTIAL IN

21   TERMS OF ITS INTERFERENCE WITH THE DEFENDANT'S POSSESSORY

22   INTEREST.

23       THE PLAINTIFFS' THEORY OF THE FOURTH AMENDMENT, HOWEVER,

24   THERE WOULD HAVE BEEN A SEIZURE THE MOMENT THE POLICE OFFICER

25   PICKED UP AND MOVED AROUND THAT PIECE OF STEREO EQUIPMENT.

```
1    THAT'S -- THAT IS NOT THE LAW.

2        I ALSO, JUST IN REGARD TO THE AUTHORITIES THE PLAINTIFFS

3    DO CITE, YOUR HONOR, THERE IS A CRITICAL DISTINCTION BETWEEN

4    THE CASE BEFORE YOU AND THE AUTHORITIES THEY CITE.

5        THE AUTHORITIES THEY CITE, THE GOVERNMENT NOT ONLY

6    ELECTRONICALLY COPIED OR RECORDED THE SUBSTANCE OF A

7    CONVERSATION OR COMMUNICATION, BUT IT RETAINED THE

8    INFORMATION.

9        BASICALLY THE CASES THEY ARE TALKING ABOUT DEAL WITH

10   STAGE 4.  AND STAGE 4 IS OFF THE TABLE BY PLAINTIFFS' OWN

11   DEFINITION OF THEIR CLAIM ON PAGES 8 AND 9 OF THE -- OF THEIR

12   BRIEF.

13       IF THE COURT HAS NO QUESTIONS ON THE FIRST PART OF

14   QUESTION FOUR, I WILL GO TO THE SECOND PART.

15       DOES THE SEIZURE CONSTITUTE A BRIEF, NONINTRUSIVE

16   INSPECTION?

17       I THINK THIS COMES BACK TO A POINT I WAS MAKING EARLIER,

18   YOUR HONOR, THAT SEIZURE IS NOT AN INSPECTION.  AN INSPECTION

19   IS NOT A SEIZURE.  THE SEIZURE IMPLICATES POSSESSORY

20   INTERESTS, WHEREAS THE INSPECTION IMPLICATES PRIVACY INTERESTS

21   AND RAISES THE ISSUE AS TO WHETHER THERE HAS BEEN A SEARCH.

22       AND AS THE NINTH CIRCUIT'S DECISION IN JEFFERSON GOES TO

23   SHOW, THOSE MUST BE SEPARATELY EVALUATED.  THAT'S ALL --

24           THE COURT:  THANK YOU.

25           MR. GILLIGAN:  -- I HAVE ON QUESTION FOUR.  THANK
```

1    YOU, YOUR HONOR.

2           **THE COURT:**  THANK YOU.

3       MR. WIEBE.

4           **MR. WIEBE:**  THANK YOU, YOUR HONOR.

5       AGAIN, WE HEARD THE WORD "MILLISECOND" AND THE COURT KNOWS

6    WHAT WE THINK OF THAT.

7           **THE COURT:**  ALL RIGHT.

8           **MR. WIEBE:**  ON THE COURT'S FIRST TWO QUESTIONS, IS

9    THERE A POSSESSORY INTEREST AND IS THERE A SEIZURE:  THERE IS

10   A POSSESSORY INTEREST IN THE CONTENTS OF COMMUNICATIONS AS

11   WE'VE JUST EXPLAINED, AND THE COPYING OF THOSE CONTENTS,

12   ESPECIALLY FOR THE PURPOSE OF SEARCHING THEM, IS AN EXERCISE

13   OF DOMINION AND CONTROL THAT'S A MEANINGFUL INTERFERENCE WITH

14   THE PLAINTIFFS' RIGHT TO EXCLUDE OTHERS FROM COPYING.

15      THIS IS NOT A MERE DETENTION CASE LIKE *JEFFERSON* WHERE

16   THERE WAS NO INTRUSION INTO THE PACKAGE.  THE GOVERNMENT

17   MENTIONS *PLACE*.  *PLACE* SAYS IT'S A SEIZURE NO MATTER HOW

18   BRIEF, IN THE LANGUAGE WE QUOTED.

19      AS TO *HICKS*, AS WE EXPLAINED, THAT'S WHERE THE OFFICER

20   LIFTED IT UP AND TURNED IT OVER AND COPIED THE SERIAL NUMBER

21   OFF THE STEREO EQUIPMENT.  THERE WERE TWO ISSUES THERE.  WAS

22   IT A SEARCH, THE LIFTING AND MOVING?  YES, THE SUPREME COURT

23   HELD.  SECOND QUESTION, WAS THERE A SEIZURE OF THE NUMBER?

24   THE SUPREME COURT HELD NO.

25      IT'S IMPORTANT TO KNOW THOUGH, THAT NUMBER WAS NOT PART OF

1    HICK'S PAPERS.  THAT WAS NOT A COMMUNICATION OR OTHER DOCUMENT

2    THAT HE CREATED.  HE DIDN'T MAKE UP THAT NUMBER.  ALL IT WAS

3    WAS EVIDENCE OF CONTRABAND.  SO IT FALLS INTO THE CONTRABAND

4    CASES.

5         THE -- AND SO ALL THOSE AUTHORITIES ON SEIZURE ARE NOTHING

6    LIKE WHAT'S HAPPENING HERE BECAUSE HERE THERE'S A COMPLETE

7    INTRUSION BECAUSE THE ENTIRE CONTENTS ARE COPIED AND IT IS NOT

8    JUST AN EXTERNAL INSPECTION OF A PACKAGE OR LETTER FOR SIGNS

9    OF CONTRABAND THAT DOESN'T INTRUDE ON THE CONTENT.

10        I WOULD LIKE TO MAKE A BROADER POINT HERE.  THE GOVERNMENT

11   ARGUES NO SEARCH, NO SEIZURE.  WHAT'S THE CONSEQUENCE OF THAT

12   RULE IF THE COURT WERE TO ADOPT IT?

13        THAT RULE WOULD APPLY EQUALLY TO THE OAKLAND POLICE

14   DEPARTMENT, AS IT WOULD TO THE NSA.  IF THERE'S NO SEARCH AND

15   NO SEIZURE, THERE'S NO FOURTH AMENDMENT SCRUTINY OF THOSE

16   ACTIVITIES.

17        WHAT DOES THAT MEAN?  IT MEANS THAT ALL OF OUR

18   COMMUNICATIONS COULD BE CONSTANTLY MONITORED FOR ANY EVIDENCE

19   OF CRIME BECAUSE THERE WOULDN'T BE ANY SEARCH, THERE WOULDN'T

20   BE ANY SEIZURE OF IT.  ONCE THAT EVIDENCE WAS FOUND, THE

21   COMMUNICATION COULD BE SEQUESTERED WITHOUT BEING FURTHER

22   REVIEWED.  THEY COULD USE THE KNOWLEDGE OF WHAT WAS IN IT AS

23   SUPPORT FOR PROBABLE CAUSE TO GET A WARRANT TO LOOK IN THE

24   COMMUNICATION.

25        SO IT'S A COMPLETE BACKDOOR INTO ALL OF OUR COMMUNICATIONS

1    IF --

2              **THE COURT:**  WELL, YOU KNOW, THIS KIND OF GETS A

3    LITTLE BIT INTO THE REALM OF 4TH OF JULY SPEECH.  I DON'T MEAN

4    TO BE DERISIVE.

5         WHAT I MEAN IS, IT'S HARD ENOUGH FOR A DISTRICT COURT TO

6    DISCERN WHAT THE COURTS OF APPEALS AND THE SUPREME COURT ARE

7    TELLING US IS THE LAW, WE DON'T GET VERY MUCH -- VERY DEEPLY

8    INTO POLICY WHAT SHOULD BE THE LAW OR THE CONSEQUENCES OF A

9    PARTICULAR RULING MIGHT BE, ONLY ARE WE CORRECTLY APPLYING THE

10   LAW.

11        SO I THINK WHEN YOU GET AWAY FROM DISCUSSING THE

12   AUTHORITIES AND THE ANALOGIES TO BE DRAWN BY THESE OTHER

13   SITUATIONS, IT BECOMES MORE OF MAYBE AN ARGUMENT TO BE MADE TO

14   A HIGHER COURT OR AUTHORITY THAN THIS COURT.

15        SO I UNDERSTAND YOUR POSITION, AND I AM NOT DEMEANING IT

16   IN ANY WAY OTHER THAN TO SAY IT DOESN'T HELP THE COURT THAT

17   MUCH.

18             **MR. WIEBE:**  I APPRECIATE THAT, YOUR HONOR.  BUT I DO

19   THINK IT IS IMPORTANT FOR US TO LOOK A LITTLE BEYOND THE FOUR

20   CORNERS OF THIS COURTROOM INTO WHAT THE CONSEQUENCES WOULD BE

21   BECAUSE, OBVIOUSLY, IF YOUR HONOR HELD THAT, THAT WOULD BE A

22   SIGNIFICANT RULING THAT OTHER COURTS COULD APPLY.

23        AND I THINK IT'S INTERESTING IN THE *COTTERMAN* CASE, WHICH

24   WE CITE TO THE COURT, ONE OF THE GOVERNMENT'S ARGUMENTS

25   THERE -- THAT WAS A BORDER SEARCH --

1              **THE COURT:**  RIGHT, COMPUTER AT THE BORDER.

2              **MR. WIEBE:**  -- AND THEY DID A VERY EXTENSIVE SEARCH

3     AND -- AND TRIED TO SAY THAT THEY COULD DO IT WITHOUT ANY

4     SUSPICION.  THE NINTH CIRCUIT SAID, NO, YOU NEED REASONABLE

5     SUSPICION.  SO THAT'S THE HOLDING.

6         ONE OF THE GOVERNMENT'S ARGUMENTS WAS, WELL, YOU KNOW, WE

7     HARDLY EVER DO THESE SEARCHES, SO IT'S NOT A BIG DEAL.  AND

8     THE NINTH CIRCUIT'S RESPONSE TO THAT IS, NO, WE HAVE TO QUOTE

9     "LOOK AT THE POTENTIAL FOR A DRAGNET HERE AND CONSIDER THAT".

10        SO I THINK THERE -- THERE IS REASON TO LOOK A LITTLE MORE

11    BROADLY AT THAT.

12        ON *HECKENKAMP*, WE AGREE THAT THAT DOESN'T FEED INTO THE

13    SEARCH OR SEIZURE ANALYSIS HERE.  AND THAT'S EXACTLY OUR VIEW

14    NOW.  IN FACT, WE THINK *HECKENKAMP* ITSELF IS DICTA AND WE

15    THINK THE LAW ESPECIALLY IN *COTTERMAN* HAS MOVED BEYOND THAT

16    SINCE THEN.

17             **THE COURT:**  WHILE I HAVE YOU UP THERE, I WANT TO GO

18    ON TO THE NEXT QUESTION BECAUSE I THINK IT'S A NATURAL SEGUE

19    WHICH HAS TO DO WITH QUESTION NUMBER FIVE, WHICH IS:

20             "ARE PLAINTIFFS' POSSESSORY AND PRIVACY INTERESTS IN

21             THE CONTENTS OF THEIR COMMUNICATIONS APPLICABLE TO

22             THE DUPLICATE COPIES AS WELL AS THE ORIGINAL

23             COMMUNICATIONS WHICH, UNDER THE EVIDENCE IN THE

24             PUBLIC RECORDS, STILL ARRIVE ON TIME?"

25             **MR. WIEBE:**  THE ANSWER IS YES, THE DUPLICATES AND THE

1    COPIES ARE EQUALLY PROTECTED.  AND I THINK IT'S IMPORTANT TO

2    NOTE THAT *COTTERMAN*, THE CASE WE JUST MENTIONED, WAS A CASE

3    WHERE WHAT THE GOVERNMENT WAS ACTUALLY SEARCHING WAS

4    DUPLICATES.  WHAT THEY HAD TAKEN WAS THE LAPTOP, THEY MADE A

5    DUPLICATE OF ITS CONTENTS AND THEN WERE SEARCHING THE

6    DUPLICATES.  THAT'S 709 F. 3D AT 958.

7        THE *GANIAS* CASE, WHICH WE CITE 755 F. 3D AT 127 TO 128,

8    WAS ALSO A SEARCH OF DUPLICATED DATA.  THE GOVERNMENT COPIED

9    THE DATA OFF A COMPUTER AND THEN WAS SEARCHING IT, NOT A

10   SEARCH OF THE ORIGINAL DATA.  AND, AGAIN, THE RIGHT TO

11   PROHIBIT COPYING IS A POSSESSORY INTEREST THE DUPLICATION

12   VIOLATES.

13       AND I'M NOT AWARE OF ANY AUTHORITY SAYING THAT THE

14   GOVERNMENT CAN EVADE THE FOURTH AMENDMENT BY MAKING A

15   DUPLICATE AND SEARCHING THE DUPLICATE RATHER THAN THE

16   ORIGINAL, ANY MORE THAN IT COULD TAKE EVERY LETTER GOING

17   THROUGH THE POST OFFICE, OPEN IT, XEROX IT, SEAL IT BACK UP,

18   GET IT TO ITS RECIPIENT WITHIN THE NORMAL TIME AND SAY -- AND

19   THEN LOOK AT THE XEROX INSTEAD OF THE ORIGINAL AND SAY, WELL,

20   IT ARRIVED ON TIME.  WE ONLY SEARCHED THE DUPLICATE, SO

21   THERE'S NO FOURTH AMENDMENT PROBLEM.

22           **THE COURT:**  THANK YOU.

23       MR. GILLIGAN DO YOU WISH TO RESPOND?

24           **MR. GILLIGAN:**  YES, YOUR HONOR.

25       I THINK THIS WILL BE VERY BRIEF.  WE -- THE COURTS

1    ACTUALLY HAVE DIVIDED ON THE QUESTION, AS CITED IN OUR OPENING

2    BRIEF, AS TO WHETHER THE POSSESSORY INTEREST IN A DUPLICATE OF

3    AN ELECTRONIC -- DUPLICATE, WHETHER DUPLICATED DATA IS THE

4    SAME POSSESSORY INTEREST IN THE DUPLICATED DATA AS THERE IS

5    FOR THE ORIGINAL, BUT FOR PURPOSES OF THIS MOTION, WE ARE

6    NOT -- WE ARE NOT TAKING THAT POSITION.

7        AND AS FAR AS THE GOVERNMENT IS CONCERNED, THE COURT MAY

8    ASSUME THAT THE PLAINTIFFS' POSSESSORY INTEREST, FOR THAT

9    MATTER THE PRIVACY INTEREST IN THE DUPLICATED COMMUNICATION

10   AND THE CONTENTS IS THE EQUIVALENT OF WHAT IT IS IN THE

11   ORIGINALS.

12       JUST A QUICK NOTE ON A REFERENCE MR. WIEBE MADE TO *PLACE*

13   WHERE THE COURT SAID THAT -- SAID THAT EVEN A BRIEF DETENTION

14   OF PROPERTY CAN BE A SEIZURE.  YES, IT CAN BE UNDER ALL THE

15   FACTS AND CIRCUMSTANCES, BUT IT CERTAINLY DID NOT SAY THAT ALL

16   BRIEF DETENTIONS ARE SEIZURES.  THERE EITHER MUST BE IN ALL

17   EVENTS MEANINGFUL INTERFERENCE WITH POSSESSORY INTEREST AND

18   THERE ARE NONE SHOWN HERE ON THE STATE OF FACTS THAT THE

19   PLAINTIFFS WOULD HAVE THIS COURT DECIDE THE CASE ON.

20       **THE COURT:**  WHY DON'T YOU STAY UP THERE BECAUSE I

21   WANT TO START -- I WANT TO MOVE TO -- QUESTION SIX IS REALLY

22   ONE -- PART ONE IS MAINLY, IN THE FIRST INSTANCE, TO THE

23   DEFENDANTS AND PART TWO IS THE PLAINTIFFS.

24           "ON WHAT BASIS DO DEFENDANTS DISPUTE THAT PLAINTIFFS

25           MAINTAIN AN EXPECTATION OF PRIVACY OVER THE CONTENT

```
 1              OF THEIR INTERNET COMMUNICATIONS?"

 2         MR. GILLIGAN:  WELL, YOUR HONOR, HOPEFULLY AT THIS

 3    POINT I HAVE ALREADY MADE CLEAR --

 4         THE COURT:  YOU HAVE.

 5         MR. GILLIGAN:  -- THAT WE DO NOT.

 6       THE REAL QUESTION IS, HAS THAT INTEREST BEEN INFRINGED

 7    UPON.  THE FOURTH AMENDMENT ANALYSIS REQUIRES THE COURT TO

 8    IDENTIFY A LEGITIMATE EXPECTATION OF PRIVACY AND THEN

 9    INFRINGEMENT ON THAT LEGITIMATE EXPECTATION OF PRIVACY.  IT IS

10    THE LATTER, WE SUBMIT, IS MISSING HERE BECAUSE THERE IS NO

11    HUMAN OBSERVATION IN ANYBODY'S COMMUNICATIONS.

12         THE COURT:  WHAT IS YOUR -- LET ME ASK, MR. WIEBE,

13    BECAUSE I THINK I KNOW THE ANSWER TO THE QUESTION, THE SECOND

14    PART OF QUESTION SIX, WHICH IS:

15              "DO PLAINTIFFS SEEK PROTECTION FOR INTERNET SEARCHES

16               AND SOCIAL MEDIA BROWSING OR LIMIT THEIR CLAIM TO THE

17               CONTENT OF THEIR INTERNET COMMUNICATIONS?"

18         MR. WIEBE:  WE DO TAKE THE MORE EXPANSIVE VIEW, YOUR

19    HONOR.  PLAINTIFFS' INTERNET COMMUNICATIONS INCLUDE NOT JUST

20    THEIR EMAILS, BUT BROWSING, SEARCHING, AND OTHER

21    COMMUNICATIONS TRANSMITTED ALL OVER THE INTERNET AND ALL ARE

22    PROTECTED UNDER THE FOURTH AMENDMENT.

23       AND THE SUPREME COURT IN RILEY, FOR EXAMPLE, RECOGNIZED

24    THAT INTERNET SEARCH AND BROWSING HISTORIES ARE PROTECTED BY

25    THE FOURTH AMENDMENT.  THAT'S AT 134 SUPREME COURT AT 2490.
```

1    AND THE NINTH CIRCUIT IN *COTTERMAN* ALSO RECOGNIZED THAT

2    BROWSING HISTORIES ARE PROTECTED UNDER THE FOURTH AMENDMENT

3    ALONG WITH EMAILS AND OTHER ELECTRONIC DATA.  THAT'S 709 F. 3D

4    AT 964 TO '65.

5            **THE COURT:**  ALL RIGHT.  I ASSUME THE GOVERNMENT --

6    MAY I ASSUME, MR. GILLIGAN, THAT THE GOVERNMENT AGREES THAT

7    AND CAN COMMENT WITH THE FIRST PART OF QUESTION SIX, THAT

8    THE -- THAT THE PLAINTIFFS ARE ENTITLED TO FOURTH AMENDMENT

9    PROTECTION FOR INTERNET SEARCHES AND SOCIAL MEDIA BROWSING AS

10   MUCH AS THEIR ACTUAL COMMUNICATIONS?

11           **MR. GILLIGAN:**  YES, YOUR HONOR.  FOR PURPOSES OF THIS

12   MOTION, WHICH IS BEING LITIGATED, IN OUR VIEW, ON THE BASIS OF

13   ALLEGED FACTS, WE ARE NOT CONTESTING THAT PRINCIPLE, AND THAT

14   THE COURT MAY DECIDE THE MATTER ON THE BASIS OF THE OTHER

15   GROUNDS WE ADVANCED.

16           **THE COURT:**  LET'S MOVE TO QUESTION SEVEN THEN.

17   THAT'S VERY HELPFUL.

18       THE QUESTION SAYS THE FOLLOWING, AND I'M GOING TO AGAIN

19   OMIT THE CITATIONS, BUT I WILL REFER TO SUPPLEMENTAL AUTHORITY

20   SUBMITTED BY THE PARTIES.  QUESTION SEVEN SAYS THE FOLLOWING:

21           "THE FOREIGN INTELLIGENCE SURVEILLANCE COURT IN",

22           CASES REDACTED, "FOUND THAT NSA'S TARGETING AND

23           MINIMIZATION PROCEDURES, ALTHOUGH CONSISTENT WITH

24           FISA, WERE NOT REASONABLE UNDER THE FOURTH AMENDMENT.

25           DO THE CHANGES MADE AFTER THE FISA ORDER TO THE

1        UPSTREAM COLLECTION PROGRAM CHANGE ANY OF THE FACTS

2        RELATED TO THE INITIAL COLLECTION AND SEARCH OF

3        INTERNET COMMUNICATIONS OR JUST THEIR RETENTION AND

4        FURTHER SEARCH PROTOCOLS?"

5     THAT'S THE QUESTION.

6     AND THEN JUST BEFORE I GET THE GOVERNMENT'S RESPONSE, THE

7  GOVERNMENT HAS SUBMITTED A DOCUMENT ENTITLED "MINIMIZATION

8  PROCEDURES USED BY NATIONAL SECURITY AGENCY IN CONNECTION WITH

9  ACQUISITIONS OF FOREIGN INTELLIGENCE INFORMATION PURSUANT TO

10 SECTION 702 OF THE FOREIGN INTELLIGENCE SURVEILLANCE ACT OF

11 1978" TO DEMONSTRATE THEIR RESPONSE TO THE FOREIGN

12 INTELLIGENCE SURVEILLANCE COURT'S CONCERNS.

13    SO, WOULD YOU RE-IDENTIFY YOURSELF SINCE YOU HAVEN'T

14 SPOKEN BEFORE?

15        **MR. PATTON:**  YES, YOUR HONOR.

16    RODNEY PATTON FOR THE GOVERNMENT DEFENDANTS.

17        **THE COURT:**  YES.

18        **MR. PATTON:**  THE QUICK ANSWER TO YOUR QUESTION, YOUR

19 HONOR, IS THE PARENTHETICAL THAT YOU HAVE AT THE END OF

20 QUESTION SEVEN, WHICH IS THE CHANGES THAT WERE MADE WERE TO

21 JUST THE FURTHER SEARCH PROTOCOLS AND THE RETENTION.

22    SO, THE CONCERNS THAT ANIMATED THE FISC COURT DEALT WITH

23 CONCERNS ABOUT A PARTICULAR SUBSET OF COMMUNICATIONS THAT WERE

24 RETAINED.  SO IN THE PARLANCE OF WHAT PLAINTIFFS HAVE ALLEGED

25 HERE, THAT WOULD BE STAGE 4.

1    AND AS WE'VE BY NOW REPEATEDLY INDICATED, STAGE 1 AND

2    STAGE 3 ARE WHAT ARE AT ISSUE, AND STAGE 4, THE PLAINTIFFS

3    HAVE SAID IN PAGE 8 AND 9 OF THEIR OPENING BRIEF, IS NOT

4    WHAT'S AT ISSUE.

5         **THE COURT:**  ALL RIGHT.

6         **MR. PATTON:**  SO NONE OF THE CHANGES THAT WERE MADE IN

7    ORDER TO COMPLY WITH THE FISC CONSTITUTIONAL CONCERNS DEALT

8    WITH ANYTHING THAT OCCURS IN SO-CALLED STAGE 1 OR SO-CALLED

9    STAGE 3.

10        **THE COURT:**  MR. WIEBE.

11        **MR. WIEBE:**  AND THAT'S OUR UNDERSTANDING AS WELL.

12   THE MINIMIZATION ALL HAPPENS AFTER STAGE 4, AFTER THE INITIAL

13   COPYING, FILTERING, AND CONTENT SEARCHING FOR SELECTORS AT

14   STAGE 1 AND 3.  AND IT'S STAGE 1 AND 3 THAT PLAINTIFFS' CLAIMS

15   ARE BASED ON.  AND THOSE INITIAL PROCESSES AT STATE 1 AND 3

16   WERE NOT AFFECTED BY THESE CHANGES THAT HAPPENED AFTER

17   STAGE 4.

18        **THE COURT:**  ALL RIGHT.

19    THE NEXT QUESTION IS -- THE PARTIES TO THIS SUIT CAN

20   CERTAINLY -- PLAINTIFF AND DEFENDANT CAN CERTAINLY RESPOND.

21   IT'S -- IT MORE IS RAISED BY THE BRIEF AND ARGUMENTS MADE BY

22   THE AMICUS NATIONAL ASSOCIATION OF DEFENSE LAWYERS.  I DON'T

23   KNOW IF THERE'S ANYBODY HERE WHO WISHES TO ADDRESS IT, BUT

24   PERHAPS -- THIS IS REALLY MORE -- THIS QUESTION, TO THE EXTENT

25   A QUESTION CAN BE DICTUM IN A CASE IS CERTAINLY THAT, AND IT

```
1    WAS A LITTLE BIT OF AN EYE OPENER FOR THE COURT WHAT IS DONE

2    WITH THIS INFORMATION, BUT, AGAIN, TO THE EXTENT THAT YOU --

3    ANYBODY CAN AMPLIFY THE RESPONSE TO THE QUESTION WOULD BE

4    HELPFUL TO THE COURT.

5         QUESTION EIGHT SAYS:

6              "HOW AND UNDER WHAT CIRCUMSTANCES CAN EVIDENCE

7              GLEANED FROM THE UPSTREAM SEARCHES BE CONSIDERED IN

8              CRIMINAL PROSECUTIONS UNRELATED TO MATTERS OF

9              NATIONAL SECURITY?"

10        AND I CITED A REDACTED MATTER.  IT STATES THAT:

11             "NEW MINIMIZATION PROTOCOLS PROVIDE THAT 'DISCRETE

12             NONTARGET COMMUNICATIONS CANNOT BE USED EXCEPT WHEN

13             NECESSARY TO PROTECT AGAINST AN IMMINENT THREAT TO

14             HUMAN LIFE.'"

15        AND THEN IN THE SUPPLEMENTAL AUTHORITIES, THIS IS A LITTLE

16   BIT OF AN EYE OPENER FOR THE COURT, THE GOVERNMENT SUBMITS A

17   REPORT ON MINIMIZATION PROCEDURES WHICH ADDRESSES EVIDENCE

18   UNINTENTIONALLY GATHERED THAT RELATES TO CRIMINAL ACTIVITY, AT

19   PAGE 8, SUCH EVIDENCE QUOTE "MAY BE DISSEMINATED TO

20   APPROPRIATE FEDERAL LAW ENFORCEMENT AUTHORITIES".

21        SO LET ME HEAR FROM THE GOVERNMENT FIRST ABOUT -- IS IT --

22   IS THE COURT'S UNDERSTANDING AS STATED IN THOSE MINIMIZATION

23   PROCEDURES CORRECT, THAT IF THE GOVERNMENT COMES ACROSS

24   EVIDENCE OF DOMESTIC CRIMES INADVERTENTLY, THEN THEY ARE FREE

25   TO THEN TURN THAT OVER TO THE PROSECUTING AUTHORITIES?
```

1     **MR. PATTON:** YOUR HONOR, IT VERY MUCH DEPENDS ON THE

2  KIND OF COMMUNICATION WE ARE TALKING ABOUT. LET ME JUST SAY

3  AS AN INITIAL MATTER, AGAIN, LIKE YOUR HONOR'S LAST QUESTION,

4  THIS DEALS WITH SO-CALLED STAGE 4, COMMUNICATIONS THAT AREN'T

5  RETAINED.

6     SO IT'S NOT ACTUALLY AT ISSUE IN THIS CROSS-MOTIONS.

7  BECAUSE THE CROSS-MOTIONS, AGAIN, DEAL WITH STAGE 1 AND

8  STAGE 3 SO-CALLED, AND THE COMMUNICATIONS THAT ARE AT ISSUE IN

9  THE MINIMIZATION PROCEDURES THAT WERE SUBMITTED ARE ONES

10  ACTUALLY RETAINED BY THE NSA.

11     BUT IN ORDER TO ANSWER YOUR QUESTION, FOR U.S. PERSONS WHO

12  HAVE FOURTH AMENDMENT RIGHTS, THERE ARE REALLY THREE

13  CATEGORIES OF COMMUNICATIONS.

14     THE FIRST IS A COMMUNICATION INVOLVING A U.S. PERSON AND

15  THE COMMUNICATION DOES NOT ACTUALLY CONTAIN THE TARGETED

16  SELECTOR. AND THE QUICK ANSWER TO THAT IS, THE NSA CANNOT

17  DISSEMINATE THAT INFORMATION FOR USE IN A CRIMINAL CASE.

18     THERE'S A VERY, VERY NARROW EXCEPTION WHAT THEY CAN USE

19  THAT FOR, AND THAT'S THE ONLY THING THEY CAN USE IT FOR. IT'S

20  AT THE BOTTOM OF PAGE 5 OF THE MINIMIZATION PROCEDURES, AND

21  THAT IS TO QUOTE "PROTECT AGAINST AN IMMEDIATE THREAT TO HUMAN

22  LIFE" CLOSE QUOTE, SUCH AS A HOSTAGE SITUATION OR FORCED

23  PROTECTION. SO IF THE CATEGORY OF COMMUNICATIONS IS FOUND AND

24  RETAINED BY THE NSA, THAT IS THE ONLY POSSIBLE PURPOSE THAT

25  THAT PARTICULAR KIND OF COMMUNICATION CAN BE USED FOR, NOT IN

1    THE PROSECUTION OF A CRIME, BUT JUST IN ORDER TO ACTUALLY

2    PROTECT AN IMMEDIATE THREAT TO HUMAN LIFE.

3        THE SECOND CATEGORY IS A FOREIGN COMMUNICATION WHERE

4    THERE'S A U.S. PERSON INVOLVED AND THE COMMUNICATION CONTAINS

5    A TASKED SELECTOR.  IF THAT IS THE CASE, THE COMMUNICATION CAN

6    BE DISSEMINATED, DISSEMINATED TO LAW ENFORCEMENT PURPOSES IF,

7    AND THIS IS AT THE -- I AM SORRY, AT THE TOP OF PAGE 11 OF THE

8    NSA MINIMIZATION PROCEDURES -- CAN BE DISSEMINATED IF QUOTE,

9    "IT'S REASONABLY BELIEVED TO BE EVIDENCE THAT A CRIME HAS

10   BEEN, IS BEING, OR IS ABOUT TO" BEING -- "ABOUT TO BE

11   COMMITTED".

12       THEN THE THIRD CATEGORY IS A DOMESTIC COMMUNICATION THAT

13   CONTAINS A TASKED SELECTOR.

14       AND TO LOOK AT THE MINIMIZATION PROCEDURES, I DRAW YOUR

15   ATTENTION TO PAGES 8 AND 9 OF THOSE, WHICH INDICATE THAT WHEN

16   THIS TYPE OF DOMESTIC COMMUNICATION IS AT ISSUE AND IS

17   ACTUALLY BEING SEEN BY AN NSA ANALYST, SUBSEQUENT TO STAGE 4,

18   THAT MUST BE PROMPTLY DESTROYED, THAT COMMUNICATION, UNLESS

19   THE NSA DIRECTOR OR THE ACTING DIRECTOR DETERMINES IN WRITING

20   THAT ONE OF THE ENUMERATED FACTS ARE PRESENT.

21       AND THAT, WITH REGARD TO CRIME, WOULD BE IF ONE OF THOSE

22   CONDITIONS INCLUDES CRIME, IF IT IS REASONABLY BELIEVED TO

23   CONTAIN EVIDENCE OF A CRIME THAT HAS BEEN, IS BEING, OR ABOUT

24   TO BE COMMITTED.  SO THOSE ARE THE SITUATIONS AND CATEGORIES.

25   ONLY TWO OF THOSE RELATE TO DISSEMINATION OF EVIDENCE OF A

1    CRIME.

2        I WILL ADD, THOUGH, THAT THIS IS NOTHING SPECIFIC TO

3    UPSTREAM.  THIS IS COMMON BOTH UPSTREAM AND PRISM, AND, IN

4    FACT, IS BEING IN EFFECT WITH TITLE 1 FISA SINCE 1978.  THE

5    REASON WE KNOW THAT IS WHEN YOU LOOK AT 50 U.S.C. 1801(H)(3),

6    IT DEFINES MINIMIZATION PROCEDURES AS PROCEDURES THAT ALLOW

7    FOR THE RETENTION OF DISSEMINATION OF INFORMATION THAT IS

8    EVIDENCE OF A CRIME.

9        AND THAT -- THAT DEFINITION IS INCORPORATED INTO SECTION

10   702 WHICH IS CODIFIED AT 50 U.S.C. 1881(A).  SUBSECTION (E)

11   SAYS THAT THE MINIMIZATION PROCEDURES ADOPTED MUST BE

12   COMPLIANT WITH THAT DEFINITION.  THEREFORE, CONGRESS HAS

13   REQUIRED US TO INCLUDE DISSEMINATION OF EVIDENCE OF A CRIME IN

14   THOSE LIMITED CIRCUMSTANCES.

15       OF COURSE, AS YOUR HONOR KNOWS, I THINK, FROM SOME OF THE

16   1806(F) BRIEFING, THAT THAT IS OBVIOUSLY NOT THE END OF THE

17   MATTER WHETHER IT CAN BE DISSEMINATED FOR THAT PURPOSE.  IF IT

18   IS ACTUALLY GOING TO BE USED IN A CRIMINAL PROSECUTION, THE

19   ATTORNEY GENERAL HIMSELF MUST MAKE A DETERMINATION AND

20   AUTHORIZE THAT USE IN A CRIMINAL CASE.  AND IF IT'S GOING TO

21   BE USED AFFIRMATIVELY AGAINST A CRIMINAL DEFENDANT, THAT

22   CRIMINAL DEFENDANT MUST BE PROVIDED NOTICE UNDER 1806(C), AND

23   THEN WHAT HAPPENS AFTER THAT WOULD BE A MOTION TO SUPPRESS

24   UNDER 1806(E), AND POTENTIALLY AN EX PARTE HEARING UNDER

25   1806(F).

1        **THE COURT:**  ALL RIGHT.

2        **MR. PATTON:**  THOSE ARE THE CIRCUMSTANCES OF HOW THAT

3   CAN ALL OCCUR.

4        BUT TO REITERATE, THIS IS NOTHING NEW FOR UPSTREAM

5   COLLECTION.  IT'S NOT UNIQUE TO 702.  IT EXISTS IN FISA AND

6   THERE'S A GOOD REASON FOR IT.

7        JUST BECAUSE WE MIGHT COLLECT FOREIGN INTELLIGENCE

8   INFORMATION OR INFORMATION THAT WE ARE TARGETING AND ACQUIRING

9   FOR FOREIGN INTELLIGENCE PURPOSES, DOESN'T REQUIRE US TO BE

10  BLIND TO EVIDENCE OF, FOR EXAMPLE, PROSECUTING A TERRORIST OR

11  PROSECUTING AN ESPIONAGE CASE.

12       BEAR IN MIND, WHEN YOUR -- YOUR HONOR'S QUESTION WAS CRIME

13  UNRELATED TO THAT, HOW OFTEN THIS OCCURS, I'M NOT SURE EXACTLY

14  OR WHETHER THAT ANSWER WOULD BE CLASSIFIED, BUT BEARING IN

15  MIND THAT THE ATTORNEY GENERAL OF THE UNITED STATES HAS TO

16  MAKE A DECISION WHETHER THAT CAN BE USED IN A CRIME, YOUR

17  HONOR CAN DRAW HIS OWN CONCLUSIONS WHETHER THAT'S GOING TO BE

18  A SHOPLIFTING CASE OR SOMETHING LIKE THAT.

19       **THE COURT:**  ALL RIGHT.

20       MR. WIEBE, I DON'T KNOW IF YOU HAVE A DOG IN THAT RACE,

21  BUT IF YOU WISH TO COMMENT, YOU CERTAINLY CAN.

22       **MR. WIEBE:**  I WOULD LIKE TO, YOUR HONOR.

23       **THE COURT:**  YES.

24       **MR. WIEBE:**  I THINK THE NET EFFECT IS THAT AT A BIG

25  PICTURE LEVEL, THE COURT GOT IT RIGHT IN ITS QUESTION; THAT

1    IS, THAT THE GENERAL RULE UNDER THE MINIMIZATION PROCEDURES IS

2    THAT COMMUNICATIONS WITH EVIDENCE OF ORDINARY CRIME CAN BE

3    USED IN CRIMINAL INVESTIGATIONS AND PROSECUTIONS.

4        AS THE GOVERNMENT EXPLAINS, THERE IS THIS EXCEPTION FOR

5    COMMUNICATIONS IN STAGE 4 THAT ARE NOT TO OR FROM A SELECTOR

6    AND DON'T CONTAIN THE SELECTOR TERMS, BUT THAT ARE TO OR FROM

7    A U.S. PERSON.  THESE ARE COMMUNICATIONS THAT WERE NEVER

8    SUPPOSED TO HAVE MADE IT DOWN TO STAGE 4, AS THE FISC OPINION

9    EXPLAINS, BUT -- BUT THAT IMMINENT THREAT TO HUMAN LIFE

10   LIMITATION THAT THE COURT QUOTES APPLIES ONLY TO THAT SUBSET

11   OF COMMUNICATIONS.

12       AND, IN FACT, THE PCLOB REPORTS THAT THE FBI SEARCHES

13   THROUGH THESE COMMUNICATIONS THAT MAKE IT TO STAGE 4 AS A

14   QUOTE "ROUTINE PRACTICE IN CRIMINAL INVESTIGATIONS".  THAT'S

15   AT PAGE 137 OF THE PCLOB REPORT.

16       **THE COURT:**  ALL RIGHT.  LET'S MOVE ON.

17   DO YOU WANT TO RESPOND?

18       **MR. PATTON:**  THERE'S AN EXTREMELY IMPORTANT POINT ON

19   THAT.

20       FIRST, I WOULD NOTE AGAIN THAT THE MOTIONS BEFORE THE

21   COURT DEAL WITH STAGE 1 AND STAGE 3.  SO THIS IS ABSOLUTELY

22   IRRELEVANT FOR THEIR MOTION.

23       BUT MORE IMPORTANTLY, THE CITE TO THE PCLOB REPORT THAT

24   MR. WIEBE IS TALKING ABOUT DOESN'T ACTUALLY RELATE TO UPSTREAM

25   COLLECTION.  AND THEIR MOTION DEALS ONLY WITH UPSTREAM

1    COLLECTION.  THEY SAID THIS MOTION DOES NOT RELATE TO PRISM.

2    AND ON PAGE 6, FOOTNOTE 17 OF THE FISC OPINION THAT YOUR HONOR

3    CITES, THE COURT EXPRESSLY INDICATES THAT THE FBI DOES NOT GET

4    RAW UNMINIMIZED TAPE FROM UPSTREAM COLLECTION.

5       SO THE INFORMATION, BASICALLY IN ENGLISH, THAT WE ARE

6    TALKING ABOUT HERE IN THE NSA'S DATABASES IS NOT PROVIDED --

7    THE EXACT SAME THING IS NOT WHAT THE FBI CAN LOOK AT.  SURE,

8    THEY CAN LOOK AT DISSEMINATED INFORMATION THAT FITS WITHIN THE

9    CATEGORIES THAT I TALKED ABOUT, BUT THEY CAN'T JUST SEARCH THE

10   SAME DATABASES AS THE NSA.

11       **THE COURT:**  I THINK WHAT WE ARE GOING TO DO NOW IS

12   TAKE ANOTHER SHORT BREAK.  WE HAVE A COUPLE OF QUESTIONS LEFT.

13   SO THIS IS PROBABLY A GOOD POINT TO BREAK.  WE ARE GOING TO

14   GET INTO SOME IMPORTANT ISSUES -- WELL, THEY ARE ALL

15   IMPORTANT, BUT REALLY IMPORTANT ISSUES.

16       SO LET'S TAKE ANOTHER 10, 15 MINUTES, AND THEN WE'LL COME

17   BACK AND COMPLETE OUR PROCEEDINGS TODAY.

18       THANK YOU.

19       **MR. WIEBE:**  THANK YOU, YOUR HONOR.

20       (RECESS TAKEN AT 12:02 P.M.; RESUMED AT 12:20 P.M.)

21       **THE CLERK:**  REMAIN SEATED.  COME TO ORDER.  COURT IS

22   AGAIN IN SESSION.

23       **THE COURT:**  ALL RIGHT.  WE ARE BACK ON THE RECORD,

24   AND WE ARE GOING TO MOVE ON TO QUESTION NUMBER NINE, WHICH,

25   ACTUALLY, WHEN I WORKED ON THIS QUESTION, I THOUGHT THIS WOULD

1    BE KIND OF UNREMARKABLE OR NOT DISPUTED VERY MUCH.  APPARENTLY

2    IT IS, BUT MAYBE IT'S NOT AT THIS POINT.

3        SO QUESTION NUMBER NINE SAYS:

4            "WHICH PARTY BEARS THE BURDEN TO PROVE THE EXISTENCE

5            OF A MINIMAL INTRUSION INTO PLAINTIFFS' PRIVACY

6            RIGHTS AND A SUBSTANTIAL AND A GOVERNMENTAL NEED?"

7        AND I CITE THE *CHANDLER VERSUS MILLER* CASE.  AND THEN

8    THERE'S SUPPLEMENTAL AUTHORITIES PRESENTED BY BOTH SIDES.

9    THIS IS THE COURT'S KIND OF TAKE-AWAY FROM THESE AUTHORITIES.

10       THE PLAINTIFFS SUBMITS *COOLIDGE VERSUS NEW HAMPSHIRE*, 403

11   U.S. 443 AT 454 THROUGH '55, 1971, U.S. SUPREME COURT FOR THE

12   PROPOSITION THAT THE BURDEN IS ON THE GOVERNMENT.  THE PARTIES

13   SEEKING THE EXEMPTION MUST SHOW THE NEED FOR IT.

14       THE GOVERNMENT SUBMITS THE AMERICAN FEDERAL -- FEDERAL --

15   *AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES*

16   *VERSUS SCOTT*, 717 F.3D 851 AT 880 THROUGH '82, AN ELEVENTH

17   CIRCUIT DECISION IN 2013 FOR THE PROPOSITION THAT THE PARTY

18   MOVING FOR SUMMARY JUDGMENT HAS THE BURDEN OF GOING FORWARD

19   AND THE BURDEN OF PERSUASION, ALTHOUGH IN WARRANTLESS SEARCH

20   CASES, THE GOVERNMENT HAS THE BURDEN TO MAKE SPECIAL NEEDS

21   SHOWING, AND THE COURT MUST CONDUCT THE SPECIAL NEEDS

22   BALANCING TEST.

23       AND FINALLY IN THE SUPPLEMENTAL AUTHORITIES, THE PLAINTIFF

24   ALSO SUBMITS *U.S. VERSUS FOWLKES*, F-O-W-L-K-E-S, 770 F.3D 748

25   AT 756 THROUGH 757, A NINTH CIRCUIT DECISION DECIDED IN

1    2000 -- THIS YEAR, 2014 FOR THE PROPOSITION THAT AN INTRUSIVE

2    WARRANTLESS SEARCH IN THIS CASE -- IN THAT CASE A CAVITY

3    SEARCH OF A PRISONER, DOES NOT MEET THE SPECIAL NEEDS

4    EXCEPTION.  QUOTE:

5              "UNDER THE SPECIAL NEEDS EXCEPTION SUSPICIONLESS

6              SEARCHES MAY BE UPHELD IF THEY ARE CONDUCTED FOR

7              IMPORTANT, NON-LAW ENFORCEMENT PURPOSES IN CONTEXT

8              WHERE ADHERENCE TO THE WARRANT AND PROBABLE CAUSE

9              REQUIREMENT WOULD BE IMPRACTICABLE", UNQUOTE.

10    THE COURTS MUST BALANCE THE NEED FOR THE PARTICULAR SEARCH

11    WITH THE INVASION OF PERSONAL RIGHTS THAT THE SEARCH ENTAILS.

12        SO STARTING WITH THE PLAINTIFF, WHICH PARTY BEARS THE

13    BURDEN, AND WHY?

14        **MR. WIEBE:**  YOUR HONOR, THE GOVERNMENT IS THE PARTY

15    ARGUING FOR THE EXCEPTION OF THE WARRANT REQUIREMENT BEARS THE

16    BURDEN.

17        THERE'S SOME OTHER LANGUAGE FROM *FOWLKES* THAT YOUR HONOR

18    DID NOT CITE, WHICH I WANT TO BE CERTAIN COMES TO THE COURT'S

19    ATTENTION.  AND THIS IS AT PAGES -- FIRST 756, THE *FOWLKES*

20    CASE SAYS, QUOTE:

21              "THE GOVERNMENT BEARS THE BURDEN OF DEMONSTRATING

22              THAT AN EXCEPTION TO THE WARRANT REQUIREMENT EXISTS

23              IN ANY GIVEN CASE."

24        AND IT GOES ON THEN TO DISCUSS SPECIFICALLY THE SPECIAL

25    NEEDS EXCEPTION AT PAGE 757 AND SAYS, QUOTE:

1              "TO MEET ITS BURDEN OF PROVING THAT THE SPECIAL NEEDS

2              EXCEPTION JUSTIFIES THIS SEARCH, THE GOVERNMENT MUST

3              DEMONSTRATE THAT ITS INTERESTS WERE SUFFICIENT TO

4              OUTWEIGH THE CONSTITUTIONAL RIGHTS OF THE ARRESTEE."

5       AND AS YOUR HONOR -- THE PASSAGE YOUR HONOR QUOTED FROM

6  *COOLIDGE* STATES, IT'S TO THE SAME EFFECT, THE GOVERNMENT BEARS

7  THE BURDEN.

8       AND THAT'S AS IT SHOULD BE.  WARRANTLESS, SUSPICIONLESS

9  SEARCHES ARE PRESUMED UNREASONABLE.  THAT'S JACOBSEN, 466 U.S.

10  AT 114.  AND AS THE PARTY CHALLENGING THE PRESUMPTION, IT

11  SHOULD BE THE GOVERNMENT'S BURDEN.

12       IN A WAY, IT'S SIMILAR TO HOW WE TREAT AFFIRMATIVE

13  DEFENSES.

14       AND WE RELY THE NINTH CIRCUIT AUTHORITY OF *FOWLKES* AND THE

15  SUPREME COURT AUTHORITY OF *COOLIDGE*, BUT I THINK THE ELEVENTH

16  CIRCUIT, ALTHOUGH IT SETS UP A LITTLE MORE COMPLICATED

17  STRUCTURE, I THINK IT -- IT ENDS UP PRETTY MUCH AT THE SAME

18  POSITION.  IT PUTS THIS INITIAL BURDEN ON THE PLAINTIFF, BUT

19  IT IS ONLY A BURDEN TO SHOW THERE WAS A SEARCH WITHOUT

20  INDIVIDUALIZED SUSPICION.

21       AND THEN AT THAT POINT IT BECOMES THE GOVERNMENT'S BURDEN

22  TO MAKE A SHOWING OF THE EXCEPTION.  SO I DON'T THINK THERE'S

23  REALLY A LOT OF DIFFERENCE BETWEEN THE TWO, BUT OBVIOUSLY

24  WE'RE IN THE NINTH CIRCUIT, AND I THINK THAT SHOULD CONTROL.

25              **THE COURT:**  ALL RIGHT.

1      DO YOU AGREE WITH THE CONCEPT THAT THE GOVERNMENT BEARS

2  THE BURDEN OF SHOWING SPECIAL NEEDS?

3          **MR. PATTON:**  IN A CRIMINAL CASE, YOUR HONOR.  WE

4  DON'T DISAGREE WITH ANYTHING MR. WIEBE HAS SAID ABOUT THE

5  BURDEN ON A CRIMINAL CASE.  THAT IS AS IT SHOULD BE.  THE

6  GOVERNMENT IN A CRIMINAL CASE IS THE PLAINTIFF, IF YOU WILL,

7  AND THEY MUST PROVE THAT SEARCHES AND SEIZURES ARE

8  CONSTITUTIONAL, AND REASONABLY -- REASONABLE UNDER THE FOURTH

9  AMENDMENT.  THAT IS AS IT SHOULD BE.

10     WE HAVE A CIVIL CASE HERE.  AND IT'S THE EXACT OPPOSITE.

11  PLAINTIFFS MUST PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT

12  AN UNCONSTITUTIONAL SEARCH AND SEIZURE, AN UNREASONABLE SEARCH

13  AND SEIZURE APPLIES.

14     SO IF YOU GET TO THIS QUESTION, YOUR HONOR, YOU HAVE

15  ALREADY DECIDED THAT THE COURT FINDS THAT THE PLAINTIFFS HAVE

16  MET THEIR BURDEN, UNDERSTANDING, TO ASSERT THE FOURTH

17  AMENDMENT CLAIM TO BEGIN WITH, SECONDLY, THAT THEY HAVE BORNE

18  THEIR BURDEN OF INDICATING A MEANINGFUL INTERFERENCE WITH

19  THEIR POSSESSORY INTERESTS AND AN INVASION OF THEIR PRIVACY

20  RIGHT, AT THAT POINT WHEN THEY HAVE DONE THAT, THE BURDEN, AND

21  I WANT TO BE VERY SPECIFIC HERE, THE BURDEN OF PRODUCTION --

22  MR. WIEBE AND THE OTHER COURTS ARE TALKING ABOUT WHAT THE

23  BURDEN IS -- THE BURDEN OF PRODUCTION THEN SHIFTS TO THE

24  GOVERNMENT IN A CIVIL ACTION, AS IT SHOULD UNDER FEDERAL RULE

25  OF EVIDENCE 103 THAT DISCUSSES CIVIL BURDENS -- OR BURDENS IN

```
1    A CIVIL CASE.

2        THE BURDEN THEN SHIFTS TO THE GOVERNMENT TO PRODUCE

3    EVIDENCE, WHICH WE HAVE DONE HERE, THAT THE SPECIAL NEEDS

4    BEYOND ORDINARY LAW ENFORCEMENT IN CIRCUMSTANCES WHERE A

5    WARRANT REQUIREMENT WOULD BE IMPRACTICABLE, THAT'S NUMBER ONE

6    WE HAVE TO PRODUCE EVIDENCE ON, AND NUMBER TWO, WE HAVE TO

7    PRODUCE EVIDENCE THAT THE SPECIAL NEEDS OUTWEIGHS THE

8    INTRUSIONS THAT PLAINTIFFS HAVE SAID.

9        SO ONCE WE HAVE PRODUCED THAT EVIDENCE, THE CASE CAN GO

10   FORWARD.  THE ENTIRE TIME THE BURDEN OF PERSUASION REMAINS, AS

11   IT SHOULD, WITH PLAINTIFFS WHO HAVE TO PROVE AN UNREASONABLE

12   SEARCH AND SEIZURE.

13       OBVIOUSLY IN THE PROCEDURAL POSTURE, WE HAVE IN THIS CASE

14   WITH CROSS-MOTIONS FOR SUMMARY JUDGMENT, THERE IS THE

15   ADDITIONAL COMPLICATED WRINKLE THAT IN PLAINTIFFS' MOTION, ALL

16   OF THE INFERENCES, REASONABLE INFERENCES FROM THE FACTS MUST

17   BE TAKEN IN THE LIGHT MOST FAVORABLE TO THE GOVERNMENT, AND

18   THE GOVERNMENT'S CROSS-MOTION, THE OPPOSITE IS TRUE.

19           THE COURT:  DO YOU AGREE WITH ALL THAT?

20           MR. WIEBE:  I'M NOT SURE, YOUR HONOR.  I'M NOT SURE

21   IF WE ARE DISAGREEING OR NOT.

22       IT SEEMS TO ME THAT WHAT I HEAR THE GOVERNMENT SAYING IS

23   THAT THEY NEED TO PUT IN EVIDENCE TO PROVE UP THE SPECIAL

24   NEEDS EXCEPTION.  AND IF THEY'RE SAYING THAT THEY NEED TO DO

25   LESS THAN THAT OR WE NEED TO DO MORE, I DON'T THINK THAT'S
```

1    REALLY WHAT *SCOTT* SUPPORTS.

2        WHAT *SCOTT* SAID IS THAT -- *SCOTT* IS THE ELEVENTH CIRCUIT

3    CASE.

4             **THE COURT:**  *FOWLKES*, I THINK, IS THE NAME.

5             **MR. WIEBE:**  *FOWLKES* IS THE NINTH CIRCUIT CASE WE RELY

6    ON.

7             **THE COURT:**  OH, I AM SORRY, THAT'S RIGHT.

8             **MR. WIEBE:**  *SCOTT* IS THE ELEVENTH CIRCUIT CASE THE

9    GOVERNMENT RELIES ON.

10            **THE COURT:**  *AMERICAN* FEDERAL -- *FEDERATION OF STATE,*

11   *COUNTY AND MUNICIPAL EMPLOYEES V. SCOTT*.  YES, YOU'RE RIGHT.

12            **MR. WIEBE:**  I AM SORRY.  I WAS TRYING TO AVOID THAT

13   MOUTHFUL.

14            **THE COURT:**  YES.  SO YOU WOULDN'T MAKE THE SAME GAFFE

15   THAT I DID.

16        GO AHEAD.

17            **MR. WIEBE:**  ANYWAY, WHAT *SCOTT* SAYS IS THAT THE

18   INITIAL BURDEN ON THE PLAINTIFFS IS QUOTE, "TO PROVE THERE WAS

19   A SEARCH", WHICH HAS NOTHING TO DO WITH SPECIAL NEEDS.

20        AND, TWO, IT WAS CONDUCTED WITHOUT INDIVIDUALIZED

21   SUSPICION, WHICH, AGAIN, DOESN'T HAVE ANYTHING TO DO WITH THE

22   SPECIAL NEEDS EXCEPTION.  AND THAT'S AT PAGE 880, 717 F. 3D

23   880.

24        AND THEN IT GOES ON TO SAY THAT ONCE PLAINTIFFS HAVE DONE

25   THAT, THERE'S A SHIFTED BURDEN OF PRODUCTION, AND THE

1   GOVERNMENT NEEDS TO COME FORWARD PROVING -- PRODUCING EVIDENCE

2   TO -- SUFFICIENT TO SUSTAIN THE SPECIAL NEEDS EXCEPTION.

3        AND THEN AT THE END, I THINK IT'S ALMOST TREATING THE

4   ULTIMATE DETERMINATION AS A LEGAL QUESTION FOR THE COURT,

5   WHICH I THINK IT IS A FAIR THING TO SAY.

6        SO I'M NOT SURE THERE'S MUCH DAYLIGHT BETWEEN THE

7   POSITIONS HERE.  ONE THING I WILL PUSH BACK AGAINST IS THE

8   NOTION THAT THE GOVERNMENT HAS A LESSER BURDEN HERE THAN IT

9   WOULD IN A CRIMINAL CASE.

10       I MEAN, THE CONSEQUENCE OF THAT WOULD BE TO GIVE -- GIVE

11  THE GUILTY MORE FOURTH AMENDMENT RIGHTS OR AT LEAST CRIMINAL

12  DEFENDANTS MORE FOURTH AMENDMENT RIGHTS THAN INNOCENT

13  AMERICANS LIKE THE PLAINTIFFS HERE.  AND THAT JUST CAN'T BE

14  RIGHT.

15            **THE COURT:**  ALL RIGHT.  LET'S MOVE ON TO QUESTION

16  NUMBER TEN, WHICH, TO SOME EXTENT, IS WHERE THE RUBBER MEETS

17  THE ROAD HERE.

18       SO THE QUESTION IS, AND THEN I WILL HAVE A COMMENT ABOUT

19  IT:

20            "IF HAVING REVIEWED THE GOVERNMENT'S MOST RECENT

21            CLASSIFIED SUBMISSIONS, THE COURT DETERMINES THAT

22            LITIGATION OF DEFENSES TO THE CLAIM OF FOURTH

23            AMENDMENT VIOLATIONS WOULD INDEED IMPERIL NATIONAL

24            SECURITY INFORMATION PROTECTED BY THE STATE SECRETS

25            PRIVILEGE, MUST THE COURT DISMISS THE CLAIM IN ITS

1        ENTIRETY?"

2        NOW, WHAT I WANT TO SAY WITHOUT -- IN A VERY SORT OF

3   GENERAL AND HIGH-LEVEL WAY OF COMMUNICATING THAT DOESN'T IN

4   ANY WAY GET INTO CLASSIFIED INFORMATION, WHAT THE

5   GOVERNMENT -- THE GOVERNMENT HAS GIVEN THE COURT ITS

6   CLASSIFIED SUBMISSIONS CONSISTING OF FACTUAL STATEMENTS

7   EVIDENCE AND LEGAL ARGUMENT, WHICH IS THE BRIEF THAT WAS

8   REQUESTED TO BE STRICKEN AND WHICH I DENIED, TO BASICALLY

9   PRESENT TO THE COURT THE PARADIGM OF, IF THE CASE GOES

10  FORWARD, FACTUALLY AND LEGALLY WHAT WOULD THE GOVERNMENT NEED

11  TO DO TO DEFEND THE CASE AT THE NEXT -- WHATEVER THE NEXT

12  LEVEL OR LEVELS WERE, THAT THE REVELATION OF THAT INFORMATION

13  WOULD DO GRAVE HARM TO THE NATIONAL SECURITY OF THE UNITED

14  STATES.

15      SO, I'M GOING TO PUT THIS TO THE PLAINTIFFS FIRST BECAUSE

16  YOU HIGHLIGHTED AT THE BEGINNING OR TELEGRAPHED THAT YOU HAD A

17  SUGGESTION ON HOW TO DEAL WITH THAT, BUT IS THE -- IS THE --

18  THE CONCEPT IS A LITTLE BIT OF AN ARGUMENTATIVE LEADING

19  QUESTION, AND THEY DICTATE THE ANSWER, BUT WHAT IS THE ANSWER

20  TO THE QUESTION.

21      DO YOU AGREE WITH THAT CONCEPT?

22      **MR. WIEBE:**  IF -- THAT IF HAVING REVIEWED THE

23  SUBMISSIONS THAT THE COURT HAS RECEIVED AT THIS POINT IN TIME

24  IN DECIDING THEY ARE RELEVANT TO A POTENTIAL DEFENSE BY THE

25  GOVERNMENT, MUST THE COURT DISMISS IT?  THE ANSWER IS CLEARLY

1    NO.

2        I HAVE FOUR POINTS I WOULD LIKE TO MAKE, AND LET ME GO

3    THROUGH THOSE WITH YOU.

4            **THE COURT:**  ALL RIGHT.

5            **MR. WIEBE:**  FIRST POINT IS, CONGRESS, IN SECTION

6    1806(F) HAS REQUIRED THAT COURTS DECIDE THE LAWFULNESS OF

7    ELECTRONIC SURVEILLANCE RATHER THAN DISMISS CASES.  THE

8    GOVERNMENT COULD, BUT SO FAR HAS CHOSEN NOT TO, SUBMIT SECRET

9    EVIDENCE IN ITS DEFENSE FOR CONSIDERATION ON THE MERITS

10   PURSUANT TO SECTION 1806(F).

11       NOW, THE COURT HAS ALREADY HELD THAT SECTION 1806(F)

12   APPLIES TO STATUTORY CLAIMS.  CONGRESS SAID IT ALSO APPLIES TO

13   CONSTITUTIONAL CLAIMS IN THE LEGISLATIVE HISTORY THAT WE'VE

14   CITED YOU, AND THAT WAS IN OUR FOUR QUESTIONS BRIEF, ECF-177

15   AT FIVE.  THE DC CIRCUIT SAID THE SAME THING IN THE *BARR* CASE,

16   THE *ACLU VERSUS BARR* CASE 952 F.2D AT 465, NOTE 7.

17       AND I DON'T WANT TO MISCHARACTERIZE ANYTHING HERE, BUT IN

18   THE RESPONSE TO THE FOUR QUESTIONS, THE GOVERNMENT SAID THAT

19   ESSENTIALLY THE COURT'S RATIONALE FOR APPLYING IT TO -- TO THE

20   1806(F) TO STATUTORY CLAIMS, THAT RATIONALE WOULD APPLY

21   EQUALLY TO CONSTITUTIONAL CLAIMS.

22       AND SO THAT'S THE LAW.  LET'S TURN TO HOW WOULD THAT

23   PRACTICALLY APPLY HERE, BECAUSE I THINK THAT'S REALLY THE GIST

24   OF THE QUESTION, HOW DO I, AS A FEDERAL JUDGE, SIT HERE AND

25   DECIDE THE MERITS AND ADDRESS THE GOVERNMENT'S NATIONAL

1   SECURITY CONCERNS.

2       WE THINK 1806(F) WOULD WORK SAFELY HERE.  LET'S DRILL DOWN

3   A BIT AND SEE EXACTLY WHERE WE ARE.

4       FIRST OF ALL, IF THE GOVERNMENT -- THERE'S TWO POSSIBLE

5   OUTCOMES TO OUR MOTION.  IF THE COURT GRANTS OUR MOTION, BASED

6   ON THE GOVERNMENT'S POSITION HERE WHICH IS THAT ONLY PUBLIC

7   EVIDENCE SHOULD BE CONSIDERED, BY GRANTING THE MOTION, IT

8   WOULD BE DOING SO ON THE BASIS OF THE PUBLIC EVIDENCE WE HAVE

9   PRESENTED TO YOU.  AND SO DECIDING THE CASE JUST ON THE PUBLIC

10  EVIDENCE WOULD NOT REVEAL ANY NATIONAL SECURITY EVIDENCE OR

11  HARM NATIONAL SECURITY.

12      IF THE GOVERNMENT TAKES THE CHOICE THAT THE COURT HAS

13  GIVEN IT TO INVOKE SECTION 1806(F) AND SUBMIT SECRET EVIDENCE

14  ON THE MERITS FOR YOUR CONSIDERATION ON THE MERITS, LET'S

15  THINK ABOUT WHAT WOULD HAPPEN THEN.

16      IF THE COURT DECIDES THAT THIS SECRET EVIDENCE ACTUALLY

17  PROVES UP A DEFENSE OF THE GOVERNMENT, IT CAN ISSUE A SIMPLE

18  DENIAL OF OUR CLAIM ON THE PUBLIC RECORD TOGETHER WITH A

19  CLASSIFIED OPINION EXPLAINING ITS REASONING.  A PUBLIC RECORD

20  DENIAL OF OUR MOTION WOULD NOT REVEAL ANY SECRETS, IT WOULDN'T

21  REVEAL THE BASIS FOR THE COURT'S REASONING OR ITS DECISION.

22      AND THAT'S ESPECIALLY TRUE HERE BECAUSE THE GOVERNMENT HAS

23  PUT FORWARD NONSECRET REASONS WHY THEY ARGUE WE SHOULD LOSE

24  EVEN APART FROM ANY SECRET EVIDENCE.  SO JUST, YOU KNOW,

25  PLAINTIFFS' MOTION DENIED TELLS THE WORLD NOTHING ABOUT THE

1    CONTENT OF THAT SECRET EVIDENCE.

2       AND LIKEWISE, THE -- SO SECTION 1806(F), YOU KNOW,

3    TOGETHER WITH THE POTENTIAL USE OF A CLASSIFIED OPINION, TO

4    THE EXTENT IT'S ABSOLUTELY NECESSARY, WOULD ALLOW THE COURT TO

5    CONSIDER BOTH SECRET AND PUBLIC EVIDENCE AND DECIDE THE MERITS

6    OF THE CASE.

7       BUT IF THE GOVERNMENT DOES USE 1806(F), IT'S -- IT MUST

8    PUT FORWARD, IN THE WORDS OF THE STATUTE, ALL OF THE MATERIALS

9    NECESSARY TO DETERMINE THE LAWFULNESS OF THE SURVEILLANCE.  IT

10   CAN'T CHERRY PICK THE EVIDENCE AND ONLY PUT A SLANTED VIEW OF

11   THE WORLD BEFORE YOUR HONOR.

12      BUT THE GOVERNMENT, FOR WHATEVER REASON, SO FAR AS NOT

13   INVOKED 1806(F) HERE.  THUS, NEITHER THE STATE SECRETS

14   PRIVILEGE, BECAUSE IT IS PREEMPTED BY 1806(F), NOR 1806(F)

15   ITSELF, BECAUSE IT'S NOT YET INVOKED, COME INTO PLAY IN THIS

16   MOTION AT THIS TIME.  AND AS THE PARTIES AGREE, THE

17   GOVERNMENT -- THE COURT, AT THIS POINT, SHOULD NOT BE

18   CONSIDERING SECRET EVIDENCE IN DETERMINING THE MERITS OF THE

19   MOTION.  SO THAT'S -- THAT IS THE PATHWAY DOWN 1806(F).

20   THAT'S MY FIRST POINT.

21      MY SECOND POINT GOES TO THE STATE SECRETS PRIVILEGE, EVEN

22   CONSIDERED APART FROM 1806(F), WHICH IS, THE ORDINARY

23   PRINCIPLE, AS WE DISCUSSED EARLIER, YOUR HONOR, IS THAT

24   PRIVILEGED EVIDENCE IS EXCLUDED AND THE CASE GOES FORWARD

25   WITHOUT IT.  THAT'S WHAT ALL THE CASES SAY.

1    THEY, IN THEIR PAPERS, INVOKE THE SO-CALLED VALID DEFENSE

2    EXCEPTION, WHICH WE BRIEFED NOT ONLY IN OUR PAPERS HERE, IN

3    OUR REPLY BRIEF AT PAGE 33, BUT ALSO IN ECF-112 AT 14 TO 16.

4    THAT'S OUR REPLY WAY BACK ON THE 1806(F) SUMMARY JUDGMENT

5    MOTION.

6    AND OUR POSITION IS THAT THE VALID DEFENSE EXCEPTION

7    DOESN'T APPLY, AS IT IS LIMITED TO GOVERNMENT CONTRACTING

8    CASES.  AND THAT IS THE GIST OF THE *GENERAL DYNAMICS* CASE,

9    WHICH WE CITED TO YOU.

10   BUT EVEN UNDER THE VALID DEFENSE EXCEPTION, IF IT DID

11   APPLY HERE, THE COURT WOULD HAVE TO DETERMINE -- AND, AGAIN,

12   WE ARE ASSUMING, CONTRARY TO YOUR HONOR'S EARLIER RULINGS,

13   THAT 1806(F) WOULDN'T APPLY HERE, SO THIS IS ALL

14   COUNTERFACTUAL.

15   ASSUMING THAT 1806(F) DIDN'T APPLY, EVEN UNDER THE STATE

16   SECRETS PRIVILEGE, THE GOVERNMENT WOULD HAVE TO PROVE UP A

17   DEMONSTRABLY VALID DEFENSE.  AND THAT'S THE *JEPPESEN* CASE, 614

18   F. 3D AT 1083, AND THE DC CIRCUIT'S *IN RE SEALED CASE*

19   DECISION, 494 F. 3D AT 149 TO 153.

20   AND WE DISCUSS THIS IN OUR REPLY BRIEF AT 33 -- PAGE 33.

21   AND ALSO IN OUR ECF-112, THE EARLIER BRIEFING ON 1806(F) AT

22   PAGES 28 TO 29.

23   SO, TO BOIL DOWN OUR POSITION, 1806(F), AS YOUR HONOR HAS

24   RULED, IS THE RIGHT WAY TO GO.  IT PROVIDES A PATH FOR YOUR

25   HONOR TO CONSIDER SECRET EVIDENCE ON THE MERITS AND YET DO SO

1   IN A WAY THAT PROTECTS NATIONAL SECURITY.

2       JUST ONE FINAL POINT.  OUR FOURTH -- THE COURT'S QUESTION

3   IS FRAMED AS DISMISSING THE CLAIM, OUR FOURTH AMENDMENT CLAIM

4   IN ITS ENTIRETY, AND I JUST WANTED TO POINT OUT THAT OUR

5   FOURTH AMENDMENT CLAIM ALSO GOES TO THE EARLIER PRESIDENT'S

6   SURVEILLANCE PROGRAM, WHICH IS NOT AT ISSUE IN THIS MOTION,

7   AND IT ALSO -- WE ALSO HAVE FOURTH AMENDMENT CLAIMS RELATING

8   TO COMMUNICATION RECORDS THAT ARE NOT AT ISSUE IN THIS MOTION.

9       AND THE GOVERNMENT HAS DISCLOSED EVEN MORE ABOUT THE

10  PRESIDENT'S SURVEILLANCE PROGRAM AS WELL AS MORE ABOUT THE

11  COMMUNICATIONS RECORDS, AND SO ANY ANALYSIS INVOLVING THOSE

12  FOURTH AMENDMENT CLAIMS WOULD HAVE TO BE DIFFERENT.

13          **THE COURT:**  ALL RIGHT.

14      MR. GILLIGAN.

15          **MR. GILLIGAN:**  YES, YOUR HONOR.

16      WELL, OUR VIEW IS THAT, NOT SURPRISINGLY, IS THAT IF THE

17  COURT DETERMINES THAT LITIGATING PLAINTIFFS' FOURTH AMENDMENT

18  CLAIM WOULD IMPERIL NATIONAL SECURITY, INFORMATION THAT THAT

19  CASE -- WELL, AT LEAST THE -- THE CURRENT MOTION, THE CLAIM

20  MUST BE DISMISSED, NOT ON ITS MERITS, BUT AS INJUSTICIABLE

21  (SIC) BY VIRTUE OF THE APPLICATION OF THE STATE SECRETS

22  DOCTRINE.

23      AS THE DIRECTOR OF NATIONAL INTELLIGENCE PREDICTED WHEN HE

24  INVOKED THE STATE SECRETS PRIVILEGE IN THIS CASE, PLAINTIFFS

25  CLAIMS IMPLICATES HIGHLY SENSITIVE AND CLASSIFIED INFORMATION

1    ABOUT THE OPERATIONAL DETAILS OF NSA INTELLIGENCE ACTIVITIES

2    AS WELL AS THE CONTRIBUTION -- THE CRITICAL CONTRIBUTION THAT

3    THE UPSTREAM PROGRAM MAKES TO NATIONAL SECURITY.  AND THESE

4    DETAILS CANNOT BE DISCLOSED WITHOUT RISK OF EXCEPTIONAL GRAVE

5    DANGER TO NATIONAL SECURITY.  THE DNI'S PREDICTION ON THAT

6    SCORE, WE SUBMIT, IS DEMONSTRATED QUITE CONCRETELY BY THE EX

7    PARTE CLASSIFIED DECLARATIONS THAT WERE SUBMITTED FOR THE

8    COURT'S CONSIDERATION IN CONNECTION WITH THE CURRENT

9    CROSS-MOTIONS.

10         **THE COURT:**  CAN YOU COMMENT ON -- THERE'S A CENTRAL

11   POINT HERE THAT -- THAT THE PLAINTIFFS HAVE RAISED, AND THAT

12   IS, OF COURSE THE COURT -- THE COURT HAS HELD THAT 1806, YOU

13   KNOW, CONTROLS, IS NOT PREEMPTED BY THIS, THE STATE SECRETS

14   PRIVILEGE, AND THE PLAINTIFFS ARGUE THE GOVERNMENT HAS NOT

15   INVOKED 1806, AND SO MY QUESTION IS, IF THAT'S TRUE, WHY DID

16   YOU GIVE ME ALL THAT CLASSIFIED STUFF?

17         **MR. GILLIGAN:**  IN SUPPORT OF OUR STATES -- IN SUPPORT

18   OF OUR STATE SECRET CLAIM.  RESPECTFULLY, YOUR HONOR, I

19   BELIEVE WE MADE THIS CLEAR IN OUR EARLIER BRIEFING, WE

20   DISAGREE WITH THE COURT'S RULING THAT SECTION 1806(F)

21   SUPPLANTS THE STATE SECRETS PRIVILEGE, SO WE ARE PRESERVING

22   OUR POSITION ON THAT POINT FOR WHATEVER PROCEEDINGS MAY FOLLOW

23   AFTER THIS COURT OR IN THE COURT OF APPEALS.

24     IT'S INTERESTING THAT MR. WIEBE SAYS THAT IT IS THE

25   GOVERNMENT THAT HAS NOT INVOKED 1806(F).  BY CLEAR TERMS OF

```
1     THE STATUTE, IT IS THE PLAINTIFFS WHO MUST INVOKE SECTION

2     1806(F) HERE, YOUR HONOR.  THE STATUTE CAN -- ONLY COMES INTO

3     PLAY BY ITS OWN TERMS WHEN THE ATTORNEY GENERAL INVOKES ITS

4     PROCEDURES IN THE FACE OF AGGRIEVED PARTIES' REQUEST FOR

5     DISCOVERY OF SENSITIVE NATIONAL SECURITY INFORMATION.

6          THE PLAINTIFFS HAVE NOT MADE ANY KIND OF REQUEST FOR THE

7     PRODUCTION OF SENSITIVE NATIONAL SECURITY INFORMATION IN

8     THIS -- AT LEAST IN CONNECTION WITH THIS MATTER.  SO, IT IS

9     THEY WHO HAVE NOT TRIGGERED THE OPERATION OF 1806(F) IN THE

10    FIRST PLACE.

11              THE COURT:  WHAT HAPPENS IF THE COURT IS CORRECT, AND

12    LET'S ASSUME WE CAN, FOR THE MOMENT, THAT'S THE LAW OF THIS

13    CASE UNTIL ANOTHER COURT TELLS THE COURT TO THE CONTRARY, WHAT

14    THEN IS THE STATUS OF THE INFORMATION AND UNDER WHAT RUBRIC OR

15    WHAT AUTHORITY DOES THE GOVERNMENT SUBMIT THIS CLASSIFIED

16    MATERIAL TO THE COURT, IF NOT RELEVANT TO THE STATE SECRET

17    DEFENSE?

18              MR. GILLIGAN:  WELL, AGAIN, IF NOTHING ELSE, WE HAVE

19    TO MAKE OUR RECORD ON THAT POINT, YOUR HONOR.

20         BUT WE THINK, AGAIN, THAT 1806(F) DOESN'T APPLY BY ITS

21    TERMS, NOT ONLY BECAUSE THE PLAINTIFFS HAVEN'T INVOKED IT, BUT

22    BECAUSE THEY HAVE NOT MADE THE THRESHOLD SHOWING THAT THEY

23    MUST MAKE, AGAIN, UNDER THE TERMS OF THE STATUTE THAT THEY ARE

24    AGGRIEVED PERSONS WHO ARE ENTITLED TO INVOKE SECTION 1806(F).

25         THE STATUTE SAYS THAT AGGRIEVED -- WHENEVER ANY MOTION OR
```

1    REQUEST IS MADE BY AN AGGRIEVED PERSON TO DISCOVER OR OBTAIN

2    MATERIALS RELATING TO ELECTRONIC SURVEILLANCE, THE COURT

3    SHALL, IF THE ATTORNEY GENERAL FILES THE APPROPRIATE

4    AFFIDAVIT, REVIEW THE INFORMATION IN CAMERA AND EX PARTE IN

5    ORDER TO DETERMINE WHETHER THE SURVEILLANCE OF THE AGGRIEVED

6    PERSON WAS LAWFUL.

7        THAT IS THE SOLE DETERMINATION THAT THE STATUTE AUTHORIZES

8    THE COURT TO MAKE IN RELIANCE ON ITS EX PARTE PROCEDURES TO

9    DETERMINE WHETHER THE SURVEILLANCE OF THE AGGRIEVED INDIVIDUAL

10   WAS LAWFUL.

11       IT DOES NOT ALLOW THE COURT TO DETERMINE, IN THE FIRST

12   PLACE, WHETHER THE COMPLAINING PARTY WAS, IN FACT, AN

13   AGGRIEVED PERSON.  THIS -- THIS IS THE ARGUMENT WE HAVE LAID

14   OUT IN OUR BRIEFING MOST RECENTLY IN RESPONSE TO THE COURT'S

15   FOUR THRESHOLD QUESTIONS.

16       THE AGGRIEVED PERSON INQUIRY IS, OF COURSE, IDENTICAL, WE

17   SUBMIT, LEGALLY AND FOR ALL INTENTS AND PURPOSES FACTUALLY AS

18   WELL TO THE QUESTION OF WHETHER THE PLAINTIFFS HAVE

19   ESTABLISHED THEIR STANDING BY DEMONSTRATING THAT THEY -- THAT

20   THEIR COMMUNICATIONS HAVE BEEN SUBJECT TO DUPLICATION AND --

21   AND SCANNING UNDER THE UPSTREAM PROGRAM.

22       AND IF THEY CANNOT MAKE THAT SHOWING, AND THERE IS NO

23   ADMISSIBLE EVIDENCE, WE SUBMIT, TO SUPPORT SUCH A CONCLUSION,

24   THEN THEY ARE NOT AGGRIEVED PERSONS.  THEY HAVE NOT MADE THE

25   SHOWING THAT THEY ARE AGGRIEVED PERSONS ENTITLED TO INVOKE

1    1806(F) IN THE FIRST PLACE.

2        AS THE COURT SAID IN ITS RULING IN JULY OF 2013, 1806(F),

3    OF COURSE, ONLY APPLIES TO SITUATIONS TO WHICH ITS TERMS

4    APPLY.  IF PLAINTIFFS ARE NOT AGGRIEVED PERSONS, THE STATUTE

5    DOESN'T APPLY, AND WE ARE STILL LEFT IN A SITUATION WHERE THE

6    GOVERNMENT, EVEN IN THE FACE OF YOUR HONOR'S RULING, IS

7    ENTITLED TO INVOKE THE STATE SECRETS PRIVILEGE TO PROTECT

8    NATIONAL SECURITY --

9            **THE COURT:**  DOES -- I'M SORRY.

10       DOES THE STATE SECRET PRIVILEGE, MERELY AS MR. WIEBE

11   ARGUES, SERVE TO EXCLUDE THE EVIDENCE THAT WOULD BE -- WOULD

12   INVOKE STATE SECRETS ISSUES, OR RESULT IN DISMISSAL OF AT

13   LEAST THE FOURTH AMENDMENT PIECE THAT IS AT ISSUE HERE.

14   BECAUSE THERE IS, MR. WIEBE, I THINK, CORRECTLY ARGUES THERE'S

15   SOME ASPECTS OF THE FOURTH AMENDMENT CLAIM THAT ARE NOT

16   IMPLICATED BY THIS MOTION.

17           **MR. GILLIGAN:**  RIGHT.  THE -- THE PROBLEM -- THERE

18   ARE TWO ISSUES, AT LEAST, THAT I DETECT IN YOUR HONOR'S

19   QUESTIONS.

20       FIRST OFF, TO BE CLEAR, THE NINTH CIRCUIT HAS SAID AT

21   LEAST TWICE IN *JEPPESEN* AND IN *KASZA* THAT THE CONSEQUENCES OF

22   INVOCATION OF THE STATE SECRETS PRIVILEGE ARE NOT SIMPLY

23   LIMITED TO, OKAY, THE EVIDENCE IS EXCLUDED AND THE CASE MOVES

24   ON.  IF EXCLUSION OF THE EVIDENCE DEPRIVES ONE PARTY OR THE

25   OTHER WITH EVIDENCE NECESSARY TO A FULL AND FAIR ADJUDICATION

1    OF THE CLAIM AND DEFENSES THERETO, THEN THE STATE SECRETS

2    PRIVILEGE REQUIRES THAT THE CLAIM BE DISMISSED.  AND THAT

3    IS -- THAT IS THE SITUATION HERE.

4            **THE COURT:**  DO YOU AGREE, BY THE WAY, THAT THE

5    ARGUMENT YOU ARE MAKING ONLY APPLIES TO THE UPSTREAM ALLEGED

6    INTERFERENCE WITH THE INTERCEPTION OR COPYING, WHATEVER, OF

7    THE INTERNET INFORMATION AND NOT THE PHONE RECORDS THAT'S THE

8    SUBJECT OF A DIFFERENT MOTION?

9            **MR. GILLIGAN:**  SUBJECT OF A DIFFERENT CASE?

10           **THE COURT:**  THAT'S NOT -- WELL, IT'S BOTH A

11   DIFFERENT -- IT'S CLEARLY -- IT MAY BE AN ISSUE IN THE OTHER

12   CASE, THE *FIRST UNITARIAN* CASE.

13           **MR. GILLIGAN:**  CORRECT.

14           **THE COURT:**  IS THE ENTIRE FOURTH AMENDMENT CLAIM OF

15   THE PLAINTIFFS IN THIS CASE, AS YOU UNDERSTAND IT, IN YOUR

16   EYES, PRECLUDED BY THE STATE SECRETS PRIVILEGE?

17           **MR. GILLIGAN:**  WELL, THE -- THE -- AND THIS IS THE

18   DIFFICULTY THAT IS INHERENT IN THE PROPOSAL THAT MR. WIEBE

19   MADE TO YOU, AND THIS PERHAPS IS WHAT YOU'RE GETTING AT, THE

20   STANDING ISSUE HERE GOES NOT SIMPLY TO THIS CLAIM ABOUT

21   ONGOING -- ALLEGED ONGOING COPYING AND SCANNING OF ONLINE

22   COMMUNICATIONS, IT DOES GET TO THE QUESTION OF WHETHER THE

23   PLAINTIFFS HAVE STANDING TO RAISE THE OTHER CLAIMS IN THE

24   CASE.

25       AND SO IF THE COURT WERE TO ISSUE, YOU KNOW, A ONE-LINE

1  MOTION DENIED RULING HERE, BUT THEN THE CASE WERE TO GO ON --

2  OR THE CASE WERE TO BE DISMISSED IN ITS ENTIRETY, THAT WOULD

3  BE REVEALING, ESSENTIALLY, OF WHAT THE COURT HAD DETERMINED

4  ABOUT THE STANDING ISSUE.

5      SO IT'S NOT THE SOLUTION TO THE DIFFICULTIES INHERENT HERE

6  THAT MR. WIEBE HAS SUBMITTED THAT IT IS.

7      IT'S DIFFICULT TO CONCEIVE OF ANY TYPE OF RULING THE COURT

8  WOULD ISSUE THAT WOULD NOT IMPLICATE THE -- THE PRIVILEGED

9  NATIONAL SECURITY INFORMATION THAT'S AT ISSUE HERE.

10          **THE COURT:**  SO ARE YOU ARGUING THEN THAT ESSENTIALLY

11  1806(F) IS IRRELEVANT TO WHAT YOU'RE ASKING THE COURT TO DO,

12  I.E., TO DISMISS THE FOURTH AMENDMENT CLAIMS?

13          **MR. GILLIGAN:**  WELL, TO THE EXTENT WE GO THROUGH THE

14  ENTIRE ANALYSIS --

15          **THE COURT:**  YES.

16          **MR. GILLIGAN:**  -- WE COME AT LAST TO THE STATE SECRET

17  ISSUE.  YES, THAT IS -- THAT IS OUR VIEW.  BECAUSE THE

18  PLAINTIFFS HAVE NEITHER INVOKED IT NOR ARE THEY ENTITLED TO

19  INVOKE IT BECAUSE THEY HAVE NOT SHOWN THEY ARE AGGRIEVED

20  PERSONS.

21      AND THAT CONCLUSION, OF COURSE, IS REINFORCED BY THE

22  SUPREME COURT'S FOOTNOTE IN *AMNESTY INTERNATIONAL* BEFORE,

23  WHICH WAS THE GENESIS OF SEVERAL QUESTIONS YOU RAISED IN THE

24  FOUR QUESTIONS BRIEFING, YOUR HONOR, WHICH SAID THAT COURTS

25  SHOULD NOT ENGAGE IN EX PARTE ADJUDICATION OF MATTERS

1    INVOLVING CLASSIFIED EVIDENCE WHEN THE COURT'S VERY RULING ON

2    THE MATTER WOULD TEND TO REVEAL THE CLASSIFIED INFORMATION,

3    THE PRIVILEGED NATIONAL SECURITY INFORMATION THAT PROCEEDING

4    WAS MEANT TO PROTECT.

5         **THE COURT:**  CAN I ASK YOU KIND OF A QUICK FOLLOW-ON

6    QUESTION.  AND IT HAS TO DO WITH SOMETHING THAT MR. WIEBE

7    MENTIONED THAT HE MAY HAVE -- I'M NOT SAYING HE SPEAKS IN

8    DICTUM, THIS MAY BE DICTUM.

9         HE PROPOSED THAT THE COURT COULD, AS ONE OF ITS

10   ALTERNATIVES, WRITE AN OPINION WHICH INCLUDED A CLASSIFIED

11   PORTION -- HOW THIS WOULD BE DONE IS A DIFFERENT ISSUE -- AND

12   GO THROUGH AN ANALYSIS AND FINDINGS, IF YOU WILL, WITH RESPECT

13   TO THE GOVERNMENT'S DEFENSE -- FACTUAL AND LEGAL DEFENSES, AND

14   THEN DISCUSS WHY THEY, IN THE COURT'S VIEW, WOULD POSE GRAVE

15   HARM, POTENTIAL GRAVE HARM TO NATIONAL SECURITY -- IS THE

16   COURT REQUIRED TO DO SUCH AN ANALYSIS?

17        OBVIOUSLY THE NINTH CIRCUIT AND THE SUPREME COURT, IF THE

18   CASE GOES THAT FAR, WOULD HAVE THE SAME INFORMATION.  THOSE

19   JUDGES ARE JUSTICES, BUT ARE YOU PROPOSING THAT THE COURT

20   SHOULD DRAFT AN ANALYSIS OF THE STATE SECRETS APPLICATION

21   AND -- IN A CLASSIFIED FORM?

22        **MR. GILLIGAN:**  LET ME FIRST MAKE SURE I UNDERSTAND

23   THE COURT'S QUESTION.

24        THE -- I TAKE IT WHAT THE COURT IS SAYING IS, IS THAT,

25   OKAY, YOU WOULD DISMISS THE CASE ON THE BASIS OF THE STATE

1    SECRETS PRIVILEGE AND THEN WRITE -- THAT'S WHAT WOULD BE SAID

2    ON THE PUBLIC RECORD, THE GOVERNMENT'S INVOCATION OF THE STATE

3    SECRET PRIVILEGES MAKES IT IMPOSSIBLE TO ADJUDICATE, THE

4    CLAIMS MUST BE DISMISSED.

5             **THE COURT:**  SLOW DOWN, PLEASE.

6             **MR. GILLIGAN:**  I AM SORRY.

7        AND THEN -- AND THEN ON THE SIDE ISSUE, A CLASSIFIED

8    OPINION EXPLAINING WHY THE COURT CAME TO THAT CONCLUSION?

9             **THE COURT:**  YES.

10            **MR. GILLIGAN:**  THAT'S THE QUESTION?

11       YOUR HONOR, I -- I DON'T KNOW.  I -- I CONFESS THAT ON

12   THIS POINT, I'M NOT WELL ENOUGH VERSED IN MATTERS OF NATIONAL

13   SECURITY LITIGATION TO KNOW WHETHER -- WHAT THE GOVERNMENT'S

14   POSITION WOULD BE ON THAT.  I WOULD BE HAPPY TO GET BACK TO

15   YOU ABOUT THAT.

16            **THE COURT:**  THINKING OUT LOUD WITH YOU, IF THE COURT

17   WERE SIMPLY TO SAY IN A GENERAL TERM, THE COURT HAS REVIEWED

18   THIS CLASSIFIED SUBMISSION AND HYPOTHETICALLY SAID, WE THINK

19   THAT THE STATES -- I THINK THE STATE SECRETS DEFENSE APPLIES

20   AND DEFEATS WHATEVER IT DEFEATS, IF IT DOES, FOURTH AMENDMENT

21   CLAIM OR THE WHOLE CASE, THAT'S ONE ASPECT OF IT.  AND THE

22   PARTIES COULD ARGUE -- NOT THE PARTIES, BUT THE GOVERNMENT

23   AND -- WOULD ARGUE TO THE HIGHER COURTS, YOU KNOW, THIS IS

24   WHAT THE COURT FOUND, AND EITHER IN A FURTHER CLASSIFIED

25   SUBMISSION MAKE FURTHER ARGUMENTS TO THE CIRCUIT OR U.S.

1   SUPREME COURT, AND THEN THE SUPREME COURT CAN DO EXACTLY -- OR

2   THE NINTH CIRCUIT CAN DO EXACTLY WHAT THIS COURT DID, AND ON

3   ITS OWN LOOK AT THE MATERIALS AND SAY, YOU KNOW, BY WHATEVER

4   STANDARD IT REVIEWS, PROBABLY DE NOVO, YOU KNOW, THEY AGREE OR

5   DISAGREE.  OR THEY MIGHT SAY, NO, WE NEED -- WE DON'T REALLY

6   UNDERSTAND EXACTLY HOW THE COURT GOT TO THIS, AND WE REMAND TO

7   THE DISTRICT COURT TO GIVE US MORE DETAIL ABOUT HOW IT REACHED

8   THIS CONCLUSION, YOU KNOW, FOR JURIST PRUDENTIAL PURPOSES.

9       SO THAT'S ONE WAY OF GOING.  SO YOU ARE SAYING YOU REALLY

10  DON'T CANDIDLY HAVE ANY ADVICE FOR THE COURT, FROM YOUR

11  PERSPECTIVE, AS TO WHAT YOU WOULD LIKE TO SEE DONE OR WHAT

12  NEEDS TO BE DONE.

13          **MR. GILLIGAN:**  IN FURTHER CANDOR, YOUR HONOR, AS I

14  STAND HERE, IT DOES COME TO MIND THAT I BELIEVE THERE HAVE

15  BEEN SITUATIONS WHERE THE COURTS OF APPEALS HAVE ISSUED

16  CLASSIFIED OPINIONS AND THEN HAD THEM REDACTED FOR PURPOSES OF

17  THE PUBLIC RECORD.  THAT MAY BE SOMETHING TO CONSIDER HERE,

18  BUT I WOULD MUCH PREFER TO BE ABLE TO CONFER WITH HIGHER

19  AUTHORITIES BEFORE ADVISING THE COURT TO TAKE THAT STEP HERE.

20          **THE COURT:**  ALL RIGHT.  IS THERE ANYTHING FURTHER YOU

21  WANT TO ARGUE ON THIS POINT?

22          **MR. GILLIGAN:**  I WOULD, YOUR HONOR.

23      THE -- MR. WIEBE INVOKES THE SUPREME COURT'S DECISION IN

24  *GENERAL DYNAMICS* FOR THE PROPOSITION THAT THE VALID DEFENSE

25  PRONG, IF YOU WILL, OF THE STATE SECRETS DOCTRINE ONLY APPLIES

1    IN GOVERNMENT CONTRACTING CASES.

2       IT IS TRUE THAT *GENERAL DYNAMICS* WAS A GOVERNMENT

3    CONTRACTING CASE AND WHICH WAS ULTIMATELY DISMISSED BECAUSE

4    THE COURT DETERMINED THAT LITIGATION OF THE SUPERIOR KNOWLEDGE

5    DEFENSE RAISED IN THAT CASE COULD NOT -- COULD NOT GO FORWARD

6    WITHOUT ENDANGERING NATIONAL SECURITY, BUT THE COURT -- THE

7    COURT DID NOT SAY ANYTHING TO THE EFFECT THAT THE VALID

8    DEFENSE DOCTRINE ONLY APPLIES IN GOVERNMENT CONTRACTING CASES.

9       IT DID SAY THAT ITS HOLDING IN THAT CASE WAS ONLY LIMITED

10   TO THE GOVERNMENT CONTRACTING CASE BEFORE IT, AND -- BUT WHAT

11   IT SAID PRECISELY WAS IS THAT IT WAS NOT ADDRESSING THE

12   VALIDITY OF THE VALID DEFENSE PRONG IN NONGOVERNMENTAL

13   CONTRACTING CASES.  IT WAS ONLY CLARIFYING THE CONSEQUENCES

14   OF -- OF THE RAISING OF THE VALID DEFENSE IN GOVERNMENT

15   CONTRACTING CASES.  SO IT LEFT THE QUESTION OPEN IN

16   NONGOVERNMENT CONTRACT CASES SO THAT -- AND CERTAINLY DID NOT

17   SAY ANYTHING TO SUGGEST THAT IT WAS OVERRULING THE LEGIONS OF

18   CASES IN THE COURT OF APPEALS, INCLUDING THE NINTH CIRCUIT,

19   SAYING THAT IF INVOCATION OF THE STATE SECRETS PRIVILEGE

20   PREVENTS THE FULL AND FAIR ADJUDICATION OF A VALID DEFENSE TO

21   A CLAIM, THEN THE CASE MUST BE DISMISSED.  THAT -- THAT IS THE

22   RULE STATED IN *JEPPESEN* AND *KASZA*, AND THAT REMAINS THE RULE

23   AND THAT APPLIES HERE.

24      MR. WIEBE ALSO INVOKES *IN RE SEALED CASE*, THE DC CIRCUIT

25   DECISION THAT INDICATED THAT TO INVOKE THE VALID DEFENSE

1    PRONG, THE DEFENDANT MUST SHOW THAT THE STATE SECRETS

2    INFORMATION WOULD BE DISPOSITIVE, FRANKLY, WE THINK WE HAVE

3    MET THAT BAR.  OF COURSE YOUR HONOR WILL HAVE TO CONSIDER THAT

4    FOR YOURSELF.

5        BUT THE STANDARD ADOPTED IN *IN RE SEALED CASE* BY THE DC

6    CIRCUIT HAS NOT BEEN ADOPTED BY ANY OTHER COURT, INCLUDING THE

7    NINTH CIRCUIT.  AND INTERESTINGLY, SINCE IT IS MR. WIEBE WHO

8    INVOKES *GENERAL DYNAMICS*, THE STANDARD ARTICULATED IN *HORN*

9    DOES NOT APPEAR TO BE CONSISTENT WITH THE STANDARD ARTICULATED

10   BY THE SUPREME COURT IN *GENERAL DYNAMICS*.

11       THERE, THE COURT STATED, THE SUPREME COURT THAT THE VALID

12   DEFENSE DOCTRINE APPLIES WHERE THE PRIVILEGE PREVENTS

13   LITIGATION OF THE VALIDITY OF A PLAUSIBLE DEFENSE.  IT DID NOT

14   SAY THAT THE VALIDITY OF THE DEFENSE MUST BE ESTABLISHED

15   BEFORE THE DOCTRINE CAN APPLY.

16       SO WE THINK AT THE VERY LEAST THAT WE HAVE ESTABLISHED

17   WITH THE SUBMISSION OF THE PRIVILEGED INFORMATION, AT THE VERY

18   LEAST PLAUSIBLE GROUNDS ON WHICH, EVEN IF THE COURT WERE TO

19   CREDIT THE PUBLIC EVIDENCE THAT PLAINTIFFS HAVE PRESENTED,

20   INFORMATION THAT RAISES PLAUSIBLE DEFENSES ON THE GOVERNMENT'S

21   BEHALF WITH RESPECT TO THE STANDING ISSUE, SEARCH AND SEIZURE

22   CLAIMS, AND AS WELL THE SPECIAL NEEDS DOCTRINE.

23           **THE COURT:**  ALL RIGHT.

24       MR. WIEBE?

25           **MR. WIEBE:**  YOUR HONOR, I THINK IT'S IMPORTANT AT THE

1    OUTSET TO KEEP DISTINCT SECTION 1806(F) AND THE STATE SECRETS

2    PRIVILEGE.  AS THE COURT HAS RULED, SECTION 1806(F) DISPLACES

3    THE STATE SECRETS PRIVILEGE.  IT DOESN'T BLEND THEM TOGETHER.

4    AND SO GOING DOWN THE SECTION 1806(F) ROAD DOES NOT ALLOW FOR

5    DISMISSAL ON THE GROUNDS -- ON STATE SECRET PRIVILEGE GROUNDS.

6        I THINK WHAT I'M HEARING HERE IS A MOTION FOR

7    RECONSIDERATION OF YOUR 1806(F) RULING, AND I DON'T THINK

8    THERE'S ANY BASIS FOR THAT RECONSIDERATION.

9        ON THE OPERATION OF THE STATUTE, THE GOVERNMENT SAYS THE

10   PLAINTIFFS HAVE TO INVOKE IT.  WELL, THAT'S NOT HOW THE

11   STATUTE OPERATES.  PLAINTIFFS DON'T INVOKE THE STATUTE.  THEY

12   ONLY ISSUE DISCOVERY IN THE ORDINARY COURSE OF THINGS.

13       IT'S THE GOVERNMENT THAT, WHEN FACED WITH DISCOVERY FROM

14   THE PLAINTIFFS, THEN HAS THE CHOICE, DO WE RESPOND TO THE

15   DISCOVERY AND GIVE THEM WHAT THEY ARE ENTITLED TO OR DO WE --

16   OR DOES THE ATTORNEY GENERAL FILE AN AFFIDAVIT THAT TRIGGERS

17   1806(F)?  SO THAT IS JUST WRONG.

18       NOW, THEY SAY, YOU KNOW, IN ALL INNOCENCE, PLAINTIFFS HAVE

19   NEVER ASKED US FOR ANY DISCOVERY.  I THINK THAT THE COURT IS

20   WELL AWARE THAT THE REASON WE HAVE NEVER ISSUED ANY DISCOVERY

21   TO THE GOVERNMENT IS WE ARE UNDER A DISCOVERY STAY FROM THIS

22   COURT AT THE REQUEST OF THE GOVERNMENT.  WE ARE HAPPY TO ISSUE

23   DISCOVERY TO THE GOVERNMENT ANY TIME THE COURT PERMITS US.

24       I AM ALSO A LITTLE PUZZLED BY THE ARGUMENT THAT ALL

25   1806(F) PERMITS THE COURT TO DO IS DECIDE THE LAWFULNESS OF

1  THE SURVEILLANCE.  WELL, I THOUGHT THAT'S WHY WE WERE ALL HERE

2  TODAY.

3  AS FAR AS THE AGGRIEVED PERSON ARGUMENT, I WOULD REFER THE

4  COURT TO JUDGE WALKER'S DECISION IN THE *AL-HARAMAIN* CASE.  I

5  WANT TO BE CLEAR ON THIS.  THE GOVERNMENT SUBMITTED ONE OF HIS

6  DECISIONS FROM JULY OF 2008 AS PART OF ITS NOTICE OF

7  ADDITIONAL AUTHORITIES.

8  WHAT I AM TALKING ABOUT IS A LATER DECISION.  IT'S HIS

9  2009 DECISION IN *IN RE NATIONAL SECURITY AGENCY*

10  *TELECOMMUNICATIONS RECORD LITIGATION*.  IT'S 595 F.SUPP. 2D

11  1077 AT 1085.  AGAIN, THIS IS THE 2009 OPINION.

12  AND HE TALKS ABOUT THE OPERATION OF 1806(F).  AND HE

13  SAYS -- WHAT THE COURT HELD THERE WAS QUOTE, "PROOF" OF

14  PLAINTIFFS' CLAIMS IS NOT NECESSARY TO INVOKE -- FOR 1806(F)

15  TO BE TRIGGERED.  INSTEAD, ALL THAT IS REQUIRED ARE QUOTE

16  "ALLEGATIONS" THAT ARE SUFFICIENTLY DETAILED, SPECIFIC -- I'M

17  SORRY, ARE SUFFICIENTLY DEFINITE, SPECIFIC, DETAILED AND

18  NONCONJECTURAL TO ENABLE THE COURT TO CONCLUDE THAT A

19  SUBSTANTIAL CLAIM IS PRESENTED.

20  AND CERTAINLY WE'RE WELL PASSED THAT POINT IN THIS CASE.

21  THE GOVERNMENT SAID THAT THE STANDARD FOR VALID DEFENSE

22  IS, WOULD IT IMPAIR FULL AND FAIR LITIGATION.  THAT IS NOT THE

23  STANDARD.  JUST LAST NIGHT I CAN REPORT TO THE COURT I DID A

24  WESTLAW SEARCH WITH THE TERM "FULL AND FAIR LITIGATION", AND

25  THE TERM "STATE SECRETS PRIVILEGE".  I COULD FIND NO CASE IN

1    THE WORLD THAT COMBINES THOSE TWO CONCEPTS.  THAT'S NOT THE

2    VALID DEFENSE STANDARD.

3        THE -- AND, IN FACT, IT'S INCONSISTENT WITH THE WHOLE

4    NOTION OF THE STATE SECRETS PRIVILEGE AS AN EVIDENTIARY

5    PRIVILEGE.  THE WHOLE IDEA OF AN EVIDENTIARY PRIVILEGE IS

6    PRIVILEGED EVIDENCE IS EXCLUDED, CASE GOES FORWARD WITHOUT IT.

7        AS I SAY, I WANT TO KEEP CLEAR OF THE FACT THAT 1806(F) IS

8    A DIFFERENT ANIMAL THAN STATE SECRETS PRIVILEGE, AND THERE IS

9    NO WAY TO GO DOWN BOTH ROADS AT ONCE.

10        AS FAR AS OUR OTHER FOURTH AMENDMENT CLAIMS, THOSE WOULD

11    NEED TO BE THE SUBJECT OF A SEPARATE MOTION.  WE WOULD NEED TO

12    HAVE THE OPPORTUNITY TO SHOW THAT WE CAN PROVE OUR CLAIMS ON

13    PUBLIC EVIDENCE WITHOUT ENDANGERING NATIONAL SECURITY, JUST AS

14    WE HAVE DONE IN THIS MOTION.

15        SO I DON'T THINK IT WOULD BE PROPER FOR THE COURT TO

16    DISMISS ALL OF OUR FOURTH AMENDMENT CLAIMS, EVEN IF IT WENT

17    BACK ON ITS 1806(F) RULING AND WENT THE STATE SECRETS

18    PRIVILEGE ROAD ITSELF.

19        A ONE-LINE DENIAL ON THIS RECORD WOULD NOT TELL ANYONE

20    ANYTHING ABOUT WHAT THE SECRET EVIDENCE IS OR WHAT ITS ROLE IN

21    YOUR DECISION-MAKING WAS BECAUSE, AGAIN, THE GOVERNMENT HAS

22    PUT FORWARD A NUMBER OF PUBLIC ARGUMENTS AS TO WHY WE CAN'T

23    PROVE OUR CLAIMS.

24        THE *CLAPPER* DICTA IN FOOTNOTE FOUR THAT THE COURT CITES

25    DID NOT SAY WHAT THE GOVERNMENT SAYS IT SAYS.  IT DID NOT

1   REFER GENERALLY TO NATIONAL SECURITY EVIDENCE.  IT REFERRED

2   SPECIFICALLY TO PROCEEDINGS WHICH WOULD DISCLOSE WHO WAS ON

3   THE LIST OF SURVEILLANCE TARGETS.  AND IN A MASS SURVEILLANCE

4   CASE THAT'S AN IRRELEVANT FACT.

5       THE CLASSIFIED ANALYSIS THAT WE WERE PROPOSING TO YOUR

6   HONOR, I WANT TO BE VERY CLEAR ON THIS, WOULD BE UNDER 1806(F)

7   ON THE MERITS, THAT IS, ON THE LAWFULNESS OF THE SURVEILLANCE.

8   IT WOULD NOT BE ON A STATE SECRETS PRIVILEGE DISMISSAL, WHICH,

9   AGAIN, WE THINK WOULD BE FLATLY INCONSISTENT WITH YOUR HONOR'S

10  EARLIER RULING THAT 1806(F) APPLIES HERE.

11      AND IT WOULDN'T BE CONSISTENT WITH 1806(F) TO ISSUE A

12  RULING THAT, IN ESSENCE, SAID THERE'S A LOT OF SECRET STUFF

13  HERE, I'M NOT GOING TO DECIDE THE MERITS, I'M JUST GOING TO

14  DISMISS THE CASE.

15      THE VALID DEFENSE EXCEPTION, WE BRIEFED THAT BEFORE IN OUR

16  STATE SECRETS AND FOUR QUESTIONS BRIEFING.  I'M HAPPY TO BRIEF

17  THAT FURTHER.

18      THE -- WE DISAGREE WITH THE -- THE DESCRIPTION OF THE

19  *GENERAL DYNAMICS* CASE WE JUST HEARD.  IN THAT CASE, THE

20  SUPREME COURT DID DRAW A SHARP DISTINCTION BETWEEN THE

21  REYNOLDS STATE SECRETS EVIDENTIARY PRIVILEGE AND THE TALKING

22  TENANT LINE OF FULL CASE DISMISSALS, WHICH IT SAID AROSE NOT

23  FROM ITS EVIDENTIARY POWERS, BUT FROM ITS POWER TO CREATE THE

24  COMMON LAW OF GOVERNMENT CONTRACTING.  AND THIS IS NOT THE

25  COMMON LAW GOVERNMENT CONTRACTING.

1          AND, AGAIN, WE ARE HAPPY TO BRIEF THOSE FURTHER OR COME

2     BACK AND DISCUSS THOSE MORE WITH YOU.

3               **THE COURT:**  DO YOU HAVE ANYTHING FURTHER?

4               **MR. GILLIGAN:**  I DO, YOUR HONOR.  I KNOW IT HAS BEEN

5     A LONG DAY FOR EVERYBODY.

6          I WOULD FIRST LIKE TO ADDRESS MR. WIEBE'S REMARKS

7     REGARDING JUDGE WALKER'S RULINGS IN *AL-HARAMAIN*, WHICH I HAVE

8     NOT MENTIONED.

9          JUST TO BE CLEAR, WE SUBMITTED AS PART OF OUR ADDITIONAL

10    AUTHORITIES, THE ONE RULING BY JUDGE WALKER IN *AL-HARAMAIN*

11    BECAUSE IT WAS NOT CITED IN ANY OF THE PARTIES' BRIEFS,

12    WHEREAS THE RULING -- LATER RULING THAT MR. WIEBE WAS

13    REFERRING TO HAD BEEN CITED IN THE PARTIES' BRIEFS AND

14    ACCORDING TO THE COURT'S ORDER, IT WAS NOT NECESSARY TO SUBMIT

15    THEM BOTH.

16         IN THE -- IN THE FIRST OF THOSE RULINGS, JUDGE WALKER MADE

17    QUITE CLEAR THAT HE DISAGREED WITH THE PROPOSITION THAT A

18    PARTY COULD USE CLASSIFIED EVIDENCE TO TRY TO ESTABLISH THEIR

19    AGGRIEVED PERSON STATUS UNDER SECTION 1806(F).  THAT WAS THE

20    CORRECT RULING.

21         WHERE WE, FRANKLY, PARTED COMPANY WITH JUDGE WALKER

22    RESPECTFULLY WAS IN HIS LATTER RULING WHERE HE DETERMINED THAT

23    THE PLAINTIFFS HAD EVENTUALLY SUBMITTED ENOUGH EVIDENCE, AND

24    THERE WAS EVIDENCE THEY SUBMITTED, SWORN DECLARATIONS, THAT HE

25    DETERMINED ESTABLISHED A SUFFICIENT PRIMA FACIE CASE OF

1    SURVEILLANCE OF THOSE INDIVIDUALS, IN PARTICULAR, TO ALLOW

2    THEM TO GO FORWARD UNDER 1806(F).  ALTHOUGH IN THE END, AND I

3    WON'T -- I WON'T BURDEN THIS PROCEEDING WITH A RECITATION OF

4    THE ENSUING HISTORY OF THE CASE, BUT JUST THE LONG AND THE

5    SHORT OF IT IS, IN THE END, IT DID NOT HAPPEN.  ULTIMATELY THE

6    CASE WAS DISMISSED ON SOVEREIGN IMMUNITY GROUNDS BY THE NINTH

7    CIRCUIT.

8        BUT EVEN IN JUDGE WALKER'S LATER RULING IN *AL-HARAMAIN*,

9    THE PARTIES SUBMITTED EVIDENCE, WE SUBMIT THERE WASN'T ENOUGH

10   EVIDENCE, BUT THERE WAS EVIDENCE.  HERE, THERE IS NO

11   ADMISSIBLE EVIDENCE WITH WHICH TO -- THESE PLAINTIFFS TO

12   ESTABLISH THEIR STANDING.

13       AND THEN, FINALLY, YOUR HONOR, THIS IS A VERY IMPORTANT

14   POINT, SO WITH THE COURT'S INDULGENCE:  SUPPOSE, AS MR. WIEBE

15   SUGGESTS, THIS COURT ISSUED A ONE-LINE PUBLIC RULING,

16   PLAINTIFFS' MOTION IS DENIED, AND THEN WE CONTINUE TO LITIGATE

17   THE REST OF THE CASE.  THERE IS ONLY ONE POSSIBLE IMPLICATION

18   OF THAT ACTION IS THAT THE COURT HAS FOUND STANDING AND DENIED

19   THE MOTION ON THE MERITS.  BECAUSE THE STANDING ISSUE, AS THE

20   COURT HAS RECOGNIZED COMES ACROSS ALL THEIR CLAIMS.

21           **THE COURT:**  I THINK, QUITE FRANKLY, THAT'S A LITTLE

22   BIT -- IT IS NOT A NECESSARY ARGUMENT BECAUSE GIVEN THE PUBLIC

23   IMPORTANCE OF THIS CASE AND THE ISSUES IT RAISES, I THINK WE

24   CAN ALL BE -- I CAN ASSURE YOU TO A HIGH DEGREE OF CERTAINTY

25   THIS WILL NOT BE A ONE-LINE ORDER AND IT WILL CLEARLY INDICATE

1    THE BASES WITHOUT GETTING INTO CLASSIFIED, IF I DO RELY ON

2    THAT.  SO I DON'T THINK YOU NEED TO WORRY ABOUT THAT PARADIGM.

3       IT MAY WELL BE, AND I WOULD THINK THAT ANY RULING SHOULD

4    NECESSARILY, I THINK IT'S -- IT'S -- IT'S APPROPRIATE, IT'S

5    JURISPRUDENCE, GIVEN THE ISSUES THAT ARE ACTUALLY IN DISPUTE

6    RATHER THAN, YOU KNOW, ADVISORY ISSUES THAT ARE NOT IN

7    DISPUTE, TO INDICATE THE REASONS THAT IT IS TAKING THE

8    POSITION IT'S TAKING, BASED UPON THOSE ISSUES THAT ARE

9    NECESSARILY IMPLICIT IN THE COURT'S RULING.

10      SO YOU CAN BE SURE THAT THE PARTIES IN A PUBLIC DOCUMENT

11   WILL KNOW, FOR PURPOSES OF THE REST OF THIS LITIGATION OR

12   APPEAL OR WHATEVER, THE BASIS UPON WHICH THE COURT HAS RULED,

13   WHICH, AGAIN, DEALS ONLY WITH ISSUES NECESSARY FOR THE

14   DECISION FOR THE MOTIONS THAT ARE CURRENTLY BEFORE THE COURT.

15      SO I DON'T THINK YOU NEED TO ARGUE OR TELL ME HOW I SHOULD

16   WRITE MY ORDER BECAUSE -- I KNOW YOU ARE NOT DOING IT IN AN

17   INSULTING WAY, BUT I DON'T WANT YOU ARGUING SOMETHING THAT IS

18   NEVER GOING TO HAPPEN.  YOU DON'T NEED TO ARGUE THAT.

19      I UNDERSTAND THE POINT, AND I THINK YOU'RE RIGHT THAT IT'S

20   NOT FAIR TO THE PARTIES, IT'S NOT FAIR TO THE PUBLIC, IT'S NOT

21   FAIR TO THE PROCESS FOR THE COURT TO ISSUE A RULING AND GIVE

22   PRETTY MUCH NO REASONS WHERE THE RULING COULD MEAN SO MANY

23   THINGS TO SO MANY PEOPLE GIVEN THE ISSUES THAT HAVE BEEN

24   RAISED BY YOU ALL SO WELL.  SO I DON'T THINK YOU NEED TO WORRY

25   ABOUT THAT.

1      **MR. GILLIGAN:**  VERY WELL, YOUR HONOR.

2      **THE COURT:**  LET'S MOVE ON TO THE NEXT QUESTION.

3      **MR. WIEBE:**  IF I MAY JUST MAKE ONE POINT ON THE --

4  FIRST OF ALL, WE APPRECIATE THE COURT'S COMMITMENT TO MAKING

5  ITS RULING AS PUBLIC AND AS COMPLETE AS POSSIBLE.

6      THE -- ON THE STANDING ISSUE, IT'S IMPORTANT TO RECOGNIZE

7  THAT STANDING IS DETERMINED ON A CLAIM-BY-CLAIM BASIS.  THAT'S

8  THE *DAIMLER CHRYSLER CORPORATION VERSUS CUNO*, C-U-N-O, CASE,

9  547 U.S. AT 352.

10      SO A CONCLUSION THAT WE MAY LACK STANDING ON ONE PART OF

11  OUR FOURTH AMENDMENT CLAIM WOULD NOT -- THE PORTION DIRECTED

12  TO CURRENT UPSTREAM THAT'S AT ISSUE HERE, WOULD NOT DETERMINE

13  ONE WAY OR ANOTHER WHETHER WE HAVE STANDING FOR A FOURTH

14  AMENDMENT COMMUNICATIONS RECORDS CLAIMS THAT IS BASED ON

15  DIFFERENT EVIDENCE.  SO --

16      **THE COURT:**  I UNDERSTAND THAT.  AND I DON'T THINK

17  THAT IS A CONCERN BECAUSE I'M ONLY GOING TO DEAL WITH WHAT IS

18  ACTUALLY BEFORE ME TODAY.

19      THE LAST QUESTION REALLY IS ONLY FOR THE GOVERNMENT.  IT

20  IS REALLY MORE A MATTER OF CURIOSITY.  IT'S A LITTLE BIT OF A

21  THUMB IN THE EYE OF THE COURT, I THINK.

22      I ASKED THE QUESTION:

23      "ON WHAT LEGAL AUTHORITY DOES THE GOVERNMENT CONTEND THAT

24  A PSEUDONYM FOR MIRIAM P. IS NECESSARY FOR SUBMISSION OF HER

25  CLASSIFIED DECLARATION?"

1    THE GOVERNMENT CITES SUPPLEMENTAL AUTHORITY 50 UNITED

2    STATES CODE 3605 FOR THE PROPOSITION THAT THE NATIONAL

3    SECURITY AGENCY IS NOT REQUIRED TO CLOSE ANY FUNCTION OF THE

4    AGENCY, INCLUDING THE NAMES OR TITLES OF AGENCY PERSONNEL.

5    NOW, THIS IS MY OWN SORT OF EDITORIAL REACTION TO THAT.

6    HOWEVER, BOTH THE UNCLASSIFIED AND THE CLASSIFIED VERSIONS OF

7    MIRIAM P.'S DECLARATION PROVIDE THE SAME SPECIFIC AND

8    IDENTIFYING DETAILS OF HER POSITION.  ON WHAT BASIS DOES AN

9    ENTIRELY CLASSIFIED DECLARATION OMIT HER REAL NAME?

10    I AM NOT AT LIBERTY UNDER THE LAW TO DISCLOSE ANY

11    EVIDENCE, SO I DON'T UNDERSTAND WHAT THE GOVERNMENT THINKS

12    IT'S DOING BY REDACTING HER NAME FROM A DECLARATION THAT IS

13    CLASSIFIED.

14    **MR. PATTON:**  SO I CAN CUT TO THE CHASE, YOUR HONOR.

15    THAT WAS A MISTAKE.  WHAT SHOULD HAVE HAPPENED IS, YOU SHOULD

16    HAVE GOTTEN THE FULL NAME OF THE DECLARANT, AND PLAINTIFFS

17    SHOULD HAVE GOT, AND THE PUBLIC SHOULD HAVE GOT A DECLARATION

18    WITH THE REDACTED PART OF THE LAST NAME.  MIRIAM P. IS NOT A

19    PSEUDONYM.  IT'S HER FIRST NAME AND INITIAL OF HER FIRST --

20    HER SECOND NAME.

21    THE REASON WE SUBMITTED THAT AUTHORITY WAS JUST FOR PUBLIC

22    PURPOSES, AND FOR PURPOSES OF PLAINTIFFS, WE ARE NOT REQUIRED

23    TO DO SO.  BUT IT WAS NEVER OUR INTENT TO INCLUDE JUST HER

24    FIRST NAME AND INITIAL IN SENDING THE EX PARTE IN CAMERA

25    DECLARATION TO THE COURT.

1      THE REASON IT AROSE IN THIS PARTICULAR CASE IS WE WERE

2  BEING AS FASTIDIOUS AS WE COULD TO MAKE SURE THAT THE

3  UNCLASSIFIED AND THE CLASSIFIED DECLARATION WERE EXACTLY THE

4  SAME AS YOUR HONOR HAD ORDERED US PREVIOUSLY TO DO.  AND IN

5  DOING SO, THERE WAS AN OVERSIGHT.  AND WHAT WE DID WAS

6  ACTUALLY JUST INCLUDE THE SIGNATURE BLOCK IN BOTH, AND WE

7  SHOULD NOT HAVE DONE THAT.  SO IF YOUR HONOR --

8           **THE COURT:**  I THINK YOU SHOULD SUBMIT A CORRECTED

9  CLASSIFIED DOCUMENT WITH HER FULL NAME.

10          **MR. PATTON:**  YES.

11     SHE'S ACTUALLY SIGNED THREE DECLARATIONS TO YOUR HONOR.

12  SO WHAT WE COULD DO IS EITHER RESUBMIT THOSE THREE OR SUBMIT A

13  SEPARATE DECLARATION THAT GIVES HER FULL NAME AND AN

14  INDICATION UNDER OATH THAT THOSE PRIOR THREE DECLARATIONS

15  WERE, IN FACT, SIGNED BY HER.

16          **THE COURT:**  THE LATTER IS THE WAY TO GO.

17          **MR. PATTON:**  THANK YOU, YOUR HONOR.  WE APOLOGIZE FOR

18  THE INCONVENIENCE AND MEANT NO INSULT WHATSOEVER.

19          **THE COURT:**  YOU DON'T NEED TO RESPOND TO THAT.

20     WITH RESPECT TO THE LAST POINT THAT I HAVE HERE, I CAN

21  NUNC PRO TUNC STRIKE THAT.

22     I REMIND ALL OF YOU WHAT YOU HEARD ME TALK ABOUT BEFORE,

23  THE VACUUM THEORY; THAT NATURE HATES A VACUUM, AND LAWYERS DO

24  AS WELL.  THEY ALWAYS FILL IT.  WELL, THE VACUUM IS FULL AND

25  BACKED UP AT THIS POINT.

1    SO IF THERE'S SOMETHING YOU NEED TO SAY THAT IS REALLY

2    NEEDS TO BE SAID BRIEFLY, THAT'S FINE.  I DON'T NEED A 4TH OF

3    JULY SPEECH.  YOU VERY WELL ANSWERED THE QUESTIONS THE COURT

4    ASKED.

5    I ASKED THAT LAST QUESTION ADVISEDLY FOR DUE PROCESS

6    REASONS, BUT I'M NOT REQUIRING YOU TO DO SO -- RESPOND, NOR

7    WILL I HOLD AGAINST YOU OR YOUR CLIENTS YOUR ACKNOWLEDGING

8    THAT THE VACUUM IS FULL.

9    WITH THAT SAID, WHAT WOULD YOU LIKE TO SAY?

10                        (LAUGHTER.)

11            **MR. WIEBE:**  WE DO ACKNOWLEDGE IT, YOUR HONOR, AND ALL

12   I WANT TO SAY IS THANK THE COURT AND ITS STAFF VERY MUCH FOR

13   ITS TIME AND ATTENTION, NOT ONLY DURING THIS VERY LONG HEARING

14   TODAY, BUT OBVIOUSLY ALL THE CAREFUL PREPARATION AND WORK THAT

15   HAS GONE INTO PREPARING FOR THIS HEARING ON THE COURT'S PART

16   OVER A LONG PERIOD OF TIME.  AND WE ARE DEEPLY APPRECIATIVE.

17           **THE COURT:**  THAT'S APPRECIATED BY THE COURT.

18   ANYTHING YOU WISH TO SAY?

19           **MR. GILLIGAN:**  ONLY TO ECHO MR. WIEBE'S REMARKS, YOUR

20   HONOR.

21   I KNOW THAT AFTER THE LAST SEVERAL HOURS I AM QUITE TIRED,

22   I'M SURE MR. WIEBE IS, AND I'M SURE YOU HAVE PUT A LOT OF

23   ENERGY INTO THIS, AND WE APPRECIATE IT.

24           **THE COURT:**  THANK YOU VERY MUCH.  THE MATTER IS

25   SUBMITTED.

1      HAPPY HOLIDAYS TO EVERYONE.

2               **MR. WIEBE:**  THANK YOU, YOUR HONOR.

3               **MR. GILLIGAN:**  THANK YOU.

4                   (PROCEEDINGS CONCLUDED AT 1:13 P.M.)

5

6

7

8                       **CERTIFICATE OF REPORTER**

9           I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE

10     UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

11     CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

12     RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

13

14

15           DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

16               FRIDAY, JANUARY 2, 2015

17

18

19

20

21

22

23

24

25