**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CAROLYN JEWEL; ERIK KNUTZEN; JOICE WALTON, on behalf of themselves and all others similarly situated,<br><br>   *Plaintiffs-Appellants*,<br><br>and<br><br>TASH HEPTING; GREGORY HICKS,<br>      *Plaintiffs*,<br><br>v.<br><br>NATIONAL SECURITY AGENCY; KEITH B. ALEXANDER, Director, in his official and personal capacities; MICHAEL V. HAYDEN, in his personal Capacity; UNITED STATES OF AMERICA; GEORGE W. BUSH, President of the United States, in his official and personal capacities; RICHARD B. CHENEY, in his personal capacity; DAVID S. ADDINGTON, in his personal capacity; DEPARTMENT OF JUSTICE; ALBERTO R. GONZALES, in his personal capacity; JOHN D. ASHCROFT, in his personal capacity; JOHN M. MCCONNELL, Director of National Intelligence, in his official | No. 15-16133<br><br>D.C. No.<br>4:08-cv-04373-<br>JSW<br><br><br>OPINION |

2          JEWEL V. NATIONAL SECURITY AGENCY

and personal capacities; JOHN D.
NEGROPONTE, in his personal
capacity; MICHAEL B. MUKASEY,
Attorney General; BARACK OBAMA;
ERIC H. HOLDER, JR., Attorney
General; DENNIS C. BLAIR,
                    *Defendants-Appellees*.


Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted
October 28, 2015—Pasadena, California

Filed December 18, 2015

Before: Michael Daly Hawkins, Susan P. Graber, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge McKeown

## SUMMARY[*]

### Jurisdiction / Rule 54(b) Certification

The panel dismissed the appeal for lack of jurisdiction because the appeal did not meet the requirements of Fed. R. Civ. P. 54(b) certification, and remanded to the district court for further proceedings.

The panel concluded that Rule 54(b) certification was not warranted because the question of whether the copying and searching of plaintiff's Internet communications violated the Fourth Amendment – which was the only issue that the district court certified as final under Rule 54(b) in a case involving statutory and constitutional challenges to government surveillance programs – was intertwined with several other issues that remained pending in district court and this interlocutory appeal would only prolong final resolution of the case.

### COUNSEL

Richard R. Wiebe (argued), Law Office of Richard R. Wiebe, San Francisco, California; Cindy A. Cohn, Lee Tien, Kurt Opsahl, James S. Tyre, Mark Rumold, Andrew Crocker, Jamie L. Williams, and David Greene, Electronic Frontier Foundation, San Francisco, California; Rachael E. Meny, Michael S. Kwun, Audrey Walton-Hadlock, Benjamin W. Berkowitz, Justina K. Sessions, and Philip J. Tassin, Keker &

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

4          JEWEL V. NATIONAL SECURITY AGENCY

Van Nest, LLP, San Francisco, California; Thomas E. Moore
III, Royse Law Firm, PC, Palo Alto, California; Aram
Antaramian, Law Office of Aram Antaramian, Berkeley,
California, for Plaintiffs-Appellants.

Henry C. Whitaker (argued), Douglas N. Letter, and H.
Thomas Byron III, Appellate Staff, Civil Division, United
States Department of Justice, Washington, D.C, for
Defendants-Appellees.

---

**OPINION**

McKEOWN Circuit Judge:

This appeal is the second trip to our court for a group of
plaintiffs in their long-running statutory and constitutional
challenges to government surveillance programs.  In the last
appeal, we reversed the district court's dismissal of all claims
on standing grounds and remanded for further proceedings,
including determination of whether the "claims are foreclosed
by the state secrets privilege." *Jewel v. Nat'l Sec. Agency*,
673 F.3d 902, 905 (9th Cir. 2011).  Several years of further
proceedings have yet to produce a final judgment.  Most
recently, the district court dismissed a Fourth Amendment
claim—which was only one among several claims—
regarding Internet surveillance, on the grounds that plaintiffs
lacked standing and that their claim was barred by the state
secrets privilege. *Jewel v. Nat'l Sec. Agency*, No. C08-
04373, 2015 WL 545925, at *1 (N.D. Cal. Feb. 10, 2015).
The court then certified that single issue as final under
Federal Rule of Civil Procedure 54(b).

JEWEL V. NATIONAL SECURITY AGENCY          5

The government filed a motion to dismiss the appeal for lack of jurisdiction, arguing that certification was improper under Rule 54(b).  We agree.  Our task is to address the juridical concerns surrounding the appeal of less than a complete judgment and to "scrutinize the district court's evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units."  *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980).  Because the Fourth Amendment question is intertwined with several other issues that remain pending in district court and because this interlocutory appeal would only prolong final resolution of the case, we conclude that the Rule 54(b) certification was not warranted and dismiss the appeal for lack of jurisdiction.

## BACKGROUND

This appeal arises out of ongoing litigation concerning Internet and cell phone surveillance programs the government began in the aftermath of the terrorist attacks on September 11, 2001.[1]  In 2008, Carolyn Jewel, Tash Hepting, Gregory Hicks, Erik Knutzen, and Joice Walton filed a complaint on behalf of themselves and others similarly situated against the United States, the National Security Agency ("NSA"), and a number of high-level government officials in their personal and official capacities.  The complaint included seventeen counts, raising both constitutional and statutory claims and seeking injunctive relief and monetary damages.   In summary, the complaint alleges that government officials

---

[1] The *Jewel* case is one of many similar cases, some of which have been consolidated under the Multidistrict Litigation provisions of 28 U.S.C. § 1407.  *See Jewel*, 673 F.3d at 906 nn.1 & 2; *see also Jewel v. Nat'l Sec. Agency*, No. C06-179, 2010 WL 235075, at \*4 (N.D. Cal. Jan. 21, 2010).

6          JEWEL V. NATIONAL SECURITY AGENCY

engaged in continuing warrantless surveillance within the
United States that had begun under a secret presidential order.
The "terrorist surveillance program," some aspects of which
were publicly acknowledged by the government in 2005,
involved collecting data on millions of Internet and cell
phone users. According to plaintiffs, the telecommunications
company AT&T collaborated with the NSA to divert Internet
traffic into secure rooms at AT&T facilities in San Francisco
and to provide customer records to the government. Through
this collaboration, the government allegedly collected data on
cellular telephone communications, text messages, email, and
other forms of Internet communication without a warrant.
*Jewel*, 673 F.3d at 906.

In 2010, the district court dismissed the action with
prejudice, holding that plaintiffs lacked a sufficiently
particularized injury and therefore lacked standing on all
claims. *Jewel*, 2010 WL 235075, at *1. On appeal, we
reversed and held that "Jewel's claims are not abstract,
generalized grievances and instead meet the constitutional
standing requirement of concrete injury. Nor do prudential
considerations bar this action." *Jewel*, 673 F.3d at 905. The
case was remanded to the district court "with instructions to
consider, among other claims and defenses, . . . the
government's assertion that the state secrets privilege bars
this litigation." *Id*. at 913–14.

After remand, the district court addressed the interaction
between the state secrets privilege and sovereign immunity as
those issues pertain to the statutory claims under the Foreign
Intelligence Surveillance Act ("FISA"), the Electronic
Communications Privacy Act ("Stored Communications
Act"), the Wiretap Act, and the Administrative Procedure

JEWEL V. NATIONAL SECURITY AGENCY          7

Act.  *Jewel v. Nat'l Sec. Agency*, 965 F. Supp. 2d 1090 (N.D. Cal. 2013).  The district court determined:

- The government's state secrets privilege does not compel complete dismissal of the action because sufficient information regarding the surveillance program had been made public such that the subject matter of the suit itself is not a state secret.  *Id*. at 1102–03.

- The "FISA procedural mechanism prescribed under 50 U.S.C. § 1806(f) preempts application of the state secrets privilege."  *Id*.  at 1103.  Title 18 U.S.C. § 2712 applies to claims under the Stored Communications Act and the Wiretap Act, thus preempting the state secrets doctrine for those claims. *Id*. at 1105, 1107–08.

- The damages claims under FISA are barred by sovereign immunity, but  damages are not barred under the Stored Communications Act or the Wiretap Act.  *Id*. at 1108.

- Plaintiffs cannot seek injunctive relief for their Stored Communications Act and Wiretap Act claims because Patriot Act § 223, amending 18 U.S.C. §§ 2520(a) and 2707(a), impliedly limited authority to sue the United States for forms of relief other than damages.  *Id*. at 1109.

The district court's order disposed of eleven of the seventeen claims and  explicitly declined to address any of the constitutional claims, which included First and Fourth Amendment challenges to Internet and phone surveillance

8          JEWEL V. NATIONAL SECURITY AGENCY

programs and an alleged violation of the separation of powers
principle. *Id*. at 1097, 1112. Nor did the court address the
possible defenses, such as qualified immunity, that might be
available to individual defendants. The district court
requested further briefing on the scope of FISA preemption
with regard to the constitutional claims, noting that plaintiffs
had the burden to show standing to sue without risking
impermissible damage to ongoing national security efforts.
*Id*. at 1112. The court also requested briefing on the "recent
disclosure of the government's continuing surveillance
activities and the statement by the Director of National
Intelligence that certain information . . . should be
declassified and immediately released to the public." *Id*. at
1113.

While the parties were in the process of briefing these
questions, three of the five plaintiffs, Jewel, Knutzen, and
Walton (collectively "Jewel" or the "Jewel plaintiffs"),
moved for partial summary judgment on one aspect of their
Fourth Amendment claim related specifically to Internet
interception because they thought the public record supported
their claim. Jewel specifically limited the scope of the
motion to only one aspect of the Fourth Amendment claim
"[a]t this time."[2] Jewel alleges that the government is
engaging in a dragnet Internet interception program called

---

[2] The motion narrowed the request for relief as follows: "At this time,
plaintiffs do not seek a determination of the government defendants'
liability for: a) past Fourth Amendment violations, including during
periods that those activities were conducted solely under presidential
authority without any Foreign Intelligence Surveillance Court order; b)
past or present Fourth Amendment violations arising from government
activities other than Internet communications, seizure or searching; or c)
past or present violations of statutory and constitutional provisions other
than the Fourth Amendment."

"Upstream" collection, and that this program is an element of the government's collection of communications under FISA § 702.  Under this program, the NSA designates "non-U.S. persons located outside the United States who are reasonably believed to possess or receive, or are likely to communicate, foreign intelligence information." *Jewel*, 2015 WL 545925, at \*1.  Once specific telephone numbers or email addresses associated with these individuals are identified, the NSA, assisted by the telecommunications providers, filters Internet communications "in an effort to remove all purely domestic communications" in order to capture designated communications. *Id*. at \*2.  The Jewel plaintiffs contend that this program constitutes surveillance of private communications without a warrant or individualized suspicion, in violation of the Fourth Amendment. *Id*.  The government has "acknowledged the existence of the Upstream collection process . . . . [, h]owever, the technical details of the collections process remain classified." *Id.*

In an order denying Jewel's motion for summary judgment and granting the government's cross-motion, the district court held that plaintiffs failed to establish a sufficient factual basis for standing to challenge the ongoing Internet data collection program.  Although the court agreed that Jewel could demonstrate concrete injury *if* the Internet interception program operated in the way proffered, "the evidence at summary judgment is insufficient to establish that the Upstream collection process operates in the manner in which Plaintiffs allege it does" and that, based on classified materials relating to Upstream collection, "the Plaintiffs' version of the significant operational details of the Upstream collection process is substantially inaccurate." *Id*. at \*4.  The court further held that the Fourth Amendment claims "must be dismissed because even if Plaintiffs could establish

10        JEWEL V. NATIONAL SECURITY AGENCY

standing . . . any possible defenses would require impermissible disclosure of state secret information." *Id*. at *1.

Granting Jewel's motion under Rule 54(b), the district court certified that "adjudication of this claim is a final determination and that no just reason exists for delay in entering final judgment on this claim."  Other than a bare recitation of the rule, the court offered no explanation or analysis regarding the certification.  After Jewel filed this appeal, the government responded with a motion to dismiss the appeal for lack of jurisdiction.

**ANALYSIS**

We begin with the foundational rule that generally we have jurisdiction to hear an appeal only if it arises from a final order, and "[a]n order granting partial summary judgment is usually not an appealable final order under 28 U.S.C. § 1291 because it does not dispose of all of the claims." *Am. States Ins. Co. v. Dastar Corp.*, 318 F.3d 881, 884 (9th Cir. 2003) (citing 28 U.S.C. § 1291).  An important exception is found in Rule 54(b), which provides in relevant part:

> When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

The Rule was adopted "specifically to avoid the possible injustice of delay[ing] judgment o[n] a distinctly separate claim [pending] adjudication of the entire case. . . . The Rule thus aimed to augment, not diminish, appeal opportunity." *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 902–03 (2015) (citations omitted).  The Supreme Court has put some meat on this bare-bones rule. In highlighting the importance of juridical concerns with piecemeal appeals, the Court explained the role of a court of appeals in reviewing a Rule 54(b) certification:

> The court of appeals must, of course, scrutinize the district court's evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units. But once such juridical concerns have been met, the discretionary judgment of the district court should be given substantial deference, for that court is "the one most likely to be familiar with the case and with any justifiable reasons for delay."

*Curtiss-Wright Corp.*, 446 U.S. at 10 (citations omitted).

We review de novo the "juridical concerns" determination, first asking whether the certified order is sufficiently divisible from the other claims such that the "case would [not] inevitably come back to this court on the same set of facts." *Wood v. GCC Bend, LLC*, 422 F.3d 873, 879 (9th Cir. 2005).  This inquiry does not require the issues raised on appeal to be completely distinct from the rest of the action, "so long as resolving the claims would 'streamline the

ensuing litigation.'" *Noel v. Hall*, 568 F.3d 743, 747 (9th Cir. 2009) (citation omitted).

The determination regarding Rule 54(b)'s equitable analysis ordinarily "is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal." *Wood*, 422 F.3d at 878 (quoting *Curtiss-Wright Corp.*, 446 U.S. at 8). Although we encourage district courts to make factual findings and to explain their reasons for certifying under Rule 54(b) in order to facilitate appellate review, *see Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981), we have held that the "lack of such findings is not a jurisdictional defect as long as we can independently determine the propriety of the order." *Noel*, 568 F.3d at 747 n.5. Thus, if a district court does not make any findings or give any explanation, we turn to the record to discern whether Rule 54(b) certification was warranted. Here, similar to *Noel*, the district court did not explain why it found that no just reason existed to delay entering judgment. Unlike *Noel*, however, based on the record before us we conclude that Rule 54(b) certification was not appropriate.

As in *Wood*, "[w]e start (and mostly stop) with juridical concerns." 422 F.3d at 879. We face the same hurdle encountered in *Wood*: "[w]e have no district court finding . . . about the interrelationship of the claims or issues, and the effect of the relationship on the likelihood of piecemeal appeals." *Id*. at 880.

The certification order carves out a single claim: "that the copying and searching of their Internet communications is conducted without a warrant or any individualized suspicion and, accordingly, violates the Fourth Amendment." This

claim is but one of seventeen asserted in the complaint.  Even excluding the claims seeking damages under FISA and injunctive relief under other statutes, which were dismissed in 2013,[3] still undecided are a number of constitutional and statutory claims relating to both Internet interception and cell phone surveillance.  *See Jewel*, 965 F. Supp. 2d at 1112–13 (listing the dismissed issues).  In the absence of a roadmap in the certification order, we are left to unscramble how these complex claims (and the government's defenses) intersect and overlap.

The district court observed that "Plaintiffs seek adjudication as to their Fourth Amendment Claim with regard *only* to the NSA's acknowledged Upstream collection of communications." *Jewel*, 2015 WL 545925, at *2 (emphasis added).  Jewel's counsel characterized the claim on appeal as "the entirety of the Fourth Amendment Internet interception claim against the government."  This effort to carve out a specific, severable claim obscures the fact that the Internet interception theory is not the only Fourth Amendment argument, nor is the Fourth Amendment the only ground for relief alleged to arise from the Internet interception program, nor does the appeal encompass all plaintiffs or all defendants.  It quickly becomes apparent that the Rule 54(b) order does not present final adjudication of a complete claim on the facts, the theories for relief, or the parties.  *See Houston Indus. Inc. v. United States*, 78 F.3d 564, 567 (Fed. Cir. 1996) ("The resolution of individual issues within a claim does not satisfy the requirements of Rule 54(b).").

---

[3] Those dismissal orders were not certified under Rule 54(b) and are not part of this appeal.

14      JEWEL V. NATIONAL SECURITY AGENCY

Jewel's assertion that the Fourth Amendment Internet interception claim is factually distinct from the rest of the litigation is unconvincing.  Jewel divides the claims into four categories, which they suggest are distinct:  Internet content, Internet records (metadata), telephone content, and telephone records (metadata).    All four categories rely on inter-connected factual allegations that the government collaborated with telecommunications providers to obtain information about domestic communications in a manner that is either unconstitutional or beyond the government's statutory authority.    Indeed, the complaint presents one section entitled "Factual Allegations Related to All Counts." We conclude that "this case would inevitably come back to this court on the same set of facts."  *See Wood*, 422 F.3d at 879.

Apart from the common and intersecting facts, the nature of the claims makes piecemeal certification inappropriate. Jewel attempts to bifurcate the Fourth Amendment claims, focusing this appeal on Internet interception, while leaving the Fourth Amendment phone records claims in district court. Notably, however, all five plaintiffs have Fourth Amendment claims related to their phone records allegations.  They also have damages claims against individual defendants for Fourth Amendment violations that have not yet been addressed by the district court.

The carve-out approach suffers from another infirmity— not even all of the Internet interception claims are raised in this appeal.  For example, the First Amendment claims remain unresolved in the district court, as do many of the statutory Internet interception claims.  *See Jewel*, 965 F. Supp. 2d at 1112.  Significantly, the Internet interception claims rely on overlapping elements of the same allegedly

illegal government actions.  Whether pleading constitutional or statutory violations, the "legal right to relief stems largely from the same set of facts and would give rise to successive appeals that would turn largely on identical, and interrelated, facts."  *Wood*, 422 F.3d at 880.  The district court's conclusion that the plaintiffs "failed to establish a sufficient factual basis to find they have standing to sue under the Fourth Amendment regarding the possible interception of their Internet communications" cannot be limited to the narrow Fourth Amendment claim. *Jewel*, 2015 WL 545925, at *1.  The court rejected Jewel's standing argument because plaintiffs failed to describe the Internet interception program accurately.  *Id*. at *4.  It is only logical that this reasoning raised a potential standing bar for all claims related to the same government program.  The district court further held that, even if plaintiffs could establish standing to challenge the Internet interception program, "*any* possible defenses would require impermissible disclosure of state secret information."  *Id.* at *1 (emphasis added).[4]  The alternative state secrets holding presents the same conundrum as the court's standing ruling:  it is not practical to cabin the ruling to the Fourth Amendment claim, thus presenting a realistic risk of duplicative litigation on remaining claims.

A final complication is that not all of the parties are included in this appeal, nor does this appeal resolve all of the Jewel plaintiffs' claims.  *See Spiegel v. Trustees of Tufts Coll.*, 843 F.2d 38, 44 (1st Cir. 1988) ("It will be a rare case where Rule 54(b) can appropriately be applied when the

---

[4] The district court did not address the relationship between this holding and its previous determination that FISA § 1806(f) preempts the state secrets doctrine for Stored Communications Act and Wiretap Act claims. *See Jewel*, 965 F. Supp. 2d. at 1108.

16      JEWEL V. NATIONAL SECURITY AGENCY

contestants on appeal remain, simultaneously, contestants below."). Only three of the five plaintiffs pursued the Fourth Amendment motion for summary judgment. Jewel explains that this is because two of the plaintiffs were not AT&T Internet customers and, therefore, did not claim that the government had collected information regarding their Internet use. Nevertheless, this circumstance fractures the appeal even further, especially because the facts and legal theories relied upon by the Jewel plaintiffs to show standing for the Fourth Amendment argument are not substantially different from some of the other constitutional and statutory claims, which apply to all plaintiffs.

In sum, the "practical effect of certifying the [Fourth Amendment] issue[] in this case is to deconstruct [the] action so as to allow piecemeal appeals with respect to the same set of facts." *Wood*, 422 F.3d at 880.

Apart from juridical concerns, which counsel against certification, we are not convinced that this appeal meets the "no just reason for delay" prong of Rule 54(b). Our consideration of the single issue served up for interlocutory review is more likely to cause additional delay than it is to ameliorate delay problems. *See Sussex Drug Prods. v. Kanasco, Ltd.*, 920 F.2d 1150, 1156 (3d Cir. 1990) ("The interlocking factual relationship of the various counts leading to the likelihood that a subsequent appeal would again seek review of the issues presented here also suggests that it was not in the interests of sound judicial administration for the district court to certify this judgment as final.").

We are sympathetic to the Jewel plaintiffs' desire to bring at least part of this case to a close. But awaiting a decision on a single claim, which is not a linchpin claim either factually

JEWEL V. NATIONAL SECURITY AGENCY          17

or legally, does not advance this result.  In fact, the result of this appeal has been to bring the district court proceedings to a halt.  Both sides point fingers as to why no final decision has been reached.  We do not take sides in that debate, except to say that the parties' and judicial resources would be better spent obtaining a final judgment on all of the claims, instead of detouring to the court of appeals for a piecemeal resolution of but one sliver of the case.

## CONCLUSION

Because the appeal does not meet the requirements of Rule 54(b), we lack jurisdiction over the appeal.  The government's motion to dismiss is granted, and the case is remanded to the district court for further proceedings.

**CERTIFICATION REVERSED; APPEAL DISMISSED; CASE REMANDED.**

**Each party shall bear its own costs on appeal.**