IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLYN JEWEL, ET AL., | |
|     Plaintiffs, | No. C 08-04373 JSW |
|   v. | |
| NATIONAL SECURITY AGENCY, ET AL., | |
|     Defendants. | |
| | No. C 07-00693 JSW |
| VIRGINIA SHUBERT, ET AL., | |
|     Plaintiffs, | **ORDER RE PRESERVATION ISSUES** |
|   v. | |
| DONALD J. TRUMP, ET AL., | |
|     Defendants. | |

In response to two hearings and two sets of briefing regarding compliance with relevant preservation orders and required destruction of certain communications data, the Court issues this order. The specific preservation issue now before the Court concerns the electronic communications acquired by defendant National Security Agency ("NSA"), using its Upstream Internet acquisition technique, prior to changes recently approved by the Foreign Intelligence Surveillance Court ("FISC"). Under the recent changes, the NSA is now obligated to abide by FISC-approved minimization procedures, with which Section 702 of the Foreign Intelligence Surveillance Act ("FISA") requires the NSA to comply, to destroy the former Upstream Internet communications data "as soon as practicable."

On November 16, 2009, the Court entered an evidence preservation order setting out the parties' obligations to preserve evidence that may be relevant to this action. (*See* Order dated November 13, 2009; Docket No. 51, ¶¶ A, D.)

In 2014, the Court heard a series of disputes which arose between the parties regarding whether the Government had complied with its preservation obligations or rather was compelled to follow the FISC requirement that it destroy bulk telephony metadata acquired pursuant to Section 215 of the Patriot Act within five years of its acquisition. On March 10, 2014, this Court issued an order granting Plaintiff's application for a temporary restraining order ("TRO") prohibiting the destruction of relevant evidence and requiring that the Government abide by the Court's prior evidence preservation order, including, but not limited to the preservation of telephone metadata or "call detail" records, pending further order of the Court. (*See* Order dated March 10, 2014; Docket No. 189 at 2.) After further briefing, the Court extended the TRO "until a final order resolving the matter is issued." (*See* Minute Order dated March 19, 2014; Docket No. 206.) The Court also ordered further briefing on the issue of the Government's compliance with the Court's prior evidence preservation order. (*Id.*)

However, before completion of that briefing, Plaintiffs filed a petition for emergency enforcement of the Court's TRO to prevent the destruction of communications acquired pursuant to Section 702 of FISA. The Court entered an order seeking to maintain the status quo and ordering the Government "not to destroy any documents that may be relevant to the claims at issue in this action, including the Section 702 materials." (Order dated June 5, 2014; Docket No. 236 at 2.) After the Government then moved to limit the scope of the TRO regarding Section 702 materials in light of alleged operational consequences and national security implications of the retention of all raw Internet communications data acquired through the NSA's Upstream acquisition technique, the Court denied Plaintiffs' emergency motion to enforce the original TRO as to the "Section 702 materials." (*See* Minute Order dated June 6, 2014; Docket No. 246.) At that time, the Court ordered the parties to provide briefing on whether Plaintiffs' claims encompass Section 702 and the appropriateness of an adverse

2

inference regarding standing based upon the alleged destruction of documents collected pursuant to both Section 215 of the Patriot Act and Section 702 of the FISA. (*Id.*)

Now before the Court is the preservation issue resulting from the Government's submission of its 2016 certifications and accompanying targeting and minimization procedures, as required for FISC approval. Due to alleged internal errors in NSA procedures leading to queries mistakenly collecting information on United States persons within the scope of Section 702 and non-compliance issues with FISC minimization procedures, the FISC found serious issues with regard to the protections afforded under the Fourth Amendment for United States persons whose information may have been mistakenly collected. (*See* FISC Memorandum dated April 26, 2017 ("FISC Memo"); Docket No. 358-1.) As explained by the Government, before the revised procedures, "Upstream Internet acquisition involved the acquisition not only of communications that are sent to or from a tasked selector, but also of communications 'about' a tasked selector. An 'about' communication is one that contains references to a targeted selector in the message body, but to which the target may not be a party." (Br. at 6, citing Privacy and Civil Liberties Oversight Board, *Report on the Surveillance Program Operated Pursuant to Section 702 of the Foreign Intelligence Surveillance Act* (July 2, 2014 ("PCLOB Report"), at 37.) The Upstream collection had apprarently mistakenly acquired Internet transactions which contained a targeted selector anywhere within it, including wholly domestic communications of United States persons.

In its recent submission of certifications, the Government submitted a set of revised targeting and minimization procedures that would substantially change how the NSA conducts certain aspects of its Upstream Internet acquisition under Section 702, primarily by eliminating future acquisition of "about" transactions altogether. The FISC found that, in order to avoid improper use or disclosures of communications acquired prior to the approval of the revised procedures, the NSA should sequester all Upstream Internet communications in its repositories that it could determine were collected before the new procedures took effect. The FISC also required that the Government cease collection of "about" communications, and destroy the sequestered transactions "as soon as practicable through an accelerated age-off process." (FISC

Memo.; Docket No. 358-1 at 24-25.) The FISC also found that "[s]equestered transactions may be retained for litigation purposes." (*Id*. at 24.)

In order to comply with its obligations to preserve relevant communications data, the Government proposes that Plaintiffs provide all identifiers they have used for online communications, such as e-mails, telephone numbers, IP addresses, or identifiers for other forms of online communication in which Plaintiffs engage. Plaintiffs contend that the Court should wait for the parties to complete the pending discovery requests in this matter before allowing the Government to destroy any potentially discoverable evidence contained in the sequestered storehouse of acquired Internet transactions data.

The Court finds the Government's proposal to retain all data relevant to Plaintiffs' potential specific transactions to be appropriate in this instance. The Court does not agree that the Government must suspend the accelerated ageing off process pending completion of plenary or standing-related discovery. The parties shall meet and confer at their earliest possible convenience to arrive at the universe of relevant identifiers – for all plaintiffs in both the *Jewel* and the *Shubert* matters as captioned in this Order – and shall submit a stipulated protective order to cover all of Plaintiffs' personal information. Once Plaintiffs provide the universe of their own identifiers and the protective order is entered, the Government shall further sequester and preserve all legacy Upstream data collected *to* or *from* or *about* Plaintiffs. Once sequestration of any Upstream Internet communications of Plaintiffs so identified, if any, is complete, the Government shall permit only technical access for purposes of maintaining data integrity and such other access as may be needed solely for the purposes of this litigation. The Government may first notify the FISC of this Court's order and shall notify this Court of any objections raised by the FISC. With that segregation and preservation complete, the Government may then purge its repositories of non-litigants' sequestered transactions as required by the FISC. Should the parties find that they are unable to address these matters expeditiously, the Court will aid the parties by setting a schedule.

In addition to the current pressing issue of evidence preservation, Plaintiffs here raise the issue of whether they are entitled to an adverse evidentiary inference based on the

4

Government's earlier destruction of data collected pursuant to Section 702. Plaintiffs seek to have the inference that the destroyed evidence would have shown that Plaintiffs' communications and communications records were collected, ultimately bearing on the legal decision whether they are entitled to a finding of standing by this Court. In their earlier briefing, Plaintiffs contended that the inference "simply seeks to ensure that plaintiffs are not harmed by the government's destruction of the very evidence that the government itself demands be produced in order for plaintiffs to maintain this litigation." (Plaintiffs' Brief dated July 18, 2014; Docket No. 260 at 2.) In their most recent briefing, Plaintiffs argue that the Court should address the issue of a potential adverse evidentiary inference after the resolution of any discovery objections and once the Court has received all of the evidence on standing that it has ordered to be produced, but prior to the legal briefing on the question of standing. The Court shall wait to rule definitively on the issue of an adverse inference until the discovery on standing is complete. However, having reviewed the parties' two sets of briefing on the evidence preservation issues, absent a further demonstration of relevance and bad faith, the Court is inclined not to grant such an adverse inference. *See, e.g., Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 989-90 (N.D. Cal. 2012).

**IT IS SO ORDERED.**

Dated: July 19, 2017

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE