CINDY COHN (SBN 145997)
cindy@eff.org
DAVID GREENE (SBN 160107)
LEE TIEN (SBN 148216)
KURT OPSAHL (SBN 191303)
JAMES S. TYRE (SBN 083117)
MARK RUMOLD (SBN 279060)
ANDREW CROCKER (SBN 291596)
JAMIE L. WILLIAMS (SBN 279046)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA  94109
Telephone:  (415) 436-9333
Fax:  (415) 436-9993

RICHARD R. WIEBE (SBN 121156)
wiebe@pacbell.net
LAW OFFICE OF RICHARD R. WIEBE
44 Montgomery Street, Suite 650
San Francisco, CA  94104
Telephone:  (415) 433-3200
Fax:  (415) 433-6382

RACHAEL E. MENY (SBN 178514)
rmeny@keker.com
BENJAMIN W. BERKOWITZ (SBN 244441)
PHILIP J. TASSIN (SBN 287787)
KEKER, VAN NEST & PETERS, LLP
633 Battery Street
San Francisco, CA  94111
Telephone:  (415) 391-5400
Fax:  (415) 397-7188

THOMAS E. MOORE III (SBN 115107)
tmoore@rroyselaw.com
ROYSE LAW FIRM, PC
149 Commonwealth Drive, Suite 1001
Menlo Park, CA  94025
Telephone:  (650) 813-9700
Fax:  (650) 813-9777

ARAM ANTARAMIAN (SBN 239070)
antaramian@sonic.net
LAW OFFICE OF ARAM ANTARAMIAN
1714 Blake Street
Berkeley, CA 94703
Telephone:  (510) 289-1626

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CAROLYN JEWEL, TASH HEPTING, YOUNG BOON HICKS, as executrix of the estate of GREGORY HICKS, ERIK KNUTZEN and JOICE WALTON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL SECURITY AGENCY, *et al*.,<br><br>Defendants. | CASE NO. 08-CV-4373-JSW<br><br>**PLAINTIFFS' RESPONSE TO THE COURT'S JUNE 13, 2018 BRIEFING ORDER**<br><br>The Honorable Jeffrey S. White |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

RESPONSES TO THE COURT'S QUESTIONS ........................................................................... 2

    I. Question 1 ......................................................................................................................... 2

    II. Question 2 ......................................................................................................................... 4

        A. Congress has forbidden the Court from excluding the classified materials from the case. ........................................................................................................ 4

        B. What effect would result from the Court excluding classified evidence that section 2712(b)(4) requires the Court to use in deciding plaintiffs' claims? ............. 6

    III. Question 3 ......................................................................................................................... 9

        A. Plaintiffs do not need access to the classified evidence in order to rely on the classified evidence for standing and the merits. ......................................................... 9

        B. The Court need not separate the proceedings on standing from proceedings on the merits of plaintiffs' claims but may have a single trial addressing standing and the merits. ............................................................................................. 10

    IV. Question 4 ....................................................................................................................... 12

    V. Question 5 ....................................................................................................................... 13

OTHER MATTERS ...................................................................................................................... 14

CONCLUSION .............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*ACLU v. Clapper*,
  785 F.3d 787 (2d Cir. 2015) ............................................................................................. 7, 10

*Alliance For Environmental Renewal, Inc. v. Pyramid Crossgates Co.*,
  436 F.3d 82 (2d Cir. 2006) ..................................................................................................... 11

*Council of Ins. Agents & Brokers v. Molasky-Arman*,
  522 F.3d 925 (9th Cir. 2008) ..................................................................................................... 6

*Gibson v. Chrysler*,
  261 F.3d 927 (9th Cir. 2001) ................................................................................................... 12

*Hepting v. AT&T*,
  439 F. Supp. 2d 974 (N.D. Cal. 2006) ....................................................................................... 3

*Jewel v. NSA*,
  673 F.3d 902 (9th Cir. 2011) ........................................................................ 1, 6, 7, 9, 10, 12, 13, 14

*Jewel v. NSA*,
  810 F.3d 622 (9th Cir. 2015) ..................................................................................................... 1

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...................................................................................................... 7, 13, 14

*Rosales v. U.S.*,
  824 F.2d 799 (9th Cir. 1987) ................................................................................................... 11

*U.S. v. SCRAP*,
  412 U.S. 669 (1973) ................................................................................................................... 6

*Warth v. Seldin*,
  422 U.S. 490 (1975) .................................................................................................................. 13

**Statutes**

18 U.S.C. § 2712(b)(3) ..................................................................................................................... 10

18 U.S.C. § 2712(b)(4) ........................................................................................ 1, 2, 4, 5, 6, 9, 12, 13, 14

50 U.S.C. § 1806(f) ............................................................................................................. 1, 2, 5, 6, 9

**Rules**

Fed. R. Civ. P. 36(a)(4) ..................................................................................................................... 14

# INTRODUCTION

Plaintiffs address the Court's questions with the following principles in mind:

- The Court has ruled that, for plaintiffs' statutory claims, the procedures of section 1806(f) adopted by section 2712(b)(4) preempt the state secrets privilege. 18 U.S.C. § 2712(b)(4); 50 U.S.C. § 1806(f); ECF No. 153 at 2, 12-15, 24; No. 340 at 2-4; No. 347 at 1-2.

- "The purpose of this provision [*i.e.*, section 1806(f)] is to permit courts to determine whether any particular surveillance was lawfully authorized and executed." ECF No. 153 at 13.

- Section 1806(f) "leaves no room for application of the state secrets privilege." ECF No. 153 at 15. Section 1806(f) "*requires* courts to review the potentially sensitive surveillance materials" "that the application of the state secrets privilege would otherwise summarily exclude." ECF No. 153 at 12-13 (italics added).

- Proof of plaintiffs' standing centers on the element of injury in fact. *Jewel v. NSA*, 673 F.3d 902, 908 (9th Cir. 2011). The injury-in-fact question is whether the direct and indirect evidence, both public and classified, establishes that it is more likely than not: (1) that the government defendants' mass interception of Internet communications included at least one of plaintiffs' communications; (2) that the government defendants' bulk collection of Internet metadata included at least one of plaintiffs' metadata records; (3) that the government defendants' bulk collection of phone records included at least one of plaintiffs' phone records.

- The Ninth Circuit reacted with dismay in 2015 that since its 2011 remand "[s]everal years of further proceedings have yet to produce a final judgment." *Jewel v. NSA*, 810 F.3d 622, 625 (9th Cir. 2015). Two and one-half additional years have now elapsed.

# RESPONSES TO THE COURT'S QUESTIONS

**I.     Question 1**

"(1) whether the disclosure of the classified materials could be reasonably expected to cause harm to national security;"

No one is proposing public disclosure of the Admiral Rogers Declaration (ECF No. 388), the second Dr. Mark O. Declaration (ECF No. 390, which sets forth the results of the identifier searches), or the classified documents submitted to the Court in response to plaintiffs' document requests (ECF No. 388). Those are the only "classified materials" before the Court for its use in determining standing and the merits.

What section 2712(b)(4) obligates the Court to do is to *use* these classified materials to adjudicate plaintiffs' claims, including their standing, and to do so *ex parte* and *in camera* without disclosing the classified materials. Congress imposed this obligation on the Court and forbade any exceptions. 18 U.S.C. § 2712(b)(4) (making the procedures of section 1806(f) the "exclusive means" governing classified materials "[n]otwithstanding any other provision of law").

Because the government defendants have made the assertion that disclosure of the classified materials would harm national security, that assertion is binding on the Court for purposes of section 2712(b)(4) and section 1806(f). The Court does not have the power to independently review that determination. But that only means that the Court must use the evidence *ex parte*, *in camera* to decide the merits of the case. It does not mean that the Court has the power to exclude the evidence from the case. Plaintiffs explain this point further in response to Question 2.

Plaintiffs offer the following further observations.

*First*, the basic facts sufficient to establish plaintiffs' standing, set forth below, can be discussed without any harm to national security. Indeed, the mass surveillance programs that injured plaintiffs along with many millions of other Americans are already widely known. Much has been admitted by the government in the Section 702 Report and the Section 215 Report of the Privacy and Civil Liberties Oversight Board and elsewhere.

Plaintiffs' injury-in-fact for their Wiretap Act claims is that at least one of their Internet communications was among the communications of many millions of Americans that were

intercepted in bulk. The initial interception and redirection of communications transiting the Internet backbone is sufficient alone to confer standing, regardless of how the government subsequently processed the communications and even if it never put plaintiffs' communications into storage.

Plaintiffs' injury-in-fact for their phone records Stored Communications Act ("SCA") claims is that the government engaged in bulk collection of the phone records of many millions of Americans, including plaintiffs.

Plaintiffs' injury-in-fact for their Internet metadata SCA claims is that the government engaged in bulk collection of the Internet metadata of many millions of Americans, including plaintiffs.

Finding that these facts exist would cause no harm to national security. It discloses nothing at all about whom the government's surveillance targets are for the Court to look at all of the evidence, classified and public, and then to publicly say that plaintiffs were among the millions of innocent Americans whose Internet communications were subject to the admitted mass untargeted interception, and were among the millions of Americans whose phone records and Internet metadata were subject to the admitted untargeted bulk collection. Making that finding also does not reveal the means by which the government identifies its surveillance targets or the methods by which a target's Internet communications are used to identify other potential targets. But if the Court has any qualms, it can always issue an opinion with classified sections.

*Second*, because the Court has denied plaintiffs access to the classified materials, plaintiffs do not know for certain what they contain. But there may well be much in the classified materials that could be safely disclosed. To the extent the classified materials address the President's Surveillance Program ("PSP"), there is likely much that could be disclosed without harm. The PSP ended more than a decade ago in January 2007. The existence and scope of the PSP programs has been publicly disclosed and is widely known. Likewise, there have been extensive disclosures of the phone records program, which ended completely in 2015. And AT&T's participation in the government's surveillance was established long ago, as the *Hepting* court found. *Hepting v. AT&T*, 439 F. Supp. 2d 974, 991-92 (N.D. Cal. 2006) ("AT&T and the government have for all practical

purposes already disclosed that AT&T assists the government in monitoring communication content.").

Further, the documents that the government defendants have submitted *ex parte*, *in camera* have apparently never undergone an individualized declassification review, for the government defendants have not disclosed a single word from those documents, and surely within those thousands of pages there exist many portions that could be declassified and disclosed without causing harm.  The Court should order that these documents be reviewed for possible declassification, just as it previously ordered a declassification review for all declarations submitted in this lawsuit.  3/19/14 RT at 96-98.  This is no different than the declassification review that occurs in Freedom of Information Act cases.

But again, no one is proposing public disclosure of the Rogers Declaration, the Mark O. Declaration, or documents that are properly classified, only that the Court use these materials *ex parte* and *in camera* to decide plaintiffs' claims, as section 2712(b)(4) requires.

**II.     Question 2**

"(2) whether the scope of the classified materials, provided it indeed does disclose 'a voluminous amount of exceptionally detailed information about sources, methods, and operations of six separate NSA surveillance programs conducted over a period of nearly 20 years' requires that the Court uphold the Government's assertions of privilege, and mandate removing the evidence from the case entirely; what effect this action would have on the remainder of the case;"

This question has two parts:  The first part asks whether the Court may uphold the government's privilege assertions and remove the classified evidence from the case.  The answer is "no"—Congress has preempted the privileges and so the Court may not exclude the evidence.  The second part asks what effect upholding the privileges and excluding the evidence would have on the rest of the case.  The answer is that excluding the classified evidence would be reversible error, but plaintiffs would nonetheless proceed to litigate the case with the public evidence.

**A.     Congress has forbidden the Court from excluding the classified materials.**

Addressing the first part of the question, the classified materials, whatever their scope or content, do not require, or permit, the Court to uphold the government defendants' privilege

assertions or to exclude any classified evidence. Section 2712(b)(4) forbids the Court from doing so because it displaces the state secrets and other privileges with the procedures of section 1806(f), which require that the classified evidence be used to decide the case, not excluded.

The Court's question asks whether the purpose of the Court's *ex parte*, *in camera* review of classified materials under section 2712(b)(4) is to decide if their disclosure would harm national security and, if so, to apply the state secrets privilege and exclude the evidence. That view is absolutely wrong. The purpose of reviewing the classified evidence is *not* to decide whether to apply the state secrets privilege; it is to use the evidence to decide the case.[1]

The starting point for using section 1806(f) is always the government's representation that there is evidence whose "disclosure . . . would harm the national security." 50 U.S.C. § 1806(f). If the government has asserted that disclosure of the evidence would harm national security, the court cannot second-guess the representation of harm, but neither may it exclude the evidence. Rather than excluding the evidence, section 1806(f) tells the court to use the evidence to decide the case on its merits.

There are *no* circumstances in which section 2712(b)(4) or section 1806(f) authorizes a court to refuse to use the classified evidence submitted to it to decide the case. Neither section 2712(b)(4) nor section 1806(f) give the Court any authority to exclude classified evidence, or to apply the state secrets privilege instead of the procedures of section 1806(f) to the classified evidence. Plaintiffs are aware of no case in which a court applying section 1806(f)'s procedures has refused to use the classified evidence to decide the issues before it and instead has excluded the evidence by applying the state secrets privilege.

If the Court, having received classified evidence under section 1806(f), were to exclude it under the state secrets privilege because the evidence if publicly disclosed would cause harm, it would be upending section 1806(f) and engaging in an entirely novel and unauthorized process.

---

[1] Because the classified evidence is now before the Court, the government defendants are equally free to use it in their defense. The Court's concern at the Fourth Amendment stage that the government defendants might be deprived of a valid defense by the inability to use classified evidence has now vanished. ECF No. 321 at 9.

That approach would turn section 1806(f) into a nullity: Section 1806(f)'s essential precondition—that disclosure of the evidence would be harmful—would also bar courts from ever using classified evidence to decide cases, thwarting Congress's purpose.

When the Court in its 2013 order rejected the government defendants' state secrets and statutory privilege assertions and ruled that section 2712(b)(4) required it instead to apply the procedures of section 1806(f), it recognized its role was to use the classified evidence to decide plaintiffs' claims, rather than excluding the evidence. ECF No. 153 at 2:20-21, 11-13, 15, 24; No. 340 at 2-4; No. 347 at 1-2. There is no exception to this duty.

### B.  What effect would result from the Court excluding classified evidence that section 2712(b)(4) requires the Court to use in deciding plaintiffs' claims?

The short answer to the second part of the Court's question is that excluding the classified materials would embed reversible error into the case. Congress has required the Court to use the classified evidence in deciding plaintiffs' claims. 18 U.S.C. § 2712(b)(4). Excluding "'a voluminous amount of exceptionally detailed information about sources, methods, and operations of six separate NSA surveillance programs conducted over a period of nearly 20 years'" in violation of section 2712(b)(4) would certainly be prejudicial if the Court then went on to dismiss plaintiffs' claims. The result would be an appeal and an inevitable reversal and remand years later.

But if the Court were to commit the error of excluding the classified evidence, plaintiffs would nonetheless litigate standing and the merits using all of the available public evidence, including government admissions. That public evidence is sufficient to establish plaintiffs' standing.

As the Ninth Circuit held, plaintiffs have legally protected privacy interests in their Internet communications and in their telephone and Internet communications records. *Jewel*, 673 F.3d at 908, 913.

The quantum of interference with plaintiffs' communications and communications records required to establish their standing is minimal. "'[A]n identifiable trifle is enough for standing.'" *U.S. v. SCRAP*, 412 U.S. 669, 689 n.14 (1973); *quoted in Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 932 (9th Cir. 2008).

For their Wiretap Act claim, the initial bulk interception that includes plaintiffs' Internet communications is an injury in fact sufficient to give them standing, even if the Court ultimately concludes that the interception does not amount to a Wiretap Act violation. *Jewel*, 673 F.3d at 907 n.4, 911 n.5 (warning against "conflat[ing] the ultimate merits question—whether the surveillance exceeded statutory or constitutional authority—with the threshold standing determination"). Plaintiffs' communications traveling on the Internet backbone were indiscriminately intercepted, copied, and redirected in bulk (for example, by a splitter or other similar technologies) along with those of millions of other Americans. The initial interception, copying, and redirection of plaintiffs' communications, diverting them from their normal course of transmission, is an injury in fact and is far more than an "identifiable trifle." It is an injury in fact regardless of what happens to plaintiffs' communications after they have been redirected, and even if those communications are never permanently stored.

For their phone records claim, the bulk collection of phone records from plaintiffs' telephone companies is an injury in fact sufficient to establish plaintiffs' standing. *See* ECF No. 321 at 6; *ACLU v. Clapper*, 785 F.3d 787, 801 (2d Cir. 2015) ("Whether or not such claims prevail on the merits, appellants surely have standing to allege injury from the collection, and maintenance in a government database, of records relating to them."). For their Internet metadata claim, the bulk collection of Internet metadata from Internet service providers similarly is an injury in fact sufficient to establish plaintiffs' standing.

Standing is determined under the facts existing at the time the lawsuit was filed. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992). Plaintiffs' claims extend to the beginning of the surveillance programs in October 2001, so any interception of a single one of their communications between October 2001 and the filing of this lawsuit in September 2008, any collection of a single phone record of theirs between 2001 and 2008, and any collection of a single Internet metadata record of theirs between 2001 and 2008 suffices for standing.

Like any element of their case, plaintiffs need only prove it is more likely than not that they have suffered an injury in fact, not that it is absolutely certain. And they may prove it by any combination of direct and indirect evidence that taken together shows: it is more likely than not

that the government defendants' mass interceptions of Internet communications included one or more of plaintiffs' communications; it is more likely than not that one or more of plaintiffs' call records were among the many billions of call records swept up by the government's bulk collection over the years; and it is more likely than not that one or more of plaintiffs' Internet metadata records was swept up in the government's bulk collection over the years of the Internet metadata associated with many billions of Internet communications.

The Court previously concluded when it looked at some of the public evidence that plaintiffs lacked standing to pursue their Fourth Amendment Internet interception claim. But the Court got both the facts and the law wrong in that decision.

On the facts, the Court mistakenly believed "Plaintiffs allege that, as AT&T customers, all of their Internet communications have been collected and amassed in storage." ECF No. 321 at 6. But plaintiffs' Fourth Amendment claim challenged only the initial interception, copying, and searching of their communications, not storage. Plaintiffs' motion did not claim that "all of their Internet communications have been collected and amassed in storage." To the contrary, plaintiffs expressly stated that whether or not the government ultimately put in storage any of plaintiffs' communications was irrelevant to their Fourth Amendment claim. ECF No. 261 at 8-9 ("The communications the government retains at stage four [of plaintiffs' diagram at p. 5, the storage stage] are not at issue here."). Plaintiffs also did not claim that *all* of their communications were intercepted; standing requires only a single interception for each of them. And plaintiffs regularly engage in international Internet communications—the admitted focus of the government's surveillance. ECF No. 263 at ¶¶ 6, 8; No. 264 at ¶¶ 8, 9; No. 265 at ¶¶ 8, 9.

On the law, the Court was mistaken in requiring plaintiffs to show more than the initial mass interception to establish their standing. While faulting the sufficiency of plaintiffs' showing as to what occurs in the "secure room" *after* the initial interception and copying of plaintiffs' communications by the fiber-optic splitters outside of the secure room, the Court did not dispute that plaintiffs' eyewitness evidence was sufficient to establish the initial interception and copying by the splitters. ECF No. 321 at 8. That evidence is also supported by the PCLOB Section 702 Report's admissions that communications are intercepted by devices sitting on the Internet

backbone, before any filtering or scanning or storage occurs.  ECF No. 286-3 at 29 (PCLOB 702 Report at 124); No. 262 at 11-12 (PCLOB 702 Report at 36-37); No. 310 at 14 (PCLOB 702 Report at 39).   But that initial interception is all plaintiffs needed to show to establish standing.  By requiring plaintiffs to show more, i.e., to show what happened after the injury in fact caused by the initial interception, the Court erroneously strayed from "the threshold standing determination" into "the ultimate merits question—whether the surveillance exceeded statutory or constitutional authority."  *Jewel*, 673 F.3d at 911 n.5.

The Court has never addressed the evidence regarding plaintiffs' standing for their phone records claims or their Internet metadata claims.

Finally, if the Court, having reviewed the evidence *ex parte* and *in camera* and finding that it contained evidence supporting plaintiffs' standing, were nonetheless to dismiss plaintiffs' claims, it would be committing a grave miscarriage of justice and violating section 2712(b)(4).  The Court would be defying Congress's mandate that it use the evidence, not exclude it.  Congress has foreclosed the Court from holding that plaintiffs lack standing while knowing that the secret evidence submitted to it establishes plaintiffs' standing.

### III.  Question 3

"(3) in what circumstances could Plaintiffs proceed on the merits of their claims without access to the evidence establishing whether or not they have standing to sue;"

**A.  Plaintiffs do not need access to the classified evidence in order to rely on the classified evidence for standing and the merits.**

Plaintiffs are entitled to rely on the classified evidence submitted to the Court even though they lack access to it, and may do so both to show standing and to prove the merits.

Under the procedures of section 2712(b)(4) and section 1806(f), plaintiffs do not need *access* to the classified evidence in order to rely on the classified evidence to prove their standing, or to prove the merits.  Under those procedures, the Court has access to the classified evidence and the Court must analyze the evidence in detail and identify every instance in which it supports plaintiffs' standing, either directly or indirectly.  (Plaintiffs remain available to assist the Court in that task.)

For example, the government obtained plaintiffs' phone records from AT&T by means of letters from the NSA Director during the PSP period and by means of Foreign Intelligence Surveillance Court ("FISC") orders during the post-PSP period. If the government defendants have responded fully to plaintiffs' document requests, as they say they have, their classified document production includes these letters and FISC orders, and these alone conclusively establish plaintiffs' standing. *ACLU v. Clapper*, 785 F.3d at 801.

In addition, there is public evidence, both direct and circumstantial, showing plaintiffs have suffered injury in fact, and plaintiffs do have access to the public evidence. This is true both for their communications content claims and their communications records claims.

The Court must then combine all of the classified evidence it has identified that supports plaintiffs' standing together with the public evidence that plaintiffs will proffer and decide whether the sum of the evidence shows it is more likely than not that plaintiffs' communications and communications records have been affected by the government's surveillance programs. The same process of the Court reviewing and combining the classified and the public evidence will occur at the merits phase at trial.

Moreover, as discussed in response to Question 4, plaintiffs are seeking an adverse evidentiary inference because of the government's failure to preserve evidence. If the Court grants such an inference, it will weigh in plaintiffs' favor both for standing and for the merits.

**B.     The Court need not separate the proceedings on standing from proceedings on the merits of plaintiffs' claims but may have a single trial addressing standing and the merits.**

It is established as law of the case that plaintiffs have adequately alleged standing. *Jewel*, 673 F.3d at 910. That means the Court has jurisdiction to proceed to the trial phase, at which both standing and the merits are at issue and subject to proof.[2]

Ordinarily, when standing is adequately alleged and the evidence on standing and on the merits overlaps, courts do not break out proof of standing into a separate proceeding from proof of

---

[2] Plaintiffs' statutory claims are tried to the Court without a jury. 18 U.S.C. § 2712(b)(3).

the merits.  Instead, the case is tried as a whole.  "[W]here the evidence concerning standing overlaps with evidence on the merits, the Court might prefer to proceed to trial and make its jurisdictional ruling at the close of the evidence."  *Alliance For Environmental Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 (2d Cir. 2006).

Moreover, "if the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits" and those facts are disputed, then "the intertwined jurisdictional facts *must* be resolved *at trial* by the trier of fact."  *Rosales v. U.S.*, 824 F.2d 799, 803 (9th Cir. 1987) (italics added).

The Court is thus free to proceed now with trying the case as a whole.  And indeed, proceeding directly to the trial phase is preferable here because it is the most expeditious means of resolving this decade-old case.

The Court's present plan of an initial round of summary judgment proceedings on standing followed by proceedings on the merits would require the Court to twice undertake the laborious and time-consuming burden of sifting through the classified evidence on its own.  The first time, on summary judgment, the Court would not even be determining standing but only whether there is sufficient evidence from which a reasonable trier of fact could conclude that standing exists.  The second time, at trial, the Court would go through the same classified evidence again to determine whether plaintiffs have proven standing and, if so, would rule on the merits.  Two successive proceedings, in addition to being burdensome and duplicative, would also further delay final resolution of the case by many months, if not years.

In comparison, proceeding directly to trial would reduce the burden of classified evidence review on the Court and speed final resolution.  The corollary to addressing standing and the merits in a single trial proceeding is that discovery would have to be opened up to include the merits as well as plaintiffs' standing.  But doing so likely would not be daunting because there is so much crossover between the evidence the government defendants have already submitted on standing and the evidence relevant to the merits.  The additional evidence needed to address the merits would likely not be much.

Plaintiffs request that the Court set a trial date for February or March, 2019.

### IV. Question 4

"(4) are there any examples of similar cases where classified or confidential information is withdrawn from the case but the presumption of standing is asserted; how can Plaintiffs establish they may be aggrieved persons without access to the information;"

Answering the second part of the question first, the Ninth Circuit has held that plaintiffs do not need to establish they are "aggrieved persons" in order to prove their standing. *Jewel*, 673 F.3d at 907 n.4. In the prior appeal, the government defendants argued that in order to establish standing plaintiffs had to show they were aggrieved persons. Ninth Cir. Case No. 10-15616, Dkt. No. 28-1 at p. 38. The Ninth Circuit squarely rejected this argument, holding instead that whether plaintiffs are "'Aggrieved Person[s]'" "is a merits determination, not a threshold standing question." *Jewel*, 673 F.3d at 907 n.4. That holding is law of the case and is binding on the Court.

Accordingly, the Court cannot require that plaintiffs prove they are "aggrieved persons" in order to prove their standing. Plaintiffs need not prove they are "aggrieved persons" until the litigation reaches the merits stage.

With respect to the first part of the question, plaintiffs do not seek any presumption of the legal conclusion of standing. Rather, they respectfully request that when the issue of standing comes before the Court for decision that the Court do what section 2712(b)(4) compels it to do: determine plaintiffs' standing by looking at all of the evidence, both classified and public.

In addition, evidentiary inferences may be used to establish facts supporting standing. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001). Here, plaintiffs seek adverse factual inferences as a sanction for the government defendants' failure to preserve evidence. The government defendants deleted Internet content data from 2007 to 2014, deleted Internet metadata collected from 2004 to 2011, and deleted phone records collected from 2006 to 2009. ECF No. 228 at ¶¶ 33-34. The government did initially preserve Internet content data from 2001 to 2007 as the Court's preservation order required but then spoliated that data after the commencement of this lawsuit by deleting the tapes on which it was stored. ECF No. 403-1. The government is now attempting to restore the deleted 2001-2007 Internet content data. *Id*. As a partial remedy for the government defendants' failure to preserve evidence, plaintiffs have sought a

factual evidentiary inference that their communications and communications records were included among the destroyed evidence, as a way to mitigate the harm caused by the destruction of evidence. ECF No. 233 at 20-21; No. 260 at 12-14; No. 367 at 2, 5-7; No. 374 at 5. Such a factual inference would establish their injuries in fact.

## V.   Question 5

"(5) setting aside the issue of the classified nature of the documents at issue, address the current legal standard for asserting standing in these circumstances."

The general standard for standing remains as the Ninth Circuit set it forth in the prior appeal: "The oft-cited *Lujan v. Defenders of Wildlife* ('*Lujan*') restates the three requirements that must be met for Article III standing: (1) an injury in fact that (2) is fairly traceable to the challenged conduct and (3) has some likelihood of redressability. 504 U.S. 555, 560-61 (1992)." *Jewel*, 673 F.3d at 908.

Here, the question of standing centers on the first element: injury in fact. There is no dispute that the mass interceptions of Internet communications content and the bulk collection of phone records and Internet metadata are traceable to the government defendants' surveillance programs that plaintiffs challenge (the second element). *Jewel*, 673 F.3d at 912 ("[T]he harms Jewel alleges—invasion of privacy and violation of statutory protections—can be directly linked to this acknowledged surveillance program."). There is also no doubt that section 2712 provides an avenue of redress for plaintiffs' claims (the third element). *Id.* ("There is no real question about redressability.") "In the surveillance statutes, by granting a judicial avenue of relief, Congress specifically envisioned plaintiffs challenging government surveillance under this statutory constellation." *Id*. at 913; ECF No. 347 at 2 (quoting *Jewel*). And that statutory constellation includes section 2712(b)(4), which gives the courts the classified evidence necessary to decide claims under section 2712 and the duty to use that evidence.

The Supreme Court and the Ninth Circuit have both warned that proving standing to pursue a statutory cause of action does *not* require proving the elements of the cause of action. Standing is a threshold jurisdictional question that "in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

"[W]hether a plaintiff states a claim for relief typically relates to the merits of a case, not to the dispute's justiciability." *Jewel*, 673 F.3d at 907 n.4. Indeed, in the prior appeal, the Ninth Circuit warned this Court against "conflat[ing] the ultimate merits question—whether the surveillance exceeded statutory or constitutional authority—with the threshold standing determination." *Id*. at 911 n.5; *see also id*. at 907 n.4.

Finally, "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Here, that means that plaintiffs must prove injury in fact by the more-likely-than-not preponderance standard of civil litigation, and not to any greater degree of certainty.

## OTHER MATTERS

In its order, the Court stated, "On April 1, 2018, Defendants' production was complete." ECF No. 404 at 1. That statement is not correct. As the government defendants have explained, they are continuing to attempt to restore the tapes containing Internet content. ECF No. 403-1. The government defendants estimated that the restoration process would take approximately 90 additional days from June 13, 2018, and that completing the searching of the recovered data files will take additional time beyond that. *Id*.

In addition, plaintiffs will be moving the Court for an order compelling the government defendants to respond to each of plaintiffs' request for admissions in the form required by the Federal Rules of Civil Procedure. The government defendants, instead of responding specifically to each request for admission with a separate admission or denial as Rule 36 requires, have provided a classified declaration in which they agglomerate multiple interrogatories and RFAs into groups, and then respond in narrative form. Fed. R. Civ. P. 36(a)(4); ECF No. 388. The parties are in the process of preparing a joint discovery letter brief on this issue.

## CONCLUSION

The Court should use all of the classified evidence *ex parte* and *in camera* to decide plaintiffs' claims, including their standing, as section 2712(b)(4) requires.

DATE:  July 20, 2018

Respectfully submitted,

*s/ Richard R. Wiebe*
Richard R. Wiebe

CINDY COHN
DAVID GREENE
LEE TIEN
KURT OPSAHL
JAMES S. TYRE
MARK RUMOLD
ANDREW CROCKER
JAMIE L. WILLIAMS
ELECTRONIC FRONTIER FOUNDATION

RICHARD R. WIEBE
LAW OFFICE OF RICHARD R. WIEBE

THOMAS E. MOORE III
ROYSE LAW FIRM, PC

RACHAEL E. MENY
BENJAMIN W. BERKOWITZ
PHILIP J. TASSIN
KEKER, VAN NEST & PETERS LLP

ARAM ANTARAMIAN
LAW OFFICE OF ARAM ANTARAMIAN

Attorneys for Plaintiffs