JOSEPH H. HUNT
Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director

JAMES J. GILLIGAN
Special Litigation Counsel

RODNEY PATTON
Senior Trial Counsel

JULIA A. HEIMAN
Senior Counsel

OLIVIA HUSSEY SCOTT
Trial Attorney

U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-3358; Fax: (202) 616-8470
Email: james.gilligan@usdoj.gov

*Attorneys for the Government Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| CAROLYN JEWEL, *et al.*, | Case No. 4:08-cv-4373-JSW |
| Plaintiffs, | **GOVERNMENT DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' STATUTORY CLAIMS** |
| v. | [No hearing date] |
| NATIONAL SECURITY AGENCY, *et al.*, | Courtroom 5, 2nd Floor |
| Defendants. | Hon. Jeffrey S. White |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that, at a date and time to be determined by the Court, before Judge Jeffrey S. White, defendants NATIONAL SECURITY AGENCY ("NSA"); PAUL M. NAKASONE, Director of the NSA, in his official capacity; the UNITED STATES OF AMERICA; DONALD J. TRUMP, President of the United States, in his official capacity; the DEPARTMENT OF JUSTICE; JEFFERSON B. SESSIONS, III, Attorney General of the United States, in his official capacity; and DANIEL COATS, Director of National Intelligence, in his official capacity (hereinafter the "Government Defendants")[1] will move for summary judgment as to all of Plaintiffs' remaining statutory claims against the Government Defendants pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The grounds for this motion are that there is no genuine issue of material fact that Plaintiffs cannot meet their burden of establishing their standing. Due to the required exclusion of evidence subject to the Government Defendants' assertions of the state secrets privilege and of the statutory privileges established by 50 U.S.C. § 3024(i)(1) and 50 U.S.C. § 3605(a), Plaintiffs lack admissible evidence with which to establish their standing to maintain their statutory claims, and the Court therefore lacks subject-matter jurisdiction to consider them. Additionally, dismissal is required because the case cannot be litigated on the merits without creating an unjustifiable risk of divulging state secrets.

The relevant facts, authority, and arguments supporting the Government Defendants' motion are set forth below in the accompanying Memorandum of Points Authorities in Support of the Government Defendants' Motion for Summary Judgment as to Plaintiffs' Statutory Claims. For the reasons stated therein, the Government Defendants' motion should be granted, judgment awarded to the Government Defendants on Plaintiffs' statutory claims as a matter of law, and final judgment entered for the Government Defendants as to all counts.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, defendants Nakasone, Trump, Sessions, and Coats have been automatically substituted herein as defendants sued in their official capacities in lieu of, respectively, Admiral Michael S. Rogers, former Director of the NSA, Barack H. Obama, former President of the United States, Dana J. Boente, former Acting Attorney General of the United States, and Michael S. Dempsey, former Acting Director of National Intelligence.

Dated:     September 7, 2018

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director

*/s/ James J. Gilligan*
JAMES J. GILLIGAN
Special Litigation Counsel

RODNEY PATTON
Senior Trial Counsel

JULIA A. HEIMAN
Senior Counsel

OLIVIA HUSSEY SCOTT
Trial Attorney

U.S. Department of Justice,
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Room 6102
Washington, D.C. 20001

Phone: (202) 514-3358
Fax: (202) 616-8470
Email:  james.gilligan@usdoj.gov

*Attorneys for the Government Defendants*

JOSEPH H. HUNT
Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director

JAMES J. GILLIGAN
Special Litigation Counsel

RODNEY PATTON
Senior Trial Counsel

JULIA A. HEIMAN
Senior Counsel

OLIVIA HUSSEY SCOTT
Trial Attorney

U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, NW, Rm. 6102
Washington, D.C. 20001
Phone: (202) 514-3358; Fax: (202) 616-8470
Email: james.gilligan@usdoj.gov

*Attorneys for the Government Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

|  |  |
|---|---|
| CAROLYN JEWEL, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL SECURITY AGENCY, *et al.*, <br><br> Defendants. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE GOVERNMENT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' STATUTORY CLAIMS** <br><br> [No hearing date] <br> Courtroom 5, 2nd Floor <br><br> Hon. Jeffrey S. White |

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

BACKGROUND ........................................................................................................... 3

    The Challenged NSA Intelligence-Gathering Programs .................................... 3

    Plaintiffs' Claims ................................................................................................ 4

    Discovery Proceedings ....................................................................................... 5

ARGUMENT ................................................................................................................. 7

I.      LEGAL STANDARD FOR SUMMARY JUDGMENT ................................... 7

II.    THE GOVERNMENT DEFENDANTS ARE ENTITLED TO SUMMARY
       JUDGMENT, BECAUSE PLAINTIFS HAVE NOT ESTABLISHED THEIR
       STANDING ......................................................................................................... 7

     A.    Plaintiffs Bear the Burden of Establishing Their Article III Standing .................... 7

     B.    Because the Government Has Properly Invoked the State Secrets Privilege,
         Classified Information Bearing upon the Question of Plaintiffs' Standing
         Must Be Removed Entirely from this Case .......................................................... 9

     C.    Judgment Must Be Entered for the Government Because Without the
         Privileged Information Plaintiffs Lack Any Competent Evidence on Standing,
         and the Court Should Not Proceed Even if it Were Theoretically Possible
         to Do So ............................................................................................................ 11

     D.    Plaintiffs' Position That FISA Authorizes *Ex Parte, In Camera* Review of
         State Secret Information to Determine Their Standing Is Contrary to Law ......... 16

         1.    Section 1806(f) does not apply to the question of Plaintiffs'
            standing ................................................................................................. 17

         2.    Even if, by its terms, § 1806(f) applied here, it does not displace
            the state secrets privilege, or the Government's statutory privileges,
            in these circumstances .......................................................................... 22

            a.    To displace the state secrets privilege would require a clear
               and unequivocal statement of legislative intent ............................ 22

            b.    Neither the text nor legislative history of § 1806(f) speaks
               to abrogation of the state secrets privilege in this situation .......... 23

CONCLUSION ............................................................................................................ 25

1

## TABLE OF AUTHORITIES

2

**CASES**            **PAGE(S)**

3

4

*ACLU Found. of S. Cal. v. Barr,*
  952 F.2d 457 (D.C. Cir. 1991) ..................................................................... 20

5

*Al-Haramain Islamic Found. v. Bush,*
  507 F.3d 1190 (9th Cir. 2007) ..................................................... 10, 11, 12, 13

6

7

*Am. Elec. Power Co. v. Connecticut,*
  564 U.S. 410 (2011) ....................................................................................... 23

8

*Armstrong v. Bush,*
  924 F.2d 282 (D.C. Cir. 1991) ....................................................................... 22

9

10

*Celotex Corp. v. Cattrett,*
  477 U.S. 317 (1986) ..................................................................... 2, 7, 12, 14

11

*Circuit City Stores, Inc. v. Adams,*
  532 U.S. 105 (2001) ....................................................................................... 19

12

13

*City of Milwaukee v. Illinois,*
  451 U.S. 304 (1981) ................................................................................. 23, 24

14

*Clapper v. Amnesty Int'l, USA,*
  568 U.S. 398 (2013) ............................................................................... *passim*

15

16

*Cty. of Oneida v. Oneida Indian Nation,*
  470 U.S. 226 (1985) ................................................................................. 23, 24

17

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006) ......................................................................................... 8

18

19

*Dep't of the Navy v. Egan,*
  484 U.S. 518 (1988) ....................................................................................... 22

20

*Director, OWCP v. Newport News Shipbldg & Dry Dock Co.,*
  514 U.S. 122 (1995) ....................................................................................... 18

21

22

*El-Masri v. United States,*
  479 F.3d 296 (4th Cir. 2007) ............................................................. 10, 11, 22

23

*Equity Lifestyle Props., Inc. v. Cty. of San Luis Obispo,*
  548 F.3d 1184 (9th Cir. 2008) ....................................................................... 18

24

25

*Franklin v. Massachusetts,*
  505 U.S. 788 (1992) ....................................................................................... 22

26

*Gill v. Whitford,*
  138 S. Ct. 1916 (2018) ..................................................................................... 8

27

28

*Gustafson v. Alloyd Co., Inc.,*
  513 U.S. 561 (1995) ....................................................................................... 19

**PAGE(S)**

*Halkin v. Helms*,
  598 F.2d 1 (D.C. Cir. 1978) .................................................................................. 10, 24

*Halkin v. Helms*,
  690 F.2d 977 (D.C. Cir. 1982) ..................................................................................... 11

*Jewel v. NSA*,
  673 F.3d 902 (9th Cir. 2011) ....................................................................................... 14

*Jewel v. NSA*,
  810 F.3d 622 (9th Cir. 2015) ......................................................................................... 4

*Jewel v. NSA*,
  965 F. Supp. 2d 1090 (N.D. Cal. 2013) ................................................................ *passim*

*Jewel v. NSA*,
  2015 WL 545925 (N.D. Cal. Feb. 10, 2015) ......................................................... *passim*

*Jones v. United States*,
  526 U.S. 227 (1999) ..................................................................................................... 24

*Kasza v. Browner*,
  133 F.3d 1159 (9th Cir. 1998) ........................................................................... 11, 12, 14

*Kronisch v. United States*,
  1995 WL 303625 (S.D.N.Y. May 18, 1995) ............................................................... 11

*Linder v. Dep't of Def.*,
  133 F.3d 17 (D.C. Cir. 1998) ...................................................................................... 11

*Linder v. NSA*,
  94 F.3d 693 (D.C. Cir. 1996) ...................................................................................... 11

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)......................................................................................... 2, 7, 12, 14

*Mohamed v. Jeppesen Dataplan, Inc.*,
  614 F.3d 1070 (9th Cir. 2009) .............................................................................. *passim*

*In re Mot. for Release of Court Records*,
  526 F. Supp. 2d 484 (F.I.S.C. 2007)............................................................................ 20

*Obama v. Klayman*,
  800 F.3d 559 (D.C. Cir. 2015) .................................................................................... 14

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) ......................................................................................... 7

*Public Citizen v. U.S. Dep't of Justice*,
  491 U.S. 440 (1989)...................................................................................................... 23

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
  566 U.S. 639, 645 (2012).............................................................................................. 25

**PAGE(S)**

*Smallwood v. Allied Van Lines, Inc.*,
  660 F.3d 1115 (9th Cir. 2011) ..................................................................... 25

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ............................................................................. 7, 8

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ........................................................................................ 8

*Town of Chester v. Laroe Estates, Inc.*,
  137 S. Ct. 1645 (2017) .................................................................................. 8

*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018) .................................................................................. 8

*United States. v. Bass*,
  404 U.S. 336 (1971) .................................................................................... 23

*United States v. Belfield*,
  692 F.2d 141 (D.C. Cir. 1982) .................................................................... 20

*United States v. Cavanagh*,
  807 F.2d 787 (9th Cir. 1987) ................................................................. 18, 20

*United States v. Damrah*,
  412 F.3d 618 (6th Cir. 2005) ...................................................................... 20

*United States v. Johnson*,
  952 F.2d 565 (1st Cir. 1992) ....................................................................... 20

*United States v. Ott*,
  827 F.2d 473 (9th Cir. 1987) ...................................................................... 20

*United States v. Reynolds*,
  345 U.S. 1 (1953) .......................................................................... 9, 10, 11, 14

*United States v. Texas*,
  507 U.S. 529 (1993) ............................................................................... 23, 24

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*,
  454 U.S. 464 (1982) ...................................................................................... 7

*Warth v. Seldin*,
  422 U.S. 490 (1975) ...................................................................................... 8

*Washington St. Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*,
  537 U.S. 371 (2003) .................................................................................... 19

*Wikimedia Found. v. NSA*,
  2018 WL 3973016 (D. Md. Aug. 20, 2018) ...................................... *passim*

*Wittman v. Personhuballah*,
  136 S. Ct. 1732 (2016) .................................................................................. 7

**STATUTES**                                                    **PAGE(S)**

18 U.S.C. § 2511(1) ................................................................................ 4

18 U.S.C. § 2703(a) ................................................................................ 4

18 U.S.C. § 2703(c) ................................................................................ 4

18 U.S.C. § 2712(a) .............................................................................. 21

18 U.S.C. § 2712(b)(4) ..................................................................... 16, 21

50 U.S.C. § 1801(k) .............................................................................. 18

50 U.S.C. § 1806(f) ........................................................................ *passim*

50 U.S.C. § 3024(i)(1) ................................................................. 2, 5, 11, 25

50 U.S.C. § 3605(a) ..................................................................... 2, 5, 11, 25

Pub. L. No. 108-458, 118 Stat. 3638 (2004) .......................................... 25


**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 54(b) ............................................................................... 4

Fed. R. Civ. P. 56(c) ............................................................................... 7

Fed. R. Civ. P. 56(e) ............................................................................... 7


**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 95-1720 ............................................................... 19

H.R. Rep. No. 95-1283 .................................................................... 19, 20

S. Rep. No. 95-604 .......................................................................... 19, 20

S. Rep. No. 95-701 .......................................................................... 19, 20

### INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs filed their complaint alleging "dragnet" Government surveillance in 2008, and the Government agrees with Plaintiffs, and the Court, that the time has come to bring this long-running case to a close, albeit on terms that Plaintiffs will not welcome.  In short, after nearly ten years of litigation, Plaintiffs have failed to adduce any competent evidence that their communications, or data about their communications, have been subjected to the National Security Agency ("NSA") intelligence-gathering programs that they seek to challenge.  For that straightforward reason, Plaintiffs cannot establish their Article III standing to maintain their remaining statutory challenges to these programs, and their still-pending claims against the Government Defendants (and by the same token, their claims, too, against the personal-capacity defendants) must be dismissed.

To facilitate the resolution of the case, the Court set in motion a plan for staged discovery, pursuant to which it ordered Plaintiffs to serve discovery requests on the Government limited to the issue of standing, directed the Government to file its unclassified objections and responses to Plaintiffs' requests on the public record, and instructed the Government to submit its classified responses—to include "all evidence" bearing on the standing issue—to the Court for its *ex parte, in camera* review.  The Government complied with the Court's instructions, and together with its classified responses asserted the state secrets privilege, and related statutory privileges, over the voluminous and exceptionally detailed information contained therein concerning the sources, methods, and operation of six different NSA intelligence-gathering activities conducted over nearly two decades.  The Government's supporting declarations, including the Classified Declaration of Admiral Michael S. Rogers, then-Director of the NSA (the "Classified NSA Declaration"), explained in detail the exceptionally grave damage to the national security that would result from disclosure of the information the Government had provided to the Court.  The effect of that assertion of privilege, under established doctrine, is to remove the classified evidence from the case entirely.  *See Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1082 (9th Cir. 2009) (*en banc*).

1    With the classified evidence removed entirely from the case, there remains no competent

2    evidence with which Plaintiffs can demonstrate their standing.  That being so, Plaintiffs cannot

3    establish the existence of an essential element of their case, that is, the Court's Article III

4    jurisdiction to hear their case in the first instance.  Judgment must therefore be awarded to the

5    Government as a matter of law.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Celotex*

6    *Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Jeppesen*, 614 F.3d at 1083.  Moreover, even if it

7    were theoretically possible for Plaintiffs to establish their standing, dismissal still would be

8    required.  The Court has already found that Plaintiffs' Fourth Amendment challenge to Upstream

9    collection could not proceed without unacceptable risk of disclosing classified information

10   concerning that program, to the grave detriment of national security.  *Jewel v. NSA*, 2015 WL

11   545925, at *4–5 (N.D. Cal. Feb. 10, 2015).  Just so with Plaintiffs' remaining claims.

12   Disregarding established principles, Plaintiffs argue that this Court is not only authorized,

13   but "required" to rely on the classified evidence to decide their standing.  That conclusion flies in

14   the face of decades of precedent, and the Supreme Court's recent warning against the inherent

15   risk to national security of adjudicating parties' standing to challenge claimed Government

16   surveillance based on *ex parte*, *in camera* review of classified evidence.  *Clapper v. Amnesty*

17   *Int'l, USA*, 568 U.S. 398, 412 n.4 (2013).  Plaintiffs base their mistaken view on a misreading of

18   50 U.S.C. § 1806(f), which by its own terms has no application here.  Section 1806(f) authorizes

19   *ex parte, in camera* review of classified information pertaining to electronic surveillance only to

20   determine the legality of surveillance from which evidence to be used against a target or subject

21   was acquired, and not, as Plaintiffs seek here, to determine whether they are targets or subjects of

22   surveillance with standing to contest the Government's intelligence-gathering activities.

23   Moreover, even if § 1806(f) did apply here, it would not displace the state secrets privilege,

24   where Congress has not expressed a clear and unequivocal intent to do so.

25   As with Plaintiffs' earlier challenge to Upstream collection, both for "fail[ure] to proffer

26   sufficient admissible evidence" of standing, *Jewel*, 2015 WL 545925, at *4, and because

27   proceeding with the litigation would place national security at unacceptable risk, *see id.* at *5,

28   Plaintiffs' remaining claims must be dismissed, and final judgment awarded to the Government.

## **BACKGROUND**

**The Challenged NSA Intelligence-Gathering Programs**

Plaintiffs' Complaint (ECF No. 1) implicates three inter-related NSA intelligence-gathering activities authorized by President Bush in the wake of the September 11, 2001, terrorist attacks:  (1) targeted collection of one-end foreign communications reasonably believed to involve agents of al-Qaida or other terrorist organizations; (2) bulk collection of non-content information (metadata) about telephone calls made to, from, or within the United States (such as dates, times, durations, and originating and receiving numbers); and (3) bulk collection of metadata about Internet-based communications (such as the dates, times, and "to" and "from" lines of e-mail).  *See* Classified NSA Decl. (public version), ECF No. 389-1, ¶¶ 40, 73.  By early 2007 all three of these Presidentially authorized activities had transitioned to authorization (and supervision) by the Foreign Intelligence Surveillance Court ("FISC"), pursuant to the Foreign Intelligence Surveillance Act ("FISA").  *See id.* ¶ 73.  Although now discontinued, these programs, known collectively as the President's Surveillance Program ("PSP"), remain at issue in Plaintiffs' complaint.  *See, e.g.*, Compl., ECF No. 1, ¶¶ 5, 7, 39, 76, 92, 110, 120, 129, 138.

Plaintiffs also maintain (although the Government disputes) that their complaint challenges three NSA intelligence activities conducted pursuant to FISC orders, issued under various provisions of FISA, following termination of the PSP:  (1) "Upstream" collection of Internet-based communications, targeted at non-U.S. persons located abroad; (2) now-discontinued bulk collection of telephony metadata; and (3) now-discontinued bulk collection of Internet metadata.  *See* Classified NSA Decl. (public version) ¶ 55.

The Government has officially acknowledged the existence of and certain information regarding the nature of all six programs described above, but the identities of persons whose communications were subject to those intelligence gathering activities, details concerning the programs' sources, methods, scope, and operation, and (with a single exception not applicable here, *see infra* at 13) the identities of the telecommunications service providers that assisted the NSA in carrying out these programs, all remain properly classified, *see* Classified NSA Decl.

(public version) ¶¶ 74, 323, and for the reasons detailed in the Classified NSA Declaration, cannot be disclosed without risk of exceptionally grave damage to national security.

**Plaintiffs' Claims**

Plaintiffs' complaint initially asserted 12 causes of action against the Government, three constitutional and nine statutory claims (Counts I, III, V–VII, IX, X, XII, XIII, XV–XVII), variously seeking declaratory and injunctive relief and damages.  Since then, however, the Court has dismissed a number of Plaintiffs' statutory claims, *see Jewel v. NSA*, 965 F. Supp. 2d 1090, 1097, 1108-12 (N.D. Cal. 2013), and granted the Government summary judgment on Plaintiffs' Fourth Amendment challenge to Upstream collection.  *See Jewel*, 2015 WL 545925, at *4, *5 (holding that Plaintiffs had not adduced sufficient admissible evidence of their standing, and that their claim could not be adjudicated "without risking exceptionally grave damage to national security").  Plaintiffs sought to appeal that ruling as a partial final judgment under Federal Rule of Civil Procedure 54(b), but the Ninth Circuit held that it was not properly appealable, and remanded the case to this Court for a final resolution of all of Plaintiffs' claims.  *See Jewel v. NSA*, 810 F.3d 622, 631 (9th Cir. 2015).  After the case returned to this Court, and the May 2017 case-management conference neared, Plaintiffs withdrew their remaining constitutional claims against the Government, in apparent recognition that the cessation of the remaining challenged programs had rendered their constitutional claims for declaratory and injunctive relief moot.  *See* Jt. Case Mgmt. Conf. St., ECF No. 352, at 2, 20.

As a result, what remain of Plaintiffs' claims against the Government are three statutory damages claims:  (i) Count IX, alleging unlawful interception, use, and disclosure of the contents of Plaintiffs' communications in violation of the Wiretap Act, 18 U.S.C. § 2511(1)(a)–(c); (ii) Count XII, alleging unlawful disclosure of the contents of Plaintiffs' communications in violation of the Stored Communications Act ("SCA"), 18 U.S.C. § 2703(a); and (iii) Count XV, alleging unlawful acquisition of records or other information (*i.e.*, metadata), pertaining to Plaintiffs' communications, also in violation of the SCA, 18 U.S.C. § 2703(c).  *See* Jt. Case Mgmt. Conf. St. at 3–6.  Each remaining count purports to challenge each applicable NSA content- or metadata-collection activity, respectively, as follows:

| PSP Content Collection | PSP Bulk Internet metadata | PSP Bulk telephony metadata | FISA Upstream Collection | FISA bulk telephony metadata | FISA bulk Internet metadata |
|---|---|---|---|---|---|
| Wiretap Act Count IX (content) | N/A | N/A | Wiretap Act Count IX (content) | N/A | N/A |
| SCA 2703(a) Count XII (content) | N/A | N/A | SCA 2703(a) Count XII (content) | N/A | N/A |
| N/A | SCA 2703(c) Count XV (metadata) | SCA 2703(c) Count XV (metadata) | N/A | SCA 2703(c) Count XV (metadata) | SCA 2703(c) Count XV (metadata) |

**Discovery Proceedings**

Following the Ninth Circuit's dismissal of Plaintiffs' attempted Rule 54(b) appeal from the Court's Upstream ruling, the Court established a procedural framework for addressing Plaintiffs' remaining claims against the Government that has now readied the case for dispositive briefing on the threshold issue of Plaintiffs' standing.

On remand from the Ninth Circuit the Court lifted its initial stay of discovery, Order Granting Motion to Lift Stay of Discovery, ECF No. 340, whereupon Plaintiffs served over 300 discovery requests on the Government directed to their standing and the merits of their still-remaining claims. The Government objected to Plaintiffs' requests on a number of grounds, principally that they sought classified operational details of NSA intelligence-gathering activities protected by the state secrets privilege and the Government's statutory privileges, 50 U.S.C. §§ 3024(i)(1) and 3605(a). *See* Jt. Ltr. Brief re: Discovery Dispute, ECF No. 341, at 6–9.

To resolve the parties' impasse and "insure the timely progress of this litigation," the Court held a further case-management conference in May 2017. Order Granting Jt. Request for Case Mgmt. Conf., ECF No. 347, at 5; *see also* Civil Minute Order, ECF No. 356. There the Court set a schedule for "[s]taged [d]iscovery" under which Plaintiffs were permitted to serve revised discovery requests limited to the issue of their standing to pursue their remaining statutory damages claims. *See* Civil Minute Order at 1. The Court directed the Government to file its unclassified objections and responses to Plaintiffs' revised discovery requests on the public record, and to submit classified documents and information responsive to Plaintiffs'

requests *ex parte* and *in camera*.  *See id.*  In addition, to ensure its access to all classified

information pertaining to the standing issue, the Court also tasked the Government Defendants to

"marshal all evidence" they believe has bearing on the standing issue, even if Plaintiffs had not

requested it.  *Id.*; *see also* Reporter's Tr., Further Case Mgmt. Conf. (May 19, 2017) ("Tr. of

Case Mgmt. Conf.") at 72:22-73:8.  The Court explained that it would review the classified

materials *ex parte* and *in camera* to rule on the Government's objection that disclosing these

materials would place national security at risk.  *Id.* at 48:7-21, 73:8-24.  Thereafter it would set a

schedule for briefing on dispositive motions.  *Id.* at 74:12-17; Civil Minute Order.

Pursuant to the Court's instructions, Plaintiffs served 160 discovery requests on the

Government seeking evidence to support their standing to challenge the six above-described

NSA intelligence-gathering programs conducted over the past 17 years.  On February 16, 2018,

the Government filed its unclassified objections and responses, *see* ECF No. 388, and lodged

with the Court its classified responses, "marshal[ing] all evidence" on the issue of standing.  The

classified materials included responses to Plaintiffs' interrogatories and requests for admission,

as set forth in the Classified NSA Declaration, together with documents responsive to Plaintiffs'

requests for production.  *See id.* at 2.  Contemporaneously, the Government asserted the state

secrets privilege, and its related statutory privileges, over the classified discovery materials.  *See*

Public Decl. of the Principal Deputy Director of National Intelligence ("PDDNI Decl."), ECF

No. 388-2; Classified NSA Decl. (public version), ECF No. 389-1.  As explained by the PDDNI

and Admiral Rogers, the Government's *ex parte, in camera* submissions concerning the sources

and methods of the classified NSA intelligence-gathering activities challenged by Plaintiffs are

extraordinarily sensitive and detailed, and their disclosure would cause exceptionally grave

damage to national security.  PDDNI Decl. ¶¶ 7, 8, 10, 19, 36; Classified NSA Decl. (public

version) ¶¶ 2, 11, 22, 324, 334, 385.

The Court has now completed its review of the classified evidence submitted by the

Government Defendants, and ordered that "the parties file dispositive motions to resolve the

threshold legal issues raised by the remaining statutory claims" against the Government.  Order

Requiring Dispositive Motions Briefing, ECF No. 410, at 1.

1

## ARGUMENT

2

## I.  LEGAL STANDARD FOR SUMMARY JUDGMENT

3

4

5

6

7

8

9

10

11

12

13

14

15

16

"Summary judgment is appropriate when the record demonstrates 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Jewel*, 2015 WL 545925, at *2 (quoting Fed. R. Civ. P. 56(c)).  "[T]here can be no genuine issue as to any material fact" where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which [it] [bears] . . . the burden of proof."  *Celotex Corp.*, 477 U.S. at 322.  Because a demonstration of standing is an "indispensable part of [Plaintiffs'] case," they must support their standing "in the same way as any other matter on which [they] bear[ ] the burden of proof, *i.e.*, with the manner and degree of evidence required at [each] successive stage[ ] of the litigation."  *Defenders of Wildlife*, 504 U.S. at 561.  Thus, if Plaintiffs cannot set forth, by affidavit or other admissible evidence, "specific facts" sufficient to show a genuine issue for trial on standing, then "Rule 56(c) mandates the entry of summary judgment" against them.  *Celotex*, 477 U.S. at 322 (quoting Fed. R. Civ. P. 56(e)); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010) (a ruling on summary judgment must be based only on admissible evidence).

17

18

## II.  THE GOVERNMENT DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT, BECAUSE PLAINTIFFS HAVE NOT ESTABLISHED THEIR STANDING.

19

### A.  Plaintiffs Bear the Burden of Establishing Their Article III Standing.

20

21

22

23

24

25

26

27

28

"The judicial power of the United States . . . is not an unconditioned authority to determine the [validity] of legislative or executive acts," but is limited by Article III of the Constitution "to the resolution of 'cases' and controversies.'"  *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982); *see also Wittman v. Personhuballah*, 136 S. Ct. 1732, 1736 (2016).  "[N]o principle is more fundamental to the judiciary's proper role" under the Constitution's separation of powers, *Amnesty Int'l USA*, 568 U.S. at 408, inasmuch as the case-or-controversy requirement prevents the Federal Judiciary from "intrud[ing] upon the powers given to the [elected] branches" of the Federal Government, *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016).

1    "[A]n essential and unchanging part of the case-or-controversy requirement" is that

2    litigants have "standing to invoke the authority of a federal court," *DaimlerChrysler Corp. v.*

3    *Cuno*, 547 U.S. 332, 342 (2006), assuring that would-be litigants have a sufficient "personal

4    stake in the outcome of [a] controversy as to . . . justify [the] exercise of the court's remedial

5    powers on [their] behalf." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017).

6    Standing is, therefore, a "threshold jurisdictional question," *Steel Co. v. Citizens for a Better*

7    *Env't*, 523 U.S. 83, 102 (1998), "determining the power of the court to entertain the suit." *Warth*

8    *v. Seldin*, 422 U.S. 490, 498 (1975).

9         To establish standing to maintain their remaining claims, Plaintiffs must show they have

10   suffered an injury in fact that is (1) "concrete [and] particularized," (2) "fairly traceable to the

11   challenged action[s]" of the defendants, and (3) "redressable by a favorable ruling." *Amnesty*

12   *Int'l USA*, 568 U.S. at 409.  Plaintiffs, "as the part[ies] invoking federal jurisdiction, bear[ ] the

13   burden of establishing these elements." *Spokeo*, 136 S. Ct. at 1547.  *See also Gill v. Whitford*,

14   138 S. Ct. 1916, 1923 (2018) (vacating a judgment for plaintiffs who had "alleged that they had

15   such a personal stake in [that] case, but never followed up with the requisite proof"); *Jewel*, 2015

16   WL 545925, at *3.  Principally at issue in this case is whether Plaintiffs have suffered the

17   requisite "injury in fact." *See Spokeo*, 136 S. Ct. at 1549 (confirming that "Article III standing

18   requires a concrete injury even in the context of a statutory violation").  Accordingly, Plaintiffs

19   must adduce admissible evidence that the contents of or metadata about their communications

20   were subject to the intelligence-collection activities they seek to challenge, *i.e.*, that they

21   "personally suffered a concrete and particularized injury in connection with the conduct about

22   which [they] complain[ ]." *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018).  If Plaintiffs cannot

23   adduce such evidence, the Court lacks jurisdiction to hear their claims, and "cannot proceed at

24   all" except to "'announc[e] the fact and dismiss[]" the case. *Steel Co.*, 523 U.S. at 94.

25        For the reasons explained below, Plaintiffs cannot meet their burden to establish their

26   standing, and judgment must be entered against them, as to all of their remaining claims.

27

28

**B. Because the Government Has Properly Invoked the State Secrets Privilege, Classified Information Bearing upon the Question of Plaintiffs' Standing Must Be Removed Entirely from this Case.**

The classified evidence bearing on Plaintiffs' standing that the Government submitted to the Court for its *in camera* review includes information that would tend to confirm whether or not the named Plaintiffs have been subject to any of the challenged NSA surveillance activities; details concerning the sources, methods, scope, and operation of these activities; and (with a single exception of limited duration, *see infra*, at 13), the identities of U.S. telecommunications service providers that have assisted the NSA in carrying out these programs. This evidence remains properly classified and cannot be disclosed without risking exceptionally grave damage to the national security, for all the reasons, explained at great length, in the Classified NSA Declaration. *See* Classified NSA Decl., § VII. That declaration, together with the declaration of the PDDNI, demonstrates that disclosure of this information would, *inter alia*, seriously compromise—if not entirely undermine—vital, *ongoing*, intelligence operations (including Upstream); deprive the NSA of valuable foreign intelligence; debilitate critical intelligence-gathering sources, methods, tools, and facilities; and enhance the abilities of foreign adversaries to evade NSA surveillance and to conduct their own surveillance operations against the United States and its allies. *See id.*; PDDNI Decl. ¶¶ 22–35. On this basis, the Government has asserted the state secrets privilege, and related statutory privileges, over this information.

The privilege for military and state secrets to protect information vital to the national security "is well established," and may be invoked by the Government where it is shown, "from all the circumstances of the case, that there is a reasonable danger that compulsion of the evidence will expose … matters which, in the interest of national security, should not be divulged." *United States v. Reynolds*, 345 U.S. 1, 6-7, 10 (1953). The Court of Appeals has explained that analyzing a Government assertion of the state secrets privilege involves three steps: "First [a court] must 'ascertain that the procedural requirements for invoking the state secrets privilege have been satisfied.' Second, [a court] must make an independent determination whether the information is privileged . . . Finally, 'the ultimate question to be resolved is how the matter should proceed in light of the successful privilege claim.'" *Jeppesen,*

1   614 F.3d at 1080 (quoting *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1202 (9th

2   Cir. 2007)).  With respect to the first step, "there must be a formal claim of privilege, lodged by

3   the head of the department which has control over the matter, after actual personal consideration

4   by that officer."  *Id.* (quoting *Reynolds*, 345 U.S. at 7–8).  The assertion of privilege "must be

5   presented in sufficient detail for the court to make an independent determination of the validity

6   of the claim of privilege and the scope of the evidence subject to the privilege."  *Id.*

   The first of these requirements is indisputably met here.  The Government has submitted

8   a formal claim of privilege through the public declaration of the PDDNI (serving then as Acting

9   Director of National Intelligence ("DNI"), and acting head of the Intelligence Community, in the

10  DNI's absence) following her personal consideration of the matters at issue.  *See* PDDNI Decl.

11  ¶¶ 8, 19.  The PDDNI's claim of privilege is supported, in exceptional detail, by Admiral

12  Rogers' declaration, which over a span of nearly 200 pages explains the nature of the evidence at

13  issue and the specific harms that could be expected to result from the disclosure of that

14  information.  *See* Classified NSA Decl.  The Government's submissions in this case fulfill and

15  far surpass the requirement that it detail for the Court the basis for its privilege assertion.

   Turning to the second step of the analysis, the Government has explained in unclassified

17  terms herein, *see supra*, at 3-4, 6, 9, and detailed in the classified materials submitted for the

18  Court's *ex parte*, *in camera* review, why "from all the circumstances of the case . . . there is a

19  reasonable danger that compulsion of the evidence will expose matters which, in the interest of

20  national security, should not be divulged."  *Jeppesen*, 614 F.3d at 1081 (quoting *Reynolds*, 345

21  U.S. at 10).  Courts considering Government claims of privilege have uniformly recognized that

22  disclosing information of the kind at issue here would be harmful to national security, including

23  (i) who is and is not a subject of surveillance, *see, e.g.*, *Al-Haramain*, 507 F.3d at 1203–04;

24  *Halkin v. Helms*, 598 F.2d 1, 9 (D.C. Cir. 1978); *Wikimedia Found. v. NSA*, 2018 WL 3973016,

25  at *12 (D. Md. Aug. 20, 2018) (as to Upstream surveillance); (ii) the sources, methods, and

26  operational details of Government intelligence programs, *see, e.g.*, *Jeppesen*, 614 F.3d at 1086

27  (sources and methods of CIA intelligence activities); *El-Masri v. United States*, 479 F.3d 296,

28  308-09 (4th Cir. 2007) (same); *Wikimedia*, 2018 WL 3973016, at *12 (operational details of the

Upstream collection process); and (iii) the identities of private entities that have assisted in those programs, *see, e.g.*, *Jeppesen*, 614 F.3d at 1086 (private entities assisting CIA intelligence program); *El-Masri*, 479 F.3d at 308-09 (same); *Halkin v. Helms*, 690 F.2d 977, 993 (D.C. Cir. 1982).  Indeed, this Court has already twice agreed that the Government's assertions of privilege over these categories of information sought to protect "valid state secrets." *Jewel*, 965 F. Supp. 2d at 1103; *Jewel*, 2015 WL 545925, at *1, *5.  Because the Government's submissions overwhelmingly support the same conclusion here, the Court should again find that the Government has sustained its burden as to the state secrets privilege.

In consequence of the Government's proper invocation of privilege over the classified evidence, it is inescapable that this evidence must be removed from the case entirely.  "When the [G]overnment successfully invokes the state secrets privilege, 'the evidence is completely removed from the case,'" *Jeppesen*, 614 F.3d at 1082 (quoting *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998)).  *See also Al-Haramain*, 507 F.3d at 1204 ("The effect of the [G]overnment's successful invocation of privilege 'is simply that the evidence is unavailable, as though a witness had died . . . .'"); *Jewel*, 2015 WL 545925, at *5.[2]  This result is required irrespective of whether or not the "classified evidence could demonstrate that Plaintiffs [or even some of them] have suffered an injury in fact as to their remaining statutory claims."  *See* Order Requiring Dispositive Motions Briefing, at 1 (instructing Government to address that possibility).  The state secrets privilege is absolute, and "even the most compelling necessity cannot overcome" it, as the Supreme Court has unequivocally held, *Reynolds*, 345 U.S. at 11, and as both the Ninth Circuit and this Court have recognized, *see Al-Haramain*, 507 F.3d at 1204 ("The privilege, once found to exist, cannot be compromised by any showing of need on the part of the party seeking the information."); *Kasza*, 133 F.3d at 1166; *Jewel*, 965 F. Supp. 2d at 1101 (citing *Jeppesen*, 614 F.3d at 1081).

---

[2]  The result is the same under the two statutory privileges the Government Defendants have also invoked, 50 U.S.C. § 3024(i)(1), and 50 U.S.C. § 3605(a).  *See Linder v. Dep't of Def.*, 133 F.3d 17, 25 (D.C. Cir. 1998) (affirming withholding of documents pursuant to claim of privilege under predecessor to § 3024(i)(1)); *Kronisch v. United States*, 1995 WL 303625, at *8-9 (S.D.N.Y. May 18, 1995) (same); *see also Linder v. NSA*, 94 F.3d 693, 698 (D.C. Cir. 1996) ("The protection afforded by [S]ection 6 [50 U.S.C. section 3605] is, by its very terms, absolute.  If a document is covered by Section 6, NSA is entitled to withhold it ….").

**C. Judgment Must Be Entered for the Government Because Without the Privileged Information Plaintiffs Lack Competent Evidence of their Standing, and the Court Should Not Proceed Even if it Were Theoretically Possible to Do So.**

The final step of the analysis, then, is to consider how the matter should proceed in light of the successful claim of privilege and the removal of the classified evidence. *See Jeppesen*, 614 F.3d at 1082. In some cases, "simply excluding or otherwise walling off the privileged information may suffice to protect the state secrets and 'the case will proceed accordingly, with no consequences save those resulting from the loss of evidence.'" *Id.* at 1082-83 (quoting *Al-Haramain*, 507 F.3d at 1204). In others, however, "application of the privilege may require dismissal of the action," such as where "'plaintiff[s] cannot prove the *prima facie* elements of [their] claim with nonprivileged evidence.'" *Id.* at 1083 (quoting *Kasza*, 133 F.3d at 1166). That is the case here. Once the classified information bearing on Plaintiffs' standing is "completely removed from the case," *id.* at 1082, the effect is to leave Plaintiffs without *any* competent evidence addressing their standing to maintain their remaining statutory claims, because they have adduced no admissible, unclassified evidence with which their standing could be shown. That dearth of evidence compels dismissal of their case. *Id.* at 1083; *Defenders of Wildlife*, 504 U.S. at 561; *Celotex*, 477 U.S. at 322.

Regarding their Wiretap Act and SCA claims challenging Upstream collection of communications content (Counts IX and XII), this Court has already found that the only unclassified evidence of standing that Plaintiffs have proffered was insufficient "to support standing on their claim for a Fourth Amendment violation of interference with their Internet communications." *Jewel*, 2015 WL 545925, at *4. In support of their standing to challenge Upstream collection, Plaintiffs argued that the program involves "dragnet" surveillance of all AT&T customers' communications, and hence their own. *See id.* at *3–4. As evidence of this allegation, Plaintiffs relied principally on the declaration of a former AT&T technician, Mark Klein, and the declaration of an expert in communications technology, J. Scott Marcus. *See id.* at *4. The Court, however, after upholding the Government's privilege claim over the classified evidence, held that Mr. Klein's attestations were based on hearsay and speculation, that Mr. Marcus's conclusions were not based on sufficient facts or data, and therefore that Plaintiffs

lacked sufficient evidence to sustain the allegation of dragnet surveillance underlying their claim of standing.  *Id.*  While the Court's ruling pertained, specifically, to Plaintiffs' constitutional challenge to Upstream collection, they allege that content collection under the PSP operated in the same manner as they believe Upstream does now, *see* Tr. of Case Mgmt. Conf. at 28:18– 30:2, and the same factual allegations of dragnet surveillance underlie their statutory as well as their constitutional challenges to both programs.  *See* Compl. ¶¶ 50-81.  Accordingly, the Court's determination that Plaintiffs lack sufficient unclassified evidence of their standing to maintain their constitutional challenge to Upstream collection applies with equal force to their statutory challenges to both Upstream collection and content collection under the PSP.

The same conclusion follows concerning Plaintiffs' statutory challenges to the NSA's prior bulk collection of telephony and Internet metadata under the PSP and FISA.  Plaintiffs allege that the NSA, beginning in October 2001, had "continuously solicited and obtained the disclosure of all information in AT&T's major databases of stored telephone and Internet records," including records about their communications.  Compl. ¶¶ 82–90.  Yet they have proffered no more evidence to support this allegation of "dragnet" metadata collection than they have of the alleged "content" dragnet, and the classified evidence concerning the true scope of the NSA's bulk metadata collection, and the identities of the assisting telecommunications service providers, is excluded and rendered unavailable by the Government's assertion of privilege.  *Al-Haramain*, 507 F.3d at 1204.

Although the Government has acknowledged that these bulk-collection programs operated on a large scale, they never involved the collection of metadata pertaining to all, or even virtually all, communications to, from, or within the United States.  *See* Classified NSA Decl. (public version) ¶ 64.  Nor, with the exception of a single order concerning telephony metadata issued to Verizon Business Network Services during a 90-day period in 2013, has the Government acknowledged the participation of any specific provider in its bulk-collection programs.  *See id.* ¶¶ 68, 70.  And the mere "existence of the bulk collection program[s]" does not itself support an inference that they must have included records of Plaintiffs' communications, even where Plaintiffs were subscribers of major telecommunications providers.

1   *See Obama v. Klayman*, 800 F.3d 559, 565-67, 569–70 (D.C. Cir. 2015) (*per curiam*) (Williams,

2   J., concurring) (Sentelle, J., dissenting in part), *rev'g* 957 F. Supp. 2d 1 (D.D.C. 2013).

3          Where parties ultimately bearing the burden of proof have failed to establish the

4   existence of an element essential to their case, Rule 56 mandates the entry of summary judgment

5   against those parties.  *Celotex*, 477 U.S. at 322.  That is no less the case when the missing

6   element is evidence of plaintiffs' standing.  *Defenders of Wildlife*, 504 U.S. at 561.  Accordingly,

7   the Court must enter summary judgment against Plaintiffs here.

8          While dismissal of an action based on a failure of proof occasioned by the state secrets

9   privilege may be viewed as harsh, it is no different a result than already anticipated by the Ninth

10  Circuit in this case.  *See Jewel v. NSA*, 673 F.3d 902, 911 (9th Cir. 2011) (noting that

11  "procedural, evidentiary, and substantive barriers" might ultimately "doom[ ]" plaintiffs'

12  standing).  And as the Court of Appeals also remarked in *Kasza*, "the results are harsh in either

13  direction . . . [T]he state secrets doctrine finds the greater public good—ultimately the less harsh

14  remedy—to be dismissal." 133 F.3d at 1167.  This Court, too, recognized the unavoidable

15  necessity of dismissal when the exclusion of state-secret information prevented Plaintiffs from

16  establishing their standing to challenge Upstream surveillance.  *Jewel*, 2015 WL 545925, at *4-5.

17  The same resolution is now required of Plaintiffs' other claims.

18         Beyond the failure of the unclassified evidence to support Plaintiffs' standing in this case,

19  the Court should dismiss Plaintiffs' remaining claims for an additional reason.  As the Ninth

20  Circuit explained in *Jeppesen*, even if it were theoretically possible for a party to establish its

21  *prima facie* case on the basis of non-privileged evidence, application of the state secrets privilege

22  nonetheless may require dismissal because "litigating the case to a judgment on the merits would

23  present an unacceptable risk of disclosing state secrets."  *Jeppesen*, 614 F.3d at 1083; *see also id.*

24  at 1087 (holding that "dismissal is . . . required under *Reynolds*" where "there is no feasible way

25  to litigate . . . alleged liability without creating an unjustifiable risk of divulging state secrets.").

26  That, too, is the situation presented by this case.

27         The PDDNI, in her role then as Acting DNI, and the then-Director of the NSA have

28  explained that information bearing on Plaintiffs' standing—including the subjects and targets of

the surveillance programs that Plaintiffs seek to challenge, and the sources and methods relied on to acquire foreign-intelligence information under those programs—is so sensitive that the disclosure of that information would cause exceptionally grave damage to the national security. *See* PDDNI Decl. ¶¶ 8, 10, 11, 18; Classified NSA Decl. (public version) ¶¶ 2, 11, 19, 22, 74, §§ VI, VII.  In light of that assessment, the Court should decline any invitation by Plaintiffs to speculate about those classified facts, or to try to piece together, based on publicly available materials, information that has been removed from the case by the state secrets privilege.

Indeed, faced with analogous circumstances, the Ninth Circuit in *Jeppesen* cautioned that nothing in its opinion assessing the Government's assertion of the state secrets privilege should be understood as addressing the truth or falsity of the plaintiffs' allegations in that case.  614 F.3d at 1073 ("Whether plaintiffs' allegations are in fact true has not been decided in this litigation, *and, given the sensitive nature of the allegations, nothing we say in this opinion should be understood otherwise*.") (emphasis added).  The Ninth Circuit was careful to assure that it was not misunderstood as deciding the veracity of the plaintiffs' allegations notwithstanding the "plaintiffs' extensive submission of public documents" in that litigation.  *Id.* at 1087.  In light of the Court of Appeals' careful analysis and acceptance of the Government's assertion that the information at issue constituted "matters which, in the interest of national security, should not be divulged," *id.* at 1082, the Court expressly avoided placing the imprimatur of judicial fact-finding on the plaintiffs' speculation regarding those classified facts.  *Id.* at 1087.  This Court likewise recognized, in its decision addressing Plaintiffs' Fourth Amendment challenge to Upstream surveillance, that "adjudication of the standing issue could not proceed without risking exceptionally grave damage to national security."  *Jewel*, 2015 WL 545925, at *5.

This is also true concerning Plaintiffs' remaining claims, even if it were theoretically possible for Plaintiffs to establish their standing.  The facts put at issue in litigating the merits of Plaintiffs' claims inevitably would implicate the operational details of the programs they seek to contest, information that remains currently and properly classified, *see supra*, at 3-4, 9, and which must be removed from the case entirely following the Government's assertion of privilege.  *See Jeppesen*, 614 F.3d at 1090 (dismissing action because "even assuming plaintiffs

1  could establish their entire case *solely* through nonprivileged evidence—unlikely as that may

2  be—any effort . . . to defend would unjustifiably risk disclosure of state secrets).

3  "The Supreme Court has long recognized that in exceptional circumstances courts must

4  act in the interest of the country's national security to prevent disclosure of state secrets, even to

5  the point of dismissing a case entirely." *Id.* at 1077.  For all the reasons explained herein,

6  Plaintiffs' remaining statutory claims present such exceptional circumstances here.  Both because

7  Plaintiffs cannot establish their standing based on competent admissible evidence, and because

8  this case cannot be litigated without an unacceptable risk the national security—just as with

9  Plaintiffs' Fourth Amendment Upstream claim, *see Jewel*, 2015 WL 545925, at * 4–5—

10  Plaintiffs' remaining statutory challenges must be dismissed.

### D. Plaintiffs' Position That FISA Authorizes *Ex Parte, In Camera* Review of State Secret Information to Determine Their Standing Is Contrary to Law.

12  Plaintiffs ignore the wealth of precedent requiring courts to "act in the interest of …

13  national security to prevent disclosure of state secrets," *Jeppesen*, 614 F.3d at 1077, and instead

14  insist the Court use the classified evidence to adjudicate their standing.  Specifically, they argue

15  that 50 U.S.C. § 1806(f), together with 18 U.S.C. § 2712(b)(4), "preempt[s]" the Government's

16  privileges and "forbids" exclusion of the evidence.  Pls.' Resp. to June 13, 2018 Briefing Order

17  ("Pls.' Resp. to June 13 Order"), ECF No. 407, at 4–5.  Rather, according to Plaintiffs, § 1806(f)

18  "require[s]" use of the classified evidence to decide the case, and that doing otherwise would be

19  "reversible error," *id.* at 4-6.  That dire warning is not well taken, for two reasons.

20  First, even assuming that § 1806(f) "preempt[ed]" the state secrets privilege, it could do

21  so, as this Court concluded, "only in cases within the reach of its provisions." *Jewel*, 965 F.

22  Supp. 2d at 1106.  As recently held in *Wikimedia*, 2018 WL 3973016, at *5-10, situations such as

23  this, in which litigants seek to invoke § 1806(f) to determine whether they have been subject to

24  surveillance, rather than the legality of established surveillance, do not present such a case.

25  Second, even if Plaintiffs' standing constituted a question "within the reach" of § 1806(f),

26  their invocation of the statute's procedures does not "displace" the bar erected by the state

27  secrets privilege against use of the classified evidence in this case, as the Court recently (and

28  correctly) observed in its Order Requiring Dispositive Motions Briefing.

**1.  Section 1806(f) does not apply to the question of Plaintiffs' standing.**

Section 1806(f) provides:

> Whenever a court . . . [1] is notified pursuant to subsection (c) or (d) of this section, or [2] whenever a motion is made pursuant to subsection (e) of this section, or [3] whenever any motion or request is made ***by an aggrieved person*** pursuant to any other statute or rule of the United States . . . to discover or obtain applications or orders or other materials relating to electronic surveillance or to discover, obtain, or suppress evidence or information obtained or derived from electronic surveillance under this chapter, the [court] . . . shall, notwithstanding any other law, if the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States, review in camera and ex parte the application, order, and such other materials relating to the surveillance as may be necessary ***to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted***.

*Id*. § 1806(f) (emphasis added). Thus, the text of § 1806(f) authorizes *ex parte, in camera* review in three circumstances:

> (1)  when the Government provides notice that it "intends to enter into evidence or otherwise use or disclose" surveillance-based evidence in proceedings against ***an aggrieved person*** (*see id*. § 1806(c), (d) (emphasis added));
>
> (2)  when *an **"aggrieved person"*** moves in such a proceeding to suppress "evidence [or information] obtained or derived from an electronic surveillance" (*see id*. § 1806(e), (f) (emphasis added)); or
>
> (3)  when *an **"aggrieved person"*** moves pursuant to any other statute or rule to "discover or obtain" "applications or orders or other materials relating to electronic surveillance" or to "discover, obtain, or suppress" "evidence or information obtained or derived from electronic surveillance" (*see id*. § 1806(f) (emphasis added)).

When one of the foregoing circumstances exists, and § 1806(f) is invoked by the Attorney General, a court must then conduct an *ex parte* review **"to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted."**  *Id*.  Under these terms § 1806(f) does not apply here, for at least three separate and independent reasons.

First, the sole stated purpose for which § 1806(f) authorizes *ex parte, in camera* review of evidence is "to make an accurate determination of the legality of the surveillance."  Yet Plaintiffs seek § 1806(f) review to determine whether or not they have standing, that is, whether they have been subjected to electronic surveillance in the first place.  By its terms, § 1806(f) does not authorize, much less require, *ex parte, in camera* review, of classified information to determine whether a person has been subjected to surveillance.  Whether a party has been a subject of

surveillance, and whether that surveillance, if it occurred, was legal, are two separate and distinct inquiries.  *See Equity Lifestyle Props., Inc. v. Cty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008) ("[J]urisdictional question of standing precedes, and does not require, analysis of the merits.").  Only the latter may be the subject of inquiry in a § 1806(f) proceeding.

Second, Plaintiffs have not established that they are "aggrieved person[s]" entitled to invoke § 1806(f)'s procedures.  FISA defines an "aggrieved" person as one "who is the target of . . . or . . . whose communications or activities were subject to electronic surveillance."  50 U.S.C. § 1801(k).  In effect, an "aggrieved person" is one with standing to contest the legality of contested surveillance.  *See Dir., OWCP v. Newport News Shipbldg & Dry Dock Co.*, 514 U.S. 122, 126 (1995) (observing that the phrase "'person adversely affected or aggrieved' is a [statutory] term of art used … to designate those who have standing" to challenge government conduct).  But the sole inquiry a court may make under § 1806(f) is whether surveillance-based evidence was lawfully obtained.  Nothing in the statute indicates that parties can trigger *ex parte*, *in camera* review to discover whether they have been subjects of surveillance.  Rather, Plaintiffs' status *vel non* as "aggrieved person[s]" who were subjected to surveillance is an antecedent question that must be determined as a prerequisite to, and not by means of, proceedings under § 1806(f).  *See United States v. Cavanagh*, 807 F.2d 787, 789 (9th Cir. 1987) (noting "[a]s a threshold matter" that the appellant had standing to challenge the lawfulness of the surveillance because he was an "aggrieved person" whose communications had been intercepted).

Section 1806(f) also does not apply here for a third reason.  Each specified situation in which it authorizes *ex parte, in camera* review involves Government use of surveillance-based information in proceedings against a target or subject of surveillance.  That is the case when a government entity provides notice of intent to use such evidence under subsection (c) or (d). Motions to suppress under subsection (e) are brought by aggrieved persons seeking to prevent government use of surveillance-based evidence against them.  Plaintiffs, however, seek to invoke the statute's residual clause, which concerns "any motion[s]" made by aggrieved persons under "any other statute or rule … to discover … materials relating to electronic surveillance."  Yet if this residual clause were taken to authorize *ex parte, in camera* review at the filing of "any" type

of motion, it would license review where private litigants, not the Government, seek to use surveillance-related information to support their case.  Such a construction would render the immediately preceding references to subsections (c)–(e), all of which contemplate government use of evidence, essentially superfluous, and give the statute unintended breadth.  To avoid this result, the residual clause concerning "any" motion to discover surveillance-related materials should also be construed, under the canons of *noscitur a sociis* and *ejusdem generis*, to apply only to situations involving Government use of surveillance-based evidence against aggrieved persons.  *See Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384–85 (2003) (general terms following specific terms in a statutory enumeration are considered to embrace only matters similar to those enumerated by the preceding specific terms); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15 (2001); *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 575 (1995); *Wikimedia*, 2018 WL 3973016, at *6-7.

There is nothing in the legislative history to support Plaintiffs' understanding of § 1806(f).  Congress explained that § 1806(f) "sets out special judicial procedures to be followed when the Government concedes that it intends to use or has used evidence obtained or derived from electronic surveillance."  H.R. Rep. No. 95-1283 at 90.  The procedures' purpose is "to determine whether the surveillance was authorized and conducted in a manner which did not violate the constitutional or statutory right of the person *against whom the evidence is sought to be introduced*."  S. Rep. No. 95-701 at 62, 63 (emphasis added); S. Rep. No. 95-604 at 56, 57.

At the same time, Congress explained that the residual clause was meant to prevent private parties from evading the statute's *ex parte* review mechanism, which Congress established "to ensure[ ] adequate protection of national security interests."  H.R. Conf. Rep. No. 95-1720 at 32.  When Congress enacted § 1806(f), it noted that "broad rights of access" to surveillance materials "can threaten the secrecy necessary to effective intelligence practices," and explained that the objective of § 1806(f) was to strike an "effective balance" protecting both a defendant's right to a fair trial and the secrecy of the Government's intelligence activities.  *See* S. Rep. No. 95-701 at 59; S. Rep. No. 95-604 at 53.  The specific purpose of the residual clause was to prevent private parties from upsetting that balance:

> Although a number of different procedures might be used to attack the legality of the surveillance, it is this procedure "notwithstanding any other law" that must be used to resolve the question. The Committee wishes to make very clear that the procedures set out in [§ 1806(f)] apply whatever the underlying rule or statute referred to in the motion. *This is necessary to prevent the carefully drawn procedures in [§ 1806(f)] from being bypassed by the inventive litigant using a new statute, rule or judicial construction.*

S. Rep. No. 95-701, at 63 (1978) (emphasis added); S. Rep. No. 95-604 at 57 (same); H.R. Rep. No. 95-1283 at 91 (same).  Viewed in light of Congress's aims, the residual clause must be understood as a mechanism to prevent "inventive litigants" who contest the use of surveillance-based evidence against them from side-stepping the procedures that Congress established to protect the Government's intelligence practices.  Its purpose is not to allow litigants such as Plaintiffs to invoke § 1806(f) as a weapon where, as here, its procedures would expose rather than protect sensitive intelligence-gathering activities, and place national security at risk.  *See* S. Rep. No. 95-701 at 64; *Amnesty Int'l*, 568 U.S. at 412 n.4 (condemning *in camera* proceedings that would reveal subjects of Government surveillance as contrary to national security interests).

Accordingly, § 1806(f) has been applied only in cases involving Government use of surveillance-based evidence against persons who were targets or subjects of surveillance,[3] while courts have repudiated the idea of its use as a tool to discover suspected surveillance.  *See, e.g.*, *ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 462, 468-69 & n.13 (D.C. Cir. 1991) (the Government is not required under FISA to reveal ongoing foreign-intelligence surveillance); *In re Mot. for Release of Court Records*, 526 F. Supp. 2d 484, 487 (F.I.S.C. 2007) (holding that § 1806(f) has no application outside of ensuring aggrieved persons the opportunity to contest the legality of FISA-derived evidence to be used against them).  Most notable among these, perhaps, is the recent decision in *Wikimedia*, 2018 WL 3973016, at *5-10.

Similar to Plaintiffs here, the plaintiff in *Wikimedia* asserts that NSA "Upstream" surveillance violates its First and Fourth Amendment rights.  *See* 2018 WL 3973016, at *3–4.  As here, the plaintiff moved, pursuant to § 1806(f), for *ex parte, in camera* review of classified discovery materials to adjudicate its standing, arguing that § 1806(f) displaces the state secrets

---

[3] *See, e.g.*, *U.S. v. Damrah*, 412 F.3d 618, 623-24 (6th Cir. 2005); *U.S. v. Johnson*, 952 F.2d 565, 571 & n.4 (1st Cir. 1992); *U.S. v. Ott*, 827 F.2d 473, 475 n.1 (9th Cir. 1987); *Cavanagh*, 807 F.2d at 789; *U.S. v. Belfield*, 692 F.2d 141, 143-46 (D.C. Cir. 1982).

privilege.  *Id*. at *5.  The court in *Wikimedia* rejected the plaintiff's argument, and instead upheld the Government's assertion of privilege.  *See id.* at *5–10.

Before reaching the question of displacement, the *Wikimedia* court first addressed the "threshold question" whether § 1806(f) procedures apply where "a plaintiff is seeking classified discovery to establish that [its] communications were" subject to the challenged surveillance.  *Id.* at *5.  The "statutory text points persuasively," the court held, "to the conclusion that § 1806(f) procedures do not apply where, as here, a plaintiff has not yet established that it has been the subject of electronic surveillance."  *Id.*  Rather, evidence establishing "a party's status as an 'aggrieved person' … is a precondition to the application of § 1806(f)'s procedures."  *Id.*; *see also id.* at *8.  This interpretation is confirmed, the court further observed, by the fact that 1806(f) requires a court to engage in *ex parte, in camera* review to determine "whether the surveillance at issue 'was lawfully authorized and conducted,'" a decision that cannot be made "unless a determination has previously been made that the surveillance at issue did, in fact, occur."  *Id.* at *6 (quoting § 1806(f)).  Concluding, therefore, that § 1806(f) did not apply to the situation before it, the *Wikimedia* court found it unnecessary to consider the separate question of displacement, *id.* at *10, and proceeded to consider, and uphold, the Government's assertion of privilege, *id.* at *11–14.  This Court should do the same in the analogous case presented here.

None of these conclusions is altered by Plaintiffs' reliance on 18 U.S.C. § 2712(b)(4).  *See* Pls.' Resp. to June 13 Order at 2.  Section 2712 authorizes suits against the United States to recover money damages for willful violations of the Wiretap Act, the SCA, and certain provisions of FISA.  18 U.S.C. § 2712(a).  In such actions, § 2712(b)(4) provides that "the procedures set forth in [§ 1806(f)] … shall be the exclusive means by which materials *governed by [that] section[ ]* may be reviewed." (emphasis added).  As just shown, however, the classified evidence over which the Government has asserted privilege are not "governed" by § 1806(f), because Plaintiffs seek *in camera* review of the classified evidence to determine whether they are "aggrieved persons" with standing to challenge alleged surveillance of their communications, not to determine the lawfulness of the claimed surveillance itself.  That being the case, Plaintiffs' invocation of § 2712(b)(4) adds no weight to their arguments.

In short, § 1806(f) may be invoked only to determine the legality of surveillance in a proceeding where the Government may use surveillance-based evidence against an aggrieved person, and not where litigants such as Plaintiffs seek to use surveillance-related information to determine whether they are aggrieved persons with standing to challenge allegedly unlawful surveillance. *Wikimedia*, 2018 WL 3973016, at *5. Thus, even assuming that § 1806(f) displaced the state secrets privilege "in cases within the reach of its provisions," *Jewel*, 965 F. Supp. 2d at 1106, this is not a case of that kind.

### 2. Even if, by its terms, § 1806(f) applied here, it does not displace the state secrets privilege, or the Government's statutory privileges, in these circumstances.

The Court has correctly rejected Plaintiffs' position that "once the procedures for the handling of materials and information set forth in section 1806(f) have been invoked, the state secrets doctrine may not be a potential substantive bar to the ongoing litigation." Order Requiring Dispositive Motions Briefing at 2. Even if this were a situation to which § 1806(f)'s procedural mechanism applied, Plaintiffs' contention that § 1806(f) "displaces" the state secrets privilege would still be "inaccurate." *Id.*

### a. To displace the state secrets privilege would require a clear and unequivocal statement of legislative intent.

For several reasons, Congress would need to speak clearly in a statute to override the state secrets privilege. First, the privilege "has a firm foundation in the Constitution." *El-Masri*, 479 F.3d at 304. Although "developed at common law, it performs a function of constitutional significance, because it allows the executive branch to protect information whose secrecy is necessary to its military and foreign-affairs responsibilities." *Id.* at 303. *See also Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988) (Executive authority to control access to national-security information flows primarily from Article II's "investment of power in the President.").

A clear expression of intent is therefore required before a court can conclude that Congress meant to abrogate the Executive's authority to invoke the state secrets privilege in support of its national security functions. *See Franklin v. Massachusetts*, 505 U.S. 788, 800–01 (1992) (express statutory statement is required to conclude that Congress meant to regulate the President's exercise of his executive functions); *Armstrong v. Bush*, 924 F.2d 282, 289 (D.C. Cir.

1991) ("When Congress decides purposefully to enact legislation restricting or regulating presidential action, it must make its intent clear."); *see also United States. v. Bass*, 404 U.S. 336, 349 (1971).  Indeed, a statute susceptible of a reading that would curtail Executive authority to protect the secrecy of information in the interest of national security would raise serious constitutional concerns, and should be construed to avoid that result unless "plainly contrary to the intent of Congress."  *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 465–66 (1989).

In contrast, as this Court has observed, *see Jewel*, 965 F. Supp. 2d at 1105–06, precedent addressing the displacement of "federal common law" holds that a common-law rule may be "abrogate[d]" by a statute that "speak[s] directly to the question addressed by the common law."  *E.g.*, *United States v. Texas*, 507 U.S. 529, 534 (1993).  These cases, however, address only displacement of judge-made doctrines adopted as necessary expedients to "fill in statutory interstices" where guidance from Congress is lacking, *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 421 (2011),[4] not a privilege grounded in authority conferred by the Constitution itself.

Even assuming *arguendo* that the standard applied in *Texas*, *Milwaukee*, and *County of Oneida*, *supra*, at n.4, also applied here, statutes must be read as retaining "long-established and familiar principles, except when a statutory purpose to the contrary is evident."  *Texas*, 507 U.S. at 534.  The fact that a statute addresses the same subject-matter as a common-law doctrine is insufficient to displace the common-law rule.  Rather, "the relevant inquiry is whether the statute 'speaks *directly* to the question' otherwise answered by federal common law."  *Cty. of Oneida*, 470 U.S. at 236-37; *see also City of Milwaukee*, 451 U.S. at 313-14 (statute must "speak directly" to the "particular issue" to supplant common law).  Regardless, however, of the standard applied, § 1806(f) does not displace the state secrets privilege.

### b.   Neither the text nor legislative history of § 1806(f) speaks to abrogation of the state secrets privilege in this situation.

Nothing in the text or legislative history of § 1806(f) refers to the state secrets privilege at all, much less to displacing or preempting the privilege.  And less still does it make a clear and

---

[4] *See also U.S. v. Texas*, 507 U.S. 529, 534 (1993) (common-law rule regarding interest on debts to the Government); *City of Milwaukee v. Illinois*, 451 U.S. 304, 307-08, 313-14 (1981) (common-law claim for abatement of nuisance); *Cty. of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 237 (1985) (common-law remedies for unlawful conveyance of land).

1    unequivocal statement on the subject.  That alone should end the matter.  By 1978, when FISA

2    was enacted, the state secrets privilege already "head[ed] the list" of "privileges recognized in

3    our courts."  *Halkin*, 598 F.2d at 7.  It does not stand to reason that Congress would have meant

4    to abrogate the privilege, in a field so critical as foreign intelligence, without acknowledging its

5    intention to do so.  *See Jones v. United States*, 526 U.S. 227, 234 (1999) ("Congress is unlikely

6    to intend any radical departures from past practice without making a point of saying so.").

7         That silence would be determinative even under the less rigorous standard applied for

8    displacement of ordinary federal common law.  To displace a common-law rule, a statute must

9    "speak[ ] directly" to the "particular issue" addressed by the rule, not merely concern the same

10   subject matter.  *Cty. of Oneida*, 470 U.S. at 236–37; *Milwaukee*, 451 U.S. at 313–15.  The issue

11   here is whether plaintiffs can compel *ex parte, in camera* review of surveillance-related

12   information when it is they, not the Government, that seek to make use of that information to

13   support their case.  The issue, too, is whether such parties can invoke § 1806(f) to obtain a

14   determination of their standing, where the court's decision would imperil national security by

15   revealing classified information about the Government's intelligence activities – the very danger

16   against which the Supreme Court warned in *Amnesty International*, 568 U.S. at 412 n.4.

17        More than six decades of precedent under the state secrets privilege answer that question

18   with an emphatic "no," whereas § 1806(f) contains no terms that directly address the question at

19   all.  At best, the statute can be said to reach the situation here only by construing the general

20   terms of the residual clause so broadly as to render the rest of the statute's terms meaningless,

21   and compromising its intended protections against disclosure of national-security information as

22   a result.  *See supra*, at 18-19.  That outcome cuts against displacement, not in favor of it.  *See*

23   *Texas*, 507 U.S. at 536-37 (rejecting displacement of common-law rule regarding interest on

24   certain debts to the Government, in part because statute was meant to strengthen incentives to

25   pay debts owed to the Government, while displacement would have weakened them).

26        Similarly, nothing in the legislative history speaks directly to the question whether civil

27   litigants may invoke § 1806(f) procedures where it is they, rather than the Government, that seek

28   to make use of surveillance-based evidence to support their case.  Indeed, as discussed above,

what the legislative history says concerning the residual clause reveals otherwise.  As explained therein, the specific purpose of the residual clause is to prevent litigants from upsetting the balance struck by Congress to vindicate the due-process interests of litigants while maintaining the secrecy required for effective intelligence gathering.  *See supra*, at 18-20.  There is no support in the House or Senate reports for the conclusion that Congress contemplated the use of § 1806(f) procedures in situations that would threaten to expose, rather than protect, the Government's intelligence-gathering practices, and place national security at risk.[5]

For all these reasons Plaintiffs' argument that § 1806(f) "require[s]" use of the classified evidence to decide this case, Pls.' Resp. to June 13 Order at 5, must be rejected.  If, indeed, it is "reversible error," *id.*, for a court to "act in the interest of the country's national security to prevent disclosure of state secrets," *Jeppesen*, 614 F.3d at 1077, instead of embarking on a course that would place national security at risk, then the Court should accept that remarkable proposition only at the instruction of a superior tribunal, and not from the mouths of Plaintiffs.

## CONCLUSION

For the reasons stated above, judgment should be awarded to the Government Defendants on Plaintiffs' remaining claims (Counts IX, XII, and XV of the Complaint) as a matter of law, and final judgment entered in favor of the Government Defendants on all counts.[6]

---

[5]  Section 1806(f) also does not displace the statutory privileges the Government invokes because, (i) as discussed above, it does not apply to the present circumstances, and (ii) 50 U.S.C. §§ 3024(i)(1) and 3605(a) are more specific statutes, and therefore control in this case.  *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012).  Section 3024(i)(1) specifically concerns intelligence "sources and methods;" and § 3605(a) applies where, as in this case, a party seeks information specifically concerning NSA's intelligence-gathering activities.  Additionally, § 3024(i) was also enacted in 2004, *see* Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, 118 Stat. 3638 (Dec. 17, 2004), §§ 1011-1020, well after § 1806(f)'s enactment in 1978, and should control here for that reason as well.  *See, e.g.*, *Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115, 1124–25 (9th Cir. 2011).

[6]  Plaintiffs also have sued several former Government officials in their personal capacity for both damages and equitable relief under the Constitution and various statutes.  *See* Complaint Counts I-VIII, X-XI, XIII-XIV, XVI-XVII.  Those personal-capacity claims have been stayed pursuant to a stipulation and order "until after resolution of any dispositive motion by the Government Defendants."  ECF No. 93.  The stay contemplated that arguments raised for dismissing the claims against the Government Defendants would bear directly on Plaintiffs' personal-capacity claims, as they do here.  Although the present motion is brought solely by the Government Defendants sued in their official capacity, Plaintiffs' inability to establish their standing necessarily forecloses all of their claims, including their personal-capacity claims.  Granting the present motion, in combination with the Court's prior orders dismissing Plaintiffs' other official-capacity claims, therefore warrants the dismissal of this action in its entirety.

Dated:  September 7, 2018

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director

*/s/  James J. Gilligan*
JAMES J. GILLIGAN
Special Litigation Counsel

RODNEY PATTON
Senior Trial Counsel

JULIA A. HEIMAN
Senior Counsel

OLIVIA HUSSEY SCOTT
Trial Attorney

U.S. Department of Justice,
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Room 6102
Washington, D.C. 20001

Phone: (202) 514-3358
Fax: (202) 616-8470
Email:  james.gilligan@usdoj.gov

*Attorneys for the Government Defendants*