IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CAROLYN JEWEL, ET AL.,

    Plaintiffs,                                             No. C 08-04373 JSW

    v.

NATIONAL SECURITY AGENCY, ET AL.,

    Defendants.                                 **NOTICE OF QUESTIONS FOR HEARING**

_____/

        TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING QUESTIONS FOR THE HEARING SCHEDULED ON MARCH 29, 2019 AT 9:00 A.M.:

        The Court has reviewed the parties' papers and, thus, does not wish to hear the parties reargue matters addressed in those pleadings. If the parties intend to rely on authorities not cited in their briefs, they are ORDERED to notify the Court and opposing counsel of these authorities no later than Monday, March 25, 2019 at 10:00 a.m. and to submit copies as soon as possible directly to chambers. If the parties submit such additional authorities, they are ORDERED to submit the citations to the authorities only, with reference to pin cites and without argument or additional briefing. *Cf.* N.D. Civil Local Rule 7-3(d). The parties will be

given the opportunity at oral argument to explain their reliance on such authority.

The parties shall address the following questions:

1. In his concurrence in *Obama v. Klayman*, Senior Circuit Judge Williams determined that plaintiffs lacked standing because "plaintiffs lack direct evidence that records involving their calls have actually been collected." 800 F.3d 559, 565 (D.C. Cir. 2015). Plaintiffs argued that they had standing based on the contention that the effectiveness of the alleged surveillance program would increase with the expansion of coverage, even in the absence of actual knowledge that any specific communication of any particular named plaintiff was collected by the Government. The judge disagreed, however, and found that the "assertion that NSA's collection must be comprehensive in order for the program to be most effective is no stronger than the *Clapper* plaintiffs' assertions" premised upon speculations and assumptions. *Id.* at 567.

   a. On what authority do Plaintiffs argue that this Court's ruling should not adopt this reasoning?

   b. Without any specific finding that any specific plaintiff's communications were touched by the alleged surveillance programs at issue, how can the Court find standing to sue?

2. On appeal in *Klayman v. Obama*, the court reiterated the test established by the Supreme Court in *Clapper*: plaintiffs "cannot rest their alleged injury on bare speculation that their contacts abroad will be targeted simply because they reside in 'geographic areas' that they believe to be 'a special focus' of the U.S. government." *Klayman v. Obama*, --- Fed. Appx. ---, 2019 WL 668267, at *3 (D.C. Cir. Feb. 5, 2019) (citing *Clapper v. Amnesty International USA*, 568 U.S. 398, 406 (2013)). "Instead, they must allege injury that is 'certainly impending' without relying on a 'highly attenuated chain of possibilities.'" *Id.* (citing *Clapper*, 568 U.S. at 410). Similar to the appellants in *Klayman*, Plaintiffs here "allege no more than that they communicate with various individuals in countries [they] imagine might attract government surveillance." *See id.*

   a. On what authority do Plaintiffs argue that this Court's ruling should not adopt this reasoning?

   b. Without any specific finding that any specific plaintiff's communications were touched by the alleged surveillance programs at issue, how can the Court find standing to sue?

3. Another necessary element to establish Article III standing is the requirement that any concrete and particularized injury be "redressable by a favorable ruling.'" *Clapper*, 568 U.S. at 409. In order to issue a dispositive decision on the standing issue, a finding of standing would necessitate disclosure of possible interception of plaintiffs' communications, thereby signaling injury. Such a disclosure may imperil national security. *See id.* at 412 n.4 ("the court's postdisclosure decision about whether to dismiss the suit for lack of standing would surely signal to the terrorist whether his name was on the list of surveillance targets.")) Any attempt to prove the specific facts of the programs at issue, or to defend against the Plaintiffs' analysis of the programs would risk disclosure of the locations, sources, methods, assisting providers, and other operational details of the government's ongoing intelligence-gathering activities.

    a.    If any finding or final judgment is impossible without disclosing information that might imperil the national security, how can Plaintiffs assert that their alleged injury is redressable?

    b.    How can any potential plaintiff extract herself from this Catch-22? Is there any way to challenge any alleged overreach or impropriety in the surveillance tactics employed by the Government without, eventually, running into the risk that examination or resolution of the challenge would potentially risk national security?

4. In *Fazaga v. FBI*, the Ninth Circuit stated that "§ 1806(f) supplies an alternative mechanism for the consideration of electronic state secrets evidence [that] therefore eliminates the need to dismiss the case entirely because of the absence of any legally sanctioned mechanism for a major modification of ordinary judicial procedures." --- F.3d ---, 2019 WL 961953, at *23 (9th Cir. Feb. 28, 2019). The court also specifically noted that § 1806(f) applies to "aggrieved persons," defined in § 1801(k) as "a person who is the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance." *Id.* at *9. The court did not rule out a renewed consideration of the state secrets privilege defense after § 1806(f)'s procedures have been followed. *Id.* at *40 & n.52. With this in mind:

    a.    Without any specific finding that any specific plaintiff's communications were touched by the alleged surveillance programs at issue, how can the Court find that Plaintiffs are "aggrieved person[s]" such that this Court is required to continue "to use § 1806(f)'s procedures to determine whether the surveillance . . . was lawfully authorized and conducted"? *Id.* at *26.

    b.    In *Fazaga*, the Ninth Circuit noted that the plaintiffs had sufficiently alleged they were "aggrieved persons" to survive a motion to dismiss their FISA cause of action under § 1810. Where, as here, it may be that Plaintiffs do not have admissible evidence to demonstrate that their communications were touched by the alleged surveillance programs at issue, and that any classified evidence tending to show whether or not their communications were touched cannot be relied upon in the interest of national security, what light does *Fazaga* shed on whether this Court may now dismiss Plaintiffs' claims under the state secrets privilege?

    c.    Is it not the case that anything other than dismissal at this stage would signal that the surveillance programs at issue touched Plaintiffs' communications, which the Government asserts would do grave harm to national security? Does *Fazaga* provide any guidance on how this Court is to proceed any further, under § 1806(f) or otherwise? Does the fact that this Court has reviewed the evidence on standing and now addresses the claims at summary judgment and not at the motion to dismiss distinguish this matter from *Fagaza* and *Jewel v. NSA*, 673 F.3d 902 (9th Cir. 2011)?

5. What are the parties' positions post-*Fagaza* on the Plaintiffs' request that this Court reconsider its earlier ruling on the motion to dismiss the Fourth Amendment claims? Is the evidence marshaled by the Government on Plaintiffs' standing pursuant to their statutory claims the same as what would have been produced pursuant to the claims under the Fourth Amendment?

3

6. Do the parties have anything further they wish to address?

**IT IS SO ORDERED.**

Dated: March 14, 2019



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

4