PAGES 1 - 101

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**BEFORE THE HONORABLE JEFFREY S. WHITE, JUDGE**

| | | |
|---|---|---|
| CAROLYN JEWEL, ET AL., | ) | |
| | ) | |
| PLAINTIFFS, | ) | NO. C-08-4373 JSW |
| | ) | |
| VS. | ) | FRIDAY, MARCH 29, 2019 |
| | ) | |
| NATIONAL SECURITY AGENCY, | ) | OAKLAND, CALIFORNIA |
| ET AL., | ) | |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| DEFENDANTS. | ) | |
| _____ | ) | |

**<u>REPORTER'S TRANSCRIPT OF PROCEEDINGS</u>**

**<u>APPEARANCES:</u>**

**FOR PLAINTIFFS:**       LAW OFFICE OF RICHARD R. WIEBE
                44 MONTGOMERY STREET, SUITE 650
                SAN FRANCISCO, CALIFORNIA 94104
          BY:  RICHARD R. WIEBE, ESQUIRE

                ELECTROINIC FRONTIER FOUNDATION
                815 EDDY STREET
                SAN FRANCISCO, CALIFORNIA 94109
          BY:  DAVIDE GREENE, ESQUIRE
                ANDREW CROCKER, ESQUIRE
                AARON MACKEY, ESQUIRE

                (APPEARANCES CONTINUED)

**REPORTED BY:**         DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                OFFICIAL COURT REPORTER

      TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

```
 1

 2   FOR DEFENDANTS:            U.S. DEPARTMENT OF JUSTICE
                                CIVIL DIVISION
 3                              1100 L STREET, N.W.
                                WASHINGTON, DC 20005
 4                         BY:  RODNEY PATTON, ESQUIRE
                                JAMES J. GILLIGAN, ESQUIRE
 5                              JULIA HEIMAN, ESQUIRE

 6                              U.S. DEPARTMENT OF JUSTICE
                                TORTS BRANCH
 7                              175 N STREET, NE
                                WASHINGTON, DC 20044
 8                         BY:  JAMES R. WHITMAN, ESQUIRE

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1    FRIDAY, MARCH 29, 2019                          9:00 A.M.
2                     P R O C E E D I N G S
3         THE CLERK:  ALL RISE.  COME TO ORDER.  COURT IS NOW
4    IN SESSION.  THE HONORABLE JEFFREY S. WHITE PRESIDING.
5         THE COURT:  GOOD MORNING, EVERYBODY.  PLEASE CALL THE
6    CASE.
7         THE CLERK:  CAROLYN JEWEL, ET AL. VERSUS NATIONAL
8    SECURITY AGENCY, ET AL.
9       COUNSEL, PLEASE STEP FORWARD TO THE PODIUMS AND STATE YOUR
10   APPEARANCES.
11        MR. WIEBE:  GOOD MORNING, YOUR HONOR.  RICHARD WIEBE
12   FOR THE PLAINTIFFS.
13        THE COURT:  GOOD MORNING.
14        EURBGS:  GOOD MORNING, YOUR HONOR.  TOM MOORE ALSO
15   FOR THE PLAINTIFFS.
16        THE COURT:  GOOD MORNING.
17      EVERYBODY CAN BE SEATED.  BE SEATED, PLEASE.  THANK YOU.
18   EXCEPT COUNSEL, YOU CAN COME ON UP.
19        MR. MACKEY:  GOOD MORNING, YOUR HONOR.  AARON MACKEY
20   FOR THE PLAINTIFFS.
21        THE COURT:  WELCOME.
22        MR. CROCKER:  GOOD MORNING, YOUR HONOR, ANDREW
23   CROCKER FOR THE PLAINTIFFS.
24        THE COURT:  WELCOME.
25        MR. GREENE:  GOOD MORNING, YOUR HONOR, DAVID GREENE
```

```
 1   FOR THE PLAINTIFFS.

 2              THE COURT:  WELCOME.

 3              MR. PATTON:  GOOD MORNING, YOUR HONOR.  RODNEY PATTON

 4   FOR THE GOVERNMENT DEFENDANTS.

 5              THE COURT:  GOOD MORNING.

 6              MR. PATTON:  ALSO SEATED AT COUNSEL TABLE IS JIM

 7   GILLIGAN FOR THE GOVERNMENT DEFENDANTS, JULIE HEIMAN FOR THE

 8   GOVERNMENT DEFENDANTS, AND JIM WHITMAN FOR THE INDIVIDUAL

 9   CAPACITY DEFENDANTS.

10              THE COURT:  WHAT'S WITH ALL THESE GUYS?  DON'T YOU

11   HAVE ANY FEMALE ATTORNEYS --

12              MS. HEIMAN:  GOOD MORNING.

13              THE COURT:  ONLY ONE.  OKAY.

14              MR. PATTON:  WE HAD TO LEAVE THE OTHER BACK AT THE

15   OFFICE.

16              THE COURT:  OKAY.  ALL RIGHT.

17      SO WE ARE HERE FOR THIS HEARING ON THE CROSS-MOTIONS FOR

18   SUMMARY JUDGMENT.  AND ALTHOUGH I HAVE PUBLISHED SOME

19   QUESTIONS FOR COUNSEL TO ANSWER, AND THOSE WILL BE THE METES

20   AND BOUNDS OF THIS HEARING, I DON'T WANT 4TH OF JULY SPEECHES

21   OR REGURGITATING WHAT'S IN YOUR BRIEF, JUST ANSWER THE

22   QUESTIONS AND YOU WILL HELP THE COURT MAKE A JUST DECISION.

23      BUT GIVEN THE SCOPE OF THIS CASE AND THE IMPORTANT ISSUES,

24   I THOUGHT IT WOULD BE APPROPRIATE FOR THE COURT TO MAKE A

25   COUPLE OF COMMENTS AS TO WHERE I SEE WHERE WE ARE AT THIS
```

1    POINT, THE STATE OF THE LAW, THE STATE OF THE CASE, AND TO

2    GIVE SOME CONTEXT BEFORE WE LAUNCH INTO THE WEEDS WITH THE

3    QUESTIONS THAT THE COURT HAS.

4        SO THIS CASE IS ONE OF MANY ARISING FROM CLAIMS THAT THE

5    FEDERAL GOVERNMENT, WITH THE ASSISTANCE OF MAJOR

6    TELECOMMUNICATIONS COMPANIES, CONDUCTED WIDESPREAD WIRELESS

7    DRAGNET ELECTRONIC COMMUNICATIONS SURVEILLANCE OF UNITED

8    STATES PERSONS FOLLOWING THE ATTACKS OF SEPTEMBER 11TH, 2001.

9        THE COURT AND THE PARTIES ARE CHALLENGED TO ADDRESS THE

10   INHERENT CONFLICT ARISING AT THE INTERSECTION OF THE

11   INDIVIDUAL'S RIGHT TO PRIVACY AND PROTECTION OF CIVIL RIGHTS

12   WEIGHED AGAINST THE BURDEN CARRIED BY THE GOVERNMENT TO

13   PROTECT THE NATIONAL SECURITY.

14       IN ORDER TO PROVIDE THIS PROTECTION, THE GOVERNMENT MUST

15   MAINTAIN SECRECY OVER LOCATIONS, SOURCES, METHODS, AND OTHER

16   OPERATIONAL DETAILS OF ITS INTELLIGENCE-GATHERING ACTIVITIES.

17       ON SEPTEMBER 18, 2008, PLAINTIFFS FILED THIS PUTATIVE

18   CLASS ACTION ON BEHALF OF THEMSELVES AND THE CLASS OF

19   SIMILARLY-SITUATED PERSONS DESCRIBED AS MILLIONS OF ORDINARY

20   AMERICANS WHO USE THE PHONE SYSTEM OR THE INTERNET AND A CLASS

21   COMPRISED OF ALL PRESENT AND FUTURE UNITED STATES PERSONS WHO

22   HAVE BEEN OR WILL BE SUBJECT TO ELECTRONIC SURVEILLANCE BY THE

23   NATIONAL SECURITY AGENCY WITHOUT A SEARCH WARRANT OR COURT

24   ORDER SINCE SEPTEMBER 12TH, 2001.

25       AFTER MANY YEARS OF LITIGATION AND TWO APPEALS, THIS COURT

1    MUST DETERMINE WHETHER, AS PLAINTIFFS DESCRIBE IT, THE CONTENT

2    AND METADATA COLLECTION PROGRAMS MAY VIOLATE PLAINTIFFS

3    REMAINING STATUTORY PROTECTIONS AFFORDED THEM BY THE WIRETAP

4    ACT AND THE ELECTRONIC COMMUNICATIONS PRIVACY ACT OR THE

5    STORED COMMUNICATIONS ACT.

6         THE COURT IS NOW TASKED WITH THE THRESHOLD QUESTION OF

7    WHETHER PLAINTIFFS CAN MAINTAIN THEIR CLAIMS BASED UPON BOTH

8    THE PUBLIC AND CLASSIFIED EVIDENCE OF THEIR STANDING DESPITE

9    THE POTENTIAL THAT CONTINUED LITIGATION MAY IMPERIL THE

10   NATIONAL SECURITY.  FOR THEIR PART, PLAINTIFFS HAVE SUBMITTED

11   PUBLICLY-AVAILABLE EVIDENCE AND EXPERT OPINIONS IN AN EFFORT

12   TO SHOW THAT THEY HAVE STANDING.

13        HAVING FOUND THAT THE MECHANISMS UNDER FISA, F-I-S-A,

14   SECTION 1806 PREEMPT DISMISSAL AT THE PLEADING STAGE BASED ON

15   INVOCATION OF THE STATES SECRETS PRIVILEGE, THE COURT HAS

16   EMPLOYED THE FISA PROCEDURES EXTENSIVELY AND HAS REVIEWED

17   VOLUMES OF CLASSIFIED MATERIALS SUBMITTED BY DEFENDANTS IN

18   RESPONSE TO THE COURT'S ORDER TO MARSHAL ALL EVIDENCE BEARING

19   ON THE ISSUE OF PLAINTIFFS' STANDING AS WELL AS THE

20   PUBLICLY-FILED EVIDENCE.

21        THE COURT IS CONCERNED THAT IT HAS REACHED THE POINT AT

22   WHICH FURTHER LITIGATION, NOTWITHSTANDING THE PROCEDURES

23   PROVIDED BY 1806(F) OF FISA, FOREIGN INTELLIGENCE SECURITIES

24   ACT, POSES A NOT INSIGNIFICANT RISK OF DISCLOSURE OF NATIONAL

25   SECURITY INFORMATION AND RESULTING GRAVE HARM TO NATIONAL

1    SECURITY.  EVEN MAKING A DETERMINATION AT THIS PROCEDURAL

2    POSTURE REGARDING PLAINTIFFS' STANDING TO SUE, MAY CARRY THE

3    UNAVOIDABLE RISK OF DISCLOSURE OF OPERATIONAL DETAILS OF

4    DEFENDANTS' PURPORTED INTELLIGENCE-GATHERING ACTIVITIES.

5        THE COURT INTENDS TO HEAR THE PARTIES' RESPONSES TO THE

6    SERIES OF QUESTIONS PUBLISHED IN THE RECORD, INCLUDING THE

7    IMPACT OF THE NINTH CIRCUIT'S MOST RECENT OPINION ISSUED LAST

8    MONTH IN *FAZAGA VERSUS FBI*.  THE COURT HAS REVIEWED THE

9    ADDITIONAL AUTHORITIES SUBMITTED BY DEFENDANTS.

10       LASTLY, THE COURT INTENDS TO ISSUE TWO SEPARATE ORDERS.

11   ONE IN THE PUBLIC RECORD AND ONE WHICH WILL BE FILED AS A

12   CLASSIFIED DOCUMENT AND TREATED WITH ALL OF THE SAFEGUARDS

13   THAT CLASSIFIED -- HIGHLY CLASSIFIED DOCUMENTS HAVE.

14       AND I WILL TELL THE PARTIES THAT EVEN THOUGH THE COURT HAS

15   PUBLISHED QUESTIONS IN ADVANCE SO THAT THE PARTIES CAN PREPARE

16   TO ADDRESS THE COURT'S QUESTIONS AND CONCERNS, PLEASE BE

17   PREPARED AT THE END FOR WHAT I WILL CALL POP QUIZ QUESTIONS

18   WHICH WERE NOT ON THE TAKE-HOME EXAM THAT AROSE IN THE COURT'S

19   MIND AFTER I ISSUED THESE QUESTIONS.  SO I'M SURE AS WELL

20   PREPARED AND SKILLED AS YOU ALL ARE, YOU WILL FIND THOSE

21   PRETTY EASY TO DEAL WITH.  WE WILL DEAL WITH THOSE AT THE END.

22       SO WHOEVER IS GOING TO ARGUE A PARTICULAR QUESTION, I

23   WOULD LIKE TO HAVE THEM COME UP AND WE WILL START WITH THE

24   QUESTIONS.  AND I THINK, GIVEN THE NATURE OF THE QUESTIONS AND

25   THE FACT THAT THIS PROCEEDING IS BEING VIDEOTAPED FOR POSSIBLY

1    FOR SHOWING ON TV LATER ON, I WILL READ THE QUESTIONS INTO THE

2    RECORD SO THAT THE RECORD IS CLEAR FOR THOSE WHO MIGHT BE

3    VIEWING THIS -- THESE PROCEEDINGS.

4        SO QUESTION NO. 1:  IN HIS CONCURRENCE -- AND I'M GOING TO

5    LEAVE OUT THE CITATIONS AS BEING UNNECESSARY AND RELY ON THE

6    WRITTEN DOCUMENT FOR THAT.

7        IN ITS CONCURRENCE IN *OBAMA VERSUS KLAYMAN*, SENIOR CIRCUIT

8    JUDGE WILLIAMS DETERMINED THAT PLAINTIFFS LACKED STANDING

9    BECAUSE QUOTE "PLAINTIFFS LACK DIRECT EVIDENCE THAT RECORDS

10   INVOLVING THEIR CALLS HAVE ACTUALLY BEEN COLLECTED" UNQUOTE.

11   PLAINTIFFS ARGUE THAT THEY HAD STANDING BASED ON THE

12   CONTENTION THAT THE EFFECTIVENESS OF THE ALLEGED SURVEILLANCE

13   PROGRAM WOULD INCREASE WITH THE EXPANSION OF COVERAGE, EVEN IN

14   THE ABSENCE OF ACTUAL KNOWLEDGE THAT ANY SPECIFIC

15   COMMUNICATION OF ANY PARTICULAR NAMED PLAINTIFF WAS COLLECTED

16   BY THE GOVERNMENT.

17       THE JUDGE DISAGREED, HOWEVER, AND FOUND THAT THE QUOTE

18   "ASSERTION THAT NSA'S COLLECTION MUST BE COMPREHENSIVE IN

19   ORDER FOR THE PROGRAM TO BE MOST EFFECTIVE IS NO STRONGER THAN

20   THE *CLAPPER* PLAINTIFFS' ASSERTIONS" PREMISED ON SPECULATIONS

21   AND ASSUMPTIONS.

22       QUESTION 1A.  I WILL START WITH PLAINTIFFS.  ON WHAT

23   AUTHORITY DO PLAINTIFFS ARGUE THAT THIS COURT'S RULING SHOULD

24   NOT ADOPT THAT REASONING THAT I JUST QUOTED?

25           **MR. WIEBE:**  THANK YOU, YOUR HONOR.  AND WE APPRECIATE

```
1    THE OPPORTUNITY TO BE HERE TODAY AND ADDRESS YOUR QUESTIONS.

2         NOW THERE ARE FUNDAMENTAL DIFFERENCES BETWEEN KLAYMAN AND

3    THIS CASE.  WE HAVE MUCH MORE EVIDENCE, WE HAVE DIFFERENT

4    CLAIMS, WE ARE IN A DIFFERENT PROCEDURAL POSTURE WITH A

5    DIFFERENT LEGAL STANDARD.  LET'S LOOK AT HOW KLAYMAN AND THIS

6    CASE DIFFER.

7         KLAYMAN WAS A FOURTH AMENDMENT CONSTITUTIONAL CHALLENGE TO

8    PHONE RECORDS COLLECTION.  SECTION 1806 WAS NEVER RAISED.

9    THEY DIDN'T HAVE A STATUTORY RECORDS CLAIM WHICH WOULD HAVE

10   TRIGGERED 1806(F), AND IT WAS AN APPEAL FROM A PRELIMINARY

11   INJUNCTION.  AS JUDGE WILLIAMS NOTES, THIS MEANT THAT THE

12   KLAYMAN PLAINTIFFS HAD TO SHOW QUOTE "A SUBSTANTIAL

13   LIKELIHOOD" THAT THEIR RECORDS HAD BEEN COLLECTED AND NOT

14   JUST, AS JUDGE WILLIAMS PUT IT, THE QUOTE "LIGHTER BURDEN"

15   CLOSE QUOTE OF DEFEATING SUMMARY JUDGMENT BY SHOWING A GENUINE

16   FACTUAL DISPUTE.  THAT'S AT PAGE 568.

17        NOW, THE ONLY EVIDENCE THE KLAYMAN PLAINTIFFS RELIED ON

18   WAS THE INFERENCE THAT BECAUSE THE PHONE RECORDS PROGRAM WAS

19   LARGE, THEIR RECORDS MUST HAVE BEEN COLLECTED.  NOW ONE JUDGE,

20   JUDGE BROWN, CONCLUDED THAT THIS INFERENCE WAS SUFFICIENT TO

21   FIND STANDING, BUT THAT THE KLAYMAN PLAINTIFFS HAD NOT MET THE

22   HIGHER SUBSTANTIAL LIKELIHOOD BURDEN OF A PRELIMINARY

23   INJUNCTION.  ANOTHER JUDGE, JUDGE WILLIAMS, ALSO FOUND THAT

24   THE KLAYMAN PLAINTIFFS HAD NOT BEEN MET THE HIGHER SUBSTANTIAL

25   LIKELIHOOD STANDARD FOR PRELIMINARY INJUNCTION, AND THEN BOTH
```

```
1    JUDGES HELD THAT THE CASE SHOULD BE REMANDED FOR

2    JURISDICTIONAL DISCOVERY.

3         NOW WE HAVE THREE CLAIMS, OUR INTERNET CONTENT

4    INTERCEPTION CLAIM, OUR PHONE RECORDS CLAIM, AND OUR INTERNET

5    RECORDS CLAIM.

6         THOSE ARE ALL STATUTORY CLAIMS FOR WHICH 18, U.S.C.,

7    SECTION 2712(B)(4) PROVIDES AND MANDATES THE USE OF SECTION

8    1806(F)'S PROCEDURES QUOTE "NOTWITHSTANDING ANY OTHER

9    PROVISION OF LAW", CLOSE QUOTE.

10        NOW, THE PROCEDURAL POSTURE, AS I SAID, IS DIFFERENT.

11   PLAINTIFFS ARE OPPOSING SUMMARY JUDGMENT ON STANDING.  THEY

12   NEED ONLY SHOW THAT THERE'S A GENUINE FACTUAL DISPUTE ABOUT

13   STANDING IN ORDER TO HAVE SUMMARY JUDGMENT DENIED.  THUS, WE

14   FACE ONLY THE LIGHTER SUMMARY JUDGMENT BURDEN AND NOT THE

15   HEAVIER PRELIMINARY INJUNCTION BURDEN.

16        AND AS IN ANY CASE, WE CAN MEET THIS BURDEN WITH EITHER

17   DIRECT OR CIRCUMSTANTIAL EVIDENCE, OR A COMBINATION OF BOTH

18   THAT ON THE WHOLE IS SUFFICIENT TO CREATE A FACTUAL DISPUTE.

19   I AM SURE THE COURT HAS TOLD JURIES MANY, MANY TIMES THAT

20   CIRCUMSTANTIAL EVIDENCE IS JUST AS GOOD AS DIRECT EVIDENCE.

21   AND A DIRECT ADMISSION BY THE GOVERNMENT IS NOT REQUIRED.

22   CONGRESS DIDN'T MAKE THE GOVERNMENT THE GATEKEEPER OF CLAIMS

23   UNDER SECTION 2712.

24        NOW WE HAVE MUCH MORE EVIDENCE THAN THE PLAINTIFFS HAVE --

25   THAN THE KLAYMAN PLAINTIFFS DID, INCLUDING DIRECT EVIDENCE.
```

1    AND WE ALSO HAVE THE SECRET EVIDENCE ON STANDING THAT THE

2    COURT HAS ORDERED THE GOVERNMENT TO PRODUCE.  NOW, PLAINTIFFS

3    HAVE DIRECT EVIDENCE THAT THEIR PHONE RECORDS WERE COLLECTED

4    IN THE FORM OF FISC BUSINESS RECORDS ORDER NO. 10-10.

5        YOUR HONOR, MAY I HAND UP A COPY OF THE DOCUMENT I'M

6    REFERRING TO?

7            **THE COURT:**  SURE.  HAVE YOU SHOWN THIS TO GOVERNMENT

8    COUNSEL?

9            **MR. WIEBE:**  YES.  THIS IS AN EXHIBIT TO MY

10   DECLARATION.

11           **THE COURT:**  FOR THE RECORD WHAT --

12           **MR. WIEBE:**  YES, I WILL GIVE THE CITATION.

13           **THE COURT:**  VERY WELL.

14           **MR. WIEBE:**  THIS IS EXHIBITS A AND B.  IT'S ACTUALLY

15   EXCERPTS FROM THOSE EXHIBITS.  AND THAT'S ECF NO. 417-4, MY

16   DECLARATION FILED IN CONNECTION WITH THESE PROCEEDINGS.

17       NOW EXHIBIT A IS THE FISC PHONE RECORDS ORDER NO. 10-10.

18   AND AS I SAY, IT'S AN EXCERPT OF IT.  AND IT'S AN ORDER

19   COMPELLING PROVIDERS TO SUBMIT CALL DETAIL RECORDS, PHONE

20   RECORDS TO THE GOVERNMENT.

21       NOW, AS YOUR HONOR WILL NOTE, WHEN YOU LOOK AT THE FIRST

22   PAGE OF EXHIBIT A, REDACTED ARE THE NAMES OF THE PROVIDERS

23   FROM THE CAPTION.

24       NOW, IF WE TURN TO EXHIBIT B, WHAT WE'LL SEE IS A DOCUMENT

25   THAT THE GOVERNMENT SUBSEQUENTLY PRODUCED IN FOIA LITIGATION

1    WITH *THE NEW YORK TIMES* AND IN THAT DOCUMENT THERE'S A LETTER

2    FROM THE NSA TO THE FISC REFERRING TO THIS SAME BUSINESS

3    RECORDS ORDER, BUSINESS RECORDS ORDER 10-10.  AND THIS IS THE,

4    I BELIEVE, THE THIRD PAGE OF THE EXCERPT.

5        DOES YOUR HONOR SEE THAT?

6        **THE COURT:**  YES, I DO.

7        **MR. WIEBE:**  AND IN THE CAPTION OF THIS LETTER, IS A

8    REFERENCE TO DOCKET NO. BR, BUSINESS RECORDS, 10-10 AT THE END

9    OF THE CAPTION.  AND THEN EARLIER IN THE CAPTION, THERE'S THE

10   DESCRIPTION OF THE ORDER AND THE PROVIDERS WHO WERE SUBJECT TO

11   THE ORDER, AT&T, THE OPERATING SUBSIDIARIES OF VERIZON

12   COMMUNICATIONS, INC., AND CELLCO PARTNERSHIP DOING BUSINESS AS

13   VERIZON WIRELESS, AND SPRINT.

14       NOW, THIS IS DIRECT EVIDENCE THAT THE GOVERNMENT COLLECTED

15   PHONE RECORDS FROM AT&T.  JUDGE WILLIAMS, IN HIS OPINION,

16   CATEGORIZED FISC ORDERS AS DIRECT EVIDENCE.  HE CHARACTERIZED

17   PLAINTIFFS IN OTHER CASES WHO DID HAVE FISC ORDERS FROM THEIR

18   CARRIERS AS POSSESSING DIRECT EVIDENCE THAT PHONE RECORDS WERE

19   COLLECTED.  THIS IS PAGE 565 OF HIS OPINION.

20       WE ALSO HAVE DIRECT EVIDENCE THAT AT&T PHONE RECORDS WERE

21   COLLECTED IN THE STATEMENTS IN THE NSA DRAFT INSPECTOR

22   GENERAL'S REPORT, WHICH I'M SURE THE COURT IS FAMILIAR WITH AT

23   THIS POINT.  THAT'S ECF NO. 147 AND ALSO APPEARS AT ECF 432.

24       AND, FINALLY, IF THE GOVERNMENT HAS FULLY RESPONDED TO

25   PLAINTIFFS' DISCOVERY REQUESTS, IT WILL ALSO BE IN THE SECRET

1    EVIDENCE ACTUAL PHONE RECORDS FOR THE PLAINTIFFS' PHONE

2    NUMBERS.  JUDGE WILLIAMS DID NOT SAY THAT THE PLAINTIFFS

3    NEEDED THEIR ACTUAL PHONE NUMBERS, PHONE RECORDS TO ESTABLISH

4    STANDING, BUT NONETHELESS PLAINTIFFS' RECORDS SHOULD BE IN THE

5    SECRET EVIDENCE HERE.  THAT IS ALSO DIRECT EVIDENCE.

6        THERE ALSO SHOULD BE IN THE SECRET EVIDENCE OTHER FISC

7    ORDERS, ATTORNEY GENERAL LETTERS FROM THE PSP PERIOD, FISC

8    OPINIONS ALL IDENTIFYING PLAINTIFFS' CARRIERS AS ONES WHO

9    SUBMITTED PHONE RECORDS OF THEIR CUSTOMERS.  THAT IS ALSO

10   DIRECT EVIDENCE.

11       AND THERE'S ALSO INDIRECT EVIDENCE INCLUDING THE BROAD

12   SCOPE OF THE PROGRAM AS DISCLOSED IN THE PCLOB 215 REPORT AND

13   THE FISC PEN REGISTER TRAP AND TRACE ORDER.

14       LIKEWISE WE'VE GOT EVIDENCE ON OUR INTERNET CONTENT

15   CLAIMS.  FOR THOSE CLAIMS I THINK IT'S IMPORTANT TO NOTE AT

16   THE OUTSET THAT IN ORDER TO SHOW INJURY TO THEIR INTERNET

17   COMMUNICATIONS, PLAINTIFFS DO NOT NEED TO SHOW THAT THOSE

18   COMMUNICATIONS WERE KEPT BY THE GOVERNMENT IN PERMANENT

19   STORAGE.  FOR PURPOSES OF STANDING, ALL WE NEED IS AN INJURY

20   IN FACT, AND ANY INTERFERENCE WITH THOSE COMMUNICATIONS, EVEN

21   IF THEY ARE NOT PERMANENTLY STORED, IS SUFFICIENT.

22       AND, SECOND, THE INTERFERENCE DOES NOT NEED TO BE

23   PERFORMED BY THE GOVERNMENT DIRECTLY.  ANYTHING THAT AT&T DID

24   THAT'S FAIRLY TRACEABLE TO THE GOVERNMENT, CREATES STANDING.

25       NOW PLAINTIFFS HAVE DIRECT EVIDENCE THAT THE INTERCEPTION

```
1    PROGRAM AS IMPLEMENTED BY AT&T TOUCH THEIR COMMUNICATIONS.  WE

2    HAVE DIRECT EVIDENCE OF THE SPLITTERS IN SAN FRANCISCO WHICH

3    THE COURT IS WELL AWARE.  AND THE GOVERNMENT EVEN ADMITS IN

4    THEIR BRIEF AT ECF 421 AT 13 THAT PLAINTIFFS' EVIDENCE IS

5    SUFFICIENT TO SHOW THEIR OWN COMMUNICATIONS WERE COPIED BY THE

6    SPLITTER.

7         AND WE HAVE EVIDENCE SHOWING THAT THOSE COMMUNICATIONS

8    WERE THEN DIVERTED INTO THE SECRET ROOM FOR FILTERING AND

9    SCANNING.  THAT'S KLEIN'S TESTIMONY AND THE AT&T DOCUMENTS.

10   AND AT&T'S OWN SECURITY DIRECTOR, JAMES RUSSELL CONFIRMS THE

11   AUTHENTICITY AND ACCURACY OF KLEIN'S TESTIMONY ABOUT THOSE

12   DOCUMENTS AND THE DOCUMENTS THEMSELVES.

13        AND, IN TURN, WE HAVE THE EXPERTS THAT YOUR HONOR REFERRED

14   TO, BRIAN REID, MATTHEW BLAZE, ASHKAN SOLTANI, AND SCOTT

15   MARCUS EXPLAINING HOW THIS SURVEILLANCE SETUP WORKED AND WHY

16   PLAINTIFFS' COMMUNICATIONS WOULD HAVE GONE THROUGH THESE

17   FILTERS.

18        AND IMPORTANTLY I THINK THEY BRING OUT THAT IN ORDER FOR

19   THE GOVERNMENT TO EVEN FIGURE OUT WHICH COMMUNICATIONS IT

20   WANTED TO TAKE, IT HAD TO RE-ASSEMBLE THE ENTIRE EMAIL

21   INCLUDING ITS CONTENTS.  AND THAT PROCESS ALONE IS ENOUGH OF

22   AN INTERFERENCE WITH OUR COMMUNICATIONS TO CREATE STANDING.

23   AND THIS DIRECT EVIDENCE DOVETAILS WITH THE OTHER EVIDENCE,

24   INCLUDING THE PCLOB REPORT'S DESCRIPTION OF UPSTREAM.

25        INTERNET RECORDS, I'LL SUMMARIZE BRIEFLY.  WE DISCUSSED
```

```
 1    THIS IN OUR BRIEF, ECF 417, 19 TO 21.  THE GOVERNMENT
 2    COLLECTED INTERNET METADATA FOR TEN YEARS, FROM 2001 TO 2011.
 3    THE FISC IN THE PEN RECORDS TRAP AND TRACE ORDER DESCRIBES IT
 4    AS A MASSIVE PROGRAM THAT SYSTEMATICALLY OVERCOLLECTED.  FISC
 5    SAYS IT WAS QUOTE "WHOLLY NON-TARGETED BULK PRODUCTION."
 6    BECAUSE TO COLLECT THE METADATA OF AN EMAIL, YOU HAVE TO
 7    REASSEMBLE THE ENTIRE EMAIL.  COLLECTING THE INTERNET METADATA
 8    REQUIRED THE SAME SORT OF SURVEILLANCE SETUP AS AT&T USED AT
 9    FOLSOM STREET.
10        NOW, THE GOVERNMENT ENDED THE PROGRAM IN 2011, DESTROYED
11    MOST OF THE INTERNET METADATA AT THAT POINT.  WE STILL BELIEVE
12    THAT IT'S LIKELY THAT OUR INTERNET METADATA IS IN THE
13    GOVERNMENT'S SECRET EVIDENCE, BUT IF IT'S NOT, WE HAVE ASKED
14    THE COURT TO IMPOSE A SPOLIATION SANCTION FOR THAT.
15        SO WHY DOESN'T KLAYMAN APPLY HERE?  FIRST, THE COURT
16    DOESN'T EVEN NEED TO REACH THAT ISSUE BECAUSE WE HAVE MUCH
17    MORE EVIDENCE THAN THE KLAYMAN PLAINTIFFS DO, INCLUDING THE
18    SECRET EVIDENCE THE COURT ORDERED PRODUCED.  WE ARE NOT
19    PROCEEDING SOLELY ON THE THEORY THAT BECAUSE THE PROGRAMS ARE
20    BIG, THEY MUST HAVE INCLUDED PLAINTIFFS.
21        SECONDLY, SECTION 2712(B)(4) AND FAZAGA ARE THE
22    CONTROLLING AUTHORITY HERE, AND THEY SAY THE COURT MUST USE
23    THE SECRET EVIDENCE TO DECIDE THE CASE.  AND WE BELIEVE THAT
24    THAT SECRET EVIDENCE SHOULD DEFINITIVELY CONFIRM PLAINTIFFS'
25    STANDING FOR ALL THREE OF THEIR CLAIMS.
```

1        THIRD, EVEN IF THE ONLY INFERENCE -- EVEN IF THE ONLY

2    EVIDENCE FOR OUR PHONE RECORDS STANDING WERE THE INFERENCE

3    ABOUT THE SIZE OF THE PROGRAM, THREE DIFFERENT JUDGES HAVE

4    FOUND THAT INFERENCE SUFFICIENT FOR STANDING.  THERE'S CIRCUIT

5    JUDGE BROWN IN *KLAYMAN*, DISTRICT JUDGE LEON IN *KLAYMAN*, AND

6    DISTRICT JUDGE WINMILL IN THE *SMITH V. OBAMA* CASE, WHICH YOUR

7    COURT REFERENCED -- THE COURT REFERENCED IN YOUR FOURTH

8    AMENDMENT ORDER, ECF 321 AT 6.

9        AND FINALLY, IN ANY EVENT, JUDGE WILLIAMS DID NOT DECIDE

10   THE STANDING QUESTION ON THE GENUINE DISPUTE STANDARD.

11   INSTEAD HE WAS APPLYING THAT HIGHER SUBSTANTIAL LIKELIHOOD

12   STANDARD OF PRELIMINARY INJUNCTION.  SO HIS DECISION IS

13   INAPPOSITE HERE.

14        **THE COURT:**  THANK YOU VERY MUCH.  LET ME HEAR FROM

15   YOU, MR. PATTON.

16        **MR. PATTON:**  YES, YOUR HONOR.  I BELIEVE MR. WIEBE

17   HAS GONE THROUGH QUESTIONS 1 THROUGH 5 AND TOUCHED ON THEM, SO

18   I WILL TRY TO HIT AS MANY POINTS AS MR. WIEBE DID.

19        **THE COURT:**  WELL, I WOULD PREFER THAT YOU CONFINE

20   YOUR ANSWER AS MUCH AS POSSIBLE TO THE QUESTIONS AS THEY ARE

21   PUT BY THE COURT SINCE OTHERWISE --

22        **MR. PATTON:**  I CERTAINLY WILL.  I'M JUST RESPONDING

23   TO HIS POINTS.

24        FIRST OFF, I THINK THE ANSWER TO YOUR HONOR'S QUESTION IS,

25   YES, WE THINK YOUR HONOR SHOULD APPLY THE REASONING.  WE LOOK

1    AT THIS QUESTION AS ADDRESSING THE BULK METADATA PROGRAMS,

2    THAT'S THE BULK INTERNET AND BULK TELEPHONY AND BULK FISC

3    AUTHORITY AND PRESIDENTIAL SURVEILLANCE PROGRAM.

4        THE PLAINTIFFS HAVE NO DIRECT EVIDENCE, AND I WILL RUN

5    THROUGH THE DIRECT EVIDENCE THAT MR. WIEBE ALLEGES.  THE

6    CIRCUMSTANTIAL EVIDENCE THEY HAVE DO NOTHING MORE THAN

7    CONJECTURE; THAT IS A BIG PROGRAM, WE ARE PARTICIPANTS, OUR

8    SUBSCRIBERS, TOO, ARE A BIG PROVIDER, THEREFORE, YOU MUST HAVE

9    GOT OUR RECORDS.  THAT'S THE BOTTOM LINE ON THE BULK

10   TELEPHONY.  THEY HAVE EVEN LESS EVIDENCE ON THE BULK INTERNET

11   METADATA.

12       TO ADDRESS FIRST, THOUGH, THE QUESTION OF THE STANDARD.

13   MR. WIEBE IS EXACTLY CORRECT THAT THE *KLAYMAN* CASE, WHICH WE

14   ALSO HANDLED, WENT UP ON PRELIMINARY INJUNCTION.  BUT THE

15   JUDGES, THE TWO JUDGES AT ISSUE HERE, JUDGE SENTELLE, WHO

16   CONCURRED IN PART AND DISSENTED IN PART, AND JUDGE WILLIAMS,

17   WHO YOUR HONOR REFERRED TO, LOOKED TO THE STANDARD IN *CLAPPER*

18   AND THE SO-CALLED COMMON SENSE INFERENCES THAT THE DISSENT IN

19   *CLAPPER* CONSIDERED.  THOSE WERE NO SMALL MATTERS.

20       BUT THE TWO JUDGES IN THE DC CIRCUIT LOOKED AT THE COMMON

21   SENSE INFERENCES AND SAW THESE INFERENCES, THIS CONJECTURE AS

22   NO STRONGER THAN WHAT WAS IN *CLAPPER*.  AND THAT'S VERY

23   IMPORTANT BECAUSE *CLAPPER* WAS ACTUALLY ON CROSS-MOTIONS FOR

24   SUMMARY JUDGMENT, AND THE COURT IN *CLAPPER* FOUND THAT THOSE

25   ALLEGED COMMON SENSE INFERENCES, WHICH WERE NO STRONGER THAN

1  THOSE IN DC CIRCUIT CASE IN *KLAYMAN*, WERE NOT ENOUGH TO CREATE

2  A GENUINE ISSUE OF MATERIAL FACT.  AND THAT'S THE STANDARD WE

3  HAVE HERE.  SO THAT'S WHY THE COURT SHOULD LOOK TO *CLAPPER* AND

4  WHAT THE COURT DID IN *CLAPPER*.

5  TO ADDRESS ONE OF THE THINGS THAT IS SIGNIFICANT HERE,

6  MR. WIEBE HAS LOOKED AT TWO SETS OF EVIDENCE, ONE THE

7  UNCLASSIFIED EVIDENCE, ONE THE SO-CALLED SECRET EVIDENCE.  THE

8  CLASSIFIED EVIDENCE DOES NOT APPLY HERE.  IT CANNOT BE

9  CONSIDERED UNDER 1806(F) BECAUSE 1806(F) DOES NOT APPLY TO THE

10  ISSUE OF STANDING.  IT APPLIES BY THE STATUTES' DIRECT TERMS

11  AND BY *FAZAGA* TO ONLY DETERMINE THE LAWFULNESS OF THE

12  COLLECTION.

13  SO WHAT WE HAVE HERE IN THIS CASE IS TO DETERMINE THE

14  STANDING.  WHETHER OR NOT PLAINTIFFS CAN EVEN GET TO THE ISSUE

15  OF WHETHER THEY ARE AGGRIEVED PERSONS AND 1806(F) IS TRIGGERED

16  FOR PURPOSES OF DETERMINING THE LAWFULNESS, WE ARE NOT THERE

17  YET.

18  **THE COURT:**  LET ME ASK YOU THIS:  IF YOU CONCEDE THAT

19  1806 IS AN APPROPRIATE VEHICLE UNDER *FAZAGA*, BY ITS PLAIN

20  TERMS, ARE ESSENTIALLY THE MERITS OF THE CASE.

21  **MR. PATTON:**  YOUR HONOR, I WOULD NOT SAY THE MERITS

22  OF THE CASE BECAUSE THERE ARE SOME COMPONENTS OF THE MERITS OF

23  THE CASE THAT THE PLAINTIFF WOULD HAVE TO PROVE IN ORDER FOR

24  THE GOVERNMENT TO INVOKE 1806(F) SUCH AS THEY HAVE TO

25  DEMONSTRATE THEY ARE, IN FACT, AGGRIEVED PERSONS --

1          **THE COURT:**  IS THERE ANY AUTHORITY THAT SAYS THAT THE

2     COURT CANNOT USE 1806(F) FOR THE PURPOSE OF REVIEWING

3     CLASSIFIED INFORMATION TO DETERMINE THE ISSUE OF STANDING?

4          **MR. PATTON:**  THE STATUTE ITSELF SAYS THAT IT'S -- THE

5     PURPOSE OF 1806(F) IS TO DETERMINE THE LAWFULNESS.

6          SECOND, THE *FAZAGA* CASE, WHICH WE RESPECTFULLY DISAGREE

7     WITH, BUT EVEN UNDER *FAZAGA*, THE *FAZAGA* COURT SAYS NO FEWER

8     THAN FOUR TIMES THAT THE PURPOSE OF 1806(F) IS TO DETERMINE

9     THE LAWFULNESS OF THE SURVEILLANCE.

10         SECONDLY, THE COURT IN *FAZAGA* EMPHASIZED NO FEWER THAN

11    FIVE TIMES THE PURPOSE OF 1806(F) IS TO PROTECT NATIONAL

12    SECURITY.  IT CALLED IT A SECRECY PROTECTIVE PROCEDURE.

13         THE WAY THE PLAINTIFFS WANT TO USE IT HERE IS EXACTLY THE

14    OPPOSITE.  THEY WOULD -- THEY WOULD USE IT TO -- THE EFFECT OF

15    USING IT TO DETERMINE STANDING WOULD RESULT IN A CLASSIFIED

16    FACT COMING OUT OF THE PUBLIC RECORD, WHICH IS WHETHER OR NOT

17    PLAINTIFFS WERE SUBJECT TO SURVEILLANCE.

18         THE WAY THAT WE READ 1806(F) AND THE WAY THAT THE NINTH

19    CIRCUIT APPARENTLY DID IN *FAZAGA* II IS ITS PURPOSE IS TO

20    DETERMINE -- ITS PURPOSE IS TO DETERMINE LAWFULNESS.  IF YOU

21    JUST ONLY LOOK AT THE LAWFULNESS OF THE ISSUE, AND THEY HAVE

22    TO DEMONSTRATE THEY ARE ALREADY SUBJECT TO SURVEILLANCE BEFORE

23    YOU GET TO THAT 1806(F) PROCEDURE, YOU DO NOT COME TO BELIEF

24    BY DETERMINING A CLASSIFIED FACT IN THE PUBLIC RECORD.

25         ALSO WE CITED THIS CASE IN OUR PAPERS, THE *WIKIMEDIA*

1   *VERSUS NSA* CASE FROM THE DISTRICT OF MARYLAND THAT WAS DECIDED

2   IN AUGUST OF 2018; THIS EXACT ISSUE, WHETHER OR NOT 1806(F)

3   COULD BE USED TO DETERMINE STANDING, WHETHER OR NOT THE

4   PLAINTIFF IN THAT CASE, WHICH WAS *WIKIMEDIA*, COULD BE SUBJECT

5   TO SURVEILLANCE.  AND THE COURT EMPHATICALLY SAID, NO, YOU

6   CANNOT USE 1806(F) FOR THAT PURPOSE.

7        AND I WILL JUST QUOTE, YOUR HONOR, JUST ONE OF THE TIMES

8   THE COURT INDICATED THAT.  IT WAS AT PAGE 780 --

9            **THE COURT:**  SPEAK INTO THE MICROPHONE, PLEASE.

10           **MR. PATTON:**  PAGE 780 OF THE *WIKIMEDIA* CASE, 335 F.

11   SUPP. 3D AT PAGE 772, THE PINPOINT CITE IS 780.

12       1806(F) PROCEDURES DO NOT APPLY WHERE, AS HERE, A

13   PLAINTIFF HAS NOT YET ESTABLISHED THAT IT HAS BEEN THE SUBJECT

14   OF ELECTRONIC SURVEILLANCE.

15       AND THAT'S COMMON SENSE BECAUSE THE COURT CANNOT, UNDER

16   1806(F), DETERMINE THE LAWFULNESS OF ELECTRONIC SURVEILLANCE

17   IF THE ELECTRONIC SURVEILLANCE HAS NOT BEEN ESTABLISHED YET AT

18   ALL.

19       FURTHER PROOF FOR THAT IS EVIDENT IN THE *FAZAGA* OPINION

20   THAT YOUR HONOR CITED, PARTICULARLY PAGE 40 AND NOTE 52, THAT

21   INDICATES THAT THE STATE SECRETS PRIVILEGE CAN BE ASSERTED

22   WHEN THE ELECTRONIC SURVEILLANCE CLAIMS FALL OUT OF THE CASE

23   OR DROP OUT OF THE CASE.

24       AND THE ONLY EXAMPLE THE COURT USES ON FOOTNOTE 52 IS TO

25   SAY, FOR EXAMPLE, IF PLAINTIFFS CANNOT SUBSTANTIATE FACTUALLY

1    THAT THEY WERE, IN FACT, SUBJECT TO ELECTRONIC SURVEILLANCE IN

2    THE FIRST PLACE.

3        SO THE SECRET EVIDENCE FALLS OUT OF THIS CASE.  THE STATE

4    SECRETS PRIVILEGE ENTIRELY REMOVES THAT EVIDENCE FROM THIS

5    CASE LEAVING ONLY THE UNCLASSIFIED EVIDENCE THAT -- IF YOUR

6    HONOR IS READY FOR ME TO ADDRESS, I CAN DO SO NOW.

7            **THE COURT:**  YES.

8            **MR. PATTON:**  SO MR. WIEBE REFERRED TO TWO TYPES OF

9    EVIDENCE, DIRECT EVIDENCE AND CIRCUMSTANTIAL EVIDENCE.

10       GOING BACK TO THE INTERNET METADATA AND BULK METADATA

11   FIRST.  AS FAR AS THE DIRECT EVIDENCE IS CONCERNED, HE

12   MENTIONED TWO THINGS.  ONE, THE SO-CALLED NSA LETTER.  AND WE

13   ADDRESS THIS IN OUR CLASSIFIED PAPERS, BOTH OUR DECLARATION

14   AND OUR BRIEF.  AS WE SAID IN OUR UNCLASSIFIED PAPERS, WE CAN

15   NEITHER CONFIRM NOR DENY THE AUTHENTICITY OF THAT LETTER,

16   WHETHER OR NOT THAT LETTER IS AUTHENTICATED AS CLASSIFIED.

17       WHAT I CAN SAY ON THE PUBLIC RECORD IS THIS:  MR. MCCRAW,

18   WHO IS COUNSEL FOR *THE NEW YORK TIMES*, INDICATES AT

19   PARAGRAPH 7 OF HIS DECLARATION THAT THE DOCUMENT WAS QUOTE

20   "INADVERTENTLY PRODUCED".

21       IF THAT IS A TRUE FACT, THAT THE GOVERNMENT INADVERTENTLY

22   PRODUCED IT, THEN THE ISSUE OF THE AUTHENTICITY OF THAT

23   DOCUMENT, WHETHER OR NOT YOUR HONOR CAN CONSIDER IT, IS

24   ADDRESSED BY THE *AL-HARAMAIN* CASE FROM THE FOURTH (SIC)

25   CIRCUIT.  THAT'S 507 F. 3D 1190 PAGE 1205.

1          AND THE FACT OF THAT CASE, WHICH I'M SURE YOUR HONOR IS

2     FAMILIAR WITH, ARE AN INADVERTENTLY DISCLOSED CLASSIFIED

3     DOCUMENT DOES NOT WAIVE THE STATE SECRETS PRIVILEGE OVER IT.

4     AND THE ONLY DIFFERENCE HERE IF THE DOCUMENT IS LEGITIMATELY

5     PRODUCED BY THE GOVERNMENT, WE CAN NEITHER CONFIRM NOR DENY

6     THAT IT WAS, BUT IF THAT DOCUMENT WAS PRODUCED BY THE

7     GOVERNMENT INADVERTENTLY, THEN IT CANNOT WAIVE THE CLASSIFIED

8     NATURE OF THAT DOCUMENT.

9          THE ONLY DIFFERENCE BETWEEN THAT SET OF FACTS IN

10    *AL-HARAMAIN* AND THIS SET OF FACTS IS THAT IN THIS PARTICULAR

11    CASE, IF THE PLAINTIFFS ARE TO BE BELIEVED *THE NEW YORK TIMES*

12    DID NOT HONOR THE REQUEST TO RETURN IT, AND THAT CANNOT BE THE

13    BASIS OF A WAIVER OF PRIVILEGE.

14         THE SECOND DOCUMENT THAT MR. WIEBE TALKED ABOUT WAS THE

15    SO-CALLED DRAFT OIG REPORT.  WE HAVE ASSERTED THE STATE

16    SECRETS PRIVILEGE OVER THAT DOCUMENT.  IT WAS THE SUBJECT OF

17    DISCOVERY REQUESTS, REQUEST FOR ADMISSION 176, 177, AND 178 BY

18    THE PLAINTIFFS.  WE OBJECTED ON THE STATE SECRETS GROUNDS, AND

19    OUR POSITION HAS NOT CHANGED THAT -- WHETHER THAT DOCUMENT IS

20    AUTHENTIC OR NOT IS A CLASSIFIED FACT.

21         THE PLAINTIFFS HAVE COME FORWARD WITH A DECLARATION BY

22    MR. EDWARD SNOWDEN.  AND WE ARGUED THIS IN OUR PAPERS, BUT I

23    WILL TRY AND BE BRIEF.

24              **THE COURT:**  HE'S THE ONE YOU CALL THE OUTLAW

25    EXPATRIATE?

1        **MR. PATTON:**  THERE ARE A LOT OF PHRASES, YOUR HONOR.

2        **THE COURT:**  I AM SURE THERE ARE FROM YOUR SIDE.

3        **MR. PATTON:**  THAT IS ONE OF THEM.

4     OUR POSITION IS THAT HE IS NOT COMPETENT TO TESTIFY ABOUT

5  THAT.  THE LAW ON THIS CASE THAT WE CITED IN OUR SUR-REPLY AT

6  PAGE 1 IS THAT A WITNESS TO HAVE -- A WITNESS UNDER 901(B)(1)

7  OF THE FEDERAL RULES OF EVIDENCE NEEDS TO HAVE WRITTEN THE

8  DOCUMENT, SIGNED IT, USED IT, OR SAW OTHERS DO THAT.

9     HE DID NOT.  HE INDICATES PERHAPS EUPHEMISTICALLY THAT HE

10  HAD QUOTE "ACCESS" TO IT.  THAT IS ALL THAT HE SAID.  THAT'S

11  NOT ENOUGH AS A MATTER OF LAW.

12     SECOND, PLAINTIFFS POINT TO 901(B)(7).  THAT WAS A PUBLIC

13  RECORD.  901(B)(7) OF THE FEDERAL RULES OF EVIDENCE --

14        **THE COURT:**  COUNSEL, I DON'T WANT TO INTERRUPT -- I

15  JUST DID INTERRUPT YOU.  BUT I DO WANT TO INTERRUPT YOU --

16        **MR. PATTON:**  BUT YOU DON'T WANT TO.

17        **THE COURT:**  I DON'T WANT TO.

18     I'VE READ THAT IN YOUR PAPERS.  I APPRECIATE YOUR

19  PINPOINTING FROM YOUR BRIEF, BUT I'M REALLY ASKING FOR

20  SPECIFIC RESPONSES THAT ARE NOT -- DON'T ASSUME BECAUSE I

21  DIDN'T REFER TO IT THAT I DIDN'T READ IT.  I READ EVERYTHING.

22  I READ THE CASES AND I'M PROBABLY AS FAMILIAR WITH THIS CASE

23  AS ANY OTHER ON THE COURT'S DOCKET.  SO YOU DON'T NEED TO

24  REPEAT YOUR EVIDENTIARY OBJECTIONS.  I AM VERY FAMILIAR WITH

25  THOSE.

1          **MR. PATTON:**  I WILL JUST MOVE ON TO A PARTICULAR

2     POINT WITH REGARD TO -- SO THOSE ARE THE EVIDENTIARY

3     OBJECTIONS.  IF YOUR HONOR FOUND THAT MR. SNOWDEN WAS

4     COMPETENT TO TESTIFY ABOUT THOSE MATTERS, THEN THE NEXT ISSUE

5     IS WHETHER OR NOT THEY CAN PRESENT IT IN ADMISSIBLE FORM AT

6     TRIAL.

7          WE SET OUT BASICALLY EVERYTHING ON THAT POINT IN OUR

8     PAPERS, BUT IT WAS IN OUR SUR-REPLY BECAUSE THAT'S WHAT IT WAS

9     IN RESPONSE TO, THE FILING THAT OCCURRED IN THE PRIOR BRIEFS.

10    SO WE DID NOT GET THE OPPORTUNITY TO RESPOND TO MR. -- OR TO

11    PLAINTIFFS' SUR-REPLY.

12         AND THE ONLY POINT THAT I WOULD ADD IS WHETHER OR NOT THE

13    COURT WERE TO ALLOW MR. SNOWDEN TO TESTIFY LIVE UNDER FEDERAL

14    CIVIL PROCEDURE 43, WHETHER IT WAS A DE BENE ESSE DEPOSITION,

15    WHETHER IT WAS LIVE VIDEO FED, NO MATTER HOW IT IS, THE STATE

16    DEPARTMENT INFORMS US THAT THAT WOULD BE AN AFFRONT TO

17    RUSSIA'S JUDICIAL SOVEREIGNTY, AND WE, AS OFFICERS OF THE

18    UNITED STATES, WOULD NOT BE ALLOWED TO PARTICIPATE IN ANY

19    DEPOSITION THAT DID THAT.

20          **THE COURT:**  YOU MIGHT BE ACCUSED OF COLLUDING, RIGHT?

21    YOU DON'T HAVE TO ANSWER THAT.

22          **MR. PATTON:**  I WILL TAKE THE FIFTH.

23          **THE COURT:**  OKAY.

24          **MR. PATTON:**  SO THAT TAKES CARE OF THE DIRECT

25    EVIDENCE.

1    THE CIRCUMSTANTIAL EVIDENCE FOR, LET'S START WITH THE BULK

2    TELEPHONY METADATA.  THE PLAINTIFFS POINT TO -- AND MR. WIEBE

3    POINTS TO THE BROAD SCOPE OF IT.  THEY SAY THEY HAVE

4    ADDITIONAL EVIDENCE.  THE ADDITIONAL EVIDENCE THAT THEY HAVE

5    HERE INCLUDES THAT LETTER.  THAT LETTER WAS IN THE RECORD ON

6    REMAND IN *KLAYMAN* AND IT WAS NOT SUFFICIENT FOR JUDGE LEON TO

7    FIND IN THAT PARTICULAR CASE A GENUINE ISSUE OF MATERIAL FACT.

8    THAT CASE WENT BACK UP AGAIN ON APPEAL ONLY ON THE ISSUE

9    OF VERIZON BUSINESS NETWORK SERVICES.  THE VERIZON WIRELESS

10   ISSUE WAS NOT SUCCESSFUL IN THE DISTRICT COURT AGAIN.  AND

11   INCLUDED IN THAT SET OF EVIDENCE WAS THE DOCUMENT THAT

12   MR. WIEBE SAYS WAS SENT TO *THE NEW YORK TIMES*.

13   BUT CIRCUMSTANTIALLY SPEAKING, THEY HAVE -- THE BREADTH OF

14   THE SCOPE, THOSE ARE ISSUES THAT WERE ADDRESSED BY THE DC

15   CIRCUIT AND THE... JUDGE SENTELLE BASICALLY SAID THIS IS NO

16   MORE THAN A BIG PROGRAM WITH BIG -- YOU'RE A SUBSCRIBER TO BIG

17   PROVIDERS, THEREFORE, YOU MUST HAVE GOT THE RECORDS.  AND

18   THAT, HE SAID, WAS JUST CONJECTURE.

19   THEY CANNOT BASE -- THERE'S A DIFFERENCE BETWEEN

20   CONJECTURE AND A REASONABLE INFERENCE.  AND THAT WAS

21   CONSIDERED TO BE CONJECTURE AND NO MORE, AS I POINTED OUT AT

22   THE TOP, NO MORE THAN THE FACTS THAT WERE PRESENT, THE

23   SO-CALLED COMMON SENSE INFERENCES THAT WERE REJECTED IN

24   *CLAPPER*.  THOSE WERE NO STRONGER.

25   IN THE DISSENT IN *CLAPPER* SAID THE GOVERNMENT ONLY HAS TO

1    BE DOING ITS JOB.  THAT WAS AT PAGE 431 OF THE *CLAPPER*

2    DECISION, ONLY HAS TO BE DOING ITS JOB IN ORDER TO HAVE GOT

3    THE COMMUNICATIONS IN THE *CLAPPER* CASE.  THERE'S NOT ANY

4    DIFFERENCE HERE IN THAT REGARD.

5        I WILL SAY I FORGOT TO MENTION THAT 2712(B)(4) THAT

6    MR. WIEBE POINTED TO WAS A -- THAT DOES NOT CHANGE THE 1806(F)

7    ANALYSIS THAT WE ADDRESSED EARLIER.  THE 2712(B)(4) SAYS THAT

8    IT APPLIES TO MATERIALS GOVERNED BY THIS SECTION, BY THE

9    AFOREMENTIONED SECTION SO THERE'S NO DIFFERENCE BETWEEN

10   2712(B)(4) AND 1806(F) IN THAT REGARD.  THEY ALL APPLY -- BOTH

11   APPLY ONLY TO DETERMINE THE LAWFULNESS OF THE PROGRAM.

12       TO TALK ABOUT THE BULK INTERNET METADATA, BASICALLY THE

13   PLAINTIFFS' ARGUMENTS ON EVIDENCE ARE CUT FROM THE SAME CLOTH

14   AS THEIR BULK TELEPHONY METADATA PROGRAM EVIDENCE EXCEPT

15   THERE'S MUCH LESS CLOTH INVOLVED.  THEY DO NOT -- IT'S

16   BASICALLY, THIS PROGRAM WAS BIG, IT GOT BIGGER, AND IT GOT

17   BIGGER THAN IT SHOULD.

18       AND WHEN THEY POINT TO WHETHER IT'S A FISC PRTT DOCUMENT

19   THAT IS IN THE RECORD, IT TALKS ABOUT THE INITIAL... THE

20   INITIAL APPLICATION OF THE FISC PROGRAM THAN THE EXPANSION OF

21   THE PROGRAM OVER COLLECTION; THAT THE KEY TO ALL OF THIS IS

22   NEITHER THE PLAINTIFFS' FACT WITNESSES NOR THEIR EXPERTS KNOW

23   WHERE IT OCCURRED, HOW IT OCCURRED, WHO WAS PARTICIPATING IN

24   IT.  ALL OF THAT IS SIMPLE SPECULATION AND CONJECTURE, AND

25   THAT IS NOT ENOUGH.

1    MOVING ON TO THE INTERNET CONTENT THAT MR. WIEBE

2    ADDRESSED.  HE TALKS ABOUT, AND HE'S CORRECT, THAT WE DID NOT

3    CONTEST THE FACT THAT -- TWO FACTS.  ONE, THAT PLAINTIFFS'

4    COMMUNICATIONS AT SOME POINT WENT THROUGH THE PEERING LINKS AT

5    FOLSOM STREET.  NUMBER TWO, THAT THEY WERE SUBJECT TO AN

6    OPTICAL SPLITTER.

7    BUT HERE'S KEY, FOR WHAT PURPOSE?  AND FOR WHOM?  AND

8    THERE'S NO DIFFERENCE TODAY IN 2019 THAN THERE WAS IN YOUR

9    HONOR'S DECISION IN 2015 WHEN YOU LOOKED AT ALL OF THE SAME

10   FACTUAL EVIDENCE.  YOUR HONOR SAID IN YOUR -- ON PAGE 4 OF

11   YOUR HONOR'S 2015 OPINION ON UPSTREAM, WHICH APPLIES EQUALLY

12   TO WHETHER OR NOT IT'S INTERNET CONTENT UNDER THE PSP OR

13   INTERNET CONTENT UNDER UPSTREAM, THAT YOU LOOK AT THE ENTIRETY

14   OF THE RECORD.  AND HAVING LOOKED AT THE ENTIRETY OF THE

15   RECORD, YOU FIND THAT... AT PAGE 4 THAT THE PLAINTIFFS CAN

16   ONLY SPECULATE ABOUT WHAT DATA WERE ACTUALLY PROCESSED IN THE

17   SECURE ROOM, SG3, AND BY WHOM, AND HOW, AND FOR WHAT PURPOSE.

18   ABSOLUTELY NOTHING HAS CHANGED.  THE PLAINTIFFS HAVE MADE

19   NEW ARGUMENTS ABOUT THE SAME OLD EVIDENCE, AND WE'VE ADDRESSED

20   THOSE IN OUR PAPERS.  I AM NOT GOING TO, AGAIN, GO THROUGH

21   THAT.

22   THERE ARE NEW EXPERTS THAT THEY PRESENT, PROFESSOR BLAZE,

23   DR. REID, MR. SOLTANI.  THEY ADD ABSOLUTELY NOTHING.  THEY SAY

24   THAT THE EQUIPMENT WAS PRESENT THERE.  IT'S QUOTE-UNQUOTE

25   "CONSISTENT" WITH SPY EQUIPMENT OR SURVEILLANCE.

1        WELL, WE ARE AT THE SUMMARY JUDGMENT STAGE.  BEING

2   CONSISTENT WITH IS NOT EVEN ENOUGH EVIDENCE TO GET YOU PASSED

3   AN *IQBAL* OR *TWOMBLY* AT RULE 12(B)(6).  SO TO SAY THAT WHATEVER

4   EQUIPMENT WAS IN THERE WAS CONSISTENT WITH THAT IS NOT ENOUGH.

5        SO YOUR HONOR HAS ALREADY DECIDED THAT FACTUALLY IN 2015.

6   THE PLAINTIFFS ARE PRESENTING THE SAME EVIDENCE ONCE AGAIN AND

7   THERE'S NO BASIS FOR YOU TO LOOK AGAIN AT ANY OF THEIR FACTUAL

8   PRESENTATION.

9        MR. WIEBE ALSO MENTIONED THE CONTENT OF -- OR THE INTERNET

10  METADATA THAT WAS DESTROYED THAT THEY SEEK SPOLIATION

11  SANCTION.  YOUR HONOR'S JUNE 2017 OPINION, I THINK IT IS

12  PAGE 5, ADDRESSED THE ISSUE.  YOUR HONOR HAS LOOKED AT THIS

13  ISSUE, IT'S BEING ON THE PUBLIC RECORD FOR YEARS.  AND YOUR

14  HONOR SAID THAT ABSENT A SHOWING OF BAD FAITH OR OTHER

15  RELEVANCE, YOUR HONOR IS NOT GOING TO GIVE AN ADVERSE

16  INFERENCE ON THAT PARTICULAR ISSUE.

17       AND THE REASON THAT METADATA WAS DESTROYED WAS IN ORDER TO

18  COMPLY WITH FISC MINIMIZATION PROCEDURES, AND IT WAS THE

19  INTERNET FISC AUTHORIZED METADATA WHICH AT THAT TIME WE DID

20  NOT REALIZE WAS SOMETHING THAT PLAINTIFFS WERE CHALLENGING IN

21  THIS CASE, AND THAT ISSUE HAS BEEN BRIEFED AND BRIEFED AS TO

22  WHAT ACTUAL PROGRAMS WERE AT ISSUE IN 2008.

23       MR. WIEBE ALSO MENTIONED THE *SMITH VERSUS OBAMA* CASE IN

24  WHICH A JUDGE FOUND THAT STANDING WAS APPROPRIATE BASED ON THE

25  EVIDENCE THAT HE'S PRESENTED.  THAT WAS IN A FOOTNOTE WHERE

1    THE JUDGE DID NOTHING OTHER THAN CITE TO THE *KLAYMAN* DECISION.

2    THE *KLAYMAN* DISTRICT DECISION WAS REVERSED AND REMANDED BASED

3    ON THE THEORY AT THAT TIME, THE ONE ADOPTED BY THE *SMITH* CASE,

4    THAT THE GOVERNMENT MUST HAVE OBTAINED THE BULK TELEPHONY

5    METADATA RECORDS.  SO THAT CASE IS NOT PRECEDENT FOR YOUR

6    HONOR.

7        ANY OTHER CASES, SUCH AS *ACLU VERSUS CLAPPER*, INVOLVED

8    VBNS, VERIZON BUSINESS NETWORK SERVICES.  THAT'S THE ONLY

9    PROVIDER IDENTITY FOR A 90-DAY PERIOD THE GOVERNMENT HAS

10   ACKNOWLEDGED.  YOUR HONOR KNOWS WE HAVE CONSISTENTLY TAKEN A

11   POSITION WHETHER OR NOT FOR ANY OF THESE SIX PROGRAMS THAT ARE

12   NOW BEING CHALLENGED, THAT THE IDENTITY OF PARTICIPATING

13   PROVIDERS IS CLASSIFIED.  THAT IS THE ONE SLIVER EXCEPTION FOR

14   A 90-DAY PERIOD THAT NONE OF THE PLAINTIFFS HERE ARE ACTUALLY

15   VBNS SUBSCRIBERS.

16       AND ADMIRAL ROGERS, WHO IS THE DIRECTOR OF NSA AT THE

17   TIME, INDICATED IN HIS -- SWORE IN HIS DECLARATION THAT THE

18   VBNS -- WAS -- THAT ACKNOWLEDGMENT DID NOT COVER ANY OTHER

19   VERIZON COMPONENT SUCH AS THE VERIZON COMPONENT THAT

20   PLAINTIFFS ARE SUBSCRIBERS TO.

21       I BELIEVE I HAVE COVERED ALL THE POINTS.

22           **THE COURT:**  MR. WIEBE, I WILL GIVE YOU A CHANCE

23   BRIEFLY TO RESPOND, BUT I WOULD LIKE YOU TO -- WE ARE KIND OF

24   PUSHING TOGETHER SOME, I THINK, NECESSARILY SOME OF THE OTHER

25   QUESTIONS.

1          BUT I WOULD LIKE YOU TO RESPOND TO PART B WHICH ASKS:

2          WITHOUT ANY SPECIFIC FINDING THAT ANY SPECIFIC PLAINTIFF'S

3     COMMUNICATIONS WERE TOUCHED BY THE ALLEGED SURVEILLANCE

4     PROGRAMS AT ISSUE, HOW CAN THE COURT FIND STANDING TO SUE?

5          I'VE HEARD AND CERTAINLY, YOU KNOW, UNDERSTAND YOUR

6     CIRCUMSTANTIAL EVIDENCE AND THAT'S IN THE RECORD AND YOU DON'T

7     NEED TO REPEAT THAT, BUT I WOULD LIKE YOU TO ANSWER, IF YOU

8     CAN, THAT QUESTION.  AND THEN I'LL GIVE YOU A CHANCE BRIEFLY

9     TO REPLY TO GOVERNMENT COUNSEL.

10          **MR. WIEBE:**  WE CERTAINLY BELIEVE THAT BOTH THE DIRECT

11    AND THE CIRCUMSTANTIAL PUBLIC EVIDENCE THAT WE HAVE PUT IN

12    ALONE IS SUFFICIENT FOR STANDING.  WE BELIEVE WHEN YOU COMBINE

13    IT WITH WHAT'S IN THE CLASSIFIED EVIDENCE THAT THE GOVERNMENT

14    HAS PROVIDED, THAT THAT WILL REMOVE ANY QUESTION AT ALL ABOUT

15    STANDING.

16          AND, AGAIN, THIS IS SUMMARY JUDGMENT.  ALL WE HAVE TO DO

17    IS CREATE A GENUINE DISPUTE ABOUT THE FACT OF STANDING.  WE

18    DON'T HAVE TO -- WE ARE NOT SEEKING SUMMARY JUDGMENT ON

19    STANDING, SO WE DON'T HAVE TO PROVE STANDING.  WE JUST HAVE TO

20    PRODUCE ENOUGH EVIDENCE FROM WHICH A REASONABLE FACT FINDER

21    COULD CONCLUDE THAT WE HAVE STANDING.

22          **THE COURT:**  IS YOUR BOTTOM LINE ARGUMENT, MR. WIEBE,

23    THAT THE CASES THAT THE COURT ALLUDES TO AND TO WHICH THE

24    GOVERNMENT ALLUDED TO ABOUT, WELL, OUR COMMUNICATIONS MUST

25    HAVE BEEN PICKED UP BECAUSE THE PROGRAM WAS SO MASSIVE, THEY

```
1    MUST HAVE USED -- GOTTEN INTO THE BACKBONE OF VERIZON, THAT
2    YOU'VE JUST SUBMITTED MORE EVIDENCE AND BETTER EVIDENCE TO GO
3    BEYOND THAT.  BECAUSE YOU HAVE TO CONCEDE THAT THE LAW IS
4    PRETTY CLEAR THAT THIS, YOU KNOW, MUST HAVE, SHOULD HAVE
5    EVIDENCE IS NOT ENOUGH.  MOST COURTS, JUST ABOUT EVERY COURT
6    HAS REACHED THAT CONCLUSION.
7        SO YOUR ARGUMENT, AS I UNDERSTAND IT, IS WE HAVE MORE AND
8    BETTER EVIDENCE.
9            MR. WIEBE:  CERTAINLY IF THE COURT ADOPTS THAT
10   STANDARD, THAT'S OUR RESPONSE TO IT.  WE STILL BELIEVE THAT
11   IT'S AN OPEN QUESTION TO SAY THE LEAST.
12           THE COURT:  IT MAY BE, BUT I THINK IT IS ABOVE THIS
13   COURT'S PAY GRADE AT THIS POINT WHEN WE ARE DEALING WITH
14   CLAPPER AND THE FOURTH CIRCUIT AND THE DC CIRCUIT AND THE
15   NINTH CIRCUIT, RIGHT?
16           MR. WIEBE:  THE NINTH CIRCUIT HASN'T SAID THAT.
17           THE COURT:  I KNOW.
18           MR. WIEBE:  AND THERE WAS ONE JUDGE ON THE DC CIRCUIT
19   THAT SAID, NO, IT IS ENOUGH.
20           THE COURT:  ALL RIGHT.
21           MR. WIEBE:  BUT TO GET TO YOUR QUESTION, YOUR
22   HONOR --
23           THE COURT:  YES.
24           MR. WIEBE:  THERE IS ONE THING THAT I DID WANT TO
25   CLARIFY.
```

1      IN THE -- NOT IN QUESTION B ITSELF, BUT IN THE BODY OF

2  QUESTION 1, THERE'S A PHRASING WHERE THE COURT SUGGESTS, WITH

3  MAYBE SOMETHING DIFFERENT THAN ITS ACTUAL KNOWLEDGE THAT ANY

4  SPECIFIC COMMUNICATION OF ANY PARTICULAR NAMED PLAINTIFF WAS

5  COLLECTED BY THE GOVERNMENT.

6      I JUST WANTED TO MAKE CLEAR THAT OUR POSITION IS WE DON'T

7  HAVE TO SHOW THAT A SPECIFIC PHONE CALL ON A SPECIFIC DAY OR A

8  SPECIFIC EMAIL WAS COLLECTED; THAT IS, THERE CAN BE

9  CIRCUMSTANTIAL EVIDENCE, THERE CAN BE DIRECT EVIDENCE THAT

10  EVERYTHING WAS BEING COLLECTED, AND THAT MAKES IT MORE

11  PROBABLE THAN NOT THAT WE WERE INCORPORATED IN THAT.

12      I JUST WANTED TO MAKE THAT CLEAR.  AT&T CUSTOMERS, IF AT&T

13  TURNS OVER ALL OF ITS PHONE RECORDS, THAT CERTAINLY MAKES IT

14  MORE PROBABLE THAN NOT THAT OURS WERE IN IT.

15          **THE COURT:**  ALL RIGHT.

16          **MR. WIEBE:**  OBVIOUSLY THERE'S A LOT THAT THE

17  GOVERNMENT HAS JUST LAID BEFORE YOU THAT WE WANT TO RESPOND

18  TO, BOTH HERE AND IN SUBSEQUENT QUESTIONS.

19      FOCUSING ON WHAT THEY HAVE SAID HERE, FIRST OF ALL, THEY

20  CHALLENGE OUR DIRECT EVIDENCE UNDER THE PHONE RECORDS PROGRAM.

21  THE NSA LETTER TO THE FISC, EXHIBIT B, WHICH WE HAVE ALL JUST

22  LOOKED AT, THE GOVERNMENT SEEMS TO LIVE IN THIS FANTASY WORLD

23  WHERE IF THEY SPRINKLE A LITTLE PIXIE DUST, THINGS WHICH ARE

24  IN THE PUBLIC RECORD SUDDENLY DISAPPEAR FROM THE PUBLIC

25  RECORD, AND THAT'S JUST NOT THE CASE.

1          **THE COURT:**  THEY ARE NOT SAYING THAT.  THEY ARE

2     SAYING THAT -- IT'S NOT PIXIE DUST, IT IS THE CLAIM BY THE

3     GOVERNMENT THAT ACKNOWLEDGING THE AUTHENTICITY OF CERTAIN

4     DOCUMENTS THAT HAVE SOMEHOW GOTTEN INTO THE PUBLIC DOMAIN;

5     IT'S THAT ADMISSION ITSELF COULD BE -- COULD DO GRAVE HARM TO

6     NATIONAL SECURITY.

7          **MR. WIEBE:**  BUT THE GOVERNMENT HAS ALREADY ADMITTED

8     THE STATE PRODUCED THIS IN FOIA LITIGATION WITH *THE NEW YORK*

9     *TIMES*.  *THE NEW YORK TIMES* SAID THE SCOPE OF THE LITIGATION

10    WAS ONLY NSA DOCUMENTS.  THE GOVERNMENT COMES BACK AND SAYS,

11    HERE'S A NSA DOCUMENT.  THAT'S ALL THE COURT NEEDS TO CONCLUDE

12    IT IS AUTHENTIC.

13        WE'VE ALSO GOT MR. MCCRAW'S TESTIMONY*, THE NEW YORK TIMES*

14    GENERAL COUNSEL, SAYING I CONDUCTED THAT LITIGATION.  THE

15    GOVERNMENT CALLED ME UP, SAID HERE ARE THE DOCUMENTS.  THEY

16    GAVE ME THE DOCUMENTS.  THIS IS ONE OF THE DOCUMENTS.  THAT IS

17    MORE THAN SUFFICIENT TO AUTHENTICATE THE DOCUMENTS.

18        NOW, WHETHER THE GOVERNMENT WANTS TO TAKE A POSITION ON

19    AUTHENTICITY OR NOT IS A COMPLETELY DIFFERENT MATTER.  THEY

20    CAN REMAIN SILENT.  THEY CAN, YOU KNOW, GIVE YOUR HONOR SECRET

21    EXPLANATIONS, AS THEY APPARENTLY HAVE, BUT THAT DOESN'T CHANGE

22    THE BLUNT FACT THAT IT IS OUT THERE, IT'S PUBLIC, AND WE ARE

23    ENTITLED TO RELY ON IT.

24        AND THEY CAN'T SHRINK THE SCOPE OF THE PUBLIC EVIDENCE BY

25    SAYING WE DON'T LIKE THAT, WE DON'T THINK THAT SHOULD BE IN

1    THE PUBLIC EVIDENCE.  IF IT'S PUBLIC, THAT IS PUBLIC EVIDENCE.

2    WE ARE ENTITLED TO RELY ON IT.

3        LIKEWISE THE NSA INSPECTOR GENERAL REPORT.  WE HAVE LAID

4    OUT THE AUTHENTICATION, THE REASON -- THE GROUNDS FOR

5    AUTHENTICATION BOTH IN OUR REPLY BRIEF AND ALSO IN OUR

6    SUR-REPLY.  AND I WON'T GO THROUGH THOSE.  BUT THERE'S MORE

7    THAN ADEQUATE AUTHENTICATION.

8        AND THE, YOU KNOW, THE SPECULATION AS TO WHETHER OR NOT

9    MR. SNOWDEN COULD TESTIFY IN THE FUTURE IS NOT A GROUNDS FOR

10   SAYING THIS IS NOT AN AUTHENTIC DOCUMENT.

11       SO WE'VE GOT --

12           **THE COURT:**  DO YOU HAVE ANY BASIS TO BELIEVE THAT

13   MR. SNOWDEN IS WILLING TO TESTIFY AND SUBJECT HIMSELF TO U.S.

14   JURISDICTION?  HAS HE TOLD YOU THAT?

15           **MR. WIEBE:**  THERE HAS BEEN NO REQUEST AND WE

16   HAVEN'T --

17           **THE COURT:**  WHAT BASIS DO YOU HAVE?  YOU HAVE THE

18   BURDEN OF GOING FORWARD WITH RESPECT TO THE EVIDENCE THAT

19   MR. SNOWDEN WOULD BE AVAILABLE TO TESTIFY AND, THEREBY, GIVE

20   THE GOVERNMENT A CHANCE TO CROSS-EXAMINE HIM.

21           **MR. WIEBE:**  AS WE HAVE EXPLAINED, THERE ARE

22   PROCEDURES --

23           **THE COURT:**  IN RUSSIA?

24           **MR. WIEBE:**  -- FOR REMOTE TESTIMONY.

25           **THE COURT:**  IN RUSSIA?

1          **MR. WIEBE:**  WE LAID OUT --

2          **THE COURT:**  ALL RIGHT.

3          **MR. WIEBE:**  HE WOULD BE IN RUSSIA, WE WOULD BE HERE.

4    AND BOTH FOR DEPOSITION AND FOR TRIAL TESTIMONY, AS WE'VE

5    EXPLAINED IN OUR PAPERS.

6          **THE COURT:**  ALL RIGHT.  I READ THAT.

7          **MR. WIEBE:**  PERFECTLY REASONABLE AND FEASIBLE

8    ALTERNATIVES.

9       THE -- SO AS THE COURT HAS POINTED OUT, WE'VE GOT A LOT

10   MORE EVIDENCE.

11         **THE COURT:**  I KNOW.  AND I DON'T WANT YOU TO REPEAT

12   WHAT YOU SAID BEFORE.  I MEAN, JUST BECAUSE THE GOVERNMENT

13   SAID IT MORE RECENTLY DOESN'T MEAN I'M GOING TO NECESSARILY

14   FIND IT MORE PERSUASIVE BECAUSE I AM GOING TO THINK ABOUT ALL

15   OF YOUR SUBMISSIONS.

16         **MR. WIEBE:**  I UNDERSTAND.  WE HAVE COMPLETE

17   CONFIDENCE IN THAT, YOUR HONOR.

18      ONE OTHER POINT ABOUT THE NSA LETTER WE WERE LOOKING AT,

19   THEY SAY IT WAS PRESENT IN *KLAYMAN* ON REMAND.  THE THING THAT

20   *KLAYMAN* FAILED TO DO WAS PUT IN EXHIBIT A, WHICH WAS THE

21   BUSINESS RECORDS ORDER SHOWING WHAT WAS ACTUALLY COLLECTED

22   UNDER THAT.

23      AND SO WE HAVE BOTH A AND B.  *KLAYMAN* ONLY HAD B.  AND YOU

24   NEED BOTH OF THEM TO MAKE THE COMPLETE STORY.  AND WE HAVE THE

25   COMPLETE STORY.

1    THE ISSUE OF 1806(F), OBVIOUSLY WE WILL HAVE MUCH MORE TO

2    SAY ABOUT AT QUESTION 3.  JUST FOR NOW, TWO POINTS.

3    FAZAGA SAYS ONCE EVIDENCE COMES IN UNDER 1806(F), IT'S IN

4    THE CASE FOR ALL PURPOSES.  AND WE'LL EXPLAIN THAT IN QUESTION

5    3.  AND THE SECOND POINT IS, 2712(B)(4) IS BROADER THAN

6    1806(F) AND ALLOWS THE USE OF SECRET EVIDENCE FOR ANY PURPOSE.

7    WE WILL ALSO ADDRESS THAT IN QUESTION 3.

8    *CLAPPER*, MANY, MANY DIFFERENCES BETWEEN *CLAPPER* AND THIS

9    CASE.  THAT WAS A FUTURE HARM CASE, IT WAS A CASE -- A

10   PRE-ENFORCEMENT CHALLENGE BROUGHT BEFORE THE STATUTE HAD

11   ACTUALLY GONE INTO EFFECT.  SO BY DEFINITION, THE PLAINTIFFS

12   WERE SPECULATING ABOUT WHAT MIGHT HAPPEN IN THE FUTURE.  THEY

13   MADE NO CLAIM THAT THEY ACTUALLY HAD BEEN SUBJECT TO

14   SURVEILLANCE.  THEY SAID WE MAY BE SUBJECT TO SURVEILLANCE IN

15   THE FUTURE.  THAT'S WHAT WAS TOO SPECULATIVE.

16   WHY WAS IT SPECULATIVE?  BECAUSE, UNLIKE THIS CASE, THEY

17   WERE CHALLENGING TARGETED SURVEILLANCE.  OUR CASE, UNTARGETED

18   SURVEILLANCE, MASS SURVEILLANCE, EVERYONE GETS SWEPT IN.

19   THEIR CASE, TARGETED SURVEILLANCE.  THEIR THEORY OF STANDING

20   WAS WE COMMUNICATE WITH PEOPLE WHO THE GOVERNMENT IS LIKELY TO

21   TARGET, THEREFORE, OUR COMMUNICATIONS ARE LIKELY TO BE CAUGHT

22   UP IF THE GOVERNMENT TARGETS THOSE PEOPLE.

23   THAT'S NOT OUR THEORY AT ALL.  WE'RE ALLEGING UNTARGETED

24   SURVEILLANCE.  SO WE DON'T HAVE THAT WHOLE CHAIN OF

25   SPECULATION THAT THEY NEEDED TO RELY ON IN A TARGETED

1   SURVEILLANCE CASE.  AND I'LL HAVE MORE TO SAY ABOUT *CLAPPER* AS

2   WELL IN THE FUTURE.

3       ONE OF THE FINAL THINGS THE GOVERNMENT MENTIONED WAS YOUR

4   FOURTH AMENDMENT RULING.  WE ADDRESSED THIS IN OUR PAPERS, ECF

5   417, 17 TO 19.  THE REASONS WHY WE BELIEVE THAT RULING WAS

6   ERRONEOUS AND WHY THE COURT SHOULD TAKE ANOTHER LOOK AT IT.

7       I AM GOING TO LEAVE IT THERE SO WE CAN CONTINUE ON.

8           **THE COURT:**  YES.  LET'S MOVE ON.  I'M SURE,

9   GOVERNMENT COUNSEL, YOU WILL HAVE MORE TO SAY ON THESE ISSUES,

10  BUT LET'S TRY TO PUT THEM IN THE CONTEXT OF THE QUESTIONS.

11      AGAIN, TO THE EXTENT THAT YOU HAVE ALREADY RESPONDED TO

12  THE QUESTIONS THAT THE COURT WILL GET INTO NOW AND A LITTLE

13  BIT LATER, YOU DON'T NEED TO REPEAT YOUR ARGUMENTS.  OBVIOUSLY

14  I UNDERSTAND.  I JUST WANT TO GET YOUR ANSWERS AS CRITICAL

15  BEING IN RESPONSE TO A PARTICULAR QUESTION.

16      LET'S MOVE ON TO QUESTION 2, AND I WILL READ THE QUESTION.

17  ON APPEAL IN *KLAYMAN VERSUS OBAMA*, THE COURT REITERATED THE

18  TEST ESTABLISHED BY THE SUPREME COURT IN *CLAPPER*.  PLAINTIFFS

19  QUOTE "CANNOT REST THEIR ALLEGED INJURY ON BARE SPECULATION

20  THAT THEIR CONTACTS BROAD WILL BE TARGETED SIMPLY BECAUSE THEY

21  RESIDE IN QUOTING 'GEOGRAPHIC AREAS' THAT THEY BELIEVE TO BE A

22  SPECIAL FOCUS OF THE U.S. GOVERNMENT."  THEY WERE CITING

23  *CLAPPER* THERE.

24      QUOTE, CONTINUING THE QUOTE, "INSTEAD THEY MUST ALLEGE

25  INJURY THAT IS CURRENTLY IMPENDING WITHOUT RELYING ON A HIGHLY

```
1    ATTENUATED CHAIN OF POSSIBILITIES."  SIMILAR TO THE APPELLANTS

2    IN KLAYMAN, PLAINTIFFS HERE "ALLEGE NO MORE THAN THAT THEY

3    COMMUNICATE WITH VARIOUS INDIVIDUALS IN COUNTRIES THEY

4    IMAGINED MIGHT ATTRACT GOVERNMENT SURVEILLANCE," UNQUOTE.

5        SO PART A IS -- I GUESS, PARALLELS THE FIRST QUESTION:  ON

6    WHAT AUTHORITY DO PLAINTIFFS ARGUE THAT THIS COURT'S RULING

7    SHOULD NOT ADOPT THIS REASONING?

8        AND, AGAIN, MR. WIEBE AND ALSO FOR MR. PATTON, TO THE

9    EXPECT YOU'VE ALREADY ADDRESSED THIS, YOU DON'T NEED TO REPEAT

10   IT.  GO FORWARD IN TERMS OF ANYTHING NEW YOU WANT TO ADD.

11           MR. WIEBE:  THANK YOU, YOUR HONOR.

12       ONE OF THE IMPORTANT THINGS TO RECOGNIZE IS THAT, AS I

13   SAID JUST A MINUTE AGO, CLAPPER WAS A TARGETED CASE

14   SURVEILLANCE CASE.  NOW THIS KLAYMAN DECISION IS DIFFERENT

15   FROM THE ONE THE COURT CITED IN QUESTION 1.

16           THE COURT:  CORRECT.

17           MR. WIEBE:  WHEREAS QUESTION 1 WAS DEALING WITH AN

18   UNTARGETED SURVEILLANCE PROGRAM, THE PHONE RECORDS PROGRAM, IN

19   THIS QUESTION, KLAYMAN WAS CHALLENGING THE TARGETED SO-CALLED

20   PRISM PROGRAM.  NOW PRISM IS A COMPLETELY DIFFERENT PROGRAM

21   FROM UPSTREAM.  WE DON'T HAVE A PRISM CLAIM HERE.

22       THE PCLOB REPORT MAKES CLEAR THE DIFFERENCE BETWEEN

23   UPSTREAM AND PRISM.  UPSTREAM INTERCEPTS COMMUNICATIONS

24   DIRECTLY FROM THE INTERNET BACKBONE WHILE THE COMMUNICATIONS

25   ARE TRANSITING THROUGH THOSE CIRCUITS.
```

1      AND THE PCLOB REPORT, 702 REPORT AT 124 AND 36, WHICH IS

2   EXHIBIT B TO THE COHEN DECLARATION, DISCUSSES THIS AND WE

3   DISCUSS THIS IN OUR BRIEF AT 417 -- ECF 417 AT 11-12.

4      SO IN UPSTREAM, THE GOVERNMENT NEEDS TO TOUCH ALL THE

5   COMMUNICATIONS GOING THROUGH THESE CIRCUITS AND THEN FILTER

6   AND SCAN THEM TO SELECT OUT ONLY THE ONES IT WANTS TO KEEP.

7   PRISM IS A COMPLETELY DIFFERENT METHOD OF ACQUIRING

8   COMMUNICATIONS.  IN PRISM, THE GOVERNMENT ASKS COMMUNICATIONS

9   PROVIDERS TO GIVE THEM THE EMAILS DIRECTLY SENT TO OR FROM A

10  PARTICULAR ACCOUNT.

11      SO UNDER PRISM, UNLESS YOU ARE A TARGET OR COMMUNICATING

12  WITH A TARGET, THE GOVERNMENT NEVER TOUCHES YOUR

13  COMMUNICATION.  AND THE PCLOB 702 REPORT, AGAIN, THAT'S COHEN

14  DECLARATION, EXHIBIT B, DISCUSSES PRISM AT PAGES 7 AND 33 TO

15  34.

16      SO THE *KLAYMAN* PLAINTIFFS' THEORY STANDING FOR PRISM, LIKE

17  THE *CLAPPER* PLAINTIFFS WAS THAT THEY OR THOSE THEY

18  COMMUNICATED WITH ARE TARGETS.  THAT IS NOT OUR THEORY OF

19  STANDING FOR UPSTREAM.  THEIR THEORY IS THAT -- OUR THEORY IS

20  THAT EVEN THOUGH PLAINTIFFS ARE NOT TARGETS, THEIR

21  COMMUNICATIONS ARE STILL PASSING THROUGH THESE CIRCUITS THAT

22  THE GOVERNMENT INTERCEPTS, AND FOR THAT REASON THEY ARE

23  SUBJECT TO THE PROCESSES THAT THE GOVERNMENT USES TO

24  INTERCEPT, FILTER, SCAN, ET CETERA.

25      THUS, I THINK IT'S WRONG TO SAY, AS THE COURT DOES, THAT

1    PLAINTIFFS HERE ALLEGE NO MORE THAT THEY ARE COMMUNICATING

2    WITH CERTAIN INDIVIDUALS IN COUNTRIES THAT MIGHT ATTRACT

3    GOVERNMENT SURVEILLANCE.  IT'S WRONG IN THE SENSE THAT WE

4    ALLEGE MORE THAN THAT, WE HAVE PUT IN EVIDENCE OF MORE THAN

5    THAT, AND HAVE PROVEN MORE THAN THAT, BUT IT'S ALSO WRONG

6    BECAUSE OUR THEORY OF STANDING IS NOT THAT WE HAVE STANDING

7    BECAUSE WE'RE A TARGET OR THE PEOPLE WE TALKED TO ARE TARGETS.

8            **THE COURT:**  IF I DIDN'T UNDERSTAND THAT BEFORE,

9    MR. WIEBE, I CERTAINLY UNDERSTAND IT NOW.

10           **MR. WIEBE:**  OKAY.

11       THERE'S ALSO A REFERENCE IN QUESTION 2 TO THE

12   QUOTE-UNQUOTE "CERTAINLY IMPENDING" STANDARD OF *CLAPPER*.

13       NOW, THAT STANDARD DOESN'T APPLY HERE BECAUSE THAT'S A

14   TEST FOR POTENTIAL FUTURE HARM, NOT ACTUAL PAST HARM.  AND

15   WHAT *CLAPPER* SAYS IS THREATENED INJURY MUST BE CERTAINLY

16   IMPENDING TO CONSTITUTE AN INJURY IN FACT.  AND IT GOES ON TO

17   CONTRAST THAT WITH ACTUAL PAST INJURY.

18       SO, AGAIN, *CLAPPER* WAS A PRE-ENFORCEMENT CHALLENGE SO IT

19   ONLY ALLEGED POTENTIAL FUTURE HARM, AND SPECIFICALLY FUTURE

20   HARM THROUGH THIS TARGETING PROCESS.

21       SO CERTAINLY IMPENDING IS NOT THE STANDARD WE DEAL WITH

22   HERE.  AND THAT CITE TO *CLAPPER* WAS 133 SUPREME COURT AT 1147.

23       SO THE BOTTOM LINE HERE IS THAT THE DC CIRCUIT'S ANALYSIS

24   OF PRISM, WHICH IS NOT A PROGRAM AT ISSUE HERE, AND OF THE

25   KLAYMAN'S EVIDENCE -- THE *KLAYMAN* PLAINTIFFS' EVIDENCE THAT

1    THEY OR THOSE THEY COMMUNICATED WITH WERE TARGETED REALLY HAS

2    NO APPLICATION ON OUR FACTS AND OUR THEORY OF STANDING HERE.

3           **THE COURT:**  ALL RIGHT.  THANK YOU.

4       YOU MAY RESPOND, COUNSEL.

5           **MR. PATTON:**  YES, YOUR HONOR.

6       SO WE READ THIS QUESTION TO APPLY TO THE INTERNET CONTENT

7    CLAIMS, THE CLAIMS UNDER THE PRESIDENTIAL SURVEILLANCE PROGRAM

8    AND UNDER UPSTREAM.  AND *KLAYMAN* DOES GIVE YOU FROM 2019 THAT

9    ANY EVIDENCE THE PLAINTIFFS HAVE THAT THEY COMMUNICATED WITH

10   CERTAIN COUNTRIES -- PEOPLE IN CERTAIN COUNTRIES, TO THE

11   DEGREE THAT THEY ARE LOOKING AT THAT FACT THAT THE GOVERNMENT

12   MAY BE INTERESTED IN, FOR EXAMPLE, THEY LIST OUT VARIOUS

13   COUNTRIES THAT THEY COMMUNICATED WITH, TO THE EXTENT THAT THAT

14   IS A FACT THEY LOOKED TO TO ENHANCE THE LIKELIHOOD THAT THEY

15   HAVE BEEN SUBJECT TO SURVEILLANCE, THAT IS ADDRESSED BY YOUR

16   HONOR'S CITATION TO THE 2019 *KLAYMAN* CASE.

17       CLAPPER IS -- I WOULD DISAGREE WITH MR. WIEBE HERE -- IS

18   HELPFUL HERE.  HE IS CORRECT THAT IT WAS A FUTURE INJURY CASE

19   THAT CERTAINLY IMPENDING IS THE STANDARD THERE, BUT WHAT THE

20   PLAINTIFFS NEED TO SHOW HERE IS AN ACTUAL INJURY.  AND THE

21   LANGUAGE OF THE STANDING CASES ARE ACTUAL, NOT CONJECTURE.

22       WHAT WE HAVE HERE, WHETHER YOU CALL IT SPECULATION ABOUT A

23   FUTURE OR CONJECTURE THAT SOMETHING HAPPENED IN THE PAST, THEY

24   STILL HAVE CONJECTURE ONLY FOR THEIR INTERNET CONTENT CLAIMS

25   THAT THE GOVERNMENT MUST HAVE BEEN DOING SOMETHING.  SO THEY

```
 1     HAVE --

 2              THE COURT:  WOULD YOU CONCEDE, THOUGH, I UNDERSTAND

 3     MAYBE THE PLAINTIFFS NEVER GET THERE, I AM SAYING THIS IN THE

 4     MOST HYPOTHETICAL WAY BECAUSE I DON'T WANT TO GET INTO

 5     ANYTHING THAT I'M NOT SUPPOSED TO GET INTO THAT'S CLASSIFIED,

 6     IF, IN FACT, THE PLAINTIFFS COULD SHOW THAT THEIR

 7     COMMUNICATIONS WENT THROUGH THIS BULK COLLECTION PROCESS, THE

 8     UPSTREAMING, WOULD THAT BE SUFFICIENT TO CONFER STANDING IF

 9     THEY COULD SHOW THAT?

10              MR. PATTON:  SO WHAT THEY NEED TO SHOW IN ORDER --

11              THE COURT:  IN OTHER WORDS, WOULD THAT BE A

12     COGNIZABLE ARTICLE III INJURY?

13              MR. PATTON:  SO FOR -- I WOULD ONLY QUIBBLE WITH YOUR

14     REFERENCE TO BULK.  UPSTREAM IS A TARGETED PROGRAM.  I KNOW

15     THE --

16              THE COURT:  FORGET THAT.

17              MR. PATTON:  THE PLAINTIFFS ALLEGE --

18              THE COURT:  FORGET THAT.  YOU UNDERSTAND MY --

19              MR. PATTON:  I DO UNDERSTAND YOUR POINT.

20        WHAT THE PLAINTIFFS WOULD HAVE TO SHOW IS THE FOLLOWING:

21     THE THING THAT THEY HAVE SHOWN IS THAT THEIR COMMUNICATIONS

22     HAVE GONE THROUGH FOLSOM STREET, THAT THEY WERE COPIED BY AN

23     OPTICAL SPLITTER, AND THEN THERE'S A DEAD END.

24        WHAT THEY HAVE NOT BEEN ABLE TO SHOW, AND THE FACTS ARE

25     ALL CLASSIFIED, ARE THE FOLLOWING:  ONE, THAT AT&T --
```

1          **THE COURT:**  IF THEY ARE CLASSIFIED, DO YOU REALLY

2     WANT TO BE TALKING ABOUT THEM?

3               **MR. PATTON:**  WHETHER OR NOT THESE ARE TRUE IS --

4               **THE COURT:**  ALL RIGHT.

5               **MR. PATTON:**  THESE ARE THE POINTS THEY WOULD HAVE TO

6     SHOW.

7          ONE, THAT THE COPYING AND REDIRECTION WAS DONE EITHER BY

8     THE NSA AT THE NSA'S BEHEST AS PART OF THE PSP INTERNET

9     CONTENT OR --

10              **THE COURT:**  PRESIDENTIAL SURVEILLANCE PROGRAM.

11              **MR. PATTON:**  RIGHT, AS PART OF THE UPSTREAM PROGRAM

12    AT FOLSOM STREETS WITH AT&T'S PARTICIPATION, AND THAT COPYING,

13    AS THEY POSIT IT, IS A PART OF THE UPSTREAM OR PRESIDENTIAL

14    SURVEILLANCE PROGRAM'S INTERNET CONTENT, THE WAY THAT IT

15    WORKS.  ALL OF THOSE FACTS ARE, IN FACT, CLASSIFIED, AND THEY

16    HAVE NOT BEEN ABLE TO DO IT BY FACT OR EXPERT.

17         THEIR EXPERTS HAVE ADDED TO THE HEARSAY THAT MR. KLEIN HAS

18    ADDED, THEY HAVE ADDED THEIR SPECULATION ON TOP OF IT, WHICH

19    IS, WE THINK THAT IF THE NSA WERE DOING IT, THEY WOULD DO IT

20    IN A CERTAIN WAY.  AND OBVIOUSLY A TRIAL ON THE ISSUE OF

21    WHETHER OR NOT THESE EXPERTS THINK THE NSA MUST BE DOING THIS,

22    THAT, OR THE OTHER IS A PROBLEM.

23         BUT THEY HAVE NOT SAID -- THE MOST THEY HAVE SAID IS IT IS

24    CONSISTENT WITH OR IS LOGICAL AND UNSURPRISING IF THEY DID IT

25    IN THIS PARTICULAR WAY, BUT THERE'S NO EVIDENCE WHATSOEVER TO

1   SUPPORT A NEXUS BETWEEN THE COPYING AND REDIRECTION THAT THEY

2   HAVE INDICATED AND THE NSA'S PROGRAMS.  AND THAT'S WHERE THEY

3   FALL DOWN.  THAT THEY CANNOT SHOW BY UNCLASSIFIED EVIDENCE.

4       AND WHETHER OR NOT COPYING IS PART OF OR EVER WAS PART OF

5   THE NSA'S PROGRAM IS A CLASSIFIED FACT, THE ISSUE OF WHICH WE

6   HAVE ADDRESSED IN OUR CLASSIFIED PAPERS.

7       I THINK THAT IS ALL I HAVE.

8           THE COURT:  I WILL GIVE YOU A CHANCE TO BRIEFLY

9   REPLY.  I THINK YOU HAVE GIVEN ME THE INFORMATION I NEEDED IN

10  THE ARGUMENTS, BUT IF THERE IS SOMETHING NEW THE GOVERNMENT

11  SAID THAT YOU WOULD LIKE TO RESPOND TO, MR. WIEBE, THEN I WILL

12  GIVE YOU --

13          MR. WIEBE:  THANK YOU, YOUR HONOR, THERE IS.

14          THE COURT:  YES.

15          MR. WIEBE:  THE GOVERNMENT JUST SAID THAT OUR

16  EVIDENCE ENDS IN A DEAD END.  THAT'S NOT TRUE.  ALL THE STUFF

17  THAT'S COPIED GOES INTO THE SECRET ROOM.  AND THE SECRET ROOM

18  IS CONTROLLED BY THE NSA AND HAS EQUIPMENT TO FILTER AND SCAN.

19          THE COURT:  HOW DO WE KNOW THAT?

20          MR. WIEBE:  WE KNOW WHAT EQUIPMENT IS IN THE SECRET

21  ROOM.

22          THE COURT:  HOW DO WE KNOW -- ONE, A POSSIBILITY IS,

23  YOU KNOW, AGAIN, HYPOTHETICALLY, ONE POSSIBILITY OUT THERE IS

24  AT&T IS ON A FROLIC AND DETOUR OF THEIR OWN AND THEY'RE DOING

25  IT ON THEIR OWN, OR THEY BELIEVE THEY ARE GOOD CORPORATE

1    CITIZENS.

2              **MR. WIEBE:**  I THINK THAT --

3              **THE COURT:**  ISN'T THAT A POSSIBILITY?

4              **MR. WIEBE:**  -- IS EVEN MORE SPECULATIVE THAN SOME OF

5    THE ACCUSATIONS OF SPECULATION THAT THE GOVERNMENT HAS MADE

6    AGAINST US.  ANYTHING IS POSSIBLE IN THIS WORLD, IN THIS

7    UNIVERSE, AS I'M SURE YOUR HONOR KNOWS.

8              **THE COURT:**  ESPECIALLY NOW.

9              **MR. WIEBE:**  AND THE QUESTION IS, IS HAVE WE -- THE

10   QUESTION IS NOT HAVE WE ELIMINATED EVERY POSSIBILITY.

11             **THE COURT:**  I UNDERSTAND.

12             **MR. WIEBE:**  IT'S HAVE WE GOTTEN TO THE THRESHOLD OF

13   MORE PROBABLE THAN NOT.

14        HOW DO WE KNOW THE NSA IS INVOLVED?  FIRST OF ALL, WE HAVE

15   KLEIN'S TESTIMONY OF OBSERVING NSA PERSONNEL COMING AND

16   MEETING WITH THE PEOPLE WHO CONTROL THE SECRET ROOM.

17             **THE COURT:**  DIDN'T THE COURT ALREADY DECIDE THAT THAT

18   WAS NOT -- THAT WAS NOT ADMISSIBLE EVIDENCE?  I KNOW YOU THINK

19   I'M WRONG, AND MAYBE SOME DAY THE NINTH CIRCUIT WILL AGREE

20   WITH YOU, THAT IS THE LAW OF THE CASE, ISN'T IT?

21             **MR. WIEBE:**  YOUR HONOR IS FREE TO RECONSIDER THAT

22   RULING, AND WE WOULD URGE THAT THE COURT DO SO.

23             **THE COURT:**  FAIR ENOUGH.

24             **MR. WIEBE:**  WE HAVE LAID OUT OUR REASONS WHY THAT'S

25   ADMISSIBLE AT ECF 429-3 AT PAGES 10 TO 12 AND ECF 441-3 AT 6

```
1    TO 8 -- I'M SORRY, 10 TO 13 FOR ECF 429-3 AND 6 TO 8 AT

2    ECF 441-3.  AND WE WOULD BE GRATEFUL IF THE COURT TOOK ANOTHER

3    LOOK AT THAT ISSUE.

4        APART FROM THE KLEIN EVIDENCE, WE HAVE THE NSA INSPECTOR

5    GENERAL REPORT, WHICH ALSO CONFIRMS AT&T'S PARTICIPATION IN

6    UPSTREAM AND INTERNET SURVEILLANCE.  AND WE HAVE ALREADY

7    ADDRESSED WHY THAT IS ADMISSIBLE.  SO THAT'S TWO INDEPENDENT

8    SOURCES OF EVIDENCE.

9        WOULD YOUR HONOR LIKE ME TO GO TO PART B OF THE QUESTION?

10            THE COURT:  YES, PLEASE.

11       THE QUESTION IS, WITHOUT ANY SPECIFIC FINDING THAT ANY

12   SPECIFIC PLAINTIFF'S COMMUNICATIONS WERE TOUCHED BY THE

13   ALLEGED SURVEILLANCE PROGRAMS AT ISSUE, HOW CAN THE COURT FIND

14   STANDING TO SUE?

15            MR. WIEBE:  YEAH.  THE SIMPLE ANSWER IS THAT WE THINK

16   THE PUBLIC EVIDENCE WE'VE GIVEN YOU IS ENOUGH FOR YOU TO FIND

17   THAT THE COMMUNICATIONS AND COMMUNICATION RECORDS WERE TOUCHED

18   BY THE GOVERNMENT'S PROGRAM.  WE THINK THE PUBLIC EVIDENCE

19   ALONE IS SUFFICIENT.  WE THINK THE SECRET EVIDENCE WILL

20   CONFIRM AND SUPPORT THE PUBLIC EVIDENCE.

21       SO THAT'S OUR SIMPLE ANSWER TO THAT.

22            THE COURT:  DO YOU WANT TO SAY ANYTHING, COUNSEL,

23   ONLY ON POINT B?  I THINK YOU ALREADY COVERED IT.

24            MR. PATTON:  THE TWO WORD ANSWER IS, IT CAN NOT.

25            THE COURT:  GREAT.  I LIKE BREVITY.  IT'S SOLE OF
```

```
1   SOMETHING.  LET'S MOVE ON TO QUESTION 3.  AND THEN AFTER THIS

2   QUESTION WE WILL GIVE STAFF A BREAK AND EVERYBODY.

3       ANOTHER NECESSARY ELEMENT TO ESTABLISH ARTICLE III

4   STANDING IS THE REQUIREMENT THAT ANY CONCRETE AND

5   PARTICULARIZED INJURY BE QUOTE "REDRESSABLE BY A FAVORABLE

6   RULING" UNQUOTE, CITING CLAPPER.  IN ORDER TO ISSUE A

7   DISPOSITIVE DECISION ON THE STANDING ISSUE, A FINDING OF

8   STANDING WOULD NECESSITATE DISCLOSURE OF POSSIBLE INTERCEPTION

9   OF PLAINTIFFS' COMMUNICATIONS, THEREBY SIGNALING INJURY.  SUCH

10  A DISCLOSURE MAY IMPERIL NATIONAL SECURITY, AGAIN CITING

11  CLAPPER.  AND THE QUOTE IS, "THE COURT'S POST-DISCLOSURE

12  DECISION ABOUT WHETHER TO DISMISS THE SUIT FOR LACK OF

13  STANDING WOULD SURELY SIGNAL TO THE TERRORIST WHETHER HIS NAME

14  WAS ON THE LIST OF SURVEILLANCE TARGETS", UNQUOTE.  ANY

15  ATTEMPT TO PROVE THE SPECIFIC FACTS OF THE PROGRAMS AT ISSUE,

16  OR TO DEFEND AGAINST THE PLAINTIFFS' ANALYSIS OF THE PROGRAMS

17  WOULD RISK DISCLOSURE OF THE LOCATIONS, SOURCES, METHODS,

18  ASSISTING PROVIDERS, AND OTHER OPERATIONAL DETAILS OF THE

19  GOVERNMENT'S ONGOING INTELLIGENCE-GATHERING ACTIVITIES.

20      SO THE QUESTION IS, QUESTION A:  IF ANY FINDING OR

21  JUDGMENT IS IMPOSSIBLE WITHOUT DISCLOSING INFORMATION THAT

22  MIGHT IMPERIL THE NATIONAL SECURITY, HOW CAN PLAINTIFFS ASSERT

23  THAT THEIR ALLEGED INJURY IS REDRESSABLE?

24          MR. WIEBE:  THE FIRST ANSWER TO THIS QUESTION IS THAT

25  IT'S LAW OF THE CASE THAT PLAINTIFFS' CLAIMS ARE REDRESSABLE.
```

1    THE NINTH CIRCUIT SAYS QUOTE, "JEWEL EASILY MEETS THE THIRD

2    PRONG OF STANDING REQUIREMENT, THE DISABILITY PRONG.  JEWEL

3    SEEKS AN INJUNCTION ON DAMAGES EITHER OF WHICH IS AN AVAILABLE

4    REMEDY SHOULD JEWEL PREVAIL ON THE MERITS."  NOW THAT'S 673

5    F. 3D AT 912.  THE COURT IS BOUND BY THAT RULING THAT OUR

6    CLAIMS ARE REDRESSABLE.

7        AND EVEN IF IT WERE NOT LAW OF THE CASE, WE DISAGREE WITH

8    THE COURT'S REDRESSABILITY ANALYSIS HERE.  THE TEST OF

9    REDRESSABILITY IS WHETHER A FAVORABLE DECISION WOULD OFFER THE

10   PLAINTIFFS A REMEDY.

11       **THE COURT:**  BY THE WAY, I THINK IT'S APPROPRIATE

12   BECAUSE I THINK INEVITABLY YOU WILL GET INTO THIS, I'M GOING

13   TO READ THE SECOND QUESTION, TOO, BECAUSE --

14       **MR. WIEBE:**  SURE.

15       **THE COURT:**  WHICH IS:  HOW CAN ANY POTENTIAL

16   PLAINTIFF EXTRACT HERSELF FROM THIS CATCH-22?  IS THERE ANY

17   WAY TO CHALLENGE ANY ALLEGED OVERREACH OR IMPROPRIETY IN THE

18   SURVEILLANCE TACTICS EMPLOYED BY THE GOVERNMENT WITHOUT

19   EVENTUALLY RUNNING INTO THE RISK THAT EXAMINATION OR

20   RESOLUTION OF THE CHALLENGE WOULD POTENTIALLY RISK NATIONAL

21   SECURITY?

22       YOU MAY CONTINUE.

23       **MR. WIEBE:**  THANK YOU, YOUR HONOR.

24       AS I WAS SAYING, THE TEST OF REDRESSABILITY IS WHETHER A

25   FAVORABLE DECISION WOULD OFFER THE PLAINTIFFS A REMEDY.

1    *CLAPPER* SAYS REDRESSABLE BY FAVORABLE RULING.

2        SO THE QUESTION IS, WHEN THE COURT ASKS WHETHER AN

3    UNFAVORABLE DECISION, THAT IS ONE DISMISSING OUR CLAIMS ON

4    STATE SECRETS GROUNDS WOULD OFFER US REDRESS, THAT'S NOT THE

5    PROPER QUESTION.  THE PROPER REDRESSABILITY QUESTION --

6            **THE COURT:**  YOU LIKE TO QUARREL WITH THE COURT'S

7    PREMISES, UH?

8            **MR. WIEBE:**  I DO.

9            **THE COURT:**  IT'S OKAY.  IT DOESN'T HURT MY FEELINGS.

10           **MR. WIEBE:**  I UNDERSTAND.  I APPRECIATE THAT.  NOT

11   EVERY JUDGE TAKES THAT ATTITUDE.

12       SO THE PROPER REDRESSABILITY QUESTION IS WHETHER A

13   FAVORABLE DECISION, DECIDING PLAINTIFFS' CLAIMS ON THE MERITS

14   IN THEIR FAVOR WOULD OFFER THEM REDRESS, AND IT CERTAINLY

15   WOULD.

16       BUT THE LARGER QUESTION IS WHAT I THINK THE COURT FRAMES

17   IN PART B, WHICH IS THE COURT'S CONCERNS ABOUT THE NATIONAL

18   SECURITY IMPLICATIONS OF A DECISION ON THE MERITS.

19       NOW, AGAIN, WE DON'T THINK THOSE ARE QUESTIONS OF

20   REDRESSABILITY, BUT THEY ARE REAL QUESTIONS FOR THE COURT.  SO

21   LET ME ADDRESS THOSE CONCERNS.

22       FIRST OF ALL, THE COURT ASKS HOW DO YOU GET OUT OF THIS

23   CATCH-22?  CONGRESS RECOGNIZED THE CATCH-22 AND SOLVED IT BY

24   ENACTING SECTION 2712(B)(4) AND SECTION 1806(F), AS THE NINTH

25   CIRCUIT MADE CLEAR IN *FAZAGA*.  CONGRESS HAS STRUCK THE BALANCE

1    BETWEEN NATIONAL SECURITY AND CIVIL LIBERTIES.  CONGRESS HAS

2    DIRECTED THE COURT TO USE SECTION 1806(F)'S PROCEDURES TO

3    DECIDE PLAINTIFFS' CLAIMS.

4        AND SECTION 1806(F) ALLOWS AND, IN FACT, REQUIRES THE

5    COURT TO DECIDE THE CLAIMS ON THE MERITS BUT WITHOUT

6    DISCLOSING THE SECRET EVIDENCE.  AND IT'S --

7            **THE COURT:**  BUT DOESN'T THAT BEG THE QUESTION?  LET'S

8    TAKE IT AT A HIGHER LEVEL, WHICH IS, OKAY, THE COURT DOES WHAT

9    THE PLAINTIFFS ARE ASKING, REVIEWS THE SECRET EVIDENCE AND

10   SAYS EITHER, YES, THERE IS STANDING ON THE MERIT -- I WILL

11   CALL IT THE MERITS OF STANDING, OR, NO, THERE'S NO STANDING.

12       THE GOVERNMENT'S POSITION IS, AND SOME OF THE COURTS SEEM

13   TO AGREE WITH THIS, THAT MERELY STATING THAT FACT OR MAKING

14   THAT FINDING ITSELF, COULD HAVE GRAVE NATIONAL SECURITY

15   IMPLICATIONS.

16       HOW DO YOU RESPOND TO THAT ARGUMENT?

17           **MR. WIEBE:**  THE FIRST RESPONSE, AND I ACTUALLY HAD

18   THIS IN MY NOTES BEFORE THE COURT GAVE ITS OPENING REMARKS --

19           **THE COURT:**  I WILL GIVE YOU THAT CREDIT.

20           **MR. WIEBE:**  I NEED EVERYTHING POSSIBLE BEFORE GOING

21   INTO THE POP QUIZ.

22           **THE COURT:**  OKAY.  YOU'RE DOING VERY WELL, COUNSEL.

23           **MR. WIEBE:**  THE FIRST THING IN MY NOTES WAS THE

24   POSSIBILITY OF A CLASSIFIED OPINION, WHICH I THINK THE COURT

25   HAS PROPERLY RECOGNIZED.

1          SO WHAT THE COURT HAS LAID OUT IS ON THE PUBLIC RECORD

2     THERE WOULD BE A SIMPLE YEAH OR NAY AND ALL THE REASONING AND

3     SUPPORT WOULD BE IN THE CLASSIFIED OPINION.

4          AND WE DO NOT THINK THAT THAT SIMPLE NAY OR YEAH IS GOING

5     TO CAUSE HARM.  FIRST THE EXISTENCE AND THE GENERAL SCOPE OF

6     THESE PROGRAMS IS PUBLICLY KNOWN AND ADMITTED BY THE

7     GOVERNMENT.  IT'S NOT -- THERE'S NO DISPUTE THAT THERE WAS A

8     BULK PHONE RECORDS PROGRAM.  THERE'S NO DISPUTE THAT THERE WAS

9     A BULK INTERNET METADATA PROGRAM.  AND THERE'S NO DISPUTE THAT

10    UPSTREAM EXISTS.

11         THE GOVERNMENT HAS DISCLOSED IT WAS COLLECTING PHONE

12    RECORDS AND PHONE RECORDS FROM THE LARGEST COMPANIES, AND THAT

13    IT'S COLLECTING COMMUNICATIONS FROM THE INTERNET BACKBONE.

14    AND AS WE'VE SHOWN THROUGH OUR EXPERTS AND OTHER EVIDENCE, THE

15    ONLY WAY TO COLLECT COMMUNICATIONS FROM THE INTERNET BACKBONE

16    IS TO START WITH EVERYTHING, AND THEN START FILTERING AND

17    SCANNING TO END UP WITH THE SUBSET OF WHAT YOU REALLY ARE

18    AFTER.

19         AND AT&T AND VERIZON DISCLOSE IN THEIR TRANSPARENCY

20    REPORTS, WHICH WE PUT IN THE RECORD, THAT THEY PARTICIPATE IN

21    FISA SURVEILLANCE.  SO THERE'S NO QUESTION THEY ARE

22    PARTICIPATING IN IT.

23         SO, SECOND, TWO OF THESE PROGRAMS HAVE ENDED SO THERE'S NO

24    LONGER ANY OPERATIONAL DETAILS, ONGOING OPERATIONAL DETAILS

25    RELATING TO THE PHONE RECORDS OR INTERNET METADATA.

1          AND, THIRD, AND PERHAPS MOST IMPORTANTLY, UNLIKE *CLAPPER*,

2    A FINDING THAT THE PLAINTIFFS HAVE STANDING WOULD NOT DISCLOSE

3    WHO THE TARGETS OF SURVEILLANCE ARE.

4          THAT WAS THE SUPREME COURT'S CONCERN IN *CLAPPER*.  *CLAPPER*

5    WAS, AGAIN, THE FOURTH AMENDMENT CONSTITUTIONAL CHALLENGE TO

6    TARGETED INTERCEPTION OF COMMUNICATIONS TO AND FROM SPECIFIC

7    INDIVIDUALS, NOT UNTARGETED MASS SURVEILLANCE LIKE UPSTREAM.

8          AND THE THEORY OF STANDING, AS I SAID, WAS THAT IN THE

9    FUTURE, THE GOVERNMENT WOULD TARGET THESE INDIVIDUALS, THE

10   PLAINTIFFS WOULD COMMUNICATE WITH THESE INDIVIDUALS, AND THEN

11   WOULD BE CAUGHT UP NOT IN MASS SURVEILLANCE, BUT IN THAT VERY

12   NARROW TARGETED SURVEILLANCE.

13          **THE COURT:**  I UNDERSTAND THAT.

14        NOW LET'S ASSUME HYPOTHETICALLY THAT I AGREE WITH YOUR

15   POSITION HERE THAT I CAN -- THAT THE NATIONAL SECURITY ISSUES

16   CAN BE DEALT WITH IN A CLASSIFIED OPINION AND YEAH OR NAY

17   DOESN'T REALLY, YOU KNOW, HELP POTENTIAL TERRORISTS OR TARGETS

18   OR WHATEVER.

19        WHAT WOULD THE CONTOURS OF A TRIAL LOOK LIKE?  WE STILL

20   HAVE TO HAVE A TRIAL.

21          **MR. WIEBE:**  YES.

22          **THE COURT:**  AND THE QUESTION IS, SO WOULD THAT TRIAL

23   BE AN EX PARTE IN CAMERA TRIAL?  AND HOW -- THE GOVERNMENT

24   COULD NOT, I THINK YOU WOULD AGREE, DEFEND THE ISSUE OF

25   STANDING IN A PUBLIC TRIAL BECAUSE THEN THEY REALLY WOULD NEED

```
1    TO GET INTO SOURCES AND METHODS.

2        DO YOU AGREE WITH THAT?

3            MR. WIEBE:  A TRIAL ON STANDING?

4            THE COURT:  YES.

5            MR. WIEBE:  THEY, FIRST OF ALL, I DON'T -- I THINK

6    THERE'S ONLY A LIMITED AMOUNT OF WHAT THEY WOULD NEED TO SHOW

7    TO DEFEND IT.  IT'S NOT LIKE THEY HAVE TO BRING IN, YOU KNOW,

8    SOMEONE TO EXPLAIN WHO THEY ARE TARGETING OR WHY THEY ARE

9    TARGETING A PARTICULAR PERSON.  AGAIN, TARGETING IS BEYOND THE

10   SCOPE OF THIS CASE.

11       BUT WHAT WOULD THE TRIAL LOOK LIKE?  MUCH OF IT LIKELY

12   WOULD BE EX PARTE IN CAMERA.  WE WOULD, AGAIN, RENEW OUR

13   MOTION FOR ACCESS, AS THE COURT KNOWS, AND AS THE NINTH

14   CIRCUIT CALLED OUT SPECIFICALLY IN ITS *FAZAGA* OPINION, ONE OF

15   THE PROVISIONS OF 1806(F) IS TO PROVIDE, IN THE COURT'S

16   DISCRETION, ACCESS TO THE PLAINTIFFS.  AND WE WOULD SEEK THAT

17   AND SEEK SECURITY CLEARANCES AND ALL THE PROPER PRECAUTIONS.

18       BUT YOU'RE RIGHT, MUCH OF THE TRIAL WOULD BE OUT OF THE

19   PUBLIC EYE.  AND THAT'S NOT PREFERABLE, OBVIOUSLY.  WE WOULD

20   WANT AS MUCH OF IT TO BE PUBLIC AS POSSIBLE, BUT THAT'S THE

21   SYSTEM THAT CONGRESS HAS SET UP IN 1806(F), AND WE WOULD -- WE

22   ARE PREPARED TO TRY IT ON THAT BASIS.

23           THE COURT:  OKAY.  ANYTHING FURTHER ON THIS QUESTION,

24   MR. WIEBE?

25           MR. WIEBE:  I JUST WANTED TO EMPHASIZE AGAIN THE
```

1    FAMOUS FOOTNOTE 4 IN *CLAPPER*, THE FOCUS IS ALL ON DISCLOSURE

2    OF WHO THE TARGETS OF TERRORISM ARE.  AND THERE'S NO WAY THAT

3    A YEAH OR NAY FINDING ON STANDING WOULD DISCLOSE ANYTHING

4    ABOUT WHO THE TARGETS OF TERRORISM ARE HERE -- OR THE TARGETS

5    OF SURVEILLANCE, RATHER.

6         AND FINALLY *CLAPPER*, THE ONLY OTHER THING I WANTED TO ADD

7    ABOUT *CLAPPER* WAS IT WASN'T AN 1806(F) OR 2712(B)(4) CASE, SO

8    THERE WASN'T THE OPTION OF THESE -- OF USING THE PROCEDURES

9    THAT CONGRESS HAS MANDATED SHOULD APPLY HERE.

10              **THE COURT:**  ALL RIGHT.  THANK YOU.

11        COUNSEL?

12              **MR. PATTON:**  YOUR HONOR, I WILL PICK UP WHERE

13   MR. WIEBE LEFT OFF AND TALK ABOUT *CLAPPER* FIRST.

14        HE SAID IT WAS NOT AN 1806(F) CASE, AND THAT'S CORRECT.

15   BUT THE ORIGIN OF FOOTNOTE 4, THE REASON WE HAVE FOOTNOTE 4 IS

16   BECAUSE THE PLAINTIFFS IN THAT CASE SUGGESTED WHY DON'T WE

17   HAVE AN EX PARTE IN CAMERA PROCEDURE WHERE THE COURT CAN

18   DECIDE THE ISSUE OF STANDING.

19        AND THE SUPREME COURT SAID NO.  ANY POST-DISCLOSURE

20   DECISION WILL DEMONSTRATE SOMEONE WAS A TARGET OR WAS NOT A

21   TARGET, AND THAT IS A CLASSIFIED FACT.  IT MAKES NO DIFFERENCE

22   WHATSOEVER THAT THAT INVOLVED THE CLASSIFIED FACT OF TARGETING

23   VERSUS WHAT WE HAVE HERE, WHICH IS THE CLASSIFIED FACT AS TO

24   WHETHER OR NOT SOMEONE WAS SUBJECT TO ELECTRONIC SURVEILLANCE.

25   THEY ARE BOTH CLASSIFIED FACTS.

1    SO IT IS NAIVE TO ASSERT THAT THERE WILL BE NO HARM TO

2    NATIONAL SECURITY ON THE ONE HAND AND NATIONAL SECURITY HARM

3    ON THE OTHER.  IN FACT, YOUR HONOR HAS SAID IN HIS 2013

4    OPINION AT PAGE 1103 THAT WHETHER OR NOT THE PLAINTIFFS IN

5    THIS CASE ARE SUBJECT TO ELECTRONIC SURVEILLANCE IS A VALID

6    STATE SECRET.  AND EACH TIME WE HAVE ASSERTED THE STATE

7    SECRETS PRIVILEGE IN THIS CASE, WE HAVE ASSERTED THE STATE

8    SECRETS OVER WHETHER OR NOT THE PLAINTIFFS IN THIS CASE ARE

9    SUBJECT TO ELECTRONIC SURVEILLANCE.

10    **THE COURT:**  WOULD YOUR POSITION, I ASSUME, DOESN'T

11    CHANGE.  MR. WIEBE ARGUES THAT WAIT -- LET'S GET REAL.  THIS

12    INFORMATION IS ALREADY OUT INTO THE PUBLIC DOMAIN AND IT'S

13    SUCH A BIG PROGRAM THAT IT WOULD NOT GIVE A POTENTIAL

14    TERRORIST ANY MORE INFORMATION THAN HE OR SHE MIGHT

15    ORDINARILY -- OTHERWISE HAVE BECAUSE IT IS NOT ADDING TO THE

16    WEALTH OF KNOWLEDGE THAT SOMEHOW THEY USED A CELL PHONE, AND

17    ALL CELL PHONE TRAFFIC -- IF THAT'S THE ARGUMENT THAT THE

18    PLAINTIFFS ARE MAKING.

19    WHAT'S YOUR ANSWER TO THAT ARGUMENT?

20    **MR. PATTON:**  THE ANSWER TO THAT ARGUMENT IS TWO-FOLD,

21    ONE ON FACTS AND ONE ON LAW.

22    THE LEGAL ISSUE IS, FOR EXAMPLE, IN *JEPPESEN* AND IN

23    *AL-HARAMAIN*, THE EXISTENCE OF SOMETHING IN *JEPPESEN*, FOR

24    EXAMPLE, WAS THE EXISTENCE OF THE RENDITION PROGRAM, THAT WAS

25    *MOHAMED V. JEPPESEN DATAPLAN*, THE FACT THAT THERE WAS A

1    RENDITION PROGRAM WAS UNCLASSIFIED, BUT ALL THE OPERATIONAL

2    DETAILS ABOUT IT WERE STILL CLASSIFIED, AND THAT RESULTED IN

3    THE STATE SECRETS PRIVILEGE.

4         FACTUALLY HERE, WE HAVE THE DIRECTOR OF NATIONAL

5    INTELLIGENCE AND THE DIRECTOR OF THE NSA SAYING SPECIFICALLY

6    THAT ADDRESSING THE ISSUE OF WHETHER OR NOT PLAINTIFFS HAVE

7    BEEN SUBJECT TO SURVEILLANCE WILL CAUSE EXCEPTIONALLY GRAVE

8    DAMAGE TO NATIONAL SECURITY.  IT DOESN'T MATTER WHETHER YOUR

9    HONOR WRITES A ONE LINE YEAH OR NAY OR WHETHER YOUR HONOR

10   WRITES A HUNDRED PAGE UNCLASSIFIED DECISION, THE INTELLIGENCE

11   COMMUNITY HAS SPOKEN AND THEY'VE SAID EMPHATICALLY OVER AND

12   OVER AGAIN IN THIS CASE MOST RECENTLY IN FEBRUARY 2018 THAT

13   ADDRESSING THE ISSUE OF WHETHER OR NOT PLAINTIFFS ARE SUBJECT

14   TO SURVEILLANCE IS A CLASSIFIED FACT.  AND WHY THAT IS --

15        **THE COURT:**  HOW MUCH DEFERENCE DOES THE COURT -- MUST

16   THE COURT GIVE TO THE INTELLIGENCE COMMUNITY?  NOT EVERYBODY

17   GIVES CREDIT TO OUR INTELLIGENCE COMMUNITY.

18        **MR. PATTON:**  I AM AWARE, YOUR HONOR.

19        THE COURT IS REQUIRED TO GIVE DEFERENCE, AND THAT'S IN ALL

20   OF THE STATE SECRETS CASES, TO THE INTELLIGENCE PROFESSIONALS.

21   AND THE REASON FOR THAT IS WITH RESPECT TO MR. WIEBE AND WITH

22   RESPECT TO YOUR HONOR, YOU DO NOT SEE NECESSARILY THE BIG

23   PICTURE.  AND THE BIGGER PICTURE, FOR EXAMPLE, IS SET OUT IN

24   PARAGRAPH 331 OF ADMIRAL ROGERS MOST RECENT DECLARATION THAT

25   TALKS ABOUT HERE AND IN UNCLASSIFIED TERMS, AND THERE'S MORE

1    IN REDACTIONS, BUT IN UNCLASSIFIED TERMS, HERE'S WHY

2    IDENTIFYING WHETHER OR NOT THESE PLAINTIFFS WHO GIVE NO

3    INDICATION THAT THEY ARE TARGETS OF SURVEILLANCE OR ANYTHING

4    LIKE THAT, EVEN IDENTIFYING THESE PLAINTIFFS WHETHER OR NOT

5    YES OR NO ON EACH ONE OF THEIR PROGRAMS WOULD CAUSE HARM TO

6    NATIONAL SECURITY, AND IT SETS OUT -- AND IT IS BASICALLY THE

7    IDEA OF SELECTIVE DISCLOSURE.

8        IF THESE PLAINTIFFS COME FORWARD AND SAY YOU ARE NOT, YOU

9    ARE NOT, YOU ARE NOT, YOU ARE NOT, AND THEN SOMEONE ELSE COMES

10   ALONG AND SAYS IN OUR RESPONSES WE CAN NEITHER CONFIRM NOR

11   DENY, VERY SOON YOU GET TO THE POINT WHERE YOU REALIZE THIS

12   PARTICULAR CHANNEL OF COMMUNICATION IS SAFE FROM GOVERNMENT

13   ELECTRONIC SURVEILLANCE, THIS CHANNEL IS NOT.  AND IT DOESN'T

14   TAKE MUCH TO GIVE OUR ADVERSARIES A LEG UP.  AND THEY WATCH

15   THESE THINGS VERY CLOSELY.

16       SO THE GOVERNMENT IS MANDATED TO PROTECT NATIONAL

17   SECURITY, AND WE HAVE TO LOOK AT THE BIG PICTURE.  AND WE HAVE

18   CONSISTENTLY ASSERTED THE STATE SECRETS PRIVILEGE OVER YES OR

19   NO ON THE ISSUE OF STANDING.

20          **THE COURT:**  COULD YOU PLEASE ADDRESS THE ISSUE, IF

21   YOU HAVE A SPECIFIC ARGUMENT, ABOUT THE QUESTION A, ABOUT THE

22   REDRESSABILITY ISSUE?

23          **MR. PATTON:**  YES.

24       SO I BELIEVE YOUR HONOR'S QUESTION IS BASICALLY ANOTHER

25   WAY OF SAYING -- MR. WIEBE IS CORRECT WITH REGARD TO THE

```
1    FAVORABLE DECISION, BUT YOUR HONOR CAN'T GIVE EITHER A

2    FAVORABLE DECISION OR UNFAVORABLE DECISION.  IT'S JUST ANOTHER

3    WAY OF SAYING YOUR HONOR CANNOT DECIDE THE ISSUE OF STANDING

4    ON THE PUBLIC RECORD.

5        AND IN 2013, YOUR HONOR TASKED THE PLAINTIFFS ON PAGE 1112

6    OF YOUR JULY --

7            THE COURT:  WOW, I REALLY WROTE A LOT IN THIS CASE,

8    DIDN'T I.

9            MR. PATTON:  YES.  TWO THAT WE LIKE.

10           THE COURT:  OKAY.

11           MR. PATTON:  IN 2013, YOUR HONOR SAID I'M TASKING THE

12   PLAINTIFFS WITH THE BURDEN OF TRYING TO ESTABLISH THEIR

13   STANDING WITHOUT HARM TO NATIONAL SECURITY.

14       ALMOST SIX YEARS LATER THE ANSWER IS STILL NO.  THEY HAVE

15   GONE TO GREAT LENGTHS, BUT THE ANSWER IS STILL NO.

16       YOUR HONOR HAS ALMOST 200 PAGES OF A CLASSIFIED

17   DECLARATION FROM ADMIRAL ROGERS, THOUSANDS OF PAGES OF

18   CLASSIFIED DOCUMENTS THAT YOUR HONOR CAN LOOK AT AND SEE WHY

19   THAT'S EXACTLY THE CASE THAT THEY CANNOT SHOW THAT THEY HAVE

20   STANDING WITHOUT HARM TO NATIONAL SECURITY.

21       AGAIN, YOUR HONOR FOUND EXACTLY THE SAME THING WITH REGARD

22   TO THE UPSTREAM PROGRAM IN 2015.  AND YOUR HONOR'S ALTERNATIVE

23   HOLDING IN THAT PARTICULAR CASE THAT THE CASE COULD NOT

24   PROCEED WITHOUT RISK OF HARM TO NATIONAL SECURITY.

25       BECAUSE AT TRIAL, AS YOUR HONOR POINTED OUT, WE WOULD HAVE
```

1    TO LOOK AT HOW THE PROGRAMS WORK, WHICH PROVIDERS

2    PARTICIPATED, WHERE THE NSA WAS CONDUCTING SURVEILLANCE, WHO

3    WERE SUBJECTS OF SURVEILLANCE, ALL OF THESE ISSUES NEED TO BE

4    DECIDED.  AND THERE'S NO --

5         THE COURT:  THOSE WOULD BE DONE IN PRIVATE THOUGH.

6    THE PLAINTIFFS WOULDN'T BE PART OF THAT.

7         MR. PATTON:  WELL, YOUR HONOR, AT THE VERY END --

8    WELL, TWO THINGS.

9      ONE, THE 1806(F), BY ITS TERMS, DOES NOT APPLY TO

10   DETERMINE STANDING.  TWO, NOTHING IN *FAZAGA* INDICATES THAT IT

11   SHOULD BE.  AND, INDEED, THERE'S MUCH IN *FAZAGA* THAT TELLS YOU

12   THAT IT'S FOR THE LAWFULNESS DETERMINATION ALONE, AND ALSO TO

13   PROTECT NATIONAL SECURITY --

14        THE COURT:  LET ME ASK YOU TO ADDRESS A POINT

15   MR. WIEBE MADE, WHICH IS CORRECT, THAT THE STATUTE

16   CONTEMPLATES THAT A PLAINTIFF'S ATTORNEY COULD BE CLEARED TO

17   BASICALLY SEE THE CLASSIFIED INFORMATION.

18     SHOULD THE COURT, IF THE CASE GOES FURTHER, EVEN IF IT

19   DOESN'T GO FURTHER, WHAT'S YOUR POSITION ABOUT WHETHER THE

20   COURT SHOULD, IF YOU WILL, DEPUTIZE ONE OF THE PLAINTIFFS'

21   ATTORNEYS TO -- AND HAVE THEM CLEARED TO SEE THIS EVIDENCE?

22        MR. PATTON:  FIRST, NOTHING HAS CHANGED SINCE YOUR

23   HONOR HAS DECIDED THIS VERY ISSUE BACK IN, I THINK IT WAS ECF

24   NO. 404 IN JUNE OF LAST YEAR WHEN YOUR HONOR FOUND AND DENIED

25   PLAINTIFFS' MOTION FOR ACCESS.

1      SECONDLY, IT WOULD BE UNPRECEDENTED FOR ANY COURT TO DO

2   SUCH A THING UNDER 1806(F) OR 2712(B)(4).  IT HAS NOT HAPPENED

3   BEFORE.

4      IN ONE PARTICULAR CASE, I BELIEVE IN THE NORTHERN DISTRICT

5   OF ILLINOIS IN *DOWD*, A CRIMINAL CASE WHERE LIBERTY WAS AT

6   STAKE, THE DISTRICT COURT ORDERED THAT THE DEFENDANT'S COUNSEL

7   BE CLEARED TO SEE THE INFORMATION UNDER, I BELIEVE IT'S 50

8   U.S.C. 1806(H).  I THINK THAT IS AN IMMEDIATELY APPEALABLE

9   ORDER, AND THAT WAS TAKEN TO THE SEVENTH CIRCUIT AND REVERSED

10  IN A UNANIMOUS DECISION THAT IT'S UNNECESSARY FOR THE COURT TO

11  DECIDE.

12      **THE COURT:**  WHAT HAPPENS WHEN THESE CASES -- JUST AS

13  AN ASIDE -- WHEN THEY GET ON APPEAL TO THE CIRCUIT, CAN THE

14  CIRCUIT APPOINT SOMEBODY TO SEE THE EVIDENCE AND CONTEST THE

15  COURT'S CLASSIFIED OPINION?

16      **MR. PATTON:**  I'M NOT SPECIFICALLY AWARE OF THAT IN

17  1806(F) DECISIONS, BUT CERTAINLY ON APPEAL, LAW CLERKS AND

18  JUDGES ARE GRANTED SECURITY CLEARANCES TO SEE INFORMATION THAT

19  IS EVIDENT FROM THE *JEPPESEN* OPINION.

20      **THE COURT:**  BUT NOT IN THE DISTRICT COURT, THOUGH.

21  WE TRIED THAT AND WE WERE SHOT DOWN BY YOU GUYS.

22      **MR. PATTON:**  I BELIEVE A LAW CLERK, A CAREER LAW

23  CLERK DID REVIEW THE --

24      **THE COURT:**  WE DO HAVE ONE FORTUITOUSLY WHO HAPPENS

25  TO WORK FOR A JUDGE WHO DEALS WITH THE FISA COURT.

1          **MR. PATTON:**  IT IS MY UNDERSTANDING THAT THAT

2     PARTICULAR --

3          **THE COURT:**  IT IS TRUE.

4          **MR. PATTON:**  -- CLERK LOOKED AT DECLARATIONS AND

5     THOUSANDS OF PAGES.

6          **THE COURT:**  CORRECT.  I DON'T WANT TO GET YOU OFF

7     YOUR TARGET HERE.  CONTINUE.

8          **MR. PATTON:**  ULTIMATELY, YOUR HONOR, THE END RESULT

9     OF ALL OF THIS WHETHER YOU CLEARED -- WELL, WHETHER YOU

10    ORDERED THAT AND WHETHER THE GOVERNMENT LOOKED AT IT AND

11    DECIDED WHETHER OR NOT MR. WIEBE HAD A NEED TO KNOW, BECAUSE

12    AS YOUR HONOR IS AWARE OF THE DECISION WHETHER OR NOT TO GIVE

13    OUT CLEARANCES IS WITH THE EXECUTIVE AS OPPOSED TO ANY OTHER

14    BRANCH OF THE GOVERNMENT UNDER THE *DEPARTMENT OF NAVY VERSUS*

15    *EGAN*.

16         BUT EVEN IF MR. WIEBE WAS CLEARED AND EVERYTHING RELATED

17    TO THAT, YOUR HONOR STILL CANNOT ISSUE AN OPINION AND ORDER

18    MONEY TO BE PAID, WHICH IS WHAT THIS IS ALL ABOUT AT THIS

19    STAGE, MONEY TO BE PAID.  THAT VERY FACT WOULD REVEAL A

20    CLASSIFIED --

21         **THE COURT:**  I UNDERSTAND.

22         **MR. PATTON:**  ONE OF THE OTHER -- ONE OF THE CASES

23    THAT WE CITED TO YOU IN OUR ADDITIONAL AUTHORITIES... THAT WE

24    CITED IN OUR ADDITIONAL AUTHORITIES WAS *STERLING VERSUS TENET*.

25    AND IT SAYS AT PAGE 348, FOR THE VERY QUESTION ON WHICH A CASE

1    TURNS IS ITSELF A STATE SECRET.  DISMISSAL IS AN APPROPRIATE

2    REMEDY.

3        AND THAT'S VERY QUESTION WE HAVE HERE.  WHETHER OR NOT

4    PLAINTIFFS WERE SUBJECT TO SURVEILLANCE IS THE CLASSIFIED

5    FACT.  SO YOU CANNOT PROCEED IN THAT MANNER.

6        I WON'T BELABOR THE POINT THAT... OF ALL OF THE POTENTIAL

7    HARMS THAT COULD RESULT FROM A TRIAL ON THE ISSUE OF STANDING

8    AS I'VE FOCUSED MORE PARTICULARLY ON THE ONE VERY FACT THAT IS

9    AT ISSUE HERE, BUT I DID WANT TO ADDRESS THE CATCH-22.

10       SO THE -- THERE ARE PLAINTIFFS WHO WOULD NOT BE IN THIS

11   CATCH-22 AND THERE ARE PLAINTIFFS LIKE THESE WHO ARE IN THE

12   CATCH-22.  SO THOSE PLAINTIFFS WHO WERE NOT IN THE CATCH-22

13   SITUATION ARE THOSE WHERE THE GOVERNMENT HAS OFFICIALLY

14   ACKNOWLEDGED WERE SUBJECT TO ELECTRONIC SURVEILLANCE.

15       THESE CAN BE 1806 PLAINTIFFS -- I'M SORRY, CRIMINAL

16   DEFENDANTS IN A CASE WHERE THE GOVERNMENT GIVES 50 U.S.C.

17   1806(C) NOTICE.  THOSE CRIMINAL DEFENDANTS, FOR EXAMPLE, IF IT

18   GOES FORWARD AND THE ELECTRONIC SURVEILLANCE IS FOUND TO HAVE

19   BEEN UNLAWFUL, THEY CAN BECOME CIVIL PLAINTIFFS.  AND THEY DO

20   NOT HAVE THAT CATCH-22 SITUATION.  THERE MAY BE OTHER ISSUES

21   INVOLVED THAT MIGHT PRECLUDE SUIT, BUT THAT WOULD NOT BE A

22   CATCH-22.

23       THE SAME IS FOR 18 U.S.C. 3504 WHICH CAN APPLY IN CIVIL

24   CASES AND DEPORTATION PROCEEDINGS, ET CETERA.  THOSE -- AND

25   THAT IS ADDRESSED IN JUDGE ELLIS' DISTRICT OF MARYLAND OPINION

1    IN *WIKIMEDIA* AS WELL.  THOSE PLAINTIFFS WHO GET NOTICE WHERE

2    THE GOVERNMENT COMES FORWARD AND SAYS, YES, WE HAVE SUBJECTED

3    YOU TO ELECTRONIC SURVEILLANCE, THOSE PLAINTIFFS ARE NOT IN A

4    CATCH-22 SITUATION.

5        THESE PLAINTIFFS ARE, AND CANNOT.  AND THE NINTH CIRCUIT

6    HAS RECOGNIZED IN THE *KASZA* CASE, 133 F. 3D 1159 AT 1167 THAT

7    THE RESULTS ARE, IN FACT, HARSH.  BUT THE STATE SECRETS

8    DOCTRINE FINDS THE REAL PUBLIC GOOD ULTIMATELY THE LESS HARSH

9    REMEDY TO BE A DISMISSAL.

10       IN THIS CASE, NINTH CIRCUIT BACK IN 2011, THE NINTH

11   CIRCUIT SAID THAT THE PLAINTIFFS IN THIS CASE MIGHT FEEL,

12   THROUGH EVIDENTIARY PROOF OR PROCEDURAL SUBSTANTIVE BARRIERS,

13   AND THAT THEIR STANDING CASE MIGHT BE DOOMED, AND THAT'S, IN

14   FACT, TRUE HERE.

15       AND THE SUPREME COURT ADDRESSED THIS PARTICULAR ISSUE OF

16   IF NOT US, THEN WHO, IN TERMS OF STANDING AND THAT WAS IN

17   *CLAPPER* IN THE CONTEXT OF ELECTRONIC SURVEILLANCE.  THEY SAID

18   AT PAGE 420 QUOTE, "THE ASSUMPTION THAT IF RESPONDENTS HAVE NO

19   STANDING TO SUE, NO ONE WOULD HAVE STANDING IS NOT A REASON TO

20   FIND STANDING."  SO THAT BEING THE CASE, WE OBVIOUSLY HAVE

21   TOLD YOU SOME PLAINTIFFS THAT DON'T FIT INTO THAT CATCH-22.

22       YOUR HONOR ALSO ASKED A FOLLOW-UP QUESTION WHICH WAS ABOUT

23   GOVERNMENT OVERREACH.  AGAIN, THERE'S SOME OVERLAP IN CIVIL

24   CASES, THOSE THAT I JUST TALKED ABOUT, IN CRIMINAL CASES,

25   THOSE THAT I JUST TALKED ABOUT, BUT I ALSO WANTED TO GIVE YOUR

1    HONOR MORE OF A FRAMEWORK FOR THE FISC AS WELL.

2        IT'S NOT JUST CIVIL PLAINTIFFS THAT COULD UNDER THE

3    CIRCUMSTANCES, MENTIONED CRIMINAL DEFENDANTS UNDER THE

4    CIRCUMSTANCES I MENTIONED, BUT UNDER THE U.S.A. FREEDOM ACT,

5    50 U.S.C. 1803(I) ALLOWS THE FISC TO APPOINT AMICUS TO, IN EX

6    PARTE SITUATIONS, TO PRESENT LEGAL ARGUMENTS THAT QUOTE,

7    "ADVANCE THE PROTECTION OF INDIVIDUAL PRIVACY AND CIVIL

8    LIBERTIES".  THAT WAS ADDED TO THE FISA IN 2015.  THEIR SOLE

9    PURPOSE IS THERE TO TRY AND ROOT OUT WHAT IS PERCEIVED TO BE

10   GOVERNMENT OVERREACH OR ADDRESS THOSE ISSUES FROM A CIVIL

11   LIBERTIES PERSPECTIVE.

12       PROVIDERS WHO RECEIVE DIRECTIVES UNDER FISA 702 ALSO CAN

13   CHALLENGE THE LAWFULNESS OF THE DIRECTIVE ON A NONCIVIL

14   LITIGATION WAY.  THE FISC ALSO PROVIDES OVERSIGHT FOR EXACTLY

15   THOSE ISSUES WHETHER OR NOT IT'S GOVERNMENT OVERREACH OR HOW

16   IT WOULD BE PHRASED.  THE PLAINTIFFS ADDED THE PRTT ORDER THAT

17   TALKED ABOUT OVERCOLLECTION.  AND THE PRTT SAYS THE FISC

18   OPERATES IN THAT WAY.  THE *CLAPPER* DECISION AT PAGE 421 TALKS

19   IN MORE DETAIL ABOUT THAT.

20       THERE'S ALSO CONGRESSIONAL OVERSIGHT OF ALL OF THE NSA

21   PROGRAMS INVOLVING 702 THAT ARE AT ISSUE HERE AND OTHERS

22   PREVIOUSLY ADDRESSED.  SEMIANNUAL REPORTS TO CONGRESS.  THE

23   DEPARTMENT OF JUSTICE CONDUCTS OVERSIGHTS.

24       SO WHETHER OR NOT THESE PLAINTIFFS HAVE STANDING DOES NOT

25   MEAN THAT THESE PARTICULAR PROGRAMS, THE ONE REMAINING ONE, IS

1    UPSTREAM THAT IT GOES UNSUPERVISED.

2         **THE COURT:**  WHAT ABOUT THE ARGUMENT THAT MR. WIEBE

3    MADE, AND THEN WE WILL TAKE A BREAK.  WE HAVE GOING ON FOR

4    ABOUT AN HOUR AND A HALF.  TO THE EXTENT THAT A PROGRAM HAS

5    BEEN TERMINATED AND LET'S -- WHAT WOULD BE THE HARM TO

6    NATIONAL SECURITY FOR THE GOVERNMENT TO SAY, IN THAT OLD

7    PROGRAM, YOU KNOW, MR. WIEBE'S CLIENTS MAY HAVE BEEN PICKED

8    UP, SINCE THAT PROGRAM IS NO LONGER GOING FORWARD, HE ARGUES,

9    WHY WOULDN'T THAT BE AN ISSUE?

10        **MR. PATTON:**  FIVE OF THE SIX, THINGS STAY CLASSIFIED

11   EVEN WHEN PROGRAMS END.  AND THE REASON WHY IT STAYS

12   CLASSIFIED AND WHY THAT CAN STILL CAUSE HARM TO NATIONAL

13   SECURITY IS SET OUT IN OUR CLASSIFIED PAPERS.  SO I CAN'T

14   ADDRESS THEM HERE, BUT THAT ISSUE IS ONE THAT OUR CLASSIFIED

15   PAPERS DO ADDRESS GIVEN THE FACT THAT FIVE OF THESE SIX

16   PROGRAMS HAVE, IN FACT, ENDED, BUT I CANNOT EXPLICATE ANY

17   FURTHER --

18        **THE COURT:**  OTHER THAN TO MAKE A REPRESENTATION THAT

19   THAT SUBJECT MATTER --

20        **MR. PATTON:**  THAT SUBJECT MATTER IS ADDRESSED.

21        **THE COURT:**  WAIT.  DON'T INTERRUPT.  THAT QUESTION IS

22   ADDRESSED BY THE GOVERNMENT IN A CLASSIFIED INFORMATION.  YOU

23   CAN SAY THAT MUCH.

24        **MR. PATTON:**  YES, YOUR HONOR.

25        **THE COURT:**  ALL RIGHT.

1        **MR. PATTON:**  I WOULD JUST ADD THAT MR. WIEBE

2    MENTIONED TRANSPARENCY REPORTS, AT&T AND VERIZON.  NOTHING IN

3    THOSE TRANSPARENCY REPORTS INDICATES THAT AT&T AND VERIZON

4    ASSISTED IN ANY PARTICULAR PROGRAM.  THEY ARE TYPICALLY

5    WRITTEN SO THAT THEY DEMONSTRATE NO FACTS RESULT THAT CONNECT

6    ANY PARTICULAR PROVIDER, ANY PARTICULAR PROGRAM, OR ANY

7    PARTICULAR GOVERNMENT ENTITY.

8      SO THOSE PROVIDE NO SPECIFICS WITH REGARD TO A NEXUS

9    BETWEEN THOSE PROVIDERS AND ANY PARTICULAR PROGRAM CHALLENGED

10   HERE.

11       **THE COURT:**  ALL RIGHT.  LET'S TAKE A BREAK.  I WILL

12   GIVE YOU A VERY BRIEF OPPORTUNITY TO RESPOND, MR. WIEBE, AND

13   THEN WE WILL MOVE ON TO QUESTION 4.  LET'S TAKE ABOUT 15

14   MINUTES.  EVERYBODY CAN STRETCH THEIR LEGS.

15       **MR. WIEBE:**  THANK YOU, YOUR HONOR.

16     (RECESS TAKEN AT 10:38 A.M.; RESUMED AT 11:00 A.M.)

17       **THE CLERK:**  REMAIN SEATED COME TO ORDER.  COURT IS

18   AGAIN IN SESSION.

19       **THE COURT:**  AGAIN, WE ARE BACK ON THE RECORD.

20     YOU WANTED TO BRIEFLY, IF YOU WISH, MR. WIEBE, TO REPLY

21   WITH RESPECT TO QUESTION 3B.

22       **MR. WIEBE:**  YES, YOUR HONOR.  THANK YOU.

23     FIRST, THE GOVERNMENT MENTIONED THEIR SUPPLEMENTAL

24   AUTHORITY, THE *STERLING VERSUS TENET* CASE.  THAT WAS A

25   DISGRUNTLED SPY CASE LIKE *TOTTEN* AND *TENET VERSUS DOE*.

1    THE SPY CLAIM IF IT WANTS TO DISCLOSE SECRETS TO PROVE A

2    CLAIM AGAINST THE GOVERNMENT ARISING OUT OF EMPLOYMENT,

3    THAT'S -- IT CERTAINLY FALLS WITHIN THE -- WHAT THE SUPREME

4    COURT SAID IN *TENET VERSUS DOE* 544 U.S. AT 3.  QUOTE, "THE

5    LONGSTANDING RULE ANNOUNCED MORE THAN A CENTURY AGO IN *TOTTEN*

6    PROHIBITING SUITS AGAINST THE GOVERNMENT BASED ON COVERT

7    ESPIONAGE AGREEMENTS."  SO THAT'S NOT WHAT'S AT ISSUE HERE.

8    THERE'S ALSO A SO-CALLED VERY SUBJECT MATTER DISMISSAL.

9    BECAUSE THE VERY SUBJECT MATTER WAS A STATE SECRET.  AND THE

10   COURT HAS HELD THAT THE VERY SUBJECT MATTER OF THIS LAWSUIT IS

11   NOT A STATE SECRET.  THAT'S 965 F.SUPP. 2D AT 1102, 03.

12   BUT MOST IMPORTANTLY WAS A STATE SECRETS PRIVILEGE CASE

13   WHERE 1806(F) AND 2712 WERE NOT INVOLVED.  THEY DIDN'T APPLY

14   TO THOSE CLAIMS.  LIKEWISE, THE *KASZA* CASE THAT HE MENTIONED

15   IS ALSO A STATE SECRETS CASE.  AND HERE WE HAVE THE COURT'S

16   RULING IN 2013 THAT THIS IS A CASE TO WHICH 1806(F) APPLIES.

17   THE -- ALONG THE SAME VEIN, HE MENTIONED *CLAPPER* FOOTNOTE

18   4 WHERE THE PLAINTIFFS HAD PROPOSED A HYPOTHETICAL IN CAMERA

19   PROCEEDING.  AGAIN, THERE IS A WORLD OF DIFFERENCE BETWEEN

20   PLAINTIFFS MAKING UP A PROCEDURE ON THE FLY AND CONGRESS

21   ENACTING A STATUTE LIKE 1806(F) CREATING A PROCEDURE.

22   THE... WE ALSO TALKED ABOUT THE HARM.  AGAIN, I THINK THE

23   CRUCIAL DIFFERENCE IN TERMS OF HARM IS TARGETED VERSUS

24   UNTARGETED SURVEILLANCE.

25   NOW, THE GOVERNMENT SAYS THAT WE HAVE TO PROVE WE ARE

```
1    SUBJECT TO SURVEILLANCE.  BUT THAT DOES NOT MEAN WE HAVE TO
2    PROVE WE'RE SURVEILLANCE TARGETS BECAUSE MANY, MANY PEOPLE
3    WERE SUBJECT TO THESE PROGRAMS WITHOUT BEING THE TARGETS OF
4    THE SURVEILLANCE.  AND I THINK THE COURT'S CLEAR ON THAT
5    DISTINCTION.
6        AND, AGAIN, I DON'T THINK ANYONE WHO HAS FOLLOWED THESE
7    ISSUES HAS ANY DOUBT THAT MANY MILLIONS OF PEOPLE WERE SWEPT
8    UP IN THE PHONE RECORDS PROGRAM AND IN THE UPSTREAM PROGRAM
9    AND THE INTERNET RECORDS PROGRAM.  AND SO THE -- SIMPLY SAYING
10   THAT SOMEONE WHO IS NOT A TARGET OF SURVEILLANCE WAS SWEPT UP
11   IN THE PROGRAM I DON'T THINK REALLY DISCLOSES ANYTHING NEW.
12       AND, FINALLY, THOSE TRANSPARENCY REPORTS OF AT&T AND
13   VERIZON ARE IMPORTANT.  THEY ARE A DISCLOSURE THAT THOSE
14   COMPANIES ARE ASSISTING THE GOVERNMENT IN FISA SURVEILLANCE.
15   AND THE GOVERNMENT TRIES TO MINIMIZE THAT AND SAY, WELL, YOU
16   WOULDN'T KNOW WHAT PROGRAM THEY'RE IN, BUT I DON'T THINK
17   THAT'S THE RELEVANT QUESTION TO POTENTIAL TERRORISTS.  IT'S IS
18   THE COMPANY COOPERATING OR NOT, KIND OF THE BOTTOM LINE.
19       HE ALSO SAID THAT IT WOULD BE UNPRECEDENTED TO APPOINT OR
20   TO CLEAR COUNSEL, TO CLEAR PLAINTIFFS' COUNSEL TO PARTICIPATE
21   IN PROCEEDINGS.  I WOULD RESPOND BY SAYING THAT THE
22   GOVERNMENT'S SWEEPING INVASION OF FISA IN THE PSP, AND ITS
23   VIOLATION OF CIVIL LIBERTIES ON A MASSIVE SCALE IS EQUALLY
24   UNPRECEDENTED, AND CONGRESS HAS TRADED THIS TOOL AND GIVEN IT
25   TO JUDGES TO USE IN THEIR CONSIDERED DISCRETION.  SO SIMPLY
```

 1    BECAUSE IT HASN'T BEEN USED BEFORE IS NOT AN ARGUMENT THAT IT

 2    CAN'T BE USED HERE.

 3       THE GOVERNMENT BRINGS UP YOUR 2013 AND 2015 DECISIONS AND

 4    WHAT'S CHANGED SINCE THEN.  MOST IMPORTANTLY, I THINK *IT'S*

 5    *FAZAGA* WHICH WE ARE ABOUT TO ADDRESS, AND IT SAYS, DESPITE ALL

 6    THE ALTERNATIVE POTENTIAL REMEDIES THAT THE GOVERNMENT HAS

 7    LAID OUT, THAT PLAINTIFFS HAVE A RIGHT TO PROCEED WITH THEIR

 8    CLAIMS UNDER 2712 USING THE PROTECTIVE PROCEDURES OF SECTION

 9    1806(F).

10          **THE COURT:**  LET'S MOVE ON TO QUESTION NO. 4.  I'LL

11    READ THE QUESTION, THE PREDICATE TO THE QUESTION.

12       IN *FAZAGA VERSUS FBI*, THE NINTH CIRCUIT STATED THAT QUOTE,

13    "SECTION 1806(F) SUPPLIES AN ALTERNATIVE MECHANISM FOR THE

14    CONSIDERATION OF ELECTRONIC STATE SECRETS EVIDENCE THAT

15    THEREFORE ELIMINATES THE NEED TO DISMISS THE CASE ENTIRELY

16    BECAUSE OF THE ABSENCE OF ANY LEGALLY SANCTIONED MECHANISM FOR

17    A MAJOR MODIFICATION OF ORDINARY JUDICIAL PROCEDURES",

18    UNQUOTE.  THE COURT ALSO SPECIFICALLY NOTED THAT SECTION 1806

19    APPLIES TO QUOTE-UNQUOTE "AGGRIEVED PERSONS" DEFINED IN

20    1801(K) AS A QUOTE, "A PERSON WHO IS THE TARGET OF AN

21    ELECTRONIC SURVEILLANCE OR ANY OTHER PERSON WHOSE

22    COMMUNICATIONS ACTIVITIES WERE SUBJECT TO ELECTRONIC

23    SURVEILLANCE", UNQUOTE.

24       THE COURT DID NOT RULE OUT A RENEWED CONSIDERATION OF THE

25    STATE SECRETS PRIVILEGE DEFENSE AFTER 1806 PROCEDURES --

1  1806(F)'S PROCEDURES HAVE BEEN FOLLOWED.

2      WITH THIS IN MIND, AND THIS IS QUESTION A:  WITHOUT ANY

3  SPECIFIC FINDING THAT ANY SPECIFIC PLAINTIFF'S COMMUNICATIONS

4  WERE TOUCHED BY THE ALLEGED SURVEILLANCE PROGRAMS AT ISSUE,

5  HOW CAN THE COURT FIND THAT PLAINTIFFS ARE "AGGRIEVED PERSONS"

6  QUOTE-UNQUOTE, SUCH THAT THE COURT IS REQUIRED TO CONTINUE

7  QUOTE, "TO USE 1806(F)'S PROCEDURES TO DETERMINE WHETHER THE

8  SURVEILLANCE WAS LAWFULLY AUTHORIZED AND CONDUCTED?"  UNQUOTE.

9      MR. WIEBE, I WILL LEAVE THAT UP TO YOU.

10          **MR. WIEBE:**  YES.  THANK YOU, YOUR HONOR.

11      *FAZAGA* IS AN IMPORTANT DECISION FOR THIS CASE OBVIOUSLY.

12  *FAZAGA* IS ABSOLUTELY CONSISTENT WITH EVERYTHING THE PLAINTIFFS

13  HAVE TOLD THE COURT ABOUT SECTION 1806(F) FOR THE PAST DECADE.

14      NOW, THE NINTH CIRCUIT REACHED THREE CONCLUSIONS IN

15  *FAZAGA*.  FIRST OF ALL, SECTION 1806(F) DISPLACES THE STATE

16  SECRETS PRIVILEGE AND PROHIBITS ANY STATE SECRETS DISMISSAL IN

17  ELECTRONIC SURVEILLANCE CASES LIKE THIS.

18      SECOND, A PARTY IS AN AGGRIEVED PERSON ENTITLED TO USE OF

19  1806(F) IF THE PARTY MAKES WELL-PLEADED ALLEGATIONS OF

20  ELECTRONIC SURVEILLANCE.

21      AND, THIRD, ONCE SECTION 1806(F) IS TRIGGERED, THE SECRET

22  EVIDENCE IS IN THE CASE FOR ALL PURPOSES.

23      LET ME GO THROUGH THESE IN A LITTLE MORE DETAIL.

24      THE FIRST POINT, THE NINTH CIRCUIT SAYS OVER AND OVER AND

25  OVER AGAIN THAT SECTION 1806(F) IS MANDATORY AND EXCLUSIVE AND

1    DISPLACES ANY STATE SECRET DISMISSAL.  AND WE SEE THIS AT

2    PAGES 17, 18, 21, 22, 23, 24, 27.

3        AND THE GOVERNMENT IS WRONG IN SUGGESTING THAT THE

4    PROCEDURES ON REMAND SECTION AT THE VERY END OF THE OPINION

5    LEAVE OPEN A STATE SECRET PRIVILEGE DISMISSAL OF ELECTRONIC

6    SURVEILLANCE CLAIMS.

7        NOW THIS IS IMPORTANT, SO I WANT TO GO THROUGH THIS IN

8    DETAIL.

9        NOW THE NINTH CIRCUIT THERE WAS TALKING ABOUT A STATE

10   SECRET DISMISSAL OF NONELECTRONIC SURVEILLANCE CLAIMS, THE

11   SO-CALLED RELIGION CLAIMS.  AGAIN, WE REMEMBER THAT IN *FAZAGA*,

12   THERE WERE TWO CATEGORIES OF CLAIMS THAT THE PLAINTIFFS HAD,

13   ELECTRONIC SURVEILLANCE CLAIMS AND NONELECTRONIC SURVEILLANCE

14   CLAIMS WHICH THE NINTH CIRCUIT CALLED THE RELIGION CLAIMS.

15       NOW, THE PROCEDURES ON REMAND SECTION BEGINS AT PAGE 38.

16   AND IT STARTS BY DISCUSSING THE ELECTRONIC SURVEILLANCE

17   CLAIMS, AND IT DIRECTS THE DISTRICT COURT ON REMAND TO USE

18   SECTION 1806(F) TO DECIDE THE ELECTRONIC SURVEILLANCE CLAIMS.

19       NOW THEN AT PAGE 39, THE NINTH CIRCUIT MOVES TO A

20   DIFFERENT SUBJECT.  THE *FAZAGA* PLAINTIFFS' NONELECTRONIC

21   SURVEILLANCE RELIGION CLAIMS.  AND, FIRST, IT REJECTS THE

22   GOVERNMENT'S ARGUMENT THAT SECTION 1806(F)'S PROCEDURES AND

23   THE EVIDENCE THAT COMES THROUGH IT CAN'T BE USED TO DECIDE THE

24   RELIGION CLAIMS.  IT SAYS ONCE IT'S IN THE CASE, IT'S IN THE

25   CASE, GO AHEAD AND USE IT.  AND IT HOLDS THAT THE SECRET

```
1    EVIDENCE SHOULD BE USED FOR BOTH PURPOSES.

2         THEN AT PAGE 40 -- SO THAT'S PAGE 39.  AT PAGE 40, STILL

3    TALKING ABOUT THE RELIGION CLAIMS, THE NINTH CIRCUIT SAYS THAT

4    IF THE ELECTRONIC SURVEILLANCE CLAIMS DROP OUT OF

5    CONSIDERATION BECAUSE THE PLAINTIFF FAILS TO PROVE THEM UP,

6    THEN THE GOVERNMENT MAY BE ABLE TO RAISE A STATE SECRETS

7    PRIVILEGE DEFENSE.

8         NOW THAT STATE SECRETS DEFENSE CAN ONLY BE AGAINST THE

9    RELIGION CLAIMS BECAUSE BY DEFINITION THE ELECTRONIC

10   SURVEILLANCE CLAIMS HAVE ALREADY DROPPED OUT OF CONSIDERATION.

11   SO THAT'S WHAT THE NINTH CIRCUIT IS TALKING ABOUT.

12        AND IT MAKES NO SENSE THAT AT THE END OF THE OPINION AFTER

13   REPEATEDLY SAYING 1806(F) IS MANDATORY AND EXCLUSIVE AND

14   DISPLACES ANY STATE SECRETS DISMISSAL THAT IT WOULD

15   OFFHANDEDLY CONTRADICT ITSELF AND SAY ACTUALLY, NO, YOU CAN DO

16   IT.

17        NOW, THE GOVERNMENT HAS ALSO CITED FOOTNOTE 52, WHICH I

18   WANT TO BRING UP.  AND THAT FOOTNOTE DOES NOT LIMIT THE

19   PLAINTIFF -- IT TALKS ABOUT WHETHER OR NOT THE PLAINTIFFS HAVE

20   PROVEN UP THEIR SURVEILLANCE CLAIM, BUT IT DOES NOT LIMIT THE

21   PLAINTIFFS TO USING ONLY PUBLIC EVIDENCE IN PROVING THE CLAIM,

22   AND IT DOES NOT BAR THE COURT FROM USING SECRET EVIDENCE

23   REVIEWED UNDER 1806(F) TO DECIDE STANDING.

24        TO THE CONTRARY, THE ENTIRE THRUST IS ONCE THE SECRET

25   EVIDENCE IS IN THE CASE, IT'S IN THE CASE FOR ALL PURPOSES.
```

1    AND, AGAIN, SECTION 2712(B)(4) WAS NOT AT ISSUE IN *FAZAGA* AND

2    IT HAS AN EVEN BROADER USE OF THE USE OF SECRET EVIDENCE.

3         SO THAT IS THE FIRST POINT, WHICH IS THE PRECLUSION OF

4    STATE SECRETS DISMISSALS BY 1806(F).

5         THE SECOND POINT, THE AGREED PERSON TEST *FAZAGA* USES.

6    *FAZAGA* DISCUSSES THE AGGRIEVED PERSON TWICE.  AT PAGE 9 AND

7    PAGE 28.

8         FIRST AT PAGE 9, IT'S DISCUSSING IT TO DETERMINE WHETHER

9    THE PLAINTIFFS HAVE ALLEGED ELECTRONIC SURVEILLANCE.  THE

10   SECOND TIME, AT PAGE 28, TO DETERMINE WHETHER THE PLAINTIFFS

11   ARE AGGRIEVED PERSONS ENTITLED TO USE SECTION 1806(F).

12        AND AT PAGE 28, IT ASKS QUOTE "WHETHER FISA'S 1806(F)

13   PROCEDURES MAY BE USED IN THIS CASE, AND HOLDING PLAINTIFFS

14   MUST SATISFY THE DEFINITION OF AN AGGRIEVED PERSON.  AND THEN

15   IT CITES BACK TO ITS EARLIER CONCLUSION THAT THE PLAINTIFFS

16   HAVE ADEQUATELY ALLEGED THAT THEY WERE AGGRIEVED PERSONS.

17        AND ON THE BASIS OF THOSE ALLEGATIONS ALONE, THE NINTH

18   CIRCUIT HOLDS QUOTE, "PLAINTIFFS ARE PROPERLY CONSIDERED

19   AGGRIEVED FOR PURPOSES OF FISA."

20        AND THEN THE REMAND ORDER AT PAGE 38 CONFIRMS THIS BECAUSE

21   IT SAYS TO THE DISTRICT COURT ON REMAND, USE 1806(F).  IT

22   DOESN'T REQUIRE THE PLAINTIFFS TO MAKE ANY FURTHER SHOWING OR

23   PROOF BEFORE THE DISTRICT COURT USES 1806(F).  THE REMAND

24   INSTRUCTION IS USE 1806(F).

25             **THE COURT:**  BUT *FAZAGA* WAS A PLEADINGS STAGE CASE,

1    CORRECT?

2              **MR. WIEBE:**  IT -- IT CAME UP ON A MOTION TO DISMISS.

3              **THE COURT:**  CORRECT.  OKAY.  WHICH WAS TRUE IN THE

4    *JEWEL V. NSA*, THE 673 F.3D 902, THE NINTH CIRCUIT'S DECISION

5    IN 2011.

6         AND SO LET'S ASSUME THAT THE COURT -- THE STATUS OF THIS

7    CASE, NOT ASSUME, CORRECTLY ASSUME HAS GONE FURTHER AND THIS

8    COURT HAS NOW REVIEWED THE EVIDENCE, LET'S ASSUME THE COURT

9    DISAGREES WITH THE PLAINTIFFS' CHARACTERIZATION OF THE QUALITY

10   OF ITS PUBLIC EVIDENCE AND FINDS THAT IT DOESN'T -- THEY FAIL

11   TO SHOW STANDING.

12        AND THE COURT HAS ALREADY ACTUALLY FOLLOWED -- THE COURT

13   MUST HAVE BEEN PRESCIENT BECAUSE IT DID FOLLOW THE 1806

14   PROCEDURE IN THIS CASE.  SO IF THE COURT WERE TO MAKE THAT

15   DETERMINATION, WOULDN'T -- AND, FINE, JUST IN THE

16   HYPOTHETICAL, IF THE PLAINTIFFS HAD NOT PROVED STANDING AND

17   COULD NOT PROVE STANDING OR THAT THEY WERE AGGRIEVED PERSONS,

18   IT'S GAME OVER FOR THE PLAINTIFFS, RIGHT, AT THIS LEVEL?

19             **MR. WIEBE:**  IF THE COURT DOES NOT CONSIDER THE SECRET

20   EVIDENCE?

21             **THE COURT:**  IF THE COURT ONLY CONSIDERS THE PUBLIC

22   EVIDENCE AND FINDS THAT THAT'S INADEQUATE, THEREFORE, THE

23   PLAINTIFFS HAVE FAILED TO CARRY THEIR BURDEN TO SHOW THEY ARE

24   AGGRIEVED PERSONS, ISN'T IT GAME OVER AT THAT POINT?

25             **MR. WIEBE:**  IF --

1              **THE COURT:**  ON THE STANDING ISSUE.

2              **MR. WIEBE:**  IF THAT'S THE COURT'S RULING, BUT WE

3     WOULD DISAGREE WITH THAT --

4              **THE COURT:**  OF COURSE YOU WOULD.  YOU ADMIT THAT THIS

5     CASE HAS GONE FURTHER AND HAS ACTUALLY GONE IN THE DIRECTION

6     THAT JUDGE BERZON CONTEMPLATED IN THAT THE COURT DID FOLLOW

7     THE 1806 PROCEDURES, DID REVIEW ALL THE EVIDENCE, DID ORDER

8     THE GOVERNMENT TO MARSHAL THE EVIDENCE, SO WE ARE PASSED THAT

9     POINT, AREN'T WE?

10             **MR. WIEBE:**  I DON'T THINK SO, YOUR HONOR.  AND THIS

11    IS WHY:  I THINK THE COURT IS REQUIRED NOT ONLY TO REVIEW THE

12    EVIDENCE, BUT USE IT IN REACHING ITS DECISION.

13       NOW AS I UNDERSTAND WHAT THE COURT HAS JUST SAID, IT'S

14    POSITING A SCENARIO WHERE THE COURT HAS LOOKED AT THE EVIDENCE

15    BUT DOESN'T ACTUALLY USE IT TO DETERMINE STANDING.

16       AND WE THINK THAT'S NOT WHAT *FAZAGA* CONTEMPLATES.  WE

17    THINK THAT'S NOT WHAT 1806(F) CONTEMPLATES AND NOT WHAT

18    2712(B)(4) CONTEMPLATES.

19       AND WHILE *FAZAGA* DID ARISE ON A MOTION TO DISMISS APPEAL,

20    THE REASON -- FIRST OF ALL, YOU'VE GOT EXPLICIT REMAND

21    INSTRUCTIONS ON WHAT HAPPENS AT THE NEXT PHASE, WHICH IS THE

22    PHASE THIS CASE IS AT NOW.

23       SO IT'S SPEAKING DIRECTLY TO HOW A COURT SHOULD HANDLE THE

24    NEXT PHASE OF LITIGATION POST MOTION TO DISMISS.  AND, IN

25    FACT, THE WHOLE REASON FOR REVERSING THE DISMISSAL ORDER WAS

1   THE DISTRICT COURT HADN'T PROPERLY RECOGNIZED THAT 1806(F)

2   PROVIDED A PATH FORWARD POST DISMISSAL.

3        **THE COURT:**  SO THE BOTTOM LINE IS, THE PLAINTIFFS'

4   READING OF *FAZAGA* IS THE COURT SHOULD DO WHAT IT DID, THAT IS

5   TO SAY, REVIEW THE SECRET EVIDENCE AFTER ORDERING THE

6   GOVERNMENT TO MARSHAL SAME, AND THEN SHOULD MAKE A

7   DETERMINATION, BOTH AN ANALYSIS OF THE CLASSIFIED EVIDENCE AS

8   WELL AS THE PUBLIC EVIDENCE, AND BASICALLY USING THE PARLANCE

9   BEFORE, SAY YEAH OR NAY ON STANDING BASED ON THE TOTALITY OF

10  THE RECORD.

11      THAT'S HOW THE PLAINTIFFS READ *FAZAGA*?

12          **MR. WIEBE:**  THAT'S HOW WE READ *FAZAGA*.

13      **THE COURT:**  DO YOU READ *FAZAGA* FURTHER TO SAY, GOING

14  BACK TO THE POINT WE WERE DISCUSSING BEFORE, WHICH IS IF

15  THE -- EVEN GIVING THAT ANSWER -- IF THE GOVERNMENT, THROUGH

16  ITS NATIONAL SECURITY APPARATUS, SAID, YOU KNOW, YOU CANNOT

17  TELL THE WORLD YEAH OR NAY, YOU'RE SAYING THAT *FAZAGA* WOULD

18  BASICALLY SUPERSEDE THAT AND SAY NO, NO, NO, READ IT NARROWLY

19  TO SAY YOU CANNOT DISMISS A CASE BASED UPON STATE SECRETS, THE

20  STATE SECRETS DOCTRINE.  IS THAT WHAT YOU ARE ESSENTIALLY

21  ARGUING, THE COURT CANNOT DO THAT?

22          **MR. WIEBE:**  I THINK A STATE SECRETS DISMISSAL IS

23  ABSOLUTELY FORBIDDEN, YES.

24      **THE COURT:**  EVEN ON THE NAY OR YEAH POSITION, THAT'S

25  IS HOW YOU READ *FAZAGA*?

1          **MR. WIEBE:**  CERTAINLY YES.  AS I UNDERSTAND IT, THE

2     COURT IS SAYING IT'S CONTEMPLATING A DECISION WHERE IT WOULD

3     SAY STATE SECRETS FORBIDS ME FROM SAYING NAY AND YEAH.

4          **THE COURT:**  YES, THAT IS THE HYPOTHETICAL.  YOUR

5     ARGUMENT WOULD BE *FAZAGA* WOULD SAY THAT WOULD BE REVERSIBLE

6     ERROR TO DO THAT.

7          **MR. WIEBE:**  *FAZAGA* AS WELL AS 2712(B)(4), WHICH I

8     DON'T WANT TO LOSE OUT BECAUSE IT IS ACTUALLY A BROADENING OF

9     1806(F).  IT WASN'T AN ISSUE IN *FAZAGA*, BUT IT'S -- IT MAKES

10    CLEAR THAT 1806(F)'S PROCEDURES GOVERN THE USE OF STATE

11    SECRETS EVIDENCE FOR ANY PURPOSE INCLUDING STANDING.

12         **THE COURT:**  OKAY.  ANYTHING FURTHER ON THAT QUESTION?

13         **MR. WIEBE:**  NOT ON THAT POINT.  BUT I THINK -- I

14    DON'T KNOW IF THE COURT WANTS ME TO ADDRESS THE QUESTIONS A

15    AND B?

16         **THE COURT:**  YES.  WHY DON'T -- I'LL GIVE THE

17    GOVERNMENT A CHANCE TO RESPOND BECAUSE I THINK -- AND I THINK

18    C ALSO GETS INTO THIS QUESTION, BUT IN B, THE COURT ASKS:  IN

19    *FAZAGA*, THE NINTH CIRCUIT NOTED THAT THE PLAINTIFFS HAD

20    SUFFICIENTLY ALLEGED THAT THEY WERE QUOTE-UNQUOTE "AGGRIEVED

21    PERSONS" TO SURVIVE A MOTION TO DISMISS THEIR FISA CAUSE OF

22    ACTION UNDER SECTION 1810.  WHERE, AS HERE, IT MAY BE THAT

23    PLAINTIFFS DO NOT HAVE ADMISSIBLE EVIDENCE TO DEMONSTRATE THAT

24    THEIR COMMUNICATIONS WERE TOUCHED BY THE ALLEGED SURVEILLANCE

25    PROGRAMS AT ISSUE, AND THAT ANY CLASSIFIED EVIDENCE TENDING TO

```
1    SHOW WHETHER OR NOT THEIR COMMUNICATIONS WERE TOUCHED CANNOT

2    BE RELIED UPON IN THE INTEREST OF NATIONAL SECURITY, WHAT

3    LIGHT DOES FAZAGA SHED ON WHETHER THIS COURT MAY NOW DISMISS

4    PLAINTIFFS' CLAIMS UNDER THE STATE SECRETS PRIVILEGE?

5         SO THAT'S KIND OF WHAT WE WERE DISCUSSING JUST NOW.

6              MR. WIEBE:  YEAH.

7              THE COURT:  HAVE YOU MADE YOUR ARGUMENT ON THAT

8    POINT?

9              MR. WIEBE:  ON A, WITH RESPECT TO THE AGGRIEVED

10   PERSON ISSUE, I WANTED TO MAKE THE POINTS, FIRST, THAT WE HAVE

11   SATISFIED THE FAZAGA AGGRIEVED PERSON TEST, WHICH IS A

12   WELL-PLEADED ALLEGATION TEST.  SECOND, WE HAVE GONE BEYOND

13   THAT BECAUSE WE HAVE ACTUALLY PUT IN EVIDENCE SHOWING WE'VE

14   BEEN SURVEILLED.  AND, THIRD, SECTION 2712(B)(4) DOES NOT HAVE

15   AN AGGRIEVED PERSON THRESHOLD FOR USING SECTION 1806(F)'S

16   PROCEDURES.

17        ON B, WE HAVE ALREADY GONE OVER IT.  I THINK FAZAGA

18   FORBIDS ANY STATE SECRET DISMISSAL PERIOD.  IT SAYS THAT OVER

19   AND OVER AGAIN.  WITHOUT QUALIFICATION, WE HAVE EXPLAINED THE

20   LANGUAGE IN THE REMAND ORDER.

21        AND, AGAIN, 2712(B)(4) BROADENS THE USE OF STATE SECRETS

22   EVIDENCE FOR ALL PURPOSES, INCLUDING STANDING.

23        AND I DON'T KNOW IF YOU WANT ME TO ADDRESS C AS WELL?

24              THE COURT:  WHY NOT.  LET ME READ THAT AND THEN WE

25   WILL GET -- SO WE DON'T HAVE TO SORT OF PARSE THIS.
```

```
1          MR. WIEBE:  YEAH.

2          THE COURT:  IS IT NOT THE CASE -- THIS IS QUESTION C:

3    IS IT NOT THE CASE THAT ANYTHING OTHER THAN DISMISSAL AT THIS

4    STAGE WOULD SIGNAL THAT THE SURVEILLANCE PROGRAMS AT ISSUE

5    TOUCHED PLAINTIFFS' COMMUNICATIONS, WHICH THE GOVERNMENT

6    ASSERTS WOULD DO GRAVE HARM TO NATIONAL SECURITY?  DOES FAZAGA

7    PROVIDE ANY GUIDANCE ON HOW THIS COURT IS TO PROCEED ANY

8    FURTHER, UNDER SECTION 1806(F) OR OTHERWISE?  DOES THE FACT

9    THAT THIS COURT HAS REVIEWED THE EVIDENCE ON STANDING AND NOW

10   ADDRESSES THE CLAIMS AT SUMMARY JUDGMENT AND NOT AT THE MOTION

11   TO DISMISS STAGE DISTINGUISH THE MATTER FROM FAZAGA AND JEWEL

12   V. NSA, THIS CASE BEFORE, 673 F.3D 902?

13        NOW YOU MAY RESPOND.

14          MR. WIEBE:  FAZAGA, AS I'M SURE THE COURT IS AWARE,

15   GOES THROUGH A LENGTHY AND EXTENSIVE EXAMINATION OF THE

16   LEGISLATIVE HISTORY OF 1806(F), AND EXPLAINS THE DEPTH IN

17   WHICH CONGRESS EXAMINED THIS PROBLEM AND STRUCK THE BALANCE

18   BETWEEN NATIONAL SECURITY AND CIVIL LIBERTIES.

19        AND IN A SENSE IT'S RELIEVED THE COURT OF THAT BURDEN

20   BECAUSE CONGRESS HAS SAID THIS IS HOW THESE CASES SHOULD

21   PROCEED FORWARD.  WE REALIZE THERE ARE INTERESTS AND RISKS ON

22   BOTH SIDES, THIS IS HOW WE, THE CONGRESS, STRIKE THE BALANCE.

23        AND THE BALANCE WAS TO HAVE THE CLAIMS AND THE CASES GO

24   FORWARD BUT UNDER A VERY RESTRICTIVE PROCEDURE WHICH

25   POTENTIALLY EXCLUDES THE PLAINTIFFS FROM HAVING ALL THE NORMAL
```

1    DUE PROCESS RIGHTS THAT THEY WOULD HAVE IN AN ORDINARY CIVIL

2    CASE.  AND THAT WAS THE BALANCE THAT CONGRESS STRUCK HERE.

3    AND THE *FAZAGA* CASE RECOGNIZED THAT AND MADE CLEAR THAT THAT'S

4    THE BALANCE THE COURTS HAVE TO FOLLOW.

5        AND SO WHEN THE GOVERNMENT DOES ASSERT HARM TO NATIONAL

6    SECURITY IN AN ELECTRONIC SURVEILLANCE CASE, CONGRESS HAS

7    SAID, NO, DON'T DISMISS IT AS YOU WOULD UNDER THE STATE

8    SECRETS PRIVILEGE, BUT INSTEAD USE THESE PROCEDURES.  WE

9    BELIEVE THESE PROCEDURES ARE ADEQUATE TO PROTECT NATIONAL

10   SECURITY.

11       AND I THINK WE HAVE ALREADY DISCUSSED THE FACT THAT EVEN

12   THE PROCEDURAL POSTURE HERE, *FAZAGA* WAS A FORWARD-LOOKING

13   DECISION LOOKING AT WHAT HAPPENS AFTER THE MOTION TO DISMISS

14   WHICH IS EXACTLY --

15           **THE COURT:**  I'M HUNG UP -- I'M STILL HUNG UP ON

16   SOMETHING HERE, WHICH IS THIS:  THE GOVERNMENT HAS REPRESENTED

17   ON THE PUBLIC RECORD THAT THEY HAVE PRESENTED IN CAMERA EX

18   PARTE IN CLASSIFIED DOCUMENTS ALONG MANY REASONS IN EVIDENCE

19   WITH RESPECT TO WHY YEAH OR NAY WOULD BE -- WOULD VIOLATE --

20   WOULD DO GRAVE HARM TO NATIONAL SECURITY.

21       SO ARE YOU SAYING -- SO LET'S TAKE THAT VERY, VERY NARROW

22   ISSUE.  ARE YOU SAYING THAT THE COURT IS NOT FREE TO SAY,

23   OKAY, I'M REQUIRED TO GIVE, UNDER ALL THESE CASES, DEFERENCE

24   TO THE INTELLIGENCE COMMUNITY OR TO SAY, NO, NO, I'LL OVERRULE

25   THAT AND SAY, NO, I AM REQUIRED UNDER *FAZAGA* BY A PANEL RULING

1    OF THE NINTH CIRCUIT TO DISREGARD THE CONCERNS RAISED BY THE

2    INTELLIGENCE COMMUNITY?

3        SO THAT'S REALLY THE ISSUE OF WHAT I'M STRUGGLING WITH.

4            **MR. WIEBE:**  YEAH.

5        THE WAY WE SEE IT, YOUR HONOR, IS THAT YOU'RE NOT

6    DISREGARDING THOSE CONCERNS.  IF YOU COMPLETELY DISREGARDED

7    THEM, YOU WOULD HAVE A PUBLIC TRIAL, IT WOULD BE FREE REIN,

8    EVERYTHING WOULD BE OPEN JUST LIKE A NORMAL CASE.

9            **THE COURT:**  RIGHT.

10           **MR. WIEBE:**  RATHER THAN DISREGARDING THOSE CONCERNS,

11   WHAT YOU ARE DOING IS TAKING THOSE CONCERNS AND CHANNELING

12   THEM IN THE WAY THAT CONGRESS HAS TOLD YOU DO IT, WHICH IS, EX

13   PARTE IN CAMERA DECISION-MAKING.  AND, AGAIN, THAT'S HIGHLY

14   IRREGULAR IN THE ANGLO-AMERICAN LEGAL TRADITION, AS WE ALL

15   KNOW.

16       SO IT'S NOT A DISREGARD OR A DEFIANCE OF THE EXECUTIVE,

17   BUT IT'S USING WHAT THE EXECUTIVES TOLD YOU, ACCEPTING THEIR

18   ASSERTION OF HARM, AND THEN DOING WITH THAT ASSERTION WHAT

19   CONGRESS HAS INSTRUCTED YOU TO DO, WHICH IS CONDUCT AN EX

20   PARTE IN CAMERA PROCEEDING.

21           **THE COURT:**  LET ME PLAY DEVIL'S ADVOCATE.  I DO THAT.

22   I DID THAT.  YOU'RE RIGHT, IT IS VERY UNCOMFORTABLE FOR A

23   COURT, FOR AN ARTICLE III COURT TO SIT THERE AND NOT HAVE THE

24   PLAINTIFFS, YOU KNOW, WHISPERING IN THEIR EARS.  SO LET'S

25   SAY -- SO I DID THAT.

1      LET'S SAY MY CONCLUSION IS, YOU KNOW WHAT?  THE GOVERNMENT

2  IS RIGHT.  BASED UPON ALL THE SECRET EVIDENCE, IF A YEAH OR

3  NAY DECISION IS GIVEN, THAT'S GOING TO CAUSE GRAVE HARM.  WHAT

4  DO I DO THEN?  WHAT DOES *FAZAGA* TELL ME TO DO AT THAT POINT?

5      **MR. WIEBE:**  I THINK *FAZAGA* TELLS YOU TO USE THE

6  EVIDENCE TO DECIDE THE CLAIMS BEFORE YOU.  AND A DECISION

7  REQUIRES A DECISION.  AND, YOU KNOW, WE'VE --

8      **THE COURT:**  ARE YOU SAYING -- I AM SORRY, BUT I'M

9  REALLY FOCUSED ON THIS POINT.

10      **MR. WIEBE:**  YEAH.

11      **THE COURT:**  ARE YOU SAYING THAT THAT DECISION CANNOT

12  BE ANY MORE, UNDER *FAZAGA*, I AGREE WITH THE GOVERNMENT'S

13  ARGUMENT BASED UPON MY 1806(F) ANALYSIS THAT YEAH OR NAY ON

14  THE ISSUE OF STANDING ON EACH OF THE PLAINTIFFS WOULD DO GRAVE

15  HARM TO NATIONAL SECURITY?

16      **MR. WIEBE:**  WE DISAGREE WITH THAT.  WE DO NOT THINK

17  THAT THE OUTCOME OF THIS PROCESS CAN BE A STATE SECRETS

18  DISMISSAL.

19      **THE COURT:**  ALL RIGHT.  YOU ANSWERED MY QUESTION

20  ESSENTIALLY IN THE AFFIRMATIVE THAT EVEN IN THAT HYPOTHETICAL

21  CONTEXT, THE COURT IS PRECLUDED FROM DISMISSING IT.

22      **MR. WIEBE:**  THAT'S CORRECT.

23      **THE COURT:**  ALL RIGHT.  I UNDERSTAND YOUR POINT.

24      **MR. WIEBE:**  YEAH.

25      **THE COURT:**  ANYTHING ELSE YOU WANT TO SAY ON THIS?

1    **MR. WIEBE:**  NOT ON THIS POINT.

2    **THE COURT:**  LET ME HEAR FROM YOU NOW.  I SEE YOU

3    BURSTING AT THE SEAMS THERE TO RESPOND.

4    **MR. PATTON:**  I WAS TRYING NOT TO APPEAR TO BE.

5    **THE COURT:**  I WAS ONLY KIDDING.  I WASN'T EVEN

6    LOOKING -- I WAS FOCUSING ON MR. WIEBE AT THIS POINT.  AND HE

7    WAS BURSTING AT THE SEAMS, TOO.

8    GOING TO THE LAST POINT, DOES *FAZAGA* ESSENTIALLY READ OUT

9    OF THE COURT'S TOOL BOX THE OPPORTUNITY -- THE POWER TO

10   DISMISS A CASE BASED UPON STATE SECRETS HAVING GONE THROUGH

11   THE ANALYSIS THAT JUDGE BERZON SAYS WE NEED TO GO THROUGH?

12   **MR. PATTON:**  NO, YOUR HONOR.  NOTHING IN 1806(F),

13   NOTHING IN 2712(B)(4), AND NOTHING IN *FAZAGA* TAKES THAT AWAY

14   FROM YOU.

15   AND THE REASON FOR THAT IS 1806(F), BOTH THE STATUTE

16   ITSELF AND IN *FAZAGA*, OVER AND OVER AND OVER AGAIN, FOUR TIMES

17   THEY SAY THAT 1806(F) IS TO DETERMINE THE LAWFULNESS OF THE

18   SURVEILLANCE.  NOT STANDING, WHICH IS THE ISSUE THAT WE HAVE

19   HERE OR WHETHER OR NOT PLAINTIFFS ARE AGGRIEVED PERSONS; THAT

20   IS A CONDITION PREDICATE BOTH TO, AS YOUR HONOR POINTED OUT IN

21   1801(K), THAT IS A CONDITION PREDICATE TO WHETHER OR NOT

22   1806(F) IS INVOKED.

23   SAME IS TRUE FOR 2712(B)(4).  MR. WIEBE KEEPS REFERRING TO

24   IT AS A BROADER STATUTE, BUT THE ACTUAL LANGUAGE OF 2712(B)(4)

25   SAYS IT IS APPLICABLE AT 1806(F) PROCEDURES QUOTE, "SHALL BE

```
1    THE EXCLUSIVE MEANS BY WHICH MATERIALS GOVERNED BY THOSE

2    SECTIONS MAY BE REVIEWED."  AND THOSE SECTIONS, ONE OF WHICH

3    IS 1806(F).  THE MATERIALS TO BE REVIEWED THERE BY THE COURT

4    ARE THOSE GOING TO LAWFULNESS.

5        SO IT'S ALWAYS 1806(F) FOR PURPOSES OF LAWFULNESS.  AND

6    FAZAGA IS VERY CLEAR ON THAT, FOUR TYPES IT TALKS ABOUT

7    THAT --

8            THE COURT:  WHAT IS THE DOCTRINAL REASON FOR THAT?

9    THAT SEEMS A DISTINCTION WITHOUT A DIFFERENCE.

10           MR. PATTON:  I'M SORRY?

11           THE COURT:  SO IN OTHER WORDS, IF THE COURT IS

12   REVIEWING THE DOCUMENTS FOR ONE PURPOSE, THE LAWFULNESS, ISN'T

13   IT ASSUMED THAT THE COURT, IN ORDER TO GET THERE, NEEDS TO

14   DETERMINE FROM THE SECRET EVIDENCE WHETHER THE PARTIES --

15   WHETHER THE PLAINTIFF IS AGGRIEVED?  IS THERE ANY DOCTRINAL

16   POLICY REASON FOR THAT OR LEGISLATIVE HISTORY REASON FOR THAT?

17           MR. PATTON:  SO BOTH 1806(F) AND 2712(B)(4) TALK

18   ABOUT ANY PERSON WHO IS AGGRIEVED.  SO IT APPLIES ONLY WHEN

19   SOMEONE IS AGGRIEVED.

20       AND FOR REASONS THAT I WILL GET TO MOMENTARILY, THE

21   PLAINTIFFS HAVE NOT DEMONSTRATED, A, THAT ANY OF THEIR

22   COMMUNICATIONS HAVE BEEN TOUCHED MUCH LESS THAT THEY ARE

23   AGGRIEVED PERSONS.  AND IT'S ONLY AGGRIEVED PERSONS THAT CAN

24   THEN ULTIMATELY TRIGGER THE USE OF 1806(F) PROCEDURES.

25       IF IT WERE ANY OTHER WAY, AS PLAINTIFFS HAVE SAID, THE
```

COURT COMES TO GRIEF, AND THE GRIEF IT COMES TO IS ANY

DECISION WILL RESULT IN THE REVELATION OF CLASSIFIED

INFORMATION.

        **THE COURT:**  DIDN'T *FAZAGA* SAY IF IT'S A WELL-PLEADED

ALLEGATION OF STANDING THAT THAT'S SUFFICIENT TO GET THE

PLAINTIFFS OVER THE HUMP?

        **MR. PATTON:**  *FAZAGA*, AS YOUR HONOR POINTED OUT, WAS

DECIDED AT A MOTION TO DISMISS STAGE.  ON PAGE 9, IT SAYS, THE

COMPLAINANT'S ALLEGATIONS ARE SUFFICIENT IF PROVEN TO

ESTABLISH THAT PLAINTIFFS ARE AGGRIEVED PERSONS.

    SO WE WOULD ABSOLUTELY AGREE WITH *FAZAGA* THAT AT THE

MOTION TO DISMISS STAGE, THEY HAD CLEARLY PLED THAT THEY WERE

AGGRIEVED PERSONS.  BUT THAT'S NOT SUFFICIENT TO DEMONSTRATE

THEY ARE AGGRIEVED PERSONS.

    THE MOTION TO DISMISS -- AT THE SUMMARY JUDGMENT STAGE, IT

IS TIME TO SHOW THE EVIDENCE.  AND THE EVIDENCE HERE ON THE

UNCLASSIFIED SENSE IS NOT ONLY HAVE THEY NOT SHOWN THEY WERE

TOUCHED BY SURVEILLANCE, THEY HAVE NOT SHOWN THEY ARE

AGGRIEVED PERSONS.

    WITHOUT SHOWING THAT THEY ARE AGGRIEVED, PERSONS, 1806(F),

2712(B)(4) IS NOT EVEN TRIGGERED.  SO AS A RESULT, YOU CAN'T

USE THE CLASSIFIED EVIDENCE TO DETERMINE STANDING OR DETERMINE

WHETHER ONE IS AN AGGRIEVED PERSON.  BECAUSE IF YOU DO, THOSE

FACTS ARE THEN REVEALED.

    TO TAKE IT TO ANOTHER EXAMPLE.  IF THERE WAS NO DISPUTE

1    HERE, AND THIS MAY, INDEED, BE THE CASE AT -- IN *FAZAGA* ON

2    REMAND BECAUSE I BELIEVE THE FBI WAS LOOKING AT VARIOUS OTHER

3    TIPS THAT WERE TAKEN IN *FAZAGA* AND TO DETERMINE HOW MUCH MORE

4    COULD BE REVEALED, IT MAY END UP BEING IN *FAZAGA*, WE DON'T

5    KNOW, THAT THERE IS NO DISPUTE THAT THE PLAINTIFFS THERE WERE

6    AGGRIEVED.

7        THAT IS NOT THE CASE HERE.  THERE IS A DISPUTE OVER

8    WHETHER OR NOT THE PLAINTIFFS HAVE DEMONSTRATED THAT THEY ARE

9    AGGRIEVED PERSONS.  AS A RESULT YOU CANNOT USE 1806(F) TO

10   DETERMINE STANDING.  IF YOU DO, YOU END UP DEMONSTRATING A

11   CLASSIFIED FACT.

12       BUT IF YOU TAKE THE EXAMPLE THAT, LET'S SAY THE PLAINTIFFS

13   IN *FAZAGA* CAN DEMONSTRATE THAT THEY ARE, IN FACT, AGGRIEVED

14   PERSONS THROUGH UNCLASSIFIED MEANS AND THAT THE GOVERNMENT

15   DOES NOT CONTEST THE FACT THAT THEY ARE -- THEY HAVE BEEN

16   SUBJECT TO ELECTRONIC SURVEILLANCE, THEN UNDER *FAZAGA*, YOU

17   WOULD JUST GO AHEAD AND DETERMINE THE LAWFULNESS OF THE

18   SURVEILLANCE AGAINST THOSE AGGRIEVED PERSONS.  BUT THAT'S NOT

19   THE SITUATION YOU HAVE HERE.

20       THE SITUATION YOU HAVE HERE IS THAT PLAINTIFFS HAVE FAILED

21   TO DEMONSTRATE THAT THEY ARE AGGRIEVED PERSONS, NOR AS A

22   MATTER OF STATUTE, EITHER 1806(F) OR 2712(B)(4) OR *FAZAGA* DOES

23   ANY OF THEM SAY YOU CAN USE THOSE EX PARTE PROCEDURES TO

24   DETERMINE STANDING.  BECAUSE IF YOU DO, YOU WILL REVEAL A

25   CLASSIFIED FACT.  AND THAT'S THE DIFFERENCE.

1      MY COLLEAGUE REMINDS ME THAT I WOULD BE REMISS IF I DID

2  NOT SAY THAT THE GOVERNMENT IS CONSIDERING SEEKING REHEARING

3  EN BANC.  THAT DECISION HAS -- IN *FAZAGA*.  THAT DECISION HAS

4  NOT BEEN MADE YET.  IT IS BEING MADE BY THE SOLICITOR GENERAL.

5  MY UNDERSTANDING IS IN THE LAST DAY OR TWO THERE HAS BEEN A

6  MOTION FOR AN EXTENSION OF THE DEADLINE FROM APRIL 15TH FOR

7  THAT REHEARING TO CHANGE TO MAY 15TH.  AND WE ARE HAPPY TO

8  KEEP YOUR HONOR POSTED ON WHAT THE GOVERNMENT DECIDES TO DO IN

9  THAT MATTER.

10     MR. WIEBE MENTIONED, AGAIN, THE 1806(F) AND ITS

11  DISPLACEMENT.  I REPEATED IT SEVERAL TIMES THAT IT APPLIES TO

12  LAWFULNESS.  ITS DISPLACEMENT ONLY APPLIES TO THE ISSUE OF

13  DETERMINING LAWFULNESS.  THE PREDICATE TO THAT IS WHETHER OR

14  NOT THEY HAVE STANDING OR WHETHER OR NOT THEY ARE AGGRIEVED

15  PERSONS.

16          **THE COURT:**  I GUESS THE ANSWER -- YOU DIDN'T ANSWER

17  MY QUESTION, BUT I WILL ANSWER MY OWN QUESTION.  HOW'S THAT?

18     THE ANSWER TO MY OWN QUESTION IS THERE IS A DIFFERENCE IN

19  TERMS OF POTENTIAL IMPACT ON NATIONAL SECURITY ABOUT WHETHER

20  THE COURT SAYS THIS PROGRAM WAS UNLAWFUL AS OPPOSED TO THESE

21  PEOPLE, THESE PLAINTIFFS WERE OR WERE NOT AGGRIEVED, WERE OR

22  WERE NOT INTERCEPTED BECAUSE THAT WOULD REVEAL A FACT --

23  MAKING A DETERMINATION OF LAWFULNESS WOULD NOT REVEAL ANY

24  CLASSIFIED INFORMATION.

25     IS THAT BASICALLY THE ANSWER TO THE QUESTION?

1           **MR. PATTON:**  THAT'S EXACTLY RIGHT.  MY APOLOGIES IF I

2    DID NOT ANSWER YOUR HONOR'S QUESTION.  THAT'S EXACTLY RIGHT

3    AND DEPENDS ON HOW A JUDGE IN THAT PARTICULAR CASE WRITES THE

4    OPINION.  IF THE COURT WRITES THE OPINION ON LAWFULNESS

5    WITHOUT REVEALING A CLASSIFIED FACT, YES, THE DETERMINATION

6    WHETHER SOMETHING IS UNLAWFUL WOULDN'T NECESSARILY REVEAL

7    THAT.

8         THAT HAPPENS, IT'S NOT FREQUENT, BUT IT HAPPENS WHEN

9    SECTION 702 CASES, THE GOVERNMENT USES IN A CRIMINAL CASE SOME

10   INFORMATION THAT IS DERIVED FROM ELECTRONIC SURVEILLANCE.

11   THEY, THE GOVERNMENT, PROVIDES NOTICE UNDER 1806(C).  THE

12   PLAINTIFF FILES A MOTION TO SUPPRESS, UNDER, I BELIEVE IT'S

13   1806 --

14           **THE COURT:**  I AM FAMILIAR WITH THAT.

15           **MR. PATTON:**  AND AS A RESULT, THE COURT SAYS, YES,

16   THAT SURVEILLANCE WAS LAWFUL OR, NO, THE SURVEILLANCE WAS

17   UNLAWFUL.  BUT THE EVIDENCE THAT'S GIVEN, THE EVIDENCE THAT'S

18   GOVERNED BY 1806(F) OR 2712(B)(4) IS THE EVIDENCE TO DETERMINE

19   LAWFULNESS, NOT WHETHER OR NOT THE PLAINTIFFS WERE AGGRIEVED

20   PERSONS OR SUBJECT TO SURVEILLANCE IN THE FIRST PLACE.

21        THAT'S THE EVIDENCE THAT IS LOOKED AT.  THERE IS AN

22   EVIDENT WAY TO MAKE THAT DETERMINATION ON THE PUBLIC RECORD AS

23   OPPOSED TO HERE DETERMINING WHETHER OR NOT THE -- DETERMINING

24   WHETHER OR NOT THE PLAINTIFFS WERE SUBJECT TO SURVEILLANCE IS

25   THE CLASSIFIED FACT THAT CANNOT BE PUT IN THE PUBLIC RECORD.

1          AND JUST TO REITERATE, THE -- FIVE TIMES THE *FAZAGA* COURT

2     TALKED ABOUT HOW 1806(F) IS MEANT TO PROTECT NATIONAL

3     SECURITY.  USING 1806(F) IN THE WAY THAT THE PLAINTIFFS ARE

4     SUGGESTING WOULD HARM NATIONAL SECURITY.  AND THAT CANNOT BE

5     WHAT THE STATUTE MEANS AND IT CANNOT BE WHAT *FAZAGA* INTENDED.

6          **THE COURT:**  ALL RIGHT.

7     YOU WANT TO SAY ANYTHING IN REPLY BRIEFLY?

8          **MR. WIEBE:**  I DO.

9          FIRST OF ALL, AS I EXPLAINED, THE AGGRIEVED PERSON TEST IS

10    AN ALLEGATION TEST FOR ALL THE REASONS WE EXPLAIN ON PAGE 28.

11         THE COURT'S DISTINCTION WITHOUT A DIFFERENCE POINT, THAT

12    IS, CAN YOU USE THE SECRET EVIDENCE FOR STANDING AS WELL AS

13    MERITS.  *FAZAGA* MAKES CLEAR THAT ONCE THE CASE -- ONCE SECRET

14    EVIDENCE IS IN THE CASE, IT'S IN THERE FOR ALL PURPOSES.  IT

15    SAYS -- IT PARALLELS THE COURT'S REASONING IN SAYING THAT IT

16    MAKES NO SENSE TO TRY TO COMPARTMENTALIZE THE USE.  THAT'S

17    PAGES 27 AND 39.

18         THIS NOTION THAT YOU COULD HAVE A JUDGMENT ON THE MERITS

19    THAT SOMEHOW WOULD NOT DISCLOSE WHETHER OR NOT THE PLAINTIFF

20    HAD BEEN SUBJECT TO SURVEILLANCE IS NOT CORRECT.  IF YOU FIND

21    THE SURVEILLANCE IS UNLAWFUL, YOU CAN ONLY DO THAT IN THE

22    CONTEXT OF A PARTICULAR PLAINTIFF'S CLAIM.

23         SO YOU'RE NECESSARILY FINDING, AS PART OF FINDING THAT THE

24    PLAINTIFF WAS UNLAWFULLY SURVEILLED, YOU ARE FINDING THAT THE

25    PLAINTIFF WAS SUBJECT TO SURVEILLANCE.  YOU CAN'T MAKE A

1    HYPOTHETICAL FINDING THAT IF THE PLAINTIFF HAD BEEN SUBJECT TO

2    SURVEILLANCE IT WOULD HAVE BEEN UNLAWFUL.

3        SO 1806(F) CLEARLY CONTEMPLATES AT THE END OF THE DAY

4    DECISIONS ON THE MERITS THAT WILL NECESSARILY DISCLOSE WHETHER

5    OR NOT THE PERSON HAS BEEN SURVEILLED.

6        AND THE -- PROTECTING NATIONAL SECURITY IS NOT THE ONLY

7    VALUE OF 1806(F).  IT'S NOT THE ONLY VALUE IT ADVANCES.  IF IT

8    WERE, IT WOULD BE AN ABSOLUTE BAR ON BRINGING ANY OF THESE

9    CASES.  IT WOULD JUST SAY ANY CASE ALLEGING UNLAWFUL

10   SURVEILLANCE SHALL NOT PROCEED.

11       AND CLEARLY CONGRESS WANTED THESE CASES TO GO FORWARD.

12   THAT'S WHY IT CAREFULLY CRAFTED THIS PROCEDURE.  AND THAT'S

13   WHY THE CASE SHOULD GO FORWARD.

14           **THE COURT:**  ALL RIGHT.  LET'S --

15           **MR. PATTON:**  MAY I VERY BRIEFLY?

16           **THE COURT:**  VERY BRIEFLY.

17           **MR. PATTON:**  ALONG WITH 2712, IT WOULD NOT NEED TO

18   READ THAT THESE CASES CAN'T GO FORWARD.  IT WOULD READ THESE

19   CASES WHERE THE QUESTION OF WHETHER OR NOT PLAINTIFFS ARE

20   SUBJECT TO SURVEILLANCE IS A CLASSIFIED FACT, THOSE CASES

21   CANNOT GO FORWARD.  THE CASES THAT I EARLIER INDICATED WHERE

22   PLAINTIFFS ALREADY HAD AN OFFICIAL GOVERNMENT ACKNOWLEDGMENT

23   THAT THEY WERE SUBJECT TO SURVEILLANCE, ALL THOSE CASES COULD

24   PROCEED.

25       I WOULD LIKE TO JUST MENTION TWO OTHER QUICK THINGS.  ONE

```
1   IS, AGAIN, THE "IF PROVEN" ARE TWO VERY LARGE WORDS.  THE WORD

2   "IF PROVEN" ON PAGE 9 WITH REGARD TO ALLEGATIONS.  THAT WAS

3   NOT NECESSARY FOR THE DECISION IN FAZAGA ON A MOTION TO

4   DISMISS, BUT IT IS ABSOLUTELY KEY RIGHT HERE, AND PLAINTIFFS

5   HAVE NOT PROVEN THAT THEY ARE AGGRIEVED PERSONS.

6             THE COURT:  IS IT IF PROVEN BY PLAINTIFFS OR IF

7   PROVEN BY ALL THE EVIDENCE INCLUDING THAT WHICH THE COURT

8   REVIEWS UNDER 1806?

9             MR. PATTON:  SO IT HAS TO MEAN IF PROVEN BY THE

10  PLAINTIFFS BECAUSE ANY OTHER READING OF 1806(F) WOULD REVEAL

11  CLASSIFIED INFORMATION, WHICH IS THAT PLAINTIFFS WERE SUBJECT

12  OR WERE NOT SUBJECT TO SURVEILLANCE.  IT HAS TO BE PLAINTIFFS

13  DEMONSTRATE THAT AHEAD OF TIME, AND IT IS IN THE STATUTE AS A

14  CONDITION PREDICATE.  THIS IS ALL LAID OUT --

15            THE COURT:  I UNDERSTAND THAT --

16            MR. PATTON:  SO I JUST WANTED TO GIVE YOUR HONOR TWO

17  PINPOINT CITES THAT I WAS UNABLE TO GIVE EARLIER WITH REGARD

18  TO DEFERENCE TO THE EXECUTIVE WITH REGARD TO --

19            THE COURT:  YES.

20            MR. PATTON:  -- WITH REGARD TO CLASSIFIED MATTERS.

21     ONE IS THE AL-HARAMAIN CASE 507 F. 3D 1190, AT PAGE 1203.

22  IT SAYS, BUT OUR JUDICIAL INTUITION ABOUT THIS PROPOSITION,

23  WHETHER OR NOT AL-HARAMAIN WAS A SPECIALLY DESIGNATED

24  TERRORIST GROUP, THIS -- OUR JUDICIAL INTUITION ABOUT THIS

25  PROPOSITION IS NO SUBSTITUTE FOR DOCUMENTED RISKS AND THREATS
```

1    POSED BY THE POTENTIAL DISCLOSURE OF NATIONAL SECURITY

2    INFORMATION.

3         THE OTHER CITE IS THE *MOHAMED VERSUS JEPPESEN* CASE, WHICH

4    IS 614 F.3D 1007 AT 1081, 82 THAT SAYS, IN EVALUATING THE NEED

5    FOR SECRECY, WE ACKNOWLEDGE THE NEED TO DEFER TO THE EXECUTIVE

6    ON MATTERS OF FOREIGN POLICY AND NATIONAL SECURITY AND SURELY

7    CANNOT LEGITIMATELY FIND OURSELVES SECOND GUESSING THE

8    EXECUTIVE IN THIS ARENA.

9              **THE COURT:**  ALL RIGHT.  I DON'T --

10             **MR. WIEBE:**  MAY I --

11             **THE COURT:**  NO, I HAVE ALL THE INFORMATION AND

12   ARGUMENTS THAT I NEED.  LET'S GO TO QUESTION 5.

13        WHAT ARE THE PARTIES' POSITIONS POST-*FAZAGA* ON THE

14   PLAINTIFFS' REQUEST THAT THIS COURT RECONSIDER ITS EARLIER

15   RULING ON THE MOTION TO DISMISS THE FOURTH AMENDMENT CLAIMS?

16   IS THE EVIDENCE MARSHALED BY THE GOVERNMENT ON PLAINTIFFS'

17   STANDING CLAIM -- I'M SORRY, LET ME READ THAT AGAIN.

18        IS THE EVIDENCE MARSHALED BY THE GOVERNMENT ON PLAINTIFFS'

19   STANDING PURSUANT TO THEIR STATUTORY CLAIMS THE SAME AS WOULD

20   HAVE BEEN PROVIDED PURSUANT TO THE CLAIMS UNDER THE FOURTH

21   AMENDMENT?

22        I WILL PUT THAT TO THE GOVERNMENT FIRST.

23             **MR. PATTON:**  THE ANSWER TO THE FIRST QUESTION,

24   QUESTION A, IN TWO WORDS IS NO NEED.  AND THE REASON FOR THAT,

25   YOUR HONOR, IS THAT 1806(F) DOES NOT DISPLACE THE STATE SECRET

1    PRIVILEGE.  YOUR HONOR, IN THAT CASE, IN THE *JEWEL* DECISION OF

2    2015 LOOKED AT THE UNCLASSIFIED EVIDENCE, FOUND IT WANTING,

3    AND RULED THAT THE CLASSIFIED INFORMATION WITH REGARD TO

4    STANDING WAS OUT OF THE CASE.

5        SAME ARGUMENTS I'VE MADE ALL ALONG ABOUT USING 1806(F) TO

6    DETERMINE STANDING STILL APPLY HERE.  SO THAT'S NUMBER ONE

7    WITH REGARD TO *FAZAGA*.

8        NUMBER TWO, THE *FAZAGA* DECISION PUT A JUDICIAL GLOSS ON

9    THE NOTION OF VALID DEFENSE AND INDICATED THAT IT WOULD --

10   THAT IT NEEDED TO BE LEGALLY MERITORIOUS AND PREVENT RECOVERY

11   FOR THE PLAINTIFFS.

12       YOUR HONOR DID THAT ALREADY IN THE *JEWEL* CASE IN THE 2015

13   DECISION BECAUSE YOUR HONOR LOOKED AT THAT IN ITS ALTERNATIVE

14   HOLDING ON PAGE 5 THAT THE GOVERNMENT'S DEFENSE WITH REGARD TO

15   STANDING WAS QUOTE "PERSUASIVE".  SO, AS A RESULT, THERE'S NO

16   NEED FOR YOUR HONOR TO REVISIT ITS PRIOR DECISION IN *JEWEL*.

17       WITH REGARD TO QUESTION 5B, THE ONE WORD ANSWER IS YES.

18   THE CLASSIFIED EVIDENCE RELATING TO STANDING, AS THE

19   PLAINTIFFS' FOURTH AMENDMENT CLAIMS, IS A SUBSET OF THE

20   MATERIALS THAT WE PRODUCED TO YOU ON THE ISSUE OF STATUTORY

21   STANDING.

22           **THE COURT:**  BASICALLY THE RECORD ULTIMATELY WOULD BE

23   THE SAME, IN FACT, IT WOULD BE MORE ENHANCED WITH RESPECT TO

24   FOURTH AMENDMENT FROM THE GOVERNMENT'S POSITION, BUT THERE'S

25   NO NEW EVIDENCE THAT THE COURT HAS NOT ALREADY CONSIDERED

1    WHICH WOULD INFORM THE COURT WITH RESPECT TO THE FOURTH

2    AMENDMENT; IS THAT WHAT YOU ARE SAYING?

3            **MR. PATTON:**  THAT'S CORRECT, YOUR HONOR.  HAD YOU

4    ORDERED US TO MARSHAL ALL EVIDENCE WITH REGARD TO THE ISSUE OF

5    STANDING IN 2015 ON THE UPSTREAM CLAIM, YOU WOULD HAVE GOT THE

6    SAME SUBSET OF EVIDENCE WITH REGARD TO UPSTREAM THAT YOUR

7    HONOR RECEIVED IN 2018.

8            **THE COURT:**  ALL RIGHT.

9        MR. WIEBE?

10           **MR. WIEBE:**  CERTAINLY *FAZAGA* HOLDS THAT SECTION

11   1806(F) APPLIES TO CONSTITUTIONAL CLAIMS, SO I THINK THAT'S A

12   CLEAR DIRECTION THAT THE SECTION 1806(F) PROCESS SHOULD APPLY

13   TO PLAINTIFFS' FOURTH AMENDMENT CLAIM.

14       NOW, THE COURT IN 2015 DID NOT USE THE SECTION 1806(F)

15   PROCESS, SO I THINK THE COURT SHOULD REDO THAT DECISION USING

16   THE 1806(F) PROCESS.

17       AS TO THE ADEQUACY OF THE EVIDENCE PRODUCED BY THE

18   GOVERNMENT, OBVIOUSLY WE HAVE NOT SEEN THAT EVIDENCE SO WE

19   DON'T KNOW IF IT'S REALLY A COMPLETE MARSHALING ON EITHER THE

20   FOURTH AMENDMENT CLAIMS OR EVEN ON THE STATUTORY CLAIMS.  SO

21   WE'RE IN THE DARK AS TO THAT QUESTION.

22           **THE COURT:**  ALL RIGHT.  FAIR ENOUGH.

23       WE'RE DONE WITH THE REPORTED QUESTIONS.  NOW WE'RE GETTING

24   INTO THE POP QUIZ MODE HERE.  MAYBE YOU WANT TO BRING OUT YOUR

25   HEAVY ARTILLERY.  SOME OF THESE QUESTIONS HAVE BEEN ADDRESSED,

1    AND I WROTE THESE QUESTIONS BEFORE I HAD THE BENEFIT OF YOUR

2    EXCELLENT ARGUMENT.

3         THE FIRST ONE IS, IS THERE ANY REPORT -- I READ ALL THESE

4    CASES, AND *FAZAGA* CERTAINLY IS THE NEWEST, AND IT TALKS

5    ABOUT -- IT HAS A LONG DIRECTION TO THE DISTRICT COURT WHAT TO

6    DO ON REMAND, BUT IS THERE ANY REPORTED CASE IN WHICH THE

7    COURT HAS NOT ULTIMATELY DISMISSED THE CASE, A CASE INVOLVING

8    ALLEGED ILLEGAL SURVEILLANCE BY THE GOVERNMENT BASED UPON THE

9    GOVERNMENT'S INVOCATION OF THE STATE SECRET PRIVILEGE?

10        IT ALWAYS SEEMS THAT THESE CASES COME OUT THE SAME WAY AT

11   THE END, WHICH IS, SOME DISTRICT COURT SAYS THE CASE CAN'T GO

12   FORWARD AND THE APPROPRIATE APPELLATE COURT, IF IT IS

13   APPEALED, AFFIRMS THE DISTRICT COURT.

14        JUST AS A MATTER OF CURIOSITY, HAS THERE EVER BEEN SUCH A

15   CASE YOU FOUND, MR. WIEBE?

16             **MR. WIEBE:**  NOT WHEN IT HAS GONE TO FINAL JUDGMENT.

17   I THINK THERE ARE STILL SOME CASES, THE GOVERNMENT PROBABLY

18   KNOWS BETTER THAN WE DO, THAT ARE PERCOLATING THROUGH THE

19   SYSTEM.

20        AND I THINK WHAT DISTINGUISHES OUR CASE, AGAIN, IS THE

21   FACT THAT WE HAVE EVIDENCE THAT OTHER CASES DON'T HAVE.  AND

22   THAT THE COURT HAS GONE THROUGH THE 1806(F) PROCESS IN WAYS

23   THAT OTHER COURTS HAVE NOT.

24        SO THIS COURT HAS A MUCH RICHER AND DEEPER BODY OF

25   EVIDENCE TO BASE ITS DECISIONS ON.  AND IT ALSO HAS,

1    OBVIOUSLY, THE MANDATE OF *FAZAGA* AND THE STATUTES TO GO

2    FORWARD WITH THAT PROCESS.

3             **THE COURT:**  FAIR ENOUGH.

4       YOU HANDLE A LOT OF THESE CASES.  THIS IS NOT GOING TO BE

5    DISPOSITIVE, IT'S REALLY INFORMED CURIOSITY ON THE PART OF THE

6    COURT.

7             **MR. PATTON:**  YOUR HONOR, WE ARE NOT AWARE OF ANY THAT

8    DOESN'T END WITH A STATE SECRET DISMISSAL.  THE ONLY ONE

9    THAT'S OUT THERE THAT'S ANYTHING LIKE THE *JEWEL* CASE AND THE

10   *FIRST UNITARIAN* CASE THAT YOU'RE ALSO HANDLING IS THE

11   *WIKIMEDIA* CASE IN THE DISTRICT --

12            **THE COURT:**  OH, YES, THERE'S THAT, RIGHT?  OKAY.

13            **MR. PATTON:**  THAT IS AFTER LUNCH.

14            **THE COURT:**  THAT'S RIGHT.  THANK YOU.

15            **MR. PATTON:**  THE ONLY OTHER CASE THAT WE ARE AWARE OF

16   THAT IS STILL PERCOLATING IS THE *WIKIMEDIA VERSUS NSA* CASE.

17   THAT'S IN THE DISTRICT OF MARYLAND.  THE DOCKET NUMBER IS

18   15-CV-662.  ORAL ARGUMENT ON THE ISSUE OF STANDING, VERY MUCH

19   LIKE WHAT WE HAVE HERE, IS SCHEDULED FOR APRIL 5TH.  AND JUDGE

20   ELLIS WHO'S HANDLING THAT CASE HAS, AS I NOTED EARLIER, ISSUED

21   AN OPINION INDICATING THAT 1806(F) CANNOT BE USED FOR

22   STANDING.

23            **THE COURT:**  SO DID JUDGE ELLIS IN THAT CASE DO A 1806

24   REVIEW LIKE THE COURT DID IN THIS CASE?

25            **MR. PATTON:**  NO, HE DID NOT CONSIDER ANYTHING OUTSIDE

```
1    OF THE UNCLASSIFIED EVIDENCE.  HE LOOKED AT THE STATE SECRETS
2    DECLARATIONS THAT THE GOVERNMENT FILED BUT DID NOT LOOK BEYOND
3    THE STATE SECRETS ASSERTION.  HE FOUND THE STATE SECRET
4    ASSERTION PROPER AND RULED THE CLASSIFIED INFORMATION OUT OF
5    THE CASE.
6              THE COURT:  LET ME PIGGYBACK ON THAT FOR A MOMENT.
7         IS THERE ANY REPORTED CASE IN WHICH -- ANY CASE IN WHICH
8    THE COURT HAS GONE AS FAR AS THIS COURT IN ACTUALLY REVIEWING
9    THE EVIDENCE UNDER FISA SECTION 1806(F) RELATING TO ELECTRONIC
10   SURVEILLANCE?
11             MR. PATTON:  I AM NOT AWARE OF ANY CASE THAT HAS --
12   THAT THE COURT HAS CONDUCTED SUCH A SEARCHING TAILORED
13   SPECIFIC REVIEW OF THE EVIDENCE THAT YOUR HONOR HAS AND
14   GETTING AND RECEIVING, MARSHALING ALL EVIDENCE AND LOOKING TO
15   SEE IF THERE'S ANY WAY PLAINTIFFS CAN DETERMINE THEIR STANDING
16   WITHOUT HARM TO NATIONAL SECURITY.
17             THE COURT:  DO YOU HAVE ANY REASON TO --
18             MR. WIEBE:  WELL, I THINK --
19             THE COURT:  IT WILL CERTAINLY HAPPEN IN FAZAGA.
20             MR. WIEBE:  YEAH.  I WAS GOING TO POINT OUT THAT'S
21   THE ROAD FAZAGA IS GOING DOWN ON REMAND.  OBVIOUSLY IN
22   CRIMINAL CASES, COURTS HAVE PROCEEDED THROUGH THE 1806(F)
23   PROCESS.
24             MR. PATTON:  AND THEY DO THAT AFTER THE UNITED STATES
25   HAS GIVEN AN OFFICIAL ACKNOWLEDGMENT THAT ELECTRONIC
```

1   SURVEILLANCE HAS OCCURRED.

2           **MR. WIEBE:**  THE OTHER, AS FAR AS *WIKIMEDIA* GOES, WE

3   ADDRESS THE *WIKIMEDIA* CASE IN OUR PAPERS, AND WE TAKE A

4   DIFFERENT VIEW AS TO -- AS TO WHAT JUDGE ELLIS HAS SAID --

5           **THE COURT:**  ARE YOU COUNSEL IN THAT CASE AS WELL?

6           **MR. WIEBE:**  NO, WE ARE NOT.

7           **THE COURT:**  THE LAST POP QUIZ QUESTION I HAVE IS

8   THIS:  ACCEPTING FOR THE HYPOTHETICALLY OR FOR THE MOMENT, IF

9   THE COURT WERE TO ACCEPT THE PROPOSED PROCEDURE BY THE

10  PLAINTIFFS THAT THE COURT DO -- PROCEED TO DECIDING THE

11  STANDING QUESTION BASED UPON THE SECRET EVIDENCE, BUT MORE

12  IMPORTANTLY, DECIDE THE MERITS QUESTION OF THE LAWFULNESS OF

13  THE PROGRAMS, THE QUESTION FOR THE GOVERNMENT, IS THERE ANY

14  ADDITIONAL EVIDENCE -- AGAIN, I'M NOT ASKING WHAT IT WOULD BE

15  BECAUSE THAT COULD BE CLASSIFIED, IS THERE ANY ADDITIONAL

16  EVIDENCE THAT THE DEFENDANTS COULD PRODUCE OR ADDUCE THAT

17  WOULD GO TO THE MERITS OF PLAINTIFFS' STATUTORY CLAIMS BEYOND

18  THE EVIDENCE ALREADY SUBMITTED RELATED TO PLAINTIFFS'

19  STANDING?

20          **MR. PATTON:**  YES.  AS FAR AS I KNOW, THERE COULD BE A

21  LOT OF ADDITIONAL EVIDENCE AND A LOT OF DIFFERENT LEGAL

22  ARGUMENTS AS TO WHETHER OR NOT A 2712 CLAIM COULD BE MADE OUT.

23  FOR EXAMPLE, WHETHER OR NOT AN INTERCEPTION HAS OCCURRED

24  WITHIN THE MEANING OF THE WIRETAP.

25      THERE ARE VARIOUS LEGAL ARGUMENTS THAT WOULD HAVE TO OCCUR

```
1    BEFORE ANY MERITS DECISION, AND I WOULD HAVE TO CONSULT WITH

2    MY CLIENTS.

3              THE COURT:  I UNDERSTAND.

4              MR. PATTON:  WHETHER OR NOT --

5              THE COURT:  I LIED.  I HAVE ONE MORE QUESTION FOR

6    YOU.

7         WHAT PROCEDURE -- I MEAN, WHAT PROCEDURE WOULD THE

8    PLAINTIFFS, IF THEY HAD THEIR DRUTHERS, AND ASSUMING THE COURT

9    MADE A FINDING BASED UPON THE SECRET EVIDENCE ON STANDING,

10   WOULD YOU ENVISION BASED UPON WHAT THE GOVERNMENT JUST SAID,

11   THE GOVERNMENT THEN SUBMITTING -- TAKING ITS NEXT SHOT AS FAR

12   AS MERITS INFORMATION, MERITS ARGUMENTS, AND THEN SOMEHOW IN

13   SOME WAY THE DEFENDANTS -- THE PLAINTIFFS WOULD THEN BE ABLE

14   TO ARGUE THE ILLEGALITY OR THE MERITS OF THE PROGRAM?

15             MR. WIEBE:  I THINK IT WOULD START OFF AT LEAST AS A

16   PROCESS VERY SIMILAR TO WHAT WE HAVE JUST GONE THROUGH OVER

17   THE PAST YEAR SINCE THE LAST CASE MANAGEMENT CONFERENCE, THAT

18   IS, IT WOULD BEGIN WITH US PROPOUNDING ADDITIONAL DISCOVERY,

19   THE GOVERNMENT RESPONDING TO IT, MARSHALING -- PERHAPS THE

20   COURT ORDERING IT TO MARSHAL THE EVIDENCE ON THE MERITS.

21        I THINK THERE WOULD BE AN EVEN STRONGER ARGUMENT FOR, AT

22   THAT POINT, LETTING PLAINTIFFS' COUNSEL INTO THE PROCESS IN

23   TERMS OF REVIEWING AND WEEDING THROUGH THE EVIDENCE IN ORDER

24   TO ASSIST THE COURT IN ITS JUDICIAL FUNCTION OF DECIDING THE

25   MERITS.
```

1        **THE COURT:**  ALL RIGHT.

2            DO YOU WANT TO SAY ANYTHING FURTHER ON THAT?

3        **MR. PATTON:**  YES, YOUR HONOR.

4        **THE COURT:**  PROBABLY GIVES YOU GOOSEBUMPS LETTING

5    MR. WIEBE IN ON THE SECRETS.

6        **MR. PATTON:**  I AM NOT SURE IF GOOSEBUMPS COVER IT.

7        **THE COURT:**  OKAY.

8                        (LAUGHTER)

9        **MR. PATTON:**  IT WOULD BASICALLY BE KICKING THE CAN

10   DOWN THE ROAD.  AND THAT ROAD WOULD BE LITTERED WITH POTENTIAL

11   INADVERTENT DISCLOSURES, CLASSIFIED INFORMATION, YEARS' WORTH,

12   PRESUMABLY AFTER WE HAD TWO YEARS' WORTH OF DISCOVERY JUST ON

13   THE ISSUE OF STANDING, YEARS' WORTH OF DISCOVERY, EX PARTE

14   PRESENTATIONS, AND ALL FOR WHAT?  BECAUSE THE COURT STILL

15   CANNOT DECIDE THE ISSUE OF WHETHER OR NOT STANDING EXISTS,

16   WHETHER OR NOT PLAINTIFFS WERE SUBJECT TO SURVEILLANCE IN THE

17   FIRST PLACE.

18       **THE COURT:**  ALL RIGHT.  OKAY.  THAT'S -- I HAVE

19   NOTHING ELSE.  I ASSUME WE HAVE COVERED EVERYTHING UNLESS

20   ANYBODY IS BURNING TO PUT ON -- WE DON'T NEED CLOSING

21   ARGUMENTS OR 4TH OF JULY SPEECHES.  ONLY THE COURT GETS TO

22   MAKE THOSE.

23       THANK YOU VERY MUCH.  I HOPE I SEE SOME WOMEN ARGUING NEXT

24   TIME, IF THAT'S POSSIBLE.  THANK YOU.

25       **MR. WIEBE:**  THANK YOU, YOUR HONOR.  APPRECIATE THE

1    TIME.

2              **MR. PATTON:**   THANK YOU.

3              **THE COURT:**   THANK YOU.

4                   (PROCEEDINGS CONCLUDED AT 11:56 A.M.)

5

6

7                         **CERTIFICATE OF REPORTER**

8              I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE

9    UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

10   CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

11   RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

12

13

14              DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

15                   MONDAY, APRIL 1, 2019

16

17

18

19

20

21

22

23

24

25

**DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC**